**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Joe Fasano; Altimeo Optimum Fund; Altimeo Asset Management, Individually and On Behalf of All Others Similarly Situated,<br><br>                          **Plaintiffs**,<br><br>v.<br><br>Guoqing Li; Peggy Yu Yu; Dangdang Holding Company, Ltd.; E-Commerce China Dangdang Inc.; Kewen Holding Co. Ltd.; Science & Culture Ltd.; First Profit Management, Ltd.; Danqian Yao; Lijun Chen; Min Kan; Ruby Rong Lu; Ke Zhang; and Xiaolong Li,<br><br>                          **Defendants.** | Civ. A. No. 16-8759 (KPF) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY JOE FASANO, ALTIMEO OPTIMUM FUND, AND ALTIMEO ASSET MANAGEMENT FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

ARGUMENT..................................................................................................................................3

    A.    FASANO AND ALTIMEO SHOULD BE APPOINTED CO-LEAD PLAINTIFFS...............................................................................................3

        1.    Fasano and Altimeo are Willing to Serve as Class Representatives............4

        2.    Plaintiffs Have the "Largest Financial Interest" .........................................5

        3.    Plaintiffs Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure ..................................................................6

        4.    Fasano and Altimeo Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses..................8

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................................8

CONCLUSION...............................................................................................................................9

Joe Fasano ("Fasano"), Altimeo Optimum Fund, and Altimeo Asset Management (the two Altimeo entities together "Altimeo") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) appointing Fasano and Altimeo as Co-Lead Plaintiffs on behalf of all persons and entities that were former minority common shareholders of E-Commerce China Dangdang, Inc. ("Dangdang" or the "Company") during the Class Period; (2) approving the Co-Lead Plaintiffs' selection of Sadis & Goldberg LLP ("Sadis & Goldberg") as Lead Counsel; and (3) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Appointing Fasano and Altimeo as Co-Lead Plaintiffs is warranted because they appear to have the largest financial interest in this action. In particular:

- Fasano and Altimeo believe that they are the "most adequate plaintiff" as defined by the PSLRA, because (1) together they retained 443,197 of Dangdang securities at the end of the Class Period; and (2) therefore suffered the largest loss when the Defendants cashed out the shares to a controlling group at an artificially low price;

- Fasano and Altimeo had proven their greater interest in this action by filing a detailed and well-researched complaint, based on substantial work and investigation.

- Fasano and Altimeo's significant investments and losses in Dangdang appear to give them the largest financial interest in the outcome of the action. Fasano and Altimeo also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure because they are adequate class representatives and, as class members who owned Dangdang shares during the Class Period, have claims typical of other class members.

- Fasano is a New York resident and thereby properly represents the interests of the Class Members located in New York that are of special interest to this District.

Accordingly, Fasano and Altimeo (together "Plaintiffs") respectfully submit that they should be appointed Co-Lead Plaintiffs.

## STATEMENT OF FACTS

Dangdang is a leading business-to-consumer e-commerce company in China. It is commonly known as the Amazon.com of China. Dangdang was cofounded by Defendants Guoqing Li and Ms. Yu in 2000, and they retained controlling power over the Company ever since. As of August 1, 2016, Li was Chief Executive Officer, owned over 31% if Dangdang stock, and held over 75% of the voting power of the Company. On December 8, 2010, DangDang conducted an initial public offering ("IPO") on the NYSE stock market, through which it sold 17 million ADS shares at $16.00 per share. Dangdang's IPO raised $272 million in market capital. Controlling stockholder Li publicly stated at the time that he thought the Dangdang IPO price was "undervalued," and that Dangdang should have a higher stock price.

Despite publicly claiming that Dangdang was significantly undervalued at much higher prices, Mr. Li decided to pounce on a quick drop in Dangdang's stock price resulting from a correction in the Chinese Stock market to make a grossly unfair lowball offer to buy out DangDang's minority stockholders. Mr. Li and his wife, Chairwoman Peggy Yu Yu, who together held 80% of the voting power, formed a buyer's group (the "Controlling Group") to cash out the minority shareholders on woefully low financial terms that (i) improperly favored Li's group over another all-cash offer and (ii) were seriously unfair to the Company's minority shareholders (the "Going-Private Merger" or "Merger").

Upon receiving the Controlling Group's offer, the Company, controlled by the members of the Controlling Group, appointed a "Special Committee" to "evaluate" the offer. This Special Committee, however, was a sham that failed to sufficiently consider a much higher, all-cash offer of $8.80 per ADS share received from a third-party private equity firm iMeigu Capital Management on March 9, 2016 (the "Competing $8.80 Offer"). This offer was 31.3% higher

than the Merger price from the Controlling Group that the Special Committee ultimately accepted. The Special Committeealso capitulated to the Controlling Group's refusal to condition the Going Private Merger on the approval of the majority-of-minority stockholders which would have empowered the Class members to make a decision on the merits of the Controlling Group's $6.70 per ADS share offer. In addition, the Controlling Group refused a "Go-Shop" provision, which would have permitted the Special Committee to test the fairness of the deal by seeing if any third-party bidder would offer a higher price to buy the company. Furthermore, the Controlling Group and the Special Committee both falsely stated in the Proxy statement for the Merger that the Special Committee had independent Cayman legal counsel by Maples & Calder ("Maples"). Maples was not independent at all – it was conflicted because it had recently represented Dangdang, led by controlling stockholder Mr. Li, for its Initial Public Offering of stock on the New York Stock Exchange ("NYSE"). This conflict prejudiced the negotiation.

Finally, the Merger price was significantly unfair to Dangdang's minority stockholders. As reported by *Bloomberg*, the Controlling Group's original $7.81 offer was 16% below Dangdang's 90-day average trading price prior to the offer, "making it lowest among 42 proposed going-private deals." Thus, the $6.70 Merger price was a shocking 28% below Dangdang's 90-day average price before the original offer was made.

As a result of Defendants' wrongful acts and omissions, and the shockingly low cash-out offer accepted, Plaintiffs and other Class members have suffered significant losses and damages.

## ARGUMENT

### A. FASANO AND ALTIMEO SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Fasano and Altimeo should be appointed Co-Lead Plaintiffs because together they have the largest financial interest in the Actions and otherwise meet the requirements of Rule 23.

3

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action not later than 90 days after the date of publication, and to appoint "as lead plaintif the member of members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> "(aa) has either filed the complaint . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Fasano and Altimeo satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. Fasano and Altimeo are Willing to Serve as Class Representatives

On November 10, 2016, Plaintiffs filed a class action lawsuite on behalf of the minority shareholders of Dangdang. On November 23, 2016, Plaintiffs' counsel in the first-filed action, Sadis & Goldberg, LLP, ("Sadis & Goldberg") caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities

class action had been filed against the defendants herein, and advised investors of DangDang securities that they had until January 23, 2017 to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Ben Hutman in Support of Plaintiffs' Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Hutman Decl."), Ex. A.

Fasano and Altimeo have filed the instant motion, and have attached Certifications attesting that each willing to serve as a class representative for the Class, and provide testimony at deposition and trial, if necessary. *See* Hutman Decl., Exs. B & C. Accordingly, Fasano and Altimeo satisfy the first requirement to serve as Lead Plaintiff of the Class.

### 2. Plaintiffs Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Plaintiffs believe that they have the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1] Fasano and Altimeo together (1) purchased 443,197 of Dangdang ADS securities; (2) expended approximately $5,801,860 on their purchases of Dangdang securities; (3) retained all their Dangdang shares at the end of the Class Period; and (4) as a result of the fraud, suffered

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (collectively, the "Lax-Olsten" factors).

losses of $930,713.70.[2]  *See* Hutman Decl., Exs. B & C.  Because Plaintiffs possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Plaintiffs Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.  *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).  Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

"The typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at

---

[2]   The loss number is calculated at $2.10 per ADS share, the difference between the Controlling Group's accepted offer of $6.70 per share and the independent third-party offer of $8.80 per share.  Plaintiffs believe an even larger amount of damages may be warranted based on an expert valuation of the Company at the time of the merger.

large." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 444 (S.D.N.Y. 2007)  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Plaintiffs are typical of those of the Class.  They allege, as do all class members, that (i) defendants have breached their fiduciary and other common law duties owed by them to plaintiffs and other members of the Class, (ii) defendants violated the securities laws regarding proxy disclosures in Forms 13E-3 and related documents; and (iii) defendants negligently misrepresented material facts to the Class prior to the Going-Private Merger.  Plaintiffs, as did all members of the Class, purchased Dangdang securities during the Class Period and held them until they were cashed out by fraudulent means.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'").

Plaintiffs are adequate representatives for the Class. There is no antagonism between Fasano or Altimeo's interests and those of the Class and their loss demonstrates that they have sufficient interest in the outcome of this litigation. Moreover, it has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. Fasano and Altimeo Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Fasano and Altimeo as Co-Lead Plaintiffs may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Plaintiffs' ability and desire to fairly and adequately represent the Class has been discussed above.  Plaintiffs are not aware of any unique defenses defendants could raise that would render them inadequate to represent the Class.  Accordingly, Plaintiffs should be appointed Co-Lead Plaintiffs for the Class.

### B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Plaintiffs have selected the law firm Sadis & Goldberg as Lead Counsel. Sadis & Goldberg is

8

highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' resumes. *See* Hutman Decl., Exhibits D. Sadis & Goldberg has a track record of recovering largersettlements or awards in shareholder actions, including $10.725 million as Co-Lead Counsel in the matter of *In re Orchard Enterps. Inc., S'holder Litig.*, 88 A.3d 1 (Del. Cha. 2014) and as co-counsel recovering $18.9 million in *Navigator Captial Partners, L.P. v. Bear Stearns Asset Management Inc. et. al.*, 07-Civ. 07783, S.D.N.Y. *Id.* As a result of Sadis & Goldberg's extensive experience in litigation involving issues similar to those raised in this action, Plaintiffs' counsel have the skill and knowledge which will enable them to prosecute the Actions effectively and expeditiously. Thus, the Court may be assured that by approving Plaintiffs' selection Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Fasano and Altimeo respectfully requests the Court to issue an Order (1) appointing Fasano and Altimeo as Co-Lead Plaintiffs for the Class; (2) approving the law firm Sadis & Goldberg as Lead Counsel and (3) granting such other relief as the Court may deem to be just and proper.

| | |
|---|---|
| Dated:   January 23, 2017 | **SADIS & GOLDBERG, LLP** |

By:    */s/ Ben Hutman*
       BEN HUTMAN

Samuel J. Lieberman
Ben Hutman
**SADIS & GOLDBERG, LLP**
551 Fifth Avenue, 21st Floor
New York, NY 10176
Tel: (212) 573-6675
Fax: (212) 573-8149
*Attorneys for Plaintiffs*
*and Proposed Lead for*
*the Class*