UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE FASANO, *et al.*,<br><br>                    Plaintiffs,<br><br>-v.-<br><br>GUOQING LI, *et al.*,<br><br>                    Defendants. | Civil Action No. 16-cv-8759 (KPF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS ON FORUM NON CONVENIENS GROUNDS**

Dated:  March 15, 2017

O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Counsel for Defendants E-Commerce
China Dangdang, Inc., Dangdang
Holding Company Limited, Kewen
Holding Company Limited, Science &
Culture International Limited, and
First Profit Management Limited*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS AND PROCEDURAL HISTORY ................................................................................ 2

        A.     Dangdang ............................................................................................... 2

        B.     Dangdang Holding ................................................................................. 3

        C.     Kewen Holding, SCI, and First Profit Management ............................. 3

        D.     Going-Private Merger ........................................................................... 4

        E.     Plaintiffs' Claims .................................................................................. 4

ARGUMENT ............................................................................................................................... 5

    I.     Plaintiffs' choice of this forum is entitled to minimal deference ........................... 6

    II.    The Cayman Islands is an adequate alternative forum. ......................................... 8

    III.   The balance of public and private factors weighs in favor of dismissal. ............. 11

        A.     All public factors favor dismissal. ....................................................... 11

        B.     The private factors also favor dismissal .............................................. 13

CONCLUSION .......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alcon Shareholder Litigation*,
  719 F. Supp. 2d 263 (S.D.N.Y. 2010) ............................................................................... *passim*

*Alfadda v. Fenn*,
  159 F.3d 41 (2d Cir. 1998) .................................................................................................... 8

*Allstate Life Insurance Co. v. Linter Group Ltd.*,
  994 F.2d 996 (2d Cir. 1993) .................................................................................................. 9

*Berg v. First American Bankshares, Inc.*,
  1985 WL 2232 (D.D.C. Apr. 17, 1985) ................................................................................. 8

*Bolton v. Gramlich*,
  540 F. Supp. 822 (S.D.N.Y. 1982) ........................................................................................ 8

*Capital Currency Exchange, N.V. v. National Westminster Bank PLC*,
  155 F.3d 603 (2d Cir. 1998) ................................................................................................ 10

*DeYoung v. Beddome*,
  707 F. Supp. 132 (S.D.N.Y. 1989) ........................................................................................ 7

*Finkel v. Stratton Corp.*,
  962 F.2d 169 (2d Cir. 1992) .................................................................................................. 9

*Fisher v. Plessey Co. Ltd.*,
  1983 WL 1328 (S.D.N.Y. June 22, 1983) ............................................................................. 9

*Gilstrap v. Radianz Ltd.*,
  443 F. Supp. 2d 474 (S.D.N.Y. 2006) ...................................................................... 11, 12, 14

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...................................................................................................... 11, 14

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  286 F.3d 613 (2d Cir. 2002) .................................................................................................. 9

*Hausman v. Buckley*,
  299 F.2d 696 (2d Cir. 1962) ................................................................................................ 12

*Holzman v. Guoqiang Xin*,
  2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ............................................................ *passim*

*Kalmanovitz v. G. Heileman Brewing Co., Inc.*,
  595 F. Supp. 1385 (D. Del. 1984) ......................................................................................... 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lust v. Nederlandse Programma Stichting*,
  501 F. App'x 13 (2d Cir. 2012) ............................................................................. 10

*Murray v. British Broadcasting Corp.*,
  81 F.3d 287 (2d. Cir. 1996) ............................................................................. 10, 12

*Otor, S.A. v. Credit Lyonnais, S.A.*,
  2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ....................................................... 9

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .................................................................................... 6, 9, 11

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) .................................................................................... 6

*Reers v. Deutsche Bahn AG*,
  320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................................ 14, 15

*RIGroup LLC v. Trefonisco Management Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013) .................................................................... 7

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
  81 F.3d 1224 (2d Cir. 1996) ............................................................................. 5, 6

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) .............................................................................................. 9

*Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.*,
  421 F. Supp. 2d 741 (S.D.N.Y. 2006) .................................................................. 14

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992) ....................................................................... 7

*Turedi v. Coca-Cola Co.*,
  343 F. App'x 623 (2d Cir. 2009) ........................................................................... 6

**STATUTES AND REGULATIONS**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..................................................................................... 7

17 C.F.R. § 249.220f(a) ................................................................................................ 2

Cayman Islands Companies Law § 238 ....................................................................... 8

## PRELIMINARY STATEMENT[1]

This lawsuit belongs in the Cayman Islands, not New York.  A French hedge fund that invested in Dangdang—a Cayman Islands company with all its operations in China—challenges the fairness of the price it received for its shares in Dangdang's merger with another Cayman Islands company.  The events leading to the merger occurred in China, where Dangdang's executives, controlling shareholders, and acquirer are located and the merger was approved by Dangdang's shareholders.  The merger itself occurred in the Cayman Islands.  No witnesses or evidence are located in New York.  And Cayman Islands law will judge whether Dangdang and its executives breached any fiduciary duties to Dangdang's shareholders.  The Court should therefore dismiss this case on *forum non conveniens* grounds so that it can proceed in the Cayman Islands: the most logical, just, and expeditious forum for this lawsuit.  In fact, a proceeding already is underway in a Cayman Islands court to determine the fair value of Dangdang's shares—precisely what Plaintiffs claim to want here.

Plaintiffs cannot avoid dismissal by proposing a claim under Section 13(e) of the Exchange Act, because a Cayman Islands court can adjudicate all of Plaintiffs' misrepresentation claims without regard to their label.  Moreover, the Section 13(e) claim will involve Cayman Islands law—just as the others do—because all of Plaintiffs' claims concern the fairness of a Cayman Islands merger, Defendants' alleged breach of their fiduciary duties concerning the merger, and the professional conduct of a Cayman Islands law firm.  The Cayman Islands is the more appropriate forum for Plaintiffs' grievances, and this case should be dismissed.

---

[1] This motion is brought by the defendants who have been served with the Complaint: E-Commerce China Dangdang Inc. ("Dangdang"); Dangdang Holding Company Limited ("Dangdang Holding"); Kewen Holding Company Limited ("Kewen Holding"); Science & Culture International Limited ("SCI"); and First Profit Management Limited ("First Profit Management").  Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

## FACTS AND PROCEDURAL HISTORY[2]

### A. Dangdang

Dangdang is a business-to-consumer e-commerce company selling merchandise online to customers in China. (Compl. ¶ 27.) Dangdang's principal executive offices are in China, as are its employees, operations, and company files. (Dangdang Decl. ¶¶ 4–5.) Dangdang's officers and directors all reside in China. (*Id.* ¶ 6.) Dangdang does not have any offices, employees, or operations in New York. (*Id.* ¶ 7.)

In January 2000, Dangdang incorporated in the Cayman Islands, where—as required by Cayman Islands law—it maintains an agent for service of process. (*Id.* ¶ 3.) On December 8, 2010, Dangdang completed an initial public offering of American Depository Shares ("ADS") on the New York Stock Exchange. (*Id.* ¶ 8.) In both the Prospectus for the IPO and annually in Dangdang's 20-F annual reports,[3] Dangdang disclosed to investors that it was a Cayman Islands company and warned potential investors that "you may face difficulties in protecting your interests, and your ability to protect your rights through U.S. courts may be limited, because we are incorporated under Cayman Islands law" and that they "may have more difficulty in protecting their interests in the face of actions taken by management, members of the board of

---

[2] These facts are taken from the Complaint, the declarations on behalf of each Defendant submitted in support of this Motion, and the Exhibits attached to the Dangdang Declaration (cited as "Ex. _"). *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 266, n.4 (S.D.N.Y. 2010) ("For purposes of deciding a motion to dismiss on *forum non conveniens* grounds, the Court may consider affidavits, declarations, and other such evidentiary submissions."). Defendants also submit a declaration from Cayman Islands legal expert Robin Hollington (cited as "Hollington Decl.").

[3] 20-F annual reports are filed by foreign private issuers like Dangdang and are similar to the 10-K filings of U.S. companies. *See* 17 C.F.R. § 249.220f(a).

directors or controlling shareholders than they would as public shareholders of a company incorporated in the United States." (Dangdang Decl. ¶¶ 10–11 & Ex. B at 34.)[4]

### B.     Dangdang Holding

Dangdang Holding is an exempted company with limited liability incorporated in the Cayman Islands, where it maintains an agent for service of process. (Dangdang Holding Decl. ¶ 3.) It is a holding company with no operations of its own. (*Id.* ¶ 5.) Dangdang Holding's principal place of business is in Beijing, China, and its company files are located there and in the Cayman Islands. (*Id* ¶¶ 4, 6.) Dangdang Holding has no offices, employees, directors, or operations in the United States. (*Id.* ¶ 8.)

### C.     Kewen Holding, SCI, and First Profit Management

Kewen Holding, SCI, and First Profit Management are companies organized under British Virgin Islands law. (Kewen Holding Decl. ¶ 3; SCI Decl. ¶ 3; First Profit Management Decl. ¶ 3.) Kewen Holding and SCI have principal places of business in the British Virgin Islands; First Profit Management's principal place of business is in Beijing, China. (*Id.*) None has any offices, employees, directors, operations, or company files in the United States. (Kewen Holding Decl. ¶ 5; SCI Decl. ¶ 5; First Profit Management Decl. ¶ 6.) All have consented to jurisdiction in the Cayman Islands for these claims. (Kewen Holding Decl. ¶ 6; SCI Decl. ¶ 6; First Profit Management Decl. ¶ 7.)

---

[4] *See also* Dangdang Decl. ¶¶ 12–13 & Ex. C. at 27 ("Your ability to protect [your] rights through U.S. Courts may be limited, because we are incorporated under Cayman law. . . . [Dangdang's] corporate affairs are governed by . . . the Companies Law[ ] of the Cayman Islands and the common law of the Cayman Islands" and therefore "[t]he rights of [Dangdang] shareholders to take action against the directors, actions by minority shareholders and the fiduciary duties of [Dangdang] directors to [Dangdang] under Cayman Islands law are to a large extent governed by the common law of the Cayman Islands.").

### D.  Going-Private Merger

On July 9, 2015, Dangdang received a proposal from its Chairwoman Peggy Yu Yu and its CEO Guoqing Li to acquire Dangdang. (Compl. ¶ 37.) After receiving the offer, Dangdang appointed a special committee to evaluate the terms and conditions of the merger offer. (Compl. ¶ 42.) On May 28, 2016, Dangdang's special committee and board of directors approved the proposed merger, in which Dangdang and another Cayman Islands company would merge. (Dangdang Decl. ¶ 14.) After board approval, Dangdang filed a Schedule 13E-3 Transaction Statement with the Securities and Exchange Commission. (*Id.* ¶ 15.) At a September 12, 2016 shareholder meeting in China, 97.7% of Dangdang's shares voted to approve the merger, which closed on September 20, 2016, with the agreement and plan of merger being filed with the Registrar of Companies of the Cayman Islands. (*See* Dangdang Decl. ¶¶ 16–17.) Nine shareholders (but none of Plaintiffs) objected to the merger in accordance with Cayman Islands law. (*Id.* ¶ 18.) On November 29, 2016, Dangdang filed a Petition in the Grand Court of the Cayman Islands, as required by Cayman Islands law, asking the court to determine the fair value of the shares held by the objecting shareholders. (*Id.* ¶ 19; Hollington Decl. ¶ 26.) That petition is currently pending before the Grand Court. (Dangdang Decl. ¶ 19.)

### E.  Plaintiffs' Claims

On November 10, 2016, French hedge fund Altimeo Optimum Fund, its French asset manager Altimeo Asset Management, and New York resident Joe Fasano commenced this action on behalf of minority ADS holders. (Dkt. No. 1.) As Plaintiffs' counsel admitted to the Court during a March 8, 2017 hearing on Plaintiffs' motion to appoint lead plaintiff, there is no relationship between Mr. Fasano and the French companies. (Mar. 8, 2017 Hr'ng Tr. at 3:21–23.) And although Mr. Fasano owned only a mere 3,000 ADS—as compared to Altimeo's

840,000 ADS—Plaintiffs argued that he should be included here because he "is someone who is interested" and would "like to participate." (*Id.* at 4:18–25.)

The Complaint asserts claims against all Defendants for (i) breach of the fiduciary duties that Dangdang and its directors, executives, controlling shareholders, and acquirer allegedly owed Dangdang's minority shareholders under Cayman Islands law; (ii) negligent misrepresentations regarding the merger based on fiduciary duties that Defendants allegedly owed to Dangdang's minority shareholders; and (iii) violating Section 13(e) of the Securities Exchange Act of 1934 and Rule 13e-3 thereunder by allegedly making misrepresentations in the proxy statement regarding a conflict of the special committee's Cayman Islands counsel and the fairness of the merger price. (Compl. ¶¶ 98–103, 111–22.) In addition, the Complaint asserts a claim for "quasi appraisal" against Dangdang to determine the fair value of Plaintiffs' shares (*id.* ¶¶ 124–27) and for aiding and abetting fiduciary breach against the directors who served on the special committee (whom Plaintiffs have not yet served) (*id.* ¶¶ 104–08).

## ARGUMENT

This case should be dismissed on *forum non conveniens* grounds because the Cayman Islands is the most logical, least burdensome forum to hear claims involving the conduct of a merger between two Cayman Islands companies that will require the application of Cayman Islands law. *See, e.g.*, *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1235 (2d Cir. 1996) (affirming *forum non conveniens* dismissal where U.S. shareholders sued about foreign corporation's internal affairs); *Holzman v. Guoqiang Xin*, 2015 WL 5544357, at *10–11 (S.D.N.Y. Sept. 18, 2015) (dismissing case brought by U.S. shareholder against executives of Cayman Islands corporation on *forum non conveniens* grounds); *Alcon*, 719 F.

5

Supp. 2d at 271 (dismissing case brought by American shareholders of Swiss corporation on *forum non conveniens* grounds).[5]

The Supreme Court has held that "when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). The Second Circuit calls for courts to dismiss cases for *forum non conveniens* where: (a) the plaintiff's choice of forum is entitled to minimal deference; (b) an adequate alternative forum is available; and (c) the balance of public and private factors weighs in favor of dismissal. *See, e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (affirming dismissal based on application of three-step *forum non conveniens* test). All three factors point strongly to the Cayman Islands as the most appropriate forum for this action.

### I. Plaintiffs' choice of this forum is entitled to minimal deference.

The choice of French Plaintiffs Altimeo Optimum Fund and Altimeo Asset Management to sue here is entitled to minimal deference. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 255–56 ("When the plaintiff is foreign, . . . [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable."); *Turedi v. Coca-Cola Co.*, 343 F. App'x 623, 625 (2d Cir. 2009) ("It is well settled in this Circuit that a foreign plaintiff's choice of forum deserves less deference than the same choice by a domestic plaintiff."). And while Mr. Fasano joins the French companies in

---

[5] Cayman Islands law applies under the "internal affairs doctrine," which calls for the law of the state of incorporation to govern the company's internal affairs, including the duties of its officers and directors. *See, e.g.*, *Scottish Air*, 81 F.3d at 1234 ("[T]he internal affairs of corporations are decided in accordance with the law of the place of incorporation."); *Holzman*, 2015 WL 5544357, at *10 (holding Cayman Islands law would apply to fiduciary-breach claims against Cayman Islands company's directors under internal affairs doctrine).

their suit, his presence does not matter because they all seek to sue in a representative capacity on behalf of thousands of shareholders worldwide.[6] The law is settled that a "plaintiff's choice of forum weighs far less heavily in a case . . . where plaintiffs sue strictly in a representative or derivative capacity." *DeYoung v. Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989); *see also Holzman*, 2015 WL 5544357, at *7 ("Deference to [plaintiff's] chosen forum is further diminished because he has brought suit in a representative capacity on behalf of numerous potential plaintiffs.").

As a matter of fact, there is no reason to give deference to Plaintiffs' choice to sue here because they invested in a foreign company, and even American plaintiffs cannot "rely upon citizenship as a talisman against *forum non conveniens* dismissal" when they "choose[] to invest in a foreign country." *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) (dismissing case on *forum non conveniens* grounds despite New York plaintiff); *see also RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 553 (S.D.N.Y. 2013) (dismissing on *forum non conveniens* grounds despite New York plaintiff). The rationale against deference is especially strong where, as here, plaintiffs received "explicit notice . . . regarding the jurisdictional risks associated with [their] investments in [a foreign company's] stock." *Alcon*, 719 F. Supp. 2d at 271(dismissing complaint filed by American investors on *forum non conveniens* grounds). For any of these reasons, Plaintiffs' choice of this forum is entitled to minimal deference.

---

[6] The PSLRA calls for the Court to appoint as lead plaintiff the investor or group of investors with the largest financial interest in this case because it is the most "adequate" to represent shareholder interests. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Altimeo Optimum Fund's Dangdang holdings—almost 300 times greater than Mr. Fasano's—qualified it alone for this position, and there is no reason for them to be considered a "group" of investors because they have no relationship to each other.

**II.     The Cayman Islands is an adequate alternative forum.**

There can be no dispute that Cayman Islands courts are sufficiently competent to adjudicate this action.  *See Holzman*, 2015 WL 5544357, at *8 (holding Cayman Islands is an adequate alternative forum for fiduciary-breach claims involving Cayman Islands company).  "An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute."  *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998).  Both criteria are present here.

First, Defendants here are all amenable to service of process in the Cayman Islands because they (i) are Cayman Islands companies with registered offices in the Cayman Islands or (ii) have consented to jurisdiction in the Cayman Islands for these claims.  (*See* pp. 2–3, *supra*.)

Second, the Cayman Islands would hear claims concerning fiduciary duties owed to a Cayman Islands company, the fairness of consideration paid to shareholders in a Cayman Islands merger, and alleged misrepresentations concerning a Cayman Islands merger.  (*See* Hollington Decl. ¶¶ 29–41.)  The Cayman Islands has a well-developed body of fiduciary-duty law and a specific statutory scheme (Cayman Islands Companies Law Part XVI § 238) permitting shareholders to object to a merger and allowing the Cayman Islands courts to determine the shares' fair value.  (*Id.* ¶¶ 23–27.)  Cayman Islands law also recognizes common-law misrepresentation claims.  (*Id.* ¶¶ 15, 34.)

Plaintiffs' decision to tack on a Section 13(e) claim does not change the analysis.  First, Section 13(e) does not provide for a private right of action, and several courts have refused to imply such a right.  *See, e.g.*, *Berg v. First Am. Bankshares, Inc.*, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (dismissing Section 13(e) claim because statute did not provide private right of action); *Bolton v. Gramlich*, 540 F. Supp. 822, 842–43 (S.D.N.Y. 1982) (holding no private right of action under Section 13(e)); *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 595 F. Supp.

8

1385, 1393–95 (D. Del. 1984) (same).  While the Second Circuit has not addressed whether a private right of action exists under Section 13(e), it has refused to imply such a right for other provisions of Section 13.  *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir. 2002) ("Courts in this circuit have consistently declined to imply a cause of action for shareholders under § 13(d)."); *cf. Finkel v. Stratton Corp.*, 962 F.2d 169, 174–75 (2d Cir. 1992) (holding no implied private right of action under Securities Act Section 17(a)).  And although some courts have implied a private right of action under Section 13(e), *see, e.g.*, *Fisher v. Plessey Co. Ltd.*, 1983 WL 1328, at *3–4 (S.D.N.Y. June 22, 1983), those cases were decided before *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).  The Supreme Court explained in *Stoneridge* that while "the rule [for implying a private right of action] once may have been otherwise, it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose intent to create one."  *Id.* at 164 (2008).  Plaintiffs cannot make this showing for Section 13(e).

In any event, "the mere fact that plaintiffs have brought securities claims does not protect the suit from dismissal based on *forum non conveniens*."  *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775, at *4, n.11 (S.D.N.Y. Sept. 11, 2006) (granting *forum non conveniens* motion despite plaintiffs' claims under the Exchange Act); *see also Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) ("While appellants are correct in asserting that United States courts have an interest in enforcing United States securities laws, this alone does not prohibit them from dismissing a securities action on the grounds of *forum non conveniens*.") (affirming *forum non conveniens* dismissal despite plaintiffs' claims under the Exchange Act).  This is because the adequacy of a foreign forum does not depend on the existence of an identical cause of action there.  *See Piper Aircraft*, 454 U.S. at 247 ("The

9

possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."). A Cayman Islands court would have the power to hear Plaintiffs' Section 13(e) claim, or Plaintiffs could choose to recast this claim as a common-law tort claim for "misrepresentation." (*See* Hollington Decl. ¶¶ 38–39.) While Plaintiffs might prefer to bring their claims under U.S. law, "*forum non conveniens* dismissal is not trumped simply because the foreign forum will apply different substantive law than an American court." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609–610 (2d Cir. 1998). Thus, the second requirement for dismissal is satisfied.

Similarly, procedural differences between the United States and the Cayman Islands—such as the potential unavailability of a contingency-fee arrangement or the lack of a right to a jury trial in the Cayman Islands—are not relevant to whether the Cayman Islands is an adequate forum to hear these claims. *See, e.g.*, *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292–93 (2d. Cir. 1996) (holding claims of "financial hardship" based on lack of contingency-fee system "may not be considered in determining the availability of an alternative forum"); *Lust v. Nederlandse Programma Stichting*, 501 F. App'x 13, 14–15 (2d Cir. 2012) (holding alternative forum adequate even though it lacked contingency-fee arrangements and did not provide for jury trials because Second Circuit "precedent makes clear that an alternative forum need not provide procedures and causes of action identical to those in plaintiff's preferred forum"); *Alcon*, 719 F. Supp. 2d at 273 ("Courts in this District have also specifically and repeatedly held that the availability of contingency fees, class actions, or federal-style discovery is not dispositive of the adequacy of an alternative forum."). As the Second Circuit has observed, "if the lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most foreign forums." *Murray*, 81 F.3d at 292; *see*

*also Piper Aircraft*, 454 U.S. at 252, n.18 (comparing U.S. and foreign legal systems and noting that jury trials and contingency-fee arrangements are available in U.S. but not in most foreign jurisdictions).

### III. The balance of public and private factors weighs in favor of dismissal.

Because Plaintiffs' preference to sue in the Southern District of New York is entitled to minimal deference, and the claims can be adequately pursued in the Cayman Islands, the Court should dismiss the case if the convenience of the parties and the ends of justice are best served through dismissal. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947). Here, both the public and private factors point to the logic of litigating in the Cayman Islands.

#### A. All public factors favor dismissal.

Under the *forum non conveniens* analysis, courts weigh four public-interest factors: (1) administrative difficulties relating to court congestion; (2) imposing jury duty on the forum's citizens; (3) having local disputes settled locally; and (4) avoiding problems associated with the application of foreign law. *See Gilbert*, 330 U.S. at 508–09. All four factors point to dismissal.

The first two factors point to dismissal because this Court does not have resources to spare on a case with little connection to this jurisdiction. "When most of the events [take] place in a foreign forum or forums and involve mostly foreign parties, the United States and its citizens have less interest in the resolution of the action than the foreign forum." *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 490 (S.D.N.Y. 2006) (dismissing on *forum non conveniens* grounds where burden on forum resources offset action's minimal connection to forum). This Court should not expend limited resources to adjudicate a claim involving a Cayman Islands corporation, Chinese executives, and French companies. Nor should New York citizens be called on to serve as jurors for a case just because Dangdang was one of the thousands of

companies whose shares trade publicly here. *See Alcon*, 719 F. Supp. 2d at 278 (rejecting notion that "the mere trading of stock on the NYSE" should lead to U.S. forum).

The last two factors in the public-interest analysis likewise point to dismissal because Dangdang's internal affairs—and therefore what (if any) fiduciary duties Defendants owed Plaintiffs—are governed by Cayman Islands law, which would have to be proved in this District by expert testimony, and Cayman Islands citizens have the greatest interest in regulating Dangdang and its directors and transactions among Cayman Islands companies. As Judge Nathan recently explained in *Holzman*—where she dismissed a breach-of-fiduciary-duty claim involving a Cayman Islands company on *forum non conveniens* grounds—"the Cayman Islands have a *significant interest* in the application of Cayman Islands law to the actions of a Cayman Islands corporation" while New York courts "have virtually no interest in resolving disputes governed exclusively by foreign law." 2015 WL 5544357, at *10; *see also Gilstrap*, 443 F. Supp. 2d at 490 ("[L]ocal interest of the English courts in this matter far exceeds the interest of the citizens of this District" because defendant was English corporation). As the Second Circuit has recognized, "New York courts for many years have dismissed a variety of actions on grounds of *forum non conveniens*, in part because of the desirability of having foreign courts apply their own law to disputes involving corporations domiciled in their jurisdictions." *Hausman v. Buckley*, 299 F.2d 696, 703 (2d Cir. 1962); *see also Murray*, 81 F.3d at 293–94 (finding U.S. has "virtually no interest" in deciding dispute governed by foreign law). Plaintiffs can point to no reason why this Court should preside over a case evaluating the fairness of a merger between two Cayman Islands corporations or the duties of a Cayman Islands company's controlling shareholders, acquirer, and directors in connection with that merger—all issues that Cayman Islands law will govern.

Nor are there local interests in Plaintiffs' common-law or Section 13(e) misrepresentation claims that outweigh the Cayman Islands's interest in hearing claims concerning a Cayman Islands company's internal affairs and Cayman Islands merger.  Both claims are based on Plaintiffs' contention that the merger was not "fair," a claim to be evaluated under Cayman Islands law.  (*See* Compl. ¶ 115 (basing negligent misrepresentation claim on allegation that Defendants "misrepresented the fairness of the merger in the Merger proxy statements and Forms 13E-3"); ¶ 121 (basing 13(e) claim on allegation that Defendants misrepresented "the fairness of the Merger").)  The only other alleged misrepresentation—cited as support for both claims—is that the proxy statement should have stated explicitly that Maples and Calder (the special committee's Cayman Islands counsel) had a "conflict of interest" because Maples and Calder also represented Dangdang before the merger and would continue to do so after.  (*See id.* ¶¶ 114, 121.)  But Plaintiffs concede that Dangdang disclosed the relevant facts about Maples and Calder.  (*See id.* ¶ 65 (alleging that Dangdang publicly disclosed that Maples and Calder was Dangdang's counsel), ¶ 66 (alleging that Form 13(e) disclosed that Dangdang's registered office in the Cayman Islands both before and after the merger was at "Maples Corporate Services Limited").)  So putting aside whether the failure to disclose an opinion about Maples and Calder in addition to the underlying facts could ever constitute a material misrepresentation, that opinion is a question for a Cayman Islands court applying Cayman Islands rules of professional responsibility.  (Hollington Decl. ¶ 36.)  And the Cayman Islands certainly has a greater interest in the professional conduct of their attorneys than New York does.

### B. The private factors also favor dismissal.

Courts also consider five private-interest factors in determining the appropriate forum for a dispute: (1) the ease of access to evidence; (2) the availability of compulsory process; (3) the cost for witnesses to attend trial; (4) all other practical matters that support an efficient and

expedient trial; and (5) the enforceability of a judgment. *See Gilbert*, 330 U.S. at 508; *Alcon*, 719 F. Supp. 2d at 276. Here, too, all factors point to the Cayman Islands as the more appropriate forum.

The first four factors all point to dismissal because it would be fairer and more efficient to litigate this case in the Cayman Islands. "Where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored." *Gilstrap*, 443 F. Supp. 2d at 488. Plaintiffs cannot dispute that the relevant evidence is located abroad: All of Dangdang's executives and directors—including the members of the special committee that approved the merger and the executives who led the buyout of Dangdang—are abroad and therefore cannot be compelled to testify here. (*See* Dangdang Decl. ¶¶ 5–7.) Nor could any of Dangdang's employees be compelled to testify at trial in New York. *See, e.g.*, *Alcon*, 719 F. Supp. 2d at 276 (dismissing case in part because defendants would not be able to compel third-party testimony in forum); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 162 (S.D.N.Y. 2004) (same). Dangdang does not have a U.S. office, and substantially all its documents are also abroad, either at its offices in China or in the Cayman Islands, where the merger was recorded with the Cayman Islands Registrar. (*See* Dangdang Decl. ¶¶ 4–5.)[7] Likewise, any potentially relevant documents that Dangdang Holding, Kewen Holding, SCI, First Profit Management, or the as-yet unserved Chinese-resident current and former executives possess will be in China, not New York. It does not matter that the evidence might be split between the Cayman Islands and China; the important

---

[7] The transportability of these documents does not minimize the inconvenience to Defendants of litigating in New York. *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Svcs., Corp.*, 421 F. Supp. 2d 741, 768 (S.D.N.Y. 2006) (While "in our modern era documents are easily transportable . . . the Second Circuit has frequently weighed in favor of dismissal where, as here, 'all but a few' relevant documents are located in a foreign jurisdiction.").

point is that none of it is in New York.  *See, e.g.*, *Reers*, 320 F. Supp. 2d at 161 (dismissing case where evidence was split between three foreign countries); *see also Holzman*, 2015 WL 5544357, at *10 ("Although most of the evidence and witnesses are located in China, the Cayman Islands nonetheless possess a greater interest in resolving this dispute," which arises from events outside New York and "involves a Cayman Islands corporation.").  Like the public-interest factors, the private-interest factors also call for dismissal.

## CONCLUSION

French hedge fund claims concerning an investment in a Cayman Islands company that conducts business solely in China do not belong in New York, and the Court should dismiss these claims on *forum non conveniens* grounds.

Dated:  March 15, 2017

    /s/ Abby F. Rudzin
Abby F. Rudzin
Asher L. Rivner
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
E-mail:  arudzin@omm.com
        arivner@omm.com

Seth Aronson (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430- 6407
E-mail:  saronson@omm.com

*Counsel for Defendants E-Commerce China Dangdang, Inc., Dangdang Holding Company Limited, Kewen Holding Company Limited, Science & Culture International Limited, and First Profit Management Limited*