UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE FASANO, *et al.*,<br><br>  Plaintiffs,<br><br>  -v.-<br><br>GUOQING LI, *et al.*,<br><br>  Defendants. | Civil Action No. 16-cv-8759 (KPF)<br><br>**DECLARATION OF<br>ROBIN HOLLINGTON, Q.C.** |

I, Robin Frank Hollington, Queen's Counsel, of New Square Chambers, 12 New Square, Lincoln's Inn, London WC2A 3SW, under 28 U.S.C. § 1746, declare as follows:

   **Introduction**

1. I was called to the Bar of England and Wales in 1979 and was appointed Queen's Counsel in 1999. I have been in practice for over 35 years, principally in the field of Chancery litigation and specialising in company and insolvency matters. I am currently a member of New Square Chambers, a well-established set of Chancery chambers in Lincoln's Inn, London, and I served as Head of Chambers from July 2010 through June 2014. Attached as Exhibit A is my Curriculum Vitae. As appears from my CV, I have particular expertise in the field of shareholders' rights and have advised and appeared in many leading cases in this field—including *O'Neill v. Phillips [1999] 2 All ER 961*, which is a decision of the House of Lords (the highest United Kingdom court, now called the Supreme Court) and the leading modern

authority in the UK in the field of minority shareholder rights.[1] Because Cayman Islands law follows UK common law, I am regularly asked to appear before the Grand Court of the Cayman Islands and to advise on Cayman Islands legal matters. I have served as an expert on Cayman Islands and UK company law in proceedings in federal courts in the United States of America. I sit as a Deputy Judge of the UK High Court, Chancery Division, London, whose jurisdiction includes issues of company law.

2. In addition, I am the author of a leading textbook on shareholder rights in the UK and other countries that follow UK law (including the Cayman Islands): "Hollington on Shareholders' Rights" (Sweet & Maxwell). The first edition of this textbook was published in 1990, and the most-recent 8th edition was published at the beginning of this year.

3. So far as I am aware, I have no prior or current relevant connection to disclose, professional or otherwise, with any of the parties in this case.

**Background**

4. I have been asked by O'Melveny & Myers LLP ("OMM"), attorneys for Defendants E-Commerce China Dangdang Inc. ("Dangdang"), Dangdang Holding Company Limited, Kewen Holding Company Limited, Science & Culture International Limited, and First Profit Management (collectively, "Defendants"), to express my opinion as an expert on the law of the Cayman Islands on certain issues of Cayman Islands law that may arise in this Court's determination of whether or not this Court, as opposed

---

[1] When I use "United Kingdom" or "UK" in this declaration, I am referring only to England and Wales.

to the courts of the Cayman Islands, should hear and determine the claims advanced in the Complaint. OMM has instructed me to proceed on the following assumptions:

   a. Under New York conflict-of-laws principles, the substantive claims advanced in Plaintiffs' Complaint concerning the fiduciary duties (if any) that the Defendants owed to Dangdang or its shareholders, as well as any disputes concerning the fairness to Dangdang shareholders of Dangdang's September 20, 2016 merger with Dangdang Merger Company Limited, are governed by the law of the Cayman Islands, because that is where Dangdang is incorporated;

   b. Defendants are willing to submit to the jurisdiction of a Cayman Islands court for this matter; and

   c. Defendants are arguing that the Court should dismiss the Complaint in this action because the proper and more convenient court to hear and determine Plaintiffs' claims is a Cayman Islands court.

5. I have received and reviewed: (i) the Complaint; (ii) Dangdang's Sixth Amended and Restated Memorandum of Association and Sixth Amended and Restated Articles of Association, effective December 13, 2010; (iii) the Agreement and Plan of Merger among Dangdang Holding Company Limited, Dangdang Merger Company Limited, and E-Commerce China Dangdang Inc., dated as of May 28, 2016 (the "Merger Agreement"); (iv) Dangdang's Schedule 13E-3 Transaction Statement; and (v) the Petition filed by Dangdang on November 29, 2016, in the Grand Court of the Cayman Islands to determine the fair value of dissenting shareholders' Dangdang shares.

6. Plaintiffs' claims arise out of Dangdang's September 20, 2016 merger with Cayman Islands company Dangdang Merger Company Limited (the "Merger"). In the Merger, holders of Dangdang's American Depository Shares ("ADS") received a cash

payment for their ADS. Plaintiffs challenge (i) the fairness of the price they received for their ADS in the Merger, (ii) the Dangdang board's process for reviewing and approving the Merger, and (iii) the adequacy and accuracy of information Defendants provided to shareholders concerning the Merger. Plaintiffs claim to have owned Dangdang ADS before the Merger.

### The legal system in the Cayman Islands

7.  I begin by providing a brief explanation of the Cayman Islands legal system. The Cayman Islands is a British Overseas Territory. The legal system in the Cayman Islands is founded on the UK legal system, including UK common law and equity. Specific sources of Cayman Islands law include: (i) statutes passed by the Cayman Islands legislature; (ii) UK legislative provisions extended to the Cayman Islands by Orders in Council in London, England; (iii) Cayman Islands case law; and (iv) case law from UK and other common law jurisdictions. The doctrine of judicial precedent applies in the Cayman Islands as it applies in the UK.

8.  The Cayman Islands Grand Court is the Cayman Islands Superior Court of Record of First Instance—i.e., its primary trial court. The Cayman Islands Court of Appeal hears appeals from the Grand Court. The Judicial Committee of the Privy Council in London is the highest appellate court for the Cayman Islands legal system. Privy Council decisions on appeals from the Cayman Islands are binding on the Cayman Islands Court of Appeal and the Grand Court and are highly persuasive authority if on appeals from other jurisdictions. Cayman Islands Court of Appeal decisions are binding on the Grand Court. While decisions of the Grand Court are not binding on the Grand Court, they are persuasive authority.

9.  The judges appointed to the Privy Council most commonly come from the UK Supreme Court but also may come from the courts of other commonwealth legal

systems whose highest appellate court is the Privy Council. The Presiding Judge of the Cayman Islands Court of Appeal usually is a judge or retired judge from the UK Court of Appeal.

10. The Cayman Islands has its own rules of court. The Grand Court Rules are based on the UK Supreme Court Practice 1999. Cayman Islands courts rely on UK authority regarding the UK Supreme Court Practice 1999 as an aid to the interpretation and application of the Cayman Islands Grand Court Rules.

11. The Cayman Islands courts generally follow UK authority unless the UK authority (i) is inconsistent with either Cayman Islands statutory provisions or Cayman Islands authorities, or (ii) is not relevant because it concerns UK statutory provisions with no equivalent in the Cayman Islands.

12. Decisions of courts in other common law jurisdictions (such as Australia, Hong Kong, and the British Virgin Islands) are persuasive, but not binding, authority in the Cayman Islands.

13. In my experience, the Cayman Islands legal system is reasonably expeditious. Based on my experience, I would expect a case raising the subject matters in the Complaint to take less than two years to reach trial in the Cayman Islands.

**Cayman Islands choice-of-law rules**

14. The first step that a Cayman Islands court takes when evaluating a claim is to conduct a choice-of-law analysis to determine the jurisdiction whose law should govern the claim. Cayman Islands choice-of-law rules are well developed and apply principles that are based on UK common law and Cayman Islands statutes (where applicable). There are specific choice-of-law rules (developed through UK and Cayman Islands case law) that apply to the internal affairs of companies including fiduciary duties, and to torts such as misrepresentation and deceit.

**Cayman Islands law governing companies**

15. The Cayman Islands has a very well-developed body of law (derived from UK law) governing companies and related fiduciary and common-law duties and shareholder rights. The Cayman Islands courts regularly hear disputes concerning Cayman Islands companies—including the determination of the fair value that shareholders should receive for their shares in a merger and alleged breaches of fiduciary duties. The Grand Court has a Financial Services Division that specializes in hearing financial services proceedings, including cases concerning the Cayman Islands Companies Law (the "Companies Law"). The Cayman Islands courts also are well accustomed to hearing common-law tort claims concerning alleged misrepresentation and deceit. It is my opinion that the Cayman Islands judiciary is well equipped to hear and determine such cases including (as explained below) the allegations in the Complaint.

16. Companies incorporated under Cayman Islands law are governed by the Companies Law, most recently revised in 2016. This statute provides the legal framework for Cayman Islands companies and the respective rights, duties, and obligations of Cayman Islands companies and their directors, officers, and shareholders. The Companies Law has procedures governing mergers between Cayman Islands companies. The Companies Law also creates a specific remedy for shareholders to redress alleged unfairness in the price offered in a Cayman Islands law merger. In addition to the Companies Law, general Cayman Islands and UK principles of common law and equity related to company law and tort apply to Cayman Islands companies.

17. The Companies Law does not codify the duties that directors of Cayman Islands companies owe. Rather, Cayman Islands law draws on the general principles of the law of equity (developed under UK law) for those duties because the directors of

Cayman Islands companies are fiduciaries of the company under Cayman Islands law and owe a common-law duty of care. The Companies Law permits Cayman Islands companies to modify the duties that directors owe under the general principles of equity and common law through the company's articles of association.

18. The general rule in the Cayman Islands and the UK is that directors owe their duties as directors solely to the company and not to shareholders personally. The Cayman Islands has a well-established body of law and specific court rules concerning the shareholders' ability to bring claims for directors' breaches of duties owed to the company, namely derivative claims. *See* Cayman Islands Grand Court Rules, Or. 15, r. 12A. In addition, there are circumstances where directors owe fiduciary or other duties to shareholders personally in addition or instead of to the company. For example, directors have a duty to provide sufficient information to a company's shareholders to permit them to make an informed decision regarding whether or not to approve a merger. As a UK court explained in *Re a Company [1986] BCLC 382*, a case involving two rival bids for a company where the lower bid was from a potential acquirer owned by the target company's directors:

> "I do not think that fairness can require more of the directors than to give the shareholders sufficient information and advice to enable them to reach a properly informed decision and to refrain from giving misleading advice or exercising their fiduciary powers in a way which would prevent or inhibit shareholders from choosing to take the better price …"

**Companies Law Part XVI – mergers and consolidation of companies**

19. The Merger took place under Companies Law Part XVI sections 232-239, which govern the procedure for effectuating a merger between two Cayman Islands companies. I attach a copy of Part XVI to this declaration as Exhibit B. Part XVI provides the legal framework for what steps a Cayman Islands company, its directors, and its shareholders must take to effectuate a merger and how dissenting shareholders

can preserve their right to receive fair value for their shares through the Cayman Islands courts.

20. The directors of each company participating in the merger are required to approve a written plan of merger. Companies Law § 233(3). In some instances, where certain members of a company's board of directors are interested in the proposed merger (for example, where a company's controlling shareholders are trying to take the company private), the company's board may choose to form a special committee to review and make a recommendation for shareholders to approve the proposed transaction.

21. After the board approves the plan of merger, it needs to be approved by a special resolution of the company's shareholders. *Id.* § 233(6). A special resolution is a resolution passed at a general meeting of the shareholders by a majority of two-thirds of the votes cast by shareholders who are entitled to, and do, attend and vote (either in person or by proxy), at that meeting.

22. No provision in the Companies Law restricts the ability of interested or controlling shareholders to vote in favour of the merger or requires approval by a majority of the shareholders who are not such shareholders. There also is no principle of the law of equity or the common law which restricts this ability, and all shareholders may in general exercise their rights as shareholders in their own interests. *See Re Charterhouse Capital Ltd [2015] B.C.C. 574* at para. 51 ("[T]he right of a shareholder to vote his shares is a right of property which the shareholder is free to exercise in what he regards as his own best interests. He is not obliged to cast his vote in what others may regard as the best interests of the company as an entity in its own right."). Instead, the Companies Law addresses potential unfairness that may result from a controlling shareholder's interest in a merger through an appraisal procedure.

23. The Companies Law provides a procedure to ensure that any shareholder who believes that the merger, the process by which the merger was negotiated and approved, or the proposed merger consideration is unfair receives fair value for their shares—even if a two-thirds majority of the shareholders otherwise favours the merger. Companies Law Section 238 allows shareholders to dissent in writing to the merger and have the Grand Court determine the fair value that the dissenting shareholders are entitled to receive for their shares. The rights conferred by Companies Law Section 238 are often referred to as appraisal rights.

24. Under Companies Law Section 238, shareholders who want to dissent from the merger and have the Grand Court determine the value of their shares must send the company written notice objecting to the merger before the shareholder meeting to vote on the merger. Within 20 days of the shareholder receiving notice from the company that its shareholders have authorised the merger at the general meeting, dissenting members must provide the company with the number and class of shares they own and demand payment of fair value for the shares instead of the merger consideration. Shareholders who submit written notices of objection are referred to as dissenting shareholders.

25. Once dissenting shareholders provide written notice of objection, their rights as shareholders of the company terminate. This includes the right to vote to approve the merger resolution and to receive merger consideration. Companies Law § 238(7). Instead of merger consideration, they receive the right to an appraisal remedy under Companies Law Section 238(9)-(11). That is the right to have the Grand Court of the Cayman Islands determine the fair value that they should be paid for their shares. In other words, whilst minority shareholders cannot block a merger, they can dissent and nevertheless receive fair value plus interest for their shares.

26. Unless the company and the dissenting shareholders agree on the share's fair value, the court will determine the fair value of the dissenting shareholders' shares. The Companies Law requires that the company file a petition to commence the appraisal action, Companies Law § 238(9), but allows both the company and the dissenting shareholders to participate in the proceeding, *id.* § 238(12). Courts typically hear expert evidence submitted by both the company and the dissenting shareholders to determine fair value and are free to determine a fair value amount that is equal to, less than, or greater than the merger consideration paid. Dissenting shareholders receive for their shares the fair value set by the court plus interest at a rate to be determined by the court. *Id.* § 238(11).

27. The Grand Court of the Cayman Islands recently held such an appraisal proceeding in *Re Integra Group [2016 (1) CILR 192]*. A copy of the Grand Court's August 28, 2015 decision in *Re Integra Group* is attached as Exhibit C. This case concerned a management-led buyout of a company. Like the Dangdang transaction, this transaction was accomplished through a merger under the Companies Law between two Cayman Islands corporations. The Grand Court applied Companies Law Section 238 to determine the fair value that dissenting shareholders should receive for their shares following the merger. The Grand Court heard evidence from expert witnesses in valuation and financial advisory services: one retained by the company, another by the dissenting shareholders. To aid in determining the share's fair value, the Grand Court also ensured that the experts had access to the company's books and records and senior management. After hearing evidence, the Grand Court ruled on the relevant applicable principles of valuation and determined the fair value of the dissenting shareholders' shares and the fair rate of interest to apply.

28. I understand that Dangdang filed a Petition in the Grand Court of the Cayman Islands on November 29, 2016, for the Grand Court to determine the fair value of shares held by nine shareholders who dissented to the Merger. The Petition also asks the court to calculate the fair rate of interest to be paid to the dissenting shareholders. According to Dangdang's Petition, Plaintiffs are not among the shareholders who dissented.

**A Cayman Islands court could hear the subject matter of Plaintiffs' claims.**

29. Against that background, I now analyse whether the Cayman Islands courts could adjudicate the claims that Plaintiffs have asserted against Defendants (which are Counts I, III, IV, and V). As discussed below, the Cayman Islands courts have the power to, and regularly do, hear claims on these subjects.

Count I – Breach of Fiduciary Duties

30. The Complaint's first count asserts a claim for breach of fiduciary duties. The Plaintiffs allege that Defendants breached "their fiduciary duties of care and loyalty" when they approved the Merger because the Merger was "not entirely fair to the Company's public shareholders." (Compl. ¶¶ 98–99.)

31. As an initial matter, this count appears to be a complaint about the fairness of the Merger and the price paid to shareholders for their shares in the Merger. As discussed above, the Companies Law provides a specific procedure for Cayman Islands courts to address such a complaint.

32. To the extent shareholders believe that a company or its directors, executives, or controlling shareholders acted unfairly in approving a corporate transaction (such as a merger) and that the shareholders have suffered a loss as a result, a Cayman Islands court would be well equipped to assess that claim. Cayman Islands law concerning fiduciary and other duties, which follows UK law, is well developed. A Cayman Islands court looks to this Cayman Islands and UK law to determine (i) what (if any)

fiduciary or other duties various constituents of a company owe, (ii) to whom such duties are owed, (iii) whether these particular Plaintiffs had standing to assert claims for the breach of that duty, and (iv) what (if any) loss has been suffered as a result of the alleged breach of duty and was recoverable. The Cayman Islands courts regularly hear cases involving claims for breach of duty. Its judiciary is well equipped to hear such cases.

Count III – Negligent Misrepresentation

33. Count III alleges that Defendants negligently made misrepresentations to Dangdang's shareholders in the Form 13E-3 Transaction Statement filed with the U.S. Securities and Exchange Commission concerning the Merger's fairness and whether the Special Committee's Cayman Islands counsel, Maples and Calder, had a conflict of interest. (Compl. ¶¶ 114–115.) Plaintiffs allege that they relied on the misrepresentations in deciding whether to exercise their appraisal rights under Section 238 of the Companies Law. (*Id.* ¶ 117.)

34. Cayman Islands law, following UK law, has a well-developed body of law applicable to liability for misrepresentations, and the Cayman Islands courts routinely hear cases from individuals claiming to have been injured by misrepresentations. Duties concerning representations may arise in equity (in the context of a breach of fiduciary duty claim) or under common law. Liability may arise under the common law not only on the ground that the defendant knew the falsity of its statement or was reckless as to its truth but also if the defendant was negligent in misrepresenting the position (assuming a duty of care is owed). As discussed above, the Cayman Islands courts also have well-developed choice-of-law rules to determine which jurisdiction's negligent misrepresentation law should apply to these claims.

35. The Complaint alleges that Defendants negligently misrepresented that the Merger was fair. (Compl. ¶ 115.) As discussed above, Cayman Islands courts have experience addressing the fairness of Cayman Islands mergers and therefore can analyse whether the Defendants' statements were misrepresentations.

36. The Complaint also alleges that Defendants negligently misrepresented whether Maples and Calder—the Cayman Islands law firm that served as the Special Committee's Cayman Islands counsel during the Merger—had an alleged "conflict of interest" because it also represented Dangdang before and after the Merger. (Compl. ¶ 114.) The Complaint states that Dangdang disclosed that Maples and Calder represented both Dangdang and the Special Committee but "omitted" that this created a "conflict of interest." (*Id.* ¶¶ 65–67, 114.) Whether representing Dangdang and Dangdang's Special Committee was a "conflict of interest" for a Cayman Islands law firm involves a question of Cayman Islands professional conduct. Cayman Islands law firms' professional conduct is governed by the Code of Conduct for Cayman Islands Attorneys-at-Law. The Code of Conduct provides rules governing (among other things) attorney conflicts and independence. The Cayman Islands Grand Court hears complaints about attorney conduct and disciplinary matters. In my opinion, a Cayman Islands court would be well equipped to determine whether Maples and Calder had a "conflict of interest" under the Code of Conduct for Cayman Islands Attorneys-at-Law and whether there was a misrepresentation.

### Count IV – Violation of Section 13(e) of the U.S. Securities Exchange Act of 1934 And Rule 13e-3 Thereunder

37. Count IV alleges that Defendants violated U.S. Exchange Act Section 13(e) and Rule 13e-3 thereunder. I have been informed that Exchange Act Section 13(e) requires certain disclosures in going-private transactions and empowers the U.S. Securities and Exchange Commission to enforce certain disclosure obligations for those transactions.

      I have been further informed that the parties dispute whether U.S. law permits shareholders to bring a claim under this provision. I have assumed for purposes of this testimony that Plaintiffs would be permitted to proceed with this claim in the U.S.

38. As discussed in paragraphs 15 and 34 above, the Cayman Islands legal system has a well-developed body of common law regarding claims for misrepresentation and deceit. A claim based on the allegations in Count IV could be brought as a claim in common law misrepresentation or deceit.

39. The Plaintiffs also could argue to a Cayman Islands court that it should permit claims to recover damages for alleged violations of the Exchange Act.

<u>Count V – Quasi-Appraisal Claim</u>

40. As I understand it, the Plaintiffs' "quasi-appraisal claim" alleges that they were wrongfully denied the fair value of their shares by reason of the Defendants' alleged breaches of fiduciary and other duties and misrepresentations. In my view, a Cayman Islands court would treat this as a claim for breach of duty or misrepresentation. To the extent Plaintiffs are seeking the difference between what they were paid for their shares in the merger transaction and the shares' purported fair value, the Plaintiffs could have pursued appraisal rights under Companies Law Section 238.

41. To the extent Plaintiffs believe that they were wrongfully deprived of the right to pursue a Companies Law Section 238 appraisal action as a result of alleged breaches of duty or misrepresentations, the remedy afforded to Plaintiffs under Cayman Islands law would be the difference between what Plaintiffs received in the Merger and the fair value of their shares (if greater). This would effectively put them in the same position that they would have been in had they exercised their right to dissent from the transaction, *i.e.*, in which event they would have received the fair value for their shares as determined by the Grand Court under Companies Law Section 238. This is

the same measure of damages that could be awarded under Cayman Islands law if Plaintiffs were to prevail on their fiduciary-breach or tort claims in the Cayman Islands.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on March 15th, 2017

Robin Frank Hollington, Q.C.