```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOE FASANO, Individually and
on Behalf of All Others
Similarly Situated,

              Plaintiffs,

        v.                              16 Civ. 8759 (KPF)


GUOQING LI, et al.,
                                        Telephone Conference

              Defendants.

------------------------------x
                                        New York, N.Y.
                                        March 8, 2017
                                        11:15 a.m.

Before:

              HON. KATHERINE POLK FAILLA,

                                        District Judge


                    APPEARANCES

SADIS & GOLDBERG LLP
     Attorneys for Plaintiffs
BY:  SAMUEL J. LIEBERMAN (via speakerphone)

O'MELVENY & MYERS LLP
     Attorneys for Served Defendants
BY:  ABBY F. RUDZIN
```

1          (In the robing room)

2          THE COURT:  Mr. Lieberman, this is at least in part
3  principally a motion to decide lead plaintiff and lead
4  plaintiffs' counsel, and you may recall from our last
5  conference, which was on defense counsel's *forum non conveniens*
6  motion, that what we wanted to do was to figure out who would
7  be plaintiffs' counsel and who therefore would be responding to
8  the served defendants' motion.

9          Why are you not here?

10         MR. LIEBERMAN:  Your Honor, I completely
11 misunderstood, in the absence of an opposition or response on
12 the motion, and I apologize profusely for misunderstanding the
13 schedule.  I can be there in person within the half hour, and
14 Mr. Lopez indicated that appearing by telephone was possible.
15 It was my misunderstanding, and I apologize for the
16 inconvenience to the Court at this time.  I'm very sorry about
17 this.

18         THE COURT:  Sir, just to be clear, yes, you can as a
19 theoretical matter be here at some point later today, but
20 Ms. Rudzin has been waiting patiently and not being able to do
21 work for other cases on which she might bill, because you are
22 not here.  And secondly, yes, Mr. Lopez said that this could be
23 done by phone, but that's only because you did not have the
24 courtesy of showing up.  It does not bode well for your
25 application for lead plaintiffs' counsel that you would have

1  taken the initiative not to come today.

2        Was there something in either of my scheduling orders
3  that suggested you did not have to appear?

4        MR. LIEBERMAN:  Your Honor, I misunderstood.  This is
5  my misunderstanding, and I apologize as well to Ms. Rudzin.
6  This is my mistake.  This is wrong, and I misunderstood the
7  sequencing, and I'm happy to do whatever it takes to address
8  these issues because I misunderstood the schedule.  This is not
9  about anything that you have done here, so I apologize for the
10 misunderstanding, and it was my misunderstanding.

11       THE COURT:  Let me understand this, sir.  Is it
12 correct, then, at this time that it is only Mr. Fasano and the
13 two Altimeo entities who have put in, as it were, to be lead
14 plaintiff in this case?

15       MR. LIEBERMAN:  That's right.  No one has opposed.  No
16 one else has put in.  That's right.

17       THE COURT:  May I understand, please, the
18 relationship, if any, between Mr. Fasano and either of the
19 Altimeo entities, because I thought I had two here, am I
20 correct, Altimeo Asset Management and Altimeo Optimum Fund?

21       MR. LIEBERMAN:  That's right.  Mr. Fasano has no
22 relationship as far as I'm aware, other than both having been
23 ADS holders of the E-Commerce China Dangdang company.

24       THE COURT:  I understand that.  They have all decided
25 to serve as colead plaintiffs or at least it would be Fasano

1    and Asset Management; Altimeo's other entity, the Optimum Fund,
2    is not offering to be lead plaintiff, sir?
3             MR. LIEBERMAN:  Your Honor, Optimum Fund is.  The
4    Optimum Fund is a holder and Asset Management is the manager of
5    the Optimum Fund, so with respect to certain rights, the Asset
6    Management arm has the power to act, but it is the fund itself
7    that was the holder.
8             THE COURT:  Let me ask a different question, sir.  Who
9    precisely is seeking to serve as colead plaintiff with
10   Mr. Fasano?
11            MR. LIEBERMAN:  All three are seeking, so the Optimum
12   Fund and Altimeo Asset Management.
13            THE COURT:  OK.  You'll excuse me if this sounds
14   imprecise, but why do I need three colead plaintiffs,
15   especially since right now I've got nobody else who is
16   interested?  It just seems to me that I would only need one,
17   but tell me why I need three.
18            MR. LIEBERMAN:  It is the Court's discretion.  I think
19   the reason that we ask that the three be permitted is that from
20   those who have approached us, these are the parties that have
21   shown interest in serving as leadership for this action.
22   Mr. Fasano is someone who is interested.  Both of them have
23   indicated that they'd like to participate, and given that, from
24   our perspective as counsel, having been approached by both, we
25   don't discourage any of them from applying.

1         THE COURT:  My concern is simply at some later date
2    I'm going to be asked to give some extra something to
3    individuals or entities who, or that, have served as lead
4    plaintiff, and I'm just concerned about that.  Certainly if
5    Mr. Fasano does extra work than other class members, he may be
6    entitled to a class representative award, but I'm just trying
7    to ensure that Mr. Fasano and the Altimeo entities aren't
8    seeking to serve as colead plaintiffs simply to engender
9    unnecessary expenses in the conduct of this litigation.
10        Can you give me some assurance that that will not
11   happen?
12        MR. LIEBERMAN:  Yes, your Honor.  No. 1, that is not
13   their goal.  Their goal is more to have say in the operation of
14   the litigation; we haven't given consideration to seeking an
15   award.  I know you mention it's possible they could ask for
16   one.  What I can tell you, and you can put this in the record,
17   is that we will not be seeking duplicative awards, should there
18   be any award, and I really haven't had an opportunity to speak
19   with the clients about it, whether they would at all, but such
20   award would be sought apportioning it out as if it was one
21   request for an award.  We'll do everything we can to avoid any
22   duplication or requests based on duplication.
23        THE COURT:  Here's my second question, sir.  If you're
24   serving as lead plaintiffs' counsel, and that's a big "if"
25   given your nonappearance this morning, you would have to be

  1  reaching out to each of Mr. Fasano and the Altimeo entities, so
  2  doesn't that necessarily increase, even on an incremental
  3  level, the amount of work and coordination that you'll have to
  4  do?
  5           MR. LIEBERMAN:  I can't foreclose the possibility that
  6  it would be an incremental amount.  However, in terms of
  7  setting up conference calls, I have been able to manage the
  8  amount of time as if there is only one party thus far because
  9  I'm able to give updates and set up meetings where both can
 10  attend.
 11           THE COURT:  All right.  I will be mindful, as will
 12  you, of the fact that I don't want there to be unnecessary
 13  litigation expenses, attorney's fees or otherwise, simply
 14  because three purchasers of the securities in question wish to
 15  participate.
 16           All right, sir.  I have read your papers.  What else
 17  do you want me to know?
 18           MR. LIEBERMAN:  Other than the papers and satisfying
 19  that, you have the submission of the parties' interests in the
 20  litigation based on their holdings.  You also have my firm's
 21  biography and our experience prosecuting similar matters, so we
 22  would rest on the papers.  Again, I just wanted to reiterate my
 23  apologies for misunderstanding the schedule and apologize for
 24  the inconvenience to the Court, and if coming down and showing
 25  up later in the day can in any way be helpful, I'm happy to do

that.

THE COURT:  That will not be necessary.  I have other matters on the calendar, and I don't want those to be interrupted.

All right, then.  Inasmuch as I have no other entity hoping to serve as lead plaintiffs' counsel and I only have these three purchasers who are seeking to serve as colead plaintiffs, I will be granting the motion.  I have considered the PSLRA provisions regarding the presumptions of the most adequate plaintiff and the standards that are set forth there in Section 78u-4.  The three requirements here are satisfied: They have filed a complaint in the matter; they have the largest financial interest of any class member, and we'll see at some later date whether they satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure, but I don't think that's an issue that I need to resolve right now.

Certainly typicality and adequacy of representation are the only things that I really need to look at at this time, and I can.  Indeed, looking at cases like *Foley v. Transocean Ltd.*, a Southern District decision from 2011, I really only need a preliminary showing of typicality and adequacy. Mr. Fasano and the Altimeo entities have made this showing and I will allow it, and I will at this time, based on the written submission, more than today's endeavors, appoint Sadis & Goldberg as counsel.

Case 1:16-cv-08759-KPF   Document 46   Filed 03/17/17   Page 8 of 13     8
H38WfasC

         Mr. Lieberman, you've got to show up next time.  Don't apologize again, because that's not going to help you.  Just show up or understand that if it appears that your firm and your clients are not that interested in pursuing this case, there are things that I can do to reflect that in my docket as well.

         Now that I have the parties here and I've forced Ms. Rudzin to be here all of this time, there is something else I'd like to understand.  Mr. Lieberman, there was a schedule set at our last conference regarding the *forum non conveniens* motion.  I am assuming that that is a schedule that your firm can meet.  Am I correct?

         MR. LIEBERMAN:  Yes, your Honor.

         THE COURT:  All right.  Separately, and I appreciate that I am keeping Ms. Rudzin here, I do not understand, or at least I have concerns that Ms. Lu has been adequately served.  There is some strangeness about the affidavit of her service.  It looks almost like she resisted efforts to serve her.  There's a rider that I'm not entirely sure of that seems to list everybody else.

         Could you tell me, please, are you believing, sir, that Ms. Lu was adequately served in this case?

         MR. LIEBERMAN:  Well, we went to the office of the firm, and I will go back to the discussions from the last conference.  We went to the office where she serves as

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

director, which is the Yum China Holdings Inc. office of plaintiffs, and she is a director there.  This is the primary place of business, and we provided the summons to someone there, and the person accepted it and then mailed it back.

We're reporting on that effort here.  We believe that that is notice, and we are concerned about a dodging of service, why somebody would be advertising themselves publicly, and she's actually on the board of this company.  And in the last conference, it was counsel for the other entities who said there are states that allow you to serve at the office where you serve as a director.  We believe that this does give notice.  We are also still following up in China, but we provided this affidavit as well.

THE COURT:  All right.  Is that a long way of saying you believe she has been properly served?

MR. LIEBERMAN:  We believe this will satisfy it, yes.

THE COURT:  All right.  We'll see.

Ms. Rudzin, just to be clear, you would not be representing Ms. Lu, or she has not asked you to represent her at this time?

MS. RUDZIN:  Right.  I've never even spoken with her.

THE COURT:  If she asked you, would you be representing her, or are there conflicts with the folks that you do represent that would prevent you from doing that?

MS. RUDZIN:  I don't see a conflict right now, but I

1   haven't been asked to represent her, so I haven't thought about
2   it that much.
3           Your Honor, just because Mr. Lieberman did speak about
4   me and what I said at the last conference about how some states
5   have laws that say you can serve directors of a company by
6   serving the company's registered agent, my understanding, and I
7   have no idea if Texas has such a law, but the laws I do know,
8   for example, the law in Delaware only allows that when the suit
9   arises out of the defendant's service as a director of that
10  company that's being served.
11          THE COURT:  That was my understanding as well.
12          MS. RUDZIN:  I don't know if Mr. Lieberman is hanging
13  his hat on that kind of statute in Texas, which would seem to
14  be facially inapplicable, or if he's trying to say that somehow
15  Ms. Lu actually physically works there, which I don't believe
16  is correct, so I'm not sure why he thinks serving a company
17  that has an outside director constitutes service on the outside
18  director, particularly when he's already alleged that she lives
19  in another country.
20          THE COURT:  That's where we are.  OK.
21          Mr. Lieberman, in our prior conference you had
22  discussed the possibility of making an application for
23  substituted service.  I don't know what has happened since the
24  14th of February, or thereabouts, the middle of February when
25  we last met, but is it your contemplation, sir, that in

1  opposing what is now a scheduled *forum non conveniens* motion,
2  when you file your opposition, would you be adding to that an
3  application for substituted service or alternate service?
4      MR. LIEBERMAN:  Your Honor, the answer to that is that
5  it depends on the status of ongoing efforts to serve in China.
6  We did get an update on where that stood.  We have been
7  informed by the International Legal Cooperation Center that the
8  documents have been delivered to a court in China to begin
9  processing service internally.  If those efforts are proceeding
10 and we have service effectuated, and we got a prediction of
11 something in the neighborhood of a month from February 24,
12 which is when we last got an update on service.  We made
13 service in mid-January through the Hague process.  We got an
14 update on February 24, and we're monitoring that.  The vagaries
15 of service in China are such that I can't give a full
16 guarantee, I really have to monitor it on an ongoing basis.
17 What we've been doing is monitoring and calling to stay on top
18 of the service process there.
19     If we are able to effectuate service promptly, by the
20 end of March, then we may not have a ground for seeking
21 substitute service.  On the other hand, if as is frequently the
22 case service efforts get bogged down and the effort is not
23 completed by April 28, it's agreed we would expect to use the
24 leave for filing extra pages to seek substitute service.  I'm
25 hoping we won't have to.

|    |    |
|----|----|
| 1  | THE COURT:  All right. |
| 2  | MR. LIEBERMAN:  But it's possible we still may. |
| 3  | THE COURT:  All right.  I can hope as well.  That's |
| 4  | almost two months from now, so perhaps there will be more |
| 5  | progress on that front, but I did want to ask because we had |
| 6  | talked about it previously. |
| 7  | Ms. Rudzin, is there anything else you'd like to bring |
| 8  | to my attention while we're here? |
| 9  | MS. RUDZIN:  No.  Thank you. |
| 10 | THE COURT:  Mr. Lieberman, anything else, sir? |
| 11 | MR. LIEBERMAN:  No.  That's it.  We will update the |
| 12 | Court if we get confirmation of service before that because |
| 13 | your Honor had mentioned last time that as a matter of prudence |
| 14 | you'd want to wait and see what would happen, so should we get |
| 15 | service or confirmation of service before that, we will update |
| 16 | the Court accordingly. |
| 17 | THE COURT:  I appreciate that.  Two things, |
| 18 | Mr. Lieberman.  No. 1, could you please arrange to obtain a |
| 19 | transcript of this conference in the ordinary course, and if |
| 20 | you order it I will receive a copy electronically; you don't |
| 21 | have to send it to me. |
| 22 | And thing 2, if you have a form of order for |
| 23 | appointment of lead plaintiffs' counsel and lead plaintiffs, |
| 24 | you may email it to the chambers' email inbox -- you don't have |
| 25 | to file it on ECF -- copying Ms. Rudzin, and we will look at |

H38WfasC

1  that.  Otherwise we'll do it ourselves, but some folks have
2  these lined up and I'll at least look at the ones that they've
3  done.
4          MR. LIEBERMAN:  We'll get that in to the Court today.
5          THE COURT:  Thank you.
6          Mr. Lieberman, anything else, sir?
7          MR. LIEBERMAN:  That is all, your Honor.  Thank you
8  for your understanding.
9          THE COURT:  All right.  Thank you both very much.
10         (Adjourned)