# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joe Fasano; Altimeo Optimum Fund; Altimeo Asset Management; Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Guoqing Li; Peggy Yu Yu; Dangdang Holding Company, Ltd.; E-Commerce China Dangdang Inc.; Kewen Holding Co. Ltd.; Science & Culture International Ltd.; First Profit Management, Ltd.; Danqian Yao; Lijun Chen; Min Kan; Ruby Rong Lu; Ke Zhang; and Xiaolong Li, <br><br> Defendants. | Civ. A. No. 16-cv-8759 (KPF) |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE ENTITY DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS* AND IN SUPPORT OF SUBSTITUTE SERVICE ON THE INDIVIDUAL DEFENDANTS

Samuel J. Lieberman
Ben Hutman
SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-8164

*Attorneys for Lead Plaintiffs*
*Joe Fasano, Altimeo Optimum Fund*
*And Altimeo Asset Management*

April 28, 2017

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

    A.    Key Parties and Summary of Allegations .................................................. 2

    B.    Defendants Listed Dang's Stock Exclusively in New York on the NYSE, and the Majority of Dang's Stock was Held in New York ......................................... 4

    C.    Defendants Disseminated Public Statements to Investors Through New York ........... 4

    D.    Dang Adopted NYSE Corporate Governance Standards in its Charter and Public S.E.C. Filings, Imposing Higher Standards than Cayman Law ................................... 5

    E.    Defendants Repeatedly Chose New York Courts in their ADS Depositary Agreements, Employment Agreements, and Underwriting Agreement ....................... 7

    F.    Dang Maintained a New York Agent for Service of Process for Any Action Under United States Securities Laws ......................................................................... 8

    G.    Key Steps of the Transaction Process Occurred in the United States ........................... 8

    H.    Defendants Seek to Evade U.S. Jurisdiction After the Transaction ............................ 9

ARGUMENT ..........................................................................................................................10

I.     PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO SIGNIFICANT DEFERENCE BECAUSE THIS CASE INVOLVES A NEW YORK RESIDENT ASSERTING A U.S. SECURITIES LAW CLAIM IN THE DISTRICT WHERE DANG STOCK WAS LISTED, CONSISTENT WITH AN ADS FORUM CLAUSE....10

II.    DEFENDANTS HAVE FAILED TO SATISFY THEIR BURDEN OF SHOWING THAT CAYMAN IS AN ADEQUATE ALTERNATIVE FORUM FOR LITIGATING AGAINST ALL DEFENDANTS .............................................................15

III.   DEFENDANTS CANNOT MAKE THE REQUIRED CLEAR SHOWING THAT A U.S. TRIAL WOULD BE SO OPPRESSIVE AND VEXATIOUS TO THEM AS TO BE OUT OF ALL PROPORTION TO PLAINTIFFS' CONVENIENCE UNDER THE PUBLIC AND PRIVATE INTEREST FACTORS ...................................................17

    A.    The Public Factors Weigh in Favor of a New York Forum....................................... 17

    B.    The Private Factors also Weigh in Favor of a New York Forum. ............................. 20

C.      Defendants' Use of New York Forum Clauses Proves that this Motion is Based on Forum-Shopping ...................................................................................................... 22

IV.    DEFENDANTS' INDIRECT ATTEMPT TO DISCREDIT PLAINTIFFS' SECURITIES LAW CLAIM UNDER § 13(E) OF THE EXCHANGE ACT LACKS MERIT, BECAUSE THIS CLAIM IS SUPPORTED BY CASE LAW AND FACTS SHOWING THAT DEFENDANTS' STATEMENTS WERE FALSE ............................22

V.     THE COURT SHOULD ORDER SUBSTITUTE SERVICE OF THE INDIVIDUAL DEFENDANTS THROUGH COMPANY COUNSEL IN THE UNITED STATES .......25

CONCLUSION.........................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.,*
    585 F.3d 696 (2d Cir. 2009)................................................................14

*In re Alcon S'holder Litig.*
    719 F. Supp. 2d 263 (S.D.N.Y. 2010)..........................................14, 15

*Alfadda v. Fenn,*
    159 F.3d 41 (2d Cir. 1998)..............................................................15

*Allstate Life Ins. Cor. v. Linter Grp. Ltd.,*
    994 F.2d 996 (2d Cir. 2993)............................................................15

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.,*
    228 F. Supp. 2d 348 (S.D.N.Y. 2002)..........................................11, 12

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975) .......................................................................12

*Brown v. China Integrated Energy, Inc.,*
    285 F.R.D. 560 (C.D. Cal. 2012) ....................................................27

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank, PLC,*
    155 F.3d 603 (2d Cir. 1998)............................................................15

*Cyberscan Tech., Inc. v. Sema Ltd.,*
    2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) .................................17

*DeKalb Cty. Pension Fund v. Transocean, Ltd.,*
    817 F.3d 393 (2d Cir. 2016) ...........................................................24

*DeYoung v. Beddome,*
    707 F. Supp. 132 (S.D.N.Y. 1989) .................................................15

*DiRienzo v. Philip Servs. Corp.,*
    294 F.3d 21 (2d Cir. 2002)....................................................... *passim*

*Dowling v. Narragansett Capital Corp.,*
    735 F. Supp. 1105 (D.R.I. 1990).....................................................24

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,*
    145 F.3d 505 (2d Cir. 1998)............................................................16

*Fahner v. Wayne County*,
2010 WL 3001217 (E.D. Mich., July 28, 2010) ....................................................27

*Fisher v. Plessey Co.*,
1983 WL 1328 (S.D.N.Y. June 22, 1983) .............................................................23

*Fogarazzo v. Lehman Bros.*,
263 F.R.D. 90 (S.D.N.Y. 2009) ...........................................................................23

*Ganino v. Citizens Utilities Co.*,
228 F.3e 154, 167 (2d Cir. 2000) ........................................................................23

*Gilstrap v. Radianz, Ltd.*,
443 F. Supp. 474 (S.D.N.Y. 2006) ......................................................................15

*Howing Co. v. Nationwide Corp.*,
972 F.2d 700 (6th Cir. 1992) ...............................................................................24

*In GLG Life Tech Corp. Sec. Litig.*,
287 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................15, 26

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001)..........................................................................11, 21, 22

*Koster v. Am. Lumbermen's Mut. Ins. Co.*,
330 U.S. 518 (1947) .............................................................................................17

*Lehman v. Humphrey Cayman, Ltd.*,
713 F.2d 339 (8th Cir. 1983) .............................................................................16

*In re Livent, Inc. Sec. Litig.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999)....................................................................17

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)........................................................................................12, 13

*In re Optimal U.S. Litig.*,
837 F. Supp. 2d 244 (S.D.N.Y. 2011)...................................................................20

*Otor, S.A. v. Credit Lyonnais, S.A.*,
2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006)......................................................15

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)..............................................................11, 19

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)..............................................................................................15

*Polar Int'l Brokerage Corp. v. Reeve*,
    108 F. Supp. 2d 225 (S.D.N.Y. 2000)....................................................................24

*In re Poseidon Concepts Sec. Litig.*,
    2016 WL 3017395 (S.D.N.Y., May 24, 2016) ............................................. *passim*

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
    949 F. Supp. 2d 546 (S.D.N.Y. 2013)....................................................................15

*Rio Tinto PLC v. Vale S.A.*,
    2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014) ......................................................16

*Rose v. Deer Consumer Prod., Inc.*,
    2011 WL 6951969 (C.D. Cal. Dec. 29, 2011) ......................................................27

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*,
    81 F.3d 1224 (2d Cir. 1996).................................................................................15

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008).............................................................................................24

*Stream SICAV v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013).......................................................2, 15, 26

*Sussman v. Bank of Israel*,
    801 F. Supp. 1068 (S.D.N.Y. 1992)......................................................................15

*Szollosy v. Hyatt Corp.*,
    2000 WL 1576395 (D. Conn., Sept. 14, 2000) ....................................................16

*Telenor E. Invest AS v. Altimo Holdings & Invests. Ltd.*,
    567 F. Supp. 2d 432 (S.D.N.Y. 2008)..................................................................24

*Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*,
    725 F. Supp. 2d 438 (S.D.N.Y. 2010)..................................................................21

*Tomita Techs. USA, LLC v. Nintendo Co.*,
    818 F. Supp. 2d 770 (S.D.N.Y. 2011)..................................................................22

*Turedi v. Coca-Cola Co.*,
    343 F. App'x. 623 (2d Cir. 2009) ........................................................................15

*Update Art, Inc. v. Maariv Israel Newspaper, Inc.*,
    635 F. Supp. 228 (S.D.N.Y. 1986) ......................................................................20

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016) ................12, 18

**Statutes**

15 U.S.C. § 78b ................................................................................................................12

15 U.S.C. § 78n(a) ...........................................................................................................24

15 U.S.C. § 78u-5 ............................................................................................................24

Section 13(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(e) ........................ *passim*

Securities Exchange Act of 1934, Section 2, 48 Stat. 881 (1934) .................................................13

**Other Authorities**

Fed. R. Civ. P. 30(b)(6).....................................................................................................21

Going Private Transactions by Public Companies or Their Affiliates, S.E.C. Rel.
No. 5884, 1977 WL 187732 (Nov. 17, 1977) ...........................................................24

NYSE Listed Company Manual Section 303A.02… ........................................................6

## PRELIMINARY STATEMENT

This case belongs in New York. It involves a New York Lead Plaintiff asserting U.S. securities and New York State law claims in the New York district where E-Commerce China Dangdang Inc. ("Dang") stock was exclusively listed, on the New York Stock Exchange ("NYSE"). And the claims target false statements made – and an unfair merger disclosed – in S.E.C. Forms 13E-3 disseminated through an ADS Depository in New York.

This motion should be denied as pure forum-shopping, since the moving defendants seek to avoid a New York court after specifically targeting the New York market. In particular:

- Plaintiffs' "choice of this district is entitled to significant deference" due to this country's strong interest in enforcing the "U.S. securities laws," particularly where a Lead Plaintiff is a New York resident. *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *9 (S.D.N.Y., May 24, 2016); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

- Such deference requires giving plaintiffs "their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiff's convenience." *DiRienzo*, 294 F.3d at 30.

- Defendants cannot make this heightened showing. "A strong public interest favors access to American courts for those who use American securities markets." *Id.* at 33. New York and its juries have a clear interest in a case based on false statements disseminated in New York about securities traded on the NYSE, which also contain a New York forum clause.

- The private factors also weigh in favor of New York. Many documents and witnesses are located in or closer to New York, such as Dang's New York ADS Depositary and Duff & Phelps, which rendered a fairness opinion out of Chicago. And transporting documents and witnesses from China to New York would be easier than Cayman, with less travel time.

- Plaintiffs' § 13(e) claim raises solely U.S. legal issues as to material misrepresentations that Maples & Calder was "independent" counsel "reporting solely to the Special Committee," (Ex. A,[1] Aug. 1, 2016 Form 13E-3/A, Ex. 99(A)-1 at 38), when Maples was ongoing counsel for Dang, controlled by Guoqing Li who was bidding to acquire Dang.

- Plaintiff's fiduciary duty claims raise at least partial U.S. law issues, because Dang adopted "New York Stock Exchange corporate governance" rules in its Charter, and publicly disclaimed Cayman rules by stating "we do not plan to rely on home country practice with respect to our corporate governance." (Ex. C. Apr. 29, 2016 Form 20-F at 80.)

---

[1] All Exhibits in this Memorandum are to the Declaration of Samuel Lieberman and are be cited as "Ex. _."

*Finally*, this Court should authorize substitute service on the eight individual defendants, five of whom are Dang executives and three of whom are former directors with a close connection to Dang. Lead Plaintiffs have diligently spent over five months attempting service, including over three months through Hague Convention channels. Substitute service is warranted under these circumstances, because defendants have fair notice of this action through U.S. company counsel. *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013). Indeed, three individual defendants have filed declarations in this Court, in which they cynically consent to Cayman jurisdiction *on behalf of their entities – while declining to consent to such jurisdiction personally*.

## FACTUAL BACKGROUND

### A.    Key Parties and Summary of Allegations

This class action was brought on November 10, 2016 by a group of Lead Plaintiffs ("Plaintiffs"), led by Joe Fasano, a New York resident suing in his home State. (Compl. ¶ 4.) Defendant Dang is a leading Chinese business-to-consumer e-commerce company. It is commonly known as the Amazon.com of China, and originally focused on selling books online. Dang also offers other media products and merchandise, including fashion; apparel; beauty and personal care; home and lifestyle; and children and maternity. In 2014, Dang had 24.3 million active customers. (Compl. ¶ 27.) At all times, Dang has maintained a website accessible to New York customers, which uses English for Dang's name. http://www.dangdang.com/.

Dangdang was co-founded by Defendants Guoqing Li and Peggy Yu Yu in 2000. They have retained controlling power over the Company, with Li as CEO holding over 31% of Dang stock and 75% of voting power as of August 1, 2016. (*Id.* ¶ 28.) Ms. Yu is Mr. Li's wife, and Dang's Chairwoman. (*Id.* ¶ 10.) Defendant Dang brought this motion, along with Dangdang Holding Company Ltd. ("Dang Parent"); two companies controlled by Mr. Li, Kewen Holding

Company ("Kewen") and Science & Culture International Ltd. ("SCI"), and First Profit Management Ltd. ("First Profit"), an entity controlled by defendant Yao. (Compl. ¶¶ 12-14, 16.)

Plaintiffs assert a violation of § 13(e) of the Securities Exchange Act of 1934 and Rule 13e-3 thereunder, and negligent misrepresentation under New York law. Plaintiffs assert that defendants falsely stated that (i) NYSE-listed Dang's Special Committee had independent counsel in Maples & Calder, and it reported solely to the Committee, and (ii) the merger was fair to Dang's minority stockholders. (*Id.* ¶¶ 2, 65-68, 110-22 (Counts III and IV).)

Defendants' Form 13E-3 statements twice falsely claimed Maples & Calder was independent counsel to the Special Committee as a reason to support the transaction, as follows

> "the Special Committee's *independent control of the sale process with the advice and assistance of … Maples and Calder, as its legal advisor[], [] reporting solely to the Special Committee*;" (Ex. A, August 1, 2016 Form 13E-3/A, Ex. 99(A)-1 at 38 (emphasis added))

> "the Special Committee retained and was advised by *independent legal counsels*." (*Id.* at 43 (emphasis added).)

Defendants' focus on these statements "substantive factors" supporting the transaction effectively concedes that these statements were important to investors. (*Id.* at 36 (Board and Special Committee); *accord id.* at 41 (Buyer's Group).) Notably, nowhere in the Form 13E-3 did Defendants disclose the Maples was providing ongoing legal advice to Dang, which was controlled by the proposed buyer, defendant Guoqing Li.

Plaintiffs also assert breaches of fiduciary duties and seek quasi-appraisal based on Dang accepting a grossly unfair $6.70 per American Depositary Share ("ADS") acquisition offer from a group led by Dang's controlling stockholder Li (the "Controlling Group"). Defendants rejected an available $8.80 per ADS all-cash offer from a third-party. Dang's board (a) capitulated to the Controlling Group, (b) discriminated in favor of the Controlling Group against a third party bidder; and (c) improperly paid $10 million in special benefits to Dang's controlling stockholder. (*Id.* ¶¶

2, 97-109, 123-27 (Counts I, II and V.)   The transaction involved the inherently coercive and conflicted context of a controlling stockholder cashing out minority stockholders.  (*Id.* ¶¶ 3, 83-88.) Unfairness is supported by controlling stockholder Guoqing Li publicly stating Dang was seriously undervalued at $9.00 per ADS share, just six months before his much lower offer. (*Id.* ¶¶ 30-33.)

Lead Plaintiffs seek class-wide damages for the difference between the unfair $6.70 per ADS price, and Dang's fair value of at least $8.80 per ADS share.   (Compl. ¶¶ 3, 117-18, 122.)

### B.   Defendants Listed Dang's Stock Exclusively in New York on the NYSE, and the Majority of Dang's Stock was Held in New York

Since 2010, defendants have focused their investor outreach on New York.   On December 8, 2010, Dang conducted an initial public offering ("IPO") on the New York Stock Exchange ("NYSE"), through which it sold over 17 million ADS shares at $16.00 per share.  (*Id.* ¶ 29.)  Defendants listed Dang's stock exclusively on the NYSE.  Dang admitted that "Our ADSs and common shares will not be listed on any other stock exchange or traded on any automated quotation system."  (Ex. B, Nov. 17, 2010 Form F-1 at 9; Ex. A, Form 13E-3/A, Ex. 99(A)-1 at 4 (Dang stock "cannot be traded on any stock exchange other than the NYSE").

The large majority of Dang stock was held in the United States.  Dang publicly admitted that "as of February 29, 2016,… 67.0% of our total outstanding common shares were held" in "the United States."  (Ex. C, Apr. 29, 2016 Form 20-F at 66.) Dang shares were held through "The Bank of New York Mellon, the depositary of our ADS program." (*Id.*)  Bank of New York Mellon's headquarters are located in New York City.  (Compl. ¶ 25.)

### C.   Defendants Disseminated Public Statements to Investors Through New York

Defendants disseminated Dang's public statements through New York, using its New York-located ADS Depositary.  (Ex. C, Form 20-F at 76.)   Dang would "furnish The Bank of New York Mellon, the depositary of our ADSs, with our annual reports ... and all notices of

shareholders' meetings and other reports and communications that are made generally available to our shareholders." (*Id.*) And Dang directed Bank of New York Mellon to "make such notices, reports and communications available to holders of" Dang's "ADS[]" shares. (*Id.*)

The Form 13E-3's at issue contain a "Notice of Extraordinary General Meeting of Shareholders," (Ex. A, Form 13E-3/A Ex. 99(A)-1 at 1), which was transmitted through Bank of New York Mellon in New York to Dang stockholders. The Form 13E-3 was also publicly available to investors through an S.E.C. filing in "Washington. D.C." (Ex. C, Form 20-F at 76.)

**D.** **Dang Adopted NYSE Corporate Governance Standards in its Charter and Public S.E.C. Filings, Imposing Higher Standards than Cayman Law**

At the time of its NYSE IPO, Dang adopted NYSE's corporate governance standards as binding rules to take precedence over Cayman Islands corporate governance law. Dang's IPO Prospectus admits that it is subject to NYSE rules which "impose various requirements on the corporate practices of public companies." (Ex. B, Nov. 17, 2010 Prospectus, Form F-1 at 37.) Dang's charter expressly incorporated NYSE rules by stating its fiduciaries are "subject" to "applicable New York Stock Exchange corporate governance rules, as long as the Company's American Depositary Shares are trading on" NYSE. (Ex. D, Dang's Sixth Am. & Restated Mem. of Assoc. at ¶ 77(b); *id.* at ¶ 78.)

Critically, Dang publicly admitted that NYSE's corporate governance standards are binding on Dang – rather than Cayman Islands standards.

> "Certain corporate governance practices in the Cayman Islands, which is our home country, differ significantly from the New York Stock Exchange corporate governance listing standards…. *Currently, we do not plan to rely on home country practice with respect to our corporate governance*...." (Ex. C, Apr. 29, 2016 Form 20-F at 80 (emphasis added).)

Dang also admitted that NYSE listing standards governed over Cayman Islands rules in its Code of Business Conduct and Ethics (the "Code") required by NYSE rules:

> "This Code of Business Conduct and Ethics ... contains general guidelines for conducting the business of E-Commerce China Dangdang Inc.... *To the extent this Code requires a higher standard than required by commercial practice or applicable laws, rules or regulations, we adhere to these higher standards.*" (Ex. P, at 1 (emphasis added.)

The Code was adopted because NYSE required that "Listed companies must adopt and disclose a code of business conduct and ethics for directors, officers and employees," that must address "conflicts of interest," "fair dealing," and public disclosures. (Ex. E, NYSE Manual § 303A.10.)

Notably, Dang's "Code" specifically addresses the two main corporate governance violations at issue: "Conflicts of Interest" and "Accuracy of Financial Reports and Other Public Communications." (Ex. P at 2-4, 7.) It prohibits "an interested director or senior officer" from "participating in any discussion among directors or senior officers of the Company" or being "involved in any proposed transaction between the Company and an Interested Business." (*Id.* at 3.) And it bars "Inaccurate, incomplete or untimely reporting" in public statements. (*Id.* at 7.)

NYSE Corporate Governance standards also are expressly incorporated into the merger agreement for the transaction at issue. This transaction was contingent upon "compliance in all material respects with the applicable listing and corporate governance rules and regulations of the New York Stock Exchange." (Ex. A, Form 13E-3/A, Ex. 99(A)-1 at 86.) Section 3.05(b) and 4.04(b) of the merger agreement both provide that the transaction will require "compliance with the rules and regulations of the New York Stock Exchange." (*Id.*, Annex A at 12, 23.) And Section 3.04(b) represents that all three members of Dang's "Special Committee" qualifies "as an 'independent director'" as "such term is defined in the NYSE Listed Company Manual Section 303A.02…" (*Id.*, Annex A at 11; *accord* § 7.02, Annex A at 43 (identifying representations from § "3.04" as condition to do merger).)

**E. Defendants Repeatedly Chose New York Courts in their ADS Depositary Agreements, Employment Agreements, and Underwriting Agreement**

Defendants' current motion conflicts with their prior agreements choosing a New York forum. *First*, Dang's ADS Depositary Agreement stats that it "consents and submits to the jurisdiction of any state or federal court in the State of New York," for "any suit or proceeding arising out of or relating to… the American Depositary Shares." (Ex. F, § 7.06 at 31.)

More importantly, the securities certificates for Dang's ADS stock ("ADRs") – issued by Bank of New York Mellon – contain a forum selection clause that specifically requires litigation of securities law claims in New York. The Dang ADRs provide that:

> "(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement … *shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York* and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought." (*Id.*, Exhibit A, § 23(b) at 17 (emphasis added).)

This applies to claims under the "Federal securities laws." (*Id*., Exhibit A, § 23(a) at 17.)

*Second*, Dang's standard executive "Employment Agreement," which it publicly filed with the S.E.C. as an Exhibit to its November 17, 2010 prospectus, specifically provides:

> "Each party hereto irrevocably agrees that the courts of the State of New York shall have jurisdiction to hear and determine any suit, action or proceeding … which may arise out of or in connection with this Agreement and for such purposes irrevocably submits to the jurisdiction of such courts*." (Ex. G § 16.)

Defendants Guoqing Li; Peggy Yu Yu; Danqian Lao; Lijun Chen; and Min Kan all served as Dang Executives ordinarily subject to this forum clause. (Compl. ¶¶ 7, 10, 15, 17-18.)

*Third*, an Underwriting Agreement signed by Dang, Kewen and Yu states that the parties:

> "submit to the non-exclusive jurisdiction of the Federal and state courts in the Borough of Manhattan in The City of New York … and irrevocably and unconditionally waive[] and agree[] not to ... claim in any such court that any such suit or proceeding in any such court has been brought in an inconvenient forum." (Ex. H, § 17 at 38-39 (filed Dec. 6, 2010).)

*Fourth*, Dang's former director defendants, Lu, Zhang and Xiaolong Li each have an "Indemnification Agreement" sating that the "Agreement shall be governed and interpreted in accordance with the laws of the State of New York." (Ex. I, § 16 (filed Nov. 17, 2010).)

### F.    Dang Maintained a New York Agent for Service of Process for Any Action Under United States Securities Laws

From November 17, 2010 through at least September 20, 2016, Dang maintained a New York agent for service of process for "any action brought against us under the securities laws of the United States." (Ex. B, Nov. 17, 2010 Prospectus at 44; *id.* at 6.) Dang appointed Law Debenture Corporation Services, Inc., at the following address: "404 Madison Avenue, New York, NY 10017." (Ex. J, Sept. 20, 2016 Amend. No. 1 to Form S-8, at 1.)

### G.    Key Steps of the Transaction Process Occurred in the United States

The transaction at issue involved many steps occurring in the United States. *First*, Dang's Special Committee hired Duff & Phelps, LLC at "311 South Wacker Drive" in "Chicago, IL" to provide a financial fairness opinion. (Ex. A, Form 13E-3/A, Annex B, May 28, 2016 Duff & Phelps letter to Dang, at pp. 1 of 7.) Duff & Phelps reviewed various financial documents and gave its financial analysis of Dang. (*Id.* at 2-3 of 7.) And the Special Committee hired "U.S. legal advisor" Shearman & Sterling LLP, which has New York headquarters. (*Id.*, Ex. 99(A)-1, at 25.)

*Second*, Defendants required that any Dang stockholders seeking to vote on or attend the meeting for the transaction must first send voting instructions and/or send their shares to the New York ADS Depositary. (*Id.*, Ex. 99(A)-1, at 4.) Bank of New York Mellon would vote "in accordance with the voting instructions ... timely received from holders of ADSs at the close of business in New York City." (*Id.*) Further, Dang stockholders could only "attend the extraordinary general meeting" for the transaction if they "cancel their ADS's" by delivering them "to the ADS depositary for cancellation … in New York City." (*Id.*)

*Third*, Defendants required Dang ADS stockholders seeking to exercise dissenter's rights to send "his or her ADSs to the ADS depositary and pay the fee of ADS depositary to withdraw his or her shares" in New York. (*Id.* at 101.) Defendants directed stockholders to "contact the ADS depositary's office at 101 Barclay Street, New York, New York, 10286." (*Id.*)

*Fourth*, under the transaction, Dang sent a voluntary withdrawal of listing to the NYSE in New York, requesting that the NYSE file a Form 25 to delist Dang. (*Id.*, Annex A, at § 6.14.)

### H.    Defendants Seek to Evade U.S. Jurisdiction After the Transaction

After Plaintiffs filed the Complaint, Defendants refused to accept service. On November 15, Plaintiffs sent a summons, complaint and waiver of service request to all thirteen defendants through counsel for the Controlling Group and the Special Committee listed in the merger agreement. Counsel for the Special Committee (Lu, Zhang and Xiaolong Li) refused to waive service. Controlling Group counsel did not respond. (S. Lieberman Decl. ¶¶ 12-14.)

On November 25, 2016, Plaintiffs' counsel served each of the five moving entity defendants at their registered offices in the Cayman Islands and the British Virgin Islands. (*Id.* ¶ 15.) After Plaintiffs made such service, counsel for these five Defendants reached out on November 29, 2016 to negotiate the date for their time to respond. (*Id.* ¶ 16.)

That same day – 19 days after this case was filed – defendant Dang filed a Petition for Appraisal in the Grand Court of the Cayman Islands ("Petition"). (*Id.* ¶ 17, Ex. M.) The Petition only seeks "to determine the fair value of the shares of" certain "dissenting shareholders." (*Id.* Ex. M, at 1.) It does not raise any of the claims made in this case. It does not (i) challenge the accuracy of Dang's Form 13E-3 filings, (ii) raise any U.S. securities law or New York misrepresentation claim, or (iii) allege any breach of fiduciary duties. (*Id.*) Indeed, the Petition does not name any of the 12 defendants in this case other than Dang itself.

As to the eight individual Defendants, Plaintiffs have sought for five months to serve them directly. Plaintiffs had the summons and complaint translated into Chinese for service in China through the Hague Convention. (*Id.* ¶ 19.) On January 27, 2017, Plaintiffs sent copies of the translated summons and complaint and relevant paperwork (the "Service Documents") to China's Ministry of Justice. (*Id.* ¶ 20.) On February 16, 2017, Plaintiffs' counsel contacted China's Ministry of Justice International Legal Cooperation Center, and was informed that the Service Documents had been transmitted to China's Supreme Court for processing to lower court in the region of each individual defendant. (*Id.* ¶¶ 21.) On March 23, 2017, Plaintiffs' counsel contacted the Ministry of Justice again, and was told that the Service Documents are still sitting at the Chinese Supreme Court, awaiting processing to the lower courts. (*Id.* ¶¶ 22.) On April 21, 2017, Plaintiffs' counsel again contacted the Ministry of Justice, but was again told that the Service Documents were still being prepared for transfer to regional lower courts. (*Id.* ¶¶ 23.)

Notably, three individual defendants (Yu, Li and Yao) filed declarations in this Court consenting to Cayman jurisdiction over their entities. (Decls. of Peggy Yu Yu, dkt. 40-41, ¶ 3 (Dang and Dang Parent only); Decls. of G. Li, dkt. 42-43, ¶ 6 ("Kewen" and "SCI" only); Decl. of D. Yao, dkt 44 ¶ 7 ("First Profit" only).) But they have conspicuously declined to consent to Cayman jurisdiction over themselves personally.

## ARGUMENT

## I. PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO SIGNIFICANT DEFERENCE BECAUSE THIS CASE INVOLVES A NEW YORK RESIDENT ASSERTING A U.S. SECURITIES LAW CLAIM IN THE DISTRICT WHERE DANG STOCK WAS LISTED, CONSISTENT WITH AN ADS FORUM CLAUSE

Plaintiffs' forum choice is entitled to great deference, because this action involves a New York plaintiff (Mr. Fasano), asserting U.S. securities and New York law claims in the New York district where Dang's stock was exclusively listed. Further, a New York forum is consistent with

Dang's ADS certificate forum selection clause, which expressly provides for securities law claims to be litigated in New York. (Ex. F, Exhibit A, § 23(a) at 17.) Thus, the "first level of inquiry" in the *forum non conveniens* analysis weighs heavily in Plaintiffs' favor. *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

*First*, Plaintiffs' choice of forum is entitled to "great deference" because they are led by Joe Fasano, a New York resident suing in his home state. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). The "great deference" to a New York plaintiff's choice of forum applies even for a representative "named plaintiff" in a class action brought with other plaintiffs who are "geographically scattered." *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 352-53 (S.D.N.Y. 2002). "This deference is not diminished by the class-action status," so long as there is a bona fide connection to the forum. *Id.* at 353. In *Holocaust Insurance Litigation*, this Court gave "great deference" to the class action plaintiffs' choice of forum, even though just "four of the nine" named plaintiffs "lived in New York or New Jersey, and the other five plaintiffs" were "scattered" elsewhere. *Id.* at 352; *accord DiRienzo*, 294 F.3d at 28 (deference where "less than all of the named plaintiffs" reside in New York).

Similarly, this Court gave "significant deference to the choice of forum of 'nearly ninety investors,'" in two British Virgin Islands hedge funds, because "four" investors were "located in New York." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 177 (S.D.N.Y. 2006). Significant deference applied, even though the case "involve[d] investment in BVI funds by predominantly non-U.S. residents." *Id.* at 177. The Court reasoned that the New York plaintiffs' "legitimate reasons for selecting New York," due to convenience, and "the interest of the United States in enforcing its securities laws," justified heightened deference to the choice of forum. *Id.* at 177-78.

Moreover, great deference is also warranted because defendants' choice to exclusively list on the NYSE and target the New York market "suggests that," in addition to Mr. Fasano, "whomever the unnamed plaintiff class or classes ultimately include, a substantial portion will consist of New York residents." *Holocaust Ins. Litig.*, 228 F. Supp. 2d at 352. This is particularly true because as of February 29, 2016 "67.0% of [Dang's] total outstanding common shares were held" in "the United States," through the New York ADS Depositary. (Ex. C, Form 20-F at 66.) Thus, this case has a strong bona fide connection to New York.

*Second*, binding precedent holds that "Lead Plaintiff's choice of this district is entitled to significant deference" when asserting a claim arising "under U.S. securities laws." *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *9 (S.D.N.Y., May 24, 2016). Indeed, the Second Circuit has held that "A strong public interest favors access to American courts for those who use American securities markets." *DiRienzo*, 294 F.3d at 33. For American "securities markets to function efficiently, securities fraud law must be clear and enforceable, because securities transactions are a matter of 'national public interest.'" *Id.* (quoting 15 U.S.C. § 78b). "The United States has a strong interest in enforcing its own securities laws and protecting U.S. markets," which gives Plaintiffs "a strong interest in pursuing their claims in a United States court." *Poseidon Concepts*, 2016 WL 3017395, at *8; *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 106 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (same "strong interest").

Indeed, the strong national interest in enforcing U.S. securities law claims makes this Court the best forum, because the Second Circuit is the "'Mother Court' of securities law." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 276 (2010) (Stevens, J. concurring in judgment) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737 (1975) (Blackmun, J., dissenting)). "Securities litigation is regularly litigated in New York, which is the

nation's financial center," and "its bar and courts are well-versed in suits of this nature." *Poseidon Concepts*, 2016 WL 3017395, at *9. Thus, this Court is best-suited for Plaintiffs' claim under § 13(e) of the Securities Exchange Act, and Rule 13e-3 thereunder.

*Third*, the Second Circuit has held that strong deference is warranted where, as here, "defendants sought out business opportunities in this country by registering stock" exclusively on the NYSE, and "filing statements with the SEC." *DiRienzo*, 294 F.3d at 28. Dang's exclusive NYSE listing means the class necessarily "conducted their stock transactions within the United States." *Id.* The Supreme Court has recently made clear that "the focus of the Exchange Act is not on the place where the deception originated, but upon purchases and sales of securities in the United States." *Morrison*, 561 U.S. at 266. Thus, Dang's listing on "a national securities exchange," triggers a particularly strong national interest in a New York forum. *Id.* The "primacy of the domestic exchange is suggested by the very prologue of the Exchange Act, which sets forth as its object '[t]o provide for the regulation of securities exchanges ... to prevent inequitable and unfair practices on such exchanges....'" *Id.* at 267 (quoting 48 Stat. 881 (1934)).

Defendants' exclusive NYSE listing of Dang makes this a stronger case for a New York forum than in *DiRienzo*. In *DiRienzo*, the company's stock was "traded on the New York Stock Exchange, the Toronto Stock Exchange, the Montreal Stock Exchange, and NASDAQ." 294 F.3d at 25. And only roughly "80 percent of the shares traded … during the class period traded on United States exchanges." *Id.* In stark contrast, it is undisputed that during the class period, Dang stock could "[]not be traded on any stock exchange other than the NYSE." (Ex. A, Form 13E-3/A, Ex. 99(A)-1 at 4.) Having exclusively targeted U.S investors using a New York stock exchange, Defendants cannot run from New York now.

*Fourth*, a New York forum is particularly appropriate because the actual Dang ADRs for its ADS stock issued through the ADS Depositary contain a New York forum selection clause that is mandatory for Dang.  The ADR specifically states that investors may pursue claims under "Federal securities laws" in court, and such claims:

> "*shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York* and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought."  (Ex. F, Exhibit A, § 23(a)-(b) at 17 (emphasis added).)

Such a clause "amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum" for purposes of *forum non conveniens*.  *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009).  It is an abuse of discretion for a district court not to consider such a forum clause on a *forum non conveniens* motion.  *Id.* at 701.  In *Aguas Lenders*, the Court held that such a forum selection clause was not just a factor in favor of a New York forum, but could be binding on a "successor in interest" or a "third-party beneficiary" of such a clause.  (*Id.*)  *Aguas Lenders* should govern here.

Accordingly, Plaintiffs' choice of a New York forum should be given significant deference.  In stark contrast, the entity Defendants rely on inapposite cases that do not involve a New York resident in his home forum asserting a U.S. securities law claim for stock traded on an American stock exchange. Defendants are misguided in relying on *Holzman v. Guoqiang Xin*, which involved an out-of-state plaintiff who "never lived in New York," and exclusively raised claims "under Cayman Islands corporate law."  2015 WL 5544357, at *1, *10 (S.D.N.Y. Sept. 18, 2015). In fact, "a securities class action" arising from *Holzman*'s facts was not dismissed for *forum non conveniens* and instead settled for $20 million.  *Id.* at *2.  And *In re Alcon S'holder Litig.*, involved six "institutional investor[]" plaintiffs from outside of New York, who did "not

assert" a "violation of United States securities law." 719 F. Supp. 2d 263, 270 (S.D.N.Y. 2010).[2]

Instead, *DiRienzo*, *Poseidon Concepts*, and *Morrison*'s focus on protecting national securities exchanges should govern, and Plaintiffs' choice of forum should receive strong deference.

## II.  DEFENDANTS HAVE FAILED TO SATISFY THEIR BURDEN OF SHOWING THAT CAYMAN IS AN ADEQUATE ALTERNATIVE FORUM FOR LITIGATING AGAINST ALL DEFENDANTS

Defendants have not shown that Cayman is an adequate alternative forum, because they have failed to show that the eight individual defendants are amenable to service of process there. This is a major concern. Three individual defendants (Yu, Li and Yao) consent to Cayman jurisdiction over their entities, but have declined to consent to such jurisdiction personally. *See* Dkt. Nos. 41-44. The other five individuals have refused to accept service. In contrast, clear precedent authorizes substitute service through company counsel on at least the five individual defendants who are Dang executives, (Compl. ¶¶ 7, 10, 15, 17-18), and likely all eight of them. *See Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013) (approving substitute service through "counsel for [] employer" of a "high-level employee"); *In GLG Life Tech Corp.*

---

[2] *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (plaintiff represented "foreign citizens" and no federal securities law claim); *Turedi v. Coca-Cola Co.*, 343 F. App'x. 623, 625 (2d Cir. 2009) (Turkish plaintiffs, no securities law claim); *Capital Currency Exch., N.V. v. Nat'l Westminster Bank, PLC*, 155 F.3d 603, 609-10 (2d Cir. 1998) (plaintiff company "organized under the laws of the Netherlands Antilles," and no federal securities law claim); *Alfadda v. Fenn*, 159 F.3d 41, 43 (2d Cir. 1998) (plaintiffs "Saudi businessmen" suing foreign corporation over "Private Placement" of securities not listed on national exchange); *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) (no securities law claim, and only claims exclusively governed by "British law"); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 553 (S.D.N.Y. 2013) (no securities law claim, and no deference to residence because plaintiff sued derivatively as member of Russian company); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) (plaintiffs "French corporations" without "an office or [] employees in New York," bringing claims over "investment made in France by … a private equity fund" that did not involve stock listed on American securities exchange); *Gilstrap v. Radianz, Ltd.*, 443 F. Supp. 474 (S.D.N.Y. 2006) ("plaintiffs here are not seeking to enforce the U.S. securities laws," and no New York named plaintiff); *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) ("plaintiffs … do not invoke the federal securities laws"). Two other cases are inapposite because they rely primarily on "international comity," and do not identify a New York plaintiff suing in his home state. *DeYoung v. Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989) ("I grant the motion to dismiss based on international comity.… I do not reach the other grounds for dismissal."); *Allstate Life Ins. Cor. v. Linter Grp. Ltd.*, 994 F.2d 996, 1000 (2d Cir. 2993) (relying on "comity to a foreign bankruptcy proceeding" and only applying *forum non conveniens* to remaining part of case to prevent inconvenience of litigating affirmative "claims" and "cross-claims" in different countries). *DiRienzo* itself limited *DeYoung* to "international comity," making its "forum non conveniens comment … dictum." 294 F.3d at 32.

*Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (same).

The Second Circuit standard for an adequate alternative forum requires the defendant to prove "that the litigation may be conducted elsewhere against all defendants." *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 510 (2d Cir. 1998) (vacating and remanding *forum non conveniens* dismissal for abuse of discretion). In a similar case, this Court rejected England as an adequate alternative forum because two of the nine defendants "may not be amenable to service of process by English courts." *Rio Tinto PLC v. Vale S.A.*, 2014 WL 7191250, at *13 (S.D.N.Y. Dec. 17, 2014). The Court specifically rejected the moving defendants' argument that "the court need not seek consent of non-appearing parties to dismiss on grounds of *forum non conveniens*." *Id.* The failure to address service on two of the defendants failed the burden of proving an adequate forum "against all defendants." *Id.*

*Rio Tinto* is directly on point, and should govern. Indeed, this Court specifically addressed this issue during the pre-motion conference, and moving defendants' counsel refused to confirm that all defendants would consent to Cayman jurisdiction. The Court asked:

> "If per chance this case were to find its way in the Cayman Islands, are you telling the these folks, some of whom you don't represent, are all going to be onboard for being defendants in the Cayman Islands? [Counsel]: No." (Feb. 14, 2017 Conf. Tr., dkt. no. 34, at 24:2-24:7.)

As this Court aptly put it: "If it turns out they are in the same pickle service-wise if this case is in the Cayman Islands as it is here, they've advanced nothing. That's not a basis for them to accede to your desire to have it transferred to the Cayman Island[s]. [Counsel]: That's fair enough." (*Id.* at 24:22-25:1.) That the moving defendants still decline to confirm Cayman jurisdiction over all defendants one month later proves that Cayman is not an adequate forum.[3]

---

[3] A Cayman forum is also less adequate than New York because it does not ensure that Plaintiff can obtain a "jury trial" for their securities law claim. *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345-46 (8th Cir. 1983); *Szollosy v. Hyatt Corp.*, 2000 WL 1576395, at *9 (D. Conn., Sept. 14, 2000) (same).

III. **DEFENDANTS CANNOT MAKE THE REQUIRED CLEAR SHOWING THAT A U.S. TRIAL WOULD BE SO OPPRESSIVE AND VEXATIOUS TO THEM AS TO BE OUT OF ALL PROPORTION TO PLAINTIFFS' CONVENIENCE UNDER THE PUBLIC AND PRIVATE INTEREST FACTORS**

The third step of the *forum non conveniens* analysis is to balance the public and private factors. Defendants must make a "clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiff's convenience." *DiRienzo*, 294 F.3d at 30 (citing *Koster v. Am. Lumbermen's Mut. Ins. Co.*, 330 U.S. 518, 524 (1947)). Unless "the balance is strongly in favor of the defendant, the plaintiff's choice of forum should" prevail. *DiRienzo*, 294 F.3d at 28; *Poseidon Concepts*, 2016 WL 3017395, at *9 (balance must "'tilt[s] strongly in favor of the foreign forum.'").

A. **The Public Factors Weigh in Favor of a New York Forum.**

The public factors weigh in favor of a New York forum. *First*, the "local interest" weighs heavily in favor of a New York forum because "A strong public interest favors access to American courts for those who use American securities markets." *DiRienzo*, 294 F.3d at 33. This is both a local and "national public interest." *Id.* Courts in this circuit have consistently denied *forum non conveniens* motions involving securities law claims because of the "strong interest in having American courts interpret and apply U.S. securities law." *Poseidon Concepts*, 2016 WL 3017395, at *10; *Cyberscan Tech., Inc. v. Sema Ltd.*, 2006 WL 3690651, at *13 (S.D.N.Y. Dec. 13, 2006); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999) ("[A]" strong local and national interest in enforcing the securities laws.").

This strong interest is heightened where a Chinese company (i) targets U.S. investors by exclusively listing stock on a U.S. exchange for $16 per ADS share, (ii) only to turn around 5 years later and go private in China with $6.70 per share management buyout. *Bloomberg.com* reports that 42 Chinese companies sought to delist from U.S. exchanges and go private in China

from January 2015 through April 2016.[4]  Allegedly false public statements by these companies disseminated in the U.S. can "have substantial effects on the United States market," giving the U.S. a particularly "strong interest" in applying its securities law to them.  *In re Vivendi Universal*, 242 F.R.D. at 106.

*Second*, *DiRienzo* is directly on point in holding that the "Jury Duty" factor weighs in favor of New York, which is "home to" the NYSE "through which [Dang] sold shares."  294 F.3d at 31.  Where, as here, "American investors have allegedly suffered harm from purchases made in New York, that community has an interest in considering such claims."  *Id.*  Although Dang incorporated in Cayman, "neither the dissemination of the allegedly misleading statements nor the plaintiffs' losses were localized there."  *Id.* at 32.  Thus this factor favors New York.

*Third*, "avoiding difficult problems in conflict of laws" also weighs in favor of New York, because of the U.S. securities law claim and because, as shown in Factual Background § D above, Dang adopted NYSE Corporate Governance listing standards that apply to fiduciary duty claims.  This factor thus weighs more in favor of New York than in *DiRienzo*, where the factor did "not favor either forum," 294 F.3d at 31, because some claims involved exclusively applying another country's law.  In contrast, here the claims besides the U.S. securities law claim will involve U.S. law (at least partially) because of NYSE's corporate governance rules.

Specifically, Dang's Articles of Association (its "Charter") expressly incorporate NYSE's corporate governance rules in ¶¶ 18(b), 77(b), and 78.   (Ex. D, at ¶¶ 18(b), 77(b), 78.)  Paragraph 77(b) states Dang's fiduciaries are "subject" to "applicable New York Stock Exchange corporate governance rules, as long as the Company's American Depositary Shares are trading on" NYSE.  (*Id.*, at ¶ 77(b) at 19.)   Paragraph 78 states that Dang's "corporate governance

---

[4] Bloomberg, "U.S.-Traded Chinese Stocks Drop on Going-Private Scrutiny," (May  6, 2016), *available at* https://www.bloomberg.com/news/articles/2016-05-06/china-reviews-concerns-over-relisting-companies-delisted-abroad.

policies" are subject to "the listing rules of the recognized stock exchange … where the Company's securities are traded." (*Id.* at ¶ 78.) Defendants' own expert admits that "Cayman Islands companies" may "modify the duties that directors owe under the general principles of equity and common law through the company's articles of association." (Decl. of R. Hollington, Q.C. ¶ 17, dkt. no. 45 at 7.) Thus, Dang's adoption of NYSE corporate governance rules makes them binding fiduciary duties on the defendants.

Indeed, Dang repeatedly admitted NYSE corporate governance standards apply, even beyond Cayman law, both in its April 29, 2016 Form 20-F and in its NYSE-mandated Code of Business Conduct and Ethics. (Ex. C, Apr. 29, 2016 Form 20-F at 80 ("Currently, we do not plan to rely on home country practice with respect to our corporate governance...."); Ex. P, at 1 ("if this Code requires a higher standard than required by … applicable laws … we adhere to these higher standards.") And Dang incorporated NYSE standards into the merger agreement, as a condition to closing the deal. (Ex. A, Form 13E-3/A, Ex. 99(A)-1 at 86; *id.* Annex A, at §§ 3.04(b), 3.05(b), 4.04(b), 7.02.) Thus, NYSE corporate governance rules apply here.

*Finally*, the administrative difficulties factor, if it at all, weighs in favor of a New York forum. This "Court has a good deal of experience adjudicating complex cases" like this one, involving a class of "plaintiffs" and "defendants from" different jurisdictions such as Cayman, British Virgin Islands, and China. *Montreal Pension Plan*, 446 F. Supp. 2d at 178.

Accordingly, the public factors weigh decisively in favor of a New York forum. In stark contrast, the moving defendants' argument that this is "mostly" a "foreign" dispute is contradicted by *DiRienzo*. (Defs.' Br. at 11.) Here, it was defendants who "came to" America "by registering [Dang] stock" exclusively "on [an] American exchange[], filing statements with the S.E.C." and trading all stock in New York. *DiRienzo*, 294 F.3d at 32. Plaintiffs "are

involved in this lawsuit precisely because of" statements by Defendants disseminated "within the United States that targeted United States investors." *Id.* This warrants a New York forum.

### B. The Private Factors also Weigh in Favor of a New York Forum.

The private factors also weigh in favor of a New York forum over Cayman. *First*, a substantial amount of documents and witnesses are located in the United States, including:

- Duff & Phelps in Chicago rendered a fairness opinion for the transaction, providing a key source of related documents and witnesses in the United States. (Ex. A, Form 13E-3/A, Annex B, May 28, 2016 letter from Duff & Phelps to Dang pp. 1 of 7.)

- Dang's ADS Depositary, Bank of New York Mellon, disseminated Dang public statements and other documents that Dang asked to be provided to investors, and has documents relating to stockholders voting on the merger and seeking to dissent. The ADS Depositary may also have drafts and related communications and witnesses to these events. (Ex. C, Apr. 29, 2016 Form 20-F at 76.)

- The legal advisor for Dang's Special Committee, Shearman & Sterling LLP, is headquartered in New York, and can provide documents and testimony regarding communications between the Controlling Group and the Special Committee, which are not privileged because these two parties were adverse in negotiating the transaction.

- The Securities and Exchange Commission's office in Washington, D.C., where Dang filed relevant forms and public documents involved in this case.

- Dang's U.S. law firm in this case previously represented the third-party that made a higher, $8.80 per ADS share offer for Dang, and thus possesses non-privileged documents such as the competing offer itself, communications with the Special Committee, and other documents relevant to Dang's value. (Ex. U at 1.)

- Dang's New York agent for service of process, Law and Debenture Corporation Services, 404 Madison Avenue, New York, NY, has information about related litigation, service of process issues, and related communications with U.S. investors.

*Second*, as to witnesses, most foreign witnesses in this case are current Dang executives and employees, due to the high-level nature of the public statements and merger discussions at issue. (*See, e.g.*, Compl. ¶¶ 7, 10, 15, 17-18). Such witnesses are within the moving "defendants' control" and thus "subject to compulsory process." *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011); *Update Art, Inc. v. Maariv Israel Newspaper, Inc.*, 635 F.

Supp. 228, 233 (S.D.N.Y. 1986) ("The witnesses in this case would likely be employees of …defendants" and thus "subject to the compulsory process of this Court."); *see also* Fed. R. Civ. P. 30(b)(6). Defendants have not shown that they would be subject to similar process in Cayman.

*Third*, it would be much more convenient to transport willing witnesses and documents in China to New York, a major "transportation hub," than to Cayman. *Poseidon Concepts*, 2016 WL 3017395, at *9. Flights from China to New York are much shorter and cost less than flying to Cayman. Expedia.com shows that a flight from Beijing to New York is nonstop, would last 12 hours 45 minutes, and cost $885. But a flight from Beijing to Cayman would last 22 hours 51 minutes, require two U.S. stops, and cost $1,007. (S. Lieberman Decl. ¶¶ 25-26; Exs. Q, R.) As for unwilling third parties, Plaintiffs can use the Hague Convention process and videotaped deposition testimony, which is no worse than in Cayman. *DiRienzo*, 294 F.3d at 32 (same).

Moreover, it is well-settled that "difficulties of discovery are mitigated by instant communication and rapid transport" thus "diminishing any supposed inconvenience" of a New York forum. *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 725 F. Supp. 2d 438, 443 (S.D.N.Y. 2010); *accord DiRienzo*, 294 F.3d at 30 (same).

Accordingly, the private interest factors weigh in favor of New York. In contrast, the moving defendants fatally fail to compare New York to Cayman – and instead focus on documents and witnesses being in "China, not New York." (Defs.' Br. at 14; Decls. of Yu for Dang and Dang Parent, dkt. nos. 40-41, ¶¶ 5-7; Decls. of Li for Kewen and SCI, dkt. 42-43 ¶¶ 4-5; Decl. of Yao for First Profit, dkt. 44 ¶¶ 4-5.) But the only relevant inquiry is New York vs. Cayman, *i.e.*, "whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant." *Iragorri,* 274 F.3d at 73. That some documents and witnesses are located in China – a forum neither party seeks – offers no support for

defendants' proposed forum.  *Holzman*, 2015 WL 5544357, at *8 ("factors are essentially neutral as between adjudicating here and the Cayman Islands" because "it will be logistically burdensome to transport the evidence and witnesses" to both forums); *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 773 (S.D.N.Y. 2011) (same).

### C.  Defendants' Use of New York Forum Clauses Proves that this Motion is Based on Forum-Shopping

*Finally,* this motion should be denied under the principle laid down by the Second Circuit in *Iragorri* that courts should be skeptical that "defendants [] may move for dismissal ... not because of genuine concern with convenience but because of [] forum-shopping reasons." 274 F.3d at 75.  As shown above in Factual Background § E, Defendants repeatedly agreed to a New York forum to target the U.S. securities market and U.S. investors.  This included a forum selection clause in the ADR for the Dang's ADS shares themselves, which chooses courts in "the Borough of Manhattan, The City of New York."  (Ex. F, Exhibit A, § 23(b) at 17.)  But now that they face U.S. accountability, defendants are dubiously claiming *forum non conveniens*.  The Court should reject such gamesmanship and deny this motion.

### IV.  DEFENDANTS' INDIRECT ATTEMPT TO DISCREDIT PLAINTIFFS' SECURITIES LAW CLAIM UNDER § 13(E) OF THE EXCHANGE ACT LACKS MERIT, BECAUSE THIS CLAIM IS SUPPORTED BY CASE LAW AND FACTS SHOWING THAT DEFENDANTS' STATEMENTS WERE FALSE

Defendants do not move to dismiss Plaintiffs' § 13(e) claim on the merits.  But their indirect attempt to discredit this claim as "tack[ed] on" (Defs.' Br. at 8) lacks merit because clear facts and legal authority support this claim.  *First*, Defendants falsely claim that "Plaintiffs concede that Dangdang disclosed the relevant facts about Maples and Calder." (*Id.* at 13.)  But the opposite is true.  Defendants twice falsely claimed in the Form 13E-3 that

> "*independent control of the sale process with the advice and assistance of Maples and Calder, as its legal advisor[], [] reporting solely to the Special Committee*;" (Ex. A, Aug. 1, 2016 Form 13E-3/A, Ex. 99(A)-1 at 38 (emphasis added)); and

"the Special Committee retained and was advised by *independent legal counsels*." (*Id.* at 43 (emphasis added).)

Nowhere in the Form 13E-3 did defendants disclose that these statements were blatantly false, or that Maples and Calder was continuing to represent and report to Dang and its controlling stockholder, Mr. Li. Indeed, the paragraph of the Complaint that the defendants refer to (Compl. ¶ 65) only cites Dang filings on December 7, 2010 and January 4, 2011 showing work by Maples & Calder on those two dates – over five-and-a-half years before the transaction at issue. (Ex. S, Ex. 5.1 to Form S-8 (Jan. 4, 2011); Ex. T, Ex. 5.1 to Form F-1/A (Dec. 7, 2010).) These documents do not state Maples & Calder was still representing Dang in September 2016.

Similarly, a solitary, buried reference to Dang's "registered office" at "Maples Corporate Services, Ltd.," at A-2 of the plan of merger is 119 pages after the second false statement. It does not disclose Dang's ongoing legal counsel from Maples & Calder. The corporate services entity is a different entity providing different services than the Maples & Calder law firm. In fact, a dissenting stockholder in Dang's appraisal Petition, "Senrigan Master Fund," uses "Maple Corporate Services" for its registered office, "but [its] attorneys are Ogier." (Ex. M at 6.) This badly fails to be "corrective information" with the required "degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Ganino v. Citizens Utilities Co.*, 228 F.3e 154, 167 (2d Cir. 2000).[5]

*Second*, defendants' claim that there is no private right of action under § 13(e) also fails because this Court, other courts, the S.E.C., and Congress have all recognized such an action. This Court and others have held § 13(e) creates a private right of action, as implied from its "literal terms." *Fisher v. Plessey Co.*, 1983 WL 1328, at *3 (S.D.N.Y. June 22, 1983); *accord*

---

[5] Defendants are also misguided in claiming that the misrepresentation of Maples & Calder as independent counsel turns on Cayman law of attorney conflicts, because a "conflict[] of interest" is a classic "material fact" under U.S. securities law. *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 106 (S.D.N.Y. 2009).

*Howing Co. v. Nationwide Corp.*, 972 F.2d 700, 708 (6th Cir. 1992) (same).[6]  The S.E.C.'s position is that "the Commission believes" that "courts" interpreting "Section 13(e)" should "construe its provisions in such a way as to imply a private right" of action.  "Going Private Transactions by Public Companies or Their Affiliates," S.E.C. Rel. No. 5884, 1977 WL 187732, at *24 (Nov. 17, 1977).  And Congress recognized private actions under § 13(e) in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), by excluding from the PSLRA's Safe Harbor any forward looking statement "in connection with a going-private transaction."  15 U.S.C. § 78u-5(b)(1)(E). This was defined as a private action arising from a going-private transaction "pursuant to § 78m(e)," *i.e.*, § 13(e) of the 1934 Act.  15 U.S.C. § 78u-5(i)(3).

Moreover, defendants are wrong in suggesting a §13(e) private right of action no longer exists after *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, which involved an entirely different statute with different language.  552 U.S. 148 (2008).  The Second Circuit has recently confirmed that there remains an "implied private right of action" under "Section 14(a)" of the Exchange Act after *Stoneridge*.  *DeKalb Cty. Pension Fund v. Transocean, Ltd.*, 817 F.3d 393 (2d Cir. 2016).  And section 13(e) contains virtually identical language to the language found to imply a private right of action in Section 14(a), in providing that "It shall be unlawful for an issuer" to act "in contravention of such rules as the Commission, in the public interest or for the protection of investors, may adopt ... as the Commission deems necessary … for the protection of investors."  *Compare* 15 U.S.C. § 78m(e), *with* 15 U.S.C. § 78n(a).  Finally, Plaintiffs could in any event maintain a claim under § 10(b) of the 1934 Act – which applies to securities transactions generally – if there was a problem with a §13(e) claim (but there is none).

---

[6] *See also Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1116 (D.R.I. 1990) (adopting Sixth Circuit's ruling in *Howing*); *Telenor E. Invest AS v. Altimo Holdings & Invests. Ltd.*, 567 F. Supp. 2d 432, 444 (S.D.N.Y. 2008) (addressing § 13(e) claim on the merits); *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 246–47 n.35 (S.D.N.Y. 2000) (assuming a private right of action).

## V. THE COURT SHOULD ORDER SUBSTITUTE SERVICE OF THE INDIVIDUAL DEFENDANTS THROUGH COMPANY COUNSEL IN THE UNITED STATES

Per the Court's direction at the February 14, 2017 pre-motion conference, Plaintiffs hereby move the Court for an order directing substitute service on the remaining eight individual defendants through Dang's U.S. company counsel. Plaintiffs' counsel has spent over five months trying to serve these eight individual defendants, but they have refused to accept service. (S. Lieberman Decl. ¶¶ 12-14.) Further, Plaintiffs' counsel has pursued the Hague Convention process for over three months, after having the summons and complaint translated to Chinese. (*Id.* ¶ 18.) Plaintiffs have contacted the Chinese Ministry of Justice International Legal Cooperation Center several times, and have been informed that the service documents remain in processing to be transferred to the regional lower courts applicable to the eight individual defendants.

*First*, substituted service on Dang's U.S. counsel is plainly warranted for the five individual defendants that remain Dang executives, some of whom also control the entities represented by Dang's U.S. counsel. These are defendants Guoqing Li, Danqian Yao, Peggy Yu Yu, Lijun Chen, and Min Kan. Defendant Guoqing Li is the controlling owner and CEO of Dang, and owner of appearing defendants Kewen and SCI. (Compl. ¶¶ 7, 13-14.) Defendant Peggy Yu Yu is Dang's Executive Chairwoman and Guoqing Li's wife. (*Id.* ¶ 10.) Defendant Danqian Yao is Dang's Senior Vice President, and the controlling owner of First Profit. (*Id.* ¶¶ 15-16.) Yu, Li and Yao have filed declarations here, and thus know of this proceeding. (Dkt. nos. 40-44.)

In addition, defendants Lijun Chen and Min Kan are both "vice president[s]" of Dang and members of the "Controlling Group" that acquired ownership of Dang in the transaction at issue. (Compl. ¶¶ 17-19.) Thus, all of the above five individuals are high-level Dang executives.

This Court has repeatedly held that substitute service on company counsel "is reasonably calculated to apprise … high-level" employees as to "the pendency of the action and therefore

comports with due process," and is also consistent with international agreements. *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013) (approving substitute service through "counsel for [] employer" of a "high-level employee"); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (same). In *Stream SICAV*, this Court authorized substituted service on the "general manager of all of" a company's subsidiaries by sending the complaint to the company's U.S. counsel. 989. F. Supp. 2d at 279-80. The Court held that such substituted service did not violate any international agreement because such service would occur in the United States, and did not violate due process because it was reasonably calculated to give the general manager notice of the action. *Id.* at 279. Further, the Court found that substitute service was warranted because the plaintiff had asked the defendants and company counsel to accept service for the employee, but they refused. *Id.* at 280.

*Stream SICAV* squarely addresses why the vagaries of service in China warrant substitute service. The Court held that "Service by the Ministry of Justice may or may not be successful," and "when successful, it has been said to take anywhere from four" to "18 months." *Id.* Thus, the Court ordered substituted service to avoid "needlessly delay[ing] the resolution of this case for many months" or causing the case against the entity to be "decoupled from the case against" an employee. *Id.* This Court held the same way in *GLG Life Tech*, where it authorized substitute service of a Chairman and CEO of a foreign company living in China, because the delay of Hague Convention service made it a "pointless and lengthy exercise." 287 F.R.D. at 267.

*Stream SICAV* and *GLG Life Tech* are directly on point and should govern. Ms. Yu and Messrs. Li, Yao, Chen and Kan are all high-level Dang employees who are certain to receive notice of service through Dang U.S. counsel. Further, all five of them were members of the Controlling Group that acquired Dang, giving them even greater access to notice of this action.

*Second*, substituted service on the other three individual defendants – Ruby Rong Lu, Xiaolong Li, and Ke Zhang – is warranted because each is a former long-serving director of Dang, who has an indemnification agreement that keep a "close connection" to Dang. *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 566 (C.D. Cal. 2012). Specifically, all three of these defendants remain closely connected to Dang because of their "Indemnification Agreement for Directors and Officers." (Ex. I, at § 10.) The Indemnification Agreement specifically covers this action, because Dang's indemnification obligation "shall continue during the period that the Indemnities is a director/an executive officer of the Company … and shall continue thereafter so long as the Indemnitee shall be subject to any possible Proceeding" arising out of conduct while serving as a director. (*Id.*) Further, the Agreement requires Dang and these three defendants to maintain contact with each other to provide notice of any such proceeding subject to indemnification. (*Id.* at § 8 at 4-5.)

In similar cases, courts have authorized substituted service through U.S. company counsel on both a "former officer" and former "director" of the Company. *Rose v. Deer Consumer Prod., Inc.*, 2011 WL 6951969, at *2 (C.D. Cal. Dec. 29, 2011); *see also Fahner v. Wayne County*, 2010 WL 3001217, at *1-*2 (E.D. Mich., July 28, 2010) (authorizing substituted service on "former Wayne County employee"). Given these defendants' ongoing relationship with Dang through their indemnification agreements, service on Dang's U.S. counsel is "reasonably calculated" to provide notice of this action to them. *Id.* Thus, substituted service on Dang's U.S. counsel is also warranted as to Ms. Lu, Mr. Zhang, and Xiaolong Li, and the court should order substituted service on Dang's U.S. counsel for all eight individual defendants.

## <u>CONCLUSION</u>

For the foregoing reasons, the moving defendants' motion to dismiss on *forum non conveniens* grounds should be denied, and Plaintiffs' motion for an order directing substitute service of the remaining individual defendants through Dang's company counsel in the United States should be granted.


Dated:   New York, NY                          SADIS & GOLDBERG LLP
         April 28, 2017

                                               /s/ Samuel J. Lieberman
                                               _____
                                               By:  Samuel J. Lieberman
                                                    Ben Hutman
                                                    551 Fifth Avenue, 21st Floor
                                                    New York, New York 10176
                                                    Telephone:  (212) 573-8164
                                                    Email:  slieberman@sglawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2017, a copy of the foregoing Plaintiff's Memorandum in Opposition to the Individual Defendants' Motions for Summary Judgment was filed electronically with Court's electronic filing system.  Notice of this filing will be sent by email to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.

Dated:  New York, New York
　　　　April 28, 2017

　　　　　　　　　　　　　　　　　　　　　/s/ Samuel J. Lieberman
　　　　　　　　　　　　　　　　　　　　　Samuel J. Lieberman