

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

File Number:  
233,388-01

December 21, 2017

**Abby F. Rudzin**  
D: +1 212 326 2033  
arudzin@omm.com

**BY ECF**

The Honorable Katherine Polk Failla  
United States District Judge  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, New York  10008

      Re:    *Fasano, et al., v. Guoqing Li, et al.,* **1:16-CV-08759 (KPF)**

Dear Judge Failla:

      We represent Defendants E-Commerce China Dangdang, Inc. ("Dangdang"), Dangdang Holding Company Limited, Kewen Holding Company Limited, Science & Culture International Limited, and First Profit Management.  We respectfully submit this letter in response to Plaintiffs' request for a pre-motion conference regarding their proposed motion to lift the Private Securities Litigation Reform Act discovery stay.  Defendants oppose Plaintiffs' request to lift the Reform-Act stay and respectfully request that the Court deny Plaintiffs permission to file their requested motion because they will not be able to meet their burden on that motion of showing that lifting the stay is necessary to prevent undue prejudice.

      Plaintiffs' request is precisely the type of burdensome discovery that the Reform-Act stay was designed to prevent.  Plaintiffs ask this Court to lift the stay so that they can (i) issue an interrogatory to Dangdang requesting it to identify any "third party companies with whom [it] has" discussed a potential transaction since September 20, 2016; and (ii) serve subpoenas on those third parties.  They base this request solely on rumors in an October 27 newspaper article suggesting that China's HNA Group might be discussing a potential transaction with Dangdang.  Speculation that discussions about a potential transaction might be occurring more than a year after the merger Plaintiffs are challenging is no reason to lift the stay.

      Discussions between Dangdang and potential investors in mid-to-late 2017 do not have any relevance to Plaintiffs' securities-law claim that "Dang and the other defendants falsely claimed that the going-private transaction . . . involved a fair price." (Pls. Letter at 2.)  The statements about which Plaintiffs complain are found in the 13e-3 Transaction Statement that Dangdang filed on June 17, 2016.  Current discussions about a potential transaction can shed no light on whether statements in the 13e-3 were true when made 18 months ago.  *See, e.g., In re Corning, Inc. Sec. Litig.*, 349 F. Supp. 2d 698, 717 (S.D.N.Y. 2004) ("[H]indsight cannot be the basis for liability under the federal securities laws.  Putting it another way, defendants are not charged with clairvoyance."); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *5

(S.D.N.Y. June 1, 1998) ("Allegations of fraud by hindsight are not actionable under the securities laws.").

Plaintiffs' letter makes much of HNA Group's rumored offer for Dangdang as higher than the price paid in the going-private transaction, but the passage of time makes the comparison unhelpful. A company's value today says little about what its value was in June 2016. This is particularly true for Dangdang, which operates in a rapidly changing industry (e-commerce) in a rapidly changing country (China). A look at how the market value of other Chinese e-commerce companies has changed since June 2016 demonstrates this point. Alibaba Group, for example, has American depositary shares traded here in New York, and their price increased 229% from $77.00 on June 17, 2016 (when the 13e-3 was filed) to $176.15 on October 27, 2017 (when the article Plaintiffs cite was published). Similarly, JD.com, Inc.'s American depositary share price increased 186% from $20.13 to $37.36 during the same period. Moreover, Dangdang's financial advisor solicited bids from potential third-party buyers in 2016, and no third-party with the financing necessary to complete a transaction was willing to pay a higher valuation for the company. The fact that someone might be willing to do so today reflects that the value has increased, not that the value calculation in 2016 was incorrect.

Even if Dangdang's 2017 discussions about potential transactions had some relevance to Plaintiffs' claims, that would still not justify lifting the stay. As Dangdang has already represented to Plaintiffs, Dangdang is preserving its documents and thus will be able to produce them in discovery if necessary. Plaintiffs ask to serve subpoenas on *third parties*, and they have not cited a single case suggesting that a *third-party's* valuations or other third-party documents concerning a potential post-merger transaction are relevant to the truth or falsity of statements about the merger. Indeed, Plaintiffs' own primary authority proves the opposite. Plaintiffs cite *Ross v. Proco Management, Inc.*, 1983 WL 17991 (Del. Ch. May 25, 1983), for the proposition that "post-merger deal discussions are discoverable." (Pls. Letter at 3.) That might justify requiring Dangdang to produce the documents in any future discovery. But *Ross* explicitly rejected the notion that *third-party* documents were relevant. *See* 1983 WL 17991, at *3 (rejecting plaintiff's request for third-party documents because "appraisals made by or on behalf of third parties . . . *are not likely to lead to admissible evidence as to value* and, therefore, are not discoverable") (emphasis added). Plaintiffs' other cases—all of which were decided under Delaware law rather than the governing Cayman Island law—either concern the relevance of the price actually paid in a completed post-merger transaction[1] or merely state general propositions about Delaware appraisal or rescissory-damages law.[2] None of them justifies seeking discovery—much less lifting the stay to seek such discovery—from third parties.

---

[1] *See Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 499 (Del. 2000) (holding that price paid in transactions contemplated before merger but completed afterwards could be considered to value company in appraisal action "to show that plans in effect at the time of the merger have born fruition"); *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 41–42 (Del. Ch. 2014) (holding that price actually paid for company in subsequent consummated transaction could be used to craft rescissory damages).

[2] *See Gonsalves v. Straight Arrow Publishers, Inc.*, 701 A.2d 357, 362 (Del. 1997) (noting that in certain circumstances valuation expert in appraisal action may consider post-merger evidence to

O'Melveny

Moreover, lifting the stay and ordering Dangdang to disclose the names of third parties with whom it has had discussions is unlikely to yield Plaintiffs any relief.  Those third parties are in China, where Plaintiffs have little ability to serve—much less enforce—third-party document subpoenas.  Plaintiffs' request appears designed to harass Dangdang and upset its discussions with other potential investors rather than an honest effort to preserve relevant information that would otherwise be lost.

As for Plaintiffs' recent statement concerning service on four individual Defendants, we are looking into whether that service has, in fact, been effected under Chinese law.  We note that those four Defendants have already agreed to submit to a Cayman Islands forum (*see* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds (Dkt. 52) at 11) if the Court agrees with Defendants that the Cayman Islands is the more appropriate forum for this dispute.  If service was proper, we would request that the previous motion and briefing filed by Defendants stand as the response to the complaint by these newly served Defendants as well.

\* \* \*

Defendants believe that a pre-motion conference should not be necessary.  If the Court would like to see us, however, we would respectfully request that the conference not be set until January 9, 2018, or later.  I will be out of the country on vacation beginning tomorrow and have several deposition sessions scheduled for the week of December 31.  We appreciate the Court's time and attention to this matter.

Respectfully submitted,

Abby F. Rudzin
*of* O'Melveny & Myers LLP

cc:  All counsel of record by ECF

---

confirm that pre-merger projections were not speculative); *Kaye v. Pantone, Inc.*, 1981 WL 15072, at \*2–3 (Del. Ch. Oct. 6, 1981) (holding that defendants' documents concerning post-merger financial results could be relevant in appraisal action to determine whether post-merger financial gains "were solely attributable to favorable trends in the earnings of the [target company] itself which may have been known or foreseen by [target company's] officers and directors prior to the merger"); *Reiss v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 466 (Del. Ch. 2011) (stating general standard for calculating rescissory damages under Delaware law).