UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOE FASANO, ALTIMEO OPTIMUM FUND,
and ALTIMEO ASSET MANAGEMENT,

                        Plaintiffs,

            v.

JUOQING LI, PEGGY YU YU, DANGDANG
HOLDING COMPANY, LTD., E-COMMERCE
CHINA DANGDANG INC., KEWEN
HOLDING CO. LTD., SCIENCE & CULTURE
LTD., FIRST PROFIT MANAGEMENT, LTD.,
DANQIAN YAO, LIJUN CHEN, MIN KAN,
RUBY RONG LU, KE ZHANG, and
XIAOLONG LI,

                        Defendants.

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 29, 2017

16 Civ. 8759 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

In this putative class action, the co-Lead Plaintiffs — Joe Fasano, Altimeo

Optimum Fund, and Altimeo Asset Management — challenge the fairness of,

and seek damages related to, a "going private" merger approved by the

shareholders of E-Commerce China Dangdang Inc. on September 12, 2016.

Before the Court is a motion to dismiss for *forum non conveniens* grounds filed

by those Defendants that have been served (collectively, "Defendants"). In

brief, Defendants argue that Plaintiffs' choice of forum should be accorded little

deference; that the Cayman Islands presents an adequate alternative forum;

and that the balance of public and private interests favors dismissal. Plaintiffs

oppose the motion and urge the Court instead to grant substituted service on

the individual Defendants who have not yet been served.  For the reasons set forth below, the Court grants Defendants' motion to dismiss, and denies as moot Plaintiffs' request for substituted service.

BACKGROUND[1]

## A.    Factual Background[2]

### 1.    The Parties

This case involves five corporate and eight individual defendants.  The principal corporate defendant is E-Commerce China Dangdang Inc. ("Dangdang"), an online retailer founded in 2000 that sells merchandise to customers in China.  (Compl. ¶¶ 27-28).  The company is incorporated in the Cayman Islands, though its principal offices and substantially all of its employees, operations, and company files are located in China.  (Dangdang Decl. ¶¶ 3-5).  In 2014, Dangdang had 24.3 million active customers. (Compl. ¶ 27).  On December 8, 2010, Dangdang completed an initial public

---

[1]    For ease of reference, the Court refers to the Complaint as "Compl." (Dkt. #1); to Defendants' memorandum of law in support of the motion to dismiss as "Def. Br." (Dkt. #39); to the Declaration of Peggy Yu Yu on behalf of E-Commerce China Dangdang, Inc. in support of the motion to dismiss as "Dangdang Decl." (Dkt. #40); to the Declaration of Guoqing Li on behalf of Kewen Holding Company Limited in support of the motion to dismiss as "Kewen Decl." (Dkt. #42); to the Declaration of Guoqing Li on behalf of Science & Culture International Limited in support of the motion to dismiss as "SCI Decl." (Dkt. #43); to the Declaration of Danqian Yao on behalf of First Profit Management Limited in support of the motion to dismiss as "First Profit Decl." (Dkt. #44); to Plaintiffs' memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #48); to the Declaration of Samuel Lieberman in opposition to Defendants' motion to dismiss as "Lieberman Decl." (Dkt. #49); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #52).

[2]    On a motion to dismiss for *forum non conveniens*, when decided without a factual hearing, the Court "must accept the facts alleged in the complaint as true." *RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013) (citing *Aguas Lenders Recovery Grp. LLC* v. *Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009)).  The Court may also "consider certain evidence outside the pleadings, including affidavits." *Id.* (internal citation omitted).

offering ("IPO") of American Depositary Shares ("ADS") on the New York Stock Exchange ("NYSE"). (*Id.* at ¶ 29). Through the IPO, Dangdang sold 17 million ADS at $16.00 per share, raising $272 million in capital. (*Id.*). Since then, Dangdang has been listed exclusively on the NYSE. (Pl. Opp. 4).

Defendant Dangdang Holding Company Limited ("DHC") is a company incorporated under the laws of the Cayman Islands with its principal place of business in Beijing, China. (Compl. ¶ 12). Defendants Kewen Holding Co. Limited ("Kewen"), Science & Culture International Limited ("SCI"), and First Profit Management Limited ("First Profit") are companies that serve as investment holding vehicles and that are incorporated under the laws of the British Virgin Islands. (*Id.* at ¶¶ 13-16). Kewen and SCI are controlled by Mr. Guoqing Li; First Profit, by Mr. Danqian Yao. (*Id.*).

The individual defendants include Mr. Guoqing Li ("Li") and Ms. Peggy Yu Yu ("Yu"), who co-founded Dangdang and have retained control over the company. (Compl. ¶ 28). Mr. Li is Dangdang's Chief Executive Officer and Ms. Yu is its Chairwoman. (*Id.* at ¶¶ 7, 10). As of August 1, 2016, Li and Yu owned 31.2% of the company's common stock and held 75% of its voting power. (*Id.*). Other individual defendants include: Mr. Danqian Yao ("Yao"), a Dangdang Senior Vice President; Mr. Lijun Chen ("Chen") and Mr. Min Kan ("Kan"), two Dangdang Vice Presidents; and Ms. Ruby Rong Lu ("Lu"), Mr. Ke Zhang ("Zhang"), and Mr. Xiaolong Li ("Xiaolong"), former Dangdang Directors who were members of the committee that approved the going private merger at issue here ("Special Committee"). (*Id.* at ¶¶ 15-23).

Plaintiff Joe Fasano ("Fasano"), a New York resident, owned approximately 3,000 ADS shares, equivalent to approximately 15,000 common shares of Dangdang.[3]  (Compl. ¶ 4; Def. Br. 4).  Plaintiff Altimeo Optimum Fund ("AOF") is a French investment fund that held over 440,000 ADS shares, or approximately 2.2 million common shares, prior to the merger.  (Compl. ¶ 5). Plaintiff Altimeo Asset Management ("AAM"), a French company, is AOF's asset management company and authorized agent.  (*Id.* at ¶¶ 5-6).[4]

## 2.     The Merger

On July 9, 2015, Defendants Li, Yu, Yao, Chen, Kan, DHC, Kewen, SCI, and First Profit — a group holding 83.6% of Dangdang's voting power ("Controlling Group") — submitted a bid to "buy out" Dangdang minority shareholders, including Plaintiffs Fasano, AOF, and AAM.  (Compl. at ¶¶ 19, 37, 41).  They bid $7.81 per ADS share.  (*Id.* at ¶ 37).  Dangdang created a Special Committee, comprised of individual Defendants Lu, Zhang, and Xiaolong, to evaluate the offer.  (*Id.* at ¶ 42).  The Special Committee retained legal counsel, Maples and Calder ("Maples"), which specializes in the laws of the Cayman Islands, Ireland, and the British Virgin Islands.  (*Id.* at ¶ 65).

---

[3]     Prior to the merger, each ADS represented five common shares of Dangdang.  (Compl. ¶ 4).

[4]     In their opening brief, Defendants state that AAM and AOF owned 840,000 ADS, not 440,000 ADS as stated in the Complaint.  (Def. Br. 5).  To support that claim, they cite to page 4, lines 18-25, of the transcript from the March 8, 2017 hearing held before this Court.  (*Id.*).  That transcript does not state that Altimeo owned 840,000 ADS.  (Dkt. #46).  For this reason, and because on a motion to dismiss for *forum non conveniens* the Court accepts as true the allegations in the Complaint, *see RIGroup LLC*, 949 F. Supp. 2d at 549, for present purposes the Court accepts Plaintiffs' representation that Altimeo owned 440,000 ADS.

Maples also served as legal counsel to Dangdang, including in connection with Dangdang's registration statement for its NYSE IPO.  (*Id.*).

On March 9, 2016, a third-party private equity firm, iMeigu Capital Management, submitted an all-cash offer of $8.80 per ADS share.  (Compl. ¶ 43).  On May 28, 2016, the Special Committee and Dangdang's Board of Directors accepted the Controlling Group's bid for $7.81 per share and approved the proposed merger.  (Def. Br. 4).  Thereafter, Dangdang filed a Schedule 13E-3 Transaction Statement with the Securities and Exchange Commission ("SEC").  (*Id.*).

In their submissions to the SEC, the Controlling Group, Special Committee, and Dangdang stated that Maples provided the Special Committee with "independent control of the sales process."  (Compl. ¶ 67).  They did not indicate that Maples was then, or that it had previously been, Dangdang's counsel.  (*Id.*).  On September 12, 2016, Dangdang held a shareholder meeting in China, where 97.7% of Dangdang's shares voted to approve the merger.  (Dangdang Decl. ¶ 16).  On September 20, 2016, the merger closed and became effective when the plan of merger and agreement were filed with the Cayman Islands Registrar of Companies.  (*Id.* at ¶ 17).

Nine shareholders — none of whom is a Plaintiff in the instant action — objected to the merger.  (Dangdang Decl. ¶ 18).  On November 29, 2016, Dangdang filed a petition in the Grand Court of the Cayman Islands asking that court to determine the fair value of the shares held by the objecting

shareholders. (Def. Br. 4). That petition is pending before the Grand Court. (*Id.*).

## B. Procedural Background

On November 10, 2016, Fasano, AOF, and AAM filed a complaint individually and on behalf of other similarly situated minority shareholders who were cashed out in the merger. (Compl.). They asserted that the consideration paid by the Controlling Group for the Dangdang ADS shares was below-market and "grossly unfair" (*id.* at ¶ 1); that the Special Committee failed to protect the public shareholders' interests when they acceded to the Controlling Group's demands (*id.* at ¶ 2); and that the public shareholders were misled when they were told that the Special Committee had obtained independent legal counsel, when in fact Maples was conflicted because it also served as Dangdang's counsel (*id.*). Plaintiffs sought damages for "breaches of fiduciary duties, violations of U.S. securities law and New York common law, and a quasi-appraisal due to misrepresentations and omissions in the Forms 13E-3 for the Merger." (*Id.* at ¶ 1).

Defendants Dangdang, DHC, Kewen, SCI, and First Profit were served with copies of the summons and complaint. (Lieberman Decl. ¶ 15). At the time the instant motion was filed, none of the individual Defendants had been personally served. Indeed, at the time their opposition brief was filed, Plaintiffs' counsel recited that it "ha[d] spent over five months trying to serve these … individual defendants, but they have refused to accept service." (Pl. Opp. 25). In an effort to effectuate service of process consistent with the Hague

Convention, Plaintiff's counsel had the summons and complaint translated into Chinese and delivered to the Chinese Ministry of Justice's International Legal Cooperation Center for processing. (Lieberman Decl. ¶ 20; *see also id.* at ¶¶ 21-24 (discussing follow-up communications)). On December 20, 2017, Plaintiffs' counsel informed the Court that service was effectuated on four individual Defendants — Yu, Yao, Chen, and Kan — "in accordance with the Hague Service Convention ... by the Chinese Ministry of Justice delivering the documents to Dangdang's legal counsel, You Qianqian." (Dkt. #55).

On January 30, 2017, Plaintiffs Fasano, AAM, and AOF filed a motion to be appointed Co-Lead Plaintiffs, pursuant to Securities Exchange Act of 1934 ("Exchange Act") § 21D(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 42 of the Federal Rules of Civil Procedure. (Dkt. #22). Plaintiffs also moved to approve their selection of Sadis & Goldberg LLP as Lead Counsel. (*Id.*). In their motion, Plaintiffs argued that Fasano, AOF, and AAM have the largest financial interests in the outcome of the case, their claims are typical of the claims of the class, and they would fairly and adequately represent the interests of the class. (*Id.*). On March 8, 2017, the Court issued an Order appointing Fasano, AOF, and AAM as Co-Lead Plaintiffs in this action and Sadis & Goldberg LLP as Lead Counsel. (Dkt. #32).

On March 15, 2017, Defendants filed the motion to dismiss for *forum non conveniens* that is presently before the Court. (Dkt. #38-45). On April 28, 2017, Plaintiffs filed their opposition materials. (Dkt. #48-49). On May 17, 2017, Defendants filed their reply papers. (Dkt. #52-53).

**DISCUSSION**

**A.     Motions to Dismiss Based on *Forum Non Conveniens***

The decision to grant a motion to dismiss on grounds of *forum non conveniens* "lies wholly within the broad discretion of the district court." *Iragorri* v. *United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (citation omitted).   "The doctrine of *forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey* v. *Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (internal quotation marks and citation omitted).   The party seeking dismissal "bears the burden of proof on all elements of the motion." *Bank of Credit and Commerce Int'l (Overseas) Ltd.* v. *State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

The Second Circuit has established a three-part test to assess such a motion.   In the first step, the district court must determine the "degree of deference properly accorded the plaintiff's choice of forum." *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).   Next, the district court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.*   Finally, the district court must "balance[] the private and public interests implicated in the choice of forum." *Id.*

### 1.     Step One:  Deference to Plaintiffs' Choice of Forum

Though there generally is a "strong presumption in favor of the plaintiff's choice of forum," *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 255 (1981), the degree of deference accorded "varies with the circumstances," *Iragorri*, 274 F.3d at 71.  The Second Circuit has identified at least three instances where the plaintiff's choice of forum merits diminished deference.

*First*, where the plaintiff's choice of forum is "motivated by tactical advantage" rather than "by legitimate reasons," courts must give less deference.  *Iragorri*, 274 F.3d at 73.  Accordingly, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."  *Id.* at 72 (footnote omitted).

*Second*, where the plaintiff is a foreign person, her choice of forum is accorded less weight.  *See, e.g.*, *Iragorri*, 274 F.3d at 71 (finding that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has sued in her home forum than when a foreign plaintiff chooses the United States as a forum).  This is so because the "central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient."  *Piper Aircraft*, 454 U.S. at 256.  "[W]hen a foreign plaintiff chooses a U.S. forum, it is much less reasonable to presume that the choice was made for convenience."  *Iragorri*, 274 F.3d at 71 (citation omitted).

*Third*, where a plaintiff sues in a representative capacity, her choice of forum merits less deference. *DiRienzo* v. *Philip Services Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (noting that representative plaintiffs' choice of forum is to be "[a]fford[ed] less deference").

## 2.    Step Two:  Adequacy and Availability of the Alternative Forum

Under the next prong of the *forum non conveniens* test, courts assess whether the alternative forum is adequate.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  The alternative forum is inadequate when there is "a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *Monegasque De Reassurances S.A.M. (Monde Re)* v. *NAK Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).  A plaintiff may not "defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Piper Aircraft Co.*, 454 U.S. at 247.

## 3.    Step 3:  Balancing Public and Private Interests

In the final step, the district court "balance[s] a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000).  The private interest factors include:  "[i] the relative ease of access to evidence; [ii] the cost to transport

witnesses to trial; [iii] the availability of compulsory process for unwilling witnesses; and [iv] other factors that make the trial more expeditious or less expensive." *Maersk, Inc.* v. *Neewra, Inc.*, 554 F. Supp. 2d 424, 453-54 (S.D.N.Y. 2008) (citing *Iragorri*, 274 F.3d at 73-74).  The public interest factors include (i) the local interest in resolving local disputes, (ii) the local interest in avoiding the difficulties of applying foreign law, (iii) the imposition on jurors of having them decide cases that have no impact on their community, and (iv) the administrative challenges associated with court congestion.  *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508-09 (1947).

Where plaintiff's choice of forum merits significant deference, dismissal based on the balancing of factors is only warranted when "trial in the choice forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or [when] the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems."  *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (internal quotation marks and alterations omitted).  By contrast, where the plaintiff's choice of forum is entitled to diminished deference — for instance, if plaintiffs are foreign persons, have sued in a representative capacity, or have engaged in forum-shopping — a lower standard for dismissal applies, under which "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."  *Iragorri*, 274 F.3d at 74-75.

**B.      The Court Grants Defendants' Motion to Dismiss**

**1.      Plaintiffs' Choice of Forum Merits Little Deference**

The Court begins by assessing the degree of deference owed to Plaintiffs' choice of forum.  Where all plaintiffs are residents of the forum in which they bring suit, their choice is entitled to significant deference.  *See generally Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).  But where plaintiffs include foreign entities, their choice is entitled to less deference.  *See Piper Aircraft*, 454 U.S. at 256 ("a foreign plaintiff's choice [of forum] deserves less deference").  Here, the Lead Plaintiffs are of mixed provenance.  Two, AOM and AAF, are French entities; one, Mr. Fasano, is a New York resident.  AOM's and AAF's financial interest in this litigation materially outstrips that of Mr. Fasano.  In fact, Mr. Fasano's financial interest is less than 1% of the French Plaintiffs' interest.  (Def. Br. 7).  Because the foreign plaintiffs outnumber the domestic plaintiff, and because their financial interest in the action is much greater than the domestic plaintiff's interest, the Court accords diminished deference to Plaintiffs' choice of forum.

The deference accorded is further diminished because the Lead Plaintiffs have brought suit in a representative capacity.  A "plaintiff's choice of forum weighs far less heavily in a case … where plaintiffs sue strictly in a representative or derivative capacity."  *DeYoung* v. *Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989).  That is so because "the representative plaintiff has only a small direct interest in a large controversy in which there are many potential plaintiffs, usually in many potential jurisdictions."  *Holzman* v. *Guoqiang Xin*,

No. 12 Civ. 8405 (AJN), 2015 WL 5544357, at *7 (S.D.N.Y. Sept. 18, 2015).

The Court must still accord some deference, *see, e.g.*, *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 352 (S.D.N.Y. 2002), but the degree of deference is significantly less than when plaintiffs sue strictly in their personal capacity.

Defendants urge the Court to go a step further and to accord no deference at all to Plaintiffs' choice of forum. In their view, because Plaintiff "invested in a foreign company" (Def. Br. 7), the Court may not defer. That argument runs contrary to the law in this Circuit. *See, e.g.*, *DiRienzo*, 294 F.3d at 28 (showing some deference to plaintiffs' choice of forum where plaintiffs had invested in a Canadian company, shares of which were traded on the NYSE). The cases on which Defendants primarily rely do not support their broad proposition; instead, they merely establish that plaintiffs who invest in foreign *countries* — as distinguished from foreign *companies* — are not entitled to deference. In *Sussman* v. *Bank of Israel*, for example, plaintiffs had invested in "publicly held shares of Israeli banks, which were traded on the Tel Aviv stock market." 801 F. Supp. 1068, 1070 (S.D.N.Y. 1992). In *RIGroup LLC* v. *Trefonisco Management Ltd.*, plaintiffs "owned a controlling interest in … a Russian real estate company" and engaged in real estate investment "in various locations throughout the world." 949 F. Supp. 2d 546, 549, 553 (S.D.N.Y. 2013). Even *In re Alcon Shareholder Litigation*, which involved investment in a foreign corporation that was traded on the NYSE, does not support Defendants' claim because in *Alcon*, unlike here, there was "no NYSE securities transaction

13

[that] underpin[ned] Plaintiffs' requests for prospective relief." 719 F. Supp. 2d 263, 270 (S.D.N.Y. 2010). Defendants have not cited a single case where a plaintiff's choice of forum was accorded no deference simply because the plaintiff purchased shares of a foreign company.

Second, Defendants argue that the Court should "treat Altimeo as the real plaintiff when evaluating Defendants' request for *forum non conveniens* dismissal." (Def. Reply 3). They note that, under the PSLRA, there is a rebuttable presumption that the investor with the largest financial interest in the litigation should lead the class of plaintiffs. *See generally* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Defendants argue that "[t]hat investor is Altimeo, whose claimed Dangdang holdings eclipse Mr. Fasano's." (Def. Reply 2-3). Yet in an Order dated March 8, 2017, this Court appointed Fasano as Co-Lead Plaintiff. Far from finding that Fasano was not a real party in interest, this Court held that Fasano "satisf[ies] the requirements for Lead Plaintiff pursuant to 21D(a)(3)(B)(iii) of the [PSLRA]." (Dkt. #32 at 2). That decision applies with equal force today. Therefore, the Court will not treat AAM and AOF as the only real plaintiffs in this action. Instead, the Court accords diminished deference to Plaintiffs' choice of forum because the Lead Plaintiffs with the largest financial stake in the litigation are foreign entities.

Defendants cite a single case — *Capital Currency Exchange, N.V.* v. *National Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998) — to support their claim that the Court should not consider Fasano to be a real party in interest. In that case, a Netherlands Antilles corporation and several

14

of its affiliates (one of which was incorporated in New York) sued several English banks and their officers.  In assessing the deference due to the plaintiffs' choice of forum, the Second Circuit held that "there is not a strong presumption in favor of the plaintiffs' choice of forum" because "the real parties in interest are foreign corporations." *Id.* at 612.  The Court did so because the alleged harms against the plaintiffs were committed exclusively against the non-U.S. entities, and the only connection to the American plaintiff was, in the Court's words, "a red herring." *Id.*  Here, by contrast, there is no suggestion that any injuries to Fasano arose from acts or omissions different from those that may have injured AOF and AAM.

Finally, the record provides no direct evidence that Plaintiffs had an improper motive in bringing suit here.  Based on the record before it, the Court cannot conclude that Mr. Fasano was added to the case simply for forum-shopping purposes, whether to benefit from favorable laws or damage measurements, to appear before generous juries, or to burden Defendants with an inconvenient forum.  For this reason, this Court holds that Plaintiffs' choice of forum deserves some deference, though that deference is diminished for the reasons stated above.

### 2.  The Cayman Islands Is an Adequate Alternative Forum

The Court next evaluates whether the alternative forum — here, the Cayman Islands — represents an adequate alternative forum.  An alternative forum is adequate if "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329

15

F.3d at 75.  Movants bear the burden of demonstrating that an adequate

alternative exists.  *State Bank of Pak.*, 273 F.3d at 248.

> ### a.  All Defendants That Have Been Served Are Amenable to Service of Process in the Cayman Islands

There is no dispute that the five corporate Defendants, all of whom have

been served, are amenable to service in the Cayman Islands.  Indeed,

Dangdang and DHC are Cayman Islands companies with registered offices

there.  (Compl. ¶¶ 11-12).  And the remaining three — First Profit, Kewen, and

SCI — have all consented to jurisdiction in the Cayman Islands.  (Kewen Decl.

¶ 6; SCI Decl. ¶ 6; First Profit Decl. ¶ 7).  Similarly, the four individual

Defendants on whom Plaintiffs effectuated service "in accordance with the

Hague Service Convention … [by] delivering the documents to Dangdang's legal

counsel" (Dkt. #55), have submitted to the Cayman Islands court's jurisdiction

(Def. Reply 11).

By contrast, three of the four unserved individual Defendants — Lu,

Zhang, and Xiaolong — have not consented to service of process in the Cayman

Islands.[5]  Plaintiffs claim that this renders the Cayman Islands unsuitable as

an alternative forum.  They cite various cases where courts, including the

Second Circuit and sister courts in this District, have held that alternative fora

are inadequate where defendants have not proven that suit could be brought

against all defendants.  Plaintiffs point to *Evolution Online Systems, Inc.*

v. *Koninklijke PTT Nederland N.V.*, where the Court explained that defendants

---

[5]      Defendant Li, who has yet to be served, has consented to jurisdiction in the Cayman Islands.  (Def. Reply 11).

seeking to establish the adequacy of alternative fora must prove "that the litigation may be conducted elsewhere against all defendants." 145 F.3d 505, 510 (2d Cir. 1998). And they cite *Rio Tinto PLC* v. *Vale S.A.*, where a sister court in this District rejected the alternative forum as inadequate because two of the nine defendants "may not be amenable to service of process [there]." No. 14 Civ. 3042 (RMB) (AJP), 2014 WL 7191250, at *13 (S.D.N.Y. Dec. 7, 2014).

Defendants, for their part, contend that the Court may not consider any of the four individual Defendants that have not been served because those Defendants have yet to submit to the Court's jurisdiction. Defendants note that every case on which Plaintiffs rely featured defendants that had been served. Citing *PT United Can Company Ltd.* v. *Crown Cork & Seal Co., Inc.*, they argue that, under controlling precedent, this Court may only consider the adequacy of the alternative forum as to those defendants over which the Court presently has jurisdiction. 138 F.3d 65, 74 (2d Cir. 1998) (holding that a court need not "consider the motion to dismiss on the grounds of *forum non conveniens* as to ... defendants [over whom the Court lacked jurisdiction]").

The Court agrees with Defendants that, in determining the adequacy of an alternative forum, the Court may only consider those parties over which it currently exercises jurisdiction. Otherwise, as the Second Circuit has noted, "a plaintiff could craftily preemptively defeat any [*forum non conveniens*] motion" by including defendants in the complaint who were amenable to service in the home forum but not in the alternative forum. *PT United Can*, 138 F.3d at 74.

17

Here, all of the Defendants that have been served are amenable to service of process in the Cayman Islands.  For this reason, the alternative jurisdiction is adequate for purposes of service of process.  *See, e.g.*, *Herald* v. *Kohn*, 540 F. App'x 19, 27 (2d Cir. 2013) (summary order) (concluding that alternative jurisdictions were "unequivocally adequate [where] each Defendant who has entered appearance … consents to jurisdiction [there]" (internal quotation marks omitted)); *Jayaraman* v. *Salomon, Inc.*, No. 87 Civ. 2781 (MJL), 1991 WL 61071, at *4, 1 n.1 (S.D.N.Y. Apr. 5, 1991) (observing that when currently served defendants consent to jurisdiction, "availability of the alternative forum is not in question").

### b. Defendants Could Litigate the Dispute's Core Subject Matter in the Cayman Islands

Where defendants are amenable to process in the alternative jurisdiction, the adequacy requirement is ordinarily satisfied except in "rare circumstances" when "the remedy offered by the other forum is clearly unsatisfactory."  *Murray* v. *British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996) (internal quotation marks and citation omitted).  This is not one such instance, as there is little question that courts in the Cayman Islands are well-equipped to adjudicate this action.  Plaintiffs do not contest this point.  Nor could they, given that on each core issue — the fairness of consideration paid to minority shareholders as a result of the merger, the fiduciary duties owed to minority shareholders, and the alleged misrepresentations concerning the merger — the Cayman Islands provides an adequate remedy.

Indeed, "the Cayman Islands recognize claims of breach of duty against corporate directors and has a well-developed body of fiduciary-duty law." *Holzman*, 2015 WL 5544357, at *8. The same is true regarding Plaintiffs' fairness claim. The Cayman Islands have a specific statutory scheme — Cayman Islands Companies Law, Part XVI § 238 — that entitles dissenting shareholders to payment of the fair value of their shares and instructs the Cayman Islands courts to schedule hearings to determine the fair value. The Cayman Islands also recognize common-law and equitable misrepresentation claims. (Dkt. #45 at ¶¶ 33-36). Therefore, this is not a situation where the remedy available in the alternative forum is "clearly unsatisfactory." *Murray*, 81 F.3d at 292.

To be sure, Plaintiffs may be unable to pursue an identical set of claims in the Cayman Islands. But that alone does not make the Cayman Islands an inadequate forum. Indeed, the "availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum." *PT United Can,* 138 F.3d at 74. As the Second Circuit has held, a foreign court will be deemed adequate if parties are able to litigate the dispute's "essential subject matter." *Capital Currency Ex.,* 155 F.3d at 611. In the instant case, each essential matter could be adjudicated in the Cayman Islands. For that reason, a Cayman Islands court would be an adequate alternative forum.

### 3. On Balance, the Public and Private Interest Factors Favor Dismissal

Finally, the Court must "balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa*, 226 F.3d at 100. The Court begins by addressing the private interest factors, which in this case are neutral as between the Cayman Islands and New York. It then turns to the public interest factors, which favor dismissal.

### a. The Private Interest Factors Are Neutral as Between New York and the Cayman Islands

In *Gilbert*, the United States Supreme Court summarized the private interest factors as follows: the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical matters that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508.[6] Courts must "engage[] in a comparison between the hardships [the] defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F.3d at 74. In doing so, courts are to "focus

---

[6]     Neither party addressed the last two factors in their submissions to the Court — namely, the "possibility of view of premises" and "all other practical matters that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. On the record before it, the Court does not believe that view would be relevant in this action, nor has it identified any practical matters of significance that the parties overlooked. For this reason, the Court does not address the final two factors.

on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Id.*

### i.    Ease of Access to Evidence Slightly Favors Dismissal

The vast majority of evidence in this case is in China, not in New York or the Cayman Islands. Defendants themselves note that "any potentially relevant documents that [DHC], Kewen Holding, SCI, First Profit Management, or the as-yet unserved Chinese-resident [individual Defendants] possess will be in China[.]" (Def. Br. 14). Dangdang, though incorporated in the Cayman Islands, maintains its principal offices in Beijing, China. (Dangdang Decl. ¶¶ 3-4). And "substantially all of Dangdang's employees, operations, and company files are in the People's Republic of China." (*Id.* at ¶ 5).

On the record before it, the Court cannot determine with certainty the volume of documents and the number of witnesses currently located in the Cayman Islands. But based on the parties' submissions, it is apparent that such evidence would include original documents filed with the Cayman Islands Registrar that relate to the challenged merger. In addition, to the extent that there are questions about the authenticity or sufficiency of the documents submitted to effectuate the merger, employees from the Cayman Islands Registrar would likely be called to testify. The misrepresentation claims at issue implicate the scope of work performed by Maples; for that reason, Maples employees may be required to testify at trial, at least to the extent that such testimony is not protected by the attorney-client privilege. Finally, Dangdang's

agent for service of process in the Cayman Islands might be called to testify if Plaintiffs continue to be unable to serve some of the individual Defendants.

Plaintiffs, for their part, have provided a list of U.S.-based entities that may have relevant documents and witnesses. These include: the Chicago office of Duff & Phelps, a consultant that prepared a fairness opinion for the merger; the Bank of New York Mellon, which served as Dangdang's ADS Depository; the SEC; Dangdang's New York agent for service of process; and O'Melveny & Myers LLP, a U.S.-based law firm that represented iMeigu Capital Management in its bid to purchase Dangdang. (Pl. Opp. 20). Yet Plaintiffs have failed to explain why evidence from these entities would be relevant at trial. And unlike the evidence in the Cayman Islands, the relevance from the U.S.-based entities appears to be attenuated: Most, if not all, of the entities to which Plaintiffs draw the Court's attention are not central to this case and are unlikely to produce evidence that would be important at trial. For this reason, the Court concludes that the ease of access to evidence weighs slightly in favor of dismissal.

ii.     **Securing the Attendance of Witnesses Slightly Disfavors Dismissal**

The Court next assesses the availability of compulsory process for unwilling witnesses and the cost of obtaining attendance of willing witnesses. This factor weighs slightly against dismissal. Defendants have failed to show that compulsory process would be available in the Cayman Islands. Plaintiffs, by contrast, have convincingly argued that Defendants' employees would be subject to compulsory process in New York. Courts in this District have

explicitly held that employees of parties under the courts' jurisdiction are subject to compulsory process. *See, e.g.*, *Ocean Shelf Trading Inc.* v. *Flota Mercante Grancolombiana S.A.*, 638 F. Supp. 249, 252 (S.D.N.Y. 1986) (distinguishing, for purposes of compulsory process, individuals who were defendants' employees and therefore subject to compulsory process and those who were not); *Update Art, Inc.* v. *Maariv Israel Newspaper, Inc.*, 635 F. Supp. 228, 233 (S.D.N.Y. 1986) ("The witnesses in this case would likely be employees of either plaintiff or defendants [and therefore] are subject to the compulsory process of this court."). The Court therefore concludes that it would be easier to secure the attendance of unwilling witnesses in New York than in the Cayman Islands.

The same is true of cooperative witnesses, most of whom reside in China. Travel from China to New York is both cheaper and more convenient than from China to the Cayman Islands. Though the parties dispute how much cheaper it is to fly from China to New York than from China to the Cayman Islands, neither party argues that the latter is cheaper, quicker, or less burdensome. Defendants instead hang their argument on a claim that "this litigation will be expensive regardless of the forum[.]" (Def. Reply 14-15). While that may be true, it does not alter the fact that it would be less costly and less burdensome for cooperative witnesses, most of whom reside in China, to attend trial in New York than in the Cayman Islands.

The only two private factors at issue in this case offset one another. The ease of access to evidence slightly favors dismissal, while the ability to secure

witnesses weighs against dismissal.  For this reason, and because the Court accords only slight deference to Plaintiffs' choice of forum, the merits of Defendants' motion to dismiss turn principally on the balance of the public interest factors.

### b.     The Public Interest Factors Favor Dismissal

Here, the Court weighs the following factors: (i) the local interest in resolving local disputes, (ii) the imposition on jurors of having them decide cases that have no effect on their community, (iii) the administrative challenges associated with court congestion, and (iv) the difficulties of applying foreign law.  *Gilbert*, 330 U.S. at 508-09.  The Court addresses each in turn.

### i.     Local Interest in Resolving the Dispute Slightly Favors Dismissal

The Cayman Islands has a strong interest in adjudicating this dispute in its courts.  The principal actor in the dispute — Dangdang — is a Cayman Islands corporation.  The events giving rise to the litigation took place in the Cayman Islands and involved a "going private" merger between two Cayman Islands entities.  The law firm that advised Dangdang in its NYSE IPO filing and the Special Committee in reviewing the merger bid (Maples) has its principal North American offices in the Cayman Islands and the British Virgin Islands.  And a Cayman Islands court is already engaged in a proceeding to determine the fair value of the shares held by shareholders who objected to the merger. (Def. Br. 4).  For these reasons, Cayman Islands citizens have an interest in regulating Dangdang and its officers and in determining the fairness of the merger.

The United States also has an interest, albeit not as strong as the Cayman Islands' interest, in adjudicating this dispute. Dangdang was listed on the NYSE, and Lead Plaintiff Fasano is a New York resident who purchased his ADR shares on the NYSE. In *DiRienzo*, the Second Circuit held that U.S. fora have a strong interest in adjudicating disputes involving foreign entities that are listed on the NYSE and that target American investors. 294 F.3d at 31-32 (concluding that the lower court's finding that the local interest factor favored dismissal was "clearly erroneous" because "[the company] came to [American investors] by registering its stock on American exchanges, filing statements with the SEC, and conducting the bulk of its business — including multiple corporate acquisitions — in the United States"). Dangdang did not conduct the bulk of its business in the United States, and so the local interest here is not as pronounced as it was in *DiRienzo*. But Dangdang did register exclusively on the NYSE and filed statements with the SEC. That suffices to create a local interest in adjudicating the dispute. *See, e.g.*, *Kingdom 5-KR-41, Ltd.* v. *Star Cruises PLC*, No. 01 Civ. 2946 (AGS), 2002 WL 432390, at *7 (S.D.N.Y. 2002) (noting that "plaintiff invested in [the company] by purchasing ADRs — which were issued by a New York bank and traded on the [NYSE] … [a]nd the allegations in plaintiff's complaint relate primarily to misrepresentations allegedly made by [Defendants] in an SEC filing, so it can hardly be said that the dispute has no connection to this jurisdiction").

In an effort to convince this Court otherwise, Defendants rely primarily on two cases, *Gilstrap* v. *Radianz Ltd.*, 443 F. Supp. 2d 474, 490 (S.D.N.Y.

2006), and *In re Alcon Shareholder Litigation*, 719 F. Supp. 2d 263 (S.D.N.Y. 2010). Both are distinguishable. In *Gilstrap*, the shares of the company at issue "were not registered on any U.S. exchange." 443 F. Supp. 2d at 475. And in *Alcon*, the plaintiffs "s[ought] relief not for alleged wrongs committed and losses incurred, but a prospective remedy under United States law to halt a corporate transaction formulated under Swiss law but not yet consummated, and to determine monetary damages that have not yet accrued." 719 F. Supp. 2d at 268.

Though both the Cayman Islands and New York have a legitimate interest in adjudicating this dispute, the Cayman Islands has a closer nexus to the parties and events that are at the heart of this case. Simply put, the most critical parties are registered in, and the events giving rise to the suit took place in, the Cayman Islands, not the United States. Accordingly, the Court concludes that this factor slightly favors dismissal.

### ii. Imposition on Jurors Is Neutral as Between New York and the Cayman Islands

This factor requires the Court to identify whether "[i]t would be simply unfair to impose the burden of service on a New York jury because of the attenuated contact of New York to the controversy." *Wallert* v. *Atlan*, 141 F. Supp. 3d 258, 282 (S.D.N.Y. 2015) (quoting *Stewart* v. *Adidas A.G.*, No. 96 Civ. 6670 (DLC), 1997 WL 218431, at *7 (S.D.N.Y. Apr. 30, 1997)). Under *DiRienzo*, "[w]here American investors have allegedly suffered harm from purchases made in New York, that community has an interest in considering such claims." 294 F.3d at 31. Because Defendants listed their shares on the NYSE and filed

forms with the SEC, and because one of the three Lead Plaintiffs, Mr. Fasano, is a New York resident who purchased Dangdang shares listed on the NYSE, New York jurors have an interest in adjudicating this dispute. Jurors in the Cayman Islands similarly have an interest in resolving this dispute, given that it involves a Cayman Islands corporation and a merger that was executed in the Cayman Islands. Because both New York and the Cayman Islands have legitimate interest in this dispute, it would not be unfair to impose the burden of service on jurors in either jurisdiction. This factor therefore does not weigh heavily in either direction.

### iii. Administrative Challenges Associated with Court Congestion Are Neutral as Between New York and the Cayman Islands

This factor is not relevant here. Defendants have not addressed the issue at all, and Plaintiffs have not submitted evidence indicating that the Cayman Islands courts are understaffed or overly congested. Neither party compares the congestion in Cayman Islands courts to that in the Southern District of New York. Without such evidence, this Court will not presume that the Cayman Islands courts are meaningfully more congested than are the courts in this District, or vice versa.

### iv. Avoiding the Difficulties of Applying Foreign Law Favors Dismissal

The fourth factor requires this Court to consider the difficulties of applying foreign law. For purposes of this decision, the Court need not decide the issue of conflict of law. *See Piper Aircraft*, 454 U.S. at 251 ("The doctrine of *forum non conveniens* … is designed in part to help courts avoid conducting

complex exercises in comparative law.").  A finding that it is likely (but not necessarily certain) that foreign law would apply militates in favor of dismissal.  *See BlackRock, Inc.* v. *Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *10 (S.D.N.Y. May 30, 2007) ("The likelihood that the present forum would have to apply a foreign jurisdiction's law 'lends weight to the conclusion that the suit should be prosecuted in that jurisdiction.'" (citing *Calavo Growers of Cal.* v. *Generali Belg.*, 632 F.2d 963, 967 (2d Cir. 1980))).

Though the parties did not specifically brief the choice of law issue, there is little doubt that the applicable law for the principal causes of action — misrepresentation, breach of fiduciary duties, and the fairness of consideration paid to minority shareholders — is Cayman Islands law.  As the Second Circuit has held, "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation."  *Scottish Air Int'l, Inc.* v. *British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).  The United States Supreme Court has explained that "only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."  *Edgar* v. *MITE Corp.*, 457 U.S. 624, 645 (1982).  Here, Plaintiffs bring suit based on internal decisions made by the Special Committee and Dangdang's executives with regards to the "going private" merger.  The scope of fiduciary duties, the fairness of consideration paid, and the standards to adjudicate alleged

misrepresentations will therefore likely be determined according to Cayman Islands law. *See, e.g.*, *Holzman*, 2015 WL 5544357, at *10.

Allowing the suit to proceed in this District would require this Court to oversee a case governed primarily by Cayman Islands law. Courts in this Circuit do not take the attendant challenges lightly. As Judge Friendly stated: "[T]ry as we may to apply the foreign law as it comes to us through the lips of experts ... our labors ... may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact." *Conte* v. *Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960). And as a sister court in this District has noted, "courts have a legitimate interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law." *Monegasque de Reassurances S.A.M.* v. *NAK NAFTOGAZ OF UKRAINE and State of Ukraine*, 158 F. Supp. 2d 377, 387 (S.D.N.Y. 2001).

Cayman Islands courts, by contrast, are readily familiar with the law that governs this case. They have a well-developed body of law that would govern each of Plaintiffs' primary claims, including misrepresentation, breach of fiduciary duties, and the fairness (or not) of consideration paid in Dangdang's merger. For this reason, the litigation would be more efficient and less costly if it were to proceed in the Cayman Islands. This consideration weighs heavily in favor of dismissal.

Plaintiffs seek to convince the Court — without success — that there are sufficient issues arising under New York and U.S. federal law to prevent this factor from weighing in favor of dismissal. Plaintiffs note that they have

brought a claim under Section 13(e) of the Exchange Act and that, "[a]t the time of its NYSE IPO, [Dangdang] adopted NYSE's corporate governance standards as binding rules to take precedence over Cayman Islands corporate governance law." (Pl. Opp. 5). These facts, they claim, suffice to shift the balance of public factors in their favor.

Plaintiffs are wrong. First, it is unclear whether Plaintiffs' Section 13(e) claim would survive a motion to dismiss. Many courts — including a sister court in this District — have refused to recognize an implied right of action under Section 13(e) of the Exchange Act. *See, e.g., Bolton* v. *Gramlich*, 540 F. Supp. 822, 842-43 (S.D.N.Y. 1982) (holding no private right of action under Section 13(e)); *Berg* v. *First American Bankshares, Inc.*, 599 F. Supp. 500 (D.D.C. 1984) (same); *Kalmanovitz* v. *G. Heileman Brewing Co.*, 595 F. Supp. 1385 (D. Del. 1984) (same). But even if Plaintiffs were correct that a private right of action may be implied under Section 13(e) of the Exchange Act, questions arising under Cayman Islands law would still predominate. Indeed, the misrepresentation, breach of fiduciary duty, and unfairness claims would all be adjudicated under Cayman Islands law even if Plaintiffs' Section 13(e) claim were to survive a dispositive motion.

As to the NYSE governance standards, the Court is skeptical about their relevance to this action. Those rules govern share repurchases, the appointment of new directors, and amendments to corporate governance policies. Their relevance to Dangdang's merger is tenuous. Yet even if they did relate, the Court would still apply Cayman Islands law to adjudicate Plaintiffs'

30

claims, including to assess the fairness of the consideration paid and the scope of fiduciary duties owed. Cayman Islands law would still predominate. Because the "difficulty of applying foreign law is a significant factor in the balance of convenience factors," *Atlan*, 141 F. Supp. 3d at 282 (internal quotation marks and citation omitted), and because Cayman Islands law governs the essential claims in this action, this factor militates strongly in favor of dismissal.

Taken together, the public factors favor dismissal. The action involves a Cayman Islands company with its principal place of business in China, a merger executed in the Cayman Islands, and a dispute governed principally, if not exclusively, by Cayman Islands law. This Court and a New York jury would have more difficulty and less interest in adjudicating this matter as compared to their counterparts in the Cayman Islands.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss for *forum non conveniens*. Accordingly, the Court need not address Plaintiffs' request for substituted service, which request has been rendered moot. The Clerk of the Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     December 29, 2017
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge