UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOE FASANO, *et al.*,                          :
                     Plaintiffs,        :    16-cv-8759 (KPF)
                                  :
            -v.-                        :
                                  :
GUOQING LI, *et al.*,                          :
                     Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' RENEWED MOTION TO DISMISS

Scott D. Musoff
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
E-Mail:       scott.musoff@skadden.com
                  james.brown@skadden.com

*Attorneys for Defendants*
  *E-Commerce China Dangdang, Inc.;*
  *Dangdang Holding Company Limited;*
  *Kewen Holding Company Limited;*
  *Science & Culture International Limited;*
  *First Profit Management Limited;*
  *Peggy Yu Yu; Danqian Yao; Lijun Chen;*
  *and Min Kan.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

I.  THE COMPLAINT SHOULD AGAIN BE DISMISSED ON GROUNDS OF
    *FORUM NON CONVENIENS.* ...........................................................................4

    A.  The Majority of the Court's Prior Decision Dismissing the Action on
        Grounds of *Forum Non Conveniens* Remains Undisturbed. ...................4

    B.  The ADS Forum Clause Does Not Alter the Court's Prior Decision,
        Rendering *Forum Non Conveniens* Dismissal Appropriate Again........................4

        1.  A Rebuttable Presumption of Enforceability Applies to the ADS
            Forum Clause, But Only as to a Federal Securities Claim......................4

        2.  The ADS Forum Clause is Applicable Only to Dangdang, and
            Not to Any of the Other Eight Defendants...............................................7

        3.  Any Presumption That the ADS Forum Clause is Enforceable Is
            Rebutted as Unreasonable and Unjust....................................................11

II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED
    PURSUANT TO RULE 12(b)(6). ......................................................................12

    A.  Count IV, for Violation of Section 13(e) and Rule 13e-3 Thereunder,
        Should Be Dismissed. ..........................................................................12

        1.  The Court Should Not Imply a Private Right of Action Under
            Section 13(e)......................................................................................13

        2.  Even if a Private Right of Action Were Inferred, Under
            *Morrison* Plaintiffs' Claim Could Not Reach This Foreign
            Transaction. ......................................................................................13

        3.  Alternatively, Any Implied Right of Action Under Section 13(e)
            Fails for a Lack of Transaction Causation and Loss Causation. ...........15

        4.  There Was No Actionable Misstatement or Omission. .........................19

    B.  Plaintiffs' Remaining Claims Are Governed by Cayman Islands Law. ...............20

    C.  Count III, Alleging Negligent Misrepresentation, Should Be Dismissed.............23

    D.  Count I, Alleging Breach of Fiduciary Duties, Should Be Dismissed..................24

    E.  Count V, Seeking Quasi-Appraisal, Should Be Dismissed. ..................................24

# TABLE OF AUTHORITIES

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012).................................................................................14, 15

*Aguas Lenders Recovery Group LLC v. Suez*, S.A.,
  585 F.3d 696 (2d Cir. 2009)....................................................................................5, 8

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)....................................................................................................13

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
  356 F. Supp. 3d 379 (S.D.N.Y. 2019)..................................................................8, 9

*Atherton v. FDIC*,
  519 U.S. 213 (1997)..............................................................................................21, 23

*Aveta Inc. v. Cavallieri*,
  23 A.3d 157 (Del. Ch. 2010)....................................................................................22

*Barletta Heavy Division, Inc. v. Erie Interstate Contractors, Inc.*,
  677 F. Supp. 2d 373 (D. Mass. 2009) ...................................................................12

*Berg v. First American Bankshares, Inc.*,
  No. Civ. A. 83-3887, 1985 WL 2232 (D.D.C. Apr. 17, 1985), *aff'd*, 796 F.2d 489
  (D.C. Cir. 1986) ...........................................................................................................13

*BP Products North America, Inc. v. Super Stop 79, Inc.*,
  464 F. Supp. 2d 1253 (S.D. Fla. 2006) ...............................................................12

*British Marine Lux., S.A. v. Deep Sea Financing, LLC*,
  No. CV 409-023, 2010 WL 1960994 (S.D. Ga. May 13, 2010)........................12

*Camferdam v. Ernst & Young International, Inc.*,
  No. 02 Civ. 10100(BSJ), 2004 WL 1124649 (S.D.N.Y. May 19, 2004)............6

*Capricorn Investors III, L.P. v. CoolBrands International, Inc.*,
  66 A.D.3d 409 (1st Dep't 2009) .............................................................................23

*Celsion Corp. v. Stearns Management Corp.*,
  157 F. Supp. 2d 942 (N.D. Ill. 2001) ..................................................................15

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)....................................................................................14

*Cort v. Ash*,
  422 U.S. 66 (1975)......................................................................................................13

*In re Cyan, Inc. Stockholders Litigation*,
    No. CV 11027-CB, 2017 WL 1956955 (Del. Ch. May 11, 2017)....................................25

*Dias v. Mediterranean Shipping Co.*,
    No. 02-21771-CIV., 2003 WL 23190184 (S.D. Fla. Aug. 5, 2003) ................................12

*Feiner Family Trust v. VBI Corp.*,
    No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) .........................24

*Finance & Trading, Ltd. v. Rhodia S.A.*,
    No. 04 Civ. 6083(MBM), 2004 WL 2754862 (S.D.N.Y. Nov. 30, 2004).........................6

*Fisher v. Plessey Co.*,
    1983 WL 1328 (S.D.N.Y. June 22, 1983) .......................................................................13

*Foothill Capital Corp. v. Kidan*,
    No. 03 Civ. 3976(RMB), 2004 WL 434412 (S.D.N.Y. Mar. 8, 2004).............................11

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000).........................................................................................18, 19

*Hahn v. Breed*,
    587 F. Supp. 1369 (S.D.N.Y. 1984)................................................................................22

*Holzman v. Guoqiang Xin*,
    No. 12-cv-8405 (AJN), 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ..........................22

*Johnson v. Nextel Communications Inc.*,
    780 F.3d 128 (2d Cir. 2015).............................................................................................21

*JP Morgan Auction Rate Securities (ARS) Marketing Litigation*,
    No. 10-Civ.-4552 (PGG), 2014 WL 4953554 (S.D.N.Y. Sept. 30, 2014).......................20

*LaSala v. E*TRADE Securities LLC*,
    No. 05 Civ. 5869(SAS), 2005 WL 2848853....................................................................11

*Leviton Manufacturing Co. v. Reeve*,
    942 F. Supp. 2d 244 (E.D.N.Y. 2013) ...........................................................................8, 9

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).............................................................................................................4

*Marino v. Grupo Mundial Tenedora, S.A.*,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011).............................................................................21

*Martin v. Quartermain*,
    732 F. App'x 37 (2d Cir. 2018) ......................................................................................19

*Mayer v. Oil Field Systems Corp.*,
 803 F.2d 749 (2d Cir. 1986)..................................................................................6

*Meyer v. Greene*,
 710 F.3d 1189 (11th Cir. 2013) .........................................................................18

*Meyercord v. Curry*,
 38 A.D.3d 315 (1st Dep't 2007) .........................................................................23

*Miller v. Mercuria Energy Trading, Inc.*,
 291 F.Supp.3d 509 (S.D.N.Y. 2018), *aff'd*, No. 18-cv-959, 2019 WL 3812768 (2d
 Cir. Aug. 14, 2019) .....................................................................................7, 8, 9

*Morrison v. National Australia Bank, Ltd.*,
 561 U.S. 247 (2010)............................................................................................13

*Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*,
 265 F. Supp. 2d 635 (N.D.W.Va. 2002) .............................................................11

*NatTel, LLC v. SAC Capital Advisors*,
 No. 3:04-CV-1061(JBA), 2005 WL 2253756 (D. Conn. Sept. 16, 2005), *aff'd sub
 nom. NarTel, LLC v. SAC Capital Advisors LLC*, 370 F.App'x 132 (2d Cir. 2006).........23

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
 121 F.3d 24 (2d Cir. 1997).............................................................................5, 7

*In re North Sea Brent Crude Oil Futures Litigation*,
 256 F. Supp. 3d 298 (S.D.N.Y. 2017).................................................................14

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
 135 S. Ct. 1318 (2015)........................................................................................19

*In re Omnicom Group, Inc. Securities Litigation*,
 597 F.3d 501 (2d Cir. 2010)................................................................................18

*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*,
 No. 13 Civ. 1797(KBF), 2013 WL 6503525 (S.D.N.Y. Dec. 9, 2013) ...............7

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
 763 F.3d 198 (2d Cir. 2014)................................................................................15

*In re Petrobras Securities*,
 862 F.3d 250 (2d Cir. 2017)................................................................................15

*In re Petrobras Securities Litigation*,
 150 F. Supp. 3d 337 (S.D.N.Y. 2015).................................................................15

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007)...........................................................................5, 7

*In re Satyam Computer Services Ltd. Securities Litigation*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013).................................................................14

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
  81 F.3d 1224 (2d Cir. 1996)............................................................................21

*Stoneridge Investment Partners, LLC v. Scientific-Atlant*a,
  552 U.S. 148 (2008).......................................................................................13

*Sung v. Wasserstein*,
  No. 05 Civ. 7138(VM), 2006 WL 435449 (S.D.N.Y. Feb. 21, 2006).................................6

*TCS Capital Management, LLC v. Apax Partners, L.P.*,
  No. 06-CV-13447(CM), 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008).........................16, 20

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)............................................................................19

*Tropp v. Corp. of Lloyd's*,
  385 F.App'x 36 (2d Cir. 2010) ....................................................................5, 7, 9

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991).....................................................................................15

*Weiss v. Routh*,
  149 F.2d 193 (2d Cir. 1945)............................................................................23

*Western Capital Design, LLC v. New York Mercantile Exchange*,
  180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) .....................3

*Woods v. Christensen Shipyards, Ltd.*,
  No. 04-61432-CIV, 2005 WL 5654643 (S.D.Fla. Sept. 23, 2005)....................................12

## STATUTES

15 U.S.C. § 78m(e) ...........................................................................................12

## REGULATIONS

17 C.F.R. § 240.13e-3 (2019) ..............................................................................12

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 302 cmt. A (Am. Law Inst. 1971) .........................22

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' RENEWED MOTION TO DISMISS

Defendants E-Commerce China Dangdang, Inc. ("Dangdang" or "the Company");

Dangdang Holding Company Limited; Kewen Holding Company Limited; Science & Culture

International Limited; First Profit Management Limited; Peggy Yu Yu; Danqian Yao; Lijun

Chen; and Min Kan (collectively, "Defendants") respectfully submit this memorandum in

support of their Renewed Motion to Dismiss.

### Preliminary Statement

The Second Circuit remanded this case and asked this Court to evaluate the forum

selection clause of the ADS Receipt (the "ADS Forum Clause"), and "its impact, *if any*, on the

*forum non convenien*s analysis."  (Second Circuit Decision, at 9 (emphasis added)).  Specifically,

the Second Circuit asked this Court to consider three discrete questions:

> **[1]** whether the presumption of enforceability applies to the forum selection
> clause; **[2]** whether the presumption of enforceability covers the non-signatories
> here; and **[3]** if it applies, whether the presumption of enforceability is or has been
> rebutted as unreasonable, unjust, or the product of fraud or overreaching.

(Second Circuit Decision, at 8-9.)  The answers to these three questions confirm that the Court's

December 2017 Decision was properly decided.

*First*, the rebuttable presumption of enforceability applies to the ADS Forum Clause, but

by its terms the Clause only reaches Plaintiffs' federal securities law claim, not their other

claims, which are governed by Cayman law (Doc. 1 ¶¶ 119-122 (Count IV)).  And, although the

named Plaintiffs are ADS holders, they purport to represent a class including common

shareholders.  (Doc. 1, ¶¶ 89, 91.)  Of course, common shareholders are not parties to the ADS

Forum Clause, and therefore no presumption of enforceability would apply to *any* of their

claims.  Thus, even if the Court were to apply the Clause to retain the one federal securities claim

of ADS holders only, all of Plaintiffs' other claims would not proceed in this Court.

1

**Second**, while the ADS Forum Clause may apply to Dangdang, it does not apply to the other Defendants, who are not parties to the 2010 ADS Deposit Agreement containing the ADS Forum Clause.  In addition, the clause is too attenuated from both the other Defendants and the later 2016 merger to apply to Plaintiffs' present claims.   Rather, the explicit provisions in the 2016 merger documents specifying a Cayman forum and Cayman law should control.

**Third**, given the answers to the first two questions, and given the Court's previous *forum non conveniens* analysis, the presumption of enforceability is rebutted because it would be unreasonable and unjust to enforce the ADS Forum Clause in this case.  If the ADS Forum Clause were enforced, only Count IV would proceed in this forum, only involving the claims of ADS holders, and only against the Company.  Because Plaintiffs chose to name so many defendants (including those who are beyond the personal jurisdiction of this Court),[1] and bring multiple claims (including those which are legally defective and/or governed by Cayman Islands law), this would result in litigation proceeding in at least two different fora.  This would not only be inefficient but could expose Defendants to the risk of inconsistent verdicts and varying standards governing the very same transaction, and conflicting determinations regarding the value of Plaintiffs' shares.  On the other hand, dismissing on grounds of *forum non conveniens* would mean that all disputes are resolved among all parties in only one forum, the Cayman Islands.  Because any presumption of enforceability is rebutted, the Court's prior *forum non conveniens* analysis remains undisturbed, and its determination that dismissal is warranted remains correct.

**Separately**, even if the Court were to have reservations about its prior *forum non-conveniens* analysis, Plaintiffs' claims still must be dismissed for failure to state a claim.

---

[1] These would include Guoqing Li, Ruby Rong Lu, Ke Zhang, and Xiaolong Li, whom Plaintiffs have named but apparently not yet served.

2

Plaintiffs' claim under Section 13(e) of the Exchange Act fails on at least four separate and independent grounds.  At the outset, the Exchange Act does not apply to extraterritorial transactions like the merger, and even if it did, there is no private right of action under Section 13(e).  Next, even if this Court were to imply or assume a private right of action, that claim would include essential elements of transaction causation and loss causation.  But Plaintiffs cannot satisfy those elements because the sponsoring shareholders had sufficient votes to accomplish the transaction at the stated offering price no matter how, or even whether, Plaintiffs voted, and regardless of what the merger disclosure documents said.  Thus, any alleged misstatements in the merger disclosures could not have caused any of Plaintiffs' alleged harm.  And in any event there was no actionable misstatement in the disclosure documents, as the true facts were all in the total mix of information publicly available to shareholders.

Plaintiffs' inability to prove transaction causation (reliance) or loss causation, or to identify an actionable false statement, also mandates the dismissal of their common law claim for negligent misrepresentation under Cayman law.

Finally, Plaintiffs' claims for breach of fiduciary duty are legally defective under the controlling Cayman law for a variety of reasons, including that the directors and sponsoring shareholders did not owe any fiduciary duties to Plaintiffs.

Accordingly, the Complaint is due to be dismissed in its entirety.[2]

_____

[2] Count II, for aiding and abetting a breach of fiduciary duty, is pled only against the Special Committee Defendants, who apparently have not yet been served and have not yet appeared.  (Doc. 1 ¶¶ 104-09.)  This claim therefore may be ignored in dismissing the entire Complaint against the nine appearing Defendants.  *See W. Capital Design, LLC v. New York Mercantile Exch.*, 180 F. Supp. 2d 438, 443 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) ("When only unserved defendants remain in a case, a court may enter final judgment 'since there is no basis for believing there will be any further adjudications in the action, or ... for holding the dismissals subject to revision.'") (citation omitted).

I.      **THE COMPLAINT SHOULD AGAIN BE DISMISSED**
        <u>**ON GROUNDS OF *FORUM NON CONVENIENS*.**</u>

   A.      **The Majority of the Court's Prior Decision Dismissing the Action**
           <u>**on Grounds of *Forum Non Conveniens* Remains Undisturbed.**</u>

   It first is important to remember that the Second Circuit did not in any way question, or

suggest any need to revisit, most of the issues that this Court previously decided, including that:

(1) the Courts of the Cayman Islands provide an adequate alternative forum; (2) Plaintiffs'

choice of a U.S. forum should be given diminished deference; (3) the applicable law for the

principal claims – misrepresentation, breach of fiduciary duties, and the fairness of consideration

paid to minority shareholders – is Cayman Islands law; and (4) the private interests in this case

are neutral, while the public interests favor dismissal.  (Doc. 61 (Dec. 29, 2017 Order), at 12, 16-

19, 28, 28-31.)[3]  Thus, if the ADS Forum Clause does not materially alter the Court's analysis –

and it does not – then dismissal is again warranted.

   B.      **The ADS Forum Clause Does Not Alter the Court's Prior Decision,**
           <u>**Rendering *Forum Non Conveniens* Dismissal Appropriate Again.**</u>

   The ADS Forum Clause is found in the ADS Receipt which, in turn, is an exhibit to the

ADS Deposit Agreement among the Company, the ADS Holders and Owners, and the ADS

Depository.  (Doc. 49-6.)  When these documents are analyzed under the controlling law,

dismissal on grounds of *forum non conveniens* is again warranted.

   1.      **A Rebuttable Presumption of Enforceability Applies to the**
           <u>**ADS Forum Clause, But Only as to a Federal Securities Claim.**</u>

   Defendants concede the continuing vitality of *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1 (1972), and that a rebuttable presumption of enforceability arises over the ADS Forum

---

   [3] Because these issues need not be revisited, Defendants will not burden the Court with
unnecessary reargument, or with a description of the alleged facts and the parties, with which the
Court is already familiar.  Defendants hereby incorporate their briefing on the prior motion to
dismiss in all respects.  (Docs. 39 & 52.)

Clause.  However, *M/S Bremen* is based upon the unexceptional proposition that a forum selection clause should presumptively be enforced as written.  Indeed, in the very case upon which Plaintiffs so heavily rely, *Aguas Lenders*, the Second Circuit reiterated that there is "no reason to treat forum selection provisions differently from other contractual obligations."  *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009).

Contractual forum selection clauses therefore require a claim-by-claim analysis to ensure the clause is applied only to those claims that are clearly within its scope.  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 387 (2d Cir. 2007); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32-33 (2d Cir. 1997).  And throughout that analysis, Plaintiffs bear the continuing burden to prove that the clause encompasses each claim.  *Tropp v. Corp. of Lloyd's*, 385 F.App'x 36, 37 (2d Cir. 2010).  Plaintiffs cannot satisfy that burden, because claims other than Count IV fall well outside the New York forum selection clause.

The ADS Forum Clause begins by mandating that ***all*** claims against the Company relating to the ADSs must be arbitrated.  The ADS Receipt then carves out a small subset of such claims that are "relating to or based upon [U.S.] Federal securities laws," and declares that if Plaintiffs elect not to arbitrate those claims, then that subset of claims must proceed in a New York court:

> (a) Any controversy, claim or cause of action brought by any party hereto against the Company[4] arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the breach thereof, shall be settled by arbitration … ; and provided, further, that any such controversy, claim or cause of action brought by a party hereto against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to arbitration as

---

4 The Deposit Agreement defines "parties" to include "Owners and Holders" of the ADSs (Deposit Agmt. § 7.04, at 30 (Doc. 49-6, at 34 of 55)), and the "Company" as E-Commerce China Dangdang Inc., and its successors – but specifically does not include its officers, directors or affiliates (*id.* § 1.03, at 3 (Doc. 49-6, at 7 of 55)).

provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the claimant….

(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York….

(ADS Receipt, § 23, at 16-17 (Doc. 49-6, at 53-54 of 55) (emphasis added).)

Plaintiffs' breach of fiduciary duty and negligent misrepresentation claims are governed entirely by Cayman law, and thus are not "based upon" U.S. federal securities laws.  (*Infra* § II.B.)  Nor are they claims "relating to" U.S. federal securities laws.  Although the phrase "relating to" may be broader than "based upon," "it must be given its 'common-sense meaning' – that is, something 'relates to' [federal securities laws] if it has 'a connection with or reference' to [those laws]."  *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100(BSJ), 2004 WL 1124649, at *2 & n.3 (S.D.N.Y. May 19, 2004) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)) (claims were outside scope of agreement to arbitrate "[a]ny controversy or claim arising out of or relating to tax and tax related services")).  Plaintiffs' breach of fiduciary duty and negligent misrepresentation claims have no connection to U.S. federal securities laws.  *See Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 757 (2d Cir. 1986) ("content and extent of fiduciary duties are fundamental issues of state law"); *Sung v. Wasserstein*, No. 05 Civ. 7138(VM), 2006 WL 435449, at *11 (S.D.N.Y. Feb. 21, 2006) (fiduciary duty claims challenging misleading prospectus are "classic state causes of action" and "unrelated to federal law"); *Fin. & Trading, Ltd. v. Rhodia S.A.*, No. 04 Civ. 6083(MBM), 2004 WL 2754862, at *7 (S.D.N.Y. Nov. 30, 2004) (claims of negligent misrepresentation in prospectus are "assessed entirely by applying [state] common law standards" and "do not depend on any rights or causes of action created by federal law").

6

Thus, rather than the sweeping mandate that Plaintiffs now posit for all claims to proceed in this Court, the ADS Forum Clause instead provides a very narrow carve-out in which only Plaintiffs' federal securities claim against the Company could proceed here, even if the clause were enforced.  Where a forum selection clause is limited to a specific class of claims or issues, like it is here, it cannot be applied to claims outside that limitation.  *Miller v. Mercuria Energy Trading, Inc.*, 291 F.Supp.3d 509, 523 (S.D.N.Y. 2018) (Rakoff, J.) (finding claims outside the scope of forum selection clause), *aff'd*, No. 18-cv-959, 2019 WL 3812768 (2d Cir. Aug. 14, 2019); *accord Phillips*, 494 F.3d at 393; *New Moon Shipping*, 121 F.3d at 32-33.

Accordingly, the Second Circuit's first question should be answered with qualified "yes," that a rebuttable presumption of enforceability applies to the ADS Forum Clause, but only as to Plaintiffs' federal securities law claim brought by ADS holders.

## 2.     The ADS Forum Clause is Applicable Only to Dangdang, and Not to Any of the Other Eight Defendants.

Plaintiffs also bear the burden to prove that the ADS Forum Clause binds each of the various Defendants.  *Tropp*, 385 F.App'x at 37.  Although the crux of Plaintiffs' claims relates to the actions of Dangdang's controlling shareholders and ultimate acquirors, who allegedly breached fiduciary duties owed to minority shareholders, and Dangdang's directors, who allegedly aided the controlling shareholders' breach (Comp. ¶¶ 1-3, 34-88, 97-109), none of them were parties to the ADS Deposit Agreement or Receipt that allegedly govern Plaintiffs' claims (Doc. 49-6, at 6 & 34 of 55).  They therefore are not subject to the ADS Forum Clause. *See Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, No. 13 Civ. 1797(KBF), 2013 WL 6503525, at *3 n.4 (S.D.N.Y. Dec. 9, 2013) ("Of course, a 'contract cannot bind a non-party.'").

In an effort to overcome this dispositive fact, Plaintiffs have argued that the non-signatory Defendants, being directors or shareholders of Dangdang, are "closely related" to the

Company and therefore bound by the ADS Forum Clause.  But the authorities Plaintiffs cite simply do not support that argument.  For example, in *Aguas Lenders*, the Second Circuit enforced a forum selection clause against a non-signatory only because that party was a successor-in-interest to the signatory.  Because a successor stands in the shoes of its predecessor, ordinary canons of contract law would bind the successor to the contractual promises of its predecessor, including a forum selection clause.  *Aguas Lenders*, 585 F.3d at 701 *("[I]f successorship is established*, a non-signatory is subject to the ... presumption of the enforceability of mandatory forum selection clauses.") (emphasis added).  As Judge Rakoff recently recognized, *Aguas Lenders* therefore stands for the "narrow proposition that a non-signatory can be bound by forum selection provisions to the same extent that it can otherwise be bound to a contract under standard principles of contract law."  *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 393 (S.D.N.Y. 2019).[5]  Application of the ADS Forum Clause to the non-signatory Defendants would violate these clear principles, even as described in *Aguas Lenders*.

Moreover, the "closely related" doctrine looks not only to the relationship between the signatory and the non-signatory sought to be bound, but also to the relationship between the non-signatory and the agreement or transaction in which the forum selection clause is found.  *Leviton Mfg. Co. v. Reeve*, 942 F.Supp.2d 244, 259 (E.D.N.Y. 2013) ("The vast majority of cases that

---

[5] General legal principles support successor liability because it "prevents parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations," including forum selection clauses.  *Aguas*, 585 F.3d at 701.  But that same logic would not apply to force all corporate obligations upon the entity's shareholders or directors.  The law "views corporations as entities 'endowed with a separate and distinct existence from that of its owners.'"  *Miller*, 291 F.Supp.3d at 525.  "Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, ... which is entitled to substantial weight."  *Id*. (refusing to apply forum selection clause to shareholders).

have found a nonsignatory bound by a forum selection clause under the theory that they are 'closely related' to the dispute or the signatory, have done so where the non-signatory had a far more active role in the transaction" that contained the forum selection clause.).  This is because the Plaintiff must prove that the non-signatory was made aware of the clause before the dispute arose, and that it was foreseeable that he or she would be bound by the clause before the acts in question.  *Tropp*, 385 F.App'x at 37 ("To enforce a forum selection clause, a party must demonstrate that … the clause was reasonably communicated to the party resisting enforcement."); *Arcadia*, 356 F. Supp.3d at 393-95 (declining to apply forum selection clause to non-signatory where there was no showing that it was foreseeable that it would be so bound); *Miller*, 291 F. Supp.3d at 523 (The "case law makes clear that 'closely related' in this sense is a fairly strict standard ... [t]hus ... to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.") (citations omitted); *Leviton*, 942 F.Supp.2d at 259 (declining to bind non-signatories to forum selection clause where it was not foreseeable by virtue of their relationship to the corporation that they would be so bound).

Plaintiffs cannot satisfy this burden.  The ADS Forum Clause is contained in the ADS Receipt, attached to the ADS Deposit Agreement which was executed in 2010.  Importantly, the Complaint does not allege the breach of any duties or obligations set out in the ADS Receipt or the ADS Depository Agreement.  And there is no proof, or even any allegation, that the ADS Forum Clause was communicated to the non-signatory Defendants before the merger occurred in 2016 or this dispute arose, or that it was in any way foreseeable that they would be bound by the 2010 ADS Forum Clause in the context of claims relating to the merger in 2016.

To the contrary, the very transaction documents upon which Plaintiffs so heavily rely – the Section 13(e) disclosures – do not refer to the 2010 ADS Receipt for any choice of forum or law, but instead clearly and repeatedly provided that shareholders who wished to object to the merger and enforce dissenters' rights would have to do so under ***Cayman law*** and ***in a Cayman proceeding***, and provided detailed instructions for doing exactly that.  (*See, e.g.*, Rule 13e-3 Stmt., at 100-01 (Doc. 49-1, at 137-38 of 270) (invoking Section 238 of the Cayman Islands Companies Law ("CICL") and appraisal proceedings in the Grand Court of the Cayman Islands); Summary Term Sheet, at 43 (Doc. 49-1; Page 77 of 270) ("under the laws of the Cayman Islands, shareholders have the right to dissent from the merger and to receive payment of the fair value of their Shares … determined by the Grand Court of the Cayman Islands.").)[6]

It therefore would be unreasonable to assume that the non-signatory Defendants should have foreseen that the limited forum selection clause in the 2010 ADS Receipt, which they did not enter into with Plaintiffs, would control Plaintiffs' claims regarding the merger, instead of the explicit provisions of the merger documents themselves which mandate a Cayman forum and Cayman law.  Because it was not foreseeable to the non-signatory Defendants that the ADS Forum Clause would control, the clause cannot bind them.

Accordingly, the Second Circuit's second question should be answered in the negative, because any presumption of enforceability does ***not*** "cover the non-signatories here."

---

[6] Even if it were assumed that the 2010 ADS Receipt initially controlled all claims by ADS holders, the merger documents effectively amended that agreement, at least to the extent of requiring a Cayman forum and Cayman law for claims relating to the  2016 merger.  (*See* Merger Agmt., § 2.01(b) (Doc. 49-1, at 155 of 270) ("in the event of any conflict between this [Merger] Agreement and the Deposit Agreement, this Agreement shall prevail"); ADS Deposit Agreement ¶ 6.01 (Doc. 49-6, at 32 of 55) ("The form of the Receipts and any provisions of this Deposit Agreement may at any time and from time to time be amended by agreement between the Company and the Depositary without the consent of Owners or Holders….").)

### 3. Any Presumption That the ADS Forum Clause is Enforceable Is Rebutted as Unreasonable and Unjust.

With respect to the Second Circuit's third question,  any presumption of enforceability is rebutted because it would be unreasonable and unjust to enforce the ADS Forum Clause in this case.  If the ADS Forum Clause were enforced, only Count IV would proceed in this forum and only against the Company and only involving the claims of ADS holders.  Because Plaintiffs chose to name so many defendants and advance so many claims, litigation would proceed in at least two fora, exposing Defendants to the risk of inconsistent verdicts and varying standards governing the very same conduct.  As but one critical example, Plaintiffs' certainly will argue that the damage model for their Section 13(e) claim in New York includes as one element a finding of the fair value of their ADSs, as would their claims for negligent misrepresentation, breach of fiduciary duty, and/or an appraisal in the Caymans.  Similarly, in the Section 13(e) claim Plaintiffs would be asking this Court to determine whether the disclosure documents contained misstatements, while their negligent misrepresentation claims would be asking a Cayman Court to determine the exact same thing.[7]  "Such an exercise would be a gross waste of the parties' and the Court's resources.  Enforcement of the forum selection clause is therefore unreasonable." *Mylan Pharm. Inc. v. Am. Safety Razor Co.*, 265 F. Supp. 2d 635, 640 (N.D.W.Va. 2002) (refusing to enforce forum selection clause where only one of the claims was subject to the clause).  *See also LaSala v. E*TRADE Securities LLC*, No. 05 Civ. 5869(SAS), 2005 WL 2848853, at *6 & nn. 73-75 (S.D.N.Y. Oct. 31, 2005) (refusing to enforce forum selection clause where resulting multiple actions would waste judicial resources and increase defendant's burden, and therefore be unreasonable) (collecting cases); *Foothill Capital Corp. v.*

---

[7] Plaintiffs' own Complaint proclaims that "the prosecution of separate actions … would create a risk of inconsistent or varying adjudications … [and] establish incompatible standards of conduct for defendants...."  (Doc. 1 ¶ 95.)

*Kidan*, No. 03 Civ. 3976(RMB), 2004 WL 434412, at *3-5 (S.D.N.Y. March 8, 2004) (refusing to apply a forum selection clause where some of the claims and parties in the lawsuit were not subject to the clause and a related litigation was pending in another state).[8]

Accordingly, the Second Circuit's third question, whether any presumption of enforceability has been rebutted, should be answered in the affirmative. The Court's prior analysis, and its determination that *forum non conveniens* dismissal was warranted, therefore should be reaffirmed, and the Complaint should again be dismissed.

## II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

### A. Count IV, for Violation of Section 13(e) and Rule 13e-3 Thereunder, Should Be Dismissed.

Plaintiffs allege that all Defendants violated Section 13(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(e), and Rule 13e-3 promulgated thereunder, 17 C.F.R. § 240.13e-3 (2019), by misrepresenting the fairness of the transaction and the independence of counsel. (Doc. 1 ¶¶ 119-22.) However, this claim fails as a matter of law on four independent grounds.

---

[8] *Accord Dias v. Mediterranean Shipping Co.*, No. 02-21771-CIV., 2003 WL 23190184, at *2 (S.D. Fla. Aug. 5, 2003) ("[L]itigating this particular case in more than one forum could lead to inconsistent results at worst and an unnecessary duplication of judicial effort at best. Accordingly, I find that under the standard established under *M/S Bremen* and its progeny, the forum selection clause … should not be enforced in this case."); *BP Prod. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F.Supp.2d 1253, 1257-58 (S.D. Fla. 2006) (declining to enforce forum selection clause that applied to some, but not all, claims due to possibility of inconsistent judgments and waste of judicial resources); *British Marine Lux., S.A. v. Deep Sea Fin., LLC*, No. CV 409-023, 2010 WL 1960994, at *7 (S.D. Ga. May 13, 2010) ("enforcement of the choice-of-forum clause would be unreasonable" when cross-claim was not bound by the forum selection clause but "involve[d] the same facts and many of the same legal theories"); *Barletta Heavy Div., Inc. v. Erie Interstate Contractors*, Inc., 677 F. Supp. 2d 373, 379 (D. Mass. 2009) ("Because enforcement of the forum selection clause would require bifurcating this suit into two parallel actions, it would be inefficient and unjust to do so."); *Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-CIV, 2005 WL 5654643, at *11 (S.D.Fla. Sept. 23, 2005) (refusing to enforce forum selection clause where enforcement would result in parallel actions in two fora).

12

      1.     **The Court Should Not Imply a Private**
                                   **Right of Action Under Section 13(e).**

This Court previously noted that many courts – including a sister court in this District –
have refused to recognize an implied private right of action under Section 13(e) of the Exchange
Act.  (Doc. 61, at 30 (*citing, e.g.*, *Bolton v. Gramlich*, 540 F. Supp. 822, 842-43 (S.D.N.Y.
1982)).)  This is because following the Supreme Court's 2008 decision in *Stoneridge Inv.
Partners, LLC v. Sci.-Atlant*a, 552 U.S. 148, 150 (2008), courts appropriately are reluctant to
adduce any new implied private rights of action.  The Supreme Court explained in *Stoneridge*
that while "the rule [for implying a private right of action] once may have been otherwise, it is
settled that there is an implied cause of action only if the underlying statute can be interpreted to
disclose the intent to create one."  *Id.*, 552 U.S. at 164; *see also Alexander v. Sandoval*, 532 U.S.
275, 286-87 (2001) ("Without [a clear demonstration of legislative intent], a cause of action does
not exist and courts may not create one, no matter how desirable that might be as a policy matter,
or how compatible with the statute.").[9]  Plaintiffs have not made, and cannot make, this showing.

      2.     **Even if a Private Right of Action Were Inferred, Under *Morrison***
                                   **Plaintiffs' Claim Could Not Reach This Foreign Transaction.**

In *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 261-65 (2010), the Supreme
Court held that private rights of action under the Exchange Act do not apply to foreign
transactions.  To overcome *Morrison*'s bar, Plaintiffs must show either that they sold their
Dangdang shares (i) in a transaction on a U.S. exchange or (ii) in an off-exchange transaction

---

      [9] Although one sister Court in this District had previously found, decades before the
*Stoneridge* decision, an implied private right of action under Section 13(e) in the unreported
decision in *Fisher v. Plessey Co*., 1983 WL 1328, at *3 (S.D.N.Y. June 22, 1983), it must
respectfully be questioned whether that case remains good law.  The paucity of subsequent
reliance on *Fisher*, especially when coupled with *Fisher*'s strong reliance on the now-overruled
*Cort v. Ash*, 422 U.S. 66 (1975), casts its validity into serious doubt.  *See also Berg v. First Am.
Bankshares, Inc.*, No. Civ. A. 83-3887, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (finding
*Fisher* unpersuasive), *aff'd*, 796 F.2d 489 (D.C. Cir. 1986).

occurring in the U.S. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179-82 (2d Cir. 2014) (dismissing claims); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 472-76 (S.D.N.Y. 2013). Plaintiffs cannot make either showing.

Plaintiffs cannot show that they sold their shares on a U.S. exchange. While Dangdang ADSs were listed on NYSE until the 2016 merger closed, that is insufficient. *See Pontiac*, 752 F.3d at 179-81 (rejecting "listing theory"). Nor does it matter that Plaintiffs might have purchased their ADSs on NYSE, because their claims are not based on those purchases. *See Pontiac*, 752 F.3d at 180 (explaining *Morrison*'s focus on transaction giving rise to claim, not other transactions that might have occurred on U.S. exchange). Plaintiffs claim that they did not sell their shares on any exchange, U.S. or otherwise, but instead that their shares were "cashed out" for inadequate consideration through a privately-negotiated merger .[10]

To satisfy the second branch of Morrison, that the transaction occurred in the U.S., a plaintiff must show either that title "passed within the United States" or that the parties "incur[red] irrevocable liability to carry out the transaction within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012); *see also In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 309 n.5 (S.D.N.Y. 2017) (Carter, J) (instructing that *Absolute Activist*'s "guidance is applicable to any transaction not on a domestic exchange"). But no title was passed in the merger at all; the shares were canceled.[11] And Dangdang and the buyer group incurred irrevocable liability to complete the transaction in

---

[10] The named Plaintiffs allege they owned only ADSs, those ADSs were traded on NYSE, and that they "were cashed out in the Going-Private Merger" through the payment of the "Merger consideration." (Doc. 1 ¶¶ 4-5, 29, 89, Prayer for Relief E.)

[11] Rule 13e3 Transaction Stmt., at 1 (Doc. 49-1, at 6 of 270) ("At the Effective Time, each ADS issued and outstanding immediately prior to the Effective Time … will be cancelled in exchange for the right to receive $6.70 in cash per ADS….").

China,[12] where the parties agreed to the deal and the shareholders approved it, or in the Caymans, where the merger became effective – that is where the parties "committed to one another." *Absolute Activist*, 677 F.3d at 68.  Irrevocable liability thus did not occur "within the United States." *Id*. at 69.[13]

Moreover, the overwhelming foreign nature of this transaction negates any inference of this being a domestic transaction, even if title had passed or other elements of the transaction occurred in the U.S.  *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216-17 (2d Cir. 2014).

### 3.     Alternatively, Any Implied Right of Action Under Section 13(e) Fails for a Lack of Transaction Causation and Loss Causation.

Even if a private right of action were inferred for Plaintiffs' Section 13(e) claims,  they still have not alleged the essential elements of loss causation and transaction causation.  In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1105-06 (1991), the Supreme Court held that where a squeeze-out merger can be accomplished without the votes of any minority shareholders, those minority shareholders may not maintain a private cause of action complaining about misstatements in the proxy materials that violate Section 14(a) because the essential elements of transaction causation (*i.e.*, reliance) and loss causation were lacking.  *Id*. at

---

[12] Doc. 49-1, at 50 & 153 of 270 (extraordinary meeting and closing each held in China).

[13] It is immaterial that the ADS were held in a U.S. depository, or that presumably Plaintiff Fasano received the check for his shares here.  "A sale occurs when the parties to a transaction have obligated themselves to carry it out, with nothing further remaining to be done but the performance of functions such as paying the purchase price and transferring title to, or possession of, the securities." *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 949 (N.D. Ill. 2001); *In re Petrobras Sec.*, 862 F.3d 250, 272 n.24 (2d Cir. 2017) ("[W]e reject Plaintiff's argument that a securities transaction is 'domestic' under *Morrison* and *Absolute Activist* if it settles through the [New York-headquartered] DTC."). After all, "the mechanics of [securities depository] settlement are actions needed to carry out transactions, but they involve neither the substantive indicia of a contractual commitment necessary to satisfy [*Morrison*'s] first prong nor the formal weight of a transfer of title necessary for its second." *In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015).

1099, 1105-06.  This same principle has been applied to foreclose claims under Section 13(e) as well.  *See TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06-CV-13447(CM), 2008 WL 650385, at *18-21 (S.D.N.Y. Mar. 7, 2008) (loss causation absent in claims of misstatements where plaintiffs' votes were not required to effect squeeze-out merger).

That is the exact situation here.  Plaintiffs' own Complaint demonstrates that the proponents of the going-private transaction held over 80% of the eligible votes, and the transaction was not subject to any majority-of-the-minority conditions.  (Doc. 1 ¶¶ 19, 56-59.)[14] None of the minority shareholder's votes therefore were required to accomplish the merger. Thus, as directed by *Virginia Bankshar*es and its progeny, minority shareholders like Plaintiffs cannot maintain a Section 13(e) claim asserting that the merger disclosures were inadequate. Plaintiffs and the other members of their putative plaintiff class could not have prevented the merger no matter what the disclosures said, and so any shortcoming in the disclosures could not have caused their asserted losses.

And more fundamentally, Plaintiffs do not identify any shortcoming in the merger disclosures.  There are no facts alleged showing that Plaintiffs were in any way prevented from objecting to the merger or timely advancing appraisal rights in the Cayman proceedings, as multiple dissenting shareholders – including several U.S. shareholders – did exactly that.  There are no factual allegations that any "corrective" information was disclosed after any deadline for instituting appraisal rights, and Plaintiffs already possessed all information upon which their claims are now based well before the shareholder vote was taken.

---

[14] See also the Rule 13e3 Transaction Stmt., at 19 & 24 (Doc. 49-1, at 52 & 57 of 270), disclosing that only a two-thirds vote was required, while the supporting shareholders held more than 83% of the eligible votes and had agreed to vote them all in favor of the merger.

Indeed, the Complaint demonstrates that the transaction documents and the public record already contained all of the information upon which Plaintiffs' claims are based.  For example, all of the "facts" that Plaintiffs assert demonstrate the transaction was not fair  – (i) it lacked a majority-of-the-minority requirement; (ii) there was no "go-shop" provision; (iii) the presence and terms of a competing offer by iMeigu at $8.80 per ADS; (iv) the use of the Company's available cash to pay part of the merger consideration; and (v) distributions to sponsors resulting from the transaction upon cancellation of stock options – all were publicly disclosed in the Rule 13(e) filings well before Plaintiffs made any decision whether to dissent or seek an appraisal. (*E.g.*, Rule 13e-3 Stmt. (Doc. 49-1, at 52 of 270 (two-thirds vote required, as opposed to any majority-of-the-minority), at 44 of 270 (rather than a "go-shop" provision, the transaction included a non-solicitation clause), at 96 of 270 (describing March 9, 2016, receipt of competing offer at $8.80 per ADS), at 63 of 270 (use of Company's cash for merger consideration), and at 105-06 of 270 (showing cash distributions to sponsors upon cancellation of stock options)).)[15]

Similarly, the "facts" that Plaintiffs assert support their claim that M&C had a conflict and therefore were not independent – that it served the Special Committee and also represented Dangdang before the merger and would continue to do so afterwards – also were contained in the transaction documents and in the public domain.  Indeed, Plaintiffs' own Complaint highlights that Dangdang's public disclosures had listed M&C as the Company's counsel continuously since 2010 (Doc. 1, ¶¶ 65-67), and the Rule 13e-3 Transaction Statement repeated this fact and further disclosed that M&C was advising the Special Committee (Rule 13e-3 Transaction Stmt. (Doc. 49-1, at 60 of 270).)

---

[15] See also Doc. 49-21, at 2 of 2 (Press Release by iMeigu on April 7, 2016), demonstrating competing offer of $8.80 was known publicly for several months.

And where the Complaint claims that the merger price was below the 90-day average trading price prior to the offer (Doc. 1, ¶ 2), that historical trading price necessarily was already in the total mix of public information.  Indeed, the Complaint repeatedly concedes that Bloomberg analysts contemporaneously published guidance criticizing the merger price as the "lowest" it had seen among 42 other going-private transactions (Doc. 1, ¶¶ 2, 40 80), and further stated that this comparison was wholly based upon "public transaction data" (*id.*, ¶ 40).

Where information underlying plaintiffs' claim was known to the market, loss causation is lacking.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511-13 (2d Cir. 2010) (rejecting attempt to predicate loss causation on information "known to the market" because corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"); *Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013) (same).

Plaintiffs apparently ***chose*** to not avail themselves of the appraisal rights they possessed under Cayman law, which were fully disclosed to them in the proxy materials (Rule 13e-3 Stmt., at 100-01 (Doc. 49-1, at 137-38 of 270)), in the apparent hope of engineering a better outcome in a New York forum.  But such a strategic, volitional act is not the forced forfeiture of a state law remedy that will give rise to causation in a private right of action.

Here, the Second Circuit's decision in *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000), is instructive.  The *Grace* Court began by observing that transaction causation and loss causation could not be shown where the votes of minority shareholders were not required to accomplish the transaction.  *Grace*, 228 F.3d at 46-49.  The Second Circuit then went further, into the territory that the Supreme Court declined to survey in *Virginia Bankshares*, concerning the claimed forfeiture of state law remedies.  The *Grace* Court noted that "plaintiffs did not vote in favor of the merger and did not show that they relied on the proxy materials in any way that

caused them to forfeit their rights to appraisal." *Grace*, 228 F.3d at 49-50.  That the *Grace* plaintiffs subsequently lost their appraisal rights due to their own strategic decisions, rather than any reliance on the supposedly misleading proxy materials, still did not amount to a forfeiture. As a result, the *Grace* plaintiffs' securities claims were dismissed.  *Id.*

The same result should occur here.  Plaintiffs' votes were not required to effect the going-private merger, and any decision to not seek appraisal in the Cayman Islands was volitional. Accordingly, Plaintiffs have not satisfied the essential elements of transaction or loss causation, even if a private right of action were inferred.

### 4. There Was No Actionable Misstatement or Omission.

Plaintiffs base their claims on two asserted misstatements in the Rule 13e-3 Transaction Statement:  (i) that the merger was "fair" to shareholders, when it supposedly was not; and (ii) that the law firm Maples & Calder ("M&C") were "independent," when they supposedly were conflicted because, in addition to counseling the Special Committee, they also had served as Company counsel.  Neither of these allegations supports a claim.

First, the statements that the transaction and merger price were "fair" is not actionable because Plaintiffs cannot show (and have not even alleged) such opinions were not honestly held or were based on untrue facts.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015); *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (statements of opinion not actionable unless defendants either "did not hold the belief" or "the supporting fact ... were untrue").  Similarly, there is no allegation that the transaction documents misstated the underlying data or the methodology by which the fairness opinion rendered by Duff & Phelps was reached.  This also renders the opinion inactionable.  *See Martin v. Quartermain*, 732 F. App'x 37, 40-43 (2d Cir. 2018).

19

Next, Plaintiffs' allegation that M&C had a "conflict of interest" in serving the Special Committee because the firm had also represented Dangdang before the merger and would continue to do so afterward (Doc. 1, ¶¶ 114, 121), is demolished by Plaintiffs' own concession that the Company disclosed the relevant facts about M&C in the transaction documents provided to investors.  (Doc. 1, ¶ 65 (Dangdang publicly disclosed that M&C was Dangdang's counsel); ¶ 66 (Form 13(e) disclosed that Dangdang's registered office in the Cayman Islands both before and after the merger was at "Maples Corporate Services Limited").)  There is therefore no actionable misstatement or omission concerning M&C.  *See In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*, No. 10-Civ.-4552 (PGG), 2014 WL 4953554, at *8-10 (S.D.N.Y. Sept. 30, 2014) (no actionable misstatement or omission where the information was publicly disclosed).

Moreover, because the merger sponsors had sufficient votes to force the transaction over any minority shareholder's objections, the alleged misstatements are not material as a matter of law.  *See TCS Capital*, 2008 WL 650385, at *16 (pre-merger disclosures not material "because there is no way that [the plaintiff] or the other minority shareholders could have held up the merger").

For all of the foregoing reasons, the Section 13(e) claim should be dismissed as a matter of law.

### B.   Plaintiffs' Remaining Claims Are Governed by Cayman Islands Law.

This Court has already acknowledged that there is "little doubt" that Plaintiffs' claims for breach of fiduciary duty, negligent misrepresentation, and quasi-appraisal exclusively concern

20

Dangdang's internal affairs, and thus are governed by the law of the Cayman Islands, the place of incorporation.  (Doc. 61, at 28-29.)  That conclusion was absolutely correct.[16]

Under New York choice of law rules,[17] "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation."  *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).  This doctrine "recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."  *Atherton v. FDIC*, 519 U.S. 213, 224 (1997).

As to breach of fiduciary duty, it is well-established that the internal affairs doctrine applies to such claims.  *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607

---

[16] Plaintiffs contend New York law should control because "the Merger Agreement contains a choice of law provision that specifically chooses New York law, *except for certain discrete issues*."  (Doc. 1 ¶ 25 (emphasis added).)  But when the provisions that excise are restored (underlined below), the Merger Agreement states:

> This Agreement shall be interpreted, construed and governed by and in accordance with the Laws of the State of New York without regard to the conflicts of law principles thereof, **except** that the following matters arising out of or relating to this Agreement shall be interpreted, construed, performed, enforced and governed by and in accordance with the **Laws of the Cayman Islands** in respect of which the parties hereto hereby irrevocably submit to the nonexclusive jurisdiction of the courts of the Cayman Islands: the Merger, … the cancellation and conversion of the Shares as the case may be (including Shares represented by ADSs), the rights set forth in Section 238 of the CICL with respect to any Dissenting Shares, the fiduciary or other duties of the Company Board (and the Special Committee) and the board of directors of Parent and Merger Sub and the internal corporate affairs of the Company…."

(Merger Agmt. ¶ 9.09, at 60 (Doc. 49-1, at 211 of 270) (underscored materials excised by Plaintiffs in Complaint ¶ 25; emphasis added).)  Of course, the "exceptions" that Plaintiffs hide are large enough and specific enough to swallow whole their claims for breach of fiduciary duty, negligent misrepresentation, and appraisal.

[17] "[Courts] apply the choice-of-law rules of the state in which the federal district court sits."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015).

(S.D.N.Y. 2011) (citing, *inter alia*, *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980)); *accord* Second Declaration of Robin Hollington, QC ("Hollington-2"), ¶ 6.

 The internal affairs doctrine also applies to negligent misrepresentation claims. Those claims are premised on alleged misrepresentations supposedly made by Defendants as directors and controlling shareholders to Plaintiffs as minority shareholders. (Compl. ¶¶ 111-15.) Indeed, Plaintiffs' negligent misrepresentation claims expressly incorporate Defendants' alleged "fiduciary duties . . . to provide accurate information" to minority shareholders (*id.* ¶ 112) – indisputably an issue governed by Cayman Islands law. *See Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at *10 (S.D.N.Y. Sept. 18, 2015) (scope of fiduciary duties is defined by the law of the place of incorporation); *accord* Hollington-2, ¶ 6.

 Further, Plaintiffs allege that, in their capacities as shareholders, they relied on misrepresentations related to the fairness of the going-private merger "in deciding how to vote and whether to exercise appraisal rights" in connection with that merger. (Doc. 1, ¶¶ 113-15.) Those allegations implicate internal corporate decisions bearing on a local transaction between a Cayman Islands corporation and its shareholders. *See Aveta Inc. v. Cavallieri*, 23 A.3d 157, 168 (Del. Ch. 2010) ("The implementation ... of a merger between two corporations from the same jurisdiction is an internal corporate matter to be governed by the law of that jurisdiction."); *Hahn v. Breed*, 587 F. Supp. 1369, 1381 (S.D.N.Y. 1984) (claim implicating "the fairness of the merger to a shareholder of a foreign corporation ... involves the internal affairs of a foreign corporation"); Restatement (Second) of Conflict of Laws § 302 cmt. A (Am. Law Inst. 1971), Comment (listing "mergers" as an issue within the scope of the internal affairs doctrine). Accordingly, Plaintiffs' negligent misrepresentation claims clearly concern "matters peculiar to the relationships among or between the corporation and its current officers, directors, and

shareholders," *Atherton*, 519 U.S. at 224, and are therefore governed by Cayman Islands law, *see, e.g., NatTel, LLC v. SAC Capital Advisors*, No. 3:04-CV-1061(JBA), 2005 WL 2253756, at *9 (D. Conn. Sept. 16, 2005) (applying internal affairs doctrine to common law misrepresentation claims because plaintiff was a minority shareholder and its claims "arise out of [defendant's] actions as a fellow shareholder" and "relate to the internal conduct of . . . corporate business"), *aff'd*, *SAC Capital Advisors LLC*, 370 F.App'x 132 (2d Cir. 2006).

Plaintiffs' "quasi-appraisal" claim is also governed by Cayman law.  Quasi-appraisal is a form of relief (as opposed to a cause of action) that attempts to award shareholders the fair value of their shares.  As this Court recognized, "the Cayman Islands have a specific statutory scheme . . . that entitles dissenting shareholders to payment of the fair value of their shares and instructs the Cayman Islands courts to schedule hearings to determine the fair value…."  (Doc. 61 at 19, 24.)  Under these circumstances, there is simply no basis for applying the law of a different forum.  *Cf. Weiss v. Routh*, 149 F.2d 193, 195-96 (2d Cir. 1945) (suit to recover fair value of shares following merger involved "internal affairs" of Virginia corporation, and that "it would be an onerous added burden upon the corporation to subject it to suit in any foreign forum where a shareholder would serve it; and, moreover, there would be no uniformity in the recoveries, and therefore no equality of treatment between the [dissenting shareholders]").

### C.    Count III, Alleging Negligent Misrepresentation, Should Be Dismissed.

Although Cayman law should control Plaintiffs' claims for negligent misrepresentation (*supra* Section II.B.), there is no actual conflict of laws because New York law and Cayman law each include essential elements, among others, of (i) a material misstatement; (ii) reliance; and (iii) causation.  *See Capricorn Inv'rs III, L.P. v. CoolBrands Int'l, Inc.*, 66 A.D.3d 409, 409 (1st Dep't 2009) (material misstatement); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007)

(reliance and causation); Hollington-2, ¶¶ 8-17. Because Plaintiffs cannot satisfy any of those elements, they each provide an independent ground to dismiss the claim.

As shown above in connection with the Section 13(e) claim, the two alleged misstatements, about the "fairness" of the transaction and merger price, and the independence of M&C, are simply not actionable misstatements. (*Supra* Section II.A.4.) And, as also described with respect to the Section 13(e) claim, because Plaintiffs' votes were not required to effect the merger, because there is no allegation that Plaintiffs forfeited any appraisal remedy by voting for the merger, and because the merger price was set by the transaction documents, there is no causation, reliance or materiality. (*Supra* Section II.A.3.) Accordingly, the negligent misrepresentation claim also should be dismissed as a matter of law.

### D.      Count I, Alleging Breach of Fiduciary Duties, Should Be Dismissed.

Count I asserts that Defendants breached fiduciary duties they owed directly to the Plaintiffs. (Doc. 1 ¶¶ 97-103.) This claim fails both because (i) under Cayman law directors and majority shareholders owe duties only to the corporation and not to individual shareholders, absent special circumstances not present here, and (ii) ADS holders are not considered shareholders under Cayman law, and so cannot exercise the rights enjoyed by shareholders in any event. Accordingly, Count I should be dismissed. (Hollington-2, ¶¶ 18-25.)[18]

### E.      Count V, Seeking Quasi-Appraisal, Should Be Dismissed.

Proceedings to obtain an appraisal of the fair value of dissenting shares is a creature of statute, including in the Cayman Islands. (Hollington-2, ¶ 26.) This was fully disclosed to

---

[18] Accord *Feiner Family Tr. v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *7 (S.D.N.Y. Sept. 11, 2007) ("[U]nder Cayman Islands law, majority shareholders do not owe fiduciary duties to the company or to minority shareholders ... [and] a director does not owe any fiduciary duties to minority shareholders solely based on his or her relationship to the company.").

Plaintiffs in the merger documents (*e.g.*, CICL § 238).  But Plaintiffs chose to not avail themselves of those procedures and, by opposing dismissal in favor of Cayman proceedings, have continued to resist that very remedy.  Instead, Count V purports to assert a claim for *quasi*-appraisal.  (Doc. 1 ¶¶ 123-27.)  However, quasi-appraisal is not an independent cause of action, but instead is a remedy for some other legally-cognizable claim.  *See In re Cyan, Inc. Stockholders Litig.*, No. CV 11027-CB, 2017 WL 1956955, at *1, *17-18 (Del. Ch. May 11, 2017); Hollington-2, ¶ 26.  Because Plaintiffs' other claims are legally defective, their chosen remedy of quasi-appraisal must fail too.  *In re Cyan*, 2017 WL 1956955, at *1, 17-18.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Motion be granted in all respects.

Dated: August 22, 2019
        New York, New York

    /s/ Scott D. Musoff
Scott D. Musoff
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
E-Mail:        scott.musoff@skadden.com
                 james.brown@skadden.com

*Attorneys for Defendants*
   *E-Commerce China Dangdang, Inc.;*
   *Dangdang Holding Company Limited;*
   *Kewen Holding Company Limited;*
   *Science & Culture International Limited;*
   *First Profit Management Limited;*
   *Peggy Yu Yu; Danqian Yao; Lijun Chen;*
   *and Min Kan.*

25