UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOE FASANO, *et al.*,                                    :
                Plaintiffs,          :          16-cv-8759 (KPF)
                                         :
                -v.-          :
                                         :
GUOQING LI, *et al.*,                                    :
                Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Scott D. Musoff
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
E-Mail:       scott.musoff@skadden.com
                      james.brown@skadden.com

*Attorneys for Defendants*
  *E-Commerce China Dangdang, Inc.;*
  *Dangdang Holding Company Limited;*
  *Kewen Holding Company Limited;*
  *Science & Culture International Limited;*
  *First Profit Management Limited;*
  *Peggy Yu Yu; Danqian Yao; Lijun Chen;*
  *and Min Kan.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

I.  THE COMPLAINT SHOULD AGAIN BE DISMISSED ON GROUNDS OF
    *FORUM NON CONVENIENS.* ...........................................................................................3

    A.  The Majority of the Court's Prior Decision Dismissing the Action on
        Grounds of *Forum Non Conveniens* Remains Undistubed. ...................................4

    B.  The ADS Forum Clause Does Not Alter the Court's Prior Decision,
        Rendering *Forum Non Conveniens* Dismissal Appropriate Again. ........................4

        1.  A Rebuttable Presumption of Enforceability Applies to the ADS
            Forum Clause, But Only as to Federal Securities Claims. ...........................4

        2.  The ADS Forum Clause is Applicable Only to Dangdang, and Not
            to Any of the Other Eight Defendants. .........................................................6

        3.  Any Presumption That the ADS Forum Clause is Enforceable Is
            Rebutted as Unreasonable and Unjust. ........................................................8

II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED
    PURSUANT TO RULE 12(B)(6). ...........................................................................................9

    A.  Plaintiffs Federal Securities Law Claims Should be Dismissed on a
        Variety of Independent Grounds. ...........................................................................9

        1.  Under *Morrison,* Plaintiffs' Federal Securities Claims Do Not
            Reach This Foreign Transaction. .................................................................10

        2.  The Court Should Not Imply a Private Right of Action Under
            Section 13(e). ..............................................................................................11

        3.  Any Claims Under Sections 10(b) and 13(e) Fail for a Lack of
            Transaction Causation and Loss Causation. ................................................12

        4.  There Was No Actionable Misstatement or Omission. ...............................16

        5.  The Section 10(b) Claim Fails for Lack of a Purchase or Sale. .................19

        6.  The Section 10(b) Claim Fails for Lack of Scienter. .................................20

        7.  The Section 20(a) Claim Should be Dismissed. .........................................21

    B.  Plaintiffs' Common Law Claims Should be Dismissed As They Are
        Governed by Cayman Islands Law. ........................................................................21

    C.  Count IV, Alleging Negligent Misrepresentation, Should Be Dismissed. ............24

i

D.      Count V, Alleging Breach of Fiduciary Duty, Should Be Dismissed. ..................25

CONCLUSION..................................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)..........................................................................10-11

*Aguas Lenders Recovery Group LLC v. Suez*, S.A.,
  585 F.3d 696 (2d Cir. 2009)............................................................................4, 6

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)............................................................................................12

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
  356 F. Supp. 3d 379 (S.D.N.Y. 2019).................................................................7

*Atherton v. FDIC*,
  519 U.S. 213 (1997)......................................................................................22-23

*Aveta Inc. v. Cavallieri*,
  23 A.3d 157 (Del. Ch. 2010)............................................................................23

*Barletta Heavy Division, Inc. v. Erie Interstate Contractors*, *Inc.*,
  677 F. Supp. 2d 373 (D. Mass. 2009) ...............................................................9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)............................................................................................13

*Berg v. First American Bankshares, Inc.*,
  Civ. No. A. 83-3887, 1985 WL 2232 (D.D.C. Apr. 17, 1985),
  *aff'd*, 796 F.2d 489 (D. D. Cir. 1886) ..............................................................12

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)......................................................................................19-20

*British Marine Luxembourg, S.A. v. Deep Sea Financing, LLC*, No. CV 409-023,
  2010 WL 1960994 (S.D. Ga. May 13, 2010).......................................................9

*Capricorn Investors III, L.P. v. CoolBrands International, Inc.*,
  66 A.D.3d 409 (1st Dep't 2009) .......................................................................24

*Cartica Management, LLC v. Corpbanca*, S.A.,
  50 F. Supp. 3d 477 (S.D.N.Y. 2014).................................................................20

*Celsion Corp. v. Stearns Management Corp.*,
  157 F. Supp. 2d 942 (N.D. Ill. 2001) ...............................................................11

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..............................................................................10

*In re Corning, Inc. Securities Litigation*,
    349 F. Supp. 2d 698 (S.D.N.Y. 2004)..............................................................19

*Cort v. Ash*,
    422 U.S. 66 (1975), *judgment rev'd*, 422 U.S. 66 (1975)...................................12

*Dias v. Mediterranean Shipping Co.*,
    No. 02-21771-Civ., 2003 WL 23190184 (S.D. Fla. Aug. 5, 2003) ....................................9

*Feiner Family Trust v. VBI Corp.*,
    No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) .........................25

*Finance & Trading, Ltd. v. Rhodia S.A.*,
    No. 04 Civ. 6083(MBM), 2004 WL 2754862 (S.D.N.Y. Nov. 30, 2004).........................5

*Fisher v. Plessey Co.*,
    No. 82 Civ. 1183, 1983 WL 1328 (S.D.N.Y. June 22, 1983)...........................................12

*Foothill Capital Corp. v. Kidan*,
    No. 03 Civ.3976(RMB), 2004 WL 434412 (S.D.N.Y. Mar. 8, 2004)................................9

*Gleis v. Buehler*,
    No. 3:11 CV663 VLB, 2012 WL 1194987 (D. Conn. Apr. 10, 2012) ...............................1

*Gomez v. City of New York*,
    No. 14 CIV. 05932 (CM), 2016 WL 5115499 (S.D.N.Y. Sept. 16, 2016) ......................24

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000).............................................................................................15

*Gurfein v. Ameritrade, Inc.*,
    411 F. Supp. 2d 416 (S.D.N.Y. 2006)...................................................................... 20-21

*Hahn v. Breed*,
    587 F. Supp. 1369 (S.D.N.Y. 1984)................................................................................23

*Holzman v. Guoqiang Xin*,
    No. 12-cv-8405 (AJN), 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) .........................23

*Johnson v. Nextel Communications Inc.*,
    780 F.3d 128 (2d Cir. 2015)...........................................................................................22

*In re JP Morgan Auction Rate Securities (ARS) Marketing Litigation*, No. 10-Civ.-4552
    (PGG) et al., 2014 WL 4953554 (S.D.N.Y. Sept. 30, 2014) ...........................................17

*In re Jumei International Holding Ltd. Securities Litig.*,
    No. 14cv9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017)........................................ 18-19

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).................................................................20

*LaSala v. E\*TRADE Securities LLC*,
  No. 05 Civ. 5869(SAS), 2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005) ........................ 8-9

*Leviton Manufacturing Co. v. Reeve,*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) ...............................................................7

*In re Lululemon Securities  Litigation*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...................18

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)...........................................................................................4

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011)...............................................................22

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ......................................................................16

*Matana v. Merkin*,
  989 F. Supp. 2d 313 (S.D.N.Y. 2013)...............................................................20

*Mayer v. Oil Field Systems Corp.*,
  803 F.2d 749 (2d Cir. 1986).............................................................................5

*Louisiana Pacific  Corp. v. Money Market I Institutional Investment Dealer (In re Merrill
  Lynch Auction Rate Sec. Litig.)*,
  851 F. Supp. 2d 512 (S.D.N.Y. 2012), *aff'd*, 571 F. App'x 8 (2d Cir. 2014)...................13

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .......................................................................15

*Meyercord v. Curry*,
  38 A.D.3d 315 (1st Dep't 2007) ......................................................................24

*Miller v. Mercuria Energy Trading, Inc.*,
  291 F. Supp. 3d 509 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019)............. 5-7

*Morrison v. National Australia Bank, Ltd.*,
  561 U.S. 247 (2010)......................................................................................10

*Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*,
  265 F. Supp. 2d 635 (N.D.W.Va. 2002) ...........................................................8

*NatTel, LLC v. SAC Capital Advisors*,
  No. 3:04-CV-1061(JBA), 2005 WL 2253756 (D. Conn. Sept. 16, 2005).................. 23-24

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
121 F.3d 24 (2d Cir. 1997)........................................................................5-6

*New Orleans Employees' Retirement Systems v. In re Omnicom Group, Inc. Securities
Litigation (In re Omnicom Group, Inc. Securities Litigation)*,
597 F.3d 501 (2d Cir. 2010).....................................................................12, 15

*In re North Sea Brent Crude Oil Futures Litigation*,
256 F. Supp. 3d 298 (S.D.N.Y. 2017),
*aff'd sub nom. Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94
(2d Cir. 2019)......................................................................................10-11

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
135 S. Ct. 1318 (2015).............................................................................16

*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*,
No. 13 Civ. 1797(KBF), 2013 WL 6503525 (S.D.N.Y. Dec. 9, 2013) ...........................6

*In re Petrobras Securities Litigation*,
150 F. Supp. 3d 337 (S.D.N.Y. 2015).............................................................11

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017).......................................................................11

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).................................................................................21

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007).....................................................................4-6

*In re Satyam Computer Services Ltd. Securities Litigation*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013).............................................................10

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
81 F.3d 1224 (2d Cir. 1996)........................................................................22

*In re Shanda Games Ltd. Sec. Litig.*, 1:18-cv-02463-ALC,
2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30, 2019)....................................12-13

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*,
552 U.S. 148 (2008).............................................................................11, 12

*Sung v. Wasserstein*,
No. 05 Civ. 7138(VM), 2006 WL 435449 (S.D.N.Y. Feb. 21, 2006) ...............................5

*TCS Capital Management, LLC v. Apax Partners, L.P.*,
No. 06-CV-13447(CM), 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ........................13, 19

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..................................................................................16

*Tropp v. Corp. of Lloyd's*,
    385 F.App'x 36 (2d Cir. 2010) ......................................................................... 5-7

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)..............................................................................12, 17

*Western Capital Design, LLC v. New York Mercantile Exchange*,
    180 F. Supp. 2d 438 (S.D.N.Y. 2001),
    *aff'd*, 25 F. App'x 63 (2d Cir. 2002)..................................................................3

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017), *cert denied*, 138 S. Ct. 1702 (2018)......................................13

## STATUTES

15 U.S.C. § 78j(b) ..............................................................................9-10, 12, 19-20

15 U.S.C. § 78m(e) ..................................................................................... 9-12

15 U.S.C. § 78t(a) ................................................................................. 9-10, 21

15 U.S.C. § 77z–2(c)......................................................................................18

## REGULATIONS

17 C.F.R. § 240.10b-5..........................................................................9-10, 12, 19-20

17 C.F.R. § 240.13e-3 .................................................................................. 9-12

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 302 (Am. Law Inst. 1971) ......................................23

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants E-Commerce China Dangdang, Inc. ("Dangdang" or "the Company");

Dangdang Holding Company Limited; Kewen Holding Company Limited; Science & Culture

International Limited; First Profit Management Limited; Peggy Yu Yu; Danqian Yao; Lijun

Chen; and Min Kan (collectively, "Defendants") respectfully submit this memorandum in

support of their Motion to Dismiss the Amended Complaint (Doc. 79, the "Complaint" or "AC").

Preliminary Statement

Apparently unable to oppose Defendants' motion to dismiss on the merits (Docs. 74-76),

Plaintiffs have now interposed an Amended Complaint with cosmetic changes they seem to hope

will keep this case in New York and allow it to survive the "perfunctory" review they have asked

the Court to perform.  (Doc. 67, at 1.)  But the Amended Complaint, which is larded with legal

arguments and citations and which now, some three years into the litigation, seeks to jettison

Company common shareholders from the plaintiff class and re-frame this case as a securities

class action subject to New York and federal law, is just as defective as the initial complaint.[1]

For example, because their prior, standalone Count V for quasi-appraisal underscored the

similarity of their initial complaint to appraisal proceedings more properly brought in the

Cayman Islands, they have eliminated that standalone count, but nonetheless ask for that exact

same relief in the Amended Complaint.  (AC, Demand for Relief, § E (seeking "quasi-appraisal

damages").)  This cosmetic change does nothing to avoid dismissal on grounds of *forum non*

*conveniens*.  Indeed, despite opposing *forum non conveniens* dismissal and telling the Court that

this case is very different from the earlier Cayman proceedings (and that they have no interest in

---

[1] Of course, "it is inappropriate to include legal argument and briefing within a
complaint," as it violates Rule 8's requirement of a "short and plain statement of the claim."
*Gleis v. Buehler*, No. 3:11-CV-663VLB, 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012).

a Cayman appraisal action), they have hired Cayman counsel who demanded – the day before the Amended Complaint was filed – discovery of the trial bundles from the Cayman appraisal proceedings, supposedly based upon the "common central issue in the Cayman Proceeding and the New York Action, namely the fair value of the Company's shares…."  (Brown Dec. Exh. A.)

Next, Plaintiffs added claims under Section 10(b) and 20(a) of the Exchange Act, perhaps to try to give greater traction to the ADS Receipts' forum selection clause (the "ADS Forum Clause") that applies only to federal securities claims.  But the Section 10(b) and 20(a) claims are makeweight, and suffer from the same defects that doom the Section 13(e) claim, including a lack of extraterritorial reach under *Morrison*, and the absence of loss causation and transaction causation because Plaintiffs' votes were not needed to effect the merger.

As to their negligent misrepresentation and fiduciary duty claims, in the hopes of avoiding *forum non conveniens* dismissal Plaintiffs have now disavowed any intention to rely upon foreign law, and instead purport to bring those claims only to the extent they are cognizable under New York or federal law.  (AC Counts IV & V.)  But Plaintiffs cannot simply pick and choose what law applies to the relationship between a Company and its shareholders, as such internal affairs are governed solely by the law of the place of incorporation – in this case the Cayman Islands.  Thus, because Plaintiffs bring negligent misrepresentation and fiduciary duty claims only under New York or U.S. law, they are simply nonstarters.

Plaintiffs' final gambit is to narrow the definition of their putative class, jettisoning the common shareholders and limiting the proposed class to ADS holders, presumably in the hopes of appearing more vested in the ADS Forum Clause.  However, because controlling Cayman law recognizes breach of fiduciary duty claims only by common shareholders and not ADS holders, Plaintiffs' strategic choice mandates the dismissal of all fiduciary duty claims as a matter of law

– including the negligent misrepresentation claims which Plaintiffs allege arise from Defendants' "fiduciary duties . . . to provide accurate information" to minority shareholders.  (AC ¶ 163.)

For these reasons and all the reasons discussed below, Plaintiffs' Amended Complaint should be dismissed.[2]

## I.   THE COMPLAINT SHOULD AGAIN BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS.*

The Second Circuit requested that this Court evaluate the ADS Forum Clause and "its impact, *if any*, on the *forum non conveniens* analysis."   Specifically, the Second Circuit asked:

> **[1]** whether the presumption of the enforceability applies to the forum selection clause; **[2]** whether the presumption of enforceability covers the non-signatories here; and **[3]** if it applies, whether the presumption of enforceability is or has been rebutted as unreasonable, unjust, or the product of fraud or overreaching.

(Second Circuit Decision, at 8-9 (emphasis added).)  The answers to these three questions confirm that the Court's December 2017 Decision (Doc. 61) was properly decided.

*First*, the rebuttable presumption of enforceability applies to the ADS Forum Clause, but only reaches Plaintiffs' federal securities law claims under Sections 13(e), 10(b), and 20(a).

*Second*, while the ADS Forum Clause may apply to Dangdang, it does not apply to the other Defendants, who are not parties to the 2010 ADS Deposit Agreement containing the ADS Forum Clause.  In addition, the clause is too attenuated from both the other Defendants and the later 2016 merger to apply to Plaintiffs' present claims.   Rather, the explicit provisions in the 2016 merger documents specifying a Cayman forum and Cayman law should control.

*Third*, the presumption of enforceability is rebutted because it would be unreasonable and unjust to enforce the ADS Forum Clause in this case.

---

[2] Count VI (aiding and abetting breach of fiduciary duty), is pled only against the Special Committee Defendants who have not been served.  (AC ¶¶ 179-84.)  This claim therefore need not be addressed in dismissing the Complaint.  *W. Capital Design, LLC v. New York Mercantile Exch.*, 180 F. Supp. 2d 438, 443 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002).

**A.    The Majority of the Court's Prior Decision Dismissing the Action
on Grounds of *Forum Non Conveniens* Remains Undisturbed.**

It first is important to remember that the Second Circuit did not in any way question, or
suggest any need to revisit, most of the issues that this Court previously decided, including that:
(1) the Courts of the Cayman Islands provide an adequate alternative forum; (2) Plaintiffs'
choice of a U.S. forum should be given diminished deference; (3) the applicable law for the
principal claims – misrepresentation, breach of fiduciary duties, and the fairness of consideration
paid to minority shareholders – is Cayman Islands law; and (4) the private interests in this case
are neutral, while the public interests favor dismissal.  (Doc. 61 (Dec. 29, 2017 Order), at 12, 16-
19, 28, 28-31.)[3]  Thus, if the ADS Forum Clause does not materially alter the Court's analysis –
and it does not – then *forum non conveniens* dismissal is again warranted.

**B.    The ADS Forum Clause Does Not Alter the Court's Prior Decision,
Rendering *Forum Non Conveniens* Dismissal Appropriate Again.**

**1.    A Rebuttable Presumption of Enforceability Applies to the
ADS Forum Clause, But Only as to Federal Securities Claims.**

Defendants concede that a rebuttable presumption of enforceability arises over the ADS
Forum Clause under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), based upon the
unexceptional proposition that a forum selection clause presumptively should be enforced as
written.  Indeed, in the very case upon which Plaintiffs so heavily rely, *Aguas Lenders Recovery
Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009), the Second Circuit reiterated that there
is "no reason to treat forum selection provisions differently from other contractual obligations."

A contractual forum selection clause therefore requires a claim-by-claim analysis to
ensure it is applied only to those claims that are clearly within its scope.  *Phillips v. Audio Active*

---

[3] Because these issues need not be revisited, Defendants will not burden the Court with
unnecessary reargument, or with a description of the alleged facts and the parties, with which the
Court is already familiar.  (*See* Docs. 39 & 52.)

*Ltd.*, 494 F.3d 378, 387 (2d Cir. 2007); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32-33 (2d Cir. 1997).  And throughout that analysis, Plaintiffs bear the continuing burden to prove that the clause applies to each claim.  *Tropp v. Corp. of Lloyd's*, 385 F.App'x 36, 37 (2d Cir. 2010).  Plaintiffs cannot satisfy that burden, because Counts  IV through VI fall well outside the New York forum selection clause.

The ADS Forum Clause begins by mandating that ***all*** claims against the Company relating to the ADSs must be arbitrated.  The ADS Receipt then carves out a small exception for claims "relating to or based upon [U.S.] Federal securities laws," and declares that if Plaintiffs elect not to arbitrate those claims, then that subset of claims must proceed in a New York court. (ADS Receipt, § 23, at 16-17 (Doc. 79-5, at 53-54 of 55).)

Plaintiffs' breach of fiduciary duty and negligent misrepresentation claims are governed entirely by Cayman law, and thus are not "relating to or based upon" U.S. federal securities laws. (*Infra* § II.B.)  *See Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 757 (2d Cir. 1986) ("content and extent of fiduciary duties are fundamental issues of state law"); *Sung v. Wasserstein*, No. 05 Civ. 7138(VM), 2006 WL 435449, at *11 (S.D.N.Y. Feb. 21, 2006) (fiduciary duty claims challenging misleading prospectus are "classic state causes of action" and "unrelated to federal law"); *Fin. & Trading, Ltd. v. Rhodia S.A.*, No. 04 Civ. 6083(MBM), 2004 WL 2754862, at *7 (S.D.N.Y. Nov. 30, 2004) (claims of negligent misrepresentation in prospectus are "assessed entirely by applying [state] common law standards" and "do not depend on any rights or causes of action created by federal law").

Thus, the ADS Forum Clause provides a very narrow carve-out in which only Plaintiffs' federal securities claims against the Company could proceed here, even if the clause were enforced.  Where a forum selection clause is limited to a specific class of claims or issues, like it

is here, it cannot be applied to claims outside that limitation.  *Miller v. Mercuria Energy Trading, Inc.*, 291 F.Supp.3d 509, 523 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019); *accord Phillips*, 494 F.3d at 393; *New Moon Shipping*, 121 F.3d at 32-33.

### 2.     The ADS Forum Clause is Applicable Only to Dangdang, and Not to Any of the Other Eight Defendants.

Plaintiffs also bear the burden to prove that the ADS Forum Clause binds each of the various Defendants.  *Tropp*, 385 F.App'x at 37.  Although Plaintiffs' claims relate to the actions of Dangdang's controlling shareholders and ultimate acquirors, who Plaintiffs claim breached fiduciary duties owed to minority shareholders, and Dangdang's directors, who allegedly aided the controlling shareholders' breach, none of them are parties to the ADS Deposit Agreement or Receipt (Doc. 79-5, at 6 & 34 of 55).  They therefore are not subject to the ADS Forum Clause. *See Outdoor Partners LLC v. Rabbit Hole Interactive Corp*., No. 13 Civ. 1797(KBF), 2013 WL 6503525, at *3 n.4 (S.D.N.Y. Dec. 9, 2013) ("Of course, 'a contract cannot bind a non-party.'").

Plaintiffs have argued that the non-signatory Defendants, being officers, directors or shareholders of Dangdang, are "closely related" to the Company and therefore bound by the ADS Forum Clause.  But the authorities Plaintiffs cite simply do not support that argument.  For example, in *Aguas Lenders*, the Second Circuit enforced a forum selection clause against a non-signatory because that party was a successor-in-interest to the signatory.  Because a successor stands in the shoes of its predecessor, ordinary canons of contract law would bind the successor to the contractual promises of its predecessor, including a forum selection clause.  *Aguas Lenders*, 585 F.3d at 701 *("[I]f successorship is established*, a non-signatory is subject to the ... presumption of the enforceability of mandatory forum selection clauses.") (emphasis added).  As Judge Rakoff recently recognized, *Aguas Lenders* therefore stands for the "narrow proposition that a non-signatory can be bound by forum selection provisions to the same extent that it can

6

otherwise be bound to a contract under standard principles of contract law." *Arcadia*

*Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp.3d 379, 393 (S.D.N.Y. 2019).  Application of

the ADS Forum Clause to the non-signatory Defendants would violate these clear principles.

Moreover, in order to bind a non-signatory to the Forum Selection Clause, Plaintiffs must

prove that the non-signatory was made aware of the clause before the dispute arose, and that it

was foreseeable that he or she would be bound by the clause before the acts in question.  *Tropp*,

385 F.App'x at 37; *Arcadia*, 356 F. Supp.3d at 393-95 (declining to apply forum selection clause

to non-signatory where there was no showing that it was foreseeable that it would be so bound);

*Miller*, 291 F. Supp.3d at 523 (The "case law makes clear that 'closely related' in this sense is a

fairly strict standard…. [T]o bind a non-party to a forum selection clause, the party must be

'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.");  *Leviton*

*Mfg. Co. v. Reeve*, 942 F.Supp.2d 244, 259 (E.D.N.Y. 2013) ("The vast majority of cases that

have found a nonsignatory bound by a forum selection clause under the theory that they are

'closely related' to the dispute or the signatory, have done so where the non-signatory had a far

more active role in the transaction" that contained the forum selection clause.).

Plaintiffs cannot satisfy this burden.  The Complaint does not allege the breach of any

duties or obligations set out in the ADS Receipt or the ADS Depository Agreement.  And there

has been no showing that it was in any way foreseeable to the individual Defendants that they

would be bound by the 2010 ADS Forum Clause in the context of claims relating to the 2016

merger six years later.  To the contrary, the very transaction documents upon which Plaintiffs so

heavily rely – the Section 13(e) disclosures for the 2016 merger – do not refer to the 2010 ADS

Receipt for any choice of forum or law, but instead clearly and repeatedly provide that

shareholders who wish to object to the merger and enforce dissenters' rights would have to do so

under ***Cayman law*** and ***in a Cayman proceeding***.  (*See, e.g.*, Rule 13e-3 Stmt., at 100-01 (Doc. 49-1, at 137-38 of 270); Summary Term Sheet, at 43 (Doc. 49-1; Page 77 of 270).)[4]

It therefore would be unreasonable to charge the non-signatory Defendants with the foreknowledge that the limited forum selection clause in the 2010 ADS Receipt would control Plaintiffs' claims regarding the 2016 merger, instead of the explicit provisions of the merger documents themselves, which mandate a Cayman forum and application of Cayman law. Accordingly, any presumption of enforceability does ***not*** cover the non-signatories here.

### 3.    Any Presumption That the ADS Forum Clause is Enforceable Is Rebutted as Unreasonable and Unjust.

Given the foregoing points, if the ADS Forum Clause were enforced only Counts I through III would proceed in this forum and only against the Company.  Litigation therefore would proceed in at least two fora, exposing Defendants to the risk of inconsistent verdicts and varying standards governing the very same conduct.  This Court (on the federal securities claims) and the Cayman Court (on the common law claims) would each be asked to simultaneously determine the fair value of the ADSs and whether the disclosure documents contained misstatements.  "Such an exercise would be a gross waste of the parties' and the Court's resources.  Enforcement is therefore unreasonable."  *Mylan Pharm. Inc. v. Am. Safety Razor Co.*, 265 F. Supp. 2d 635, 640 (N.D.W.Va. 2002) (refusing to enforce mandatory forum selection clause that did not reach all claims).  *See also LaSala v. E*TRADE Sec. LLC*, No. 05 Civ.

---

[4] Given these clear provisions, even if it were assumed that the forum selection clause of the 2010 ADS Receipt somehow could control all manner of later claims by ADS holders, the merger documents effectively amended that agreement, at least to the extent of requiring a Cayman forum and Cayman law for claims relating to the  2016 merger.  (*See* Merger Agmt, § 2.01(b) (Doc. 49-1, at 155 of 270) ("in the event of any conflict between this [Merger] Agreement and the Deposit Agreement, this Agreement shall prevail"); ADS Deposit Agreement ¶ 6.01 (Doc. 79-5, at 32 of 55) ("The form of the Receipts and any provisions of this Deposit Agreement may at any time and from time to time be amended by agreement between the Company and the Depositary without the consent of Owners or Holders….").)

5869(SAS), 2005 WL 2848853, at *6 & nn. 73-75 (S.D.N.Y. Oct. 31, 2005) (refusing to enforce

mandatory forum selection clause where multiple actions would waste judicial resources).[5]

     Moreover, one need only look to the Court's prior analysis, showing that the

overwhelming locus of the action is in the Cayman Islands, that the controlling law is Cayman,

and that the public interest factors so strongly point to the Cayman Islands (Doc. 61), to see that

it would be unreasonable to enforce the ADS Forum Clause, *Foothill Capital Corp. v.*

*Kidan*, No. 03 Civ. 3976(RMB), 2004 WL 434412, at *3-5 (S.D.N.Y. Mar. 8, 2004) (refusing to

apply mandatory forum selection clause that did not reach all claims and parties in favor of a

more convenient forum that was the "center of gravity" of the dispute).

     Accordingly, any presumption of enforceability is rebutted, and the Court's prior

analysis, and its *forum non conveniens* dismissal, should be reaffirmed.

## II.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

### A.    Plaintiffs Federal Securities Law Claims Should be Dismissed on a Variety of Independent Grounds.

     Plaintiffs attempt to bring three claims under the Securities Exchange Act of 1934,

specifically Section 13(e) and Rule 13e-3 thereunder, 15 U.S.C. § 78m(e), 17 C.F.R. § 240.13e-3

(Count I), Section 10(b) and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5

---

[5] *Accord Dias v. Mediterranean Shipping Co.*, No. 02-21771-Civ, 2003 WL 23190184, at *2 (S.D. Fla. Aug. 5, 2003) ("[L]itigating this particular case in more than one forum could lead to inconsistent results at worst and an unnecessary duplication of judicial effort at best. Accordingly, I find that under the standard established under *M/S Bremen* and its progeny, the forum selection clause … should not be enforced in this case."); *British Marine Lux., S.A. v. Deep Sea Fin., LLC*, No. CV 409-023, 2010 WL 1960994, at *7 (S.D. Ga. May 13, 2010) ("enforcement of the choice-of-forum clause would be unreasonable" when cross-claim was not bound by the forum selection clause but "involve[d] the same facts and many of the same legal theories"); *Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc*., 677 F. Supp. 2d 373, 379 (D. Mass. 2009) ("Because enforcement of the forum selection clause would require bifurcating this suit into two parallel actions, it would be inefficient and unjust to do so.").

(Count II), and Section 20(a), 15 U.S.C. § 78t(a) (Count III).  These claims should be dismissed.

> **1.     Under *Morrison,* Plaintiffs' Federal Securities Claims Do Not Reach This Foreign Transaction.**

In *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 261-65 (2010), the Supreme Court held that private rights of action under the Exchange Act do not apply to foreign transactions.  To overcome *Morrison*'s bar, Plaintiffs must show either that they sold their Dangdang shares (i) in a transaction on a U.S. exchange or (ii) in an off-exchange transaction occurring in the U.S.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179-82 (2d Cir. 2014) (dismissing claims); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 472-76 (S.D.N.Y. 2013).  Plaintiffs cannot make either showing.

Plaintiffs cannot show that they sold their shares on a U.S. exchange.  While Dangdang ADSs were listed on NYSE until the 2016 merger closed, that is insufficient.  *See Pontiac*, 752 F.3d at 179-81 (rejecting "listing theory").  Nor does it matter that Plaintiffs might have purchased their ADSs on NYSE, because their claims are not based on those purchases.  *See Pontiac*, 752 F.3d at 180 (explaining *Morrison*'s focus on transaction giving rise to claim, not other transactions).  In fact, Plaintiffs concede that they did not sell their shares on any exchange, U.S. or otherwise, but instead that their shares were "cashed out" when they were cancelled through the privately-negotiated merger.  (AC ¶¶ 5, 25, 32, 143.)

To satisfy the second branch of *Morrison*, that the transaction occurred in the U.S., a plaintiff must show either that title "passed within the United States" or that the parties "incur[red] irrevocable liability to carry out the transaction within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012); *see also In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 309 n.5 (S.D.N.Y. 2017) (instructing that *Absolute Activist*'s "guidance is applicable to any transaction not on a domestic exchange"), *aff'd*

*sub nom.*, *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019).  But no title was passed in the merger at all; the shares were canceled.[6]  And Dangdang and the buyer group incurred irrevocable liability to complete the transaction in China, where the parties agreed to the deal and the shareholders approved it, or in the Caymans, where the merger became effective – that is where the parties "committed to one another."  *Absolute Activist*, 677 F.3d at 68.[7]  Either way, irrevocable liability was not incurred "within the United States."  *Id*. at 69.[8]

### 2.     The Court Should Not Imply a Private Right of Action Under Section 13(e).

The Court previously noted that many courts – including a sister court in this District – have refused to recognize an implied private right of action under Section 13(e) of the Exchange Act.  (Doc. 61, at 30 (citing, *e.g.*, *Bolton v. Gramlich*, 540 F. Supp. 822, 842-43 (S.D.N.Y. 1982)).)  The Supreme Court's 2008 decision in *Stoneridge Investment Partners, LLC v. Scientific-Atlant*a, 552 U.S. 148, 150 (2008), explained that while "the rule [for implying a private right of action] once may have been otherwise, it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one."

---

[6] Rule 13e-3 Transaction Stmt., at 1 (Doc. 49-1, at 6 of 270) ("At the Effective Time, each ADS issued and outstanding immediately prior to the Effective Time … will be cancelled in exchange for the right to receive $6.70 in cash per ADS….").

[7] Doc. 49-1, at 50 & 153 of 270 (extraordinary meeting and closing each held in China).

[8] It is immaterial that the ADS were held in a U.S. depository, or that Plaintiff Fasano may have received the check for his shares in the U.S.  "A sale occurs when the parties to a transaction have obligated themselves to carry it out, with nothing further remaining to be done but the performance of functions such as paying the purchase price and transferring title to, or possession of, the securities."  *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 949 (N.D. Ill. 2001); *In re Petrobras Sec.*, 862 F.3d 250, 272 n.24 (2d Cir. 2017) ("[W]e reject Plaintiff's argument that a securities transaction is 'domestic' under *Morrison* and *Absolute Activist* if it settles through the [New York-headquartered] DTC.").  After all, "[t]he mechanics of [securities depository] settlement are actions needed to carry out transactions, but they involve neither the substantive indicia of a contractual commitment necessary to satisfy [*Morrison*'s] first prong nor the formal weight of a transfer of title necessary for its second."  *In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015).

*Id.*, 552 U.S. at 164; *see also Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) ("Without [a clear demonstration of legislative intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). As the Court has noted and other courts have recognized, Section 13(e) evinces no such intent.[9]

### 3.    Any Claims Under Sections 10(b) and 13(e) Fail for a Lack of Transaction Causation and Loss Causation.

Plaintiffs have not alleged the essential elements of transaction causation (*i.e.*, reliance) and loss causation.[10] In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1105-06 (1991), the Supreme Court held that where a squeeze-out merger can be accomplished without the votes of any minority shareholders, those minority shareholders may not maintain a private cause of action complaining about misstatements in the proxy materials that violate Section 14(a) because the essential elements of transaction causation and loss causation were lacking. *Id*. at 1099, 1105-06. This same principle has been applied to foreclose claims under Section 13(e) and 10(b) as well, including in the context of going-private mergers. *See In re Shanda Games Ltd. Sec.*

---

[9] Although one sister Court in this District had previously found, decades before the *Stoneridge* decision, an implied private right of action under Section 13(e) in the unreported decision in *Fisher v. Plessey Co*., No. 82 Civ. 1183, 1983 WL 1328, at *3 (S.D.N.Y. June 22, 1983), it must respectfully be questioned whether that case remains good law. The paucity of subsequent reliance on *Fisher*, especially when coupled with *Fisher*'s strong reliance on the now-overruled *Cort v. Ash*, 422 U.S. 66 (1975), casts its validity into serious doubt. *See also Berg v. First Am. Bankshares, Inc.*, No. Civ. A. 83-3887, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (finding *Fisher* unpersuasive), *aff'd*, 796 F.2d 489 (D.C. Cir. 1986).

[10] To sustain a claim under Section 10(b), a plaintiff must show: (i) a material misrepresentation or omission; (ii) scienter; (iii) in connection with the purchase or sale of a security; (iv) reliance (*i.e.*, transaction causation); (v) economic loss; and (vi) loss causation. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010). And while there is no private right of action under Section 13(e), if a private right of action were somehow inferred, given that the operative language of Section 13(e) largely tracks that of Section 10(b), such a claim necessarily would include, at a minimum, essential elements of (i) a material misrepresentation or omission; (ii) reliance; (iii) economic loss; and (iv) loss causation.

*Litig.*,1:18-cv-02463-ALC, 2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sept. 30, 2019)

(dismissing securities class action alleging false disclosures in connection with going-private

merger for failure to plead reliance)*; TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06-

CV-13447(CM), 2008 WL 650385, at *18-21 (S.D.N.Y. Mar. 7, 2008) (loss causation absent in

claims of misstatements where plaintiffs' votes were not required to effect merger).[11]

    That is the exact situation here.  Documents annexed to Plaintiffs' own Complaint

demonstrate that the proponents of the going-private transaction held over 80% of the eligible

votes, and the transaction was not subject to any majority-of-the-minority conditions.[12]  None of

the minority shareholder's votes therefore were required to accomplish the merger.  Thus, as

directed by *Virginia Bankshar*es and its progeny, minority shareholders like Plaintiffs cannot

maintain a Section 10(b) or 13(e) claim asserting that the merger disclosures were inadequate.

Plaintiffs could not have prevented the merger no matter what the disclosures said, and so any

shortcoming in the disclosures could not have caused the merger or Plaintiffs' asserted losses.[13]

    Further, there are no facts showing that Plaintiffs were prevented from objecting to the

merger or timely advancing appraisal rights in the Caymans, as multiple dissenting shareholders

---

[11] Plaintiffs cannot invoke the efficient-market presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988), as the 2016 merger was a separately-negotiated deal approved by Dangdang shareholders, not an open-market transaction.  *Shanda Games,* 2019 U.S. Dist. LEXIS 171592, at *23-25 (efficient market presumption does not apply to claims asserting false disclosures in connection with going-private merger transaction).  Nor does the presumption of reliance under *Affiliated Ute* apply because Plaintiffs allege primarily affirmative misstatements, not omissions.  *See Waggoner v. Barclays PLC*, 875 F.3d 79, 92-93 (2d Cir. 2017); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 536 (S.D.N.Y. 2012).

[12] *See* the Rule 13e-3 Transaction Stmt., at 19 & 24 (Doc. 49-1, at 52 & 57 of 270), disclosing that only a two-thirds vote was required, while the supporting shareholders held more than 83% of the eligible votes and had agreed to vote them all in favor of the merger.

[13] Plaintiffs' assertion that the alleged misstatements somehow altered the trading price of the ADSs (AC ¶¶ 112, 118) does not alter the analysis.  Plaintiffs allege no facts to support this assertion, and to the contrary allege that the "inadequate" and "unfair" merger price was not connected to the trading price, but was unilaterally set by the merger sponsors (AC ¶¶ 52-53, 89).

13

did exactly that.  (Doc. 61, at 5-6.)  There are no allegations that Plaintiffs were somehow duped into voting in favor of the merger, and thereby forfeited rights to an appraisal action.  (AC, *passim*; Doc. 76 ¶¶ 13-15 (Second Dec. of Robin Hollington, QC, "Hollington-2" ).)  Indeed, the Complaint demonstrates that the transaction disclosure documents and the public record already disclosed – well before shareholders needed to act – the very information on which Plaintiffs base their complaint.  All of the "facts" that Plaintiffs assert demonstrate the transaction was not structurally fair  –  (i) the lack of a majority-of-the-minority requirement; (ii) the lack of a "go-shop" provision; (iii) the presence and terms of a competing offer by iMeigu at $8.80 per ADS; (iv) the use of the Company's available cash to pay part of the merger consideration; and (v) the distributions to sponsors resulting from the transaction upon cancellation of stock options – were fully disclosed in the Rule 13(e) filings before Plaintiffs made any decision whether to dissent or seek an appraisal.[14]

Similarly, the "facts" that Plaintiffs assert support their claim that M&C had a conflict and therefore was not independent – that it served the Special Committee and also represented Dangdang before the merger and would continue to do so afterwards – also were contained in the transaction documents and in the public domain.  Indeed, Plaintiffs' own Complaint highlights that Dangdang's public disclosures listed M&C as the Company's counsel continuously since 2010 (AC ¶¶ 62-63), and the Rule 13e-3 Transaction Statement repeated this fact and further disclosed M&C was advising the Special Committee on the merger (Doc. 49-1, at 60 of 270.)

---

[14] Rule 13e-3 Stmt. (Doc. 49-1, at 52 of 270 (two-thirds vote required, as opposed to any majority-of-the-minority), at 44 of 270 (rather than a "go-shop" provision, the transaction included a non-solicitation clause), at 96 of 270 (describing March 9, 2016, receipt of competing offer at $8.80 per ADS), at 63 of 270 (use of Company's cash for merger consideration), and at 105-06 of 270 (showing cash distributions to sponsors upon cancellation of stock options)); Doc. 79-7, at 2 of 2 (Press Release by iMeigu on April 7, 2016) (demonstrating that competing offer of $8.80 was known publicly for several months).

And where the Complaint claims that the merger price was below the 90-day average trading price prior to the offer (AC ¶ 2), that historical market trading price necessarily was already in the total mix of public information.  Indeed, the Complaint concedes that Bloomberg analysts contemporaneously published guidance criticizing the merger price as among the "lowest" it had seen, based upon "public transaction data."  (AC ¶ 53.)

Where information underlying plaintiffs' claim was already known to the market, loss causation is lacking.  *In re Omnicom Grp.*, 597 F.3d at 511-13 (rejecting attempt to predicate loss causation on information "known to the market" because corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"); *Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013) (same).  Here, all relevant information was fully disclosed.  Plaintiffs apparently ***chose*** to not avail themselves of the appraisal rights they possessed under Cayman law, which also were fully disclosed to them in the proxy materials.  (Rule 13e-3 Stmt., at 100-01 (Doc. 49-1, at 137-38 of 270).)  Such a strategic, volitional act negates causation in a private securities claim.

The Second Circuit's decision in *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000), is instructive.  The *Grace* Court began by observing that transaction causation and loss causation could not be shown where the votes of minority shareholders were not required to accomplish the transaction.  *Grace*, 228 F.3d at 46-49.  The Second Circuit then noted that "plaintiffs did not vote in favor of the merger and did not show that they relied on the proxy materials in any way that caused them to forfeit their rights to appraisal."  *Grace*, 228 F.3d at 49-50.  That the *Grace* plaintiffs subsequently lost their appraisal rights due to their own strategic decisions, rather than any reliance on the supposedly misleading proxy materials, did not amount to a forfeiture of a state law right, and the *Grace* plaintiffs' securities claims were dismissed.  *Id.*  The same result

15

should occur here.  Plaintiffs' votes were not required to effect the going-private merger, and any decision to not seek appraisal in the Cayman Islands was a volitional strategic choice. Accordingly, Plaintiffs have not satisfied the essential elements of transaction or loss causation.

### 4.    There Was No Actionable Misstatement or Omission.

Plaintiffs base their securities law claims on three asserted misstatements in the merger disclosures: (i) that the merger was "fair" to shareholders, when it supposedly was not; (ii) that the law firm Maples & Calder ("M&C") were "independent," when they supposedly were conflicted; and (iii) that the Controlling Group had no intention to resell the Company, when they allegedly secretly planned to do so.  None of these allegations supports a claim.

First, the opinions that the merger price was "fair" are not actionable because Plaintiffs have failed to plead facts showing that such opinions were not honestly held or were based on untrue or materially incomplete facts.  The Supreme Court has held that a statement of opinion is actionable only if "the speaker did not hold the belief she professed," the opinion was based on "untrue" supporting facts, or the opinion "omits material facts about the [speaker's] inquiry into or knowledge concerning [the opinion], and … those facts conflict with what a reasonable investor would take from the statement itself."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327, 1329 (2015); *accord Tongue v. Sanofi*, 816 F.3d 199, 209-10 (2d Cir. 2016).  Similarly, there is no allegation that the disclosures misstated the underlying data or the methodology by which the fairness opinion was reached.  This also renders the opinion inactionable.  *See Martin v. Quartermain*, 732 F. App'x 37, 41 (2d Cir. 2018) (opinions inactionable where plaintiffs "allege merely that [defendant] should have drawn different conclusions from [the] facts").[15]

---

[15] Plaintiffs' argument that the statements concerning the fairness of the transaction were "not primarily offered as a statement of belief," but instead were "objective assertions" of fact

Second, Plaintiffs contend that M&C had a conflict of interest in serving the Special

Committee because the firm had also represented Dangdang before the merger and would

continue to do so afterward. (AC ¶ 59.)  But this contention is defeated by Plaintiffs' own

allegations that the Company disclosed the relevant facts about M&C in the transaction

documents provided to investors (AC ¶ 62 (Dangdang publicly disclosed that M&C was

Dangdang's counsel); ¶ 63 (Form 13(e) disclosed that Dangdang's registered office in the

Cayman Islands both before and after the merger was at "Maples Corporate Services Limited").

There is therefore no actionable misstatement or omission concerning M&C.  *See In re JP*

*Morgan Auction Rate Sec. (ARS) Mktg. Litig.*, No. 10-Civ.-4552 (PGG), 2014 WL 4953554, at

*8-10 (S.D.N.Y. Sept. 30, 2014) (no actionable misstatement or omission where relevant

information was publicly disclosed).

---

(AC ¶ 188), is directly refuted by the Rule 13e-3 disclosures themselves, which expressly frame
these statements as opinions and beliefs:

> Duff & Phelps rendered its oral *opinion* (which was confirmed in writing later that same
> day) to the Special Committee that … the per ADS merger consideration … w[as] fair….
>
>     * * * *
>
> The Board adopted the financial analysis and the *opinion* with respect to the fairness of
> the merger provided by Duff & Phelps.
>
>     * * * *
>
> Under SEC rules governing going private transactions, each member of the Buyer Group
> is required to express its *belief* as to the fairness of the merger to the unaffiliated security
> holders. The Buyer Group is making the statements included in this section solely for the
> purpose of complying with the requirements of Rule 13e3….
>
>     * * * *
>
> The Buyer Group *believes* these [foregoing discussed] factors provide a ***reasonable basis
> for its belief*** that the merger is both substantively and procedurally fair to the unaffiliated
> security holders.

(Doc. 49-1, at 81, 71, 75, 78 of 270 (emphasis added).)  Plaintiffs' argument is also foreclosed by
controlling law holding that fairness opinions are just that, opinions.  *Virginia Bankshares*, 501
U.S. at 1092–1096.

Third, the claim that the Controlling Group stated that it had no intention of selling the Company, while secretly harboring an intent to do so, is meritless.  Plaintiffs allege no facts demonstrating that the Controlling Group had any intention to sell the Company *at the time the challenged disclosures were made*, as opposed to more than a year later when it allegedly pursued a deal with HNA.  Further, while Plaintiffs cite Company disclosures stating that there was no present intent at the time to effect any other extraordinary transaction or sale of material Company assets (AC ¶ 92), the very next sentence is a clarion warning disclosing the precise risk that Plaintiffs claim was concealed:

> However, after the Effective Time, the Buyer Group and the surviving company's management and the board of directors will continue to evaluate the surviving company's business and operations from time to time, and may propose or develop new plans and proposals, including any of the foregoing actions [extraordinary corporate transactions, sale of a material amount of assets, or any other material changes in the Company's business] … in the best interests of the surviving company and its equity holders…. The Buyer Group expressly reserves the right to make any changes it deems appropriate to the operation of the surviving company in light of such evaluation and review as well as any future developments.

(Doc. 49-1, at 95 of 270.)  This forthright disclosure forecloses Plaintiffs' claims, both because the Rule 13e-3 statements are not false and because they are accompanied by sufficient cautionary language.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("[W]ithout *contemporaneous* falsity, there can be no fraud."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); 15 U.S.C. § 77z–2(c)(1)(A)(i) (PSLRA safe harbor for forward-looking statements "accompanied by meaningful cautionary statements").

Ultimately Plaintiffs' theory rests on their sheer speculation that because the Company announced talks about a potential transaction with HNA more than a year later, in October 2017, this purportedly "very tight timeline" shows that such talks must have been ongoing at the time the merger closed in September 2016.  (AC ¶¶ 95-100.)  However, a full year is certainly not a "tight timeline."  And even if it were, mere proximity in time cannot support an inference that

18

the subsequent transaction had been contemplated earlier, as that is nothing more than pleading "fraud by hindsight." *In re Jumei Int'l Holding Ltd. Sec. Litig*., No. 14cv9826, 2017 WL 95176, at *5 (S.D.N.Y. Jan. 10, 2017) (rejecting inference of "advance planning before execution" and finding "[p]laintiffs have not pled any facts that raise the inference above a speculative level as to any Defendant's knowledge or intent regarding [the company's] plans," even where those plans were executed mere weeks after the challenged disclosures). *See also In re Corning, Inc. Sec. Litig.*, 349 F.Supp.2d 698, 717 (S.D.N.Y. 2004) ("[H]indsight cannot be the basis for liability under the federal securities laws.  Putting it another way, defendants are not charged with clairvoyance.").[16]

And again, because the merger sponsors had sufficient votes to move forward with the transaction over any objections, any alleged misstatements are not material as a matter of law. *See TCS Capital*, 2008 WL 650385, at *16 (pre-merger disclosures not material "because there is no way that [the plaintiff] or the other minority shareholders could have held up the merger").

## 5.   The Section 10(b) Claim Fails for Lack of a Purchase or Sale.

Section 10(b) and Rule 10b-5 reach manipulation or deception only "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.  In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-42 (1975), the Supreme Court parsed this plain

---

[16] Plaintiffs complain that the price offered in the potential HNA deal was twice the 2016 merger price, and contend that "there can be no claim that Dangdang had somehow more than doubled in value in just one year."  (AC ¶¶ 101-02.)  But Plaintiffs again allege no facts to support their speculative conjecture about the proper valuation of the Company over a yearlong period, and their own allegations reveal the flaw in their logic: 2015 saw a crash in the Chinese stock market, and a resulting period of market volatility.  (AC ¶¶ 47-49; *accord* "China's Securities Czar Casts Wide Blame for Market Turmoil," Wall St. J., (Jan. 27, 2016) (available at https://www.wsj.com/articles/chinas-securities-czar-casts-wide-blame-for-market-turmoil-1453026461?mg=prod/com-wsj).)  Indeed, that volatility, and the associated risk to investors, were fully disclosed.  (Doc. 49-3, at 55 of 222 ("The trading prices of our ADSs are likely to be volatile….").)

language and held that only purchasers or sellers have standing to bring such a claim, barring

claims of those, among others, who hold and fail to sell shares in reliance on misrepresentations

or omissions.  *Id.* (citing *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463–64 (2d Cir.

1952)).  As a result, "holders" lack standing to bring a claim.  *Cartica Mgmt., LLC v. Corpbanca,*

*S.A.*, 50 F.Supp.3d 477, 484 (S.D.N.Y. 2014); *Matana v. Merkin*, 989 F. Supp. 2d 313, 321

(S.D.N.Y. 2013).  As noted above, Plaintiffs did not sell their shares; instead, their shares were

cancelled and Plaintiffs were "cashed out."  (*Supra* § II.A.1.)  The Amended Complaint

highlights this very fact by alleging that Plaintiffs "*could* have … sold" or "*would* have … sold,"

but did not sell.  (AC ¶¶ 120, 143 (emphasis added).)  Accordingly, they cannot satisfy the

"purchase or sale" requirement of Section 10(b) and Rule 10b-5.

### 6.      The Section 10(b) Claim Fails for Lack of Scienter.

Plaintiffs fail to plead with particularity facts demonstrating the requisite strong inference

of scienter.  Plaintiffs first assert in conclusory fashion that all Defendants had actual knowledge

of the falsity of the alleged misstatements.  (AC ¶¶ 145-47.)  However, by lumping every

appearing Defendant (except the Company) into what they call the "Controlling Group" (AC

¶ 19), Plaintiffs fail to plead particular facts about what any particular Defendant knew or

intended.  Such "group pleading" is insufficient.  *Gurfein v. Ameritrade, Inc.*, 411 F. Supp.2d

416, 426-27 (S.D.N.Y. 2006) (dismissing securities fraud complaint that "lumps defendants

together," because "broad-brush allegation against numerous defendants is inadequate").

Plaintiffs next allege that all Defendants had the "motive" and "opportuni[ty]" to obtain

the minority shares at the lowest possible price.  (AC ¶¶ 148-50.)  But this supposed motive,

which could equally be attributed to every sponsor of every going-private transaction, fails to

create the requisite strong inference of scienter.  *Kalnit v. Eichler*, 264 F.3d 131, 139-40 (2d Cir.

2001) ("Motives that are generally possessed by most corporate directors and officers do not

suffice [to demonstrate scienter].").

### 7.   The Section 20(a) Claim Should be Dismissed.

Because Plaintiffs' claims under Section 10(b) and 13(e) are fatally flawed, their "control

person" claim under Section 20(a) also should be dismissed for lack of a primary violation.

*Gurfein*, 411 F.Supp.2d at 427 (Section 20(a) claim requires: (1) a primary violation; (2) control

of the primary violator by the defendant; and (3) that the defendant was a culpable participant).

For the foregoing reasons, all of Plaintiffs' federal securities claims should be dismissed.

### B.   Plaintiffs' Common Law Claims Should be Dismissed As They Are Governed by Cayman Islands Law.

Plaintiffs' Amended Complaint seeks to advance common law claims of negligent

misrepresentation and breach of fiduciary duty, but only to the extent they arise under New York

or U.S. federal law, disavowing any intention to recover under, or rely upon, Cayman law.  (AC

Counts IV & V, ¶¶ 161-69 & 170-78.)  But Plaintiffs cannot simply pick and choose what law

governs corporate conduct.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 820 (1985) ("If a

plaintiff could choose the substantive rules to be applied to an action ... the invitation to forum

shopping would be irresistible." ).  This Court has already observed, correctly, that there is "little

doubt" that Plaintiffs' claims for breach of fiduciary duty and negligent misrepresentation

exclusively concern Dangdang's internal affairs, and thus are governed by the law of the

Cayman Islands, the place of incorporation.  (Doc. 61, at 28-29.)[17]

---

[17] Plaintiffs contend New York law should control because "the Merger Agreement
contains a choice of law provision that specifically chooses New York law, *except for certain
discrete issues*."  (AC ¶ 25 (emphasis added).)  But those "certain discrete issues" include
precisely the claims Plaintiffs advance here, for which Cayman Islands Law is prescribed:

> This Agreement shall be interpreted, construed and governed by and in accordance with
> the Laws of the State of New York without regard to the conflicts of law principles

Under New York choice of law rules, which apply here, "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996).[18] This doctrine "recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Atherton v. FDIC*, 519 U.S. 213, 224 (1997). Accordingly, Counts IV and V for negligent misrepresentation and breach of fiduciary duty, are governed by Cayman law.

As to breach of fiduciary duty, it is well-established that the law of the Company's place of incorporation governs such claims. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) (citing, *inter alia*, *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980)); *accord* Doc. 76 ¶ 6 (Hollington-2).  It does not matter whether the Sarbanes-Oxley Act or NYSE guidelines required the Company to establish a Code of Conduct or comply with other legal requirements.  The same goes for Plaintiffs' negligent misrepresentation claims.  Those claims are premised on alleged misrepresentations supposedly

---

thereof, ***except*** that the following matters arising out of or relating to this Agreement shall be interpreted, construed, performed, enforced and governed by and in accordance with the ***Laws of the Cayman Islands*** in respect of which the parties hereto hereby irrevocably submit to the nonexclusive jurisdiction of the courts of the Cayman Islands: ***the Merger, … the cancellation and conversion of the Shares as the case may be (including Shares represented by ADSs), the rights set forth in Section 238 of the CICL with respect to any Dissenting Shares, the fiduciary or other duties of the Company Board (and the Special Committee) and the board of directors of Parent and Merger Sub and the internal corporate affairs of the Company*** …."

(Merger Agmt. ¶ 9.09, at 60 (Doc. 49-1, at 211 of 270) (emphasis added).)

[18] "[Courts] apply the choice-of-law rules of the state in which the federal district court sits." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015).

made by Defendants as directors and controlling shareholders to Plaintiffs as minority

shareholders.  (AC ¶¶ 162-68.)  Indeed, Plaintiffs' negligent misrepresentation claims are

expressly based on Defendants' alleged "fiduciary duties ... to provide accurate information" to

minority shareholders (*id.* ¶ 163), indisputably an issue governed by Cayman Islands law.  *See*

*Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at *10 (S.D.N.Y. Sept.

18, 2015) (scope of fiduciary duties is defined by the law of the place of incorporation); *accord*

Doc 76 ¶ 6 (Hollington-2).

Further, Plaintiffs allege that, in their capacities as shareholders, they relied on

misrepresentations related to the fairness of the going-private merger "in deciding how to vote

and whether to exercise appraisal rights" in connection with that merger. (AC ¶ 164.)  Those

allegations too implicate internal corporate decisions bearing on a transaction between a Cayman

Islands corporation and its shareholders.  *See Hahn v. Breed*, 587 F. Supp. 1369, 1381 (S.D.N.Y.

1984) (claim implicating "the fairness of the merger to a shareholder of a foreign corporation ...

involves the internal affairs of a foreign corporation"); *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 168

(Del. Ch. 2010) ("The implementation ... of a merger between two corporations from the same

jurisdiction is an internal corporate matter to be governed by the law of that jurisdiction.");

Restatement (Second) of Conflict of Laws § 302 cmt. A (Am. Law Inst. 1971) (Comment listing

"mergers" as an issue within the scope of the internal affairs doctrine).  Accordingly, Plaintiffs'

negligent misrepresentation claims clearly concern "matters peculiar to the relationships among

or between the corporation and its current officers, directors, and shareholders," *Atherton*, 519

U.S. at 224, and are therefore governed by Cayman Islands law, *see, e.g., NatTel, LLC v. SAC*

*Capital Advisors*, No. 3:04-CV-1061(JBA), 2005 WL 2253756, at *9 (D. Conn. Sept. 16, 2005)

(applying internal affairs doctrine to common law misrepresentation claims because plaintiff was

a minority shareholder and its claims "arise out of [defendant's] actions as a fellow shareholder" and "relate to the internal conduct of ... corporate business"), *aff'd*, *SAC Capital Advisors LLC*, 370 F.App'x 132 (2d Cir. 2006).

Plaintiffs' strategic choice to limit their causes of action to only those arising under New York and U.S. federal law, and their disavowal of claims governed by Cayman law, means that their claims for breach of fiduciary duty and negligent misrepresentation – which are governed solely by Cayman Islands law – should be dismissed (or at least deemed withdrawn). *Gomez v. City of New York*, No. 14 CIV. 05932 (CM), 2016 WL 5115499, at *9 (S.D.N.Y. Sept. 16, 2016) ("Ironically, plaintiff's express disclaimer, in the amended complaint, of [particular claims] was a terrible mistake…. Plaintiff is the master of his complaint; the court will not second guess the decision not to plead the claim….") (dismissing claim).

Moreover, as explained below, these claims also fail under Cayman Islands law.

### C.      Count IV, Alleging Negligent Misrepresentation, Should Be Dismissed.

Although Cayman law controls Plaintiffs' claims for negligent misrepresentation (*supra* Section II.B.), there is no actual conflict of laws because New York law and Cayman law each include essential elements of, among others, (i) a material misstatement; (ii) reliance; and (iii) causation. *See Capricorn Inv'rs III, L.P. v. CoolBrands Int'l, Inc.*, 66 A.D.3d 409, 409 (1st Dep't 2009) (material misstatement); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007) (reliance and causation); Doc. 76 ¶¶ 8-17 (Hollington-2) (discussing elements under Cayman law). Because Plaintiffs do not plead any of these elements, they each provide an independent ground to dismiss the claim.

As shown above, the three alleged types of misstatements, about the "fairness" of the transaction and merger price, the independence of M&C, and a lack of present intention to resell the Company, are simply not actionable misstatements. (*Supra* Section II.A.4.) And as

described with respect to the Section 10(b) and 13(e) claims, because Plaintiffs' votes were not required to effect the merger, because there is no allegation that Plaintiffs forfeited any appraisal remedy by voting for the merger, and because the merger price was set by the transaction sponsors rather than market forces, there is no causation, reliance or materiality. (*Supra* Section II.A.3.)  Accordingly, the negligent misrepresentation claim should be dismissed.

### D.    Count V, Alleging Breach of Fiduciary Duty, Should Be Dismissed.

Count V asserts that Defendants breached fiduciary duties they owed directly to the Plaintiffs.  (AC ¶¶ 170-78.)  This claim fails both because (i) under Cayman law directors and majority shareholders owe duties only to the corporation and not to individual shareholders, absent special circumstances not present here, and (ii) ADS holders are not considered shareholders under Cayman law, and so cannot exercise the rights enjoyed by shareholders in any event.  (Doc. 76 ¶¶ 18-25 (Hollington-2).)[19]  Accordingly, Count V should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request the Motion be granted in all respects.

Dated: October 7, 2019
       New York, New York

     /s/ Scott D. Musoff
Scott D. Musoff
James W. Brown

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

*Attorneys for Defendants*

---

[19] Accord *Feiner Family Tr. v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *7 (S.D.N.Y. Sept. 11, 2007) ("[U]nder Cayman Islands law, majority shareholders do not owe fiduciary duties to … minority shareholders ... [and] a director does not owe any fiduciary duties to minority shareholders solely based on his or her relationship to the company.").

1258654-NYCSR01A - MSW