UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------- x
JOE FASANO, *et al.*,
                    Plaintiffs,  :  16-cv-8759 (KPF)

-v.-

GUOQING LI, *et al.*,
                    Defendants.
----------------------------- x

## THIRD DECLARATION OF ROBIN HOLLINGTON, QC

I, Robin Frank Hollington, Queen's Counsel, of New Square Chambers, 12 New Square, Lincoln's Inn, London WC2A 3SW, declare under penalty of perjury as follows:

### Introduction

1. I refer to my earlier Declarations in this matter made on March 13, 2017 (my "1st Opinion") and August 22, 2019 (my "2nd Opinion") and adopt the abbreviations collectively used therein.

2. I am instructed by Skadden that:

   - On August 22, 2019, Defendants filed their motion to dismiss the Complaint, annexing thereto my 2nd Opinion.

   - On September 12, 2019, rather than filing papers in opposition to that motion, Plaintiffs instead filed an Amended Class Action Complaint (the "Amended Complaint").

   - On October 7, 2019, Defendants filed a motion to dismiss the Amended Complaint ("Defendants' Motion"), again annexing thereto a copy of my 2nd Opinion.

   - On November 15, 2019, Plaintiffs filed an opposition memorandum (the "Opposition Memorandum"), and the Declaration of John Litton QC, with exhibits (the "Litton Opinion").

3. I have reviewed the Amended Complaint, Defendants' Motion, the Opposition Memorandum, and the Litton Opinion.

4. None of the Amended Complaint, Opposition Memorandum, and Litton Opinion alter the opinions stated in my 1st and 2nd Opinions. My observations and opinions relating to the initial Complaint are equally applicable to the Amended Complaint which, with respect to my opinions, is not materially different.

5. I will briefly reply to a few specific assertions made by Mr. Litton. For ease of reference, I adopt the structure of the Litton Opinion. The fact that I do not comment upon any part of the Litton Opinion should not be taken as any agreement on my part to it.

## THE LAW GOVERNING PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM

6. I make the following preliminary observations on this section of the Litton Opinion:

    (i) So far as concerns Count V claiming breach of fiduciary duty, Mr. Litton rightly agrees that "the governing law is Cayman Islands law" (Litton Opinion ¶ 29; accord id. ¶ 31). I explain below why this is correct under the "internal management" principle.

    (ii) Count IV of the Amended Complaint claiming negligent misrepresentation, in contrast to Count III of the original Complaint, is on its face limited to a cause of action arising under New York law. Plaintiffs obviously cannot unilaterally choose what is the proper law of this claim. So, under their explicit limitation, it will fail if New York law is not the proper law thereof.

7. Mr. Litton opines that New York law, not Cayman Islands law, governs Plaintiffs' claim in tort for negligent misrepresentation. I disagree. In my opinion, whilst I accept the arguability of this point by Plaintiffs, a Cayman Islands court would reject

Plaintiffs' argument and hold that Cayman Islands law was the governing law. I reach that conclusion for the following reasons:

(a) The most recent decision of the English Court of Appeal in this field, cited by Mr. Litton (Litton Dec. ¶20), is *Base Metal Trading Ltd v. Shamurin* [2004] I.L.Pr. 5 (Tomlinson J), [2005] 1 WLR 1157 (Court of Appeal).

(b) The *Shamurin* case contains relevant statements of principle, the important one of which for present purposes is that, if the cause of action relates to the *internal management* of the company and concerns matters of *substantive company law*, then the law of the country of incorporation of the company is the governing law regardless of other factors pointing to another law. This is the "internal management" principle I refer to in para. 6 of my 2nd Opinion.

(c) The *Shamurin* case also describes the different, more general rule for torts which are not related to the internal management of a company and do not concern matters of substantive company law, which is that the proper law of a tort claim was "where in substance was the tort committed?"

(d) The facts of the *Shamurin* case were that the company's business was that of speculative trading on the London Metal Exchange and was based in Moscow. The defendant, its employee and director, actually effected the trades with third parties which caused losses to the company. The company claimed that the defendant had tortiously carried out trades in a negligent fashion.

(e) Tomlinson J, the trial judge, held that, applying the more general test, the tort was committed in Russia whose law was the proper law. And the Court of Appeal upheld this ruling. It could not be and was not suggested on the facts that the tortious acts of the employee/director in question related to the internal management of the company and concerned matters of substantive

company law: on the contrary the actions were dealings between the defendant in Moscow and third-party brokers in London. It was therefore common ground that the applicable test for ascertaining the proper law of this tort claim was that applicable to tort claims generally, namely "where in substance was the tort committed?"

(f) In contrast, so far as concerns another cause of action asserted in the *Shamurin* case against the defendant, namely for breach of the equitable obligations deriving from the defendant's status as a director, the Court of Appeal, allowing the appeal on this issue, held that the law of incorporation of the company was the proper law, because the cause of action related to the internal management of the company and concerned matters of substantive company law: see per Arden LJ at paragraphs 65-77. Arden LJ has been recently promoted to the UK Supreme Court and is regarded as one of the foremost specialists on the UK Bench in company law.

(g) The misrepresentations alleged in the present case were made (i) <u>by the board and controlling shareholders</u> (ii) <u>to the shareholders/ADS holders</u> all around the world of the company (iii) <u>in the course of a squeeze-out merger</u> of that Cayman company effected under the provisions of the Cayman Islands Companies Law: in other words, all wrongful actions alleged against Defendants in the present case were between company insiders and related to the internal affairs of the company. In contrast to the facts in the *Shamurin* case (the facts of the other cases cited by Mr. Litton in this context are even further removed from the facts of the present case), the cause of action in tortious misrepresentation in the present case in my opinion does relate to the

internal management of the company and does concern matters of substantive company law.

(h) I also draw support for this conclusion from para. 163 of the Amended Complaint. Para. 163 incorporates into the negligent misrepresentation claim the "heightened" fiduciary duties said to arise out of the company's constitution. Such causes of action are *par excellence* claims relating to the internal management of the company and concerning matters of substantive company law. See Rule 175(2) of the classic text-book *Dicey & Morris, The Conflict of Laws (15th Edition)*, paras. 30R-020 and 30-028 (applied in the *Shamurin* case at paras. 50-51, 56, and 67:

> *"All matters concerning the constitution of a corporation are governed by the law of the place of incorporation."*

(i) On that basis, applying the "internal management" principle, the proper law of the claims in tortious misrepresentation in this case is Cayman Islands law.

8. It follows that the facts and matters referred to in paragraph 19 of Mr. Litton's Opinion are in my opinion irrelevant: see per Arden LJ in the *Shamurin* case at para. 69. I would further note that, if, as Mr. Litton opines, the proper law were to depend upon where the misrepresentation allegedly was relied upon and loss suffered:

   (a) It cannot be a matter of any weight that the ADS Depositary was based in New York, since that Depositary was a mere nominee, suffered no loss and had no cause of action.

   (b) Those who allegedly suffered loss and had causes of action were, I assume, resident or carrying on business all around the world: it would be absurd if the proper law of Plaintiffs' several causes of action varied according to the residence or place of business of each one. Such a result would expose a

company and its insiders to a myriad of varying standards of conduct and the risk of inconsistent adjudications.

## FIDUCIARY DUTIES UNDER CAYMAN LAW

9. As I have already noted, Mr. Litton rightly agrees that, even if reference to NYSE listing guidelines and the Sarbanes Oxley Act are involved in evaluating Plaintiffs' fiduciary duty claims, under Count V "the governing law is Cayman Islands law." (Litton Opinion ¶ 29; accord *id.* ¶ 31). As I note in para. 7(h) above, Cayman Islands law applies because the claims under Count V arise out of the constitution of the company and therefore are matters of internal management governed by the law of the country of incorporation.

10. But, it is an elementary general principle of Cayman Islands company law that any fiduciary duties arising out of the articles of association of the company are owed only by the directors and then only by them to the company. Mr. Litton does not begin to explain how the articles of association could give rise to the existence of any duty owed by the directors, or for that matter by the controlling shareholders, to Plaintiffs personally. For the reasons given in paras. 20-23 of my 2nd Opinion, which Mr. Litton does not challenge, it is clear in my opinion that no such personal fiduciary duties would be recognised in this case.

## CHOICE OF FORUM

11. I do not agree with Mr. Litton that it is likely that a Cayman court would hold that a New York court was the more convenient forum. (Litton Opinion ¶¶ 29-31). Given that matters of internal management of a Cayman incorporated corporation (governed

-6-

by Cayman Islands law) are centrally engaged in this action, in my opinion a Cayman Islands court would require considerable persuasion to conclude that it was not the convenient and just forum to determine the action. It is true that one factor to be taken into account by a Cayman Islands court would be the need (if any) for expert evidence on New York law under Count V, but it is highly unlikely in my opinion that a Cayman Islands court would regard this as the determining factor in favour of a New York court, as Mr. Litton suggests. Indeed, I would expect it to have less weight than the factor that the cause of action was governed by Cayman Islands law.

## CAUSATION UNDER CAYMAN LAW

12. Mr. Litton dismisses the opinions I expressed on this issue in my 2nd Opinion on the basis that it preceded the Amended Complaint. It is true that the Amended Complaint expands upon the opportunities that Plaintiffs assert that they missed as a result of the misrepresentations. But that does not cause me to change my opinion in this respect. On the contrary, the Amended Complaint reinforces the point I was making in my 2nd Opinion, which Mr. Litton has missed. The point that I was making (see paras. 12-15 of my 2nd Opinion) was that, on account of the proximity in time of the Complaint (which was on its face expressed to be an appraisal claim based on the pleaded misrepresentations) to the opportunity to exercise appraisal rights under section 238 of the Companies Law, the natural inference was that Plaintiffs, mindful of their misrepresentation claims, had strategically elected to pursue an appraisal remedy through the New York courts rather than an appraisal remedy in the Cayman courts.

13. Indeed, just like the initial Complaint, the Amended Complaint references the merger disclosure documents as the source for Plaintiffs' beliefs about their claims, suggesting

that they already were on notice of their claims long before the deadline for instituting dissenter rights under Cayman law.

14. Just as I noted with respect to the original Complaint, notably absent from the Amended Complaint is any allegation that Plaintiffs were induced to vote in favour of the merger and thereby forfeited the statutory right to an appraisal under section 238. (2nd Opinion ¶ 15).

15. In response, Mr. Litton states as follows:

> Hollington's Second Declaration ... asserts that "[t]here is no allegation that they [the Plaintiffs] were induced to vote in favour of the proposed merger" instead of exercising dissenter rights - see para. 15. However, that is now alleged in paras. 125 and 168 of the Amended Complaint. (Litton Opinion ¶ 38).

16. That assertion is plainly untrue, as one may read and reread those two paragraphs of the Amended Complaint and not find any allegation that Plaintiffs were induced to vote in favour of the merger, thereby forfeiting appraisal rights. Again, I think that Mr. Litton has missed the point I was making.

17. Mr. Litton also asserts, pointing to paras. 114 and 117-118 of the Amended Complaint, i.e. the rise and fall in the stock price due to a third-party bid and its rejection, that Plaintiffs have sufficiently alleged causation of damages of about $2 per ADS share. I do not agree. First, I would note that these allegations in the Amended Complaint are not new: *compare* Complaint paras. 25 (*"harming the value of Dangdang stock traded in New York on the NYSE"*), and 43-48 (the bid) *with* Amended Complaint paras. 25 (*"harming the value of Dangdang stock traded in New York on the NYSE"*), and 66-74 (the bid). Secondly, Plaintiffs did not sell their rights at the allegedly depressed price but instead *"cashed in their shares"* (Mr. Litton's own words) in the Cayman Islands merger where the merger price was established by the merger sponsors, not open market transactions (2nd Opinion, ¶ 12). And again I make the point, missed

-8-

by Mr. Litton, that Plaintiffs chose not to exercise their dissenter appraisal rights under Cayman Islands law, choosing instead to "*cash in their shares*" and pursue this quasi-appraisal claim in the New York courts. So, I am and remain of the opinion that the alleged rise and fall in the share price is of no assistance to Plaintiffs on the issues of reliance and causation in this case.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on the 16th day of December, 2019 at London, England

*[signature]*

Robin Frank Hollington QC