UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOE FASANO; ALTIMEO OPTIMUM FUND; and
ALTIMEO ASSET MANAGEMENT, *Individually
and on Behalf of All Others Similarly Situated,*

                    Plaintiffs,

                    -v.-

GUOQING LI; PEGGY YU YU; DANGDANG
HOLDING COMPANY, LTD.; E-COMMERCE
CHINA DANGDANG INC.; KEWEN HOLDING CO.
LTD.; SCIENCE & CULTURE LTD.; FIRST PROFIT
MANAGEMENT, LTD.; DANQIAN YAO; LIJUN
CHEN; MIN KAN; RUBY RONG LU; KE ZHANG;
and XIAOLONG LI,

                    Defendants.

16 Civ. 8759 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

In September 2016, the shareholders of E-Commerce China Dangdang Inc. approved a "going private" merger (the "Merger"). Co-Lead Plaintiffs Joe Fasano, Altimeo Optimum Fund, and Altimeo Asset Management brought a putative class action challenging the fairness of and seeking damages related to the Merger, and Defendants responded with a motion to dismiss on *forum non conveniens* grounds. This Court granted Defendants' motion, finding that the Cayman Islands was an adequate alternative forum and that the private and public interests favored the adjudication of the parties' dispute in that forum. *See Fasano* v. *Juoqing Li*, No. 16 Civ. 8759 (KPF), 2017 WL 6764692, at *13 (S.D.N.Y. Dec. 29, 2017) ("*Fasano I*"). However, the Court neglected to take into account a forum selection clause (the "Forum Selection Clause") contained in a Deposit Agreement between and among E-Commerce China Dangdang Inc., the

Bank of New York Mellon, and the Owners and Holders of American Depositary Shares (the "Deposit Agreement"), which clause provided that certain claims must be litigated in the federal or state courts in Manhattan, New York. Plaintiffs appealed the Court's dismissal for *forum non conveniens*, and the Second Circuit vacated and remanded due to this Court's failure to account for the forum selection clause.  *See Fasano* v. *Yu Yu*, 921 F.3d 333, 336 (2d Cir. 2019) ("*Fasano II*").

On remand, Plaintiffs are proceeding with an Amended Complaint that pleads a mix of federal securities and common law claims regarding Defendants' alleged misrepresentations about the Merger.  Those Defendants that have been served (collectively, "Defendants") have renewed their motion for dismissal on *forum non conveniens* grounds, and in the alternative have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  As to the former, Defendants argue that the Forum Selection Clause covers neither all of Plaintiffs' claims nor all of the Defendants in this action, and that it would be unreasonable and unjust to enforce the Clause.  For the reasons set forth below, the Court finds that this action should once again be dismissed for *forum non conveniens*; it therefore grants Defendants' motion to dismiss for *forum non conveniens* and denies Defendants' Rule 12(b)(6) motion as moot.

## BACKGROUND[1]

### A.      Factual Background[2]

Although Plaintiffs are proceeding via an Amended Complaint, the facts of this case remain virtually unchanged from when the Court considered Defendants' initial motion to dismiss.  *See generally Fasano I*, 2017 WL 6764692.  Given that, as well as the longevity of this action, the Court assumes the parties' familiarity with the facts and incorporates by reference the factual background laid out in *Fasano I*.  *See id.* at *1-3.  Instead, the Court reiterates only those facts that are essential to the adjudication of Defendants' current *forum non conveniens* motion.

This action involves thirteen defendants — five corporations and eight individuals.  (*See* Am. Compl. ¶¶ 9-18, 20-22).  The principal corporate defendant is E-Commerce China Dangdang Inc. ("Dangdang"), a leading e-commerce company based in China but incorporated under the laws of the Cayman Islands.  (*Id.* at ¶ 11).  Relevantly to this action, Dangdang had American Depositary Shares ("ADSs") listed on the New York Stock Exchange

---

[1]      The Court draws the facts for this Opinion from the Amended Complaint ("Am. Compl." (Dkt. #79)), which is the operative pleading in this action, as well as exhibits to that pleading.  The Court also relies in part on the Declaration of John Litton QC ("Litton Decl." (Dkt. #90)) and the exhibit attached to the Declaration of James W. Brown ("Brown Decl." (Dkt. #83)).

For ease of reference, the Court refers to Defendants' opening brief as "Def. Br." (Dkt. #82); Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #88); and Defendants' reply brief as "Def. Reply" (Dkt. #96).

[2]      On a motion to dismiss for *forum non conveniens*, when decided without a factual hearing, the Court "must accept the facts alleged in the complaint as true."  *RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013) (citing *Aguas Lenders Recovery Grp. LLC* v. *Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009)).  The Court may also "consider certain evidence outside the pleadings, including affidavits."  *Id.* (internal citations omitted).

("NYSE") via an initial public offering ("IPO") on December 8, 2010.  (*Id.* at

¶ 42).  Those ADSs were governed by the Deposit Agreement, within which

exists the Forum Selection Clause.  The Forum Selection Clause, which

appears as part of the Deposit Agreement's arbitration provision, provides that:

> Any controversy, claim[,] or cause of action … arising
> out of or relating to … the American Depositary
> Shares … shall be settled by arbitration …; provided,
> further, that any such controversy, claim[,] or cause of
> action … relating or based upon the provisions of the
> Federal securities laws of the United States or the rules
> and regulations promulgated thereunder shall be
> submitted to arbitration … if, but only if, so elected by
> the claimant. …  Any controversy, claim[,] or cause of
> action … not subject to arbitration … shall be litigated
> in the Federal and state courts in the Borough of
> Manhattan, The City of New York.

(*Id.*, Ex. 5 at 54).

The other corporate defendants include: Dangdang Holding Company

Limited ("DHC"), a company based in China but incorporated under the laws of

the Cayman Islands (Am. Compl. ¶ 12); Kewen Holding Co. Limited ("Kewen"),

an investment holding vehicle incorporated under the laws of the British Virgin

Islands (*id.* at ¶ 13); Science & Culture International Limited ("SCI"), an

investment holding vehicle incorporated under the laws of the British Virgin

Islands (*id.* at ¶ 14); and First Profit Management Limited ("First Profit"), an

investment holding vehicle incorporated under the laws of the British Virgin

Islands (*id.* at ¶ 16).  According to Plaintiffs, Guoqing Li controls Kewen and

SCI, while Danqian Yao controls First Profit.  (*Id.* at ¶¶ 13-14, 16).

The principal individual defendants are Guoqing Li and Peggy Yu Yu,

both of whom are co-founders and directors of Dangdang.  (Am. Compl. ¶¶ 9-

10).  Guoqing Li has been the chief executive officer of Dangdang since its founding, and Peggy Yu Yu has been the executive chairwoman throughout the same period.  (*Id.*).  As of August 1, 2016, Guoqing Li held 31.2% of Dangdang's common stock, and over 75% of the voting power in Dangdang.  (*Id.* at ¶ 9).  Other individual defendants include Danqian Yao, a senior vice president at Dangdang (*id.* at ¶ 15); and Lijun Chen and Min Kan, vice presidents at Dangdang (*id.* at ¶¶ 17, 18).  Finally, there are the members of the special committee that considered the Merger, all of whom are Dangdang directors: Ruby Rong Lu, the chairwoman of the special committee; Ke Zhang; and Xiaolong Li.  (*Id.* at ¶¶ 20-22).

Plaintiff Joe Fasano is a resident of New York and was the owner of Dangdang ADSs, amounting to the equivalent of five common shares, prior to the Merger.  (Am. Compl. ¶ 6).  Plaintiff Altimeo Optimum Fund ("AOF") is a French investment fund that held over 440,000 Dangdang ADSs, amounting to the equivalent of approximately 2.2 million common shares, prior to the Merger.  (*Id.* at ¶ 7).  *See Fasano I*, 2017 WL 2764692, at *2.  Plaintiff Altimeo Asset Management ("AAM"), a French company, is AOF's asset management company and authorized agent.  (Am Compl. ¶ 8).  *See Fasano I*, 2017 WL 2764692, at *2.

Plaintiffs allege that on July 9, 2015, a group comprised of Defendants Guoqing Li, Peggy Yu Yu, Danqian Yao, Lijun Chen, Min Kan, Kewen, SCI, and First Profit (the "Controlling Group"), submitted a bid to buy out Dangdang's minority shareholders.  (Am. Compl. ¶ 50).  The Controlling Group submitted a

lowball offer of $7.81 per ADS, taking advantage of a precipitous drop in the
Chinese stock market. (*Id.* at ¶ 47). In response to the buyout bid, Dangdang
formed a special committee, consisting of Ruby Rong Lu, Ke Zhang, and
Xiaolong Li, to evaluate the Controlling Group's offer. (*Id.* at ¶ 55). The special
committee, in turn, retained Maples & Calder ("Maples") — a law firm with its
principal North American offices in the Cayman Islands and the British Virgin
Islands, *see Fasano I*, 2017 WL 2764692, at *10 — as its Cayman legal
counsel. (*Id.* at ¶ 56). However, Maples was Dangdang's company counsel and
provided Dangdang with numerous services, including, *inter alia*, advising on
Merger-related litigation in the Cayman Islands, advising on Dangdang's Share
Incentive Plan, and hosting Dangdang's registered office in the Cayman
Islands. (*Id.* at ¶¶ 59, 61-63). Therefore, Plaintiffs allege, Maples was
conflicted in its role as counsel to the special committee. (*Id.* at ¶ 59).

On May 31, 2016, the special committee voted to approve the Controlling
Group's buyout bid — now reduced to $6.70 per ADS — despite the fact that
Dangdang had received a competing offer of $8.80 per ADS. (Am. Compl.
¶¶ 66, 75). Following acceptance of the Merger, Plaintiffs allege that
Defendants made numerous misrepresentations in their filings with the SEC.
(*Id.* at ¶¶ 81-104). Specifically, Defendants allegedly misrepresented that
(i) Maples was independent counsel, whereas it was actually conflicted due to
its ongoing relationship with Dangdang (*id.* at ¶¶ 82-83); (ii) the Merger was
both substantively and procedurally fair to the minority shareholders, whereas
in actuality the Merger resulted in an unfairly low price and lacked basic

6

procedural protections (*id.* at ¶¶ 86, 89-90); and (iii) the Controlling Group had

no plans to sell Dangdang immediately after the Merger, whereas the

Controlling Group ended up attempting to sell Dangdang just one year after the

Merger (*id.* at ¶¶ 92, 94).

On September 20, 2016, the Merger closed and became effective when

the plan of merger and agreement were filed with the Cayman Islands Registrar

of Companies. *Fasano I*, 2017 WL 6764692, at *3. Nine shareholders objected

to the Merger, but Plaintiffs did not. *Id.* On November 29, 2016, Dangdang

filed a petition in the Grand Court of the Cayman Islands asking that court to

determine the fair value of the shares held by the objecting shareholders (the

"Cayman Islands Proceeding"). *Id.* It is the Court's understanding that the

Cayman Islands Proceeding concluded in May 2018. (*See* Brown Decl., Ex. A).

## B.    Procedural Background

On November 10, 2016, Plaintiffs filed their original complaint in this

action against Defendants. (Dkt. #1). The complaint sought damages for

"breaches of fiduciary duties, violations of U.S. securities law and New York

common law, and a quasi-appraisal due to misrepresentations and omissions

in the Forms 13E-3 for the Merger." (*Id.*). On January 30, 2017, Plaintiffs filed

a motion to be appointed Co-Lead Plaintiffs, pursuant to Section 21D(a)(3)(B) of

the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Federal Rule of

Civil Procedure 42. (Dkt. #22). Plaintiffs also moved to approve their selection

of Sadis & Goldberg LLP as Lead Counsel. (*Id.*). On March 8, 2017, the Court

issued an Order appointing Plaintiffs as Co-Lead Plaintiffs and Sadis &
Goldberg LLP as Lead Counsel. (Dkt. #32).

On March 15, 2017, Defendants Dangdang, DHC, First Profit, Kewen,
and SCI (collectively, the "Corporate Defendants") filed their initial motion to
dismiss on *forum non conveniens* grounds, along with an accompanying
memorandum and declarations. (Dkt. #38-45). On April 28, 2017, Plaintiffs
filed a memorandum and declaration, both in opposition to the Corporate
Defendants' motion to dismiss and in support of a motion for substitute service
on the individual defendants. (Dkt. #48-49). On May 17, 2017, the Corporate
Defendants filed a memorandum and declaration in reply. (Dkt. #52-53). On
December 20, 2017, certificates of service were filed for Defendants Peggy Yu
Yu, Danqian Yao, Lijun Chen, and Min Kan. (Dkt. #56-59).

On December 29, 2017, the Court issued its Opinion and Order
regarding the Corporate Defendants' motion to dismiss for *forum non
conveniens* and Plaintiffs' motion for substitute service. (Dkt. #61). *See
generally Fasano I*, 2017 WL 6764692. In that Opinion, the Court first
determined that Plaintiffs' choice of forum in New York was entitled to little
deference, both because the only New York resident — Fasano — had little
financial interest in the litigation as compared to AOF and AAM and because
Plaintiffs were suing in a representative capacity. *See Fasano I*, 2017 WL
6764692, at *6-7. Next, the Court found that the Cayman Islands was an
adequate alternative forum, both because all of the Defendants who had been
served were amenable to service in that forum and because the Cayman

Islands would be able to provide an adequate remedy to Plaintiffs. *See id.* at
*7-8.

Finally, the Court found that while the private interests of the parties
were neutral as between the Cayman Islands and New York, the public
interests of the two fora favored dismissal. *See Fasano I*, 2017 WL 6764692, at
*9. While the Court acknowledged that the United States had an interest in the
litigation, due to Dangdang's listing of ADSs on the NYSE and Fasano's status
as a New York resident, the Court found that the Cayman Islands had a much
closer nexus to the litigation. *See id.* at *10-11. As the Court noted, "[t]he
principal actor in the dispute … is a Cayman Islands corporation[;] [t]he events
giving rise to the litigation took place in the Cayman Islands and involved a
'going private' merger between two Cayman Islands entities[;] [t]he law firm that
advised Dangdang … and the Special Committee in reviewing the merger bid
has its principal North American offices in the Cayman Islands and the British
Virgin Islands[;] [a]nd a Cayman Islands court [was] already engaged in a
proceeding" regarding the Merger. *Id.* at *10. The Court also determined that
Plaintiffs' common law claims would likely require the application of Cayman
Islands law, and therefore the Court would be in a position of overseeing a
proceeding governing primarily by foreign law. *See id.* at *12-13. Taken
together, the public interest considerations counseled in favor of dismissal of
the action. *See id.* at *13.

On January 10, 2018, Plaintiffs appealed the Court's Opinion and Order
granting the motion to dismiss to the Second Circuit. (Dkt. #63). On April 12,

2019, the Second Circuit issued a decision on Plaintiffs' appeal.  (Dkt. #64).
*See generally Fasano II*, 921 F.3d 333.  Vacating and remanding this Court's
decision in *Fasano I*, the Second Circuit held that this Court had abused its
discretion in failing to address the Forum Selection Clause in the Deposit
Agreement.  *See id.* at 336.  The Second Circuit remanded the matter to this
Court to determine "whether the presumption of enforceability applies to the
forum selection clause; whether the presumption of enforceability applies to
the non-signatories here; and if it applies, whether the presumption of
enforceability is or has been rebutted as unreasonable, unjust, or the product
of fraud or overreaching."  *Id.* at 337.  The Second Circuit did not dispute or
find legal error with any other part of this Court's prior *forum non conveniens*
analysis.

Following the Second Circuit's remand, all Defendants save Guoqing Li,
Ruby Rong Lu, Ke Zhang, and Xiaolong Li renewed their motion to dismiss for
*forum non conveniens*, and additionally moved to dismiss pursuant to Rule
12(b)(6).  (Dkt. #74-76).  On September 12, 2019, Plaintiffs filed the Amended
Complaint.  (Dkt. #79).  Although the facts alleged remained largely the same
as the original complaint, the Amended Complaint asserted different claims.
Specifically, the Amended Complaint asserted violations of Section 13(e) of the
Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m(e), and
Rule 13e-3, 17 C.F.R. § 240.13e-3; Section 10(b) of the Exchange Act, 15
U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; and Section 20(a) of
the Exchange Act, 15 U.S.C. § 78t(a), as well as common law claims for

negligent misrepresentation, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. (Am. Compl. ¶¶ 126-84). By contrast, the original complaint had only asserted a single federal securities claim. (Dkt. #1 at ¶¶ 119-22). As a result of the Amended Complaint, the Court denied Defendants' motion to dismiss as moot and ordered Defendants to file either an updated motion or an answer. (Dkt. #80).

On October 7, 2019, Defendants (again with the exception of Guoqing Li, Ruby Rong Lu, Ke Zhang, and Xiaolong Li, who all remained unserved at that time), moved to dismiss the Amended Complaint both on *forum non conveniens* grounds and for failure to state a claim. (Dkt. #81-84). Plaintiffs filed their opposition papers on November 15, 2019, and also requested that the Court hold oral argument on the motion. (Dkt. #88-91; *see also* Dkt. #92 (Court response)).

Separately, on November 18, 2019, Plaintiffs filed a motion seeking alternative service as to Defendants Guoqing Li, Ruby Rong Lu, Ke Zhang, and Xiaolong Li. (Dkt. #93). The served Defendants responded to that motion on December 2, 2019. (Dkt. #94). On December 10, 2019, the Court granted Plaintiffs' motion as to Defendant Guoqing Li alone. (Dkt. #95). Defendants filed their reply papers for their motion to dismiss on December 16, 2019. (Dkt. #96-97). On December 30, 2019, Plaintiffs requested leave to file a sur-reply (Dkt. #98), to which Defendants responded on January 7, 2020 (Dkt. #99). On January 8, 2020, the Court informed the parties that it would take into account their letter regarding the sur-reply, but otherwise would not

permit Plaintiffs to file a sur-reply.  (Dkt. #100).  On January 9, 2020,

Defendant Guoqing Li joined Defendants' pending motion to dismiss.  (Dkt.

#102).  Defendants Ruby Rong Lu, Ke Zhang, and Xiaolong Li (the "Unserved

Defendants") remain unserved.[3]

## DISCUSSION

### The Court Grants Defendants' Renewed Motion to Dismiss for *Forum Non Conveniens*

**A.    Applicable Law**

The decision to grant a motion to dismiss on grounds of *forum non*

*conveniens* "lies wholly within the broad discretion of the district court."

*Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (citation

omitted).  "The doctrine of *forum non conveniens* is a discretionary device

permitting a court in rare instances to dismiss a claim even if the court is a

permissible venue with proper jurisdiction over the claim."  *Carey* v. *Bayerische*

*Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (internal

quotation marks and citation omitted).  The party seeking dismissal "bears the

burden of proof on all elements of the motion."  *Bank of Credit and Commerce*

*Int'l (Overseas) Ltd.* v. *State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

Typically when a court is faced with a motion to dismiss for *forum non*

*conveniens*, it must assess: (i) the deference to be accorded to the plaintiff's

choice of forum; (ii) the adequacy of the alternative forum proposed by the

---

[3]    As Ruby Rong Lu, Ke Zhang, and Xiaolong Li are still unserved, the Court need not
resolve the claims against those Defendants in order to enter a final judgment.  *See*
*Cotton* v. *McCarthy*, 383 F. App'x 26, 27 (2d Cir. 2010) (summary order).

defendants; and (iii) the balance between the private and public interests implicated in the choice of forum. *Fasano II*, 921 F.3d at 335 (citing *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)). However, a forum selection clause "require[s] a substantial modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Martinez* v. *Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) (citing *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 6 (1972)). Valid forum selection clauses "must be given 'controlling weight in all but the most exceptional cases,'" and if a forum selection clause is indeed deemed valid, "the only remaining inquiry is whether there are public interest considerations … that weigh against its enforcement." *Midamines SPRL Ltd.* v. *KBC Bank NV*, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014) (quoting *Atlantic Marine Constr. Co., Inc.* v. *U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 60, 62-64 & n.6 (2013)), *aff'd*, 601 F. App'x 43 (2d Cir. 2015) (summary order).

With that said, the presumption that a forum selection clause is enforceable is "not automatic." *Fasano II*, 921 F.3d at 335. "Instead, a district court must consider three factors …: whether [i] the clause was reasonably communicated to the party resisting its enforcement; [ii] the clause is mandatory of permissive; and [iii] the claims and parties to the dispute are subject to the clause." *Id.* (citing *Magi XXI, Inc.* v. *Stato Della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013)). And even if the court determines that the

presumption applies, it must still assess whether the presumption "has been properly rebutted by 'a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (internal quotation marks omitted). The party seeking enforcement of the forum selection clause bears the burden of proving that the presumption of enforceability applies. *See Tropp* v. *Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010) (summary order).

## B.    Analysis

### 1.    The Forum Selection Clause Does Not Cover All Claims

There is no question that the Forum Selection Clause was reasonably communicated to Defendants and that it is mandatory. Defendants, however, dispute whether the Forum Selection Clause covers all of Plaintiffs' claims. (*See* Def. Br. 3, 4-6). Specifically, Defendants argue that while Plaintiffs' federal securities law claims fall within the Forum Selection Clause, their claims for negligent misrepresentation and breach of fiduciary duty do not. (*See id.*). Plaintiffs, for their part, assert that the Forum Selection Clause contains classically broad language that necessarily covers all claims at issue in this action. (*See* Pl. Opp. 5-7).

"Under New York law, the words and phrases used by the parties in a forum-selection clause 'must, as in all cases involving contract interpretation, be given their plain meaning.'" *ICICI Bank Ltd.* v. *Essar Glob. Fund Ltd.*, 565 B.R. 241, 252 (S.D.N.Y. 2017) (quoting *Brooke Grp. Ltd.* v. *JCH Syndicate 488*,

87 N.Y.2d 530, 534 (1996)).[4]  Moreover, a "contract must be read as a whole in order to determine its purpose and intent, and … single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part."  *Eighth Ave. Coach Corp.* v. *City of New York*, 286 N.Y. 84, 88 (1941).

At the outset, the Court acknowledges that the Forum Selection Clause uses language that typically signals a broad application of the clause.  *See, e.g.*, *Prod. Res. Grp., L.L.C.* v. *Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (noting that terms such as "in connection with," "relating to," or "associated with" indicate a broader scope for forum selection clauses).  Specifically, and when read in isolation, the Deposit Agreement provides that:

> [A]ny such controversy, claim[,] or cause of action brought by a party hereto against the Company *relating to* or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder … shall be litigated in the Federal and state courts in the Borough of Manhattan.

(Am. Compl., Ex. 5 at 54 (emphasis added)).  However, terms such as "relating to" are not talismans that automatically render contractual clauses broad in scope; what controls is the language when read in its proper context, not the

---

[4]      Where a contract contains both a choice of law clause and a forum selection clause, a court should interpret the scope of the forum selection clause according to the law contractually chosen by the parties.  *See Martinez* v. *Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014).  Here, the Deposit Agreement provides that it "shall be interpreted … by the laws of the State of New York."  (Am. Compl., Ex. 5 at 36).  Therefore, New York law governs issues regarding the scope of the forum selection clause.  However, where there does not seem to be a divide between New York law and the law applied by federal courts, the Court relies on and cites to federal case law.  Finally, the Court notes that the choice of law clause in the Deposit Agreement does *not* apply to claims arising from or relating to the Deposit Agreement.

term in isolation.  *Cf. Ji Dong Cheng* v. *HSBC Bank USA, N.A.*, — F. Supp. 3d

— , No. 20 Civ. 1551 (BMC), 2020 WL 3165214, at *3 (E.D.N.Y. June 15, 2020)

(explaining, in the context of arbitration, that "even if an arbitration clause

uses … sweeping language, it may still be considered narrow given the

surrounding context").

Reading the Forum Selection Clause within its context, it is clear that it

is only designed to cover a narrow subset of claims.  The Forum Selection

Clause is contained within and connected to the Deposit Agreement's

arbitration provisions.  (*See* Am. Compl., Ex. 5 at 54).  The Deposit Agreement

broadly provides that all claims arising out of or relating to the ADSs or the

Deposit Agreement must be settled by arbitration.  (*See id.* ("Any controversy,

claim[,] or cause of action brought by any party hereto against the Company

arising out of or relating to the Shares or other Deposited Securities, the

American Depositary Shares, the Receipts[,] or the Deposit Agreement … shall

be settled by arbitration.").  However, further down, the Deposit Agreement

provides a narrow carveout for any claim "relating to or based upon the

provisions of the Federal securities laws of the United States or the rules and

regulations promulgated thereunder." (*Id.*).  For that subset of claims,

arbitration is only required if elected by the claimant.  (*See id.*).  And critically,

it is only those claims "not subject to arbitration" that must be litigated in New

York.  (*Id.*).  Therefore, a plain reading of the Deposit Agreement makes clear

that the Forum Selection Clause only applies to those claims "relating to or

based upon" federal securities law and the regulations associated with those laws.

Defendants argue that Plaintiffs' negligent misrepresentation and breach of fiduciary duty claims are not related to or based upon the provisions of any federal securities law (Def. Br. 5), and the Court is inclined to agree. It is evident that such common law causes of action are in no way based upon or related to federal law, and are purely creatures of state law. *See Flynn ex rel. Moody's Corp.* v. *McDaniel*, 689 F. Supp. 2d 686, 691 (S.D.N.Y. 2010) (explaining that a "breach of fiduciary duty claim[] rest[s] on duties created by state, not federal, law"); *Sung ex rel. Lazard Ltd.* v. *Wasserstein*, 415 F. Supp. 2d 393, 405-06 (S.D.N.Y. 2006) (noting that the elements of a breach of fiduciary duty claim "are unrelated to federal law"); *Fin. & Trading, Ltd.* v. *Rhodia S.A.*, No. 04 Civ. 6083 (MBM), 2004 WL 2754862, at *6-7 (S.D.N.Y. Nov. 30, 2004) (noting that a negligent misrepresentation claim, even one involving misrepresentations "contained in prospectuses filed with the SEC, ... do[es] not depend on any rights or causes of action created by federal law"). Moreover, the connection between Plaintiffs' common law claims and provisions of federal securities law is even more attenuated given that, as the Court explains more fully later in this Opinion, those common law claims should be governed by Cayman Islands law, as opposed to New York law.

Plaintiffs seek to rely on numerous cases that support the inclusion of diverse claims within the scope of a forum selection clause where broad language such as "relating to" is used. (*See* Pl. Opp. 5-7). However, all of these

cases are inapposite for the simple reason that none of them involves language
similar to that present in the Deposit Agreement.  For example, Plaintiffs rely
on *Roby* v. *Corp. of Lloyd's* (*see* Pl. Opp. 5), in which the relevant forum
selection clause required "any dispute and/or controversy of whatsoever nature
arising out of relating to the [Name's] membership of, and/or underwriting of
insurance business at, Lloyd's" to be brought in an English court.  996 F.3d
1353, 1359 (2d Cir. 1993).  The Second Circuit held that claims beyond those
concerning contractual violations, including claims regarding certain connected
securities, fell within the scope of the clause.  *See id.* at 1361.  Plaintiffs
similarly rely on *TradeComet.com LLC* v. *Google, Inc.* (*see* Pl. Opp. 6), in which
the forum selection clause applied to claims "arising out of or relating to this
[underlying] agreement or the Google Program(s)."  435 F. App'x 31, 35 (2d Cir.
2011) (summary order).  Based on that broad language, the Court held that the
forum selection clause included any claim relating to the Google Programs,
regardless of when the claim arose.  *See id.*

Based on these cases, and other cases on which Plaintiffs rely, the Court
would readily agree that if the Forum Selection Clause applied by its terms to
any claims relating to the Deposit Agreement or the ADSs, then all of Plaintiffs'
claims would fall within its scope.  That, however, is not the language in the
Deposit Agreement.  In order for Plaintiffs' claims to fall within the scope of the
Forum Selection Clause, they must "relat[e] to or [b]e based upon the
provisions of the Federal securities laws of the United States or the rules and
regulations promulgated thereunder."  (Am. Compl., Ex. 5 at 54).  That

language requires a nexus between the claims and federal statutes and regulations, not between the claims and underlying facts.  And as already demonstrated, Plaintiffs' common law claims do not relate to and are not based upon any part of federal securities law, as they are solely common law claims (and more specifically, claims that are likely governed by Cayman Islands law).[5] Therefore, the Court finds that Plaintiffs' common law claims do not fall within the scope of the Forum Selection Clause.[6]

### 2. The Forum Selection Clause Does Not Cover All Defendants

Much as Defendants argue that the Forum Selection Clause does not cover all of Plaintiffs' claims, they similarly argue that the Clause does not cover all Defendants.  (Def. Br. 6).  Indeed, Defendants note that of the thirteen defendants in this action, only Dangdang is a signatory to the Deposit Agreement.  (*See id.*).  Of course, "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."  *Aguas Lenders Recovery Grp., LLC* v. *Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009).  And New York courts have held that "a signatory to a contract may invoke a forum selection clause against a non-signatory if the

---

[5]     Although the Amended Complaint states that the breach of fiduciary duty claim is in some way related to the federal Sarbanes-Oxley Act claim (*see* Am. Compl. ¶ 171), neither Plaintiffs nor their expert claims that such a pleading converts their common law claim to one relating to federal securities law.  Indeed, Plaintiffs' expert expressly agrees "that the governing law is Cayman Islands law" for Plaintiffs' breach of fiduciary duty claim.  (Litton Decl. ¶ 29).

[6]     As a final point, Plaintiffs attempt to argue that their common law claims fall within the scope of the Forum Selection Clause because they "aris[e] out of the same nucleus of operative fact."  (Pl. Opp. 5, 7).  However, Plaintiffs offer no authority that supports such a standard or rule.

non-signatory is 'closely related' to one of the signatories." *Universal Inv. Advisory SA* v. *Bakrie Telecom PTE, Ltd.*, 62 N.Y.S.3d 1, 4 (1st Dep't 2017); *accord Magi XXI, Inc.*, 714 F.3d at 723 ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."). A signatory and non-signatory are "closely related" if "enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Universal Inv. Advisory*, 62 N.Y.S.3d at 4; *see also Midamines SPRL Ltd.*, 2014 WL 1116875, at *5 ("The touchstone is whether 'enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." (quoting *Metro-Goldwyn-Mayer Studios Inc.* v. *Canal+ Distribution S.A.S.*, No. 07 Civ. 2918 (DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010))). Moreover, "[t]he vast majority of cases that have found a non-signatory bound by a forum selection clause … have done so where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." *Prospect Fund Holdings, LLC* v. *Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017).

Plaintiffs argue that all the non-signatories (*i.e.*, all Defendants but Dangdang) are closely related to Dangdang because, as a matter of New York law, "officers, directors, a 'parent company,' and a 'principal shareholder' are deemed 'closely related.'" (Pl. Opp. 7 (citing *Universal Inv. Advisory*, 62

N.Y.S.3d at 4-5)).  This argument, however, vastly overstates the law.  No case

to which Plaintiffs cite holds that parties, solely by virtue of their positions in or

relationship to a corporation, are considered "closely related."  Instead,

"[w]hether a party is closely related to a signatory is a fact-specific inquiry."

*Kasper Glob. Collection & Brokers, Inc.* v. *Glob. Cabinets & Furniture Mfrs. Inc.*,

952 F. Supp. 2d 542, 561 (S.D.N.Y. 2013).  Therefore, the Court's inquiry does

not turn on any particular Defendant's status or title, but instead on whether,

based on Plaintiffs' allegations, it would be foreseeable to any of the non-

signatories that they would be bound by the Forum Selection Clause by virtue

of their relationship with Dangdang or their role in the transaction

undergirding the Deposit Agreement — that is, the listing of Dangdang ADSs

on the NYSE.

Based on Plaintiffs' pleadings, the Court concludes that Defendants

Guoqing Li and Min Kan are covered by the Forum Selection Clause.  Putting

aside the fact that Mr. Li is Dangdang's co-founder and CEO, and was involved

in the decision to list Dangdang on the NYSE through the issuance of the ADSs

(*see* Am. Compl. ¶ 9) — which alone would be sufficient to be deemed "closely

related" to Dangdang — Mr. Li is a holder of Dangdang ADSs, and therefore is

expressly bound by the Deposit Agreement (*see id.*, Ex. 3 at 3).  Mr. Kan, too, is

a holder of Dangdang ADSs, and therefore is bound by the Deposit Agreement

as well.  (*See id.*).  The Court also finds that it would be foreseeable that Peggy

Yu Yu would be bound by the Forum Selection Clause, given her position as

co-founder and executive chairwoman of Dangdang and her involvement in the

issuance of the ADSs. (*See id*. at ¶ 10). Similar logic dictates that the Forum Selection Clause should be enforced against DHC, given Plaintiffs' pleading that it was involved in listing Dangdang on the NYSE. (*See id*. at ¶ 12).

However, Plaintiffs have failed to show through their pleadings that it would have been foreseeable to any of the other non-signatories that they would have been bound by the Forum Selection Clause. For example, Defendants Kewen, SCI, and First Profit — the investment vehicles controlled by Guoqing Li and Danqian Yao — have no relationship with Dangdang whatsoever. (*See* Am. Compl. ¶¶ 13-14, 16). It would therefore be wholly unreasonable to find that either of the three Defendants should have foreseen being bound by a Forum Selection Clause in a contract to which they had no connection, merely because they participated in a merger six years after the formation of the Deposit Agreement. Defendant Danqian Yao was a senior vice president at Dangdang at the time the company was listed on the NYSE (*id*. at ¶ 15), but there is otherwise no other indication that Mr. Yao played a role in the listing of the ADSs or would have been aware of the Deposit Agreement and its Forum Selection Clause. He, too, should not be bound by the Forum Selection Clause. As for Defendant Lijun Chen, he was not even an employee of Dangdang when the ADSs were issued. (*See id*. at ¶ 17). There is therefore no basis on which the Court can find that enforcement of the Forum Selection Clause would have been foreseeable to Mr. Chen. Finally, insofar as the Unserved Defendants are relevant to the instant motion, the Amended Complaint does not offer any indication that either Ruby Rong Lu, Ke Zhang, or

Xiaolong Li should have foreseen being bound by the Forum Selection Clause. Although the Amended Complaint makes clear that the Unserved Defendants played an active role in the Merger (*see id.* at ¶¶ 20-22), it offers no insight into what role, if any, they played in the issuance of the ADSs, which is the relevant transaction for the Forum Selection Clause, *see Vinson*, 256 F. Supp. 3d at 325 (noting that the relevant transaction for the "closely related" test is the one between the signatories). Accordingly, the Court finds that the Forum Selection Clause may only be enforced against the signatory — Dangdang — and non-signatories DHC, Guoqing Li, Peggy Yu Yu, and Min Kan.[7]

---

[7]  For the sake of transparency, the Court acknowledges that it is aware of sister courts that have phrased the "closely related" test as revolving around whether the non-signatory is "closely related" to the dispute at issue, or, alternatively, that "a non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *See Miller* v. *Mecuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) (quoting *Nanopierce Tech., Inc.* v. *Southridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003), and *Weingrad* v. *Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005)). The dispute at issue in the instant action is the Merger, and all Defendants played a role in the Merger due to their participation in the Controlling Group. However, in the cases that focus the analysis for the "closely related" test on the dispute at issue in the case, the relevant forum selection clause was contained in the agreement out of which the dispute directly sprung. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc.* v. *Canal+ Distribution S.A.S.*, No. 07 Civ. 2918 (DAB), 2010 WL 537583, at *2, 4 (focusing on whether non-signatory was "closely related" to dispute where the forum selection clause was part of the agreement that gave rise to the plaintiff's suit). Here, of course, the Forum Selection Clause bears no direct connection to the Merger that is at issue, and it is the Merger — not the Deposit Agreement — that is the basis for the instant action. Therefore, the Court does not believe that focusing on whether the non-signatories are "closely related" to the instant dispute is helpful for answering the question of whether enforcement of the Forum Selection Clause would be foreseeable to them. Finally, the Court does not believe it would be accurate to characterize the non-signatories' interests as completely derivative of Dangdang's interests and conduct, given that they are included in the suit due to their participation in the Controlling Group, as opposed to their roles at Dangdang.

### 3.  Defendants Have Failed to Show That Enforcement of the Forum Selection Clause Would Be Unreasonable or Unjust

To summarize the Court's analysis up to this point, there is no dispute between the parties as to whether the Forum Selection Clause at issue in this action either was reasonably communicated or is mandatory.  Accordingly, the presumption of enforceability should apply to whichever claims and parties fall within the scope of the Forum Selection Clause.  *See Fasano II*, 921 F.3d at 335.  However, the Court has thus far found that the Forum Selection Clause covers neither Plaintiffs' common law claims nor the majority of Defendants.  Therefore, the Forum Selection Clause is only presumptively enforceable as to Plaintiffs' federal securities law claims against Defendants Dangdang, DHC, Guoqing Li, Peggy Yu Yu, and Min Kan.

As previously mentioned, the presumption of enforceability can be rebutted.  *See Fasano II*, 921 F.3d at 336.  In order to rebut the presumption of enforceability, however, the party resisting enforcement of a forum selection clause must make

> "a sufficiently strong showing" that either: "[i] its incorporation was the result of fraud or overreaching; [ii] the law to be applied in the selected forum is fundamentally unfair; [iii] enforcement contravenes a strong public policy of the forum state; or [iv] trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."

*TGG Ultimate Holdings, Inc.* v. *Hollett*, 224 F. Supp. 3d 275, 285-86 (S.D.N.Y. 2016) (citing *Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007)).  Defendants do not, and cannot, make a strong showing of any of the above

24

factors.  There is no hint that the Forum Selection Clause was the result of fraud or overreaching; the law to be applied in this District is not fundamentally unfair; there is no New York public policy being contravened by enforcing the Forum Selection Clause; and trial in this District would likely be more convenient, not less, for Plaintiffs.

Instead, Defendants argue that enforcement of the Forum Selection Clause would be unreasonable seemingly because it would require this Court to bifurcate the instant action between those claims and parties that are covered by the Forum Selection Clause and those that are not.  (*See* Def. Br. 8). However, even if such bifurcation were the necessary outcome of this Court's findings, sister courts in this District have found that the creation of parallel proceedings regarding the same subject matter is insufficient to defeat a presumptively enforceable forum selection clause.  *See, e.g.*, *Tulepan* v. *Roberts*, No. 14 Civ. 8716 (KBF), 2014 WL 6808313, at *3 (declining to grant transfer of New York-filed action to Florida where there was a forum selection clause providing for New York jurisdiction, even though there was a parallel and related proceeding already underway in Florida); *Allianz Glob. Corp. & Specialty* v. *Chiswick Bridge*, Nos. 13 Civ. 7559 (RA), 13 Civ. 7565 (RA), 2014 WL 6469027, at *3 (enforcing forum selection clause that would require parallel proceedings in New York and Tokyo even though such a split would be "unduly costly and prejudicial").  And insofar as Defendants' cited cases are relevant to the question at hand (*see* Def. Br. 8-9), they all precede the Supreme Court's elucidation of the deference required to valid forum selection clauses in *Atlantic*

*Marine*, and are therefore inapposite.  Therefore, the Court cannot find, under the prevailing criteria required by the Second Circuit, *see Phillips*, 494 F.3d at 392, that Defendants have rebutted the presumption that the Forum Selection Clause is enforceable.

### 4.    The Unusual Posture of This Action and Public Interest Factors Nevertheless Warrant Dismissal

Having found that the Forum Selection Clause is valid, but solely as to a minority of Defendants and half of the asserted claims, the Court finds itself in murky waters.  *Atlantic Marine* — the Supreme Court case that established the governing framework for when a district court must factor a forum selection clause into either a 28 U.S.C. § 1404(a) or *forum non conveniens* analysis, *see* 571 U.S. at 62-64 — does not squarely address the situation presently before the Court.  In that case, the Supreme Court confronted a forum selection clause that covered all parties and claims at issue.  *See id.* at 53.  Faced with such a clause, the Supreme Court held that "a valid forum-selection clause should be given controlling weight in all but the most exceptional circumstances," in part because such a clause was "bargained for by the parties" and "protects their legitimate expectations."  *Id.* at 63 (quoting *Stewart Org., Inc.* v. *Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, *J.*, concurring)).  Here, however, it is clear that enforcement of the Forum Selection Clause does not protect the legitimate expectations of the parties, given that only five of the Defendants can be considered bound by the Clause.  This Court is not alone in finding that *Atlantic Marine* provides little guidance under such circumstances.  *See Eastcott* v. *McGraw-Hill Glob. Educ. Holdings, LLC*, No. 16 Civ. 904 (GAM),

26

2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (explaining that *Atlantic Marine* did not displace traditional 28 U.S.C. § 1404(a) analysis when a forum selection clause only implicated a fraction of the claims in the case).

The Court is also unable to find persuasive guidance from the various circuit courts.  The most analogous cases to the current situation come from the Fifth Circuit, *see In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), and Third Circuit, *see In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017).  In *Rolls Royce*, the Fifth Circuit grappled with what course to take where "some, but not all, litigants are subject to a forum selection clause, and one of the parties to the clause files a motion to sever and transfer its claims to the forum chosen in the contract."  775 F.3d at 673.  In response to this unusual situation, the Fifth Circuit developed a complex framework that required a district court, as an initial matter, to follow *Atlantic Marine* as to the parties bound by the forum selection clause, but then to consider as well the private interests of the parties not bound by the clause.  *See id.* at 681. Finally, the Fifth Circuit held that a district court "must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit."  *Id.*  Although the Fifth Circuit ended up severing and transferring the claims of the parties that were bound by the forum selection clause, *see id.* at 683, the Circuit recognized that "the need — rooted in the valued public interest in judicial economy — to pursue the same claims in a single action in a single court *can* trump a forum-

selection clause," *id.* at 679 (emphasis added), regardless of *Atlantic Marine*'s deference to forum selection clauses.

Somewhat similarly to *Rolls Royce*, the Third Circuit in *Howmedica* questioned "how district courts should apply *Atlantic Marine* where all defendants seek a transfer to one district under § 1404(a) and where some, but not all, of those defendants are parties to forum-selection clauses that designate different districts."  867 F.3d at 397.  Much like the Fifth Circuit, the Third Circuit found that it had "need of a separate framework to determine how forum-selection clauses affect the § 1404(a) transfer analysis where both contracting and non-contracting parties are found in the same case and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*."  *Id.* at 403.  In response, the Third Circuit created a four-step framework that "consider[ed] in sequence: [i] the forum-selection clauses[;] [ii] the private and public interests relevant to the non-contracting parties[;] [iii] threshold issues related to severance[;] and [iv] which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests."  *Id.* at 403-04.

Unfortunately, neither case proves helpful to this Court for the simple reason that they both involved analytically distinct mechanisms from *forum non conveniens*.  Although § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system," *Atlantic Marine*, 571 U.S. at 60, it has drastically different practical consequences.  When a case or claim is

transferred via § 1404(a), the claim remains alive — it merely proceeds in a

different forum.  *Forum non conveniens*, on the other hand, results in the

outright dismissal of the claim, with nothing more than the expectation that

the plaintiff may continue the dispute in a more appropriate foreign forum if

plaintiff wishes.  Indeed, the Second Circuit has recognized, in line with this

difference in consequence, that "[f]orum selection clauses pointing to foreign

fora present distinct challenges not raised by clauses that merely point to other

federal district courts."  *Martinez*, 740 F.3d at 230.  Therefore, the animating

force behind the frameworks in *Rolls Royce* and *Howmedica* — a concern for

judicial efficiency within the federal system — is inapplicable to the instant

circumstance, where the only apparent options are retention or dismissal of the

entire action.[8]

Acknowledging all of the above, the Court must nevertheless decide

whether it should retain an action that is almost entirely between foreign

parties and that arose from a merger executed in a foreign jurisdiction, solely

on the basis of a Forum Selection Clause that binds only five of thirteen

---

[8]     While it is clear that the Court could sever claims or parties if this were a motion to
transfer pursuant to § 1404(a), the Court is skeptical that severance is permitted in the
*forum non conveniens* context.  *See* Windt v. *Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d
409, 414 n.6 (D.N.J. 2008) ("The doctrine of *forum non conveniens* is intended to avoid
trial in inappropriate forums, not to avoid meritless suits, and could be employed *only*
with respect to the entire case, not individual claims." (internal quotation marks and
brackets omitted) (quoting *Alnwick* v. *European Micro Holdings, Inc.*, 29 F. App'x 781,
784 (2d Cir. 2002) (summary order))); *but see Tarasewicz* v. *Royal Caribbean Cruises
Ltd.*, No. 14 Civ. 60885 (BB), 2015 WL 3970546, at *16 (S.D. Fla. June 30, 2015) ("In
cases involving multiple defendants, when dismissal on *forum non conveniens* grounds
would further 'the administration of justice,' but venue in the alternative forum is not
appropriate for one or more of the defendants, the Court may sever claims against those
defendants if they are alleged to be only indirectly connected to the conduct forming the
primary basis of the action." (quoting *Warter* v. *Boston Sec., S.A.*, 380 F. Supp. 2d 1299,
1307 (S.D. Fla. 2004))).

Defendants and only half of Plaintiffs' asserted claims.  Retention of such an action seems less like protection of the parties' legitimate expectations and more like the tail wagging the dog.

Moreover, as the Court noted in *Fasano I*, the public interest factors at play in this action still favor dismissal.  *See* 2017 WL 6764692, at *10-13. Although the United States certainly has some interest in adjudicating this dispute — given that the ADSs were listed on the NYSE, Dangdang filed alleged misrepresentations with the Securities and Exchange Commission, and Plaintiff Fasano is a New York resident — "the Cayman Islands has a closer nexus to the parties and events that are at the heart of this case."  *Id.* at *11. And, indeed, litigation relating to this same dispute has already taken place in the Cayman Islands.  (*See* Brown Decl., Ex. A).  The Cayman Islands therefore has an interest in having this localized controversy decided at home — a factor that favors dismissal.

Additionally, and despite Plaintiffs' best efforts to persuade otherwise (*see* Pl. Opp. 24-25), the Court remains convinced that Plaintiffs' common law claims will be governed by Cayman Islands law, as opposed to New York law. Under Second Circuit precedent, "questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation," *Scottish Air Int'l, Inc.* v. *British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) — in this case, the Cayman Islands.  The Supreme Court has recognized "that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among

or between the corporation and its current officers, directors, and shareholders." *Edgar* v. *MITE Corp.*, 457 U.S. 624, 645 (1982).  Here, there is no question that Plaintiffs' breach of fiduciary duty claims fall squarely within the internal affairs doctrine.  *See BBS Norwalk One, Inc.* v. *Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (explaining that claims for breach of fiduciary duty and aiding and abetting such a breach are "governed by the law of the state of incorporation"), *aff'd*, 205 F.3d 1321 (2d Cir. 2000).  And as previously noted, even Plaintiffs' expert agrees that the breach of fiduciary duty claim will be governed by Cayman Islands law.  (*See* Litton Decl. ¶ 29). Plaintiffs' strained efforts to connect that claim to aspects of federal law do not alter the analysis.[9]

Plaintiffs' negligent misrepresentation claim likely also will be governed by Cayman Islands law, given that it arises in part from Defendants' "fiduciary duties to Plaintiffs" (Am. Compl. ¶ 163), and relates directly to the fairness of the Merger, *see Hahn* v. *Breed*, 587 F. Supp 1369, 1381 (S.D.N.Y. 1984) (explaining that a claim that "raises the issue of the fairness of [a] merger to a shareholder … involves the internal affairs of a [ ] corporation").  Plaintiffs attempt to argue that their negligent misrepresentation claim will be governed not by the internal affairs doctrine, but by New York's "locus of the tort" test. (*See* Pl. Opp. 24-25).  However, this would only be the case if "the rights of

---

[9]     The Court notes that neither *S.E.C.* v. *Steffes*, 805 F. Supp. 2d 601, 616 (N.D. Ill. 2011), nor *United States* v. *Falcone*, 257 F.3d 226, 234-35 (2d Cir. 2001), upon which Plaintiffs rely (*see* Pl. Opp. 23), supports the idea that United States law would in any way factor into the breach of fiduciary duty claim.

third parties *external* to the corporation [were] at issue." *Mindspirit, LLC* v.
*Evalueserve Ltd.*, 346 F. Supp. 3d 552, 581 (S.D.N.Y. 2018) (emphasis in
original) (quoting *Roselink Inv'rs, L.L.C.* v. *Shenkman*, 386 F. Supp. 2d 209, 225
(S.D.N.Y. 2004)).  Since Plaintiffs are shareholders, the internal affairs doctrine
squarely applies.  *See Roselink Inv'rs*, 386 F. Supp. 2d at 225 (explaining that
certain tort claims were not encompassed within the internal affairs doctrine
because they were not brought by shareholders, officers, or directors).  And
while the internal affairs doctrine only "creates 'a presumption in favor of
applying the law of the state of incorporation,'" that presumption has not been
rebutted by any showing that New York has "a more significant relationship
with the parties and the dispute at issue." *In re MF Glob. Holdings Ltd. Inv.
Litig.*, 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014) (quoting *Resolution Trust Corp.*
v. *Gregor*, 872 F. Supp. 1140, 1150 (E.D.N.Y. 1994)), *aff'd sub nom. In re MF
Glob. Holdings Ltd. Inv. Litig. (DeAngelis* v. *Corzine)*, 611 F. App'x 34 (2d Cir.
2015) (summary order).  Therefore, all of Plaintiffs' common law claims will be
governed by Cayman Islands law.[10]  That fact also weighs in favor of dismissal.
*See Wallert* v. *Atlan*, 141 F. Supp. 3d 258, 282 (S.D.N.Y. 2015) (finding "that
the difficulty of applying foreign law is a significant factor in the balance of
convenience factors" (internal brackets, quotation marks, and ellipsis omitted)).

---

[10]     It is irrelevant that Plaintiffs' expert believes that Cayman Islands choice of law rules
would select New York law for the negligent misrepresentation claim.  (*See* Pl. Opp. 25).
The relevant forum state is New York, not the Cayman Islands, and therefore New York
choice of law rules control.  *See D'Amato* v. *Five Star Reporting, Inc.*, 80 F. Supp. 3d
395, 407 (E.D.N.Y. 2015).

Of course, the Court recognizes that Plaintiffs have also asserted three federal securities law claims in their Amended Complaint.  Of those three claims, the Court remains skeptical that the Section 13(e) claim can survive a motion to dismiss.  *See Fasano I*, 2017 WL 6764692, at *13 (noting that "[m]any courts — including a sister court in this District — have refused to recognize an implied right of action under Section 13(e) of the Exchange Act").  More importantly, however, it has not escaped the Court's notice that the main difference between Plaintiffs' original complaint and the operative pleading is the addition of two federal securities law claims, both of which were added immediately following Defendants' renewed motion to dismiss for *forum non conveniens*.  The Second Circuit has previously expressed its wariness of allowing a plaintiff to artfully plead its way out of a forum selection clause through the careful selection of claims.  *See Roby*, 996 F.2d at 1360.  The Court does not see why it should be any less wary of allowing a plaintiff to force unwilling and unbound parties to litigate in an inconvenient and inappropriate forum by artfully pleading its way *into* a forum selection clause.

In *Atlantic Marine*, the Supreme Court recognized that while "forum-selection clauses should control except in unusual cases," it was "conceivable in a particular case" that a district court might "refuse to transfer a case notwithstanding the counterweight of a forum-selection clause."  571 U.S. at 64 (quoting *Stewart*, 487 U.S. at 30-31).  The Court believes that this is such an unusual case.  Public interest factors counsel in favor of this action being litigated in the Cayman Islands, and the only counterweight pulling against

33

dismissal is a Forum Selection Clause that binds a minority of Defendants and half the asserted claims.  Under such circumstances, the Court finds that dismissal on *forum non conveniens* grounds remains the correct course of action.  Accordingly, Defendants' motion to dismiss for *forum non conveniens* is granted.

## CONCLUSION

For the reasons stated in this Opinion, the Court GRANTS Defendants' motion to dismiss for *forum non conveniens.*  The Court does not address Defendants' motion to dismiss under Rule 12(b)(6), as that alternative motion has been rendered moot.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   August 28, 2020
　　　　 New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

34