N.Y.S.D. Case #
16-cv-8759(KPF)

20-3131
Fasano v. Guoqing Li

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 26 2022

| | |
|---|---|
| 1 | UNITED STATES COURT OF APPEALS |
| 2 | FOR THE SECOND CIRCUIT |
| 3 | - - - - - - |
| 4 | August Term, 2020 |
| 5 | (Argued: May 24, 2021        Decided: August 26, 2022) |
| 6 | Docket No. 20-3131 |
| 7 | _____ |

8   JOE FASANO, ALTIMEO OPTIMUM FUND, ALTIMEO ASSET
9   MANAGEMENT, Individually and On Behalf of All Others
10  Similarly Situated,

11                    *Plaintiffs-Appellants*,

12                            - v. -

13  GUOQING LI, PEGGY YU YU, DANGDANG HOLDING
14  COMPANY, LTD., E-COMMERCE CHINA DANGDANG INC.,
15  KEWEN HOLDING CO. LTD., SCIENCE & CULTURE LTD., FIRST
16  PROFIT MANAGEMENT, LTD., DANQIAN YAO, LIJUN CHEN,
17  and MIN KAN,

18                    *Defendants-Appellees*,

1     RUBY RONG LU, KE ZHANG, and XIAOLONG LI,

2                 *Defendants.*[*]

3    _____

4    Before:  KEARSE, LYNCH, and CHIN, *Circuit Judges*.

5           Appeal from an August 2020 judgment of the United States District

6    Court for the Southern District of New York, Katherine Polk Failla, *Judge*, dismissing,

7    on the ground of forum non conveniens, plaintiffs' amended complaint alleging

8    negligent misrepresentation, breach of fiduciary duty, and violations of §§ 10(b),

9    13(e), and 20(a) of the Securities Exchange Act of 1934, and rules promulgated

10   thereunder, in connection with a 2016 "going-private" merger involving defendant E-

11   Commerce China Dangdang Inc. ("Dangdang") and the purchase by Dangdang's

12   controlling shareholders of its outstanding publicly-traded shares, listed as American

13   Depositary Shares ("ADSs") on the New York Stock Exchange.  The present dismissal

14   follows proceedings on remand from this Court, which vacated a 2017 forum-non-

15   conveniens dismissal of the original complaint, for reconsideration in light of a forum

16   selection clause governing Dangdang ADSs and calling for securities law claims to

17   be litigated in a Manhattan, New York, court, *see Fasano v. Yu*, 921 F.3d 333 (2d Cir.

_____

[*]      The Clerk of Court is instructed to amend the official caption to conform with the above.

1   2019).  On remand, the district court, noting that the newly filed amended complaint

2   alleged essentially the same facts as the original complaint but added two federal

3   securities claims to which it sought to link the original common-law claims, found the

4   forum selection clause valid and enforceable against only five of the 13 defendants,

5   and applicable to only a narrow subset of plaintiffs' claims, to wit, their federal

6   securities claims.  The court again dismissed the action on forum non conveniens

7   grounds, concluding that a forum selection clause that is applicable to so few claims

8   and defendants did not warrant retention of an action that is almost entirely between

9   foreign parties and that arose from a merger executed in a foreign jurisdiction.  The

10  court denied as moot an alternative motion by defendants pursuant to Fed. R. Civ. P.

11  12(b)(6) to dismiss the amended complaint for failure to state a claim.  *See Fasano v.*

12  *Li*, 482 F.Supp.3d 158 (S.D.N.Y. 2020).

13          On appeal, plaintiffs argue principally that the district court erred in

14  concluding that the forum selection clause was not applicable to all of the defendants

15  and to all of plaintiffs' claims and in according unwarranted weight to public-interest

16  factors pointing toward dismissal.  They also urge, if the case is reinstated, that we

17  rule that defendants had waived their right to move for a Rule 12(b)(6) dismissal of

18  the amended complaint.

3

1    We conclude that the district court principally misinterpreted the scope

2    of the forum selection clause, thereby undercounting the number of defendants

3    covered by that clause; and that the court attributed undue weight to a Cayman

4    Islands interest in deciding plaintiffs' claims, given that the controlling contract

5    requires all common-law claims to be submitted to arbitration in New York, and

6    given that the only claims that could be adjudicated in the Cayman Islands would be

7    United States federal securities claims as to which the law is unsettled.  We reject

8    plaintiffs' contention that defendants' right to seek dismissal of the amended

9    complaint for failure to state a claim has been waived; we vacate the judgment and

10   remand for consideration of defendants' Rule 12(b)(6) motion to dismiss.

11   Vacated and remanded.

12   SAMUEL J. LIEBERMAN, New York, New York (Ben
13        Hutman, Sadis & Goldberg, New York, New York,
14        on the brief), *for Plaintiffs-Appellants*.

15   SCOTT MUSOFF, New York, New York (Skadden,
16        Arps, Slate, Meagher & Flom, New York, New York,
17        on the brief), *for Defendants-Appellees*.

1   KEARSE, *Circuit Judge*:

2        Plaintiffs Joe Fasano, Altimeo Optimum Fund, and Altimeo Asset

3   Management, suing individually and on behalf of others similarly situated, appeal

4   from an August 2020 judgment of the United States District Court for the Southern

5   District of New York, Katherine Polk Failla, *Judge*, dismissing, on the ground of forum

6   non conveniens, their amended complaint against defendants E-Commerce China

7   Dangdang Inc. ("Dangdang"), its controlling shareholders, and others, alleging

8   negligent misrepresentation, breach of fiduciary duty, and violations of §§ 10(b),

9   13(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and rules

10   promulgated thereunder, in connection with Dangdang's 2016 "going-private" merger

11   and the purchase by its controlling shareholders of its outstanding publicly-traded

12   shares, listed as American Depositary Shares (or "ADSs") on the New York Stock

13   Exchange (or "NYSE").  The present dismissal follows proceedings on remand from

14   this Court, which vacated a 2017 forum-non-conveniens dismissal of the original

15   complaint, for reconsideration in light of a forum selection clause governing

16   Dangdang ADSs and calling for United States securities law claims to be litigated in

17   a Manhattan, New York, court, *see Fasano v. Yu*, 921 F.3d 333 (2d Cir. 2019).  On

18   remand, the district court, noting that the newly filed amended complaint alleged

5

1    essentially the same facts as the original complaint but added two federal securities

2    claims to which it sought to link the original common-law claims, held that the forum

3    selection clause was valid and enforceable against only five of the 13 named

4    defendants and was applicable to only a narrow subset of plaintiffs' claims, to wit,

5    their federal securities claims.  The court again dismissed the action for forum non

6    conveniens, concluding that a forum selection clause that is applicable to so few

7    claims and so few defendants did not warrant retention of an action that is almost

8    entirely between foreign parties and that arose from a merger executed in a foreign

9    jurisdiction.  The court denied as moot an alternative motion by defendants pursuant

10   to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint for failure to state a

11   claim.  *See Fasano v. Li*, 482 F.Supp.3d 158 (S.D.N.Y. 2020).

12           On appeal, plaintiffs argue principally that the district court erred in

13   concluding that the forum selection clause was not applicable to all of the defendants

14   and to all of plaintiffs' claims, and in according unwarranted weight to public-interest

15   factors pointing toward dismissal.  They also urge us, if the case is reinstated, to rule

16   that defendants had waived their right to move for a Rule 12(b)(6) dismissal of the

17   amended complaint.

1      For the reasons below, we conclude that the district court principally

2   misinterpreted the scope of the forum selection clause, thereby undercounting the

3   number of defendants covered by that clause; and that it attributed undue weight to

4   a Cayman Islands interest in deciding plaintiffs' claims, given that the controlling

5   contract requires all common-law claims to be submitted to arbitration in New York,

6   and that the only claims that could be adjudicated in the Cayman Islands would be

7   United States federal securities claims as to which the law is unsettled.  We thus

8   reverse the dismissal for forum non conveniens.

9      We reject plaintiffs' contention that defendants' right to seek dismissal

10   of the amended complaint for failure to state a claim was waived for failure to so

11   move with their original forum-non-conveniens motion.  We vacate the judgment and

12   remand for consideration of defendants' Rule 12(b)(6) motion to dismiss.


13                              I.  BACKGROUND


14      The basic factual allegations of the original complaint and the amended

15   complaint, which superseded the original complaint but contains essentially the same

16   factual assertions, have been described in prior opinions of the district court and this

1    Court, familiarity with which is assumed.  *See Fasano v. Li*, 2017 WL 6764692, \*1-\*3

2    (S.D.N.Y Dec. 29, 2017) ("*Fasano I*"), *vacated and remanded sub nom. Fasano v. Yu*, 921

3    F.3d 333, 337 (2d Cir. 2019) ("*Fasano II*"); and *Fasano v. Li*, 482 F.Supp.3d 158, 162-64

4    (S.D.N.Y. 2020) ("*Fasano III*").  Briefly, the amended complaint and the affidavits

5    submitted with respect to the forum-non-conveniens motions indicated the following.

6    A.  *The Parties*

7            Dangdang is an e-commerce company incorporated in the Cayman

8    Islands and headquartered in Beijing, China.  "It is commonly known as the

9    *Amazon.com* of China."  (Amended Complaint (or "A.C.") ¶ 40).  It is currently a

10   wholly-owned subsidiary of defendant Dangdang Holding Company, Ltd. ("DHC"),

11   a company also incorporated in the Cayman Islands and headquartered in Beijing.

12           Dangdang was founded in 2000 by defendant Guoqing Li ("Li" or

13   "Guoqing Li"), who was its Chief Executive Officer and one of its controlling

14   shareholders, and his wife, defendant Peggy Yu Yu ("Yu"), who was a shareholder

15   and Dangdang's Executive Chairwoman.  The other individual defendants include

16   Danqian Yao ("Yao"), Lijun Chen ("Chen"), and Min Kan ("Kan"), who were officers

1      or directors of Dangdang at the time of the going-private merger.  These individual

2      served defendants are all nationals of China.

3             Defendants Kewen Holding Co. Ltd. ("Kewen") and Science & Culture

4      Ltd. ("S&C") are limited companies incorporated in the British Virgin Islands; they are

5      principally investment holding vehicles controlled by Li.  Li is the sole owner of

6      Kewen and a 60% owner of S&C.  Defendant First Profit Management, Ltd. ("First

7      Profit"), incorporated in the British Virgin Islands, is principally an investment

8      holding vehicle owned by Yao.

9             The above five individuals, along with Dangdang's parent company

10     DHC and the three British Virgin Island entities, are alleged to have been Dangdang's

11     "Controlling Group" (*see* A.C. ¶¶ 2, 9-19) with respect to Dangdang's going-private

12     merger.  Dangdang and those nine entities (collectively "Defendants") are the

13     defendants-appellees on this appeal.

14            In addition to those 10 entities, plaintiffs named as defendants, but did

15     not serve, three individuals who are not appellees:  Ruby Rong Lu ("Lu"), Ke Zhang

16     ("Zhang"), and Xiaolong Li ("Xiaolong Li").  (*See* Part I.B. below.)

17            Plaintiffs are former owners or holders of Dangdang ADSs.  Fasano is a

18     resident of New York.  Plaintiffs Altimeo Optimum Fund and Altimeo Asset

1    Management, are, respectively, a French investment fund and its French investment

2    manager.

3    B.  *The Events of 2016*

4              Dangdang became a publicly traded company in 2010, with its shares

5    trading as ADSs on the New York Stock Exchange, covered by a Deposit Agreement

6    to which Dangdang, The Bank of New York Mellon as Depositary, and "all Owners

7    and Holders from time to time of American Depositary Shares issued hereunder"

8    were parties.  (Amended Complaint Exhibit 5 (the "Deposit Agreement").)  Ownership

9    of ADSs was evidenced by American Depositary Receipts ("ADRs").

10             The initial public offering price of Dangdang shares was $16.00 per ADS

11   share.  In the following years, when Dangdang's shares were trading at lower prices,

12   Li repeatedly stated publicly that the company should be valued in the range of $16

13   to $22 per share.

14             In mid-2015, Dangdang's share price had further declined, reaching $6.51

15   per ADS share on July 8, 2015, due to a Chinese Stock market crash; but the Chinese

16   Stock market rebounded by 8.1% on July 9.  Taking advantage of the 12-hour time

17   difference, with the Chinese market closing before the United States markets opened,

1    Li and the Controlling Group exploited Dangdang's low stock price by making an

2    offer to Dangdang to buy out Dangdang's minority stockholders at $7.81 per ADS

3    share before the United States markets opened on July 9, 2015.

4              The Controlling Group's offer to Dangdang was coercive because the

5    Controlling Group, which included the CEO and the Chairwoman, held 83.6% of the

6    company's voting power.  Dangdang appointed a special committee to evaluate the

7    offer.  The members were defendants-non-appellees Lu, Zhang, and Xiaolong Li.

8    While the committee was ostensibly independent, its supposed impartiality was a

9    sham because, *inter alia*, Lu, who chaired the committee, was financially dependent

10   upon Guoqing Li, and the attorneys retained by committee were also counsel for

11   Dangdang, having been so chosen by Guoqing Li.

12             The special committee proceeded to recommend that Dangdang accept

13   the Controlling Group's $7.81 per share offer for the ADSs despite there being an offer

14   from a private equity firm at $8.80 per share, and despite the fact that that firm's offer

15   was an all-cash offer, while the Controlling Group was to finance its offer in part out

16   of the Dangdang's own available cash.  The special committee also refused to insist

17   that the proposed going-private merger be subject to approval by a majority of the

1    minority shareholders.  And it agreed to allow the Controlling Group to reduce its

2    offering price to $6.70 per share.

3            The going-private merger closed in September 2016.


4    C.  *The Present Action and the Forum Selection Clause*

5            Plaintiffs commenced the present putative class action in November 2016

6    to challenge the merger, asserting, *inter alia*, claims of breach of fiduciary duty,

7    negligent misrepresentation, and violation of § 13(e) of the Exchange Act.  The

8    Dangdang ADRs contained a forum-selection clause ("Forum Selection Clause" or

9    "Clause"), embedded in an arbitration clause which, as quoted by the district court in

10   *Fasano III*, provided in part as follows:

11           "Any controversy, claim[,] or cause of action . . . arising out
12           of or relating to . . . the American Depositary Shares . . . shall be
13           settled by arbitration . . . ; provided, further, that *any such*
14           *controversy, claim[,] or cause of action . . . relating or based upon the*
15           *provisions of the Federal securities laws of the United States* or the rules
16           and regulations promulgated thereunder shall *be submitted to*
17           *arbitration . . . if, but only if, so elected by the claimant. . . . Any*
18           *controversy, claim[,] or cause of action . . . not subject to arbitration . . .*
19           *shall be litigated in the Federal and state courts in the Borough of*
20           *Manhattan, The City of New York.*"

1   *Fasano III*, 482 F.Supp.3d at 163 (quoting Deposit Agreement's Exhibit A § 23

2   (emphases ours)).  The United States District Court for the Southern District of New

3   York, in which this action was brought, is located in the Borough of Manhattan.  All

4   of the defendants who have been served have nonetheless moved for dismissal of the

5   complaint on the ground of forum non conveniens.

6          In *Fasano I*, 2017 WL 6764692, the district court granted the motion.  On

7   appeal, this Court vacated the judgment, noting that the district court had not

8   discussed the ADRs' Forum Selection Clause.  We remanded for the court to consider

9   the effect of that clause.  *See Fasano II*, 921 F.3d 333.

10          On remand, after Defendants indicated that they would continue to seek

11  dismissal for forum non conveniens, plaintiffs amended the complaint, reiterating

12  their § 13 and common-law claims, and adding claims under § 10(b) of the Exchange

13  Act and Rule 10b-5 promulgated thereunder against all defendants, and claims under

14  § 20(a) of the Exchange Act against Guoqing Li and Yu.  The amended complaint

15  asserted that Defendants owed heightened fiduciary duties to plaintiffs and the

16  putative plaintiff class under the Sarbanes-Oxley Act Code of Conduct and NYSE

17  Listing Standards adopted by Dangdang.  (*See* A.C. ¶ 171.)

13

1    Defendants renewed their motion to dismiss for forum non conveniens

2    and moved alternatively for dismissal under Fed. R. Civ. P. 12(b)(6) on the ground

3    that the amended complaint failed to state a claim on which relief can be granted.

4    Plaintiffs objected to that motion, contending that defendants had waived the right

5    to so move by not making the motion along with its 2017 motion to dismiss for forum

6    non conveniens.

7    D.  *The Decision in* Fasano III

8    In *Fasano III*, the district court noted that the factors underlying its earlier

9    dismissal for forum non conveniens had been principally (a) that plaintiffs' choice of

10    forum warranted diminished deference, given that the only plaintiff resident in the

11    United States is Fasano, and that his stake in the litigation was only about 1/100 as

12    much as that of his French co-plaintiffs; (b) that none of the defendants is a United

13    States entity; and (c) that the Cayman Islands had a strong interest in adjudicating this

14    dispute in its courts given that Dangdang is a Cayman Islands corporation, that the

15    events giving rise to the litigation took place there, that the going-private merger was

16    between two Cayman Islands entities, and that a Cayman Islands court was already

1    conducting a proceeding to determine the fair value of the merger.  *See Fasano III*, 482

2    F.Supp.3d at 165 (discussing *Fasano I*, 2017 WL 6764692, at *6-*12).

3            On remand, the district court considered the effect of the ADRs' Forum

4    Selection Clause, noting that such a clause, if enforceable, causes the forum non

5    conveniens doctrine to undergo

6            "a substantial modification . . . whereby the doctrine's usual tilt in
7            favor of the plaintiff's choice of forum gives way to a presumption
8            in favor of the contractually selected forum."  *Martinez v.*
9            *Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) . . . .  Valid forum
10           selection clauses must be given controlling weight in all but the
11           most exceptional cases, and if a forum selection clause is indeed
12           deemed valid, the only remaining inquiry is whether there are
13           public interest considerations . . . that weigh against its
14           enforcement.

15   *Fasano III*, 482 F.Supp.3d at 167 (other internal quotation marks omitted).

16   Nonetheless, the district court observed that this Court, in remanding, had noted that

17           the presumption that a forum selection clause is enforceable is
18           "not automatic." . . .  "Instead, a district court must consider three
19           factors . . . :  whether [i] the clause was reasonably communicated
20           to the party resisting its enforcement; [ii] the clause is mandatory
21           o[r] permissive; and [iii] the claims and parties to the dispute are
22           subject to the clause." . . .  The party seeking enforcement of the
23           forum selection clause bears the burden of proving that the
24           presumption of enforceability applies.

25   *Id*. at 167-68 (quoting *Fasano II*, 921 F.3d at 335).  And then,

1        even if the court determines that the presumption applies, it must
2        still assess whether the presumption "has been properly rebutted
3        by a sufficiently strong showing that enforcement would be
4        unreasonable or unjust, or that the clause was invalid for such
5        reasons as fraud or overreaching."

6    *Fasano III*, 482 F.Supp.3d at 167 (quoting *Fasano II*, 921 F.3d at 335 (other internal

7    quotation marks omitted).)  In order to rebut the presumption of enforceability,

8        the party resisting enforcement of a forum selection clause must
9        make a sufficiently strong showing that either:  [i] its
10       incorporation was the result of fraud or overreaching; [ii] the law
11       to be applied in the selected forum is fundamentally unfair; [iii]
12       enforcement contravenes a strong public policy of the forum state;
13       or [iv] trial in the selected forum will be so difficult and
14       inconvenient that the plaintiff effectively will be deprived of his
15       day in court.

16   *Fasano III*, 482 F.Supp.3d at 173 (internal quotation marks omitted).

17        Examining the forum selection clause in the present case, the district

18   court stated:

19        Reading the Forum Selection Clause within its context, it is
20       clear that it is only designed to cover a narrow subset of claims.
21       The Forum Selection Clause is contained within and connected to
22       the Deposit Agreement's arbitration provisions.  (*See* Am. Compl.,
23       Ex. 5 at 54).  *The Deposit Agreement broadly provides that all claims*
24       *arising out of or relating to the ADSs or the Deposit Agreement must be*
25       *settled by arbitration*.  (*See id*.) ("Any controversy, claim[,] or cause
26       of action brought by any party hereto against the Company
27       arising out of or relating to the Shares or other Deposited
28       Securities, the American Depositary Shares, the Receipts[,] or the

1        Deposit Agreement . . . shall be settled by arbitration."). *However,*
2        *further down, the Deposit Agreement provides a narrow carveout for any*
3        *claim "relating to or based upon the provisions of the Federal securities*
4        *laws of the United States or the rules and regulations promulgated*
5        *thereunder.*" (*Id*.). For that subset of claims, arbitration is only
6        required if elected by the claimant. (*See id*.). And critically, it is
7        only those claims "not subject to arbitration" that must be litigated
8        in New York. (*Id*.). *Therefore, a plain reading of the Deposit*
9        *Agreement makes clear that the Forum Selection Clause only applies to*
10       *those claims "relating to or based upon" federal securities law and the*
11       *regulations associated with those laws*.

12 *Fasano III*, 482 F.Supp.3d at 169 (emphases ours).

13        The court found it doubtful that plaintiffs' securities claim under § 13(e)

14 of the Exchange Act was cognizable in a private right of action. And it viewed the

15 amended complaint's new invocation of other sections of the Exchange Act or rules

16 thereunder as an "artful[]" attempt to recast as federal securities law claims plaintiffs'

17 original common-law claims of negligent misrepresentation and breach of fiduciary

18 duty, claims that would be governed by the laws of the Cayman Islands. *Id*. at 177.

19        In addition, the court noted that only Dangdang was a signatory to the

20 Deposit Agreement, *Fasano III*, 482 F.Supp.3d at 170, and found that most of its

21 codefendants are not subject to the ADRs' Forum Selection Clause:

22        Plaintiffs have failed to show through their pleadings that it
23        would have been foreseeable to any of the other non-signatories
24        that they would have been bound by the Forum Selection Clause.

1           For example, Defendants *Kewen*, *SCI*, and *First Profit*--the

2           investment vehicles controlled by Guoqing Li and Danqian Yao--

3           have *no relationship with Dangdang whatsoever*. (*See* Am. Compl.

4           ¶¶ 13-14, 16). *It would therefore be wholly unreasonable to find that*

5           *[any] of the three Defendants should have foreseen being bound by a*

6           *Forum Selection Clause in a contract to which they had no connection,*

7           *merely because they participated in a merger six years after the formation*

8           *of the Deposit Agreement.* Defendant Danqian *Yao* was a senior vice

9           president at Dangdang at the time the company was listed on the

10          NYSE (*id*. at ¶ 15), *but there is otherwise no other indication that Mr.*

11          *Yao played a role in the listing of the ADSs or would have been aware of*

12          *the Deposit Agreement and its Forum Selection Clause.* He, too,

13          should not be bound by the Forum Selection Clause. As for

14          Defendant Lijun *Chen, he was not even an employee of Dangdang*

15          *when the ADSs were issued*. (*See id*. at ¶ 17). There is therefore no

16          basis on which the Court can find that enforcement of the Forum

17          Selection Clause would have been foreseeable to Mr. Chen.

18          Finally, insofar as the Unserved Defendants are relevant to the

19          instant motion, the Amended Complaint does not offer any

20          indication that either Ruby Rong Lu, Ke Zhang, or Xiaolong Li

21          should have foreseen being bound by the Forum Selection Clause.

22          *Although the Amended Complaint makes clear that the Unserved*

23          *Defendants played an active role in the Merger (see id. at ¶¶ 20-22), it*

24          *offers no insight into what role, if any, they played in the issuance of the*

25          *ADSs, which is the relevant transaction for the Forum Selection Clause*

26          *. . . . Accordingly, the Court finds that the Forum Selection Clause may*

27          *only be enforced against the signatory--Dangdang--and non-signatories*

28          *DHC, Guoqing Li, Peggy Yu Yu, and Min Kan.*

29   *Fasano III*, 482 F.Supp.3d at 171-72 (emphasis added).

30           In sum, the court found that, given that the ADRs' Forum Selection

31   Clause was applicable to only half of plaintiffs' claims and to only five of the 13

1    named defendants, the public interest factors relied on in *Fasano I* continued to favor

2    dismissal on the ground of forum non conveniens.  Dismissing the action on that

3    basis, the court denied defendants' Rule 12(b)(6) motion to dismiss as moot.

4           This appeal followed.


## II.  DISCUSSION


6           On appeal, plaintiffs contend principally (a) that the district court

7    disregarded the mandate of *Fasano II*, which they characterize as ordering the district

8    court simply to find their choice of forum controlling because of the ADRs' Forum

9    Selection Clause, and (b) that the court erred in, *inter alia*, interpreting the scope of the

10   Clause and the relationship of certain of the defendants to the matters within that

11   Clause.  While we reverse the decision to dismiss for forum non conveniens, we do

12   not view the district court as having disregarded the mandate of *Fasano II*, which was

13   to consider "whether" the presumption of enforceability is applicable to the ADRs'

14   Forum Selection Clause, "whether" that Clause is applicable to the ADRs' non-

15   signatories, and "whether" the presumption of enforceability was rebutted as

16   "unreasonable, unjust, or the product of fraud or overreaching."  *Fasano II*, 921 F.3d

19

1    at 337.  We reject some of the conclusions reached by the district court after exploring

2    those questions.

3              We conclude principally, for the reasons that follow, that the district

4    court gave the forum selection clause an unwarrantedly narrow interpretation and

5    thereby undercounted the non-signatory defendants who should be covered by the

6    ADRs' Forum Selection Clause; and that the court erred in weighing the public

7    interest factors by attributing undue weight to a Cayman Islands interest in deciding

8    plaintiffs' claims, given that the controlling contract requires all common-law claims

9    to be submitted to arbitration in New York, and giving insufficient weight to the

10   public interest in not having unsettled questions of United States securities laws

11   resolved by a foreign court.

12   A.  *Forum Avoidance and Selection Principles*

13             Under the principle of forum non conveniens, "a court may resist

14   imposition upon its jurisdiction even when jurisdiction is authorized by the letter of

15   a general venue statute."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  "[I]t has not

16   been attempted to catalogue the circumstances which will justify or require either

17   grant or denial of" a motion to dismiss for forum non conveniens; the "doctrine leaves

1    much to the discretion of the court to which plaintiff resorts." *Id*. at 508.  Generally,

2    the court faced with such a motion may be required to consider both the public

3    interest and the private interests of the litigants.  Private interests may include such

4    factors as the relative ease of access to sources of evidence, the availability of

5    witnesses, and the enforceability of a judgment if one is obtained.  The public interest

6    may include such factors as court congestion, the interest in having local forums

7    decide local disputes, avoiding the imposition of jury duty on persons within a

8    community having little relation to the litigation, and a forum court's need to apply

9    unfamiliar principles of foreign law.  *See generally id*. at 508-09.

10    Ordinarily, "[t]he decision to dismiss a case on forum non conveniens

11    grounds lies wholly within the broad discretion of the district court and may be

12    overturned only when we believe that discretion has been clearly abused." *Iragorri*

13    *v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (internal quotation

14    marks omitted and emphasis omitted).  The court abuses its discretion in ruling on

15    such a motion if "its decision (1) rests either on an error of law or on a clearly

16    erroneous finding of fact, or (2) cannot be located within the range of permissible

17    decisions, or (3) fails to consider all the relevant factors or unreasonably balances

1    those factors." *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 699-700 (2d

2    Cir. 2009) ("*Aguas Lenders*") (internal quotation marks omitted).

3            The forum non conveniens "calculus changes, however, when the parties'

4    contract contains a valid forum-selection clause, which represents the parties'

5    agreement as to the most proper forum." *Atlantic Marine Construction Co., Inc. v. U.S.*

6    *District Court for the Western District of Texas*, 571 U.S. 49, 63 (2013) ("*Atlantic Marine*")

7    (internal quotation marks omitted). "Whatever 'inconvenience' [a party] would suffer

8    by being forced to litigate in the contractual forum as it agreed to do was clearly

9    foreseeable at the time of contracting." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

10   17-18 (1972) ("*M/S Bremen*"). "The enforcement of valid forum-selection clauses,

11   bargained for by the parties, protects their legitimate expectations and furthers vital

12   interests of the justice system." *Atlantic Marine*, 571 U.S. at 63 (internal quotation

13   marks omitted). Thus, "where parties . . . agree in advance on a forum that is

14   exclusive of all others, the choice of forum is accorded the *M/S Bremen* presumption

15   of enforceability." *Aguas Lenders*, 585 F.3d at 700. That presumption may be rebutted

16   only if the objecting party "clearly show[s] that" the clause's "enforcement would be

17   unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

18   overreaching." *M/S Bremen*, 407 U.S. at 15.

22

1    In the face of a presumptively valid forum selection clause, a showing

2    of mere inconvenience to parties or witnesses is not sufficient; indeed, the court

3    should consider arguments about "public-interest factors only," for "*[w]hen parties*

4    *agree to a forum-selection clause, they waive the right to challenge the preselected forum as*

5    *inconvenient or less convenient* for themselves or their witnesses, or for their pursuit of

6    the litigation." *Atlantic Marine*, 571 U.S. at 64 (emphasis added).

7    The district court here found that "there is no dispute between the parties

8    as to whether the Forum Selection Clause at issue in this action either was

9    unreasonably communicated or is mandatory." *Fasano III*, 482 F.Supp.3d at 172-73.

10   Thus, the only question as to its presumptive validity was the extent to which the

11   Clause covered the claims and the parties.

12   B.  *The ADRs' Forum Selection Clause*

13   The forum selection clause at issue in this action, which is part of the

14   arbitration clause set out in the Deposit Agreement for the ADRs evidencing

15   Dangdang ADSs, provides in pertinent part as follows:

16       (a) *Any controversy, claim or cause of action* brought by any
17       party hereto against the Company *arising out of or relating to* the
18       Shares or other Deposited Securities, *the American Depositary*

23

*Shares*, the Receipts or the Deposit Agreement, or the breach thereof *shall be settled by arbitration* in accordance with the International Arbitration rules of the American Arbitration Association . . . ; provided, however, . . . that *any such controversy, claim or cause of action . . . relating to or based upon the provisions of the Federal securities laws of the United States* or the rules and regulations promulgated thereunder shall *be submitted to arbitration . . . if, but only if, so elected by the claimant.*

*The place of the arbitration shall be the City of New York, State of New York . . . .*

(b) *Any controversy, claim or cause of action arising out of or relating to . . .* the American Depositary Shares . . . *not subject to arbitration . . . shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York.*

(Deposit Agreement's Exhibit A § 23 (emphases added).)

### 1. *Covered Claims*

As quoted above, in connection with any asserted violations of federal securities statutes or regulations ("Federal Securities Claims"), the arbitration clause-- instead of repeating the "arising out of or relating to" phrases or the "American Depositary Shares" frame of reference--simply refers retrospectively to "*any such controversy, claim or cause of action.*"  Thus, in both respects the scope of the arbitration clause also defines the scope of the Federal Securities Claims that are to

24

1    be arbitrated--or that a claimant may instead choose to pursue by litigation in

2    Manhattan.  Accordingly, Federal Securities Claims come within the ADRs' Forum

3    Selection Clause if they present controversies, claims, or causes of action arising out

4    of, or relating to, the Dangdang ADSs.

5          The district court, however, in assessing which of plaintiffs' claims are

6    covered by the Clause, stated that "the relevant transaction for the Forum Selection

7    Clause" is "*the issuance of* the ADSs."  *Fasano III*, 482 F.Supp.3d at 172 (emphasis

8    added).  We have two fundamental difficulties with this view.

9          First, the Clause's frame-of-reference language does not mention the

10   "issuance of" Dangdang's ADSs; it refers to the ADSs themselves and thus covers

11   Federal Securities Claims arising out of or relating to any aspect or treatment of the

12   American Depositary Shares.  The phrases "arising out of or relating to" are "broad

13   language" of expansive (albeit not unlimited) reach.  *Roby v. Corporation of Lloyd's*, 996

14   F.2d 1353, 1359 (2d Cir. 1993) ("*Roby*").  Indeed, Defendants themselves state that the

15   Dangdang ADRs' "arbitration clause . . . deserves a broad reading."  (Defendants' brief

16   on appeal at 20 n.7.)

17         Second, while plaintiffs' amended complaint (like their original

18   complaint) asserts a claim under § 13 of the Exchange Act, a statute that requires

1    periodic reporting by securities issuers, *see* 15 U.S.C. § 78m(a), plaintiffs assert claims

2    under subsection (e), which is titled "*Purchase* of securities by issuer," *id.* § 78m(e)

3    (emphasis added).  That subsection does not govern actions with regard to shares at

4    the time of their issuance.  And indeed, plaintiffs complain not about the issuance of

5    Dangdang's American Depositary Shares but rather about the ADSs' confiscation.

6          The district court recognized that plaintiffs were complaining about the

7    going-private merger; but because it viewed only the "*issuance* of the ADSs . . . [a]s the

8    relevant transaction for the Forum Selection Clause," *Fasano III*, 482 F.Supp.3d at 172

9    (emphasis added), it erroneously found that "the Forum Selection Clause bears no

10    direct connection to the Merger," *id.* at 172 n.7.  Claims and controversies concerning

11    Defendants' actions forcing holders of ADSs to sell or lose their ADSs plainly relate

12    to the ADSs.

13          We also note that the amended complaint adds claims invoking §§ 10

14    and 20 of the Exchange Act and rules thereunder.  The focus of those provisions,

15    whether or not they are apposite here, is not limited to securities' issuance.  Whether

16    or not any of plaintiffs' Federal Securities Claims states a cause of action--indeed, this

17    Court has not determined whether an implied right of action is even available under

18    § 13(e)--the amended complaint alleging the unlawful, fraudulent, or unfair

1    deprivation of plaintiffs' ADSs plainly presents controversies whose substance falls

2    well within the ADRs' Forum Selection Clause frame of reference and are, in the

3    words of *Roby*, 996 F.2d at 1361, "undoubtedly related to" Dangdang's ADSs.

4         2. *Covered Parties*

5              The district court's unduly narrow focus on the Dangdang ADSs'

6    issuance also infected its conclusion as to what parties the Forum Selection Clause

7    covers.  It stated that the five served defendants other than "the signatory--Dangdang-

8    -and non-signatories DHC, Guoqing Li, Peggy Yu Yu, and Min Kan" could not be

9    covered by the Clause because there was no indication that they had any connection

10   with the 2010 issuance or listing of the ADSs and thus could not have "*foreseen* being

11   bound by [the] Forum Selection Clause in a contract to which they had no connection,

12   merely because they participated in a merger six years *after* the formation of the

13   Deposit Agreement."  *Fasano III*, 482 F.Supp.3d at 172 (emphases added).  But because

14   the complaint makes no claim about the issuance of the ADSs, there was no relevant

15   issue as to what might have been foreseen in connection with the "formation of the

16   Deposit Agreement."

1    The more pertinent question is whether these defendants could

2    plausibly, in this suit, claim to have been blind-sided by the Deposit Agreement's

3    Forum Selection Clause after participating in the going-private merger.  The record

4    strongly suggests these defendants' awareness of the contents of the Deposit

5    Agreement as the minority ADS holders were being informed that they were being

6    forced to sell or lose their ADSs.

7    The entities in question--the five served defendants that the district court

8    found not covered by the ADRs' Forum Selection Clause--were Yao, Chen, Kewen,

9    S&C, and First Profit.  All of them were among the entities identified in the Dangdang

10   proxy materials as the going-private-merger's "Buyer Group."  And those proxy

11   materials stated multiple times that various aspects of the plan's effect on the ADSs

12   were "*SUBJECT TO THE TERMS AND CONDITIONS OF* APPLICABLE LAW AND

13   *THE ADS DEPOSIT AGREEMENT*."  (*See*, *e.g.*, A.350, 361, 438 (capitalization in

14   original; emphases added); *see also id*. 345, 346, 435).

15   The district court properly recognized that an entity need not have been

16   a signatory to the contract to be covered by a forum selection clause.  *See Fasano III*,

17   482 F.Supp.3d at 170.  "[T]he fact a party is a non-signatory to an agreement is

18   insufficient, standing alone, to preclude enforcement of a forum selection clause."

28

1    *Aguas Lenders*, 585 F.3d at 701.  To date, this Court has declined to adopt a standard

2    governing precisely "when a signatory may enforce a forum selection clause against

3    a non-signatory."  *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 n.10

4    (2d Cir. 2013) ("*Magi XXI*").  Nonetheless, we have permitted non-signatories to an

5    agreement to be bound by, and to enforce, forum selection clauses where, under the

6    circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute

7    or to another signatory such that it was foreseeable that they would be bound.  *Aguas*

8    *Lenders*, 585 F.3d at 701 (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.

9    1993)); *see also Magi XXI*, 714 F.3d at 723 (holding that a *non*-signatory may enforce a

10   forum selection clause against a signatory where the non-signatory is "closely related"

11   to a signatory).  In *Aguas Lenders*, we identified several circumstances that could

12   trigger such a result, citing, *inter alia*,

13   　　　　　*Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757-58
14   　　　　　(8th Cir.2001) (holding non-signatories were bound by forum
15   　　　　　selection clause because *non-signatories were "closely related" to the*
16   　　　　　*signatory* or had acquiesced to clause by voluntarily bringing suit
17   　　　　　with signatories); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d
18   　　　　　1285, 1299 (11th Cir.1998) (holding non-signatories bound to
19   　　　　　forum selection clause on grounds that the non-signatories, who
20   　　　　　had *provided letters of credit* to signatories, had interests in the
21   　　　　　litigation that were "directly related to, if not predicated upon"
22   　　　　　those of the signatories (citation omitted)); . . . *Bonny v. Soc'y of*
23   　　　　　*Lloyd's*, 3 F.3d 156, 162-63 (7th Cir.1993) (subjecting non-

1    contracting defendants to forum selection clause because *integrally*
2    *related to contracting defendants* such that suit should be kept in a
3    single forum).

4    *Aguas Lenders*, 585 F.3d at 701 (emphases ours).

5    In the present case, Kewen, S&C, and First Profit fit neatly into the above

6    parade of nonsignatories bound by a forum selection clause; they were investment

7    vehicles involved in the going-private merger. And Kewen and S&C, respectively,

8    were wholly owned and 60% owned by Li, Dangdang's largest stockholder.

9    But little more need be said about any of the served Defendants'

10   connection to the subject matter of this action, and the propriety of finding the ADRs'

11   Forum Selection Clause applicable to them, than that they were in the "Buyer Group"

12   that caused plaintiffs' ADSs to be eliminated, and that it was repeatedly stated that

13   they would do so "SUBJECT TO THE TERMS AND CONDITIONS OF . . . THE ADS

14   DEPOSIT AGREEMENT"--the contract that contains the Forum Selection Clause.

15   Plainly, then, it was reasonably foreseeable to any member of the "Buyer Group" that

16   they would be subject to the underlying deposit agreement, and therefore its Forum

17   Selection Clause.

18   We thus conclude that all 10 of the served defendants are covered by the

19   ADRs' Forum Selection Clause.

30

1       3. *The Public Interest*

2       The district court concluded that despite Defendants' inability to rebut

3  the presumptive enforceability of the ADRs' Forum Selection Clause, *see Fasano III*,

4  482 F.Supp.3d at 173, this action should be dismissed for forum non conveniens based

5  on public interest factors, *see id*. at 173-77.  The court relied principally on its findings

6  that only five of 13 defendants are covered by the Clause, and that only plaintiffs'

7  Federal Securities Claims are covered, with their common-law claims being governed

8  by Cayman Islands law; on the court's reluctance "to bifurcate the instant action

9  between those claims and parties that are covered by the Forum Selection Clause and

10  those that are not," *id*. at 173; and on the "Cayman Islands['] . . . interest in having this

11  localized controversy decided at home," *id*. at 176.  None of these rationales can bear

12  the weight placed on them.

13       First, the court's erroneous interpretation of the ADRs' Forum Selection

14  Clause led it to err in finding that half of the served defendants are not covered by the

15  Clause.  As discussed in the preceding section, all of the served defendants other than

16  Dangdang were in the Buyer Group for the going-private merger that eliminated

17  plaintiffs' Dangdang ADSs and are covered by the Clause.  The three unserved

18  defendants, who may or may not be covered by the Clause (the district court stated

1    that according to the amended complaint they "clear[ly] . . . played an active role in

2    the Merger," *Fasano III*, 482 F.Supp.3d at 172), are not necessary parties; their status

3    is not a basis for dismissing this action for forum non conveniens.

4              Second, the court's reliance on the fact that only half of plaintiffs' claims

5    are covered by the ADRs' Forum Selection Clause seems to have envisioned that a

6    forum-non-conveniens dismissal could avoid "bifurcation" of the case.  But the

7    avoidance of bifurcation is not possible if plaintiffs insist on their rights under the

8    Deposit Agreement to have their Federal Securities Claims litigated in court, because

9    all of their other claims must, according to that Agreement, be submitted to

10   arbitration.

11             Third, although plaintiffs' common-law claims such as breach of

12   fiduciary duty are likely governed by Cayman Islands law given Dangdang's

13   incorporation in the Cayman Islands, the district court's forum-non-conveniens

14   dismissal cannot serve the Cayman Islands' interest in having those claims "decided

15   at home" because those claims are required to be submitted to arbitration, and the

16   Deposit Agreement provides that the "place of the arbitration shall be The City of

17   New York, State of New York."  (Deposit Agreement's Exhibit A § 23.)

1          Finally, because plaintiffs' common-law claims can be pursued only in

2   a New York arbitration, after a forum-non-conveniens dismissal the only claims to be

3   determined in the Cayman Islands would be plaintiffs' Federal Securities Claims.  We

4   cannot see any genuine interest of the Cayman Islands in adjudicating United States

5   Federal Securities Claims.  In contrast, the United States has a vital interest in having

6   its own courts decide whether to imply a private right of action under § 13(e) of the

7   Exchange Act.

8          In sum, the public interest factors cannot justify a forum-non-conveniens

9   dismissal.

10  C.  *Plaintiffs' Request To Preclude a Rule 12(b)(6) Motion*

11         The district court, after concluding that a dismissal for forum non

12  conveniens was appropriate, denied as moot Defendants' alternative motion under

13  Rule 12(b)(6) to dismiss the amended complaint for failure to state a claim.  The

14  district court may now address that motion.

15         We reject plaintiffs' contention that, under Rule 12 of the Federal Rules

16  of Civil Procedure, Defendants' waived the right to make such a motion because they

17  did not combine it with their "initial *forum non conveniens* motion" on "March 15, 2017"

1    (Plaintiffs' brief on appeal at 49).  In support of that contention, plaintiffs assert that

2    a forum-non-conveniens motion is one under Rule 12(b)(3) to dismiss for "improper

3    venue"; that Rule 12(g)(2) states that "a party that makes a motion under this rule

4    must not make another motion under this rule raising a defense or objection that was

5    available to the party but omitted from its earlier motion"; and that the district court

6    should not have allowed Defendants to file a Rule 12(b)(6) motion with their second

7    forum-non-conveniens motion.  (Plaintiffs' brief on appeal at 49-50.)  This contention

8    does not warrant extended discussion.

9          First, plaintiffs filed their amended complaint in 2019.  A motion to

10    dismiss the amended complaint obviously was not "available" to Defendants in 2017.

11          Second, a forum-non-conveniens motion is not "a motion under" Rule 12.

12    Rule 12(b)(3) deals with improper venue.  But "a forum non conveniens motion does

13    not rest on an assertion that venue is improper--the concern of a motion under

14    Rule 12(b)(3)--but instead asks the court to relinquish the action in favor of another

15    court."  5C Wright & Miller, *Federal Practice and Procedure* § 1386 (3d ed. 2022).

16          Third, the Rule 12 defenses that are waived by a failure to assert them

17    early are only those "listed in Rule 12(b)(2)-(5)."  Fed. R. Civ. P. 12(h)(1).  Rule 12 itself

1    provides that a Rule 12(b)(6) defense of "[f]ailure to state a claim upon which relief

2    can be granted . . . may be raised . . . at trial." *Id*. Rule 12(h)(2)(C).


3                                      CONCLUSION


4         We have considered all of Defendants' arguments in support of the

5    judgment and plaintiffs' arguments for precluding Defendants from pursuing a

6    motion to dismiss under Rule 12(b)(6), and have found them to be without merit.  The

7    judgment is vacated and the matter is remanded for the district court to consider

8    Defendants' motion to dismiss for failure to state a claim.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

35