M9M7FASC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOE FASANO; ALTIMEO OPTIMUM
FUND; ALTIMEO ASSET
MANAGEMENT; Individually and
on Behalf of All Others
Similarly Situated,

                Plaintiffs,

           v.                            16 Civ. 8759 KPF)

GUOQING LI; PEGGY YU YU;
DANGDANG HOLDING COMPANY,
LTD.; E-COMMERCE CHINA
DANGDANG, INC.; KEWEN HOLDING
CO. LTD.; SCIENCE & CULTURE
INTERNATIONAL LTD.; FIRST
PROFIT MANAGEMENT, LTD.;
DANQUIAN YAO; LIJUN CHEN; MIN
KAN; RUBY RONG LU; KE ZHANG;
and XIAOLONG LI,
                                         Remote Conference
                Defendants.

------------------------------x
                                         New York, N.Y.
                                         September 22, 2022
                                         2:05 p.m.
Before:

              HON. KATHERINE POLK FAILLA,

                                         District Judge

                      APPEARANCES

SADIS & GOLDBERG, LLP
     Attorneys for Plaintiffs
BY:  SAMUEL J. LIEBERMAN
     BEN HUTMAN


SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
     Attorney for Defendants
BY:  JAMES W. BROWN
     JAKE MEISELES
```

1                  (Case called)
2                  THE DEPUTY CLERK:  Counsel, please state your name for
3      the record, beginning with plaintiff.
4                  MR. LIEBERMAN:  Good morning, your Honor.
5                  For the plaintiffs, Sam Lieberman of Sadis & Goldberg,
6      LLP, and with me is my partner, Ben Hutman.
7                  THE COURT:  All right.  Good afternoon to both of you.
8      And thank you very much.  Representing the defendants?
9                  MR. BROWN:  For the defendants is James Brown of
10     Skadden Arps.  With me is my colleague Jake Meiseles.
11                 Good morning.
12                 THE COURT:  Good morning, although I think it's
13     afternoon where I am.  But perhaps you guys are somewhere in a
14     different time zone.  But thank you very much for participating
15     in the call.
16                 Mr. Brown, I'm disappointed Mr. Musoff is not on the
17     line with you, because then I could ask him how many times I am
18     going to get reversed because of arguments he's asked me or his
19     predecessor counsel have asked me to make.  But I've lost that
20     opportunity.  And, really, it doesn't have the same effect
21     going to you, so I'll refrain from asking the question.
22                 Mr. Brown, I'm advised by Mr. Hutman that they have
23     thoughts about a motion to compel arbitration.
24                 Have you received their letter of September 19?
25                 MR. BROWN:  We did, your Honor.

1          THE COURT:  Okay.  And I, of course, just set a
2    conference on the 20th, so I can understand there wasn't a
3    whole lot of time to respond.
4          Have they accurately described your position, sir?
5          MR. BROWN:  They have.
6          THE COURT:  May I understand, please, your thoughts
7    about what, if any, motion practice should ensue?
8          MR. BROWN:  Well, as I understand the mandate from the
9    Second Circuit, the first thing we should be doing is reaching
10   and considering the motion under 12(b)(6) that was filed back a
11   few years ago.  And second, as to motion practice around
12   arbitration, the plaintiff's, understandably, want to make a
13   motion to compel arbitration.  We would oppose that.  In fact,
14   we would move to stay arbitration.
15         THE COURT:  Okay.  Let me hear a little bit more about
16   that.  Is that because -- well, in the first instance, sir, is
17   that because you believe that your earlier filed motion to
18   dismiss will be successful?
19         MR. BROWN:  Among other things, yes.  The other
20   grounds for staying the arbitration is that while there is --
21   no matter what there is as to a contractual right to arbitrate,
22   the law is clear that such a right may be waived.  And we
23   believe it's very clear that over this past six years that the
24   plaintiff has waived any right to arbitrate.  The law in the
25   Second Circuit is that that can be an explicit or an implicit

1     waiver, and I think we have both here.

2              THE COURT:  I might -- and speaking only for myself, I
3     might not disagree with you.  But I suppose that the real issue
4     is, what am I to do with this language from the decision?  Your
5     focus, understandably, is on the mandate.  But I've got a whole
6     lot of language in the decision that suggests that the
7     arbitration clause is mandatory and that the common law claims
8     need to be arbitrated.

9              MR. BROWN:  Well, if we rolled the clock back to 2019,
10    I'd agree with you.  But having brought their claims before
11    this Court, argued repeatedly that this Court is the only
12    possible place they can have them and the only possible place
13    they want them, I think they've waived that.

14             I, mean three years ago, your Honor saw this
15    gamesmanship coming.  After the first remand, your Honor
16    specifically asked both counsel, If this isn't dismissed on
17    *forum non*, am I going to see a motion to compel arbitration?
18    And both parties said no; unequivocally no.  That's waiver.
19    And I totally understand that the Second Circuit, reading the
20    contract, says these claims should have only been brought in
21    arbitration.  That is an accurate statement.  But having not
22    done that, having six years of litigation behind us now, having
23    both courts reach what law is likely applicable to their
24    claims, having the experts talk about the many defects in their
25    Cayman Law claims, having them disavowed, bringing claims under

New York law, we're too deep.  We're too far in, six years later, to now switch horses and say goodbye to your Honor and start anew with a brand new case in arbitration.

THE COURT:  Okay.  Mr. Brown, before I turn to Mr. Lieberman, is it your contemplation that I should be deciding the 12(b)(6) motion as it was filed with no supplement to it from the parties or something else?

MR. BROWN:  Well, we've given some thought to that, your Honor.  I do think, especially if there hasn't been any watershed changes in the applicable law in the intervening three years, I do think it can be reached and determined right on the briefs we have already filed back at the end of 2019.

However, I do understand -- if your Honor wishes, I would suggest maybe a three-page letter of any supplemental authorities since then that the parties might want to bring to the attention of the Court on a fairly rapid time frame—a couple of weeks apiece—to do that, even simultaneously if need be, just to make sure we have the most up-to-date record possible.  But I don't think we need to have all new rounds of affidavits from Cayman Law experts on choice of law and all new briefs from the start for the next few months.

THE COURT:  Okay.  Let me just ask you, while I have your attention, Mr. Brown, if Mr. Lieberman thinks otherwise and believes that the briefing needs to begin anew, would you then want that opportunity or would you still be standing on

1   your submission with perhaps a three-page supplement?

2              MR. BROWN:  Well, your Honor, it's an excellent
3   question, but it would almost depend on what they said in an
4   entirely new briefing.  If they stuck to the same arguments and
5   the same authorities that they used last time, then we wouldn't
6   have anything new to argue.  But if to the extent they tried to
7   put in new arguments, new authorities, new something, then we
8   would probably want to meet that head on.

9              THE COURT:  Okay.  All right.  Thank you.

10             And Mr. Lieberman, I appreciate your patience, sir.
11  Mr. Lieberman, why don't you engage with the issue that I was
12  just discussing with Mr. Brown, which is the motion to dismiss.
13  Is it your belief, sir, that I should not even consider the
14  motion to dismiss and just go straight to the motion to compel
15  arbitration or something else?

16             MR. LIEBERMAN:  Well, I think forum generally precedes
17  the merits.  So I think addressing the motion to compel
18  arbitration should precede it.  We do believe in an expeditious
19  resolution of this action, but there's been new law.  And I
20  would start this call where your Honor started with Mr. Brown
21  and really ask him that he's saying when he's saying the law is
22  very clear, because there's been a couple of arguments with
23  respect to your Honor with respect to dismissal *in forum non*
24  *conveniens* here, which were just wrong; right?  And that's what
25  they did; they put that in front of you.  Now they're saying

there's a clear waiver.  There's not.  And you know that from *Murray v. UBS Securities* where you rejected the argument that the fact that someone filed a motion to dismiss under 12(b)(6) does not create a waiver.

THE COURT:  Sir, I'm going to pause you there.

In *Murray v. UBS*, I never asked the parties if they were going to be filing a motion to compel arbitration afterwards.  There was a motion to dismiss based on -- that ended up, actually, ultimately being found later—years later—by the Supreme Court.  So I'm not sure *Murray* is the way you want to go.  I want you also to just look at the conclusion of the decision where they say the matter is remanded for the district court to consider defendant's motion to dismiss for failure to state a claim despite the many, many references to arbitration in Judge Kearse's decision.

That's where I am with the mandate.  Why don't I begin there.

MR. LIEBERMAN:  Well, I do think they want you to consider the 12(b)(6) --

THE COURT:  Okay.

MR. LIEBERMAN:  -- with respect to the posture.  But what's changed is, the Court has decided an interpretation of the arbitration clause that is different from the one we advanced.  You asked us, "Would we see a motion for arbitration?"  We said no, because our interpretation of the

1   forum and arbitration clauses were that all of our claims
2   related to the securities law claims.
3           But that is not how the Second Circuit saw it.  The
4   Second Circuit saw it differently.  The Second Circuit said
5   securities law claims, there's a right, if plaintiff insists,
6   to go forward in federal court.  And then as to the common law
7   claims, the Court concluded otherwise.  That's different from
8   what we argued.
9           So, yes, based on our understanding of the clause, we
10  advanced a decision at that time.  But I don't think that
11  creates waiver where we are now, which is, we do not even have
12  a Rule 12(b)(6) motion decided.  And I think that I would
13  wonder why there would be a waiver where there's an intervening
14  decision by the Court that actually interprets the provision --
15  which, unfortunately, we didn't get it interpreted on the first
16  appeal, and then we got it on the second appeal.  And now that
17  decision is there.  So I don't think there's waiver because
18  someone didn't understand the clause here.  I mean, there would
19  be all sorts of waiver arguments that could be made for all the
20  different parties here who haven't gotten the clause right.
21  Here we are.  And for whatever reason, we're at the 12(b)(6)
22  stage without a decision.  And I don't think there's waiver at
23  that point.
24          Our position has been consistent throughout this
25  litigation, your Honor.  We want the clause enforced.  That's a

consistent position.  Here, now we have an interpretation of the clause that's been given by the Second Circuit, and we want the clause enforced.  So your Honor can try to say, well, I asked something when the parties' decision were there.  I don't think that's how waiver works, and I just don't think that's going to pass a test.  They can brief it if they want to.  They can put that position forward.  I just don't think that's how waiver works.

We're here, they say, six years.  Okay.  We've had two sets of briefings primarily on the forum motion.  And that's also why we think there should be additional briefing on the merits.  Given your Honor's individual practices, having 25 pages, I think you may recall that most of the briefing was dedicated to *forum non*.  I think everyone would benefit from the briefing on that.  But if they want to take the position that there's been waiver, they can.

You're right, your Honor, *Murray v. UBS* is not exactly the same case.  There aren't a lot of direct comparators to specifically what we're dealing with here, but it is the general principle that a 12(b)(6) is not sufficient.  And I don't think some questioning at a time when the parties did not have an interpretation of the clause here will suffice either.  So I think the point is—I think it's clear now—that there is a right to arbitration.

And an interesting question is why the parties that

M9M7FASC

1   drafted the arbitration clause is running from it, but we'll
2   seek to enforce that right.
3          THE COURT:  Perhaps they're running because they never
4   believed that anyone, including the Second Circuit, would
5   interpret the clause that way.  But that's for another day.
6          On the issue of the 12(b)(6) motion, Mr. Lieberman, it
7   is your position that new briefing is needed because you do not
8   believe that your brief adequately engaged or devoted enough
9   space and time to the 12(b)(6) arguments.
10         Do I understand that correctly?
11         MR. LIEBERMAN:  Yes.  I do believe so.  We did our
12  best to bring them in but there were two substantive motions
13  with many parties.  And I think both as a drafter, there will
14  be better briefing you would get on the issues from that, and I
15  think the Court would benefit from that consideration.  I think
16  that we tried our best to fit it in the amount we had, but I
17  think a full briefing really is necessary.
18         THE COURT:  All right.  Is that briefing limited to
19  the motion to dismiss?  Or was it your contemplation—which
20  doesn't necessarily mean it will be mine—that that briefing
21  would include as well your motion to compel arbitration?
22         MR. LIEBERMAN:  Well, yeah.  That's a good question of
23  how you would like the briefing to go, your Honor.  And we're
24  happy to take your guidance.  But, yeah, we moved here because
25  we do think the motion to compel arbitration should be decided.

And that is a motion we intend to file, unless the Court orders otherwise. So I think that we should have briefing on the motion to compel arbitration.

They have not yet filed a preconference motion on the 12(b)(6) motion, but I understand from the mandate, you could interpret it, as well, there's something pending. So we would say that it is probably most efficient to have one set of briefs addressing both issues and we could also -- I think it may also be proper, if both of those issues are going to be addressed that, we may request leave for a few more pages just to ensure sufficient space beyond your Honor's individual rules. But we can provide that request in the proper format.

THE COURT: All right. Mr. Lieberman, earlier in your discussion, you mentioned what I'm going to refer to colloquially as the need for speed, wanting to move quickly on matters. And I did hear Mr. Brown mention that as well. I just need to manage all of your expectations.

The pandemic being in the stage that it is in, I am very, very deeply booked with civil and criminal trials for the entirety of the fourth quarter of this year and deep into the first quarter of next year. So, certainly, I'm going to get to your briefing when I can, but in case you're thinking this is something that's going to get decided this week, next week, in the near term, it's not, because there are many trials that have been rolled over repeatedly because of COVID that I can't

1    forget about.  So I just wanted everyone to think about that,
2    because that may influence the schedule that you're thinking
3    about.
4             Mr. Lieberman, before I return to Mr. Brown, is there
5    anything else you'd like me to know?
6             MR. LIEBERMAN:  I think that we could -- we understand
7    your Honor is not alone.  In fact, what your Honor is relating
8    with respect to the pandemic is pretty common across the
9    judiciary in New York.  So, we understand that.  And that's
10   something we've given some thought to.
11            I think from our perspective, we think a briefing
12   schedule is something the parties can put together.  We think
13   we'd want to get it briefed up for you as quickly as possible,
14   and then it would be for your Honor to decide.  And we
15   understand those points.  We think that's also another reason
16   weighing in favor of arbitration.  In the post-pandemic world,
17   arbitration has become a resource for crowded courts in the
18   respect of -- you know, it gives the parties another place to
19   go to address capacity that may be backed up.
20            THE COURT:  All right.  Mr. Lieberman, if that's the
21   argument you're going to preview, that's an argument that's
22   probably not going to work.  I need to know what I have to do,
23   not what might help my calendar.  But thank you.
24            All right.  Mr. Brown, it turns out that I can't not
25   have this motion to compel arbitration.  And I am accepting the

truth of what Mr. Lieberman is telling me, that he did not have the space and time he needed in the last round to respond adequately to the 12(b)(6). So, it is my inclination, sir—and I realize it's not yours—it's my inclination to have a cross motion to dismiss and to compel arbitration in a single briefing schedule. And, certainly, you can recycle as you deem appropriate your prior briefing or add to it based on what's happened since. I would allow 35 pages for the opening and the responsive brief, I think my -- actually, let me do this.

It would be my preference, Mr. Brown—but I'll listen to you on this—to have something akin to a call and response where you file your brief in support of a motion to dismiss, Mr. Lieberman files the opposition to that motion and the cross-motion to compel arbitration, you reply to your motion to dismiss and oppose his cross motion for arbitration, and then there is a reply from Mr. Lieberman regarding his motion to compel arbitration. So I'd prefer -- if I can be even more pointed, I'd prefer four briefs to six.

So is it possible, Mr. Brown, that you and Mr. Lieberman could work out a briefing schedule time-wise and page-limit-wise to accomplish that?

MR. BROWN: Short answer to the direct question, yes, absolutely. But I do want to make one clarifying point.

THE COURT: I want to hear it. Yes, sir.

MR. BROWN: In addition to the motion to dismiss and

1     in addition to the motion to compel, as I said earlier, we
2     think the arbitration should be stayed.  And rather than just
3     have a motion to compel fail, we would prefer -- to make the
4     record clear, we would prefer to move to stay at the same time
5     or in opposition, whether we call it a cross motion or a motion
6     to compel or an independent motion, however your Honor wishes
7     to put it into the matrix that you just described.
8             And I do understand having fewer briefs all in one
9     place, and I'm happy to do that.
10            And I just want to be clear that we do want to seek
11    affirmative relief of staying the arbitration.
12            THE COURT:  Fair enough.  But, I mean, how many pages
13    is that going to take to explain to me why a stay makes sense?
14            MR. BROWN:  Not many at all.
15            THE COURT:  Okay.  Fair enough.
16            So can I understand, Mr. Brown, that you and
17    Mr. Lieberman and your teams will confer—perhaps towards the
18    next week—and then this time next week—perhaps by Friday the
19    30th—to get me a proposed schedule and a <u>reasonable, reasonable</u>
20    addition to page limit?
21            MR. BROWN:  Sure.
22            THE COURT:  Okay.  All right.  Mr. Brown, sometimes
23    there's the question of hope triumphing over experience.
24    There's no benefit at this point to try to get an arbitrator or
25    mediator involved, right?  I have to do these motions?  I

1     suspect that's the answer.  But, again, I would be happy to
2     hear that the parties would be willing to do some form of ADR.
3              MR. BROWN:  I do think there is no hope.  I'm sorry to
4     say it that way, your Honor.  But for the same reason that
5     Mr. Lieberman doesn't want the case to go forward before your
6     Honor is why we do.  And it has nothing to do with COVID over
7     anything it has to do with -- the plaintiffs have already seen
8     your Honor and the Second Circuit say that their common law
9     claims are likely determined under Cayman Law.  And the same
10    reason they want to escape is the same reason we're saying, no,
11    let's just get there and get it decided and get this behind us.
12             THE COURT:  All right.  Well, everybody has a
13    position.  I understand it.  Again --
14             MR. LIEBERMAN:  Well, your Honor --
15             THE COURT:  No, no.  Mr. Lieberman, I don't need a
16    response.  Thank you.  Thank you so much for not responding.
17             Look, I'm just trying to actually decide something in
18    this case and have it sustained on appeal.  So, small steps
19    here.
20             All right.  I'll hear back from you on or before the
21    30th of September.  Let me wish to each of you safety and good
22    health during this pandemic.  And unless there's anything
23    further, I'm prepared to adjourn.
24             Mr. Lieberman, anything else to say?
25             MR. LIEBERMAN:  Not at this time, your Honor.

M9M7FASC

1       THE COURT:  All right.  Thank you.
2       MR. LIEBERMAN:  Thank you for your idea on the four
3  briefs.  I thought it makes a lot of sense.  So thank you for
4  your help on that.
5       THE COURT:  Of course.
6       Mr. Brown?
7       MR. BROWN:  Nothing further from us.  And I, too, wish
8  good health to the Court as well.
9       THE COURT:  All right.  Thank you all.
10       We are adjourned.
11       (Adjourned)