UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOE FASANO, *et al.*,                              :
                Plaintiffs,       :     16-cv-8759 (KPF)
                               :
               -v.-                    :
                               :
GUOQING LI, *et al.*,                              :
                Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND TO STAY ARBITRATION

Scott D. Musoff
James W. Brown
Skadden, Arps, Slate,
  Meagher & Flom LLP
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000
E-Mail:       scott.musoff@skadden.com
              james.brown@skadden.com

*Attorneys for Defendants*
  *E-Commerce China Dangdang, Inc.;*
  *Dangdang Holding Company Limited;*
  *Kewen Holding Company Limited;*
  *Science & Culture International Limited;*
  *First Profit Management Limited;*
  *Guoqing Li; Peggy Yu Yu; Danqian Yao;*
  *Lijun Chen; and Min Kan.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

I.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ......... 3

    A.   Plaintiffs' Federal Securities Law Claims Should be Dismissed on a
        Variety of Independent Grounds .................................................................... 3

        1.   There Is No Transaction Causation Or Loss Causation ........................... 3

        2.   There Is No Actionable Misstatement or Omission ................................. 7

        3.   The Section 10(b) Claim Fails for Lack of a Purchase or Sale ............... 11

        4.   The Section 10(b) Claim Also Fails for Lack of Scienter ....................... 12

        5.   The Court Should Not Create An Implied Private Right of Action
            Under Section 13(e) ............................................................................... 12

        6.   The Section 20(a) Claim Should Be Dismissed ...................................... 13

        7.   Under *Morrison,* Plaintiffs' Federal Securities Claims Do Not
            Reach This Extraterritorial Transaction .................................................. 14

    B.   Plaintiffs' Common Law Claims Should be Dismissed As They Are
        Governed by Cayman Islands Law, Which Plaintiffs Disclaim ........................... 16

    C.   Count IV, Alleging Negligent Misrepresentation, Should Be Dismissed ............ 18

    D.   Count V, Alleging Breach of Fiduciary Duty, Should Be Dismissed ................... 19

II.   ARBITRATION SHOULD BE STAYED ..................................................................... 20

    A.   Plaintiffs Have Waived Any Contractual Right to Arbitrate ............................... 20

        1.   Plaintiffs Have Explicitly Waived Arbitration ........................................ 21

        2.   Alternatively, Plaintiffs Have Implicitly Waived Arbitration ................. 22

    B.   Plaintiffs' Arbitration Claims Are Time Barred .................................................. 23

        1.   Plaintiffs' Claims Accrued More Than Six Years Ago ............................ 23

        2.   The Limitation Periods Were Not Tolled ................................................ 26

    C.   Plaintiffs' Class Claims Are Not Arbitrable ....................................................... 28

D.     This Court Should Decide All Issues of Arbitrability ...........................................29

CONCLUSION...................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) .............................................................................................15

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........................................................................................................13

*Altimeo Asset Management v. WuXi PharmaTech (Cayman) Inc.*,
No. 19-cv-1654 (AJN), 2020 WL 6063539 (S.D.N.Y. Oct. 14, 2020) ..............................9

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ........................................................................................................27

*Apollo Theater Foundation, Inc. v. Western International Syndication*,
No. 02 Civ. 10037(DLC), 2004 WL 1375557 (S.D.N.Y. June 21, 2004) ........................21

*Apple & Eve, LLC v. Yantai North Andre Juice Co.*,
610 F. Supp. 2d 226 (E.D.N.Y. 2009) ............................................................................23

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ........................................................................................................29

*Atherton v. Federal Deposit Insurance Corp.*,
519 U.S. 213 (1997) ...................................................................................................17, 18

*Austin v. Fordham University*,
No. 21-CV-6421 (JPO), 2022 WL 4626485 (S.D.N.Y. Sept. 30, 2022) ........................24

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ..........................................................................................................4

*Berg v. First American Bankshares, Inc.*,
No. 83-3887, 1985 WL 2232 (D.D.C. Apr. 17, 1985), *aff'd*, 796 F.2d 489
(D.C. Cir. 1986) ..............................................................................................................13

*Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
448 F.3d 573 (2d Cir. 2006) ...........................................................................................21

*BG Group, PLC v. Republic of Argentina*,
572 U.S. 25 (2014) ..........................................................................................................29

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ........................................................................................................11

iii

*Boylan v. Sogou Inc.*,
    No. 21 Civ. 2041 (PGG), 2021 WL 4198254 (S.D.N.Y. Sept. 13, 2021) ........................13

*Bratusov v. Comscore, Inc.*,
    19-cv-3210 (KPF), 2020 WL 3447989 (S.D.N.Y. June 24, 2020) ....................................14

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
    137 S. Ct. 2042 (2017) ....................................................................................................24

*Capricorn Investors III, L.P. v. CoolBrands International, Inc.*,
    66 A.D.3d 409 (1st Dep't 2009) ......................................................................................19

*Cartica Management, LLC v. Corpbanca, S.A.*,
    50 F. Supp. 3d 477 (S.D.N.Y. 2014).................................................................................11

*Celsion Corp. v. Stearns Management Corp.*,
    157 F. Supp. 2d 942 (N.D. Ill. 2001) ...............................................................................15

*Chen-Oster v. Goldman, Sachs & Co.*,
    785 F. Supp. 2d 394 (S.D.N.Y. 2011), *rev'd on other grounds sub nom.*
    *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013)........................................30

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ...............................................................................................27, 28

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014).............................................................................................14

*Coffee v. General Motors Acceptance Corp.*,
    30 F. Supp. 2d 1376 (S.D. Ga. 1998)...............................................................................25

*Commerzbank AG v. U.S. Bank National Ass'n*,
    457 F. Supp. 3d 233 (S.D.N.Y. 2020)..............................................................................24

*In re Corning, Inc. Securities Litigation*,
    349 F. Supp. 2d 698 (S.D.N.Y. 2004)..............................................................................10

*Cotton v. McCarthy*,
    383 F. App'x 26 (2d Cir. 2010) .........................................................................................2

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983).........................................................................................................27

*Doctor's Associates, Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995)...............................................................................................20

*Fasano v. Li*,
    47 F.4th 91 (2d Cir. 2022) ...............................................................................................29

*Fasano v. Yu Yu*,
   921 F.3d 333 (2d Cir. 2019)................................................................................29

*Feiner Family Trust v. VBI Corp.*,
   No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ..........................19

*Ferring B.V. v. Allergan, Inc.*,
   932 F. Supp. 2d 493 (S.D.N.Y. 2013)................................................................26

*Fisher v. Plessey Co.*,
   No. 82 Civ. 1183, 1983 WL 1328 (S.D.N.Y. June 22, 1983)...........................................13

*Fonseca v. USG Insurance Services, Inc.*,
   467 F. App'x 260 (5th Cir. 2012) ...........................................................................26

*Gilmore v. Shearson/American Express Inc.*,
   811 F.2d 108 (2d Cir. 1987), *abrogated on other grounds by McDonnell Douglas
   Finance Corp. v. Pennsylvania Power & Light Co.*, 849 F.2d 761 (2d Cir. 1988) ..........21

*Gomez v. City of New York*,
   No. 14 CIV. 05932 (CM), 2016 WL 5115499 (S.D.N.Y. Sept. 16, 2016)......................18

*Grace v. Rosenstock*,
   228 F.3d 40 (2d Cir. 2000)......................................................................................7

*Gurfein v. Ameritrade, Inc.*,
   411 F. Supp. 2d 416 (S.D.N.Y. 2006)...............................................................12

*Hahn v. Breed*,
   587 F. Supp. 1369 (S.D.N.Y. 1984)..................................................................17

*Holzman v. Guoqiang Xin*,
   No. 12-cv-8405 (AJN), 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ...........................17

*Honua Fifth Avenue LLC v. 400 Fifth Realty LLC*,
   111 A.D.3d 579 (1st Dep't 2013) ......................................................................25

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)..................................................................................................29

*In re iAnthus Capital Holdings, Inc. Securities Litigation*,
   20-cv-3135 (LAK), 2021 WL 3863372 (S.D.N.Y. Aug. 30, 2021)................................15

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) .......................................................................................24, 25

*Individual Securities, Ltd. v. Ross*,
   152 F.3d 918 (table), 1998 WL 385835 (2d Cir. 1998)...................................................26

*Johnson v. Nextel Communications Inc.*,
   780 F.3d 128 (2d Cir. 2015)....................................................................................16

*In re JP Morgan Auction Rate Securities (ARS) Marketing Litigation*,
   Nos. 10 MD 2157(PGG), 10 Civ. 4552 (PGG), 2014 WL 4953554 (S.D.N.Y.
   Sept. 30, 2014) .........................................................................................................9

*In re Jumei International Holding Ltd. Securities Litigation*,
   No. 14cv9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017)......................................10

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).....................................................................................12

*Kalyanaram v. American Ass'n of University Professors at the New York Institute of
   Technology, Inc.*,
   742 F.3d 42 (2d Cir. 2014).......................................................................................26

*Kaufman v. Cohen*,
   307 A.D.2d 113 (1st Dep't 2003) .............................................................................24

*Kramer v. Hammond*,
   943 F.2d 176 (2d Cir. 1991).....................................................................................22

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019).......................................................................................28, 29

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) .........................................................................................23

*LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*,
   764 F. App'x 105 (2d Cir. 2019) ..............................................................................22

*Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   626 F.3d 156 (2d Cir. 2010)......................................................................................23

*In re Lululemon Securities Litigation*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)..................10

*Marino v. Grupo Mundial Tenedora, S.A.*,
   810 F. Supp. 2d 601 (S.D.N.Y. 2011).......................................................................17

*Martin v. Quartermain*,
   732 F. App'x 37 (2d Cir. 2018) ..................................................................................8

*Matana v. Merkin*,
   989 F. Supp. 2d 313 (S.D.N.Y. 2013).......................................................................11

*In re Merrill Lynch Auction Rate Securities Litigation*,
    851 F. Supp. 2d 512 (S.D.N.Y. 2012), *aff'd sub nom., Louisiana Pacific Corp. v.*
    *Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014) .........................................................4

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...............................................................................6

*Meyercord v. Curry*,
    38 A.D.3d 315 (1st Dep't 2007) .............................................................................19

*Morgan v. Sundance*,
    142 S. Ct. 1708 (2022)............................................................................................22

*Morrison v. National Australia Bank, Ltd.*,
    561 U.S. 247 (2010)................................................................................................14

*NatTel, LLC v. SAC Capital Advisors*,
    No. 3:04CV1061 (JBA), 2005 WL 2253756 (D. Conn. Sept. 16, 2005),
    *aff'd*, 370 F. App'x 132 (2d Cir. 2006)...................................................................18

*In re North Sea Brent Crude Oil Futures Litigation*,
    256 F. Supp. 3d 298 (S.D.N.Y. 2017) , *aff'd sub nom. Prime International*
    *Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019) ........................................15

*Nortuna Shipping Co. v. Isbrandtsen Co.*,
    231 F.2d 528 (2d Cir. 1956).....................................................................................20

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    135 S. Ct. 1318 (2015)..............................................................................................8

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)..................................................................................3, 6

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018).................................................................3, 14

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)...................................................................................14

*In re Petrobras Securities*,
    862 F.3d 250 (2d Cir. 2017)...................................................................................15

*In re Petrobras Securities Litigation*,
    150 F. Supp. 3d 337 (S.D.N.Y. 2015).....................................................................15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................16

*PPG Industries, Inc. v. Webster Auto Parts Inc.*,
      128 F.3d 103 (2d Cir. 1997)...........................................................................22

*Ranke v. Sanofi-Synthelabo Inc.*,
      436 F.3d 197 (3d Cir. 2006)...........................................................................25

*Roldan v. Allstate Insurance Co.*,
      149 A.D.2d 20 (2d Dep't 1989).......................................................................25

*Rubenstein ex rel. Jefferies Financial Group Inc. v. Adamany*,
      20-CV-2775 (PAC), 2022 WL 6592503 (S.D.N.Y. Oct. 5, 2022) .........................4

*Rubenstein on Behalf of Jefferies Financial Group Inc. v. Adamany*,
      21-905-CV, 2021 WL 5782359 (2d Cir. Dec. 7, 2021)........................................4

*S & R Co. of Kingston v. Latona Trucking, Inc.*,
      159 F.3d 80 (2d Cir. 1998).......................................................................20, 23

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*,
      75 F.3d 801 (2d Cir. 1996)...........................................................................12

*In re Satyam Computer Services Ltd. Securities Litigation*,
      915 F. Supp. 2d 450 (S.D.N.Y. 2013)...............................................................14

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
      81 F.3d 1224 (2d Cir. 1996)...........................................................................17

*In re Shanda Games Ltd. Securities Litigation*,
      1:18-cv-02463-ALC, 2019 WL 11027710 (S.D.N.Y. Sept. 30, 2019)......................4

*SRM Global Master Fund LP v. Bear Stearns Cos.*,
      829 F.3d 173 (2d Cir. 2016)...........................................................................23

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
      559 U.S. 662 (2010)...................................................................................28

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*,
      552 U.S. 148 (2008)...................................................................................13

*TCS Capital Management, LLC v. Apax Partners, L.P.*,
      No. 06-CV-13447(CM), 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) .................4, 11

*Thyssen, Inc. v. Calypso Shipping Corp.*,
      310 F.3d 102 (2d Cir. 2002)...........................................................................22

*Tongue v. Sanofi*,
      816 F.3d 199 (2d Cir. 2016)............................................................................8

*United States ex rel. Wrecking Corp. of America v. Edward R. Marden Corp.*,
    406 F.2d 525 (1st Cir. 1969) ....................................................................................26

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ...........................................................................................3, 8

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) .......................................................................................4

*Western Capital Design, LLC v. New York Mercantile Exchange*,
    180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) ......................2

*Zarecor v. Morgan Keegan & Co.*,
    801 F.3d 882 (8th Cir. 2015) ..................................................................................26

## STATUTES

15 U.S.C. § 77z–2(c)(1)(A)(i) ...........................................................................................10

15 U.S.C. § 78j(b) .......................................................................................................3, 11

15 U.S.C. § 78m(e) ...........................................................................................................3

15 U.S.C. § 78t(a) .............................................................................................................3

28 U.S.C. § 1658(b) ........................................................................................................24

## RULES AND REGULATIONS

17 C.F.R. § 240.10b-5 ................................................................................................3, 11

17 C.F.R. § 240.13e-3 .......................................................................................................3

CPLR § 202 .....................................................................................................................24

CPLR § 7502(b) ...............................................................................................................24

CPLR § 213(1) .................................................................................................................23

CPLR § 213(8) .................................................................................................................23

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws (American Law Institute 1971) ................................18

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT AND TO STAY ARBITRATION**

Defendants E-Commerce China Dangdang, Inc. ("Dangdang" or "the Company");

Dangdang Holding Company Limited; Kewen Holding Company Limited; Science & Culture

International Limited; First Profit Management Limited; Guoqing Li; Peggy Yu Yu; Danqian

Yao; Lijun Chen; and Min Kan (collectively, "Defendants") respectfully submit this

memorandum in support of their Motion to Dismiss the Amended Complaint (Doc. 79, the

"Complaint" or "AC") and to Stay Arbitration.

## PRELIMINARY STATEMENT

Despite timely knowledge of the alleged misrepresentations and supposed defects in the

merger process that they now challenge, Plaintiffs made strategic choices in 2016 to forego their

statutory appraisal rights in the Cayman Islands and to forego their contractual rights to arbitrate

all of their claims.  Instead, they asked this Court to devote considerable time and effort to giving

them a wholly duplicative "quasi-appraisal" action in federal court (Doc. 1, ¶¶ 1, 123-27) based

upon claims that sound in Cayman Islands law (Doc. 61, at 28-29).  In so doing, Plaintiffs argued

that this Court and the Court of Appeals should construe the dispute resolution provision of the

Deposit Agreement[1] to allow the dispute to proceed in this Court (and *only* this Court), never

once even hinting at any desire to arbitrate their claims under that same contractual provision.

When it became evident in 2019 that Plaintiffs' "quasi-appraisal" gambit could not

withstand scrutiny (Docs. 74-76), Plaintiffs reinvented their claims in an Amended Complaint

arising under several "artfully plead[ed]" provisions of the federal securities laws (Doc. 104, at

---

[1] Defendants understand that the Court is familiar with the facts and procedural history of the
case, which were set forth in the parties' earlier briefing.  (Docs. 39, 52 & 75.)  Defined terms
herein have the same meanings as used in Defendants' brief in support of its prior motion to
dismiss.  *Id.*  Citations herein to Exhibits 1 through 4 refer to the Exhibits annexed to the
accompanying Declaration of James W. Brown dated October 24, 2022.

33) and strategically disavowed any reliance on Cayman law, to again demand that *only* this Court could possibly adjudicate all of their claims (Doc. 88, at 5).  At the hearing on July 16, 2019, this Court presciently asked Plaintiffs whether they had any interest in pursuing arbitration, to which Plaintiffs' counsel unequivocally answered "no."  (Doc. 77, at 4:10-18.)

Now, three years later and after the Second Circuit has *twice* allowed Plaintiffs' case to remain here in federal court in New York based on Plaintiffs' allegations and representations, Plaintiffs want to reinvent the case yet again.  Plaintiffs ask the Court to ignore the Second Circuit's explicit mandate to now reach and determine the legal sufficiency of the Amended Complaint (Doc. 107, at 35:7-8), ignore Plaintiffs' explicit waiver of any intention to arbitrate, and instead allow legally defective common law claims to go forward in arbitration while dismissing the federal securities claims that Plaintiffs up to now have insisted were the heart of their case (Doc. 109, at 1).  Plaintiffs' evasive contradictions and artifice should be stopped.

Defendants respectfully request that the legal sufficiency of the Amended Complaint should first be tested under Rule 12(b)(6), as Defendants first moved in 2019 and as the Second Circuit has now mandated.[2]  As explained below, Plaintiffs' claims fail for multiple separate and independent reasons, and their attempt at arbitration should be stayed because Plaintiffs clearly waived any right to arbitrate years ago.  Moreover, all claims that Plaintiffs seek to arbitrate are time-barred, and the governing Deposit Agreement does not authorize class-wide arbitration as Plaintiffs seek.

---

[2] Count VI (aiding and abetting breach of fiduciary duty), is pled only against the Special Committee Defendants who have not been served.  (AC ¶¶ 179-84.)  This claim fails for all the reasons set forth in § I.D., and in any event need not be addressed in dismissing the Complaint.  *Cotton v. McCarthy*, 383 F. App'x 26, 27 (2d Cir. 2010) (summary order); *W. Capital Design, LLC v. New York Mercantile Exch.*, 180 F. Supp. 2d 438, 443 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002).

## I.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

### A.    Plaintiffs' Federal Securities Law Claims Should be Dismissed on a Variety of Independent Grounds

Plaintiffs attempt to bring three claims under the Securities Exchange Act of 1934, specifically Section 13(e) and Rule 13e-3 thereunder, 15 U.S.C. § 78m(e), 17 C.F.R. § 240.13e-3 (Count I); Section 10(b) and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5 (Count II); and Section 20(a), 15 U.S.C. § 78t(a) (Count III).  These claims should be dismissed.

### 1.    There Is No Transaction Causation Or Loss Causation

Plaintiffs have not alleged the essential elements of transaction causation (*i.e.*, reliance) or loss causation.[3]  In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099-1100, 1105-06 (1991), the Supreme Court held that where a squeeze-out merger can be accomplished without the votes of any minority shareholders, those minority shareholders may not maintain a private cause of action alleging that misstatements in the proxy materials violated the federal securities laws because the essential elements of transaction causation and loss causation are lacking.  Allowing such a theory of causation, the Supreme Court explained, would lead to "speculative claims and procedural intractability" – the desire for a "cosmetic vote" would lead to cases in which "[t]he issues would be hazy, their litigation protracted, and their resolution unreliable." *Id.* at 1105-06. "Lower courts have echoed these concerns, holding that, as a general rule, plaintiffs may not plead causation where their votes would not have changed an outcome."

---

[3] As this Court is familiar, to sustain a claim under Section 10(b), a plaintiff must show: (i) a material misrepresentation or omission; (ii) scienter; (iii) in connection with the purchase or sale of a security; (iv) reliance (*i.e.*, transaction causation); (v) economic loss; and (vi) loss causation. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010); *see also Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 225 (S.D.N.Y. 2018).  And while there is no private right of action under Section 13(e), if a private right of action were somehow inferred, given that the operative language of Section 13(e) largely tracks that of Section 10(b), such a claim necessarily would include, at a minimum, essential elements of (i) a material misrepresentation or omission; (ii) reliance; (iii) economic loss; and (iv) loss causation.

*Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, 20-CV-2775 (PAC), 2022 WL 6592503, at *3 (S.D.N.Y. Oct. 5, 2022) (collecting cases); *see also Rubenstein on Behalf of Jefferies Fin. Group Inc. v. Adamany*, 21-905-CV, 2021 WL 5782359, at *4 (2d Cir. Dec. 7, 2021) (summary order) (citing *Koppel v. 4987 Corp.*, 167 F.3d 125, 137 (2d Cir. 1999)); *TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06-CV-13447(CM), 2008 WL 650385, at *18-21 (S.D.N.Y. Mar. 7, 2008) (loss causation absent in misstatement claims where plaintiffs' votes were not required to effect merger).[4]  This same principle has been applied to foreclose claims under Section 13(e) and 10(b) in the context of going-private mergers.  *See Shanda Games*, 2019 WL 11027710 (dismissing securities class action alleging false disclosures in connection with going-private merger for failure to plead reliance).

That is the exact situation here.  The documents annexed to Plaintiffs' own Complaint demonstrate that the proponents of the going-private transaction held over 80% of the eligible votes, and the transaction was not subject to any majority-of-the-minority conditions.[5]  None of the minority shareholder's votes therefore was required to accomplish the merger.  Thus, as directed by *Virginia Bankshar*es and its progeny, minority shareholders like Plaintiffs cannot maintain a Section 10(b) or 13(e) claim asserting that the merger disclosures were inadequate.

---

[4] Plaintiffs cannot invoke the efficient-market presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988), as the 2016 merger was a privately-negotiated deal approved by Dangdang shareholders, not an open-market transaction.  *In re Shanda Games Ltd. Sec. Litig.*, No. 1:18-cv-02463-ALC, 2019 WL 11027710, at *9 (S.D.N.Y. Sept. 30, 2019) (efficient market presumption does not apply to claims asserting false disclosures in connection with going-private merger transaction).  Nor does the presumption of reliance under *Affiliated Ute* apply because Plaintiffs allege primarily affirmative misstatements, not omissions.  *See Waggoner v. Barclays PLC*, 875 F.3d 79, 92-93 (2d Cir. 2017); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 536 (S.D.N.Y. 2012), *aff'd sub nom. La. Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014).

[5] *See* the Rule 13e-3 Transaction Stmt., at 19 & 24 (Doc. 49-1, at 52 & 57 of 270), disclosing that only a two-thirds vote was required, while the supporting shareholders held more than 83% of the eligible votes and had agreed to vote them all in favor of the merger.

Plaintiffs could not have prevented the merger no matter what the disclosures said, and so any shortcoming in the disclosures could not have caused the merger or Plaintiffs' asserted losses.[6]

Further, Plaintiffs do not allege any facts from which to infer that they were prevented from objecting to the merger or timely advancing appraisal rights in the Caymans, as multiple dissenting shareholders did exactly that.  (Doc. 61, at 5-6.)  There are no allegations that Plaintiffs were somehow duped into voting in favor of the merger, and thereby forfeited rights to an appraisal action.  (AC, *passim*; Exh. 3 ¶¶ 13-15 (Doc. 76, Second Dec. of Robin Hollington, QC, "Hollington-2"); Exh. 4 ¶¶ 12-17 (Doc. 97, Third Dec. of Robin Hollington, QC, "Hollington-3").)  Indeed, the Complaint demonstrates that the transaction disclosure documents and the public record already disclosed – well before shareholders needed to act – the very information on which Plaintiffs base their complaint.  All of the "facts" that Plaintiffs assert demonstrate the transaction was not structurally fair – (i) the lack of a majority-of-the-minority requirement; (ii) the lack of a "go-shop" provision; (iii) the presence and terms of a competing offer by iMeigu at $8.80 per ADS; (iv) the use of the Company's available cash to pay part of the merger consideration; and (v) the distributions to sponsors resulting from the transaction upon cancellation of stock options – were fully disclosed in the Rule 13(e) filings before Plaintiffs needed to make any decision whether to dissent or seek an appraisal.[7]

---

[6] Plaintiffs' assertion that the alleged misstatements somehow altered the trading price of the ADSs (AC ¶¶ 112, 118) does not alter this analysis.  Plaintiffs allege no facts to support this assertion, and, to the contrary, allege that the "inadequate" and "unfair" merger price was not connected to the trading price, but was unilaterally set by the merger sponsors (AC ¶¶ 52-53, 89).

[7] Rule 13e-3 Stmt. (Doc. 49-1, at 52 of 270 (two-thirds vote required, as opposed to any majority-of-the-minority), at 44 of 270 (rather than a "go-shop" provision, the transaction included a non-solicitation clause), at 96 of 270 (describing March 9, 2016, receipt of competing offer at $8.80 per ADS), at 63 of 270 (use of Company's cash for merger consideration), and at 105-06 of 270 (showing cash distributions to sponsors upon cancellation of stock options)); Doc. 79-7, at 2 of 2 (Press Release by iMeigu on April 7, 2016) (demonstrating that competing offer of $8.80 was known publicly for several months).

Similarly, the "facts" that Plaintiffs assert support their claim that the law firm Maples & Calder ("M&C") had a conflict and therefore was not independent – that it served the Special Committee and also represented Dangdang before the merger and would continue to do so afterwards – also were contained in the transaction documents and in the public domain. Indeed, Plaintiffs' own Complaint highlights that Dangdang's public disclosures listed M&C as the Company's counsel continuously since 2010 (AC ¶¶ 62-63), and the Rule 13e-3 Transaction Statement repeated this fact and further disclosed that M&C was advising the Special Committee on the merger (Doc. 49-1, at 60 of 270.)

Further, allegations relating to the merger price being below the 90-day average trading price prior to the offer (AC ¶ 2) relies entirely on historical market trading prices that were necessarily already in the total mix of public information. Indeed, the Complaint concedes that Bloomberg analysts contemporaneously published guidance criticizing the merger price as among the "lowest" it had seen, based upon "public transaction data." (AC ¶ 53.)

Where information underlying plaintiffs' claim was already known to the market, loss causation is lacking. *In re Omnicom Grp.*, 597 F.3d at 511-13 (rejecting attempt to predicate loss causation on information "known to the market" because corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"); *Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013) (same). Here, all relevant information was fully disclosed. If Plaintiffs believed the merger price was unfair they were free to – but apparently ***chose*** not to – avail themselves of the appraisal rights they possessed under Cayman law, which also were fully disclosed to them in the proxy materials.[8] (Rule 13e-3 Stmt.,

---

[8] Plaintiffs' expert agrees that all ADS holders had the legal right and "the opportunity to convert their ADS in order to acquire dissenter rights" and that the Company clearly and fully "emphasized" this right to Plaintiffs in the Rule 13E-3 Statement. (Doc. 90 (Litton Dec. ¶ 39).)

at 100-01 (Doc. 49-1, at 137-38 of 270).)  Such a strategic, volitional act negates causation in a private securities claim.

The Second Circuit's decision in *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000), is instructive.  The *Grace* panel began by observing that transaction causation and loss causation could not be shown where, as here, the votes of minority shareholders were not required to accomplish the transaction.  *Grace*, 228 F.3d at 46-49.  The Second Circuit then noted that "plaintiffs did not vote in favor of the merger and did not show that they relied on the proxy materials in any way that caused them to forfeit their rights to appraisal."  *Grace*, 228 F.3d at 49-50.  That the *Grace* plaintiffs subsequently lost their appraisal rights due to their own strategic decisions, rather than any reliance on the supposedly misleading proxy materials, did not amount to a forfeiture of a state law right, and the Second Circuit affirmed the dismissal of the *Grace* plaintiffs' securities claims.  *Id.*  The same is true here.  Plaintiffs' votes were not required to effect the going-private merger, and any decision not to seek appraisal in the Cayman Islands was a knowing, strategic choice.  Accordingly, Plaintiffs have not satisfied the essential elements of transaction or loss causation.

### 2.      There Is No Actionable Misstatement or Omission

Plaintiffs base their securities law claims on three asserted misstatements in the merger disclosures: (i) that the merger was "fair" to shareholders, when it supposedly was not; (ii) that M&C was "independent," when it supposedly was conflicted; and (iii) that the Controlling Group had no intention to resell the Company, when they allegedly secretly planned to do so. None of these allegations supports a claim.

First, the opinions that the merger price was "fair" are not actionable because Plaintiffs have failed to plead facts showing that such opinions were not honestly held or were based on untrue or materially incomplete facts.  The Supreme Court has held that a statement of opinion is

actionable only if "the speaker did not hold the belief she professed," the opinion was based on "untrue" supporting facts, or the opinion "omits material facts about the [speaker's] inquiry into or knowledge concerning [the] opinion, and … those facts conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327, 1329 (2015); *Tongue v. Sanofi*, 816 F.3d 199, 209-10 (2d Cir. 2016). Similarly, there is no allegation that the disclosures misstated the underlying data or the methodology by which the fairness opinion was reached. This also renders the opinion inactionable. *See Martin v. Quartermain*, 732 F. App'x 37, 41 (2d Cir. 2018) (opinions inactionable where plaintiffs "allege merely that [defendant] should have drawn different conclusions from [the] facts").[9]

Second, Plaintiffs contend that M&C had a conflict of interest in serving the Special Committee because the firm had also represented Dangdang before the merger and would

---

[9] Plaintiffs' assertion that the statements concerning the fairness of the transaction were "not primarily offered as a statement of belief," but instead were "objective assertions" of fact (AC ¶ 88), is directly refuted by the Rule 13e-3 disclosures themselves, which expressly frame these statements as opinions and beliefs:

> Duff & Phelps rendered its oral *opinion* (which was confirmed in writing later that same day) to the Special Committee that … the per ADS merger consideration … w[as] fair….
>      * * * *
> The Board adopted the financial analysis and the *opinion* with respect to the fairness of the merger provided by Duff & Phelps.
>      * * * *
> Under SEC rules governing going-private transactions, each member of the Buyer Group is required to express its *belief* as to the fairness of the merger to the unaffiliated security holders. The Buyer Group is making the statements included in this section solely for the purpose of complying with the requirements of Rule 13e3….
>      * * * *
> The Buyer Group *believes* these [foregoing] factors provide a *reasonable basis for its belief* that the merger is both substantively and procedurally fair….

(Doc. 49-1, at 81, 71, 75, 78 of 270 (emphasis added).) Plaintiffs' argument is also foreclosed by controlling law holding that fairness opinions are just that, opinions. *Virginia Bankshares*, 501 U.S. at 1092-96.

continue to do so afterward. (AC ¶ 59.)  But this contention is defeated by Plaintiffs' own allegations that the Company disclosed the relevant facts about M&C in the transaction documents provided to investors (AC ¶ 62 (Dangdang publicly disclosed that M&C was Dangdang's counsel); AC ¶ 63 (Form 13(e) disclosed that Dangdang's registered office in the Cayman Islands both before and after the merger was at "Maples Corporate Services Limited").) There is therefore no actionable misstatement or omission concerning M&C.  *See In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*, Nos. 10 MD 2157(PGG), 10 Civ. 4552 (PGG), 2014 WL 4953554, at *8-10 (S.D.N.Y. Sept. 30, 2014) (no actionable misstatement or omission where relevant information was publicly disclosed).

Third, the claim that the Controlling Group stated that it had no intention of selling the Company, while secretly harboring an intent to do so, is meritless.  Plaintiffs allege no facts to support the conclusory assertion that the Controlling Group had any intention to sell the Company *at the time the challenged disclosures were made*, as opposed to more than a year later when it allegedly pursued a deal with HNA. *See Altimeo Asset Mgmt. v. WuXi PharmaTech (Cayman) Inc.*, No. 19-cv-1654 (AJN), 2020 WL 6063539, at *6 (S.D.N.Y. Oct. 14, 2020) (finding the lack of a "concrete plan" at the time of the merger to be fatal).

 Further, while Plaintiffs cite Company disclosures stating that there was no present intent at the time to effect any other extraordinary transaction or sale of material Company assets (AC ¶ 92), the very next sentence is a clarion warning disclosing the precise risk that Plaintiffs claim was concealed:

> However, after the Effective Time, the Buyer Group and the surviving company's management and the board of directors will continue to evaluate the surviving company's business and operations from time to time, and may propose or develop new plans and proposals, including any of the foregoing actions [extraordinary corporate transactions, sale of a material amount of assets, or any other material changes in the Company's business] … in the best interests of the surviving company and its equity holders….  The

Buyer Group expressly reserves the right to make any changes it deems appropriate to the operation of the surviving company in light of such evaluation and review as well as any future developments.

(Doc. 49-1, at 95 of 270.)  This forthright disclosure forecloses Plaintiffs' claims, both because the Rule 13e-3 statements were not false when made and because they were accompanied by sufficient cautionary language.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("[W]ithout *contemporaneous* falsity, there can be no fraud.") (emphasis in original), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); 15 U.S.C. § 77z–2(c)(1)(A)(i) (PSLRA safe harbor for forward-looking statements "accompanied by meaningful cautionary statements").

Ultimately Plaintiffs' theory rests on their sheer speculation that because the Company announced talks about a potential transaction with HNA more than a year later, in October 2017, this purportedly "very tight timeline" shows that such talks must have been ongoing at the time the merger closed in September 2016.  (AC ¶¶ 95-100.)  However, a full year is certainly not a "tight timeline."  And even if it were, mere proximity in time cannot support an inference that the subsequent transaction had been contemplated earlier, as that is nothing more than pleading "fraud-by-hindsight."  *In re Jumei Int'l Holding Ltd. Sec. Litig.*, No. 14cv9826, 2017 WL 95176, at *5 (S.D.N.Y. Jan. 10, 2017) (rejecting inference of "advance planning before execution" and finding "[p]laintiffs have not pled any facts that raise the inference above a speculative level as to any Defendant's knowledge or intent regarding [the company's] plans," even where those plans were executed mere weeks after the challenged disclosures); *see also In re Corning, Inc. Sec. Litig.*, 349 F. Supp. 2d 698, 717 (S.D.N.Y. 2004) ("[H]indsight cannot be the basis for liability under the federal securities laws.  Putting it another way, defendants are not charged with clairvoyance.").[10]

---

[10] Plaintiffs complain that the price offered in the potential HNA deal was twice the 2016 merger price, and contend that "there can be no claim that Dangdang had somehow more than doubled

And again, because the merger sponsors had sufficient votes to move forward with the transaction over any objections, any alleged misstatements are not material as a matter of law. *See TCS Capital*, 2008 WL 650385, at *16 (pre-merger disclosures not material "because there is no way that [the plaintiff] or the other minority shareholders could have held up the merger").

### 3.   The Section 10(b) Claim Fails for Lack of a Purchase or Sale

Section 10(b) and Rule 10b-5 reach manipulation or deception only "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-42 (1975), the Supreme Court expanded upon this element holding that only purchasers or sellers have standing to pursue a private cause of action under Section 10(b), barring claims of those, among others, who hold and fail to sell shares in reliance on misrepresentations or omissions.  *Id.* (citing *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463–64 (2d Cir. 1952)).  As a result, "holders" lack standing to bring a claim.  *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 484 (S.D.N.Y. 2014); *Matana v. Merkin*, 989 F. Supp. 2d 313, 321 (S.D.N.Y. 2013).  Plaintiffs' claims alleging that they held, and did not sell, their ADSs while the trading price supposedly was artificially depressed (AC ¶¶ 112-13) therefore fail.  Indeed, as noted below, Plaintiffs never sold their shares; instead, their shares were cancelled and Plaintiffs were "cashed out."  (*Infra* § I.A.7.) The Amended Complaint highlights this very fact by alleging that Plaintiffs "*could* have … sold" or "*would* have … sold," but did not sell.  (AC ¶¶ 120, 143 (emphasis added).)  Accordingly, they cannot satisfy the "purchase or sale" requirement of Section 10(b) and Rule 10b-5.

---

in value in just one year."  (AC ¶¶ 101-02.)  But Plaintiffs allege no facts to support their speculation about the proper valuation over a full year, and their own allegations reveal the flaw in their logic: 2015 saw a crash in the Chinese stock market, and resulting market volatility.  (AC ¶¶ 47-49.)  Indeed, that volatility, and the associated risk to investors, were fully disclosed. (Doc. 49-3, at 55 of 222 ("The trading prices of our ADSs are likely to be volatile….").)

4.      **The Section 10(b) Claim Also Fails for Lack of Scienter**

Plaintiffs fail to plead with particularity facts demonstrating the requisite strong inference of scienter.  Plaintiffs first assert in conclusory fashion that all Defendants had actual knowledge of the falsity of the alleged misstatements.  (AC ¶¶ 145-47.)  Such conclusory allegations of scienter are insufficient.  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not . . . enjoy a license to base claims of fraud on speculation and conclusory allegations.") (dismissing claims).

Moreover, by lumping every appearing Defendant (except the Company) into what they call the "Controlling Group" (AC ¶ 19), Plaintiffs fail to plead facts about what any particular Defendant knew or intended.  Such "group pleading" is insufficient.  *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006) (dismissing securities fraud complaint that "lumps defendants together," because "broad-brush allegation against numerous defendants is inadequate").

Plaintiffs next allege that all Defendants had the "motive" and "opportuni[ty]" to obtain the minority shares at the lowest possible price.  (AC ¶¶ 148-50.)  But this supposed motive, which could equally be attributed to every sponsor of every going-private transaction, fails to create the requisite strong inference of scienter.  *Kalnit v. Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice [to demonstrate scienter]….").

5.      **The Court Should Not Create An Implied Private Right of Action Under Section 13(e)**

The Court previously noted that many courts – including a sister court in this District – have refused to recognize an implied private right of action under Section 13(e) of the Exchange Act.  (Doc. 61, at 30 (citing, *e.g.*, *Bolton v. Gramlich*, 540 F. Supp. 822, 842-43 (S.D.N.Y.

1982)).)  And since the Court's observation, yet another sister court has reached the same conclusion.  *Boylan v. Sogou Inc.*, No. 21 Civ. 2041 (PGG), 2021 WL 4198254, at *12 (S.D.N.Y. Sept. 13, 2021) ("Congress did not intend to create a private remedy [in Section 13(e)]").  Importantly, the *Boylan* Court explicitly rejected reliance on *Howing Co. v. Nationwide Corp.*, 826 F.2d 1470 (6th Cir. 1987), and Section 13(e)'s similarity to Section 14(a) – both arguments which Plaintiffs advance here.  (AC ¶ 129; Doc. 88, at 33.)

Indeed, the Supreme Court's 2008 decision in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164 (2008), explained that while "the rule [for implying a private right of action] once may have been otherwise, it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one." *See also Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) ("Without [a clear demonstration of legislative intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").  Section 13(e) evinces no such intent.[11]

### 6.    The Section 20(a) Claim Should Be Dismissed

Because Plaintiffs' claims under Section 10(b) and 13(e) are fatally flawed, their "control person" claim under Section 20(a) should be dismissed for lack of a primary violation.  *See Ong*, 294 F. Supp. 3d at 240. Moreover, Plaintiffs fail to allege culpable participation. *Bratusov v.*

---

[11] Although one unreported decision in this District had previously found, decades before the *Stoneridge* decision, an implied private right of action under Section 13(e), *Fisher v. Plessey Co.*, No. 82 Civ. 1183, 1983 WL 1328, at *3 (S.D.N.Y. June 22, 1983), it must respectfully be questioned whether that case remains good law.  The paucity of subsequent reliance on *Fisher*, especially when coupled with *Fisher*'s strong reliance on the now-overruled *Cort v. Ash*, 422 U.S. 66 (1975), casts its validity into serious doubt.  *See also Berg v. First Am. Bankshares, Inc.*, No. 83-3887, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (finding *Fisher* unpersuasive), *aff'd*, 796 F.2d 489 (D.C. Cir. 1986).

*Comscore, Inc.*, 19-cv-3210 (KPF), 2020 WL 3447989, at *15 (S.D.N.Y. June 24, 2020) ("A

*prima facie* case of control person liability under Section 20(a) of the Exchange Act requires . . .

that the defendant was, in some meaningful sense, a culpable participant in the controlled

person's fraud.").

### 7.    Under *Morrison,* Plaintiffs' Federal Securities Claims Do Not Reach This Extraterritorial Transaction

In *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 261-65 (2010), the Supreme

Court held that private rights of action under the Exchange Act do not apply to foreign

transactions. "*Morrison* ruled that § 10(b) does not apply unless the suit is predicated on either a

domestic securities transaction or a transaction in a domestically listed security." *Parkcentral*

*Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215 (2d Cir. 2014); *see also City of*

*Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179-82 (2d Cir. 2014)

(dismissing claims); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 472-76

(S.D.N.Y. 2013). Plaintiffs cannot make either showing.

Plaintiffs cannot show that they sold their shares on a U.S. exchange. While Dangdang

ADSs were listed on NYSE until the 2016 merger closed, that is insufficient. *See Pontiac*, 752

F.3d at 179-81 (rejecting "listing theory"). Nor does it matter that Plaintiffs might have

originally purchased their ADSs on NYSE, because their claims are not based on those

purchases. *See id.* at 180 (explaining *Morrison*'s focus on transaction giving rise to claim, not

other transactions). In fact, Plaintiffs concede that they did not sell their shares on any exchange,

U.S. or otherwise, but instead that their shares were "cashed out" when they were cancelled

through the privately-negotiated merger. (AC ¶¶ 5, 25, 32, 143.)

To satisfy the second branch of *Morrison*, that it was a domestic transaction, a plaintiff

must sufficiently allege either that title "passed within the United States" or that the parties

"incur[red] irrevocable liability to carry out the transaction within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012); *see also In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 309 n.5 (S.D.N.Y. 2017) (instructing that *Absolute Activist*'s "guidance is applicable to any transaction not on a domestic exchange"), *aff'd sub nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019). But no title was passed in the merger at all; the shares were canceled.[12] And Dangdang and the buyer group incurred irrevocable liability to complete the transaction in China, where the parties agreed to the deal and the shareholders approved it, or in the Caymans, where the merger became effective – that is where the parties "committed to one another." *Absolute Activist*, 677 F.3d at 68; *see also In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 20-cv-3135 (LAK), 2021 WL 3863372, at *6 (S.D.N.Y. Aug. 30, 2021) ("Generally, the acquisition of shares through a merger of foreign entities is not a domestic transaction.").[13] Either way, irrevocable liability was not incurred "within the United States." *Absolute Activist*, 677 F.3d at 69.[14]

---

[12] Rule 13e-3 Transaction Stmt., at 1 (Doc. 49-1, at 6 of 270) ("At the Effective Time, each ADS issued and outstanding immediately prior to the Effective Time … will be cancelled in exchange for the right to receive $6.70 in cash per ADS….").

[13] Doc. 49-1, at 50 & 153 of 270 (extraordinary meeting and closing each held in China).

[14] It is immaterial that the ADS were held in a U.S. depository, or that Plaintiff Fasano may have received the check for his shares in the U.S. "A sale occurs when the parties to a transaction have obligated themselves to carry it out, with nothing further remaining to be done but the performance of functions such as paying the purchase price and transferring title to, or possession of, the securities." *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 949 (N.D. Ill. 2001); *In re Petrobras Sec.*, 862 F.3d 250, 272 n.24 (2d Cir. 2017) ("[W]e reject Plaintiff's argument that a securities transaction is 'domestic' under *Morrison* and *Absolute Activist* if it settles through the [New York-headquartered] DTC."). After all, "[t]he mechanics of [securities depository] settlement are actions needed to carry out transactions, but they involve neither the substantive indicia of a contractual commitment necessary to satisfy [*Morrison*'s] first prong nor the formal weight of a transfer of title necessary for its second." *In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015).

**B.      Plaintiffs' Common Law Claims Should be Dismissed As They Are <u>Governed by Cayman Islands Law, Which Plaintiffs Disclaim</u>**

Plaintiffs' Amended Complaint seeks to advance common law claims of negligent

misrepresentation and breach of fiduciary duty, but only to the extent they arise under New York

or U.S. federal law, disavowing any intention to recover under, or rely upon, Cayman law.  (AC

Counts IV & V, ¶¶ 161-69 & 170-78.)  But Plaintiffs cannot simply pick and choose what law

governs corporate conduct.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 820 (1985) ("If a

plaintiff could choose the substantive rules to be applied to an action . . . the invitation to forum

shopping would be irresistible.").  This Court has already observed, correctly, that Plaintiffs'

claims for breach of fiduciary duty and negligent misrepresentation concern Dangdang's internal

affairs, and thus are governed by Cayman law.  (Doc. 104, at 30, 32.)[15]

Under New York choice of law rules, which apply here,[16] "questions relating to the

internal affairs of corporations are decided in accordance with the law of the place of

---

[15] Plaintiffs assert that New York law should control because "the Merger Agreement contains a choice of law provision that specifically chooses New York law, *except for certain discrete issues*."  (AC ¶ 25 (emphasis added).)  But those "certain discrete issues" include precisely the claims Plaintiffs advance here, for which Cayman Islands Law is prescribed:

> This Agreement shall be interpreted, construed and governed by and in accordance with the Laws of the State of New York without regard to the conflicts of law principles thereof, ***except*** that the following matters arising out of or relating to this Agreement shall be interpreted, construed, performed, enforced and governed by and in accordance with the ***Laws of the Cayman Islands*** in respect of which the parties hereto hereby irrevocably submit to the nonexclusive jurisdiction of the courts of the Cayman Islands: ***the Merger, … the cancellation and conversion of the Shares as the case may be (including Shares represented by ADSs), the rights set forth in Section 238 of the CICL with respect to any Dissenting Shares, the fiduciary or other duties of the Company Board (and the Special Committee) and the board of directors of Parent and Merger Sub and the internal corporate affairs of the Company*** …."

(Merger Agmt. ¶ 9.09, at 60 (Doc. 49-1, at 211 of 270) (emphasis added).)

[16] "[Courts] apply the choice-of-law rules of the state in which the federal district court sits." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015).

incorporation." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996). This doctrine "recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Atherton v. FDIC*, 519 U.S. 213, 224 (1997).

As to claims for breach of fiduciary duty, it is well-established that the law of the Company's place of incorporation governs such claims. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) (citing, *inter alia*, *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980)); *accord* Exh. 3 ¶ 6 (Hollington-2); Exh. 4 ¶ 9 (Hollington-3). Indeed, Plaintiffs' proffered expert agrees that, even if reference to NYSE listing guidelines and the Sarbanes Oxley Act are involved in evaluating Plaintiffs' fiduciary duty claims, "the governing law is Cayman Islands law." (Doc. 90, Litton Dec. ¶ 29; *accord id.* ¶ 31.)

The same is true for Plaintiffs' negligent misrepresentation claims, which are expressly based on Defendants' alleged "fiduciary duties . . . to provide accurate information" to minority shareholders (AC ¶ 163), indisputably an issue governed by Cayman Islands law. *See Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at *10 (S.D.N.Y. Sept. 18, 2015) (scope of fiduciary duties is defined by the law of the place of incorporation); *accord* Exh. 3 ¶ 6 (Hollington-2); Exh. 4 ¶¶ 6-8 (Hollington-3).

Further, Plaintiffs allege that, in their capacities as shareholders, they relied on misrepresentations related to the fairness of the merger "in deciding how to vote and whether to exercise appraisal rights" in connection with that merger. (AC ¶ 164.) Those allegations too implicate internal corporate decisions bearing on a transaction between a Cayman corporation and its shareholders. *See Hahn v. Breed*, 587 F. Supp. 1369, 1381 (S.D.N.Y. 1984) (claim

17

implicating "the fairness of the merger to a shareholder of a foreign corporation . . . involves the internal affairs of a foreign corporation"); Restatement (Second) of Conflict of Laws § 302 cmt. A (Am. Law Inst. 1971) (Comment listing "mergers" as an issue within the scope of the internal affairs doctrine). Accordingly, Plaintiffs' negligent misrepresentation claims clearly concern "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders," *Atherton*, 519 U.S. at 224, and therefore are governed by Cayman Islands law, *see, e.g., NatTel, LLC v. SAC Cap. Advisors*, No. 3:04CV1061 (JBA), 2005 WL 2253756, at *9 (D. Conn. Sept. 16, 2005) (applying internal affairs doctrine to common law misrepresentation claims because plaintiff was a minority shareholder and its claims "arise out of [defendant's] actions as a fellow shareholder" and "relate to the internal conduct of . . . corporate business"), *aff'd*, 370 F. App'x 132 (2d Cir. 2006).

Plaintiffs' strategic choice to limit their causes of action to only those arising under New York and U.S. federal law, and their disavowal of claims governed by Cayman law, means that their claims for breach of fiduciary duty and negligent misrepresentation – which are governed solely by Cayman Islands law – should be dismissed (or at least deemed withdrawn). *Gomez v. City of New York*, No. 14 CIV. 05932 (CM), 2016 WL 5115499, at *9 (S.D.N.Y. Sept. 16, 2016) ("Ironically, plaintiff's express disclaimer, in the amended complaint, of [particular claims] was a terrible mistake…. Plaintiff is the master of his complaint; the court will not second guess the decision not to plead the claim….") (dismissing claim).

Moreover, as explained below, these claims also fail under Cayman Islands law.

### C.    Count IV, Alleging Negligent Misrepresentation, Should Be Dismissed

Although Cayman law controls Plaintiffs' claims for negligent misrepresentation (*supra* § I.B.), there is no actual conflict of laws because New York law and Cayman law each include essential elements of, among others, (i) a material misstatement; (ii) reliance; and (iii) causation.

*See Capricorn Invs. III, L.P. v. CoolBrands Int'l, Inc.*, 66 A.D.3d 409, 409 (1st Dep't 2009) (material misstatement); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007) (reliance and causation); Exh. 3 ¶¶ 8-17 (Hollington-2) (discussing elements under Cayman law); Exh. 4 ¶¶ 12-17 (Hollington-3) (showing lack of causation).  Because Plaintiffs do not plead any of these elements, they each provide an independent ground to dismiss the claim.

As shown above, the three alleged types of misstatements, about the "fairness" of the transaction and merger price, the independence of M&C, and a lack of present intention to resell the Company, are simply not actionable misstatements.  (*Supra* § I.A.2.)  And as described with respect to the Section 10(b) and 13(e) claims, because Plaintiffs' votes were not required to effect the merger, because there is no allegation that Plaintiffs forfeited any appraisal remedy by voting for the merger, and because the merger price was set by the transaction sponsors rather than market forces, there is no causation, reliance or materiality.  (*Supra* § I.A.1.)  Accordingly, Count IV should be dismissed.

        **D.**      **<u>Count V, Alleging Breach of Fiduciary Duty, Should Be Dismissed</u>**

Count V asserts that Defendants breached fiduciary duties they owed directly to the Plaintiffs.  (AC ¶¶ 170-78.)  This claim fails both because (i) under Cayman law directors and majority shareholders owe duties only to the corporation and not to individual shareholders, absent special circumstances not present here, and (ii) ADS holders are not considered shareholders under Cayman law, and so cannot exercise the rights enjoyed by shareholders in any event.  (Exh. 3 ¶¶ 18-25 (Hollington-2); Exh. 4 ¶¶ 9-10 (Hollington-3).)[17]  Accordingly, Count V should be dismissed.

_____

[17] *See Feiner Fam. Tr. v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *7 (S.D.N.Y. Sept. 11, 2007) ("[U]nder Cayman Islands law, majority shareholders do not owe

II.     **ARBITRATION SHOULD BE STAYED**

At the same time Plaintiffs seek to ignore the Second Circuit's actual, explicit mandate that the case be "remanded for the district court to consider Defendants' motion to dismiss for failure to state a claim" (Doc. 107, at 35:7-8), they make much of the Second Circuit's observation that the Deposit Agreement "required [Plaintiffs' common law claims] to be submitted to arbitration" (*id.* at 32:15).  But the Second Circuit did not have occasion to address, and so never reached nor discussed, the natural consequence of Plaintiffs' strategic elections to ignore the agreement and *not* submit their claims to arbitration in 2016, or any other time in the intervening six years.  That waiver (together with Plaintiffs' explicit waiver in open Court in 2019), and the resulting running of the statute of limitations, foreclose Plaintiffs' attempt to arbitrate now.

A.     **Plaintiffs Have Waived Any Contractual Right to Arbitrate**

It is long established that a right to arbitrate, like all contractual rights, may be waived. *Nortuna Shipping Co. v. Isbrandtsen Co.*, 231 F.2d 528, 529 (2d Cir. 1956).  Such a waiver may be explicit or implicit and, where the party seeking arbitration has participated in federal litigation, the issue of waiver is for the Court to determine.  *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 n.12 (2d Cir. 1995) ("[W]e are bound to hold that a district court may reach the question of waiver whenever a party seeking arbitration has engaged in any prior litigation.").

---

fiduciary duties to … minority shareholders ... [and] a director does not owe any fiduciary duties to minority shareholders solely based on his or her relationship to the company.").

1.    **Plaintiffs Have Explicitly Waived Arbitration**

A party waives its right to arbitrate when it expressly indicates that it wishes to resolve its claims before a court.  *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *abrogated on other grounds by McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 849 F.2d 761, 765 (2d Cir. 1988); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (Waiver of a contractual right results from "a clear manifestation of an intent . . . to relinquish [a] known right."); *Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 Civ. 10037(DLC), 2004 WL 1375557, at *3-4 (S.D.N.Y. June 21, 2004) (finding express waiver where defendant stated it "would gladly keep the parties' disputes before this Court").

Plaintiffs made such an express waiver of a known right to arbitrate, on the record in open Court, in response to the Court's simple, direct question:

> [THE COURT:] There is a forum selection clause; yes, sir?
>
> MR. LIEBERMAN: Yes, your Honor.
>
> THE COURT: OK.  No one is talking about arbitration still, also correct, sir?
>
> MR. LIEBERMAN: No.
>
> THE COURT: You're not?
>
> MR. LIEBERMAN: I'm not.  I'm not.
>
> THE COURT: You believe the case should be here?
>
> MR. LIEBERMAN: Yes.

(Doc. 77, at 4:10-18 (Tran. of July 16, 2019).)

On that basis alone, arbitration should be stayed.[18]

---

[18] Indeed, in 2016 Plaintiffs executed a Civil Cover Sheet, in which they explicitly answered the question "Is this an international arbitration case?" with the word "No," and chose to not check the box for "Arbitration" under "Other Statutes."  (Doc. 6.)

## 2.   **Alternatively, Plaintiffs Have Implicitly Waived Arbitration**

Waiver of arbitration may also be implicit, through conduct that is "inconsistent with [a] contractual right to compel arbitration."  *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 104 (2d Cir. 1997); *see also Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).  As a result, waiver is more easily found the longer the litigation proceeds and the more a party avails itself of the opportunity to litigate.  *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019); *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002).[19]   Plaintiffs here clearly have waived arbitration.

Plaintiffs filed this case in 2016, after foregoing their statutory remedy of an appraisal action in the Cayman Islands, whereupon they also elected not to demand arbitration.  The strategic reason for this seems obvious, as the Deposit Agreement forbids class-wide arbitration and waives any jury right – opportunities Plaintiffs sought in this Court but which are unavailable in arbitration.  (*Compare* Doc. 49-6, at 54 & 55 (Deposit Agmt.) *with* AC ¶ 32 & page 1.)  Then, in 2019, when Defendants' initial Rule 12(b)(6) motion exposed the manifest flaws in the Complaint, Plaintiffs did not then seek to escape to arbitration.  Instead, they "doubled-down" on litigation by filing an Amended Complaint containing federal securities claims and disavowed reliance on Cayman law – expressly to plead around the Deposit Agreement's arbitration clause and remain in federal court.  That conduct is wholly inconsistent with any desire to arbitrate, and instead reveals Plaintiffs were absolutely intent on remaining in federal court – exactly as they represented to the Court.  (Doc. 77, at 4:10-18.)

---

[19] The Supreme Court has recently held that courts may not "condition a waiver of the right to arbitrate on a showing of prejudice."  *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022).  Courts "may not devise novel rules to favor arbitration over litigation."  *Id.*

This therefore is not the usual waiver dispute where a defendant was unaware of its right to arbitrate or lingered too long before seeking to arbitrate claims commenced against it in the plaintiffs' chosen courthouse, but instead arises from *Plaintiffs'* knowing, strategic decisions to commence litigation rather than demand arbitration and then – six years later after two trips to the Court of Appeals, with adverse findings on choice of law and sworn admissions by their own expert imperiling their claims – seek to reverse course and start anew in arbitration.[20] That is pure gamesmanship and should be stopped.  As the Second Circuit has observed:

> [I]t is significant that [it] is a plaintiff, rather than a defendant, moving for arbitration.
>
> * * * *
>
> [A] litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court.  "[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration."

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160-61 (2d Cir. 2010) (arbitration waived by eleven month delay during which defendants had submitted a letter "detailing perceived deficiencies" in the complaint) (citation omitted).

**B.    Plaintiffs' Arbitration Claims Are Time Barred**

**1.    Plaintiffs' Claims Accrued More Than Six Years Ago**

Plaintiffs' Demand for Arbitration purports to allege claims for breach of fiduciary duty and negligent and fraudulent misstatement, under New York or U.S. federal law, as well as a claim for breach of a duty of full disclosure under Cayman law.  (Exh. 1.)  Each of these claims is subject to a statute of limitation no longer than six years.[21]  *See* CPLR §§ 213(1), (8); *see also*

---

[20] The six years of litigation here is far in excess of periods found to constitute waiver.  *E.g.*, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (seven months); *S & R Co. of Kingston*, 159 F.3d at 82, 85 (fifteen months); *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 232 (E.D.N.Y. 2009) (twenty-two months).

[21] To the extent the Demand alleges misstatement claims under federal law, they are subject to a five-year statute of repose, 28 U.S.C. § 1658(b), which is not subject to tolling, *SRM Glob.*

*Austin v. Fordham Univ.*, No. 21-CV-6421 (JPO), 2022 WL 4626485, at *7, *9 (S.D.N.Y. Sept. 30, 2022) (fraudulent misrepresentation and negligent misrepresentation); *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003) (breach of fiduciary duty); *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 457 F. Supp. 3d 233, 248 (S.D.N.Y. 2020) (six-year statute of limitations under Cayman Islands law); CPLR § 202 (claim must be commenced within the shorter of the New York or foreign limitations period).

Even assuming, *arguendo*, that Plaintiffs' September 9, 2022, Demand for Arbitration was effectively served that same day (Exh. 1), any arbitration claims accruing more than six years prior, *i.e.*, before September 9, 2016, are time barred and should be stayed.[22]  Importantly, "[a] tort claim accrues as soon as 'the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint.'"  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (quoting *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).

All of Plaintiffs' claims concern alleged misstatements in, and omissions from, the Notice of Extraordinary General Meeting of Shareholders attached to the Company's June 17, 2016, Form 13E-3.  (Demand ¶ 2; *accord* AC ¶ 2; AC, Exh. 3.)  But, as shown above, all of the supposedly concealed facts, and all of the matters that supposedly rendered the merger unfair, were actually disclosed in that very document on June 17, 2016.  (*Supra* § I.A.1.)

Moreover, Plaintiffs claim that several elements of their alleged damages were immediately felt on that same day: "when Respondents first made their misrepresentations on

---

*Master Fund LP v. Bear Stearns Cos.*, 829 F.3d 173, 177 (2d Cir. 2016) ("*American Pipe* tolling does not apply to § 1658(b)(2)'s five-year statute of repose"); *see also California Pub. Emps' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2055 (2017).

[22] CPLR § 7502(b) ("If … the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court as provided in section 7503….").

June 17, 2016, Dangdang's stock price fell to a low of $5.82 per ADS share [and t]he price remained below the $6.70 per ADS share…."  (Demand ¶ 3; *accord* AC ¶¶ 3, 112.)[23]  Plaintiffs allege three ways in which the alleged misrepresentations damaged them: "*First*, this caused Claimants to be unable to sell their ADS shares in the market for a higher price than the grossly unfair Going Private Merger price"; "*Second*, Respondents' misrepresentations also caused Claimants' damages by causing Dangdang's stock price to remain depressed, and thus significantly reduce the incentive for another third-party bidder to make a superior offer to buy Dangdang"; and "*Third*, Respondents' misrepresentations also deceived Claimants and thus prevented them from being able to obtain a fair price through the exercise of appraisal rights." (Demand ¶¶ 110, 118, 122; *accord* AC ¶¶ 113, 121, 125, 143.)

Thus, "as soon as" June 17, 2016 – and certainly before September 9, 2016 – Plaintiffs were "able to state the elements of [their] cause[s] of action, and hence, to assert a valid right to some sort of legal relief." *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 26 (2d Dep't 1989).  Even though Plaintiffs allege they suffered additional harm when their ADSs were cancelled, Plaintiffs have alleged that they "first suffered damages" on June 17, 2016.  *IDT Corp.*, 12 N.Y.3d at 141. At that point, upon the announcement of the merger and the allegedly depressed stock price, "every element of the claim[s], including injury, [could] be alleged" and the limitations period began to run.  *Honua Fifth Ave. LLC v. 400 Fifth Realty LLC*, 111 A.D.3d 579, 580 (1st Dep't 2013).[24]

---

[23] Plaintiffs' allegation that the misrepresentations were "repeated" on July 5, July 18, July 22, August 1, and September 20, 2016, when the Notice was republished as an exhibit to amendments to the Form 13E-3 (Demand ¶¶ 89-90) does not alter the result.  The "mere continuations of the initial misrepresentation[s]" does not toll the statute of limitations.  *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 203 (3d Cir. 2006).

[24] Later, additional harm suffered by Plaintiffs does not alter the initial accrual of the claim or toll the statute.  *See Coffee v. Gen. Motors Acceptance Corp.*, 30 F. Supp. 2d 1376, 1382 (S.D.

2. **The Limitation Periods Were Not Tolled**

As shown above (*supra* § II.A.2.), Plaintiffs have exhibited an extreme lack of diligence in seeking arbitration, rendering any claimed entitlement to equitable tolling inappropriate. *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 49 (2d Cir. 2014) (holding that a plaintiff who seeks a "'parallel' avenue of relief" is not entitled to have the court equitably "toll the applicable limitations period"). Indeed, in the analogous situation of a plaintiff who demands arbitration but then later seeks to file in court, the "pursuit of arbitration [does] not toll the federal statute of limitations" because "[a] plaintiff who pursues arbitration is not required to await the outcome to bring an action in court, and there is an accepted procedure for pursuing arbitration and a lawsuit simultaneously." *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 889 (8th Cir. 2015); *see also Fonseca v. USG Ins. Servs., Inc.*, 467 F. App'x 260, 261 (5th Cir. 2012); *United States ex rel. Wrecking Corp. of Am. v. Edward R. Marden Corp.*, 406 F.2d 525, 526 (1st Cir. 1969).[25] Here, Plaintiffs could have ensured that the statutes of limitations did not bar arbitration simply by timely filing a demand for arbitration. And if it turned out "that there was no obligation to arbitrate," the statute of limitations to file in court would have been tolled for "one year after such final determination." *Individual Secs., Ltd. v. Ross*, 152 F.3d 918 (table), 1998 WL 385835, at *2 (2d Cir. 1998) (quoting CPLR § 204(b)).

---

Ga. 1998) ("It is unnecessary . . . for Plaintiffs to have experienced their entire injury for an actual injury to occur … [and] "begin the statute of limitations period."); *see also Ferring B.V. v. Allergan, Inc*., 932 F. Supp. 2d 493, 505 (S.D.N.Y. 2013) (dismissing claim as untimely even though the plaintiff asserted additional damages within the statute of limitations).

[25] If Plaintiffs legitimately had any interest in arbitrating in 2016, they could have instituted an arbitration to preserve their rights and then agreed to stay the arbitration while the litigation proceeded – exactly as they did last month with respect to their present arbitration Demand. (Doc. 109 ("Lead Plaintiffs have already taken steps to preserve their ability to pursue the common law claims in New York arbitration by filing an arbitration demand."); Doc. 112, at 2 ("Plaintiffs agreed to stipulate before the … AAA that … all deadlines in arbitration are tolled … and … the AAA has already suspended all deadlines."); Exh. 2 (acknowledging agreed stay).)

But they chose instead to "sleep[] on their rights" and pursue litigation exclusively.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983).

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny do not save Plaintiffs' claims.  While "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails," it "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).  Yet that is exactly what Plaintiffs' Demand seeks to do.

Nor does *American Pipe* tolling apply to the individual claims of the named plaintiff in the initial suit.  No "efficiency" or "economy of litigation" is served by applying the doctrine in such a situation. *Id.* at 1811.  *American Pipe* tolling exists because its absence would require "putative class member[s]" to "intervene[]" or "file a separate action prior to the expiration of [their] own period of limitations . . . to ensure that their rights would not be lost in the event that class certification was denied."  *Crown, Cork*, 462 U.S. at 350-51.  But excluding subsequent suits by the named plaintiff would not create the "needless multiplicity of actions" that is the basis for *American Pipe* tolling.  *Id.* at 351.  To the contrary, as demonstrated here, it would foreclose a plaintiff from taking a trial run in federal court, with the opportunity to seek a new forum if the court seems unlikely to rule in her favor.[26]  "Ordinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims," but "[a] would-be class representative who commences suit after expiration of the limitation period

---

[26] The Supreme Court therefore limited tolling to "asserted members of the class *who would have been parties*," *American Pipe*, 414 U.S. at 554 (emphasis added), and "*unnamed* class members . . . fil[ing] individual claims," *China Agritech*, 138 S. Ct. at 1804 (emphasis added), not the named party to the initial suit filing a duplicative, follow-on action.

. . . can hardly qualify as diligent in asserting claims and pursuing relief." *China Agritech*, 138 S. Ct. at 1808. Accordingly, even for their individual claims, *American Pipe* tolling does not rescue Plaintiffs from the consequences of their strategic decisions.

### C.        Plaintiffs' Class Claims Are Not Arbitrable

The Supreme Court has held "that a party may not be compelled under the [Federal Arbitration Act (FAA)] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). And inferring an agreement to arbitrate from silence or ambiguity "is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.* "[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019).

The Arbitration Clause here contains no agreement to arbitrate class claims. Like the clause in *Stolt-Nielsen*, which covered "[a]ny dispute arising from" the agreement, 559 U.S. at 667, the Arbitration Clause here covers "[a]ny controversy, claim or cause of action brought by any party . . . arising out of or relating to" the agreements. (Doc. 49-6, at 54.) Indeed, the Arbitration Clause here is even less capacious than the provision held not to support arbitration of class claims in *Lamps Plus*. The provision in *Lamps Plus* directed that "arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment," 139 S. Ct. at 1413, while the Arbitration Clause here is expressly limited to claims brought by a "party" – not "any and all" claims. Because Plaintiffs cannot point to any unambiguous agreement to arbitrate class claims, the Court should stay arbitration of class claims.

### D.   This Court Should Decide All Issues of Arbitrability

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*. at 649.  The Supreme Court has explained that "any potentially dispositive gateway question" can be considered a "'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  Thus, "[i]f the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014).

But the Court need not search very far or weigh competing presumptions to determine the parties' intent here, as Plaintiffs' actions and statements are crystal clear.  By suing in this Court – and then litigating for six years in this Court and the Court of Appeals the meaning, scope, and applicability of the very forum selection clause they now claim supports their demand for arbitration[27] – Plaintiffs clearly "expected [the] court to have decided the gateway matter[s]" implicated by that clause, including statutes of limitation and class-wide arbitrability.  *Howsam*, 537 U.S. at 83.  Plaintiffs clearly did not think "that they had agreed that an arbitrator would do so," *id.*, especially because they explicitly told this Court that they had no interest in an arbitrator deciding ***anything***.  (*Supra* § II.A.1; Doc. 77, at 4:10-18.)

---

[27] *See Fasano v. Li*, 47 F.4th 91, 96 (2d Cir. 2022) (characterizing the forum-selection clause that has been the basis of this litigation until now as "embedded in an arbitration clause"); *Fasano v. Yu Yu*, 921 F.3d 333, 336 n.1 (2d Cir. 2019).

Indeed, having now specifically asked the Court to determine whether to compel arbitration of "all" of their claims, which necessarily include class claims,[28] Plaintiffs cannot dispute that the question of class-wide arbitrability is for the Court to decide.  *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 400 (S.D.N.Y. 2011) (resolving class arbitrability because the parties agreed that the court was the proper forum for resolution), *rev'd on other grounds sub nom. Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013).

Therefore, arbitration should be stayed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Motion be granted in all respects.

Dated:  New York, New York   Respectfully submitted,
   October 24, 2022

        /s/ Scott D. Musoff
       Scott D. Musoff
       James W. Brown

       SKADDEN, ARPS, SLATE,
        MEAGHER & FLOM LLP
       One Manhattan West
       New York, New York 10001
       Telephone: (212) 735-3000
       Facsimile: (212) 735-2000
       E-Mail:  scott.musoff@skadden.com
            james.brown@skadden.com

       *Attorneys for Defendants*

---

[28] Although Plaintiffs' Demand does not currently allege securities claims (Exh. 1), Plaintiffs' ask the Court to dismiss their securities law claims and "permit all claims to go forward in arbitration."  (Doc. 109, at 1.)  Plaintiffs apparently hope their imprecise language will allow them to argue that this Court intended their claims to be arbitrable on a class-wide basis, even though the Deposit Agreement does not provide for class-wide arbitration.