UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOE FASANO; ALTIMEO OPTIMUM FUND; and
ALTIMEO ASSET MANAGEMENT, *individually
and on behalf of all others similarly situated,*

                    Plaintiffs,

                 -v.-

GUOQING LI; PEGGY YU YU; DANGDANG
HOLDING COMPANY, LTD.; E-COMMERCE
CHINA DANGDANG INC.; KEWEN HOLDING CO.
LTD.; SCIENCE & CULTURE LTD.; FIRST PROFIT
MANAGEMENT, LTD.; DANQIAN YAO; LIJUN
CHEN; MIN KAN; RUBY RONG LU; KE ZHANG;
and XIAOLONG LI,

                 Defendants.

16 Civ. 8759 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      After a second remand from the Second Circuit, this Court considers the

motion of Defendants E-Commerce China Dangdang, Inc., Dangdang Holding

Company Limited, Kewen Holding Company Limited, Science & Culture

International Limited, First Profit Management Limited, Guoqing Li, Peggy Yu

Yu, Danqian Yao, Lijun Chen, and Min Kan (collectively, "Defendants") to

dismiss the amended complaint filed by Co-Lead Plaintiffs Joe Fasano, Altimeo

Optimum Fund, and Altimeo Asset Management (collectively, "Plaintiffs") and

to stay arbitration, as well as Plaintiffs' cross-motion to compel arbitration of

their common-law claims.  Both sides source their motions to different portions

of the Second Circuit's decision in *Fasano* v. *Li*, 47 F.4th 91 (2d Cir. 2022)

("*Fasano IV*").  For the reasons set forth in the remainder of this Opinion, the

Court grants Plaintiffs' motion to compel arbitration of their common-law

claims, denies Defendants' motion to dismiss without prejudice to its renewal, and stays the case pending the completion of the arbitration.

## BACKGROUND[1]

### A.  Factual Background

The Court assumes familiarity with the factual and procedural histories of this case, and incorporates by reference its two prior opinions on Defendants' motions to dismiss, *Fasano* v. *Li*, No. 16 Civ. 8759 (KPF), 2017 WL 6764692 (S.D.N.Y. Dec. 29, 2017) ("*Fasano I*"), and *Fasano* v. *Li*, 482 F. Supp. 3d 158 (S.D.N.Y. 2020) ("*Fasano III*"), and the two correlative Second Circuit opinions, *Fasano* v. *Yu Yu*, 921 F.3d 333 (2d Cir. 2019) ("*Fasano II*"), and

---

[1]     This Opinion draws its facts from Plaintiff's Amended Complaint (the "AC" (Dkt. #79)), the well-pleaded allegations of which are taken as true on this motion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain exhibits attached to the AC (cited using the convention "AC, Ex. [ ]"), including the Deposit Agreement (the "Deposit Agreement" (AC, Ex. 5)), as well as certain exhibits attached to the Declarations of Ben Hutman in Support of Plaintiffs' Motion to Compel Arbitration (cited using the convention "Hutman Decl., Ex. [ ]") (Dkt. #120, 124)), including Defendants' appellate brief before the United States Court of Appeals for the Second Circuit in *Fasano* v. *Li*, No. 20-3131 (2d Cir.) ("Def. App. Br." (Hutman Decl., Ex. O)).  These documents are either incorporated by reference in the AC or a document of which the Court may take judicial notice.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint); *see also Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (discussing judicial notice of filings with regulators); *Edwards* v. *Khalil*, No. 18 Civ. 5138 (CS), 2021 WL 5450207, at *4 n.3 (S.D.N.Y. Nov. 22, 2021) (taking judicial notice of various documents filed in that and related litigations).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss and to stay arbitration as "Def. Br." (Dkt. #117); to Plaintiffs' joint memorandum of law in opposition to Defendants' motion to dismiss and to stay arbitration and cross-motion to compel arbitration as "Pl. Br." (Dkt. #121); to Defendants' joint reply memorandum of law in support of their motion to dismiss and to stay arbitration and in opposition to Plaintiffs' motion to compel arbitration as "Def. Reply" (Dkt. #122); and to Plaintiffs' reply memorandum of law in support of their motion to compel arbitration as "Pl. Reply" (Dkt. #125).

*Fasano IV*, 47 F.4th 91.  The Court summarizes below only those facts necessary to resolve the instant motions.

This action stems from a September 20, 2016 going-private transaction (the "Merger"), in which a group of controlling shareholders cashed out the minority American Depositary Share ("ADS") shareholders of Defendant E-Commerce China Dangdang, Inc. ("Dangdang" or "the Company") at artificially deflated prices.  (AC ¶¶ 1-2, 47, 143).  Plaintiffs bring federal securities law claims, as well as common-law claims for negligent misrepresentation, breach of fiduciary duty, and aiding and abetting the breach of fiduciary duty in connection with the Merger.  (*Id.* ¶¶ 126-184).

The principal corporate defendant, Dangdang, is a leading e-commerce company based in China and incorporated under the laws of the Cayman Islands.  (AC ¶¶ 11, 40 ("[Dangdang] is commonly known as the *Amazon.com* of China.")).  Dangdang became a publicly traded company in 2010, with its shares trading as ADSs on the New York Stock Exchange.  (*Id.* ¶¶ 1, 42). Ownership of Dangdang's ADSs was evidenced by American Depositary Receipts ("ADRs") (*see* Deposit Agreement, Ex. A (sample ADR)), and was governed by a deposit agreement to which Dangdang and "all Owners and Holders from time to time of [ADSs] issued [t]hereunder" were parties (Deposit Agreement 2).

The individual defendants in this action — Guoqing Li ("Li"), Dangdang's co-founder and Chief Executive Officer; Peggy Yu Yu ("Yu"), Dangdang's co-founder and Executive Chairwoman and Li's wife; Danqian Yao ("Yao"); Lijun

Chen ("Chen"); and Min Kan ("Kan") — were directors and officers of Dangdang at the time of the Merger.  (*Id.* ¶¶ 9-18, 29).  The remaining defendants are Kewen Holding Co. Limited ("Kewen"), Science & Culture International Limited ("SCI"), and First Profit Management Limited ("First Profit"), each an investment holding vehicle incorporated under the laws of the British Virgin Islands (*id.* ¶¶ 13-16); and Dangdang Holding Company Limited ("DHC"), a company based in China and incorporated under the laws of the Cayman Islands (*id.* ¶ 12).

Plaintiff Joe Fasano is a resident of New York and was an owner of Dangdang ADSs prior to the Merger.  (AC ¶ 6).  So too was Plaintiff Altimeo Optimum Fund ("AOF"), a French investment fund for whom Plaintiff Altimeo Asset Management ("AAM") served as authorized agent, which held over 440,000 Dangdang ADSs prior to the Merger.  (*Id.* ¶¶ 7-8).

On July 9, 2015, at an ebb in the Chinese stock market, individual defendants Li, Yu, Yao, Chen, and Kan, together with corporate defendants Kewen, SCI, First Profit, and DHC (collectively, the "Controlling Group"), offered to buy out Dangdang's minority ADS shareholders for $7.81 per ADS share. (AC ¶¶ 19, 47).  At the time, the Controlling Group controlled more than 80% of the aggregate voting power eligible to vote on the then-potential merger.  (*Id.* ¶ 54).  Dangdang then formed an alleged "sham" Special Committee to evaluate the Controlling Group's offer, made up of individuals who Plaintiffs allege had "disabling conflict[s] of interest."  (*Id.* ¶¶ 2, 55, 59-63).

On March 9, 2016, the Special Committee improperly refused to meaningfully consider a much higher, all-cash offer of $8.80 per ADS received

from a third-party private equity firm.  (AC ¶ 66).  Instead, on May 28, 2016, the Special Committee accepted an even lower offer from the Controlling Group of $6.70 per ADS share, in an "utter abandonment" of the ADS minority stockholders' interest.  (*Id.* ¶ 74).  After the Merger closed, Plaintiffs did not object to the transaction, thereby relinquishing their right to an appraisal of their shares.  (*Id.* ¶ 125).

Plaintiffs now allege that the Merger was substantively and procedurally unfair on several grounds, including because (i) Defendants misrepresented that the Special Committee was independent of the Controlling Group (AC ¶¶ 2, 55-63, 81); (ii) the Controlling Group refused to provide Dangdang or the Special Committee the opportunity to "go-shop" the Controlling Group's offer to third parties to confirm it was a fair deal price (*id.* ¶¶ 2, 78); (iii) the Controlling Group coercively refused to condition the Merger on a "majority of the minority" vote (*id.*); and (iv) the Controlling Group's plans to buy out Dangdang on the cheap (and to sell it soon after at a much higher value) were not sufficiently disclosed in Dangdang's public statements before, during, and after the Merger (*id.* ¶¶ 91-104).  Accordingly, Plaintiffs claim to have been "cashed out [of their ADSs] at artificially deflated prices."  (*Id.* ¶ 143).

## B.    Procedural Background

Plaintiffs initiated this action with the filing of a complaint on November 10, 2016.  (Dkt. #1).  On January 30, 2017, Plaintiffs filed a motion to be appointed Co-Lead Plaintiffs, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the

Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42.  (Dkt. #22).  Plaintiffs also moved to approve their selection of Sadis & Goldberg LLP as Lead Counsel.  (*Id.*).  On March 8, 2017, the Court issued an Order appointing Plaintiffs as Co-Lead Plaintiffs and Sadis & Goldberg LLP as Lead Counsel.  (Dkt. #32).

On March 15, 2017, Defendants filed a motion to dismiss Plaintiffs' initial complaint on *forum non conveniens* grounds; that motion would become the basis of both *Fasano I* and *Fasano II*.  (Dkt. #38-45).  Performing a traditional three-step *forum non conveniens* analysis, this Court granted Defendants' motion to dismiss.  *See generally Fasano I*, 2017 WL 6764692.  On appeal, the Second Circuit vacated this Court's decision due to its failure to account for a forum selection clause in the Deposit Agreement,[2] and remanded the action back to this Court for further proceedings.  *Fasano II*, 921 F.3d at 337.[3]

---

[2]    The Court pauses to note that the arbitration clause and forum selection clause embedded therein are part of a sample ADR attached as Exhibit A to the Deposit Agreement.  Each ADR is issued "upon the terms and conditions set forth in the [D]eposit [A]greement" (Deposit Agreement, Ex. A at 2), and thus the Court refers to the provision as being a part of the Deposit Agreement, rather than the ADR, throughout.  And while the Second Circuit in *Fasano IV* referred to the clause as being contained in the ADRs, *see Fasano* v. *Li*, 47 F.4th 91, 101 (2d Cir. 2022), it noted that the clause was "part of the arbitration clause set out in the Deposit Agreement," *id.*  Thus, the Court continues to reference the clause as being part of the Deposit Agreement, as it did in its prior opinion in *Fasano III*, *see Fasano* v. *Li*, 482 F. Supp. 3d 158, 162 (S.D.N.Y. 2020), and as the parties do in their briefing here (*see* Def. Br. 1; Pl. Br. 35).

[3]    The forum selection clause, which appears as part of the Deposit Agreement's arbitration provision, provides that:

> Any controversy, claim[,] or cause of action ... arising out of or relating to ... the American Depositary Shares ... shall be settled by arbitration ...; provided, further, that any such controversy, claim[,] or cause of action ... relating or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to

Following the Second Circuit's decision, Plaintiffs filed an amended complaint (Dkt. #79), and Defendants renewed their motion to dismiss on *forum non conveniens* grounds, while adding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #74-76).  The two opinions that followed — *Fasano III* and *Fasano IV* — addressed those motions.  In *Fasano III*, this Court found that, because the Deposit Agreement's forum selection clause was applicable to only half of Plaintiffs' claims and to only five of the thirteen named defendants, the public interest factors on which the Court relied in *Fasano I* continued to favor dismissal on *forum non conveniens* grounds. *Fasano III*, 482 F. Supp. 3d at 175-77.  Consequently, this Court again dismissed the action for *forum non conveniens* and concluded that Defendants' alternative Rule 12(b)(6) motion had been rendered moot.  *Id.* at 177.

In *Fasano IV*, the Second Circuit found that this Court had misinterpreted the scope of the forum selection clause in *Fasano III*, thereby undercounting the non-signatory Defendants who were covered by the clause. *Fasano IV*, 47 F.4th at 94.  The Second Circuit also determined that this Court had attributed undue weight to the public interest factors favoring dismissal, and in particular, the interest of the Cayman Islands in deciding Plaintiffs' claims, "given that the controlling contract requires all common-law claims to

---

arbitration ... if, but only if, so elected by the claimant. ... Any controversy, claim[,] or cause of action ... not subject to arbitration ... shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York.

(Deposit Agreement, Ex. A § 23 (emphasis omitted)).

be submitted to arbitration in New York." *Id.* at 100.  Putting a finer point on the issue, *Fasano IV* expressly stated that Plaintiffs' common-law claims — as opposed to their claims under the federal securities laws — were "required to be submitted to arbitration" and "can be pursued only in a New York arbitration." *Id.* at 104-05.  Finally, the Second Circuit found that this Court in *Fasano III* had attributed too little weight to the public interest in avoiding the litigation of unsettled questions of United States securities laws in a foreign court.  *Id.* at 100.  Accordingly, the Second Circuit vacated this Court's decision a second time, and remanded the case "for the district court to consider Defendants' motion to dismiss for failure to state a claim." *Id.* at 105.

The instant cross-motions followed.  (*See* Dkt. #114 (transcript of September 22, 2022 pre-motion conference)).  On October 24, 2022, Defendants filed a motion to dismiss and to stay arbitration (Dkt. #116-118),[4] to which Plaintiffs responded and filed a cross-motion to compel arbitration on November 21, 2022 (Dkt. #119-121).  Defendants replied in further support of their motion to dismiss and to stay arbitration, and in opposition to Plaintiffs' motion to compel arbitration, on December 16, 2022.  (Dkt. #122-123).  On January 12, 2023, Plaintiffs filed a reply in further support of their motion to compel arbitration.  (Dkt. #124-125).

---

[4]     While Defendants use the term "stay" with respect to the arbitration, the Court does not understand that Defendants contemplate an arbitral proceeding subsequent to this litigation, but rather understands them to be requesting denial of any motion to compel arbitration brought by Plaintiffs by way of the various defenses asserted in their briefs. (*See* Def. Br. 20-30; Def. Reply 20-30).

## DISCUSSION

### A.    Applicable Law

The parties' cross-motions implicate both Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. §§ 1-14.  The legal standards for each motion are set forth here, although, as explained later in this Opinion, the Court's decision on Plaintiffs' motion to compel arbitration proves to be dispositive.

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [a] [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  To that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678

(quoting *Twombly*, 550 U.S. at 557).  In other words, the factual allegations

must "possess enough heft to show that the pleader is entitled to relief."

*Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant

to Rule 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable L.L.C.*,

622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for

all purposes."); *see generally United States ex rel. Foreman* v. *AECOM*, 19 F.4th

85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022).  Beyond this

narrow universe of materials, a court may also consider "facts of which judicial

notice may properly be taken under Rule 201 of the Federal Rules of Evidence"

and may "disregard allegations in a complaint that contradict or are

inconsistent with judicially-noticed facts."  *Exch. Listing, LLC* v. *Inspira Techs.,

Ltd.*, — F. Supp. 3d —, No. 22 Civ. 1889 (KPF), 2023 WL 2403223, at *4

(S.D.N.Y. Mar. 8, 2023) (quoting *Becker* v. *Cephalon, Inc.*, No. 14 Civ. 3864

(NSR), 2015 WL 5472311, at *3, 5 (S.D.N.Y. Sept. 15, 2015) (internal quotation

marks and citations omitted)).

### 2.    Motions to Compel Arbitration Under the FAA

Section 4 of the FAA requires courts to compel arbitration in accordance

with the terms of an arbitration agreement, upon the motion of either party to

the agreement, provided that there is no issue regarding its creation.  *See AT&T*

*Mobility LLC* v. *Concepcion,* 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4).  "In the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court." *Wachovia Bank, Nat'l Ass'n* v. *VCG Special Opportunities Master Fund, Ltd.,* 661 F.3d 164, 171 (2d Cir. 2011); *accord Beijing Shougang Mining Inv. Co.* v. *Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2889 (2022).

When resolving a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun* v. *Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.*  Yet, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia,* 661 F.3d at 172 (quoting *Bensadoun,* 316 F.3d at 175).

Courts in this Circuit consider four issues in the context of a motion to compel arbitration: "[i] whether the parties in fact agreed to arbitrate; [ii] the scope of the arbitration agreement; [iii] if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable; and [iv] if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Application of Whitehaven S.F., LLC* v. *Spangler*, 45 F. Supp. 3d 333, 342

(S.D.N.Y. 2014), *aff'd sub nom. Whitehaven S.F., LLC* v. *Spangler*, 633 F. App'x 544 (2d Cir. 2015) (summary order) (citing *JLM Indus., Inc.* v. *Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004), *abrogated on other grounds as recognized in Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO* v. *Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023)); *accord Champion Auto Sales, LLC* v. *Polaris Sales Inc.*, 943 F. Supp. 2d 346, 351 (E.D.N.Y. 2013).

## B.   Analysis

### 1.   The Court Grants Plaintiffs' Motion to Compel Arbitration

#### a.   The Arbitration Provision and the Mandate Rule

The Court first considers Plaintiffs' motion to compel arbitration of their common-law claims.  As relevant here, paragraph 23 of the Deposit Agreement provides that:

> (a)   Any controversy, claim or cause of action brought by any party hereto against [Dangdang] arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the breach thereof, shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association ... provided ... that any such controversy, claim or cause of action brought by a party hereto against [Dangdang] relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to arbitration as provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the claimant.
>
> The place of the arbitration shall be The City of New York, State of New York, United States of America, and the language of the arbitration shall be English.
>
> *       *       *

If a dispute, controversy or cause of action shall involve more than two parties, the parties shall attempt to align themselves in two sides (i.e., claimant(s) and respondent(s)), each of which shall appoint one arbitrator as if there were only two parties to such dispute, controversy or cause of action.

(b) Any controversy, claim or cause of action ... not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

(Deposit Agreement, Ex. A § 23).  Section 7.06 of the Agreement, in turn, provides that:

EACH PARTY TO THIS DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE SHARES OR OTHER DEPOSITED SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE RECEIPTS, THIS DEPOSIT AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(Deposit Agreement § 7.06).

As evidenced by the extensive procedural history of this case, Plaintiffs did not initially seek to arbitrate their common-law claims, ostensibly because they did not believe those claims to implicate the arbitration clause.  (Pl. Br. 2,

6).  Defendants take a different view, and instead assert that Plaintiffs strategically elected to proceed in federal court, thereby waiving their right to arbitration, and thus should not be able to compel it now.  (Def. Reply 20-22). Setting aside for the moment the issue of waiver, the fact remains that the Second Circuit clarified that the clause at issue "require[s]" Plaintiffs' common-law claims to be submitted to arbitration.  *Fasano IV*, 47 F.4th at 104-05; *see also id.* at 100 (noting that the Deposit Agreement "requires all [of Plaintiffs'] common-law claims to be submitted to arbitration in New York"); *id.* at 104 ("according to [the Deposit Agreement]," Plaintiffs' non-Federal securities claims "must … be submitted to arbitration").

Under the mandate rule, a "branch of the law-of-the-case doctrine, … 'where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court.'" *Burrell* v. *United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States* v. *Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)); *see also United States* v. *Ben Zvi*, 242 F. 3d 89, 95 (2d Cir. 2001) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." (internal quotation marks and citation omitted)).  Stated differently, "[w]hen an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue," *United States* v. *Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (citing *Munro* v. *Post*, 102 F.2d 686, 688 (2d Cir. 1939)), "and is precluded from altering the appellate

14

decision," *id.* (citing *United States* v. *Fernandez*, 506 F.2d 1200, 1202-03 (2d Cir. 1974)).  "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Ben Zvi*, 242 F.3d at 95 (internal quotation marks and citation omitted).

Defendants are correct that the Second Circuit's decretal language noted only that "the matter [was] remanded for [this Court] to consider Defendants' motion to dismiss for failure to state a claim." *Fasano IV*, 47 F.4th at 105. However, the Circuit's three explicit and unambiguous references to the Deposit Agreement's requirement of arbitration of Plaintiffs' common-law claims — especially where the parties' briefing on appeal discussed their contemporaneous understandings of the arbitration clause (*see* Hutman Decl., Ex. B; Def. App. Br.) — suggest that Plaintiffs' common-law claims must proceed at some point to arbitration.[5]

Seemingly recognizing this inevitability, Defendants mount three defenses to Plaintiffs' motion to compel arbitration: (i) Plaintiffs waived their right to arbitrate their common-law claims both explicitly at a July 16, 2019

---

[5]    For avoidance of doubt, the Court is mindful of the Second Circuit's mandate that this Court resolve Defendants' motion to dismiss, but, as discussed below, it declines to do so while the arbitration is pending in order to avoid piecemeal litigation, overlapping discovery, and inconsistent issue resolution, given the significant factual overlap between the two sets of claims.  *See Katsoris* v. *WME IMG, LLC*, 237 F. Supp. 3d 92, 110-11 (S.D.N.Y. 2017) (discussing propriety of stay where significant factual overlap between arbitrable claims and non-arbitrable claims); *Alghanim* v. *Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (staying remaining federal claims in similar circumstances to "promote judicial economy, avoidance of confusion and possible inconsistent results" (quoting *Birmingham Assocs. Ltd.* v. *Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008))).

pre-motion conference before this Court (Def. Br. 21; Def. Reply 20-22), and implicitly through their litigation strategy (Def. Br. 22-23; Def. Reply 22-24); (ii) Plaintiffs common-law claims are all time-barred (Def. Br. 23-28; Def. Reply 24-26); and (iii) class arbitration is not available under the Deposit Agreement (Def. Br. 28-30; Def. Reply 26-30).  With particular respect to the third point, Defendants argue that the issue of class arbitrability should be decided by this Court, rather than the arbitrator, in light of the arbitration clause's silence on this issue and the Supreme Court's decisions in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), and *Lamps Plus, Inc.* v. *Varela*, 587 U.S. —, 139 S. Ct. 1407 (2019).  (*See* Def. Reply 27-30).  The Court first considers the antecedent issue of which matters are committed to the Court's discretion and which to the arbitrator's, and then considers, insofar as it can, the merits of Defendants' challenges.

### b.    The Authority to Decide Threshold Matters

Where an arbitration agreement is "silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of [two] presumptions." *BG Grp., PLC* v. *Republic of Argentina*, 572 U.S. 25, 34 (2014).  *First*, "courts presume that the parties intend courts, not arbitrators, to decide ... disputes about 'arbitrability.'  These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Id.* (quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  Courts are required to

independently decide those issues "unless the record supplies 'clear and unmistakable evidence' that the [p]arties agreed to submit the issue to arbitration." *Olin Holdings Ltd.* v. *State*, 73 F.4th 92, 105 (2d Cir. 2023) (first quoting *Beijing Shougang*, 11 F.4th at 154, and then quoting *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995)).

*Second*, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp.*, 572 U.S. at 34. These procedural preconditions "include claims of waiver, delay, or a like defense to arbitrability," as well as "the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate," whose effect is to "determine[ ] when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all." *Id.* at 35 (emphases and internal quotation marks omitted).

### c. The Timeliness Issue Is Committed to the Arbitrator, But the Court May Consider the Waiver Issue

Turning now to Defendants' arguments in opposition to Plaintiffs' motion to compel, the Court begins by finding that Defendants' timeliness challenges are plainly for the arbitrator to decide, not the Court. *See, e.g.*, *Olin Holdings Ltd.*, 73 F.4th at 105 (citing *BG Grp.*, 572 U.S. at 34-35). And while *BG Group* and *Olin Holdings* note that the arbitrator should similarly decide claims of waiver, this Court has discretion to consider waiver arguments where, as here, "the party seeking arbitration has engaged in ... prior litigation." *McCoy* v. *Dave & Buster's, Inc.*, No. 15 Civ. 0465 (JFB), 2018 WL 550637 at *4 n.5

(E.D.N.Y. 2018) (quoting *Doctor's Assocs., Inc.* v. *Distajo*, 66 F.3d 438, 456 n.12 (2d Cir. 1995)).  Accordingly, the Court proceeds to consider the merits of Defendants' waiver argument.

### d.    Plaintiffs Did Not Impliedly Waive Their Right to Arbitrate Their Common-Law Claims

The right to arbitrate, like all contractual rights, may be waived.  *Nortuna Shipping Co.* v. *Isbrandtsen Co.*, 231 F.2d 528, 529 (2d Cir. 1956).  Such a waiver may be explicit or implicit.  *Stevenson* v. *Tyco Int'l (US) Inc. Supplemental Exec. Ret. Plan*, No. 04 Civ. 4037 (KMK), 2006 WL 2827635, at *11 (S.D.N.Y. Sept. 29, 2006).  Defendants argue that Plaintiffs both expressly and impliedly waived their right to arbitrate.  In support of their express waiver claims, Defendants make two arguments: *first*, Plaintiffs checked the "no" box on the 2016 Civil Cover Sheet attendant to this case, indicating that this was not an international arbitration case, and left blank the option for arbitration under other statutes (Def. Br. 21 n.18); and *second*, Plaintiffs indicated at the Court's July 16, 2019 pre-motion conference that they believed the case should be in federal court, and not arbitration (*id.* at 21).  Alternatively, in support of their claim of implied waiver, Defendants cite to the six years of litigation that have occurred since the filing of this lawsuit, including Plaintiffs' "strategic" filing of an amended complaint containing federal securities claims as a means of remaining in federal court.  (*Id.* at 22-23).  This gamesmanship, they allege, is indicative of Plaintiffs' implied waiver.  (*See id.*).

"Because waiver of a contractual right must be proved to be intentional, the defense of waiver requires a clear manifestation of an intent by plaintiff to

relinquish [his or] her known right." *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (internal quotation marks omitted). "There is a 'strong presumption in favor of arbitration," and waiver of the right to arbitration "is not to be lightly inferred.'" *Boustead Sec., LLC* v. *Leaping Grp. Co.*, No. 20 Civ. 3749 (VEC), 2023 WL 2481109, at *2 (S.D.N.Y. Feb. 14, 2023) (quoting *Coca-Cola Bottling Co.* v. *Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001) (internal quotation marks and citation omitted)).

When assessing whether a party has waived its right to arbitration, courts in this Circuit consider "[i] the time elapsed from when litigation was commenced until the request for arbitration," and "[ii] the amount of litigation to date, including motion practice and discovery." *La. Stadium & Expo. Dist.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).[6] There is "no rigid formula" or "bright-line rule" for identifying waiver, however, *id.*, and the court may also consider factors such as whether Plaintiffs expressly waived their right to arbitrate.

---

[6]     The Second Circuit previously considered a third factor: the extent to which arbitration would prejudice the non-movant. *See La. Stadium & Expo. Dist.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). The Supreme Court recently held in *Morgan* v. *Sundance, Inc.*, 596 U.S. —, 142 S. Ct. 1708, 1711 (2022), however, that the FAA does not authorize federal courts to create an "arbitration-specific procedural rule" that a party only waives its arbitration right when "its conduct has prejudiced the other side." The Supreme Court therefore instructed the Eighth Circuit, whose waiver rule derived from Second Circuit caselaw, to "[s]trip[ ]" the prejudice requirement from its waiver analysis so that its "current waiver inquiry would focus on" the test's remaining factors, which probed the movant's conduct as opposed to "the effects of" the movant's conduct on the opposing party. *Id.* at 1713-14.

Before the Court delves into its waiver analysis, it notes that Defendants previously raised their express waiver argument before the Second Circuit in their briefing in *Fasano IV*.  (*See* Def. App. Br. 18 n.6 ("Plaintiffs complain that, if the District Court were correct in analyzing the ADS Forum Clause, the appropriate remedy was to compel arbitration, rather than dismissal ....  The District Court directly asked Plaintiffs that question, and Plaintiffs declined arbitration.")).  While not addressing the argument directly, the Second Circuit implicitly rejected all of Defendants' arguments in concluding that Plaintiffs' common-law claims were required to proceed to arbitration.  *See Fasano IV*, 47 F.4th at 104 (noting that Plaintiffs' common-law claims "are required to be submitted to arbitration"); *see also id.* at 105 ("We have considered all of Defendants' arguments in support of the judgment and plaintiffs' arguments for precluding Defendants from pursuing a motion to dismiss under Rule 12(b)(6), and have found them to be without merit.").  On this basis alone, the Court could decline to address the waiver argument again on remand.  Nevertheless, in the interest of completeness, the Court reviews the factors identified by the Second Circuit as significant to the waiver analysis.

### i.    The Time Elapsed

The fact that Plaintiffs waited over six years to request arbitration weighs against granting their motion, but it is well established that delay alone does not require a finding of waiver in this context, especially under such unique circumstances.  *See Thyssen, Inc.* v. *Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (noting that the Second Circuit "has refused to find

waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery" and collecting cases); *De Jesus* v. *Gregorys Coffee Mgmt., LLC*, No. 20 Civ. 6305 (MKB), 2022 WL 3097883, at *8 (E.D.N.Y. Aug. 4, 2022) ("[D]elay alone cannot support a finding of waiver in the context of arbitration.") (collecting cases); *see also Boustead Sec., LLC*, 2023 WL 2481109, at *2 (same).

"Courts have correspondingly concluded that there was no waiver even in the face of years-long delays." *Boustead Sec., LLC*, 2023 WL 2481109, at *4 (citing, *e.g.*, *Shearson Lehman Hutton, Inc.* v. *Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (finding no waiver despite three-year delay); *Sweater Bee by Banff, Ltd.* v. *Manhattan Indus.*, 754 F.2d 457, 461 (2d Cir. 1985) (finding no waiver despite two-year delay); *Brady* v. *W. Overseas Corp.*, No. 04 Civ. 2878 (JS), 2009 WL 1472736, at *3 (E.D.N.Y. May 22, 2009) (finding no waiver despite five-year delay); *Thomas* v. *A.R. Baron & Co.*, 967 F. Supp. 785, 789 (S.D.N.Y. 1997) (finding no waiver despite eighteen-month delay)).  Plaintiffs' delay is therefore not fatal to their motion.

### ii.    The Progress of the Litigation to Date

The lack of substantive litigation in this case to date weighs in favor of granting Plaintiffs' motion.  Despite the multiple years and multiple trips to the Second Circuit this case has taken, there has been almost no litigation on the merits of this dispute, and the parties have engaged in virtually no discovery. Courts have repeatedly recognized that this posture weighs against finding that a party has waived its right to arbitration.

Of potential note, the subject of both of this Court's prior opinions was limited to the Deposit Agreement's forum selection clause and related issues of *forum non conveniens*. *See generally Fasano I*, 2017 WL 6764692, and *Fasano III*, 482 F. Supp. 3d 158. In fact, Defendants' argument here is that the Court should decide, for the very first time, the merits of the case in connection with their motion to dismiss for failure to state a claim. (Def. Br. 20). In this procedural posture, courts routinely find no waiver. *See, e.g., Boustead Securities, LLC*, 2023 WL 2481109, at *4 (finding no waiver and compelling arbitration where defendants had filed three motions to dismiss, the parties had briefed two of them, the parties had engaged in "virtually no discovery," and defendant had not yet filed an answer); *In re Generali COVID-19 Travel Ins. Lit.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021) (concluding that waiver did not apply in part because there had been "no discovery" and the proceedings "primarily involved" consolidation, a motion to dismiss, and a motion to compel arbitration); *Katsoris* v. *WME IMG, LLC*, 237 F. Supp. 3d 92, 103 (S.D.N.Y. 2017) (concluding that the extent of litigation did not weigh in favor of waiver because "[a]lthough the parties ha[d] briefed outstanding motions, they [had] not conducted any discovery"); *Danny's Const. Co., Inc.* v. *Birdair, Inc.*, 136 F. Supp. 2d 134, 144 (W.D.N.Y. 2000) (concluding that the extent of litigation did not weigh in favor of waiver because the parties had engaged in no discovery and minimal motion practice).

Conversely, the Second Circuit has found that a party waives its right to arbitrate "when it engages in protracted litigation," such as "extensive pre-trial

discovery" and "substantive motions," over the course of several months before seeking arbitration. *PPG Industries, Inc.* v. *Webster Auto Parts Inc.*, 128 F.3d 103, 107-08 (2d Cir. 1997). In *PPG Industries, Inc.*, for example, the Second Circuit concluded that a plaintiff waived its right to arbitrate by "engaging in discovery" and "filing substantive motions" in a related action for "approximately five months" before moving to compel arbitration, which "evidenced a preference for litigation that supports a finding of waiver." *Id.* at 108-09. Similarly, in *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995), the Second Circuit found that a party had waived its right to arbitration by submitting and amending several pleadings, engaging in an "energetic pursuit of discovery," and waiting seven months — until "the eleventh hour, with trial imminent" — to seek enforcement of an arbitration agreement. *Id.* at 26. These cases are plainly distinguishable. And while Defendants are correct that in considering whether a party has waived its right to arbitrate, "[i]t is significant that [it] is a plaintiff, rather than a defendant, moving for arbitration" (Def. Br. 23 (quoting *La. Stadium & Exposition Dist.*, 626 F.3d at 160-61)), where no litigation on the merits has occurred, the concerns regarding forum-shopping and gamesmanship inherent in a plaintiff's late-stage decision to arbitrate are not present to the same degree.

Finally, courts have consistently concluded that pre-answer motion practice of the type conducted in this case does not constitute the sort of significant litigation that weighs in favor of a finding of waiver. *See Rush* v. *Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) (concluding that

defendants did not waive their right to arbitration even though court had partially denied their motion to dismiss); *Murray* v. *UBS Secs., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (holding defendants' motion to dismiss was not a sufficient basis on which to find waiver given "Second Circuit precedent to the contrary" and collecting cases); *Becker* v. *DPC Acquisition Corp.*, No. 00 Civ. 1035 (WK), 2002 WL 1144066, at *13 (S.D.N.Y. May 30, 2002) (concluding that defendants did not waive their right to arbitration by litigating motions to dismiss or by requesting extensions of time to brief their motions); *cf. Sweater Bee by Banff, Ltd.*, 754 F.2d at 463 (noting that a plaintiff bringing a claim related to an arbitrable claim should not be surprised by a pre-answer motion to dismiss); *Chatham Shipping Co.* v. *Fertex Steamship Corp.*, 352 F.2d 291, 293 (2d Cir. 1965) (noting that the "earliest point at which [a party may ordinarily waive its right to arbitration] is when the other party files an answer on the merits").

### e.  Plaintiffs Did Not Expressly Waive Their Right to Arbitrate Their Common-Law Claims

The Court is similarly unconvinced by Defendants' arguments regarding Plaintiffs' "express waivers" in their Civil Cover Sheet selections and at the July 2019 pre-motion conference.  Where, as here, Plaintiffs relied on a colorable, good-faith argument that the arbitration clause did not apply to their claims, the Court finds that any waiver was not knowing and intentional.  *See Luitpold Pharms. Inc.* v. *Ed. Geitslich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (finding no waiver where defendant adequately demonstrated that both parties understood the relevant agreement to not require defendant's

24

action, and noting that "oversight or thoughtlessness in failing to object" is not

sufficient to support an inference of waiver (internal quotation marks omitted));

*cf. Herrera* v. *Manna 2nd Ave, LLC*, No. 20 Civ. 11026 (GHW), 2022 WL

2819072, at *9 (S.D.N.Y. July 18, 2022) (finding no waiver where "there

appear[ed] that there was some question as to whether it was known whether

[d]efendants did, in fact, have a right to arbitrate their claims" because the

arbitration agreement could not be located, citing to the fact that "[w]aiver is

ultimately a matter of *intent*" (internal quotation marks and citation omitted));

*see also LG Electronics, Inc.* v. *Wi-Lan USA, Inc.*, 623 F. App'x 568, 570 (2d Cir.

2015) (summary order) (finding no waiver, noting in part in context of now-

defunct prejudice inquiry that defendant had "colorably maintained that its

claims [did] not implicate the [relevant agreement]").  Here, Defendants' own

brief before the Second Circuit conceded that, prior to (at the very earliest) this

Court's decision in *Fasano III*, Plaintiffs did not understand their common-law

claims to be subject to arbitration.  (*See* Def. App. Br. 18 n.6 ("Plaintiffs

complain that, *if the District Court were correct in analyzing the ADS Forum*

*Clause, the appropriate remedy was to compel arbitration, rather than*

*dismissal ....*  The District Court directly asked Plaintiffs that question, and

Plaintiffs declined arbitration." (emphasis added))).

Plaintiffs' colorable, but ultimately inaccurate, understanding of the

arbitration clause was also evidenced by their colloquy with this Court at the

July 16, 2019 pre-motion conference.  While Plaintiffs' counsel did state that

he was not "talking about arbitration," and that he "believe[d] the case should

25

be [before this Court]" (Hutman Decl., Ex. D at 4), it was because he believed the forum selection clause to require that Plaintiffs bring the claims before this Court. Indeed, as he stated, "the nature of the claims arising out of a common nucleus of operative fact [with the federal securities claims], that itself brings the other claims within the clause." (*Id.* at 5). Specifically, the Court asked if "there [was] a world in which there would be certain of [Plaintiffs'] claims within the forum selection clause and certain that [were] outside of it," to which counsel responded that "[Plaintiffs'] view is there is no such world." (*Id.*). It was not until the Second Circuit brought that world into existence, by stating that the common-law claims were required to be submitted to arbitration, that Plaintiffs finally understood that a motion to compel would be necessary. (Pl. Opp. 1). Thus, the Court finds that there was no intentional waiver — express or implied — of a known right.

### 2. The Issue of Class Arbitrability Is for the Arbitrator, Not the Court, to Decide

The parties also dispute whether Plaintiffs' claims are arbitrable as a class. Before the Court can decide that issue, however, it must determine whether such a question is properly answered by itself or by the arbitrator. Unsurprisingly, the parties take different views, each grounded in ambiguous precedent from the Supreme Court that the Court discusses in the remainder of this section. (*See* Pl. Br. 38-40; Def. Reply 26-30).

As noted earlier, the Supreme Court has instructed that arbitrators are not authorized to resolve certain "gateway" questions, "such as 'whether the parties have a valid arbitration agreement at all or whether a concededly

binding arbitration clause applies to a certain type of controversy.'" *Lamps Plus*, 139 S. Ct. at 1416-17 (quoting *Green Tree Fin. Corp.* v. *Bazzel*, 539 U.S. 444, 452 (2003) (plurality opinion)).  But the Court in *Lamps Plus* expressly acknowledged that it "has not decided whether the availability of class arbitration is a so-called 'question of arbitrability,' which includes these gateway matters." *Id.* at 1417 n.4 (quoting *Oxford Health Plans LLC* v. *Sutter*, 569 U.S. 564, 569 n.2 (2013)).[7]  With no express guidance from the Supreme Court, the Court looks to the Second Circuit.

The arbitration clause at issue here is silent on the issue of class arbitrability, but recites that it was drafted "in accordance with the International Arbitration Rules of the American Arbitration Association" (the "AAA Rules").  (Deposit Agreement § 23(a)).  While *Lamps Plus* stated that "[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of the arbitration" — namely, through class arbitration — that case did not consider an agreement that incorporated the AAA Rules.  *Lamps Plus*, 139 S. Ct. at 1417.  Even now, that precise issue has yet to be decided by the Supreme Court, and there exists currently a circuit split on the issue.  *See Barmby* v. *Ourisman Chevrolet, Co.*, No. 22 Civ. 2312 (DLB), 2023 WL 4549739, at *9 (D. Md. July 14, 2023) (comparing *Jock* v. *Sterling Jewelers Inc.*, 942 F.3d

---

[7]     The Supreme Court had no occasion to answer this question because the parties had agreed that a court, and not an arbitrator, should resolve the class arbitration issue. *Lamps Plus, Inc.* v. *Varela*, 587 U.S. —, 139 S. Ct. 1407, 1417 n.4 (2019).  Not so here.

617, 623-24 (2d Cir. 2019) ("*Jock II*") (holding "incorporation of the AAA Rules evinces agreement to have the arbitrator decide the question of class arbitrability"), and *JPay, Inc.* v. *Kobel*, 904 F.3d 923, 937-38 (11th Cir. 2018) ("[b]y expressly incorporating two sets of AAA rules, [the parties' agreement] clearly and unmistakably gave the arbitrator power to rule on his own jurisdiction," and noting that the parties "need not have consented to rules specifically contemplating class proceedings in order to have delegated the question of class availability via incorporation of AAA rules"), with *Catamaran Corp.* v. *Towncrest Pharmacy*, 864 F.3d 966, 973 (8th Cir. 2017) ("Incorporation of AAA Rules by references is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration."), and *Chesapeake Appalachia, LLC* v. *Scout Petroleum, LLC*, 809 F.3d 746, 758 (3d Cir. 2016) (holding that incorporation of AAA rules "fail[s] to satisfy the onerous burden of undoing the presumption in favor of judicial resolution of the question of class arbitrability")).

While there is a circuit split, the Second Circuit has taken a side in that split, and this Court is bound by its decisions.  In particular, "it has been long settled in this Circuit that when 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'"  *Borozny* v. *Raytheon Techs. Corp.*, No. 21 Civ. 1657 (SVN), 2023 WL 334378, at *3 (D. Conn. Jan. 20, 2023) (quoting *Contec Corp.* v. *Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)).

The AAA Supplementary Rules for Class Arbitration (the "AAA Class Rules") state that "the arbitrator shall determine as a threshold matter … whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Class Rules, Rule 3, available at https://www.adr.org/sites/default/files/Supplementary_Rules_for_Class_Arbitrations.pdf; *accord Jock II*, 942 F.3d at 623-24 (quoting AAA Class Rules). The Deposit Agreement's incorporation of the AAA Rules therefore "evinces agreement to have the arbitrator decide the question of class arbitrability." *Jock II*, 942 F.3d at 623-24 (citing *Wells Fargo Advisors, LLC* v. *Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (observing that when parties to an agreement explicitly incorporate rules that empower an arbitrator to decide an issue, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator" (internal quotation marks omitted))).

What is more, despite Defendants' suggestion to the contrary (*see* Def. Reply 28), the Second Circuit's decision in *Jock II* was based principally on its finding that "*Lamps Plus* leaves undisturbed the proposition, affirmed in *Stolt-Nielsen*, that an arbitration agreement may be interpreted to include implicit consent to class procedures." 942 F.3d at 626. It is true that the arbitration clause at issue in *Jock II* provided that questions of arbitrability were to be decided by the arbitrator; however, the Second Circuit pointed to that fact as mere "[f]urther support[]" for its holding that incorporation of the AAA Rules was sufficient. Accordingly, the Court finds that the issue of class arbitrability here is for the arbitrator to decide. *See Suqin Zhu* v. *Hakkasan NYC LLC*, 291

F. Supp. 3d 378, 390 (S.D.N.Y. 2017) (quoting *Wells Fargo Advisors, L.L.C.* v. *Tucker*, 195 F. Supp. 3d 543, 547 (S.D.N.Y. 2016) ("While the Supreme Court and Second Circuit have yet to issue binding precedent, the weight of authority among district courts in the Circuit is that the arbitrator, rather than the Court, should decide questions regarding the availability of class arbitration.") (collecting cases)).

### 3. The Court Stays the Remaining Claims Pending Completion of the Arbitration

Having granted Plaintiffs' motion to compel arbitration of their common-law claims, the Court must decide what to do with the remaining claims. The Second Circuit has found that when all claims have been referred to arbitration and a stay is requested, the court must grant the stay. *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). However, when a stay is not requested, or where not all claims are referred to arbitration, the court has discretion in determining whether to stay or dismiss the case pending arbitration. *See Benzemann* v. *Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (concluding that district court was not required to enter a stay where parties did not request one); *Katsoris*, 237 F. Supp. 3d at 110 (noting that in this Circuit, "where some but not all claims are referable to arbitration, a district court may stay proceedings in its discretion"); *see also Castellanos* v. *Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) ("Although defendant's motion requests that the Court dismiss the action, the Court concludes that a stay is appropriate. When a stay is not requested, a district court has discretion in determining whether to stay or

dismiss the case pending arbitration.").  Where, as here, there are arbitrable and non-arbitrable claims that arise out of the same set of facts, "a stay is usually appropriate because the arbitration may decide the same facts at issue in the litigation." *Alghanim* v. *Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (quoting *Argus Media Ltd.* v. *Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009)).

        In considering whether a stay is appropriate, a court must consider factors "'such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution,'" as well as whether "'there is significant factual overlap between the remaining claims and the arbitrated claims.'" *Katsoris*, 237 F. Supp. 3d at 110-11 (first quoting *Maritima de Ecologia, S.A. de C.V.* v. *Sealion Shipping Ltd.*, No. 10 Civ. 8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011), and then quoting *Winter Invs., LLC* v. *Panzer*, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015)).  Courts have found that a stay is "particularly appropriate" where it "promote[s] judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd.* v. *Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008).[8]

---

[8]     While considering the issue in a different procedural context, Justice Kavanaugh recently wrote that mandating a stay of court proceedings "reflects common sense," for "[i]f the district court could move forward with pre-trial and trial proceedings while [a decision on] arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost)." *Coinbase, Inc.* v. *Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 1921 (2023).

As Plaintiffs noted in the appellate brief that resulted in *Fasano IV*, "[t]his entire controversy relates to the securities laws, since it asserts (i) three [federal] securities law claims for misrepresentations in S.E.C. filings, (ii) two violations of heightened fiduciary duties adopted under the Sarbanes Oxley Act securities law[,] and (iii) a negligent misrepresentation claim arising from the same facts." (Hutman Decl., Ex. B at 21). Accordingly, Plaintiffs' common-law and securities claims are so interconnected that the Court deems it necessary to stay the case pending the outcome of arbitration. *See Simon J. Burchett Photography, Inc.* v. *Maersk Line Ltd.,* No. 20 Civ. 3288 (GBD) (RWL), 2020 WL 8261580, at *10 (S.D.N.Y. Dec. 30, 2020) ("Staying the case will enable proceedings to 'go forward without ... unnecessary duplication and risk of inconsistent results.'" (quoting *Moore* v. *Interacciones Global, Inc.*, No. 94 Civ. 4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995))), *report and recommendation adopted*, No. 20 Civ. 3288 (GBD) (RWL), 2021 WL 1040472 (S.D.N.Y. Mar. 18, 2021).[9]

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel arbitration of their common-law claims is GRANTED, Defendants' motion to dismiss is DENIED without prejudice to its renewal after arbitration, and the case is

---

[9]     To the extent that Defendants are asking the Court to stay arbitration in favor of litigating the non-arbitrable claims first, the request is denied. The Court finds that based on the varied assertions in the AC, it is possible that the arbitrator could determine that certain of Plaintiffs' claims are not arbitrable. If that were to occur, Plaintiffs would have the right to pursue those claims in this Court, and thus, it is inefficient to stay the arbitration instead of staying the instant case.

hereby STAYED pending the outcome of that arbitration.  The parties shall submit a status letter to the Court within fourteen days of the final judgment of the arbitrator or a similarly significant development in the arbitration.  The Clerk of Court is directed to terminate the pending motions at docket numbers 116 and 119 and to stay the case.

       SO ORDERED.

Dated:      September 27, 2023
            New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge