UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE FASANO; ALTIMEO OPTIMUM FUND; and ALTIMEO ASSET MANAGEMENT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GUOQING LI; PEGGY YU YU; DANGDANG HOLDING COMPANY, LTD.; E-COMMERCE CHINA DANGDANG INC.; KEWEN HOLDING CO. LTD.; SCIENCE & CULTURE LTD.; FIRST PROFIT MANAGEMENT, LTD.; DANQIAN YAO; LIJUN CHEN; MIN KAN; RUBY RONG LU; KE ZHANG; and XIAOLONG LI,<br><br>Defendants. | 16 Civ. 8759 (KPF) |

## JOINT LOCAL RULE 56.1 STATEMENT OF FACTS

Pursuant to Paragraph 5(C)(iv) of the Court's Individual Rules of Practice in Civil Cases and Local Civil Rule 56.1, the parties respectfully submit this Joint Local Rule 56.1 Statement of Facts in connection with Defendants' Motion to Vacate Clause Construction Award (the "Motion"), filed contemporaneously herewith. Because this case still has not progressed past the pleadings stage, the facts set forth below are largely drawn from the facts alleged in Plaintiffs' Amended Class Action Complaint (ECF No. 79, the "Complaint") and Demand for Arbitration (Ex. 3) are assumed to be true solely for purposes of the Motion.[1] In addition, given the limited scope of the Motion, the facts included below are limited to those necessary to provide context for the Motion; they are not comprehensive of all material facts relevant to the parties' respective claims and defenses.

---

[1] Exhibits referenced herein are attached to the Declaration of Timothy G. Nelson dated November 20, 2024, filed herewith.

1.      Defendant E-Commerce China Dangdang Inc. ("Dangdang") is a business-to-consumer e-commerce company in China that is incorporated under the laws of the Cayman Islands. (*See* ECF No. 79 ¶¶ 11, 40.)

2.      On December 8, 2010, Dangdang conducted an initial public offering of American Depositary Shares ("ADSs"), after which its ADSs traded on the New York Stock Exchange. (*See id.* ¶ 42.)

3.      Ownership of the ADSs was governed by a Deposit Agreement and evidenced by American Depositary Receipts ("ADRs") issued pursuant to the Deposit Agreement, a form of which is attached as Exhibit A to the Deposit Agreement. (*See* Ex. 4.)

4.      All owners and holders of ADSs are parties to the Deposit Agreement. (*See id.* at preamble, § 7.04, Ex. A § 1.)

5.      Section 23 of the form ADRs attached to the Deposit Agreement, entitled "<u>ARBITRATION; SETTLEMENT OF DISPUTES</u>," provides as follows:

> (a) Any controversy, claim or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the breach thereof, shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof; <u>provided</u>, <u>however</u>, that in the event of any third-party litigation to which the Depositary is a party and to which the Company may properly be joined, the Company may be so joined in any court in which such litigation is proceeding; and <u>provided</u>, <u>further</u>, that any such controversy, claim or cause of action brought by a party hereto against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to arbitration as provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the claimant.
>
> The place of the arbitration shall be The City of New York, State of New York, United States of America, and the language of the arbitration shall be English.
>
> The number of arbitrators shall be three, each of whom shall be disinterested in the dispute or controversy, shall have no connection with any party thereto, and shall be an attorney experienced in international securities transactions. Each party shall

> appoint one arbitrator and the two arbitrators shall select a third arbitrator who shall serve as chairperson of the tribunal. If a dispute, controversy, or cause of action shall involve more than two parties, the parties shall attempt to align themselves in two sides (i.e., claimant(s) and respondent(s)), each of which shall appoint one arbitrator as if there were only two parties to such dispute, controversy or cause of action. If such alignment or appointment shall not have occurred within thirty (30) calendar days after the initiating party serves the arbitration demand, the American Arbitration Association shall appoint the three arbitrators, each of whom shall have the qualifications described above. The parties and the American Arbitration Association may appoint from among the nationals of any country, whether or not a party is a national of that country.
>
> The arbitral tribunal shall have no authority to award any consequential, special or punitive damages or other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of this Deposit Agreement.
>
> (b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

(*Id.* at Ex. A § 23 (the "Arbitration Clause").)

   6.  Although the Arbitration Clause references Section 7.06 of the Deposit Agreement, entitled "<u>Submission to Jurisdiction; Appointment of Agent for Service of Process; Jury Trial Waiver</u>," that section does not mention arbitration, and instead provides:

> The Company hereby (i) irrevocably designates and appoints Law Debenture Corporate Services Inc., in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, (ii) consents and submits to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted, and (iii) agrees that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding.
>
> . . .
>
> EACH PARTY TO THIS DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY

> APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE SHARES OR OTHER DEPOSITED SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE RECEIPTS, THIS DEPOSIT AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(*Id.* § 7.06.)

7. Section 24 of the ADRs, entitled "<u>SUBMISSION TO JURISDICTION; JURY TRIAL WAIVER; WAIVER OF IMMUNITIES</u>," provides as follows:

> In the Deposit Agreement, the Company has (i) appointed Law Debenture Corporate Services Inc., in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, including any arbitration proceeding, (ii) consented and submitted to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted and (iii) agreed that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding.
>
> EACH PARTY TO THE DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) THEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE SHARES OR OTHER DEPOSITED SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE RECEIPTS, THE DEPOSIT AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).
>
> To the extent that the Company or any of its properties, assets or revenues may have or hereafter become entitled to, or have attributed to it, any right of immunity, on the grounds of sovereignty or otherwise, from any legal action, suit or proceeding, from the giving of any relief in any respect thereof, from setoff or counterclaim, from the jurisdiction of any court, from service of process, from attachment upon or prior to judgment, from attachment in aid of execution or

> judgment, or other legal process or proceeding for the giving of any relief or for the enforcement of any judgment, in any jurisdiction in which proceedings may at any time be commenced, with respect to its obligations, liabilities or any other matter under or arising out of or in connection with the Shares or Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, the Company, to the fullest extent permitted by law, hereby irrevocably and unconditionally waives, and agrees not to plead or claim, any such immunity and consents to such relief and enforcement.

(*Id.* at Ex. A § 24.)

8. On September 20, 2016, a buyer group comprised of Defendants Guoqing Li, Peggy Yu Yu, Danqian Yao, Lijun Chen, Min Kan, Kewen Holding Co. Limited, Science & Culture International Ltd., and First Profit Management, Ltd., acquired all of Dangdang's issued and outstanding ADSs for $6.70 per share (the "Merger Price") through a going-private transaction (the "Merger"), after which Dangdang ceased to be a publicly traded company. (*See* ECF No. 79 ¶¶ 1, 19, 32.)

9. Defendant Dangdang Holding Company, Ltd. is an affiliate of Dangdang that is headquartered in China and incorporated under the laws of the Cayman Islands. (*See id.* ¶ 12.)

10. The individual Defendants—Guoqing Li, Peggy Yu Yu, Danqian Yao, Lijun Chen, Min Kan, Ruby Rong Lu, Ke Zhang, and Xiaolong Li—were directors and/or officers of Dangdang at the time of the Merger. (*See id.* ¶¶ 9-10, 15, 17-18, 20-22.)

11. The remaining corporate Defendants—Kewen Holding Co. Ltd., Science & Culture International Ltd., and First Profit Management, Ltd.—are investment vehicles that are incorporated under the laws of the British Virgin Islands and allegedly controlled by certain of the individual Defendants. (*See id.* ¶¶ 13-14, 16.)

12. Plaintiffs allegedly were owners of Dangdang ADSs before the Merger whose shares were cashed out through the Merger for the Merger Price whether or not they voted for the Merger. (*See id.* ¶¶ 6-8; ECF No. 79-1; ECF No. 79-2.)

13. On November 10, 2016, Plaintiffs commenced this action on behalf of themselves and a putative class of former ADS holders that were also cashed out in the Merger; Plaintiffs challenged the disclosures made in connection with the Merger and asserted claims for violation of Section 13(e) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13e-3 promulgated thereunder, and common-law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and "quasi-appraisal." (*See* ECF No. 1.)

14. On March 15, 2017, Defendants moved to dismiss the original complaint on grounds of *forum non conveniens*. (*See* ECF No. 38.)

15. On December 29, 2017, the Court granted Defendants' motion to dismiss. (*See* ECF No 61.)

16. On April 12, 2019, the Second Circuit reversed the Court's dismissal order and remanded the case for the Court to consider the forum-selection clause and its impact on the *forum non conveniens* analysis. *Fasano v. Yu Yu*, 921 F.3d 333, 337 (2d Cir. 2019) (per curiam). The Second Circuit noted in a footnote that the forum-selection clause appeared "as part of the arbitration provisions in Dangdang's receipts" but did not address the Arbitration Clause "because none of the parties ha[d] moved to arbitrate yet." *Id.* at 336 n.1.

17. On September 12, 2019, Plaintiffs filed the operative amended complaint (the "Complaint") on behalf of themselves and the same putative class of former ADS holders; Plaintiffs asserted claims for violations of Sections 10(b), 13(e), and 20(a) of the Exchange Act and Rules 10b-5 and 13e-3 promulgated thereunder, as well as common-law claims for negligent misrepresentation, breach of "heightened fiduciary duties" under the "Sarbanes-Oxley Act Code of Conduct and NYSE Listing Standards," and aiding and abetting breach of fiduciary duties. (ECF No. 79.)

18. On October 7, 2019, Defendants renewed their motion to dismiss on *forum non conveniens* grounds and also moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). (*See* ECF No. 81.)

19. On August 28, 2020, the Court granted Defendants' renewed motion to dismiss on *forum non conveniens* grounds and denied their alternative Rule 12(b)(6) motion as moot. (*See* ECF No. 104.)

20. On August 26, 2022, the Second Circuit reversed the Court's dismissal order and remanded the case for the Court to "consider Defendants' motion to dismiss for failure to state a claim." *Fasano v. Li*, 47 F.4th 91, 105 (2d Cir. 2022).

21. In its decision, the Second Circuit stated that Plaintiffs' common-law claims—as opposed to their claims under the federal securities laws—were "required to be submitted to arbitration" and "can be pursued only in a New York arbitration." *Id.* at 104-05.

22. On September 9, 2022, Plaintiffs initiated an arbitration with the International Centre for Dispute Resolution ("ICDR"), the international division of the American Arbitration Association (the "AAA"), seeking to arbitrate their common-law claims for fraudulent misrepresentation, negligent misrepresentation, breach of heightened fiduciary duties, and breach of the duty of sufficient information. (*See* Ex. 3.)

23. Defendants Ruby Rong Lu, Ke Zhang, and Xiaolong Li are not parties to the arbitration; the remaining Defendants are the "Respondents" in the arbitration. (*See id.*)

24. On October 24, 2022, Defendants moved to stay the arbitration and to dismiss the Complaint for failure to state a claim. (*See* ECF No. 116.)

25. On November 21, 2022, Plaintiffs cross-moved to compel arbitration of their common law claims. (*See* ECF No. 119.)

26. On September 27, 2023, the Court granted Plaintiffs' motion to compel arbitration, denied Defendants' motion to dismiss without prejudice to its renewal after arbitration, and stayed this case pending the outcome of the arbitration. (*See* ECF 130.)

27. Before the ICDR/AAA, the parties selected arbitrators pursuant to the Arbitration Clause as follows: (1) Respondents unilaterally selected Judge David Levi (Ret.); (2) Plaintiffs unilaterally selected William H. Narwold, Esq.; and (3) the parties jointly selected Charles J. Moxley, Jr., Esq. to serve as the panel chair through a rank-and-strike process (the "Tribunal").

28. Before the Tribunal, the parties disputed whether the Arbitration Clause permits class arbitration proceedings. (*See* Ex. 1 ¶ 3.)

29. The parties each submitted briefs in support of their positions (*see* Exs. 5-7), and the Tribunal heard oral argument on July 18, 2024. (*See* Ex. 8.)

30. On October 22, 2024, the Tribunal issued a partial final award (the "Clause Construction Award"), in which a majority of the Tribunal (Messrs. Moxley and Narwold) concluded that the Deposit Agreement (including the Arbitration Clause and other provisions of the ADRs) permits class arbitration proceedings. (*See* Ex. 1 at 59.)

31. Judge Levi issued a dissenting opinion. (*See* Ex. 2.)

32. Pursuant to Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, the Tribunal stayed the arbitration for 30 days to allow either party to move to confirm or vacate the Clause Construction Award. (*See* Ex. 1 at 59.)

Dated: New York, New York  
       November 20, 2024

Respectfully submitted,

| SADIS & GOLDBERG LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|---|---|
| /s/ Ben Hutman (with consent) | /s/ Timothy G. Nelson |
| Samuel J. Lieberman | Scott D. Musoff |
| Ben Hutman | Timothy G. Nelson |
| 551 Fifth Avenue, 21st Floor | Christopher R. Fredmonski |
| New York, New York 10176 | One Manhattan West |
| (212) 573-8164 | New York, New York 10001 |
| slieberman@sadis.com | (212) 735-3000 |
| bhutman@sadis.com | scott.musoff@skadden.com |
|  | timothy.g.nelson@skadden.com |
|  | christopher.fredmonski@skadden.com |

*Attorneys for Plaintiffs*

Bradley A. Klein (pro hac vice)  
1440 New York Avenue, N.W.  
Washington, D.C. 20005  
(202) 371-7000  
bradley.klein@skadden.com

*Attorneys for Defendants*  
*E-Commerce China Dangdang, Inc.; Dangdang Holding Company, Ltd.; Kewen Holding Co. Ltd.; Science & Culture International Ltd.; First Profit Management, Ltd.; Guoqing Li; Peggy Yu Yu; Danqian Yao; Lijun Chen; and Min Kan*