# Exhibit 1

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal
Class Arbitration and International Tribunal

------------------------------------------------------------------------------X
                                                  :

Joe Fasano; Altimeo Optimum Fund; Altimeo Asset   :   Case No. 01-22-0003-8285
Management; Individually and on Behalf of All Others  :
Similarly Situated,                                   :

                                  Claimants,     :

                                          :

                              v.                         :

Guoqing Li; Peggy Yu Yu; Dangdang Holding Company,  :
Ltd.; E-Commerce China Dangdang Inc.; Kewen Holding Co.  :
Ltd.; Science & Culture Ltd.; First Profit Management, Ltd;  :
Danqian Yao; Lijun Chen; and Min Kan,            :

                                        :

                                Respondents.    :

                                        :
------------------------------------------------------------------------------X

**PARTIAL FINAL AWARD**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................................... i

I.    DECISION ............................................................................................................... 1

    A.    Nature of Case ............................................................................................. 1

    B.    Issue Presented ............................................................................................ 2

    C.    Procedural History....................................................................................... 2

    D.    Parties .......................................................................................................... 3

    E.    Applicable Rules ......................................................................................... 8

    F.    AAA Rule as to Clause Construction.......................................................... 8

    G.    Arbitration Agreement ................................................................................ 9

    H.    Parties' Positions ...................................................................................... 13

        1.    Claimants' Positions ...................................................................... 13

        2.    Respondents' Positions .................................................................. 14

        3.    Summary as to Issues Presented .................................................... 16

    I.    Analysis and Conclusions ......................................................................... 16

        1.    Summary ......................................................................................... 16

        2.    Nature of Inquiry............................................................................ 17

        3.    Applicable Law............................................................................... 17

        4.    Construction of Agreement and Legal Effect ............................... 38

    J.    Other ......................................................................................................... 54

    K.    The Dissent ............................................................................................... 54

II.    PARTIAL FINAL AWARD................................................................................... 59

WE, THE UNDERSIGNED ARBITRATORS, having been duly designated in accordance with the arbitration agreement set forth in the Parties' undated Deposit Agreement and Exhibit A thereto and consent to arbitration, among Claimants Joe Fasano, Altimeo Optimum Fund, and Altimeo Asset Management, Individually and, putatively, on Behalf of All Others Similarly Situated ("Claimants"), and Respondents Guoqing Li, Peggy Yu Yu, Dangdang Holding Company, Ltd., E-Commerce China Dangdang Inc., Kewen Holding Co. Ltd., Science & Culture Ltd., First Profit Management, Ltd, Danqian Yao, Lijun Chen, and Min Kan ("Respondents") (collectively, the "Parties"), and with Respondents having duly submitted without objection to the jurisdiction of this Tribunal; and Samuel J. Lieberman, Esq., Ben Hutman, Esq., and Lily Cron, Esq., of Sadis & Goldberg LLP, having represented Claimants, and Bradley A. Klein, Esq., Peyton A. Chaney, Esq., Scott D. Musoff, Esq., Timothy G. Nelson, Esq., Christopher R. Fredmonski, Esq., and Sophie Reveil, Esq., of Skadden, Arps, Slate, Meagher & Flom, LLP, having represented Respondents; having been duly sworn; and having duly heard the allegations, arguments, and proofs of Claimants and Respondents, do hereby issue this PARTIAL FINAL AWARD (the "Partial Final Award").

## I.    DECISION

### A.    Nature of Case

1.    This is a dispute among the named Claimants herein and a putative class of former minority holders of certain American Depositary Shares ("ADSs") of E-Commerce China Dangdang Inc. ("Dangdang") ("Claimants"), on the one hand, and Dangdang and certain of its alleged affiliates and associated persons ("Respondents"), on the other. It involves claims concerning alleged breaches by Respondents of common law duties Respondents allegedly owed Claimants in connection with a 2016 merger transaction (the "Going-Private Merger" or

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

"Merger"), whereby controlling holders of securities of Dangdang allegedly acquired ADSs of minority holders of Dangdang.

2.       Pursuant to the Parties' arbitration clause (the "Arbitration Clause") and related contractual provisions in the Parties' Deposit Agreement (the "Deposit Agreement") and Exhibit A thereto (the "Receipts") (the "Arbitration Agreement") and provisions concerning litigation in those contract documents, Claimants are asserting their common-law claims concerning the Going-Private Merger in this arbitration (the "Arbitration') and their federal securities law claims concerning that Going-Private Merger in the United States District Court for the Southern District of New York (the "Federal Action").

**B.    Issue Presented**

3.       The immediate issue before this Tribunal that is the focus of this Partial Final Award is clause construction—the construction of the Parties' Arbitration Agreement as to whether it permits class arbitration. Claimants seek to assert their claims in this Arbitration on a class-arbitration basis. Respondents have consented to the jurisdiction of this Tribunal, but contend the Arbitration Agreement does not provide for class arbitration and thus oppose Claimants' proceeding herein on a class basis.

**C.    Procedural History**

4.       Claimants initially asserted federal and common-law claims against Respondents concerning the Going Private Merger in the Federal Action in 2016, shortly after the Merger. The case proceeded up and down between the District Court and Second Circuit on several occasions, primarily involving issues as to *forum non conveniens*.

5.       In an August 26, 2022, decision, the Second Circuit, essentially on its own initiative, stated that Claimants' common-law claims are required to be pursued in arbitration in

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

New York, *Fasano v. Li*, 47 F.4th 91, 104, 110 (2d Cir. 2022), something that no Party had

sought. Claimants responded by commencing this Arbitration before the International Centre for

Dispute Resolution (the "ICDR"), the international branch of the American Arbitration

Association (the "AAA"), on September 9, 2022.

6.      The Parties litigated whether this Arbitration should proceed. On September 27,

2023, United States District Judge Katherine Failla granted Claimants' motion to compel

arbitration over Respondents' objection and stayed the Federal Action pending completion of

this Arbitration. *Fasano v. Li*, No. 16 Civ. 8759 (KPF), 2023 WL 6292579, at *1 (S.D.N.Y. Sept.

27, 2023). In so ruling, Judge Failla found that the issue of clause construction is one for this

Tribunal. *Id*. at 12-13, citing *Jock v. Sterling Jewelers Inc*., 942 F.3d 617, 623-24 (2d Cir. 2019).

7.      The Tribunal in this Arbitration was confirmed on March 26, 2024. By order

dated April 17, 2024, the Tribunal established a schedule for the Parties to submit their papers on

the issue of clause construction. A hearing was held on the issue on July 18, 2024.

**D.      Parties**

8.      Claimants are alleged former holders of ADSs who are asserting claims in this

Arbitration individually, and, putatively, on behalf of all others similarly situated.

9.      As reflected in the caption, the Respondents in this Arbitration are:

- Guoqing Li;
- Peggy Yu Yu;
- Dangdang Holding Company, Ltd.;
- E-Commerce China Dangdang Inc.;
- Kewen Holding Co. Ltd.;
- Science & Culture Ltd.;
- First Profit Management, Ltd;
- Danqian Yao;
- Lijun Chen; and
- Min Kan.

3

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

10.    Claimants, in their Demand for Arbitration ("Demand"), provide, *inter alia,* the

following descriptions of Respondents:

10. Respondent Guoqing Li ("Li") is the co-founder and director of the
Company, and has been the chief executive officer of the Company since
inception. As of August 1, 2016, Li held 31.2% of the Company's common stock,
and over 75% of the voting power of Dangdang. Mr. Li was involved in the
decision to list the Company on an exchange in New York.

11. Respondent Ms. Peggy Yu Yu ("Yu") is the co-founder and director of
the Company. She has been the executive chairwoman of the Company since its
inception. Mr. Guoqing Li and Ms. Yu are husband and wife. Ms. Yu was
involved in the decision to list the Company on an exchange in New York.

12. Respondent E-Commerce China Dangdang Inc. ("Dangdang" or the
"Company") a leading business-to-consumer e-commerce company in China that
is an exempted company with limited liability incorporated under the laws of the
Cayman Islands. Under the Going Private Merger, the Company will continue to
exist post-Merger as the surviving entity. Before the Merger, the Company was
listed on the New York Stock Exchange since December 2010.

13. Respondent Dangdang Holding Company Limited ("Parent") is an
exempted company with limited liability incorporated under the laws of the
Cayman Islands. The business address of Parent is in Beijing, China. Parent was
affiliated with the Company and involved in listing it on an exchange in New
York.
14. Respondent Kewen Holding Co. Limited ("Kewen") is a limited
company incorporated under the laws of the British Virgin Islands and is
principally an investment holding vehicle controlled by Mr. Li. Mr. Li is the sole
director and beneficial owner of Kewen.

15. Respondent Science & Culture International Limited ("SC
International") is a limited company incorporated under the laws of the British
Virgin Islands. SC International is principally an investment holding vehicle
controlled by Mr. Li. Kewen holds 60% of the shares in SC International.

16. Respondent Danqian Yao ("Yao") has been a senior vice president of
the Company since December 2011, when it was listed on the NYSE, a New
York-located stock exchange.

17. Respondent First Profit Management Limited ("First Profit") is a
limited company incorporated under the laws of the British Virgin Islands and is
principally an investment holding vehicle. Respondent Danqian Yao controls First

4

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

Profit as its sole director. In the past, First Profit has held 492,500 Class A common shares for and on behalf of certain persons pursuant to share incentive arrangements between the Company and such persons subject to the arrangements.

18. Respondent Lijun Chen ("Chen") has worked as an executive at the Company since 2014. He has been a vice president of the Company since January 2016. Prior to that, Chen served as the Company's business general manager from June 2014. During that time, the Company was listed on a New York stock exchange.

19. Respondent Min Kan ("Kan") has worked at the Company as an executive since 2008. He was a vice president of the Company since January 2014. Prior to that, Kan served as the Company's business general manager from January 2013 and as a senior director from 2008 to January 2013. The Company was listed in New York during his employment.

20. Respondents Li, Yu, Parent, Kewen, SC International, Yao, First Profit, Chen, and Kan are together the "Controlling Group" that bid for and acquired Dangdang in the Going-Private Merger. As of August 1, 2016, the Controlling Group held 83.6% of the total issued and outstanding votes eligible to vote on the Merger and 35.3% of the Company's common stock.

11.    Respondents, in Paragraph 114 of their Answering Statement in this Arbitration

("Answering Statement"), admit the allegations in paragraphs 12, 13, 14, 15, 17, and 20 of

Claimants' Demand.

12.    Respondents, in their Answering Statement, provide, *inter alia*, the following

further descriptions of Respondents:

13. Respondent Guoqing Li was a Co-Founder and Director of Dangdang and was the Chief Executive Officer from inception through the events that form the basis of this action. As of August 1, 2016, Mr. Li held 31.2% of Dangdang's common stock, and over 75% of the voting rights in Dangdang. Mr. Li was also a Director of Respondents Kewen Holding Company Ltd. and Science & Culture International Ltd.

14. Respondent Peggy Yu Yu is a Co-Founder and Director of Dangdang and has been the Executive Chairwoman of Dangdang since its inception. Ms. Yu is also a Director of Dangdang Holding Company Limited. Together, Mr. Li and Ms. Yu—who were married—controlled over 83% of the voting rights in Dangdang at the time of the going-private merger.

5

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

     15. Respondent Dangdang Holding Company, Ltd. is an exempted company with limited liability incorporated in the Cayman Islands. It is a holding company with its principal place of business in Beijing, China.

     16. Respondent E-Commerce China Dangdang Inc. is a business-to-consumer ecommerce company selling merchandise online to customers in China. It is an exempted company with limited liability incorporated in the Cayman Islands, and its principal place of business is in China. Prior to the merger in 2016, Dangdang was listed on the New York Stock Exchange.

     17. Respondent Kewen Holding Company Ltd. is a limited company organized under British Virgin Islands law where it has its principal place of business. Kewen holds 60% of the shares in Respondent Science & Culture International Ltd.

     18. Respondent Science & Culture International Ltd. is a limited company organized under British Virgin Islands law where it has its principal place of business.

     19. Respondent First Profit Management, Ltd. is a limited company organized under British Virgin Islands law with its principal place of business in Beijing, China.

     20. Respondent Danqian Yao was a Senior Vice President of Dangdang at the time of the merger. Mr. Yao was also the Director of First Profit Management, Ltd.

     21. Respondent Lijun Chen was a Vice President of Dangdang at the time of the merger.

     22. Respondent Min Kan was a Vice President of Dangdang at the time of the merger.

13.     Respondents, in their Affirmative Defenses set forth in their Answering Statement, make the following allegation at Paragraph 116: "The Tribunal lacks jurisdiction over this dispute."

14.     In Paragraphs 79-81 of their Answering Statement, Respondents further alleged as follows to the jurisdiction of this Tribunal:

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

> 79. The Arbitration Clause states, in relevant part, that "[a]ny controversy, claim or cause of action brought by any party hereto against the Company arising out of or relating to . . . the American Depositary Shares . . . shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association."

> 80. The Second Circuit held "that all 10 of the served defendants are covered by the ADRs' Forum Selection Clause" and that Claimants' common-law claims should have properly been brought "in a New York arbitration."

> 81. Respondents believe that Claimants have waived their right to arbitrate their claims based on, among other things, their choice to litigate their claims for years in federal court. However, following remand from the Second Circuit on Claimants' most recent appeal, the district court concluded that Claimants had not waived their right to arbitrate. Accordingly, Respondents do not contest the Tribunal's jurisdiction over Claimants' individual claims at this time, but Respondents reserve their right to challenge the Tribunal's jurisdiction at a later procedural stage if appropriate, including in a subsequent appeal. Also, as set forth below, Respondents contest the availability of class-wide arbitration of Claimant's [sic] claims, the timeliness of the claims, and the merits of the claims.

(Footnotes omitted).

15.      In the initial management conference in this Arbitration on April 15, 2024**,** the Tribunal advised Respondents that, in light of Article 21 ("Arbitral Jurisdiction") of the ICDR's International Arbitration Rules, the Tribunal needed to know up front if Respondents are disputing arbitrability/jurisdiction in this Arbitration. From that conferencing, the Tribunal understood that Respondents, as set forth herein, are challenging the arbitrability of Claimants' claims in this Arbitration on a class-arbitration basis, but are not otherwise, in this Arbitration, challenging arbitrability or the jurisdiction of this Tribunal.

16.      In the oral argument as to class arbitration in this Arbitration on July 18, 2024, the Tribunal again inquired of Respondents whether they are challenging arbitrability as concerns the various Respondents in this Arbitration. Respondents acknowledged that, for present purposes, insofar as concerns the issue of clause construction, Respondents are opposing class

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

arbitration as to all Respondents on a general basis, but are not making any particular objection in this regard as to any particular Respondent and are not objecting more broadly as to arbitrability. *See generally*, Tr. of Oral Arg. at 144-55 (July 18, 2024).

17.    The Parties thus having presented the issue of clause construction to the Tribunal on an all-inclusive basis, as concerns all of the Respondents, without differentiation as to particular circumstances of any particular Respondent under the Parties' Arbitration Agreement or otherwise (*see* Tr. at 148-53), this Tribunal, in hearing the Parties' arguments and issuing this Partial Final Award, has proceeded on that same basis and is deciding the issue of clause construction as to all Respondents as a group.

**E.    Applicable Rules**

18.    Pursuant to the Parties' Arbitration Agreement, this Arbitration is being conducted pursuant to the ICDR's International Arbitration Rules, as amended and effective March 1, 2021 ("International Arbitration Rules"), and the AAA's Supplementary Rules for Class Arbitration, effective October 8, 2003 ("Class Arbitration Rules").

**F.    AAA Rule as to Clause Construction**

19.    Rule 3 of the AAA's Class Arbitration Rules provides as follows as to clause construction:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

## G.    Arbitration Agreement

20.    As referenced above, the Parties' Arbitration Clause and related provisions in the Deposit Agreement and Receipts make up their Arbitration Agreement. The Arbitration Clause is contained in Section 23 of the Receipts ("Arbitration: Settlement of Disputes"). Other relevant provisions making up the Arbitration Agreement include the Receipts at Section 24 ("Submission to Jurisdiction; Jury Trial; Waiver of Immunities.") and the Deposit Agreement at Sections 7.06 ("Submission to Jurisdiction: Appointment of Agent for Service of Process; Jury Trial Waiver"), 7.07 ("Waiver of Immunities"), and 7.08 ("Governing Law"). *See also* Receipts at Section 18 ("Liability of the Company and Depository").

21.    Like the District Court and the Second Circuit, we understand the Receipts to be part of the Deposit Agreement. District Judge Failla, in granting Claimants' motion to compel arbitration, noted that the Second Circuit and the Parties refer to the arbitration clause, which she described as physically in the "sample ADR attached to Exhibit A to the Deposit Agreement," as "part of the Deposit Agreement." Judge Failla stated:

The Court pauses to note that the arbitration clause and forum selection clause embedded therein are part of a sample ADR attached as Exhibit A to the Deposit Agreement. Each ADR is issued "upon the terms and conditions set forth in the [D]eposit [A]greement" (Deposit Agreement, Ex. A at 2), and thus the Court refers to the provision as being a part of the Deposit Agreement, rather than the ADR, throughout. And while the Second Circuit in *Fasano IV* referred to the clause as being contained in the ADRs, *see Fasano v. Li*, 47 F.4th 91, 101 (2d Cir. 2022), it noted that the clause was "part of the arbitration clause set out in the Deposit Agreement," id. Thus, the Court continues to reference the clause as

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

being part of the Deposit Agreement, as it did in its prior opinion in *Fasano III*, *see Fasano v. Li*, 482 F. Supp. 3d 158, 162 (S.D.N.Y. 2020), and as the parties do in their briefing here (see Def. Br. 1; Pl. Br. 35).

*Fasano v. Li*, 2023 WL 6292579, at fn2, at *3 (S.D.N.Y. Sept. 27, 2023).

22.    Following are provisions of the Receipts making up part of the Parties' Arbitration

Agreement:

23. ARBITRATION: SETTLEMENT OF DISPUTES

(a) Any controversy, claim or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the breach thereof, shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof; provided, however, that in the event of any third-party litigation to which the Depositary is a party and to which the Company may properly be joined, the Company may be so joined in any court in which such litigation is proceeding; and provided, further, that any such controversy, claim or cause of action brought by a party hereto against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to arbitration as provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the claimant.

The place of the arbitration shall be The City of New York, State of New York, United States of America, and the language of the arbitration shall be English.

The number of arbitrators shall be three, each of whom shall be disinterested in the dispute or controversy, shall have no connection with any party thereto, and shall be an attorney experienced in international securities transactions. Each party shall appoint one arbitrator and the two arbitrators shall select a third arbitrator who shall serve as chairperson of the tribunal. If a dispute, controversy or cause of action shall involve more than two parties, the parties shall attempt to align themselves in two sides (i.e., claimant(s) and respondent(s)), each of which shall appoint one arbitrator as if there were only two parties to such dispute, controversy or cause of action. If such alignment and appointment shall not have occurred within thirty (30) calendar days after the initiating party serves the arbitration demand, the American Arbitration Association shall appoint the three arbitrators, each of whom shall have the qualifications described above. The parties and the American Arbitration Association may appoint from among the nationals of any country, whether or not a party is a national of that country.

10

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

The arbitral tribunal shall have no authority to award any consequential, special or punitive damages or other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of this Deposit Agreement.

(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

24. SUBMISSION TO JURISDICTION; JURY TRIAL WAIVER; WAIVER OF IMMUNITIES.

In the Deposit Agreement, the Company has (i) appointed Law Debenture Corporate Services Inc., in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, including any arbitration proceeding, (ii) consented and submitted to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted and (iii) agreed that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding.

EACH PARTY TO THE DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) THEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE SHARES OR OTHER DEPOSITED SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE RECEIPTS, THE DEPOSIT AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

To the extent that the Company or any of its properties, assets or revenues may have or hereafter become entitled to, or have attributed to it, any right of immunity, on the grounds of sovereignty or otherwise, from any legal action, suit

11

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

or proceeding, from the giving of any relief in any respect thereof, from setoff or counterclaim, from the jurisdiction of any court, from service of process, from attachment upon or prior to judgment, from attachment in aid of execution or judgment, or other legal process or proceeding for the giving of any relief or for the enforcement of any judgment, in any jurisdiction in which proceedings may at any time be commenced, with respect to its obligations, liabilities or any other matter under or arising out of or in connection with the Shares or Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, the Company, to the fullest extent permitted by law, hereby irrevocably and unconditionally waives, and agrees not to plead or claim, any such immunity and consents to such relief and enforcement.

23.    Following are provisions of the Deposit Agreement that make up part of or relate

to the Arbitration Agreement:

SECTION 7.06 Submission to Jurisdiction: Appointment of Agent for Service of Process: Jury Trial Waiver. The Company hereby (i) irrevocably designates and appoints Law Debenture Corporate Services Inc., in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, (ii) consents and submits to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted, and (iii) agrees that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding. The Company agrees to deliver, upon the execution and delivery of this Deposit Agreement, a written acceptance by such agent of its appointment as such agent. The Company further agrees to take any and all action, including the filing of any and all such documents and instruments, as may be necessary to continue such designation and appointment in full force and effect for so long as any American Depositary Shares or Receipts remain outstanding or this Agreement remains in force. In the event the Company fails to continue such designation and appointment in full force and effect, the Company hereby waives personal service of process upon it and consents that any such service of process may be made by certified or registered mail, return receipt requested, directed to the Company at its address last specified for notices hereunder, and service so made shall be deemed completed five (5) days after the same shall have been so mailed.

EACH PARTY TO THIS DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

OF OR RELATING TO THE SHARES OR OTHER DEPOSITED
SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE
RECEIPTS, THIS DEPOSIT AGREEMENT OR ANY TRANSACTION
CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR
THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION
REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER
BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

SECTION 7.07 Waiver of Immunities.

To the extent that the Company or any of its properties, assets or revenues may
have or may hereafter become entitled to, or have attributed to it, any right of
immunity, on the grounds of sovereignty or otherwise, from any legal action, suit
or proceeding, from the giving of any relief in any respect thereof, from setoff or
counterclaim, from the jurisdiction of any court, from service of process, from
attachment upon or prior to judgment, from attachment in aid of execution or
judgment, or from execution of judgment, or other legal process or proceeding for
the giving of any relief or for the enforcement of any judgment, in any jurisdiction
in which proceedings may at any time be commenced, with respect to its
obligations, liabilities or any other matter under or arising out of or in connection
with the Shares or Deposited Securities, the American Depositary Shares, the
Receipts or this Agreement, the Company, to the fullest extent permitted by law,
hereby irrevocably and unconditionally waives, and agrees not to plead or claim,
any such immunity and consents to such relief and enforcement.

SECTION 7.08 Governing Law.

This Deposit Agreement and the Receipts shall be interpreted and all rights
hereunder and thereunder and provisions hereof and thereof shall be governed by
the laws of the State of New York.

H.    **Parties' Positions**

1.    **Claimants' Positions**

24.    Claimants contend the Arbitration Agreement provides for class arbitration. They

argue that, under the Supreme Court's decisions in *Stolt-Nielsen* and *Lamps Plus,* party consent

to class arbitration need not be express—that it may be implicit, citing *Stolt-Nielsen S.A. v.*

*AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019).

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

They contend the Parties' Arbitration Agreement reflects Respondents' implicit consent to class arbitration.

25.    Claimants acknowledge that *Stolt-Nielsen* and *Lamps Plus* require that they establish an affirmative contractual basis in the Parties' agreement for a finding that the Parties agreed to class arbitration. They contend that, reading the Arbitration Agreement as a whole, the Parties' agreement to that effect is clear. Claimants further contend that the Parties' agreement to class arbitration is clear when one applies the *expressio unius est exclusio alterius* ("*expressio unius*") canon of construction in construing the Arbitration Agreement.

26.    Claimants further contend that Second Circuit case law supports their interpretation of *Stolt-Nielsen* and *Lamps Plus* that implicit consent is legally sufficient under the FAA to establish intent for class arbitration.

27.    Claimants also contend that published awards reflect that arbitrators in other cases have construed agreements similar to the Parties' Arbitration Agreement in this case as providing for class arbitration and that courts have also construed similar contract language as reflecting agreement to class arbitration.

### 2.    Respondents' Positions

28.    Respondents dispute Claimants' description and interpretation of case law and arbitration awards relied upon by Claimants. Respondents contend that under *Stolt-Nielsen* and *Lamps Plus* an arbitration agreement that is silent as to class arbitration may only satisfy the requirement that such an agreement contain an affirmative contractual basis for class arbitration if it, in effect, contains language expressly or essentially referring to class arbitration. The requirement of an affirmative contractual basis for a finding of class arbitration, Respondents

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

argue, cannot be satisfied on an implicit basis through inference from language that does not expressly or essentially refer to class arbitration.

29.    Respondents thus assert, as their lead "Applicable Legal Standard," that "**Class Arbitration Requires Express (Not Implicit) Consent.**" Respondents' Opposition at 10 (emphasis in original). They also argue, "The absence of an affirmative, explicit consent to class arbitration is dispositive," citing *Lamps Plus*, 587 U.S. at 186. Respondents' Opposition at 18.

30.    Respondents point to observations by the Supreme Court, including in *Stolt-Nielsen* and *Lamps Plus*, regarding how different class arbitration is from individual/bilateral arbitration and how many of the typical traits of arbitration are lost when an arbitration is conducted on a class basis.

31.    Respondents further argue that, even if consent to class arbitration could, under Supreme Court precedent, be implicit, there was no such implicit consent in this case.

32.    Respondents contend that an affirmative contractual basis for class arbitration cannot be found based on canons of construction. They point to the Supreme Court's rejection in *Lamps Plus* of use of the principle of *contra proferentem* by the arbitrators in the underlying award in that case as a basis for construing the parties' arbitration agreement as permitting class arbitration.

33.    Respondents argue that lower court decisions subsequent to *Lamps Plus* support their contention that the Supreme Court's requirement of an affirmative contractual basis essentially requires some explicit or near explicit reference to class arbitration in the contract, in effect that implicit consent is not legally sufficient. Respondents also note that prior arbitration awards do not have precedential value and argue that awards pre-dating *Lamps Plus* are not based on contemporary law.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

      **3.**      **Summary as to Issues Presented**

      34.      The central issues as to clause construction in this Arbitration thus essentially come down to the following:

- Implicit consent:
  - Under *Stolt-Nielsen* and *Lamps Plus*, may the parties' agreement to class arbitration be implicit?
- Requirement of an "affirmative contractual basis":
  - What does this requirement mean?
  - Can it be found based on the plain meaning of the Parties' Arbitration Agreement?
  - Can it be based on application of the principle of *expressio unius*?
- Applying *expressio unius*, if legally permissible, in construing the Parties' Arbitration Agreement, does that Agreement contain an affirmative contractual basis constituting or reflecting the Parties' agreement to class arbitration?

**I.**      **Analysis and Conclusions**

      **1.**      **Summary**

      35.      The issue is intent: Have the Parties agreed to class arbitration? Under *Stolt-Nielsen* and *Lamps Plus*, Claimants, to establish entitlement in this Arbitration to proceed on a class basis, must establish that the Arbitration Agreement contains the Parties' agreement in this respect—that the Arbitration Agreement contains an affirmative contractual basis for concluding that the Parties agreed to class arbitration.

      36.      Under *Stolt-Nielsen* and *Lamps Plus*, parties' affirmative contractual basis in this regard may be implicit. Express language agreeing to class arbitration is not required by the FAA.

      37.      Under *Stolt-Nielsen* and *Lamps Plus*, an affirmative contractual basis may be found on an implicit basis through application of state law canons of construction, such as *expressio unius*, that are designed to discern parties' intent.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

38.    Reading the Arbitration Agreement according to its plain meaning, it is evident the Parties agreed to class arbitration. This is clear from the unambiguous language of the Arbitration Agreement. Applying *expressio unius* in one's reading of the Arbitration Agreement leads to this same conclusion.

**2.    Nature of Inquiry**

39.    Issues of law presented as to clause construction in this case require us to interpret language from *Stolt-Nielsen* and *Lamps Plus*. The law is in a state of development in this area.

40.    While a U.S. district court or court of appeals or state court addressing clause construction might engage in its sense of how the law in this area should develop, the Supreme Court has made it clear that our job—and the limit of our authority—is to interpret the Parties' Arbitration Agreement and apply the law as it now exists to the provisions of that Agreement. *See, e.g., Stolt-Nielsen S.A.*, 559 U.S. at 671-74.

**3.    Applicable Law**

41.    There are several Supreme Court decisions of particular relevance to the issue of clause construction presented to us: *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (relied on in *Stolt-Nielsen*); *Stolt-Nielsen;* and *Lamps Plus.*

42.    *Stolt-Nielsen* and *Lamps Plus* are of particular interest in terms of the current state of the law. *Bazzle* and *Stolt-Nielsen* are also of particular interest as they reflect the state of class arbitration law at the time the Deposit Agreement and Receipts were filed with the SEC and initially went into effect.

43.    Other cases cited to us that inform our analysis include *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617 (2d Cir. 2019); *Wells Fargo Advisors, LLC* v. *Sappington*, 884 F.3d 392 (2d

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

Cir. 2018); and *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 426–27 (S.D.N.Y.

2019).

44.    In *Bazzle*, the Supreme Court of South Carolina had held that, because the

arbitration clauses between a commercial lender and its customers were silent as to whether

arbitration might take the form of class arbitration, the contracts must be interpreted as

permitting class arbitration under South Carolina law. *See Green Tree Fin. Corp. v. Bazzle*, 539

U.S. 444 (2003).

45.    The United States Supreme Court described the issue it faced and its resolution of

it as follows:

> We are faced at the outset with a problem concerning the contracts' silence. Are
> the contracts in fact silent, or do they forbid class arbitration as petitioner Green
> Tree Financial Corp. contends? Given the South Carolina Supreme Court's
> holding, it is important to resolve that question. But we cannot do so, not simply
> because it is a matter of state law, but also because it is a matter for the arbitrator
> to decide. Because the record suggests that the parties have not yet received an
> arbitrator's decision on that question of contract interpretation, we vacate the
> judgment of the South Carolina Supreme Court and remand the case so that this
> question may be resolved in arbitration.
>
> ***
>
> On balance, there is at least a strong likelihood in *Lackey* as well as in *Bazzle* that
> the arbitrator's decision reflected a court's interpretation of the contracts rather
> than an arbitrator's interpretation. That being so, we remand the case so that the
> arbitrator may decide the question of contract interpretation--thereby enforcing
> the parties' arbitration agreements according to their terms….

*Id.* at 447, 454.

46.    The Supreme Court in *Stolt-Nielsen* held that parties' silence in their arbitration

agreement as to class arbitration, as a matter of law, does not establish their agreement to class

arbitration under the FAA. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662,

18

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

668 (2010). The Court in that case proceeded based upon the parties' definition of what they meant

by "silence"——that the *parties had reached no agreement as to class arbitration*:

> The parties selected a panel of arbitrators and stipulated that the arbitration clause
> was "silent" with respect to class arbitration. Counsel for AnimalFeeds explained to
> the arbitration panel that the term "silent" did not simply mean that the clause made
> no express reference to class arbitration. Rather, he said, "[a]ll the parties agree that
> when a contract is silent on an issue there's been no agreement that has been
> reached on that issue."

*Id.* at 688-89.

      47.     The Supreme Court emphasized in *Stolt-Nielsen* that the key issue in clause

construction is the intent of the parties—whether they intended to agree to class arbitration. *See,*

*e.g., id*. at 673n4, 682, 686. As the Court explained, the standard of intent cannot be met when

the parties' agreement is silent on the point and they agree that the meaning of that silence is that

they had not agreed to class arbitration:

> [W]e see the question as being whether the parties agreed to authorize class
> arbitration. Here, where the parties stipulated that there was "no agreement" on
> *this question, it follows that the parties cannot be compelled to submit their*
> *dispute to class arbitration.*

*Id*. at 687 (emphasis supplied).

      48.     The Court's ruling in *Stolt-Nielsen* was based on federal law, specifically the

requirements of the FAA. The Court described the interrelationship of federal and state law in

this regard as follows:

> While the interpretation of an arbitration agreement is generally a matter of state
> law, *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, ——, 129 S.Ct. 1896,
> 1901–02, 173 L.Ed.2d 832 (2009); *Perry v. Thomas*, 482 U.S. 483, 493, n. 9, 107
> S.Ct. 2520, 96 L.Ed.2d 426 (1987), the FAA imposes certain rules of fundamental
> importance, including the basic precept that arbitration "is a matter of consent, not
> coercion," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford*
> *Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

*Id.* at 681.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

49.     But how does one discern the parties' intent? The Court's answer in *Stolt-Nielsen*
is clear: One looks to see if there is a contractual basis for class arbitration. The Court stated,
"[A] party may not be compelled under the FAA to submit to class arbitration unless there is a
contractual basis for concluding that the party agreed to do so." *Id*. at 684.

50.     What is needed to establish such a contractual basis? The Court stated it was not
deciding that question: "We have no occasion to decide what contractual basis may support a
finding that the parties agreed to authorize class-action arbitration." *Id.* at 687 n10. That issue—
the issue we are called upon to decide in the instant case—was thus left open by the Supreme
Court in *Stolt-Nielsen*.

51.     The Court did, however, provide guidance on the point. It recognized that such a
contractual basis may be implicit, but that such an implicit agreement may not be inferred
"solely" from the parties' agreement to arbitrate. The Court stated, "An implicit agreement to
authorize class-action arbitration, however, is not a term that the arbitrator may infer *solely* from
the fact of the parties' agreement to arbitrate." *Id.* at 685 (emphasis supplied). It thus seems clear
that agreement to authorize class arbitration may be implicit, but may not be inferred solely from
the fact of parties' agreement to arbitrate.

52.     The Court also made clear in *Stolt-Nielsen* that the arbitrator's job is the
"interpretation and application" of the parties' agreement, *see id.* at 671. Our job is "to interpret
and enforce a contract," *see* 559 U.S. at 672, to "make a determination regarding the parties'
intent," *see id*. at 673n4.

53.     The Court noted that state, as well as federal law, is potentially relevant in
determining intent. Finding that the problem with the arbitrators' approach in *Stolt-Nielsen* in

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

upholding class arbitration was that they did so based on their own view of public policy rather

than taking the approach of ascertaining the parties' intent, whether through the FAA, maritime

law, or state law, the Court stated:

> Rather than inquiring whether the FAA, maritime law, or New York law contains
> a "default rule" under which an arbitration clause is construed as allowing class
> arbitration in the absence of express consent, the panel proceeded as if it had the
> authority of a common-law court to develop what it viewed as the best rule to be
> applied in such a situation.

*Id.* at 673-74.

54.    Maritime law is not applicable to the instant case. That leaves us with the FAA

and New York law, the law which the Parties agreed in the Deposit Agreement (Section 7.08)

governs the interpretation of the Deposit Agreement and Receipts.

55.    The Court in *Stolt-Nielsen* also suggested that, in order for a former arbitration

award to be relevant as to the parties' intent, that arbitration award needs to have been issued

prior to the parties' having entered into their arbitration agreement. It further suggested that it is

relevant to consider the state of the law in this regard at the time parties entered into their

arbitration agreement. The Court stated:

> The panel's reliance on these arbitral awards confirms that the panel's decision
> was not based on a determination regarding the parties' intent. All of the arbitral
> awards were made under the AAA's Class Rules, which were adopted in 2003,
> and thus none was available when the parties here entered into the Vegoilvoy
> charter party during the class period ranging from 1998 to 2002. *See* 548 F.3d 85,
> 87 (C.A.2 2008) (defining the class period). Indeed, at the hearing before the
> panel, counsel for AnimalFeeds conceded that "[w]hen you talk about
> expectations, virtually every one of the arbitration clauses that were the subject of
> the 25 AAA decisions were drafted before [*Bazzle*]. So therefore, if you are going
> to talk about the parties' intentions, pre-[*Bazzle*] class arbitrations were not
> common, post [*Bazzle*] they are common." App. 87a.

*Id*. at 673n4.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

56.    Thus, the Supreme Court in *Stolt-Nielsen* provided only limited guidance as to the requirements of the FAA: Silence in the *Stolt-Nielsen* sense is not enough to establish consent to class arbitration and, although implicit consent is adequate as a matter of law, it must be based on more than the parties' having agreed to arbitrate.

57.    The Court in *Lamps Plus* reiterated the fundamental basis for arbitration under the FAA—party consent. Quoting *Stolt-Nielsen*, the Court stated that, when it comes to interpreting parties' arbitration agreements, "'the task for courts and arbitrators at bottom remains the same: To give effect to the intent of the parties.'" 587 U.S. at 184) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684 (2010)).

58.    The Court in *Lamps Plus* further relied on its earlier decision in *Granite Rock* that "'[a]rbitration is strictly a matter of consent.'" 587 U.S at 184 (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010)).

59.    The Ninth Circuit in *Lamps Plus* had upheld the District Court's granting of a motion to compel class arbitration through applying the California state rule of *contra proferentem* to the effect that ambiguity in the parties' arbitration agreement should be construed against the drafter.

60.    In reversing the Ninth Circuit, the Supreme Court in *Lamps Plus* held that ambiguity, like silence, cannot be the basis for a finding that parties had consented to class arbitration. The Court stated:

> We therefore face the question whether, consistent with the FAA, an ambiguous agreement can provide the necessary "contractual basis" for compelling class arbitration. *Stolt-Nielsen*, 559 U.S. at 684, 130 S.Ct. 1758. We hold that it cannot—a conclusion that follows directly from our decision in *Stolt-Nielsen*. Class arbitration is not only markedly different from the "traditional individualized arbitration" contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration. *Epic Systems*, 584 U.S., at –

22

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

> ——, 138 S.Ct., at 1623; *see Stolt-Nielsen*, 559 U.S. at 686–687, 130 S.Ct. 1758.
> The statute therefore requires more than ambiguity to ensure that the parties
> actually agreed to arbitrate on a classwide basis.

587 U.S. at 183.

61.    Thus, the Court held, the principle of *contra proferentem* cannot serve to subject a

party to an ambiguous arbitration agreement to class arbitration. The Court was clear on the reason

for this: *Contra proferentem* is not a mode of contract construction *designed to determine party*

*intent*. It is not related to intent at all, but rather is a policy-driven approach to construing

ambiguous contracts. The Court stated:

> Unlike contract rules that help to interpret the meaning of a term, and thereby
> uncover the intent of the parties, contra proferentem is by definition triggered
> only after a court determines that it cannot discern the intent of the parties. When
> a contract is ambiguous, *contra proferentem* provides a default rule based on
> public policy considerations; "it can scarcely be said to be designed to ascertain
> the meanings attached by the parties." 2 Farnsworth, Contracts § 7.11, at 303.
> Like the contract rule preferring interpretations that favor the public interest, *see*
> *id.*, at 304, *contra proferentem* seeks ends other than the intent of the parties.

587 U.S. at 187.

62.    The Court went out of its way to emphasize that the problem with *contra*

*proferentem* as a means of interpreting ambiguous contracts is that it is not designed to determine

consent:

> The FAA requires courts to "enforce arbitration agreements according to their
> terms." *Epic Systems*, 584 U.S., at __, 138 S.Ct., at 1621 (quoting *American*
> *Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186
> L.Ed.2d 417 (2013)).
>
> Although courts may ordinarily accomplish that end by relying on state contract
> principles, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct.
> 1920, 131 L.Ed.2d 985 (1995), state law is preempted to the extent it "stands as
> an obstacle to the accomplishment and execution of the full purposes and
> objectives" of the FAA, *Concepcion*, 563 U.S. at 352, 131 S.Ct. 1740 (internal
> quotation marks omitted). At issue in this case is the interaction between a state
> contract principle for addressing ambiguity and a "rule[ ] of fundamental

23

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

> importance" under the FAA, namely, that arbitration "is a matter of consent, not coercion." *Stolt-Nielsen*, 559 U.S. at 681, 130 S.Ct. 1758 (internal quotation marks omitted).

587 U.S. at 183-84.

63.    Thus, the Court reiterated, the problem with the rule of *contra proferentem* is that it does not help-

> "to determine the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have given to the language used." 3 Corbin, Contracts § 559, at 269–270. Such an approach is flatly inconsistent with "the foundational FAA principle that arbitration is a matter of consent." Stolt-Nielsen, 559 U.S. at 684, 130 S.Ct. 1758.

587 U.S. at 187-88.

64.    Referring to what it characterized as crucial differences between individual and class arbitration, the Court in *Lamps Plus* emphasized the need for an "affirmative 'contractual basis'" for concluding that the objecting party agreed to class arbitration," and further stated that "[s]ilence is not enough; the FAA requires more." *See* 587 U.S. at 185 (citing, *inter alia*, *Stolt-Nielsen*, 559 U.S. at 684, 686, and 687).

65.    The question in the instant case, of course, is how far the Court's ruling in *Lamps Plus* goes. An arbitration agreement that is ambiguous as to class arbitration, like one that is silent on the matter, is insufficient, as a matter of law, to establish the parties' consent—their agreement—to class arbitration, and a state rule of construction as to *contra proferentem* is not legally sufficient to resolve the agreement's ambiguity and establish the parties' consent to class arbitration. An "affirmative contractual basis" is needed.

66.    But does this invalidity of *contra proferentem* as a basis for party consent to class arbitration mean that *expressio unius* is also legally insufficient under the FAA in this regard? Can

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

a mode of construction such as *expressio unius* constitute the necessary "affirmative contractual basis"? That, it seems, is a central issue here.

67.    The Supreme Court in *Lamps Plus* seems to answer this question by rejecting *contra proferentem* as a legally sufficient mode of construction for present purposes, based on its characterization of *contra proferentem* as a policy-driven approach not designed to discern party intent. That rationale seems central to the Court's conclusion in this regard and hence we conclude that *Lamps Plus* in no way invalidates *expressio unius*, since that mode of construction *is* designed to discern party intent.

68.    The Court in *Lamps Plus* noted that courts "may ordinarily" interpret contracts "by relying on state contract principles." *See Lamps Plus*, 587 U.S. at 183 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The Court saw federal preemption as arising only when interpreting an agreement through state law principles would "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA." *See Lamps Plus*, 587 U.S. at 183 (quoting *Concepcion*, 563 U.S. at 352).

69.    At issue, the Court told us, "is the interaction between a state contract principle for addressing ambiguity" and a "'rule[ ] of fundamental importance under the FAA, namely, that arbitration "'is a matter of consent, not coercion,'" *See id*. at 183-84 (citing *Stolt-Nielsen*, 559 U.S. at 681).

70.    The Court made it clear that the FAA preemptively precludes finding consent to class arbitration based on *contra proferentem* because that approach to construction is not designed to ascertain intent—and thus "stands as an obstacle" to the FAA. *Expressio unius*,

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

being designed to ascertain intent, presents no such obstacle and hence, it seems clear, is not

foreclosed under the Court's analysis.

71.    The Second Circuit in *Jock* interpreted *Lamps Plus* as meaning that parties'

agreement to class arbitration may be found based on implicit consent. The Court, in addressing

issues as to an arbitrator's certification of a class, stated:

> *Lamps Plus* leaves undisturbed the proposition, affirmed in *Stolt-Nielsen*, that an
> arbitration agreement may be interpreted to include implicit consent to class
> procedures.

942 F.3d at 626.

72.    District Judge Failla, in granting Claimants' motion to compel arbitration in this

matter, saw the same significance in the Second Circuit's interpretation of *Lamps Plus*. Judge

Failla stated:

> What is more, despite Defendants' suggestion to the contrary …the Second
> Circuit's decision in Jock II was based principally on its finding that "*Lamps Plus*
> leaves undisturbed the proposition, affirmed in *Stolt-Nielsen,* that an arbitration
> agreement may be interpreted to include implicit consent to class procedures."
> 942 F.3d at 626.

*Fasano v. Li,* 2023 WL 6292579, at *13.

73.    The question then can be raised: Does an interpretation of contract language based

on the application of *expressio unius* reflect an affirmative contractual basis?

74.    The Supreme Court's repeated point in *Lamps Plus*—that the problem with *contra

proferentem* is that it isn't designed to determine party intent—seems to tell us that a mode of

interpretation like *expressio unius* that *is* designed to determine intent does pass muster under the

FAA. *See Lamps Plus*, 587 U.S. at 187.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

75.    As the Supreme Court told us in *Stolt-Nielsen*, it's not for us to judge whether we like that rule. If the Supreme Court, as seemingly it did, signals to us that a mode of construction designed to discern intent is legally sufficient in that regard, we are bound by that direction.

76.    In addition, *expressio unius* is not something new. As the Supreme Court also told us in *Stolt-Nielsen*, existing law at the time of parties' entering into their arbitration agreement is relevant in discerning party intent. *Expressio unius* was around when the Parties entered into the Receipts and Deposit Agreement. It was, in effect, inherent in the language of the Arbitration Agreement insofar as concerns the meaning of such language as a matter of law. Accordingly, the results of such analysis would seem, as the Court's focus on the legal insufficiency on *contra proferentem* seems to suggest, legally sufficient to establish an affirmative contractual basis for class arbitration in the Parties' Arbitration Agreement in this case.

77.    Respondents rely on post *Lamps Plus* lower court decisions that have required an explicit (or essentially explicit) reference to class arbitration in an arbitration agreement for there to be an affirmative contractual basis for class arbitration and on cases that have not regarded broad language as to the scope of arbitrability as legally sufficient for that purpose. *See, e.g.*, *Lopez v. Lidl US, LLC, No. 22-CV-4271 (ALC), 2023 WL 2674757, at \*5 (S.D.N.Y. Mar. 29, 2023); Am. Inst. for Foreign Study, Inc. v. Fernandez-Jimenez, 6 F.4th 120, 123 (1st Cir. 2021); Catamaran Corp. v. Towncrest Pharmacy, 946 F.3d 1020, 1023 (8th Cir. 2020); Dean v. Biggs & Greenslade, P.C., No. H-21-0242, 2021 WL 2002440, at \*1, \*5 (S.D. Tex. May 19, 2021); Radcliff v. San Diego Gas & Elec. Co., No. 3:20-cv-01555-H-MSB, 2020 WL 6395677, at \*1, \*6 (S.D. Cal. Nov. 2, 2020); Price v. Santander Consumer USA Inc., No. 3:19-CV- 0742-B, 2019 WL 4318883, at \*4 (N.D. Tex. Sept. 12, 2019); Trimaldi v. Am. Express Co., No. 9:19-cv-80144- ROSENBERG/REINHART, 2019 WL 13255690, at \*1,\*3 (S.D. Fla. June 13, 2019); Ford v.*

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

*Account Control Tech., Inc.,* No. 1:19-CV-203 AWI-JLT, 2019 WL 13195403, at *2 (E.D. Cal.

May 2, 2019).

78.     While some of these cases found broad inclusionary language in an arbitration

clause to be not explicit or express enough to constitute the parties' agreement to class

arbitration, none of them involved the extensive provisions present in the Arbitration Agreement

in the instant case defining and refining the scope of what is and is not to be arbitrated.

79.     Also, none of these cases examined in any depth the issue presented in the instant

case as to the meaning and import of the Supreme Court's holdings in *Stolt-Nielsen* and *Lamps*

*Plus* that parties' implicit agreement to class arbitration is legally sufficient and as to whether the

results of the application of *expressio unius* to the construction of an arbitration agreement can

constitute a legally sufficient basis under the FAA to find parties' agreement to class arbitration.

80.     In *Lopez*, the defendant had moved to compel arbitration of plaintiff's individual

claims. Claimant had not addressed the issue of class arbitration in her response papers. The

District Court decided arbitrability was a gateway issue and compelled arbitration of plaintiff's

individual claims. 2023 WL 2674757, at *5.* While the Court suggested, based on a pre-*Lamps*

*Plus* decision citing *Stolt-Nielsen*, that the Supreme Court requires an "an explicit agreement to

arbitrate claims on a class-wide basis," it did not reference *Lamps Plus* and recognized that, even

under *Stolt-Nielsen*, an implicit agreement could be legally sufficient. *See id*.

81.     The First Circuit's decision in *American Institute for Foreign Study*, affirming the

District Court's preliminary injunction enjoining class arbitration, presents a factual background

that seems conducive to the arguments as to clause construction that Claimants are making in the

instant case. However, those arguments seem not to have been developed in that case. Nor did

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

the First Circuit consider the point made by the Second Circuit in *Jock* that the legal sufficiency

of implicit consent survives *Lamps Plus*.

82.    *Catamaran Corp.* involved a simpler and more limited arbitration agreement than

the agreement involved in the instant case and did not involve application of the *expressio unius*

canon of construction. Reviewing *de novo* the District Judge's finding that the arbitration

agreements in that case did not provide a contractual basis for class arbitration, the Eighth Circuit

affirmed. *See* 946 F.3d at 1024.

83.    In *Dean*, plaintiff had commenced a putative class action in the District Court in

Texas. Respondents moved to compel arbitration of plaintiff's individual action, arguing that the

silence of the parties' arbitration agreement on class arbitration meant that the court should

compel arbitration of plaintiff's individual claims. Claimants opposed, *inter alia*, on the ground

that she was seeking to bring a federal class action, not a class arbitration. She apparently did not

seek leave to bring a class arbitration. *See* 2021 WL 2002440, at *5.

84.    The Court noted that, because the parties had incorporated the AAA Rules into

their arbitration agreement, arbitrability was for the arbitrator. *See* 2021 WL 2002440, at *4.

However, without addressing the distinction, the Court went on to find that class arbitration is a

gateway issue for the courts and, on that authority, proceeded to find that classwide arbitration

was not appropriate because the parties' arbitration agreement was silent as to class arbitration.

*See* 2021 WL 2002440, at *5. The Court proceeded to grant defendant's motion to compel

arbitration of plaintiff's individual action.

85.    The Court's decision in *Dean* is also unhelpful in the instant case not only

because it did not consider the issue as to implicit consent but also for another reason: All the

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

arbitration agreement said in that case was the following, which did not raise issues raised by the

Parties' Arbitration Agreement in the instant case:

> Any dispute or claim resulting from or relating to this contract will be settled by
> arbitration directed by the American Arbitration Association under its
> Commercial Arbitration Rules. By agreeing to this arbitration provision, you
> waive your right to a jury trial.

2021 WL 2002440, at *1.

      86.    Nor is the decision in *Radcliff* helpful. Plaintiff had commenced a putative class

action. Defendant, with the exception of one claim that it recognized to be non-arbitrable, asked

the Court to compel Plaintiff to submit his claims to arbitration on an individual basis. The

Court, without mentioning *Lamp Plus*, which had been issued the previous year, found that

plaintiff's class-arbitration claim was legally inadequate because the parties' arbitration

agreement did not "mention[] class arbitration." *See* 2020 WL 6395677, at *1, *6. While the

Court quoted from *Stolt-Nielsen*, it did not address whether, under *Stolt-Nielsen*, party consent to

class arbitration may be implicit, nor did it appear that the issue was presented to the Court.

      87.    In *Trimaldi*, the plaintiff brought a putative class action in federal court.

Defendants moved to compel arbitration. Plaintiff opposed the motion on the merits on various

grounds, but argued that, if the Court compelled arbitration, it should be on a class basis.

Rejecting the plaintiff's position, the District Court found, on the class-arbitration point, that

based on *Lamps Plus*, which had just recently been issued, it could not compel class arbitration

because the parties' arbitration agreement was "silent, or at least ambiguous, as to whether the

parties consented to classwide arbitration. *See* 2019 WL 13255690, at *1, *3. The Court did not

address the issue of implicit consent under *Lamps Plus* or *Stolt-Nielsen*. There is no indication in

the decision that the issue was presented to the Court.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

88.    Respondents additionally rely on such other post-*Lamps Plus* lower court

decisions as *Marbaker v. Statoil USA Onshore Props., Inc.*, 801 F. App'x 56, 58 (3d Cir. 2020);

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019); *Bernstein v. PayReel,*

*Inc.*, No. CV 23-2575 PA (ASx), 2023 WL 5505872, at *4 (C.D. Cal. July 5, 2023); *Tonkawa*

*Tribe of Indians of Okla. v. Sci. Games Corp.*, No. 21-cv-04626, 2022 WL 1591719, at *8 (N.D.

Ill. May 19, 2022); *Farfan v. SSC Carmichael Operating Co. LP*, No. 18-cv-01472-HSG, 2019

WL 4933577, at *3 (N.D. Cal. Oct. 7, 2019).

89.    These cases do not change the analysis.

90.    *Marbaker* involved plaintiffs who had leased to energy companies the right to

extract oil and gas from their land. The Third Circuit affirmed the District Court's finding that

the parties' arbitration clauses did not contain a contractual basis for class arbitration. The Court

primarily based its conclusion on its analysis that the arbitration clause of each of the plaintiffs

with the defendant was bilateral, providing for arbitration of disputes under that plaintiff's lease

with the defendant. In each instance, for instance, the arbitration clause was specific, the Court

found, as to "this lease." The Court stated, "The textual cues are all bilateral, contemplating

disputes between just two parties." *See* 891 F.App'x at 60-61. As discussed below, the

Arbitration Agreement in the instant case is not bilateral.

91.    In language applicable to the instant case, the Court in *Marbaker*, after discussing

Stolt-Nielsen and *Lamps Plus*, noted that express reference to class arbitration is not required to

show an affirmative contractual basis. The Court stated, "While the phrase 'class arbitration' is

not essential, its absence makes it harder to show that the parties consented to it." *See* 891

F.App'x. at 60-61.

31

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

92.     Although the Ninth Circuit in *Dorman* did cite *Lamps Plus*, it did not engage in a detailed discussion as to its requirements. The Court also indicated that there had been a waiver of class-wide and collective arbitration in the arbitration agreement in that case. *See* 780 F. App'x at 514.

93.     The Court in *Bernstein* found the parties' arbitration agreement to be ambiguous as to whether it provided for class arbitration. The Court concluded that, because of that ambiguity and because "there is no clear affirmation that the parties agreed to arbitrate class claims," it could not "infer the parties' consent to arbitrate class claims and cannot compel arbitration of Plaintiff's class claims," *Bernstein*. 2023 WL 5505872 at *4 (citing *Lamps Plus*, 587 U.S. at 177). In a footnote, the Court noted that plaintiff had not addressed defendant's arguments that plaintiff's class claims were not encompassed in the arbitration agreement. *See id*. at n3.

94.     The District Court in *Scientific Games Corp* found that the parties' arbitration agreements were silent as to class arbitration and that, "based on this lack of relevant language," the parties had not agreed to class arbitration, 2022 WL 1591719 at *8 (citing *Lamps Plus*, 139 S.Ct. at 1416).. The Court did not engage in any further discussion of the requirements of *Lamps Plus.*

95.     Prior to the *Lamps Plus* decision, the District Court had initially found in *Farfan* that the parties' arbitration agreement was ambiguous as to whether it provided for class arbitration and, on that basis, concluded that class arbitration was appropriate. *See* 2019 WL 4933577 at *1. After the Supreme Court's decision in *Lamps Plus*, the District Court in *Farfan* granted defendants' motion for reconsideration and changed its ruling, finding that there was no affirmative contractual basis for concluding that the parties agreed to arbitrate putative class

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

claims. The Court did not engage in analysis as to the bases, if any, under *Lamps Plus* for finding

legally sufficient implicit intent to class arbitration.

96.    None of these cases addresses the question of whether, under *Lamps Plus,* the

necessary affirmative contractual basis may be found through application of *expressio unius* or

another such canon of construction designed to discern party intent.

97.    Accordingly, these cases do not change our conclusion that a narrow

interpretation of *Stolt-Nielsen* and *Lamps Plus* as meaning that the FAA pre-empts state law and

requires express intent in this regard would be contrary to the holdings of those cases.

98.    The Supreme Court, by its repeated point in *Stolt-Nielsen* and *Lamps Plus* as to

attributes of bilateral/individual arbitration that are, in its view, lost or compromised when an

arbitration is conducted on a class basis, has certainly communicated what can only be

characterized as at best a skeptical view of class arbitration and a wariness that that is what

parties have agreed to unless they make it fairly clear—indeed, "affirmatively" clear.

99.    But that skepticism does not change the limits of the Supreme Court's prior

rulings in such cases. How easy it would have been for the Court, if it intended the interpretation

Respondents urge, to have said so—to have said that arbitration agreements must contain express

references to class arbitration and that implicit inferences are legally insufficient! The Court, in

rejecting *contra proferentem* as a mode of construction, could easily have given as a reason that

canons of construction aren't affirmative enough, express enough, explicit enough, to constitute

an affirmative contractual basis for inferring parties' intent with regard to class arbitration.

100.    But it did just the opposite. It recognized implicit consent to class arbitration as

legally sufficient. It stated repeatedly that the problem with *contra proferentem* is that it doesn't

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

address the central concern of the FAA, the concern as to which the FAA pre-empts state law—

party intent.

101.    If the Court's intention was the preclusive rule of total preemption, taking state

law out of its traditional place of providing bases for contract construction as to arbitration

agreements, the Court seemingly would not, in *Bazzle*, *Stolt-Nielsen*, and *Lamps Plus*, have

recognized the role of state law in determining party intent as to class arbitration.

102.    The Second Circuit and Southern District of New York decisions in *Sappington*

and *Tucker* address the role of *expressio unius* in clause construction. *See Wells Fargo Advisors,*

*LLC* v. *Sappington*, 884 F.3d 392 (2d Cir. 2018); *Wells Fargo Advisors LLC v. Tucker*, 373 F.

Supp. 3d 418, 426–27 (S.D.N.Y. 2019). *See also VKK Corp. v. Nat'l Football League*, 244 F.3d

114, 130.

103.    In *Sappington,* several former employees of Wells Fargo commenced putative

class arbitrations against the company, including before the AAA. Wells Fargo filed a petition in

the district court seeking to compel bilateral arbitration. The case focused not on whether the

parties' arbitration agreements provided for class arbitrations, but rather on who, under the

arbitration agreements—the court or the arbitrator—should decide the issue of whether the

agreements permitted class arbitration. The issue was whether the parties, by their arbitration

agreements, had clearly and unmistakably expressed their intent to have an arbitrator decide

whether they agreed to authorize class arbitration. *See* 884 F.3d at 394.

104.    The District Court in both *Sappington* and in a parallel case (*Tucker*) involving

other Wells Fargo former employees asserting similar claims, had decided that the issue of class

arbitrability should be decided by an arbitrator, not the court. On a consolidated appeal of both

cases, the Second Circuit affirmed.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

105.    In doing so, the Second Circuit relied in part on *expressio unius* in interpreting the

parties' arbitration clause in *Tucker*. The Court stated:

> [T]he Tucker clause expressly excludes from arbitration those disputes that relate
> to unemployment insurance and employee benefits. These exclusions reinforce
> our view that the parties intended to let an arbitrator decide whether class claims
> are arbitrable. By expressly foreclosing certain proceedings from arbitration, the
> parties in these cases strongly implied that every other "controversy or dispute"
> remains subject to arbitral resolution. *See Gen. Am. Life Ins. Co. v. Barrett*, 847
> S.W.2d 125, 133 (Mo. Ct. App. 1993) (applying the principle of expressio unius
> est exclusio alterius to contract interpretation); *VKK Corp. v. Nat'l Football
> League*, 244 F.3d 114, 130 (2d Cir. 2001) (same).

884 F.3d at 396.

106.    Although *Sappington* involved a different issue of arbitrability from the one in the

instant case, its use of *expressio unius* seems equally applicable to the arbitrability issue raised in

the instant case. In each instance, it's a question of how to construe inclusionary and

exclusionary language of an arbitration agreement. Nor does it seem material that the Second

Circuit in *Sappington* was applying Missouri law as to *expressio unius*. The Parties, in their

discussion of the case, have not suggested that Missouri contract law as to *expressio unius* is in

any way different from New York law on the point, and we are not aware of any such difference.

107.    As to the various prior arbitration awards based on clause construction to which

Claimants have drawn our attention, Respondents have persuasively argued not only that such

prior awards have no precedential value, but also that any such awards that pre-date *Lamps Plus*

are not informative to the extent they are based on superseded law. Because prior arbitration

awards do not have precedential effect, we have not relied on them.

108.    Respondents argue that there appears not to have been a prior class arbitration

administered by the ICDR. Noting that many of the partial final awards upon which Claimants

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

rely were in the employment field, Respondents further argue that very different statutory

regimes and policy considerations apply to that area of the law.

109.    These arguments are not persuasive. As noted, we do not regard prior arbitration

awards as precedential and are not relying on them. However, we understand class actions, as a

general matter, do occur in the securities as well as employment fields. Respondents have not

established any legal basis as to why securities-related arbitrations may not proceed on a class

basis, if the parties so agree.

110.    The fact that a class arbitration may not previously have been brought in the

securities field, if that is the case, may be related to an apparent SEC policy of not favoring

mandatory arbitration of securities claims in registration statements. *See* Tr. at 109-11, 115-17.

111.    In any event, the fact that a securities-class arbitration may not previously have

been brought does not mean that the Parties did not agree to one through the Arbitration

Agreement in the instant case. In addition, as Claimants have pointed out, the Second Circuit in

*Jock* discussed at length the ability of arbitration and arbitrators to handle class arbitrations. 942

F.3d at 625.

112.    Claimants' argument, however, that the Parties, by agreeing to ICDR arbitration,

agreed in effect that this case may be brought on a class arbitration basis is misplaced. Cases to

that effect upon which Claimants rely stand for the proposition that, under Second Circuit law,

parties, by agreeing to provider rules such as those of the ICDR, agree to individual rules

contained therein[1] that give arbitrators power to decide their own jurisdiction. *See, e.*g., *Fasano*,

2023 WL 6292579; *Jock*, 942 F.3d 617 (2d Cir. 2019); *Sappington*, 884 F.3d 392.

---

[1] *See, e.g.,* ICDR Article 21 (Jurisdiction).

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

113.    That issue—jurisdiction to decide arbitrability—is different from the issue as to standards applicable to how, when arbitrators admittedly have such jurisdiction, such as concerning class arbitrability, they should decide such issues as to jurisdiction.

114.    In the instant case, there is no question about this Tribunal's jurisdiction to decide the clause-construction issue. Judge Failla referred that issue to arbitration. AAA Class Action Rule 3 (Construction of the Arbitration Clause) provides that we have such jurisdiction. Both sides have submitted the issue to us.

115.    As discussed above, the legal standard set by the Supreme Court in *Stolt-Nielsen* and *Lamps Plus* for the clause construction issue is whether the Parties' Arbitration Agreement contains an affirmative contractual basis for concluding that the parties agreed to class arbitration. In contrast, the issue of whether parties agreed to have arbitrators and not a court decide the basic issue of arbitrability is "whether there is clear and unmistakable evidence of the parties' intent to let an arbitrator resolve that question." *See Sappington*, 884 F.3d at 398.

116.    These are different issues and different standards. The determinative line of authority for present purposes is the *Stolt-Nielsen/Lamps Plus* line of authority.

117.    We thus find that Claimants' reliance on cases such as *Jock*, *Sappington*, and *Tucker* as concerns the "Who Decides" issue is not dispositive as to the merits of the next-level issue of arbitrability presented to us in this Arbitration—the issue of whether the Parties here agreed to class arbitration.

118.    The following rules of the road thus seem evident from the above discussion:

•    Parties' agreement to class arbitration may be implicit. Express agreement is not required under the FAA.
•    Implicit agreement to class arbitration may not be inferred solely from parties' agreement to arbitrate. The issue is not whether the parties agreed to arbitrate. It is whether they agreed to class arbitration.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

- Parties' consent to class arbitration may not be inferred from their silence on that point in their arbitration agreement, if that silence reflects that the parties had not come to agreement on the issue of class arbitration.
- Parties' consent to class arbitration may not be inferred from mere ambiguity of their arbitration agreement. Ambiguity, standing alone, is no more a basis than silence for inferring intent to agree to class arbitration.
- Parties' consent to class arbitration cannot be inferred through the use of the *contra proferentem* mode of construing agreements, since that approach to construction does not tell us parties' consent, but rather is a mode of construction based on policy considerations.
- Parties' consent to class arbitration may not be found based on arbitrators' views or sense as to good public policy, such as by whether arbitrators think class arbitration would make sense in the circumstances presented in a particular case. Such a call is not within arbitrators' jurisdiction to make.
- Parties' implicit intent to agree to class arbitration may be found based on the plain meaning of their arbitration agreement.
- Parties' implicit intent to agree to class arbitration may be found based on the application of the *expressio unius* canon of construction, since it is designed to discern parties' intent.

**4.    Construction of Agreement and Legal Effect**

119.    To apply these legal principles, we need to look at the Arbitration Agreement to see if it provides an affirmative contractual basis for concluding that the Parties agreed to class arbitration.

120.    As we saw above, the Parties' Arbitration Clause is set forth in Section 23 of the Receipts. Other contractual provisions in the Receipts and Deposit Agreement concerning arbitration and dispute resolution more broadly include the Receipts at Section 24 and the Deposit Agreement at Sections 7.06, 7.07, and 7.08. The totality of such provisions make up the Parties' Arbitration Agreement.

121.    The Arbitration Clause in Section 23(a) provides:

23. ARBITRATION: SETTLEMENT OF DISPUTES

(a) Any controversy, claim or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities,

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

the American Depositary Shares, the Receipts or the Deposit Agreement, or the
breach thereof, shall be settled by arbitration in accordance with the International
Arbitration Rules of the American Arbitration Association, and judgment upon
the award rendered by the arbitrators may be entered in any court having
jurisdiction thereof; provided, however, that in the event of any third-party
litigation to which the Depositary is a party and to which the Company may
properly be joined, the Company may be so joined in any court in which such
litigation is proceeding; and provided, further, that any such controversy, claim or
cause of action brought by a party hereto against the Company relating to or based
upon the provisions of the Federal securities laws of the United States or the rules
and regulations promulgated thereunder shall be submitted to arbitration as
provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by
the claimant.

The place of the arbitration shall be The City of New York, State of New York,
United States of America, and the language of the arbitration shall be English.

The number of arbitrators shall be three, each of whom shall be disinterested in
the dispute or controversy, shall have no connection with any party thereto, and
shall be an attorney experienced in international securities transactions. Each
party shall appoint one arbitrator and the two arbitrators shall select a third
arbitrator who shall serve as chairperson of the tribunal. If a dispute, controversy
or cause of action shall involve more than two parties, the parties shall attempt to
align themselves in two sides (i.e., claimant(s) and respondent(s)), each of which
shall appoint one arbitrator as if there were only two parties to such dispute,
controversy or cause of action. If such alignment and appointment shall not have
occurred within thirty (30) calendar days after the initiating party serves the
arbitration demand, the American Arbitration Association shall appoint the three
arbitrators, each of whom shall have the qualifications described above. The
parties and the American Arbitration Association may appoint from among the
nationals of any country, whether or not a party is a national of that country.

The arbitral tribunal shall have no authority to award any consequential, special or
punitive damages or other damages not measured by the prevailing party's actual
damages and may not, in any event, make any ruling, finding or award that does
not conform to the terms and conditions of this Deposit Agreement.

122.    The language of the Arbitration Clause, "[a]ny controversy, claim or cause of

action," is broad. Whether, standing alone, it would be broad enough to constitute the Parties'

agreement to class arbitration is a question we need not reach. It is clear, as we will discuss, that

the totality of the language making up the Parties' Arbitration Agreement reflects the Parties'

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

agreement to class arbitration and that application of *expressio unius* leads to this same conclusion.

123.    All holders of ADSs are parties to the Deposit Agreement and Receipts. The term "party hereto" in the Arbitration Clause refers to all holders of ADSs.

124.    The question arises as to the meaning of the term "*any* party hereto" ("brought by any party hereto") in the opening language of that clause. (Emphasis supplied). Does it refer to a single ADS holder and imply that any arbitration under the Arbitration Clause may only be brought by a single holder of an ADS—or, read in light of the Parties' overall agreement, does it contemplate that any holder of an ADS, essentially the entire group of such holders, may be a claimant in such an arbitration. In the terminology used in some of the cases, is it bi-lateral or universal language?

125.    We find, when interpreted in light of the ensuing provision (discussed below) that a cause of action to be arbitrated may involve "more than two parties" and the totality of the Arbitration Agreement, the language brought "by any party hereto" may potentially include any holders of the ADSs. It is not bilateral language between any particular ADS holder and Dangdang. Instead, it suggests, they can all come in: Any holders of ADSs may bring the "arbitration" and get "the award."

126.    The "by any party hereto" language thus reflects Respondents' agreement that they may be subject to an arbitration in which any and all ADS holders may be claimants. Particular ADS holders only become subject to the Deposit Agreement, including the Receipts, when they buy an ADS, but, once that happens, Respondents, by the contract language, are potentially subject to an arbitration brought not only by that ADS holder, but by any such ADS holders. Other provisions of the Deposit Agreement and Receipts confirm this reading that all

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

Owners and Holders of the ADSs are a "party hereto". *See, e.g.*, Deposit Agreement, preamble;

§§ 7.04, 7.06, 24, Receipts, §§ 1, 5-6, 9-10, 13, 18.

127.    Thus, as concerns holders of ADSs, the Deposit Agreement and Receipts are not,

by their terms, bilateral contracts as between an individual ADS holder and Dangdang. Rather

they are of a more encompassing nature: They are essentially between Dangdang and any and all

"Owners and Holders" of ADSs, as expressed in the preamble to and Section 7.04 of the Deposit

Agreement and in Sections 1 and 6 of the Receipts. *See also* Deposit Agreement, §§ 7.06, 24,

Receipts, §§ 5, 9-10, 13, and 18.

128.    The language "arising out of or relating to" is broad language, as the Second

Circuit noted, referring in the Federal Action to the Arbitration Clause:

> First, the Clause's frame–of–reference language does not mention the "issuance
> of" Dangdang's ADSs; it refers to the ADSs themselves and thus covers Federal
> Securities Claims arising out of or relating to any aspect or treatment of the
> American Depositary Shares. The phrases "arising out of or relating to" are
> "broad language" of expansive (albeit not unlimited) reach. *Roby v. Corporation
> of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) ("Roby"). Indeed, Defendants
> themselves state that the Dangdang ADRs' "arbitration clause ... deserves a broad
> reading." (Defendants' brief on appeal at 20 n.7.)

47 F.4th at 102.

129.    As the Second Circuit noted, the breadth of the language "arising out of or

relating to" is accentuated by the object of that language, "the Shares or other Deposited

Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the

breach thereof." The first part of that language—"the Shares or other Deposited Securities, the

American Depositary Shares, the Receipts or the Deposit Agreement"—is broader than the latter

part referring to "the breach thereof." This means, subject to any subsequent exclusionary

41

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

provisions of the contract, that "[a]ny controversy, claim or cause of action … arising out of or

relating to" the ADSs must be arbitrated.

130.    That the Arbitration Clause extends to any dispute concerning the ADSs

themselves communicates a broad intent of the Parties to encompass the full scope of such

disputes, including on a "universal" basis extending to all holders of ADSs.

131.    The Arbitration Clause's selection of the AAA as provider and of the

"International Arbitration Rules" of the AAA constituted the Parties' selection of the ICDR as

provider and of the ICDR's International Arbitration Rules as the applicable Rules.

132.    It also constituted the Parties' selection of the AAA's Class Arbitration Rules,

which were effective in 2003 and hence in place when the Deposit Agreement and Receipts were

entered into. Rule 1(a) of the Class Arbitration Rules provides as follows, making clear that the

Parties' adoption of the International Arbitration Rules also constituted their adoption of the

Class Arbitration Rules:

> These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall
> apply to any dispute arising out of an agreement that provides for arbitration
> pursuant to any of the rules of the American Arbitration Association ("AAA")
> where a party submits a dispute to arbitration on behalf of or against a class or
> purported class, and shall supplement any other applicable AAA rules. These
> Supplementary Rules shall also apply whenever a court refers a matter pleaded as
> a class action to the AAA for administration, or when a party to a pending AAA
> arbitration asserts new claims on behalf of or against a class or purported class.

133.    But the Arbitration Clause, having set forth the Parties' agreement to arbitration

as to "[a]ny controversy, claim or cause of action" brought by ADS holders arising out or

relating to the ADSs, also provides a conditional exception or exclusion as to "*any such*

controversy, claim or cause of action" that relates to or is based on federal securities laws or

related rules and regulations. (emphasis supplied)

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

134.    Thus, while such controversies, claims or causes of action based on federal securities laws, rules or regulations fall under the broad inclusionary language of the Arbitration Clause prescribing mandatory arbitration, they also are conditionally subtracted out of that inclusionary language. At the option of the claimant in the particular instance, they are not required to be brought in the arbitration and may instead be brought in court.

135.    This, as noted above, is what has happened here. Claimants have chosen to continue to assert their federal securities claims in the Federal Action, while pursuing their common law claims in this Arbitration.

136.    Thus, the federal securities putative class action brought by Claimants in the Federal Action asserting claims under the federal securities laws and ancillary common-law claims ended up becoming bifurcated, with the ancillary common-law claims being separated out and brought in this Arbitration. As described above, this wasn't something either side suggested or originally initiated. Claimants brought all of these claims in the Federal Action, and Respondents never pressed to move any of them to arbitration.

137.    The advisability, potential effects, practicality, sensibility of the bifurcation, the ensuing potential duplication of proceedings and proliferation of time and expense, and the possibility of inconsistent results—none of this is before us or even relevant to our decision-making on the clause construction issue: Such is the mandate of the FAA. Supreme Court jurisprudence on the issue is clear. Party intent, not practicality, efficiency, or other such policy considerations, is the touchstone. That is the essence of the FAA—parties' right to agree to arbitrate matters they want to arbitrate, but not matters they elect not to arbitrate.

138.    The term "[a]ny controversy, claim or cause of action," as used in the exclusionary language of the Arbitration Cause concerning federal securities claims is thus as

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

broad as that same term is used in the Clause's inclusionary language. Indeed, the language of

exclusion as to federal securities claims does not even independently reiterate the term "[a]ny

controversy, claim or cause of action" used in the inclusionary language as to mandatory

arbitration.

139.    Rather, it refers back to that earlier use of the term in the inclusionary language. It

refers to "*any such* controversy, claim or cause of action," emphasizing, again, that what is

excluded from mandatory arbitration had been included in the opening language providing for

mandatory arbitration. Federal securities actions were initially included as mandatory, but then

excluded as only optionally arbitrable, at the election of the claimant in the particular instance.[2]

140.    This language of the Arbitration Clause thus means that federal securities actions

among holders of ADSs and Dangdang and, potentially, related entities and persons, are covered

by the inclusionary language of the Arbitration Clause mandating arbitration, but then potentially

excluded by the exclusionary language of the clause, making arbitration of such claims optional,

at the election of the claimant in the particular instance.

---

[2] District Judge Failla, in her 2020 decision as to *forum non conveniens*, noted that Defendants in that case, Respondents in the instant Arbitration "argue that … Plaintiffs' federal securities law claims fall within the Forum Selection Clause." 482 F. Supp. 3d at 168.

Judge Failla, in language applicable to New York contract law at issue as to clause construction, noted that, when it comes to contract interpretation, words "must … be given their plain meaning." Id., quoting from *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.,* 565 B.R. 241, 252 (S.D.N.Y. 2017) *(quoting Brooke Grp. Ltd.v. JCH Syndicate* 488, 87 N.Y.S.2d 530, 534, 640 N.Y.S.2d 479, 663 N.E.2d 635 (1996)).

Judge Failla, in language equally applicable to the matter at hand, further noted that a contract "must be read as a whole in order to determine its purpose and intent, and … single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part." …" *Id*., quoting *Eighth Ave. Coach Corp. v. City of New York,* 286 N.Y. 84, 88, 35 N.E.2d 907 (1941).

This reference by the District Court to the familiar approach to contract construction in New York that one must consider the entire contract seems a helpful reminder, in light of the dissent's suggestion that, in conducting this proceeding as to clause construction, we should consider only the Parties' Arbitration Clause and not their entire agreement.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

141.    It is evident that the term "[a]ny controversy, claim or cause of action," as used in the inclusionary language of the Arbitration Clause, has the same meaning when used in the conditional exclusionary language as to federal securities claims.

142.    The Second Circuit, in construing the scope of the Arbitration Clause's inclusionary provision as to arbitrability and exclusionary provision as to claims under the federal securities laws read them this way—that the Arbitration Clause's identical inclusionary and exclusionary language in this respect means the same thing each time, that the language of inclusion and exclusion is of equal scope. The Court stated:

> As quoted above, in connection with any asserted violations of federal securities statutes or regulations ("Federal Securities Claims"), the arbitration clause—instead of repeating the "arising out of or relating to" phrases or the "American Depositary Shares" frame of reference—simply refers retrospectively to "any such controversy, claim or cause of action." *Thus, in both respects the scope of the arbitration clause also defines the scope of the Federal Securities Claims that are to be arbitrated—or that a claimant may instead choose to pursue by litigation in Manhattan….*

47 F.4th at 101-102 (emphasis supplied).

143.    There is thus no contractual or logical basis—and none has been suggested—for concluding that the term "[a]ny controversy, claim or cause of action," when used in the inclusionary language as to what must be arbitrated, referred only to claims asserted on an individual basis, but, that that same language, when used in the exclusionary language as to what is only optionally arbitrable, included claims asserted on a class basis. If the exclusionary provision excluded class actions, the inclusionary provision included class arbitration.

144.    The term "[a]ny controversy, claim or cause of action," thus must, in each instance, either include or not include class actions, whether common law-based or federal securities-law class proceedings. As we shall see, other language in Section 23 makes it clear

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

that the former is the case—that the term "[a]ny controversy, claim or cause of action," as used

in the Parties' Arbitration Agreement, includes class proceedings.

145.    The bespoke nature of this contractual arrangement, whereby common-law

securities claims are required to be arbitrated, but federal securities claims, at the election of the

claimant in the particular instance, may be arbitrated or litigated—this bespoke arrangement

reinforces the sense that the Arbitration Agreement in this case is not a standard form of

agreement included in passing, but rather is a purposeful arrangement as to what is required to be

arbitrated and what may be arbitrated or litigated in court, at the election of the claimant. This

reinforces the sense that, when the Arbitration Agreement says "any" controversy, claim or cause

of action, it uses the word "any" according to its usual meaning and literally means what it says,

particularly when that Agreement is read as a whole, giving its words their natural meaning.

146.    The reality that, in making arbitration optional as to federal securities claims, the

Arbitration Clause was excluding the kind of federal securities claims that are typically brought

on a class-action basis reinforces the sense that class arbitration is mandated by the opening

language of the Arbitration Clause. The natural reading and apparent intent of this language is to

exclude federal securities actions, including federal securities class actions from mandatory

arbitration.

147.    District Judge Failla, in her 2020 decision as to *forum non conveniens*, set forth

this same understanding that the exclusionary language of the Arbitration Clause making

arbitration of federal securities claims optional was a "carveout" from the Clause's designation

of matters to be arbitrated:

> At the outset, the Court acknowledges that the Forum Selection Clause uses
> language that typically signals a broad application of the clause. See, e.g., Prod.
> Res. Grp., L.L.C. v. Martin Prof'l, A/S, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012)

46

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

(noting that terms such as "in connection with," "relating to," or "associated with" indicate a broader scope for forum selection clauses). Specifically, and when read in isolation, the Deposit Agreement provides that:

> [A]ny such controversy, claim[,] or cause of action brought by a party hereto against the Company relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder ... shall be litigated in the Federal and state courts in the Borough of Manhattan.

(Am. Compl., Ex. 5 at 54 (emphasis added)). However, terms such as "relating to" are not talismans that automatically render contractual clauses broad in scope; what controls is the language when read in its proper context, not the term in isolation. Cf. *169 Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51, No. 20 Civ. 1551 (BMC), (E.D.N.Y. June 15, 2020) (explaining, in the context of arbitration, that "even if an arbitration clause uses ... sweeping language, it may still be considered narrow given the surrounding context").

Reading the Forum Selection Clause within its context, it is clear that it is only designed to cover a narrow subset of claims. The Forum Selection Clause is contained within and connected to the Deposit Agreement's arbitration provisions. (See Am. Compl., Ex. 5 at 54). The Deposit Agreement broadly provides that all claims arising out of or relating to the ADSs or the Deposit Agreement must be settled by arbitration. (See id.) ("Any controversy, claim[,] or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts[,] or the Deposit Agreement ... shall be settled by arbitration.")

However, further down, the Deposit Agreement provides a narrow carveout for any claim "relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder." (Id.). For that subset of claims, arbitration is only required if elected by the claimant. (See id.). And critically, it is only those claims "not subject to arbitration" that must be litigated in New York. (Id.). Therefore, a plain reading of the Deposit Agreement makes clear that the Forum Selection Clause only applies to those claims "relating to or based upon" federal securities law and the regulations associated with those laws.

482 F. Supp.3d at 168-69.

148.    Claimants' federal securities claims in the Federal Action, like its common-law claims here, are putatively brought on a class basis. Indeed, the District Court approved Claimants' counsel herein as Claimants' class-action counsel in the Federal Action. While the

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

focus of Judge Failla's decision as to *forum non conveniens* was not on the class nature of the claims Claimants are asserting in the Federal Action, the decision was clearly made on the basis that the Parties' Forum Selection Clause as to federal claims—in effect, their Arbitration Clause as to such claims—covered federal securities class claims. The broad terms—"[a]ny such controversy, claim or cause of action," as included in the inclusionary and exclusionary language as to arbitration—included class proceedings.

149.    That the language "[a]ny controversy, claim or cause of action" includes cases involving multiple parties—and hence, potentially, class arbitrations—is reinforced by the Arbitration Clause's provision in the third paragraph of Section 23(a) of the Receipts that "a dispute, controversy or cause of action *[may] involve more than two parties."* (Emphasis supplied). The potential claimants in an arbitration are not limited to an individual claimant. Claimants may consist of any party to the Deposit Agreement and its Exhibit A.

150.    This takes us back to the meaning of "any party" in the opening lines of the Arbitration Clause. We suggested above that a natural understanding of that language is that it is inclusive in the sense that any holder of the ADSs can be a claimant under the Arbitration Clause. The further provision that "a dispute, controversy or cause of action [may] involve more than two parties" reinforces this understanding of the contract language.

151.    This inclusiveness as to the nature of the relationship of the holders of the ADSs makes practical sense. All holders of the ADSs would appear to have essentially the same relationship to Dangdang. The contractual arrangements of individual ADS holders with Dangdang are not written or couched as individually worked-out contracts, but rather broadly contain language to the effect that all holders are entering into in effect the same contractual relationship with Dangdang.

48

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

152.    The references at the end of the first paragraph of Section 23(a) to "a party" and "a claimant" suggest that an individual holder of ADSs may elect arbitration or litigation for its federal securities claims. But the fact that any given party that is a holder of an ADS may make its own election as to arbitration or litigation, including, potentially, being a part of a class arbitration or class action, does not seem inconsistent with the provision of the Arbitration Clause permitting parties to an arbitration to be "more than two parties"

153.    The provision in the fourth paragraph of Section 23(a) limiting the authority of arbitrators under the Arbitration Clause to issue certain types of damages shows, once again, that the Parties' agreement focused on what matters are and are not to be arbitrated. Therefore, when the agreement used language of a broad nature, such as "[a]ny controversy, claim or cause of action," this language was to be understood as written. Similarly, when the agreement was intended to exclude something encompassed within the broad inclusionary language, it contained exclusionary or other limiting language reflecting this intent, such as the conditional exclusion of federal securities claims, making them optional at the election of a claimant.

154.    Section 23(b) of the Arbitration Clause also reinforces the Parties' intent that the term "[a]ny controversy, claim or cause of action" includes class arbitrations and class actions. It provides:

> Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or this Deposit Agreement not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

155.    This section, stating "[a]ny controversy, claim or cause of action" not subject to arbitration shall be litigated in federal or state courts in Manhattan, provides a binary choice.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

Under it, any controversies, claims, or causes of action that may arise among the Parties concerning the ADSs are to go to arbitration before the AAA in Manhattan or be litigated in federal or state court in Manhattan. The term "[a]ny controversy, claim or cause of action" thus encompasses individual and class proceedings that may arise among the Parties and provides that they are to be brought in one of these dispute resolution forums or the other.

156.    Certainly, securities class actions are a way that securities actions, as between securities holders, issuers and associated persons, may be expected potentially to be brought. But, from the breadth of this language, it seems evident the Parties did not contemplate any potential dispute among themselves that would not come within the ambit of being a "controversy," "claim", or "cause of action."

157.    The dispute resolution regime established by the Arbitration Clause thus prescribes how the universe of foreseeable disputes that might arise among them, including class as well as individual claims, would be resolved, whether in arbitration or court.

158.    The contrary interpretation—that the term "[a]ny controversy, claim or cause of action" refers only to individual actions and that the Parties *reached no agreement as to where class actions among themselves concerning the ADSs would be brought*, or as to limitations on such actions—does not seem plausible.

159.    Thus, from the textured and bespoke nature of the Arbitration Agreement, it seems evident the Parties were acting intentionally to exercise control and establish a comprehensive dispute resolution regime concerning any disputes that may arise among them, including with respect to selecting an authorized agent for service of process, potentially submitting to the jurisdiction of the AAA and state and federal courts in New York, and waiving immunities, including sovereign immunities.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

160.    Given the totality of the contract language, it would thus seem contrary to the

language and structure of the Arbitration Agreement to infer, by the comprehensive phrase

"[a]ny controversy, claim or cause of action," that they did not intend to include potential class

proceedings—that, in effect, their comprehensive-seeming dispute resolution regime was not

intended to regulate where potential class proceedings among holders of ADSs and Dangdang

and associated persons would be heard or the limitations as to defenses and the like to which

they were subject.

161.    Certainly, in late 2010, when the Deposit Agreement and Receipts were initially

put in place, the potential for federal securities class actions among holders and Dangdang, in the

event a dispute over those securities were to arise, was evident. Correspondingly, the Parties'

intent to prescribe where, before what forum and under what limitations, such matters would be

heard, would seem to be evident by the breadth of the language they used, "[a]ny controversy,

claim or cause of action" and the language of Section 23(b).

162.    This applies to potential class arbitration, should a dispute among holders of the

ADSs and Dangdang arise. As *Stolt-Nielsen* told us in 2010, since 2003 the potential for class

arbitration was evident. 559 U.S. at 673 n4.

163.    Although Section 24 of the Receipts, as concerns appointment of an agent for

service of process and submission to jurisdiction, does not use the words "[a]ny controversy,

claim or cause of action," the words it does use—"any suit or proceeding arising out of or

relating to … [the ADSs], including any arbitration proceeding"—seem designed to address

vehicles (in effect, suits or proceedings), through which "[a]ny controversy, claim or cause of

action" might be asserted.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

164.    Similarly, the language that Section 24 of the Receipts and Section 7.07 of the Deposit Agreement uses as to waiver of immunities—"any legal action, suit or proceeding—while it adds the word "legal action," seems also to be addressing, in effect, vehicles through which "[a]ny controversy, claim or cause of action" might be asserted.

165.    It seems implausible that the Parties, in the binary choice they established in Section 23(b), did not intend, through having class proceedings be included in the term "[a]ny controversy, claim or cause of action," to have such proceedings be subject to such provisions of exclusion as those concerning immunities.

166.    That the limiting language of Section 7.06 concerning immunities was intended to be encompassed within the term "[a]ny controversy, claim or cause of action" also seems evident from the cross-reference in Section 23 to Section 7.06—and reinforces the inference that the Parties intended the term "[a]ny controversy, claim or cause of action" to include class proceedings, whether in court or arbitration.

167.    Section 7.08 of the Deposit Agreement is applicable to the present dispute. It tells us New York law applies to our interpretation of the Deposit Agreement and Receipts and hence governs our interpretation of the Parties' Arbitration Agreement, except as the FAA, as discussed above, may have preempted state law in this regard.

168.    Thus, based on the language of the Parties' Arbitration Agreement, we find that the Parties affirmatively agreed to class arbitration as a mode of dispute resolution.

169.    For the above reasons, we do not find the Arbitration Agreement to be ambiguous as concerns issues as to clause construction.

170.    We reach the same conclusion based on application of the *exclusio unius* mode of construction to the Parties' Arbitration Agreement. By the scope of the exclusions and other

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

provisions in the Arbitration Agreement, the Parties knew how to express themselves and

expressed themselves when they wanted to exclude or limit certain types of disputes or issues

from the broad language used to describe the scope of matters to be arbitrated. From the refined

nature and interrelationship of inclusionary and exclusionary language as to arbitration in the

Arbitration Agreement, the Parties intended that Claimants could potentially bring their common

law claims on a class arbitration basis.

171.    There was some discussion during the oral argument as to whether it makes

sense—whether, in effect, it's a plausible interpretation of the Parties' Arbitration Agreement—

that there may be two class proceedings here: one in this Arbitration and one in the Federal

Action. As discussed above, there are obviously issues of practicality around such an election by

Claimants. Yet, that is the situation—the particularly bespoke contractual set-up—presented by

the Parties' agreement to potential bifurcation in this regard through, in effect, agreeing that

Claimants' ancillary securities-related common law claims must be arbitrated, whereas such

claims arising under the federal securities laws, rules, and regulations may, but need not be,

arbitrated.

172.    The Second Circuit, in its discussion of the Parties' arrangements concerning

dispute resolution, recognized that the Arbitration Agreement, in effect, creates such a system of

bifurcation. The Second Circuit stated, *inter alia*, as follows in this regard:

> Second, the court's reliance on the fact that only half of plaintiffs' claims are
> covered by the ADRs' Forum Selection Clause seems to have envisioned that a
> forum–non–conveniens dismissal could avoid "bifurcation" of the case. But the
> avoidance of bifurcation is not possible if plaintiffs insist on their rights under the
> Deposit Agreement to have their Federal Securities Claims litigated in court,
> because all of their other claims must, according to that Agreement, be submitted
> to arbitration.

*Fasano*, 47 F.4th 91 at 104.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

173.    We thus find under Rule 3 of the AAA's Class Arbitration Rules that the Parties'

Arbitration Agreement permits this arbitration to proceed on behalf of a class, subject to

Claimants' satisfying the other requirements of the AAA's Class Arbitration Rules, including

those set forth in Section 4 thereof concerning class certification.

174.    We are mindful of the following provisions of Rule 3 of the AAA's Class

Arbitration Rules:

> In construing the applicable arbitration clause, the arbitrator shall not consider the
> existence of these Supplementary Rules, or any other AAA rules, to be a factor
> either in favor of or against permitting the arbitration to proceed on a class basis.

175.    We have rendered this Partial Final Award consistently with the prohibition of the

foregoing provision of Rule 3.

**J.    Other**

176.    All arguments of the Parties concerning clause construction not specifically

addressed in this Partial Final Award have been determined by the Tribunal to be consistent with

the above conclusions or without merit.

**K.    The Dissent**

177.    The dissent's suggestion seems misplaced that, if the Parties had intended class

arbitration, they would have addressed or referred in their Arbitration Agreement to some of

such matters as the requirements in the AAA's Class Arbitration Rules that one of the arbitrators

be on the AAA's national roster of class arbitration arbitrators[3] and requirements of those Rules

---

[3] *See* the AAA's Class Arbitration Rules at Rule 2(a). The Parties selected a chair who is a member of that roster.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

concerning numerosity, commonality, typicality, predominance of common questions of fact and

law, and superiority of class procedures to other means of adjudicating.[4]

178.    The Parties could, of course, have expressly covered such matters. But suggesting

that they need to have done so, or something comparably express, for this Tribunal to find that

they agreed to class arbitration is too big a leap. The Supreme Court has repeatedly told us and

the Second Circuit has noted that implicit agreement to class arbitration satisfies the consent

requirement of the FAA, thus relegating remaining aspects of the issue of consent to state

contract law designed to determine consent, such as the rule of *expressio unius* and other canons

of construction, like considering parties' entire agreement.

179.    Requiring that parties' arbitration agreements expressly refer to the AAA's class

action roster or such potential issues as numerosity, commonality, typicality, predominance and

the like seems just another way of saying that such expressness is necessary—and that implicit

consent is legally insufficient, notwithstanding the availability of such approaches as interpreting

agreements according to their plain meaning and using the expressio unius canon of construction

to assess intent.

180.    Indeed, from the perspective of a skilled drafter of an arbitration clause, why

would one get so specific as to a matter covered in Rules one is adopting—why ask for

problems? And would not such specificity of drafting be more likely if one were deviating from

Rules one was selecting?

181.    The dissent relies heavily on the Eighth Circuit's comment in *Catamaran Corp.*,

in upholding the decision below denying class arbitration, that the arbitration agreements in that

---

[4] The AAA's Class Arbitration Rules 4 (Class Certification) and 5 (Class Determination Award) address such and other matters.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

case were "not inconsistent with individual arbitration." *See* 946 F.3d at 1024. To our

understanding, that comment is inapplicable to the Arbitration Agreement in the instant case,

misconstrues *Stolt-Nielsen* and *Lamps Plus*, and, in any event, was dictum and is inconsistent

with the Second Circuit's construction of *Lamps Plus*.

182.    The Eighth Circuit's comment is inapplicable to the instant case because, as

discussed above, the Arbitration Agreement in this case, read as a whole and in light of *expressio*

*unius*, contains affirmative language reflecting the Parties' agreement to class arbitration,

language that, read in its totality, is inconsistent with purely bilateral arbitration.

183.    The Eighth Circuit, in *Catamaran Corp.*, citing pre-*Lamps Plus* Third Circuit

decisions, suggests the Eighth Circuit's skepticism about the Supreme Court's rulings in *Stolt-*

*Nielsen* and *Lamps Plus* that implicit consent is legally sufficient under the FAA:

> As the pharmacies concede, the agreements do not explicitly authorize class
> arbitration or even reference it at all. Other circuits have determined that such
> "[s]ilence regarding class arbitration generally indicates a prohibition ...."
> *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012); *see*
> *also Opalinski v. Robert Half Int'l Inc.*, 677 F. App'x 738, 741 (3d Cir. 2017)
> (collecting cases). Indeed, this Court has affirmed a denial of a request to arbitrate
> as a class, based on arbitration clauses in partnership agreements, because "the
> goal of the FAA is to enforce the agreement of the parties" and "the partnership
> agreements ma[de] no provision for arbitration as a class." *Dominium Austin*
> *Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001). The rationale
> behind this interpretation of silence is that there are fundamental differences
> between individual and class arbitration, including that in a class arbitration
> proceeding: (1) the benefits of arbitration are "substantially lessened"; (2) the
> presumption of confidentiality and privacy "is lost or becomes more difficult"; (3)
> the commercial stakes are much higher with limited judicial review; and (4) due
> process concerns arise because it adjudicates the rights of absent parties.
> *Catamaran I*, 864 F.3d at 971-72 (citing *Stolt-Nielsen*, 559 U.S. at 685-87, 130
> S.Ct. 1758). These fundamental differences dictate against "presum[ing] ...that the
> parties' mere silence on the issue of class-action arbitration constitutes consent to
> resolve their disputes in class proceedings." *Stolt-Nielsen*, 559 U.S. at 687, 130
> S.Ct. 1758.

946 F.3d at 1023.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

184.    The Eighth Circuit reiterated this view in the next paragraph as to the

insufficiency of silence as a basis for finding party agreement to class arbitration:

> Thus, just as we found that, in light of the fundamental differences between
> individual and class arbitration, silence was "insufficient grounds for delegating
> the [class arbitration] issue to an arbitrator" in Catamaran I, so too do we find
> silence does not provide a sufficient basis for concluding that the parties agreed to
> class arbitration. 864 F.3d at 973; see also Stolt-Nielsen, 559 U.S. at 687, 130 S.Ct.
> 1758.

946 F.3d at 1023.

185.    The Second Circuit, in contrast, has found that the Supreme Court continues to

recognize implicit consent. As noted above, the Second Circuit in *Jock* interpreted *Lamps Plus* as

meaning that parties' agreement to class arbitration may be implicit:

> Lamps Plus leaves undisturbed the proposition, affirmed in Stolt-Nielsen, that an
> arbitration agreement may be interpreted to include implicit consent to class
> procedures.

942 F.3d at 626.

186.    Nor was the above language of the Eighth Circuit in *Catamaran Corp*. a

necessary basis of decision in that case. The Eighth Circuit pointed to numerous respects in

which the arbitration agreements in that case fell short of reflecting the parties' implicit

agreement to class arbitration:

> The pharmacies offer several textual arguments in support of their claim that the
> parties implicitly authorized the pharmacies to proceed as a class in the event of a
> dispute. Specifically, they cite the fact that one attorney-in-fact brokered and
> signed the two agreements on behalf of all of the pharmacies, that the arbitration
> provisions are broad in scope, and that the agreements refer to the pharmacies as a
> single entity. However, the pharmacies have not presented any relevant authority
> for the proposition that such facts support a finding of implicit authorization of
> class arbitration. The pharmacies offer only Illinois state court decisions for the
> general principle that the court will find an implied term when it "was so clearly
> in contemplation of the parties as that they deemed unnecessary to express it ... or
> that it is necessary to imply such a covenant in order to give effect to and

57

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

> effectuate the purpose of the contract as a whole." *Goldblatt Bros. Inc. v. Addison Green Meadows, Inc.*, 8 Ill.App.3d 490, 290 N.E.2d 715, 719 (1972) (quoting *Fox v. Fox Valley Trotting Club, Inc.*, 4 Ill.App.2d 94, 123 N.E.2d 595, 598 (1954), rev'd on other grounds, 8 Ill.2d 571, 134 N.E.2d 806 (1956)). We conclude the agreements are not inconsistent with individual arbitration and do not support the conclusion that the parties intended class arbitration and believed that intent was so evident from the terms of the written agreements that it was unnecessary to express that intent within the agreements themselves. Accordingly, there is no contractual basis to conclude that the parties implicitly authorized class arbitration.

946 F.3d at 1024.

187.    *Catamaran Corp.*'s dictum also adds a speculative and unsubstantiated gloss on the expressio unius approach to assessing party intent. As discussed above, the Second Circuit in *Sappington*, found that, "[b]y expressly foreclosing certain proceedings from arbitration, the parties in these cases strongly implied that every other 'controversy or dispute' remains subject to arbitral resolution." *See* 884 F.3d at 396.

188.    Again, saying that the *Catamaran* gloss on the FAA overrides *Lamps Plus's* repeated explanations that interpretive approaches designed to assess consent to class arbitration may be legally sufficient seems unduly restrictive.

189.    To the extent Circuits have come out differently in their understanding of the meaning and requirements of *Stolt-Nielsen* and *Lamps Plus*, we understand we are bound by the Second Circuit.

190.    The dissent understandably references differences the Supreme Court has noted between bilateral and class arbitration. Yet the limits of what the Court has actually held on the point cannot be overlooked. The Court—quite the opposite of precluding class arbitration—has found it to be a valid and enforceable process in circumstances where parties, as described above, have consented to it.

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

## II.    PARTIAL FINAL AWARD

For the foregoing reasons, we hereby issue the following PARTIAL FINAL AWARD

limited to the issue of clause construction under Rule 3 of the AAA's Class Arbitration Rules:

1.    We find and determine, as a threshold matter, that the Parties' Arbitration
     Agreement permits this Arbitration to proceed on behalf of a class.

2.    This PARTIAL FINAL AWARD is limited to the issue of clause construction
     under Rule 3 of the AAA's Class Arbitration Rules. We make no finding and no
     ruling and do not limit further consideration of issues in the case other than as set
     forth in Paragraph 1 immediately above of this PARTIAL FINAL AWARD. We
     reserve jurisdiction on all other issues or matters concerning this Arbitration.

3.    This Arbitration is hereby stayed for 30 days from the date hereof, pursuant to the
     following provision of Rule 3 of the AAA's Class Arbitration Rules:

     The arbitrator shall stay all proceedings following the issuance of the
     Clause Construction Award for a period of at least 30 days to permit
     any party to move a court of competent jurisdiction to confirm or to
     vacate the Clause Construction Award. Once all parties inform the
     arbitrator in writing during the period of the stay that they do not
     intend to seek judicial review of the Clause Construction Award, or
     once the requisite time period expires without any party having
     informed the arbitrator that it has done so, the arbitrator may proceed
     with the arbitration on the basis stated in the Clause Construction
     Award. If any party informs the arbitrator within the period provided
     that it has sought judicial review, the arbitrator may stay further
     proceedings, or some part of them, until the arbitrator is informed of
     the ruling of the court.

     Please advise us of developments during the period of the foregoing stay
     or within five business days of the end thereof.

We hereby certify that, for the purposes of Article I of the New York Convention of 1958 on the
Recognition and Enforcement of Foreign Arbitral Awards, this Decision and Partial Final Award
was made in New York, New York, U.S.A.

10/22/24
_____
Date

*Charles J. Moxley Jr., Esq., Chair* (signature)
_____
Charles J. Moxley Jr., Esq., Chair

59

Case Number: 01-22-0003-8285
Joe Fasano, *et al.* -vs- Guoqing Li, *et al.*
**PARTIAL FINAL AWARD**

10-22-24
_____
Date

_____
William H. Narwold, Esq.

I, Charles J. Moxley, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed the foregoing instrument, which is the Partial Final Award.

10/22/24
_____
Date

_____
Charles J. Moxley, Jr., Esq., Chair

I, William H. Narwold, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed the foregoing instrument, which is the Partial Final Award.

10-22-24
_____
Date

_____
William H. Narwold, Esq.

60