# Exhibit 2

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

International Arbitration Tribunal

Class Arbitration and International Tribunal

---------------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| | : | |
| Joe Fasano; Altimeo Optimum Fund; Altimeo Asset | : | Case No. 01-22-0003-8285 |
| Management; Individually and on Behalf of All Others | : | |
| Similarly Situated, | : | |
| | : | |
| Claimants, | : | |
| | : | |
| v. | : | |
| | : | |
| Guoqing Li; Peggy Yu Yu; Dangdang Holding Company, | : | |
| Ltd.; E-Commerce China Dangdang Inc.; Kewen Holding Co. | : | |
| Ltd.; Science & Culture Ltd.; First Profit Management, Ltd; | : | |
| Danqian Yao; Lijun Chen; and Min Kan, | : | |
| | : | |
| Respondents. | : | |
| | : | |

---------------------------------------------------------------------------X

**DISSENTING OPINION**

1

Arbitrator Levi, dissenting.

Because the majority opinion is inconsistent with controlling decisions of the United States Supreme Court, I dissent.[1]

The question before us is whether the parties to the arbitration agreement consented to class arbitration.  Their consent is essential.  *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 681 (2010) (noting the "basic precept that arbitration 'is a matter of consent, not coercion'" (citation omitted)); *Id.* at 684 ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original).  The Court further tells us that to find consent to class arbitration, there must be an "affirmative" contractual basis for doing so.  *Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 189 (2019).  An "affirmative contractual basis" cannot rest upon silence or ambiguity.  Nor is it sufficient to find or infer consent to class arbitration based upon a broadly stated arbitration clause by which the parties consent to arbitration of "any" dispute, claim, controversy, or cause of action.  See *Stolt-Nielsen*, 559 U.S. at 685 ("[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate");  *Lamps Plus,* 587 U.S. at 206-07 (arbitration provision at issue encompasses "any and all disputes, claims or controversies");  *Reed v. Florida Metropolitan University Inc.,* 681 F.3d 630, 643 (5th Cir. 2012) ("any dispute" clauses are not "a valid contractual basis upon which to conclude that the parties agreed to

---

[1]  I dissent only from the majority's finding that the parties consented to class arbitration. I concur that the Tribunal has jurisdiction to decide the issue.  I also concur in the stay imposed under Rule 3 of the AAA's Class Arbitration Rules.

submit to class arbitration.").  It follows that contractual language that is consistent with a broadly stated but non-class arbitration agreement is not an affirmative, unambiguous basis on which to infer consent to a class arbitration; it is no more indicative of the one than the other.  *See Catamaran Corp. v. Towncrest Pharmacy,* 946 F.3d 1020, 1024 (8th Cir. 2020) (language that is not "inconsistent with individual arbitration" is not affirmative contractual language supporting consent to class arbitration).  And this is true whether the non-class arbitration involves multiple claimants and respondents, as here, or only involves a single claimant and a single respondent.[2]  Finally, the inquiry is not whether language in the arbitration clause precludes class arbitration or is somehow inconsistent with class arbitration, although the presence of such language would surely resolve the issue, but whether the arbitration clause affirmatively supports a finding of party consent to class arbitration.  *Stolt-Nielsen,* 559 U.S. at 684.  In other words, the default is non-class arbitration and not the other way around:  the absence of a disclaimer of consent to arbitration is not an affirmative indication of consent.

As in so many areas of the law, consent, like waiver, is not to be lightly inferred.  As the majority opinion explains, consent to class arbitration may be implicit, but it still must be "affirmative" and unambiguous.  A finding that the contract language "affirmatively" evidences the parties' consent to class procedures cannot be based on bits of contractual language drawn from here and there in the contract and which are as consistent with consent to a broadly

---

[2] There is some confusion in the majority opinion and in the caselaw over the use of the term "bilateral."  To be termed "bilateral," an arbitration need not consist of a single claimant and a single respondent.  As the Court has explained, "bilateral arbitration" signifies non-class arbitration.  Multi-party arbitrations, involving several claimants and several respondents as here, are "bilateral".  *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651 (2022). ("Our precedents use the phrase 'bilateral arbitration' in opposition to 'class or collective' arbitration).

stated non-class arbitration agreement as they are to consent to class arbitration procedures.
At the very least, this kind of contractual language would be ambiguous and leave the matter in
doubt. *See Reed v. Florida Metropolitan University, Inc,* 681 F.3d at 640 ("Although the
agreement to submit to class arbitration may be implicit, it should not be lightly inferred.");
*Catamaran Corp. v. Towncrest Pharmacy,* 946 F.3d at 1024. At a minimum, the Court's cases
require contractual language that is significantly more indicative of agreement to class
proceedings than to non-class proceedings. Otherwise, the requirement of "affirmative"
contractual language is drained of content.

Why in this context does the Court insist so strongly upon an "affirmative" basis for
consent and caution against lightly inferring such consent? The answer is because, in the view
of the Court, there is such a big difference between class proceedings and non-class
proceedings and because both claimants and respondents give up so much more in terms of
procedural protections when they agree to class arbitration than they do when they agree to
non-class arbitration. In brief, for class plaintiffs or claimants, the risk of a class proceeding is
that their claims will be finally disposed of through the class proceeding even though they are
not in control of the litigation and are not present before the tribunal through counsel of their
choosing. As a consequence, many class procedural rules whether in court or in arbitration are
intended to address what is at heart a due process concern on behalf of absent parties. For
defendants in a class proceeding there are other considerations. Facing the extraordinary
power of joinder of a huge number of claims in a class context, where the power of aggregation
may present the defendant with an existential or "bet the company" case, defendant's ultimate
protection in an in-court class action is in the extensive motion practice and opportunities for

4

appellate review and error correction that is provided for in the federal rules of civil procedure and comparable state rules.  But in class arbitration these procedural protections, particularly de novo appellate review of legal decisions, are not present or not present in anything like the same extent and degree.

The *Stolt-Nielsen* Court's explanation is worth quoting in full:

An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.  (citations omitted) But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration.

Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure, . . . no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties. . .. Under the Class Rules, "the presumption of privacy and confidentiality" that applies in many bilateral arbitrations "shall not apply in class arbitrations," see Addendum to Brief for American Arbitration Association as Amicus Curiae 10a (Class Rule 9(a)), thus potentially frustrating the parties' assumptions when they agreed to arbitrate. The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well.  *Cf.  Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) . . .  And the commercial stakes of class-action arbitration are comparable to those of class-action litigation . . . even though the scope of judicial review is much more limited. (citation omitted).  We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.

*Stolt-Nielsen v. AnimalFeeds International Corp.*, 559 U.S. at 685-87.

In *Lamps Plus,* the Court applied this reasoning to a broadly stated arbitration clause[3] that the appeals court had found was ambiguous as to whether the parties consented to class arbitration:

> We therefore face the question whether, consistent with the FAA, an ambiguous agreement can provide the necessary "contractual basis for compelling class arbitration. (citation omitted).  We hold that it cannot . . . Class arbitration is not only markedly different from the "traditional individualized arbitration" contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration.

*Lamps Plus v. Varela,* 587 U.S. at 183.

The Court identified the benefits of private dispute resolution as "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."  But class arbitration lacks these benefits:  it "makes the process slower, more costly, and more likely to generate procedural morass."    Moreover, "[c]lass arbitration not only "introduce[s] new risks and costs for both sides," (citation omitted), it also raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class—again, with only limited judicial review."  *Id.* at 185.

The same points and concerns are also stated in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  In *Concepcion,* the Court noted: "Arbitration is poorly suited to the higher

---

[3]  The arbitration clause in *Lamps Plus* provided that "[T]he parties agree that any and all disputes, claims or controversies arising out of or relating to [] the employment relationship between the parties[] shall be resolved by final and binding arbitration."  The agreement further provided that "[A]rbitration shall be in lieu of any all lawsuits or other civil legal proceedings relating to my employment, and "The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past present or future that I may have against the Company."  *Id.* at 207 (Kagan, J. dissenting).  This language foreclosed any other in-court proceedings—class or non-class—unlike the arbitration agreement in this matter.

stakes of class litigation.  In litigation, a defendant may appeal a certification decision on an interlocutory basis and, if unsuccessful, may appeal from a final judgment as well.  Questions of law are reviewed *de novo* and questions of fact for clear error" in sharp contrast to the limited review of arbitral awards under the Federal Arbitration Act ("FAA").   Because of these disadvantages, the Court found "it hard to believe that defendants" would agree to class arbitration and by so doing "bet the company with no effective means of review of review." *Id.,* at 350-51.

Because class arbitration is so different from non-class arbitration and potentially less favorable in terms of procedural protections for claimants and respondents alike, as well as increasing defense risks in one roll of the dice, the Court has recognized that it is disfavored and that non-class or bilateral arbitration is "the prototype of the individualized and informal form of arbitration" protected by the FAA. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022).  Consistent with this recognition, there is no evidence in the record before us suggesting that class arbitration is the norm in the kind of dispute before us and against which this arbitration clause should be read.  Indeed, the evidence is quite to the contrary.  According to respondents, there has never been a securities class action arbitration under the ICDR rules. Respondents' brief at 24, citing Martin F. Gusy & James M. Hosking, A Guide to the ICDR International Arbitration Rules (2d. ed 2019).  This assertion has not been disputed by claimants.

Applying these precedents, principles, and reasoning to the arbitration agreement in this case turns out to be straightforward.  The arbitration provision is contained in paragraph 23 of

the Receipts which is an exhibit 1 to the Deposit Agreement.  Paragraph 23 provides in its

entirety:

23.  ARBITRATION; SETTLEMENT OF DISPUTES

(a)  Any controversy, claim or cause of action brought by any party hereto against the
Company arising out of or relating to the Shares or other Deposited Securities, the
American Depositary Shares, the Receipts or the Deposit Agreement, or the breach
thereof, shall be settled by arbitration in accordance with the International Arbitration
Rules of the American Arbitration Association, and judgment upon the award rendered by
the arbitrators may be entered in any court having jurisdiction thereof;  provided,
however, that in the event of any third-party litigation to which the Depositary is a party
and to which the Company may properly be joined, the Company may be so joined in any
court in which such litigation is proceeding; and provided, further, that any such
controversy, claim or cause of action brought by a party hereto against the Company
relating to or based upon the provisions of the Federal securities laws of the United States
or the rules and regulations promulgated thereunder shall be submitted to arbitration as
provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the
claimant.

The place of the arbitration shall be The City of New York, State of New York, United
States of America, and the language of the arbitration shall be in English.

The number of arbitrators shall be three, each of whom shall be disinterested in the
dispute or controversy, shall have no connection with any party thereto, and shall be an
attorney experienced in international securities transactions.  Each party shall appoint
one arbitrator and the two arbitrators shall select a third arbitrator who shall serve as
chairperson of the tribunal.  If a dispute, controversy or cause of action shall involve more
than two parties, the parties shall attempt to align themselves in two sides (i.e.,
claimant(s) and respondent(s), each of which shall appoint one arbitrator as if there were
only two parties to such dispute, controversy or cause of action.  If such alignment and
appointment shall not have occurred within thirty (30) calendar days after the initiating
party serves the arbitration demand, the American Arbitration Association shall appoint
the three arbitrators, each of whom shall have the qualifications described above.  The
parties and the American Arbitration Association may appoint from among the nationals
of any country, whether or not a party is a national of that country.

The arbitral tribunal shall have no authority to award any consequential, special or punitive damages or other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of this Deposit Agreement.

(b) Any controversy, claim or cause of action arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts of this Deposit Agreement not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, the City of New York and the Company hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

Paragraph 24 is the only arbitration agreement in the contract and thus its wording should be the focus of our inquiry into the parties' intent.[4]  Does paragraph 24 include affirmative contractual language consenting to class action arbitration by either claimants or respondents?  The question is not difficult to answer:  it does not.  Quite simply, there is no reference whatsoever in this paragraph to class arbitration.  This silence is deafening and squarely within the holding of *Stolt-Nielsen*.  Further, none of the language that is used in any way mentions or suggests class proceedings or refers in any way to class procedures for representative parties representing numerous parties who are not before the tribunal. All of the language used either suggests or is entirely consistent with bilateral, non-class arbitration.  For example, "any party" refers to a single person in the phrase "brought by *any* party".  Later in the same paragraph, in connection with a claim under the Federal securities law, the clause refers to

---

[4] Section 7.06 of the Deposit Agreement is referred to in two places within the arbitration clause.  Section 7.06 is titled "Submission to Jurisdiction; Appointment of Agent for Service of Process; Jury Trial Waiver."  It is addressed to all "suits" or "proceedings."  It does not use the word "arbitration" let alone "class" arbitration.  It does not refer to "class actions" at all.  Because arbitrations do not permit of jury trials, it would seem that the jury trial waiver in this provision is addressed to the federal securities act litigation that may be brought in federal court in New York under the Deposit Agreement and not to the arbitration agreement for the common law claims.

such a claim "brought by *a* party"—a party may elect to have federal securities claim submitted to arbitration on that party's election. This language refers to a single party and not to a class of persons or a representative of such a class.

The next paragraph addresses the appointment of the arbitrators and the arbitrators' qualifications. It is notable that there is no reference at all to the requirement in the ICDR rules that at least one of the arbitrators in a class arbitration must be on the AAA's roster of class arbitration arbitrators. This paragraph recognizes that there may be more than a single claimant and a single respondent and that there may be circumstances in which it is not clear whether a person is a claimant or a respondent. It provides that if there are multiple parties, the parties should align themselves into two sides for purposes of appointing the arbitrators. But the recognition that there may be multiple parties on each side is entirely consistent with non-class "bilateral" proceedings and cannot be taken as affirmative evidence of consent to class arbitration with procedures "that are inconsistent with the individualized and informal mode of arbitration contemplated by the FAA*." Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651 (2022). Commonplace multi-party litigation and multi-party arbitration is not the same as class litigation or class arbitration with class procedures. *See id.,* at 658. ("Our precedents use the phrase 'bilateral arbitration' in opposition to 'class or collective' arbitration, and the problems we have identified in mandatory class arbitration arise from procedures characteristic of multiparty representative actions.").

The next provision addresses damages and states that the arbitral tribunal may not award consequential, special or punitive damages "or other damages not measured by *the* prevailing *party's* actual damages." Again, the language is addressed to bilateral litigation and to single

parties.  It does not suggest a class or representative actions.  It is entirely consistent with bilateral, non-class arbitration.

The final provision in section (b) addresses claims "not subject to arbitration" under the agreement and selects the federal and state courts in New York City for the litigation of these claims.  Nothing in the contractual language used in this section suggests consent to class procedures of the common law claims that are to be arbitrated.

In short, the arbitration clause is directed to bilateral, non-class arbitration by its terms. All of it is entirely consistent with non-class arbitration.  Nothing in its language suggests multiparty representative class arbitrations explicitly or implicitly.  This should be the end of the matter under *Stolt-Nielsen*.  But it is worth pausing for a moment to consider just how significant this silence is.  Class action litigation of any sort, because of its complexity and many moving parts, has its own extensive vocabulary, concepts, and requirements.   For example, class proceedings brought by claimants require "lead" or "representative" claimants.  The class representatives must be found to "fairly and adequately" protect other class members. Claimants' counsel will be "class counsel" and must be found to have the experience and independence such that they will "fairly and adequately" protect the interests of the class.  As noted above, ICDR rules require that at least one of the arbitrators be on the AAA's roster of class arbitrators.  Further, class proceedings require a set of frequently complex and contested determinations before a class is found "maintainable" and then "certified"; these requisites go by the labels of "numerosity", "commonality", and "typicality".   There must be further findings of the "predominance" of the common questions of fact and law and the "superiority" of class procedures to other means of adjudicating the controversy.   If a class is certified, the means

and content of notice to absent class members must receive careful consideration, and class members must be provided with an opportunity—sometimes more than once—to "opt out" or "exclude" themselves from the class. Significantly, class members who exclude themselves generally are entitled to pursue their own individual actions for damages.

The arbitration agreement before the tribunal in paragraph 23 makes no reference to any of these issues or matters. It seems fair to assume that if the parties had any thought of consenting to class arbitration-- with the possibility that there would be two parallel class proceedings as a result-- they would have addressed or referred to some of these matters or at least made some passing reference to them. Any reference to any of these attributes of class or representative procedures could have amounted to "affirmative," albeit implicit, contractual language indicating consent to class arbitration. But the parties did not do so, not in paragraph 23 nor in any other provision of the Deposit Agreement. Without any language either expressly agreeing to class arbitration or addressing matters unique to class arbitration and its procedures as opposed to non-class arbitration, I see no basis on which to find "affirmative" unambiguous contractual language consenting to class proceedings.

Claimants make five arguments in favor of a finding of an agreement to class arbitration, the first of which is given preeminence:

> *First*, the Arbitration Clause expressly incorporates the AAA Rules which provide for class arbitration where the Arbitration Clause is silent on the issue. *Second*, four other important factors support clause construction: (1) the Arbitration Clause's very broad language covering "[a]ny controversy, claim or cause of action" related to the ADS stockholders, applies to a class action for being unfairly cashed out of ADS shares; (2) the Deposit Agreement and Arbitration Clause's express exclusion of certain remedies and procedures, while omitting class remedies and procedures implies consent to class arbitration; (3)

Respondents['] broadly waived immunity to legal process, which eliminates immunity from class arbitration; and (4) the Deposit Agreement's consistent use of universal language on its face covers a class action by a large group of ADS owners and holders.

Claimants' Brief in Support of Class Action Arbitration at 7-8.

These arguments are either irrelevant or misperceive the state of the law. The lead argument, concerning the incorporation of the AAA Rules, does not advance claimants' position for a number of reasons. First, the arbitration provision does not specifically incorporate the Supplementary Rules for Class Arbitrations of the AAA and even if it did this would only incorporate a process and not an outcome. Paragraph 24 provides only that any dispute "shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association." This provision is entirely consistent with non-class arbitration, which is the prototype, and, therefore, provides no "affirmative" evidence of consent to class procedures in a class arbitration. Second, the Supplementary Rules expressly provide: "In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Under this provision, the fact of the Supplementary Rules is irrelevant to the question before us. *See Reed v. Florida Metropolitan University, Inc., supra,* 681 F.3d at 636 n.6. Third, claimants confuse "who" decides with "what" is decided. An agreement to arbitrate under ICDR rules under which the arbitrators decide whether the parties have consented to class arbitration is an agreement to submit the issue to the arbitrators for decision as opposed to a court. But it is by no means an agreement by the parties that the arbitrators must interpret the arbitration clause to include consent to class arbitration and class procedures. Were this the case, every arbitration agreement adopting AAA

rules would constitute consent to class arbitration.  This cannot be, and no court has so held.  Indeed, in *Stolt-Nielsen* "[t]he parties entered into a supplemental agreement providing for the question of class arbitration to be submitted to a panel of three arbitrators who were to 'follow and be bound by Rules 3 through 7 of the American Arbitration Association's Supplementary Rules for Class Arbitrations (as effective Oct. 8, 2003)."  The Court never found that this fact had any bearing on the question of whether the parties consented to class arbitration.  The illogic of claimants' argument is obvious, and the majority opinion rightly rejects it.  *See* paragraphs 112-117, *supra*.

The first three of the remaining 4 arguments can be dealt with together because taken individually or as a group they are inconsistent with *Stolt-Nielsen* and *Lamps Plus.*  Remember that a broadly stated arbitration clause, including such terms as "any dispute," provides no affirmative consent to class procedures because class arbitrations and class procedures are so very different from non-class arbitrations and non-class procedures.  The parties' agreement to a broad non-class arbitration clause that assures that all of their disputes will receive the benefits of non-class arbitration as well as their agreement to ancillary provisions that are consistent with non-class arbitration, and serve its purposes, are not a basis on which to infer agreement to class arbitrations.  If broadly stated arbitration clauses and ancillary provisions were permitted to serve as "affirmative" evidence of consent to class arbitration—a position lacking in logic since the provisions are equally consistent with non-class arbitration--then the Court's holdings in *Stolt-Nielsen* and *Lamps Plus* would be undermined and the default altered.  Then it would be the non-consenting party's burden to include contract language disclaiming an

intent to consent to class arbitration because otherwise the party's silence in the face of broadly stated provisions would be taken as consent. But this is the reverse of what the cases hold.

More specifically as to these three arguments:

The language "[a]ny controversy, claim or cause of action" in the arbitration clause (paragraph 24) is entirely consistent with a broad non-class arbitration agreement and, therefore, not "affirmative" contractual language of consent to class arbitration and class procedures. Similar language is typical of non-class arbitration agreements. *See Reed v. Florida Metropolitan University, Inc.*, 681 F.3d at 642 (noting that "any dispute" clauses are typical of non-class arbitration agreements and found in ADR clauses suggested by the American Arbitration Association and JAMS). The arbitration provision in *Lamps Plus* was a good deal more sweeping than here because it precluded any recourse to court and, thereby, any recourse to a class action in a court. The Court found no affirmative contractual language supporting consent to class arbitration.

Claimants argue that the waiver of jury trial and the exclusion from the arbitrators' authority of the power to award certain damages is a basis on which to apply the doctrine of "expressio unius."  Under this doctrine of contract interpretation, in certain circumstances, it can reasonably be inferred from an enumeration of items expressly included, that those items not listed as included are intended to be excluded. But application of this doctrine to the arbitration clause here is not  reasonable, which may explain why the majority opinion, having taken such pains to distinguish this doctrine from *contra proferentem,* devotes so little

discussion to its application.[5]  Claimants argue that because the arbitration clause provides that the arbitrators may not award consequential damages, the parties must have intended that the arbitrators would have the authority to order class procedures and class arbitration.  Just to state this proposition suggests how unreasonable it is.  It is particularly unreasonable given that the language of the section is couched in terms that are bilateral— "*the* prevailing party's actual damages."  Moreover, if this were the rule, parties agreeing to non-class arbitration could not include any limits on arbitrator discretion or authority without including an express disclaimer concerning class arbitration.  Such an approach would be inconsistent with the reasoning and holding in *Stolt-Nielsen* and *Lamps Plus*, and, therefore, would conflict with the FAA.   Claimants also base this argument on the waiver of jury trial found in another section of the Receipts (Section 24).  This reliance is baffling.  The jury trial waiver is not a part of the arbitration clause and would not seem to have any application to it:  both claimants and respondents agree that there are no jury trials in arbitration.  This provision applies to the federal securities action that may be pursued by a claimant in federal court separately from the arbitration.  And, as with the limitation on damages, even this waiver is couched in terms of an individual party with no reference to a class:

> EACH PARTY TO THE DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) THEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT

---

[5]  The majority opinion distinguishes "contra proferentem" from "expressio unius."  Nonetheless, it remains uncertain that expressio unius is an appropriate tool for finding party intent to consent to class arbitration when the Court has held that the contractual language must be "affirmative."  Is the "omission" of class procedures from a list of items that limit the arbitrators' authority or jurisdiction, an "affirmative" indication of consent to class procedures?  Given that bilateral arbitration agreements will often include some limits on arbitrator authority or jurisdiction, the application of expressio unius in this context would seem to amount to a rule that a party who does not accede to class procedures must expressly say as much.  And this would be inconsistent with the Court's holdings in *Stolt-Nielsen* and *Lamps Plus.*  For purposes of this dissent, I assume that expressio unius might reasonably be applied in some circumstances although not here in light of the particular contractual language.

PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST THE COMPANY

The "expressio unius" argument contends that by waiving jury—which has no relation to arbitration—and by limiting the arbitrators' power concerning damages, the parties have "affirmatively" and unambiguously agreed to class arbitration.  But these two "limitations" are far too remote from class procedures to permit the inference that the parties have affirmatively and unambiguously consented to class procedures.

Claimants' third argument that the Company's waiver of "any right of immunity, on the grounds of sovereignty or otherwise" is affirmative evidence of its consent to class arbitration depends on whether it is reasonable to consider that the parties are "immune" to class arbitration unless they waive the immunity.  This is not the normal understanding of "immunity" and there is no evidence in the Deposit Agreement to suggest that the parties have adopted a unique understanding of the term to include class arbitration.  Claimants point to no case that treats the requirement of consent to class arbitration as an "immunity."  To the extent that the Company has waived immunity from suit, including arbitration, the waiver is consistent with bilateral, non-class arbitration and does not suggest agreement to class procedures.

Claimants' fourth argument is that the Deposit Agreement uses universal language and is between all ADS holders and the Company.  It is true that the Deposit Agreement is between DangDang and "all Owners and Holders from time to time of American Depositary Shares," and that certain of its language refers to "all Owners and Holders."  But this observation is also irrelevant or at least unpersuasive because the language it points to is not part of or addressed to the arbitration agreement.  The Deposit Agreement addresses many matters affecting the

creation of the American Depositary Shares and in connection with that overarching purpose it sometimes speaks in terms of "all" Owners and Holders and sometimes in terms of individual holders. See Section 1.12. This depends on the topic. Compare Section 10 (all "Owners" have a right to inspect certain reports) with Section 7.04 ("Each Owner and Holder" waives jury). When it addresses arbitration in section 24 of the Receipts, as we have seen, it uses the language of non-class arbitration. And even if the structure of the Deposit Agreement could suggest that the Holders are in some way a "class"—a term never used—at best this would only create ambiguity in conjunction with an arbitration clause that makes no mention of class procedures. *See Catamaran Corp. v. Towncrest Pharmacy,* 946 F.3d 1020, 1024 (8th Cir. 2020) (reference to pharmacies as a single entity is insufficient evidence of consent to class arbitration.) Ambiguity is not a basis on which to find a contractual basis for consent to class arbitration. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019).

In short, claimants fail to show that the parties to the Deposit Agreement affirmatively agreed to class procedures and class arbitration.

I now turn briefly to the majority opinion.

The majority argues that the "[a]ny controversy, claim or cause of action" language in Section 23(a) is broad. But the breadth of this language is entirely consistent with a broadly stated non-class arbitration agreement as *Stolt-Nielsen* holds. The breadth of the language is not affirmative contractual language showing consent to class arbitration. The majority then focuses on the term "any party" in Section 23(a) and asks whether this language refers to a single holder of an ADS thereby suggesting that "any arbitration under the Arbitration Clause

may only be brought by a single holder of an ADS" or does "it contemplate that any holder of an

ADS, essentially the entire group of such holders, may be a claimant in such an arbitration."  The

majority concludes that this is not "bilateral" language: "It suggests, they can all come in."

Opinion at 40.  But the majority fundamentally mistakes the meaning of "bilateral" as used in

the cases.  As the Supreme Court has explained, the question is not whether there are multiple

parties to the arbitration, or whether the arbitration clause is addressed to "party" or "parties."

Rather, the question is whether the arbitration is to be conducted as a class arbitration using

class procedures with absent class members who are represented by lead counsel and lead

claimants.  There could be many non-class arbitrations brought by individual ADS holders.  They

would each be a party.  They might arbitrate individually or, as here, several or many ADS

holders might seek to arbitrate together.  In either instance, each claimant would control its

arbitration, hire counsel, and decide whether to include federal securities claims within the

subject matter of its arbitration.  No claimant would "represent" absent parties.  Just as multi-

party civil litigation is not tantamount to class action litigation nor is multi party arbitration the

same as class arbitration.  Because consent to class procedures must be based on affirmative

contractual language and is not to be lightly inferred, it takes more than the underlying

similarity of claimants' contracts with respondents on which to base such consent.  And this is

particularly the case when the group language—e.g. "holders" -- used to describe the shares is

compatible with bilateral—non-class—arbitration.

     The majority also makes a convoluted argument about the meaning of "[a]ny

controversy, claim or cause of action" based on the provision in Section 23(a) excepting from

the arbitration agreement "any such controversy, claim or cause of action brought by a party

hereto against the Company relating to or based upon the provisions of the Federal securities law." From this language, the majority concludes that "[t]he term '[a]ny controversy, claim or cause of action,' thus must, in each instance, either include or not include class actions." Opinion at 45. And because claimants have sought to certify a class in the federal action, the majority concludes that the same path must be available in the common law arbitration.

This argument is both illogical and inconsistent with the holding and reasoning of *Stolt-Nielsen*. It is inconsistent because the Court in *Stolt-Nielsen* and elsewhere has repeatedly instructed that a broadly stated consent to arbitration, encompassing "all claims," is not a basis on which to find an agreement to class procedures. It is also illogical. Suppose the parties had specifically disclaimed consent to class arbitration. Would it follow that claimants had thereby waived any right to ask for class relief in federal court because now "[a]ny controversy, claim or cause of action" excludes class arbitrations? Surely not. Or consider that in federal court a range of remedies—such as injunctions or contempt sanctions--may be available to the court in "any controversy." Does it follow that in "any controversy" handled by arbitration the parties have thereby consented to such powers in the arbitrators? Again, surely not. This is because procedures—such as class procedures-- that are appropriate and available in one forum, may or may not be appropriate and available in another. [6] As *Stolt-Nielsen* and many other cases have held and explained, a "class arbitration" is very different from a non-class arbitration and very different from a class action brought in a court where the procedural protections are greater. A "controversy, claim or cause of action" could lead to the certification of a class in an arbitration

---

[6] It is a mistake to conflate "any claim, controversy or cause of action" with "class action." A "class action" is not itself a substantive claim or "cause of action." *See Reed v. Florida Metropolitan University, Inc.,* 681 F.3d. at 643. (A "class action" is a "procedural device.").

proceeding but only if there is affirmative contractual language consenting to a class arbitration. Similarly, a "controversy, claim or cause of action" brought in federal court could be addressed by certification of a class in a federal court securities action. In such a class action, which is not a matter of consent by the respondents, there is no need to search the contract for indications of consent, but there will be other prerequisites that must be satisfied and that are required by the rules of that forum. Just because "a controversy" could become a class action in one forum, subject to the procedural rules of that forum, does not signify that the term must be read to provide for a class action in another forum where the predicate rules are different. In the context of an arbitration, the very first prerequisite is that there be clear— "affirmative"-- contractual consent by all parties. That consent cannot be inferred from the breadth of the language "any controversy, claim or cause of action" or because in federal court such a controversy, claim or cause of action may—or may not--lead to the certification of a class action in that court and where contractual consent is irrelevant. See *Reed v. Florida Metropolitan University, Inc.,* 681 F.3d at 643 ("In other words, the mere fact that the parties would otherwise be subject to class action in the absence of an arbitration agreement is not a sufficient basis to conclude that they agreed to class arbitration when they entered into an arbitration agreement.").

In a similar vein, and also contrary to the reasoning and holding of *Stolt-Nielsen*, the majority opinion muses that since federal securities claims are excluded from mandatory arbitration, and since such claims "are typically brought on a class action basis," it makes sense to read the agreement as providing for class arbitration. But it doesn't make sense to read it this way given what the Supreme Court has held now on multiple occasions: class arbitration

lacks the benefits of non-class arbitrations and lacks the procedural protections of class actions brought in court. The majority deems it implausible that the parties might have envisioned securities litigation in federal court potentially leading to a class action in that forum while not consenting to class arbitration of the common law claims. In this way, the majority opinion, in effect, disagrees with the reasoning and holdings of the U.S. Supreme Court in case after case forcefully explaining why a party might well do just that—for example, to take advantage of the more extensive appellate review in federal court.

Finally, the majority opinion relies on *expressio unius* as supporting its interpretation of the arbitration provision. As discussed above, this mode of interpretation is not helpful here and runs counter to *Stolt-Nielsen* by requiring the parties to disclaim an intent to consent to class arbitration rather than permitting them to assume that they will not be found to have consented absent affirmative contractual language of such consent.

At best, these arguments create ambiguity as to whether the parties intended to agree to class arbitration. They do not add up to affirmative, unambiguous consent to class procedures. Because "[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," *Lamps Plus v. Varela,* 587 U.S. at 186, I respectfully dissent.

_10/22/24_
Date

_David F. Levi_
Judge David F. Levi (Ret.)