# Exhibit 8

```
 1              PROCEEDINGS
 2      AMERICAN ARBITRATION ASSOCIATION
     INTERNATIONAL CENTRE FOR DISPUTE
 3              RESOLUTION
           Case No. 01-22-003-8285
 4
     JOE FASANO, ALTIMEO          :
 5   OPTIMUM FUND, AND            :
     ALTIMEO ASSET MANAGEMENT,    :
 6   Individually and on          :
     Behalf of All Others         :
 7   Similarly Situated,          :
           Claimant,             :
 8                                :
 9                  v.            :
                                  :
10   GUOQING LI, PEGGY YU YU,     :
     DANGDANG HOLDING COMPANY,    :
     LTD., E-COMMERCE CHINA       :
11   DANGDANG INC., KEWEN         :
     HOLDING CO. LTD., SCIENCE    :
12   & CULTURE LTD., FIRST        :
     PROFIT MANAGEMENT, LTD.,     :
13   DANQIAN YAO, LIJUN CHEN,     :
     AND MIN KAN,                 :
14        Respondents.           :
     ------------------------ :
15
16           ORAL ARGUMENTS VIA ZOOM
17           THURSDAY, JULY 18, 2024
18
19
20
21
22
23
24   REPORTED BY:
     SILVIA P. WAGE, CCR, CRR, RPR
25   JOB NO. 6807095
```

Page 2

```
1              PROCEEDINGS
2
3
                 JULY 18, 2024
4                 10:00 A.M.
5    Transcript of the ORAL ARGUMENTS via
6    ZOOM in the above-captioned matter,
7    pursuant to agreement before SILVIA P.
8    WAGE, a Certified Shorthand Reporter,
9    Certified Realtime Reporter, Registered
10   Professional Reporter, and Notary
11   Public for the States of New Jersey,
12   New York and Pennsylvania.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1              PROCEEDINGS
2    A L S O   P R E S E N T :
3
     MONICA SHEPARD, CASE MANAGER
4    AAA
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1       PROCEEDINGS
2    B E F O R E :
3    CHARLES J. MOXLEY, JR., ESQ.
     THE CHAIR
4
     WILLIAM NORWOLD, ESQ.
5    ARBITRATOR
6    DAVID LEVI, ESQ.
     ARBITRATOR
7
8
     A P P E A R A N C E S :
9
10   SADIS & GOLDBERG, ESQ.
       Attorneys for Claimants
11   551 Fifth Avenue, 21st floor
     New York, New York  10176
12   (212) 947-3793
     Slieberman@sadis.com
13   Bhutman@sadis.com
     Lcron@sadis.com
14   BY:  SAMUEL LIEBERMAN, ESQ.
     BY:  BEN HUTMAN, ESQ.
15   BY:  LILLY CRON, ESQ.
16
     SKADDEN ARPS SLATE MEAGHER & FLOM LLP
17   Attorneys for Respondents
     One Manhattan West
18   395 Ninth Avenue
     New York, New York  10001
19   (212) 735-3000
     Bradley.klein@skadden.com
20   Timothy.g.nelson@skadden.com
     Peyton.chaney@skadden.com
21   Sophie.rebeil@skadden.com
     Christopher.fredmonski@skadden.com
22   BY:  BRADLEY KLEIN, ESQ.
     BY:  TIMOTHY NELSON, ESQ.
23   BY:  PEYTON CHANEY, ESQ.
     BY:  SOPHIE REBEIL, ESQ.
24   BY:  CHRISTOPHER FREDMONSKI, ESQ.
25
```

Page 5

```
1       PROCEEDINGS
2    I N D E X
3                        PAGE
4    ORAL ARGUMENT BY MR. LIEBERMAN     16
     ORAL ARGUMENT BY MR. KLEIN        100
5    REBUTTAL ORAL ARGUMENT BY MR.      204
     LIEBERMAN
6    REBUTTAL ORAL ARGUMENT BY MR.      228
     KLEIN
7    REBUTTAL ORAL ARGUMENT BY MR.      236
     LIEBERMAN
8    ORAL ARGUMENT BY MR. NELSON        242
     ORAL ARGUMENT BY MR. HUTMAN        296
9    REBUTTAL ORAL ARGUMENT BY MR.      319
     NELSON
10   REBUTTAL ORAL ARGUMENT BY MR.      320
     HUTMAN
11   REBUTTAL ORAL ARGUMENT BY MR.      339
     NELSON
12   REBUTTAL ORAL ARGUMENT BY MR.      345
     HUTMAN
13   REBUTTAL ORAL ARGUMENT BY MR.      348
     NELSON
14   REBUTTAL ORAL ARGUMENT BY MR.      350
     HUTMAN
15
16
17
18
19
20
21
22
23
24
25
```

2 (Pages 2 - 5)

Page 6

```
 1            PROCEEDINGS
 2              - - -
 3      DEPOSITION SUPPORT INDEX
 4              - - -
 5
 6 Direction to Witness Not to Answer
   Page Line
 7 NONE
 8
 9 Request for Production of Documents
   Page Line
10 NONE
11
12 Stipulations
   Page Line
13 NONE
14
15 Question Marked
   Page Line
16 NONE
17
18 Reservation
   Page Line
19 NONE
20
21 Motion to Strike
   Page Line
22 NONE
23
24
25
```

Page 7

```
 1            PROCEEDINGS
 2        THE CHAIR:  Let us go on
 3 the record.
 4        We've had appearances by
 5 Counsel on behalf of Claimants,
 6 on behalf of Respondents and the
 7 entire Panel here all reflected
 8 as indicated to the Court Reporter
 9 and I understand will be in the
10 transcript.
11        This is a further preliminary
12 hearing in this case and it is
13 intended -- in this arbitration
14 before the International Center
15 for Dispute Resolution, the ICDR,
16 the international branch of the
17 American Arbitration Association.
18        It's intended broadly for two
19 purposes.  One to hear the issue
20 of clause construction, which is
21 an open issue, in a punitive class
22 action under the ICDR and the AAA's
23 rules for class arbitrations.
24        And secondly to hear an
25 application by Respondents for
```

Page 8

```
 1            PROCEEDINGS
 2 relief to make certain dispositive
 3 motions that they propose in the
 4 case.
 5        The parties have briefed
 6 these materials, these issues
 7 through several rounds.  The
 8 Panel would like at the opening
 9 to acknowledge and thank Counsel
10 for, obviously, hard work and
11 really developing and laying out
12 the issues and we thank you all.
13 Also, for giving us copies of the
14 case authorities you relied on
15 and we also have the PowerPoints
16 that we can have reference to as
17 Counsel make their oral arguments.
18        First a note of apology for
19 the late communications from the
20 Panel yesterday on certain issues.
21 But, as we met as a Panel, as a
22 Tribunal, we identified some
23 issues that we thought it might
24 be helpful to the process today,
25 just to put them out there so you
```

Page 9

```
 1            PROCEEDINGS
 2 can all think about them when you
 3 make your arguments and
 4 presentations and the like.
 5        The first are the e-mails
 6 earlier in the afternoon was,
 7 obviously, on the number of issues
 8 that are largely covered broadly.
 9 But there were some aspects that
10 we wanted to really make sure
11 that they're focused on in the
12 discussion today.
13        And then on the second
14 e-mail -- and, again, apologize
15 it came late in the day.  And
16 Counsel won't be prejudiced by
17 how late it came in.  You can put
18 something in later and address it
19 later, as you may need to do.
20        One of the Panel members
21 had seen -- you know, found that
22 prospectus and thought that since
23 we were aware of it in that
24 language, we ought to give Counsel    a
25 chance to advise us as to their
```

3 (Pages 6 - 9)

Page 10

PROCEEDINGS

1      PROCEEDINGS
2   thoughts as to what, if any,
3   significance that and the other
4   matters raise.
5        As to the earlier e-mail we
6   sent out on issues, from really
7   spending, you know, the necessary
8   time to study what you all have
9   given us -- I mean, we, certainly,
10  understand the issue of whether
11  implicit consent is legally
12  sufficient under the FAA to infer
13  party intent for class arbitration.
14       We understand that issue is
15  in dispute.  And inferentially we
16  understand that what's in dispute
17  is what the term as used in
18  several Supreme Court decisions
19  including more recently in Lamps
20  Plus, expressly, affirmative
21  contractual basis.  What does
22  that mean, right?  And that's an
23  issue we're going to have to sort
24  out.
25       If implicit consent is

Page 11

1      PROCEEDINGS
2   legally sufficient, obviously, we
3   come to -- we'll come to -- as a
4   Panel, we'll have to grapple with
5   what is -- what we have to find
6   to find such implicit consent
7   here.  Perhaps the issue is what
8   would be the affirmative contractual
9   basis, if any, in the record of
10  this matter as to an intent or
11  not for class arbitration.
12       Just speaking for myself,
13  because in summarizing one can
14  miss something or get it wrong.
15  But I understand that general
16  agreement to arbitrate, that
17  silence, that ambiguity alone and
18  the contra preferendum, as a mode
19  of interpretation for construction,
20  are not legally sufficient, at
21  least, as I understand it, under
22  the FAA, as a basis for inferring
23  party intent to class arbitration,
24  but rather that it appears you
25  need that affirmative contractual

Page 12

1      PROCEEDINGS
2   basis.  And the question is is that
3   an implicit basis and, if so,
4   what does it mean.
5        So we understand the issues,
6   that it will be most helpful to
7   hear you drill in on will be what
8   does affirmative contractual
9   basis mean.
10       If the things I referred to
11  are excluded, what is left and
12  what is the extent, if any, to
13  which modes of interpretation
14  under state law are still legally
15  sufficient under FAA law, not
16  preempted as a basis for inferring
17  implicit consent and, particularly,
18  whether such things as expressio
19  unius and other such canons are
20  legally sufficient under New York
21  law, what they are and how they
22  do or don't apply here.
23       On the theory that what
24  this is all going to come down to
25  or may come down to depending on

Page 13

1      PROCEEDINGS
2   how -- on the answer to the
3   earlier questions would be what
4   the parties arbitration agreement
5   means and how it is construed and
6   -- appropriately.
7        And the parties have briefed
8   this a lot.  We haven't seen or I
9   haven't seen anything under --
10  about the language in 23A, in the
11  third paragraph, about what it
12  means that disputes, controversies
13  or causes of actions to be
14  arbitrated thereunder might involve
15  more than two portion, right.
16       I mean, what does that mean?
17       And that the number of
18  parties might not be known by the
19  time the Arbitrators are
20  selected.
21       And what, if anything, does
22  it mean through the references in
23  the deposit agreement and receipts
24  that appear to broadly include
25  the owners and holders of the

4 (Pages 10 - 13)

| | | | |
|---|---|---|---|
Page 14

1    PROCEEDINGS
2  American depository receipts, what
3  do those mean?
4    There are, obviously, the
5  various exclusions and carveouts.
6  I will be interested in hearing
7  your take on that.
8    You briefed that.  We note
9  the language in 23B of the
10  receipts.  That seems to
11  contemplate two modes of dispute
12  resolution under the parties'
13  agreement.  One, that certain
14  cases go to court in New York
15  and, two, that certain cases go
16  to arbitration.
17    And so, you know, what does
18  that mean?
19    Is it binary?
20    What does it mean?
21    And then the question as to
22  the legal landscape.
23    So, anyhow, apologize for
24  the long introduction, but I
25  thought it would be helpful just

Page 16

1    ORAL ARGUMENT - LIEBERMAN
2    ARBITRATOR LEVI:  David Levi.
3    THE STENOGRAPHER:  Thank you.
4    THE CHAIR:  Okay.  For
5  Claimants on clause construction.
6    MR. LIEBERMAN:  Yes, for
7  Claimants on clause construction,
8  Sam Lieberman will be the primary
9  speaker.
10  ORAL ARGUMENT BY MR. LIEBERMAN
11    MR. LIEBERMAN:  Thank you,
12  Tribunal Chair Moxley for the
13  introductory remarks.
14    And thank you to the entire
15  Tribunal for your time and effort
16  analyzing the issues.
17    We appreciate you already
18  have some feedback to give us and
19  I will try to get to that quickly.
20    With respect to -- you have
21  our PowerPoints.  I wanted to ask
22  one question.
23    You know, if you have the
24  PowerPoints -- you know, one
25  question for the Tribunal is

Page 15

1    PROCEEDINGS
2  in terms of giving a sense of
3  where -- you know, of issues that
4  we see where we realize we need
5  further input from both sides.
6    We thought we would start
7  with the clause construction
8  issue and hear that out and then
9  move to the proposed motions.
10    So, before I turn it over
11  to Claimants to get the ball
12  rolling on clause construction,
13  let me ask my fellow members to
14  the Panel if I missed anything or
15  got anything wrong, or you simply
16  would like to add something or
17  subtract something at this point.
18    ARBITRATOR LEVI:  Well,
19  thank you.
20    ARBITRATOR NARWOLD:  Nothing
21  here.
22    THE CHAIR:  Thank you.
23    ARBITRATOR NARWOLD:  That
24  was Bill Narwold for the Court
25  Reporter.

Page 17

1    ORAL ARGUMENT - LIEBERMAN
2  whether you would want us to go
3  through the PowerPoints through
4  screen sharing or you already
5  have them.
6    I see screen sharing is
7  disabled, but I want to propose
8  that to the Panel, if you would
9  want us to have those slides up
10  or you already have the slides
11  so, you know, you are fine in how
12  you are.
13    THE CHAIR:  What do you think?
14    ARBITRATOR LEVI:  I have it
15  on another screen already.
16    ARBITRATOR NARWOLD:  I do
17  as well.  I don't need a screen
18  shared.
19    THE CHAIR:  That's great.
20  I think it's better not to do a
21  screen share so we can better see
22  one another.
23    MR. LIEBERMAN:  Excellent.
24    So, Tribunal Chair Moxley
25  and the rest of the Tribunal, I

5 (Pages 14 - 17)

1    ORAL ARGUMENT - LIEBERMAN
2    think you have put your finger on
3    the relevant factors here.  You've,
4    you know, jocked to states
5    complicit consent to class -- you
6    know, consistent -- implicit
7    consent is the relevant standard.
8        You have -- Lamps Plus says
9    ambiguity is not enough.
10       You have Stolt-Nielsen
11   saying silence is not enough.
12       So then this issue comes
13   down to a typical contractual
14   situation where to understand the
15   intent of the parties you look to
16   the ordinary tools of contractual
17   interpretation.  And those are
18   the text, the structure of the
19   agreement.  And those are the
20   typical rules of statutory
21   construction.
22       And those rules of statutory
23   construction include the expressio
24   unius est exclusio alterius
25   canon.

1    ORAL ARGUMENT - LIEBERMAN
2        THE STENOGRAPHER:  I'm not
3    familiar with that.  So I guess
4    I'll get it after.
5        MR. LIEBERMAN:  It's Latin;
6    expressio unius est exclusio
7    alterius.
8        THE STENOGRAPHER:  Thank you.
9        MR. LIEBERMAN:  Okay.  I'll
10   call it the "expressio principle."
11       And one question from the
12   Panel is about New York law.
13       And, you know, we want to
14   note that we cited in our brief
15   the VKK Fort versus NFL 244 F 3d.
16   114 at 129 to 30.
17       The Second Circuit in 2001
18   applied the expressio unius
19   principle to contract interpretation
20   to make a determination as to --
21   that the contract was clear.  In
22   fact, it found the contract was
23   clearly the opposite of what the
24   Court below had found.
25       There are also cases including

1    ORAL ARGUMENT - LIEBERMAN
2    Salerno versus Coach, which is
3    144 A.D.3d 449, 450, the First
4    Department 2016, where New York
5    law stated that the Doctrine of
6    Expressio Unius Est Exclusio
7    Alterius appropriately applies as
8    a tool of contract construction
9    when interpreting -- here's the
10   quote, "unambiguous terms of the
11   contract."
12       So expressio unius is
13   something --
14       ARBITRATOR LEVI:  Here's the
15   problem I have with it.
16       You know, there are these
17   various canons and we're all
18   familiar with them.  Sometimes
19   they're in conflict with one
20   another.
21       And the standard -- I think
22   you misspoke.  You said that the
23   standard was whether there's an
24   implicit expression of consent.
25       The standard is whether

1    ORAL ARGUMENT - LIEBERMAN
2    there's an affirmative contractual
3    basis.  The Supreme Court has been
4    very clear about that.  That's the
5    standard.
6        Now, there could be explicit
7    or implicit or other indications
8    of consent.  But the standard is
9    affirmative contractual basis.  I
10   don't think there's any question
11   about that.
12       You can respond to that in
13   a moment.
14       Here's my problem with, you
15   know, your "expressio" argument
16   interest.  I don't know Latin by
17   the way and I never like to use it.
18       The list of things that are
19   in the expressio realm, waiver of
20   jury trial, waiver of consequential
21   damages, waiver of punitive damages,
22   all of those things, if you don't
23   waive them, they are the default.
24       But we now have the Supreme
25   Court opinions and it seems, at

6 (Pages 18 - 21)

Page 22

```
1        ORAL ARGUMENT - LIEBERMAN
2    least, that the Court believes
3    that consent to class arbitration
4    is not the default.
5            That's not like, oh, you
6    get class arbitration unless you
7    say, no.
8            It's you don't get class
9    arbitration unless you say -- or
10   it can be implied that you've
11   said or it's what you say clear
12   and unmistakable that you have
13   agreed to it.
14           So you've got a list of
15   things that if you don't list
16   them, you're going to get them.
17   But that's not the way it is with
18   class arbitration.
19           And so I don't think that
20   argument takes you very far.
21   That's my question.
22           MR. LIEBERMAN:  Well, I
23   would say two things.  One, no, I
24   think you've misstated the standard
25   because you're not addressing the
```

Page 23

```
1        ORAL ARGUMENT - LIEBERMAN
2    Jock case and the Jock case
3    applies Lamps Plus and applies
4    Stolt-Nielsen and says the
5    contract can be interpreted for
6    implicit consent to class
7    arbitration.
8            So, if you want to say you
9    want to ignore what the Second
10   Circuit applied those two cases
11   to do, then I guess you could
12   say, well, what did the Supreme
13   Court say.
14           But I think expressio unius
15   is to say that you can imply --
16           ARBITRATOR LEVI:  Hold on
17   one second.
18           Let's suppose you had an
19   expressed consent to class
20   arbitration.  That's not the
21   standard.
22           The standard is -- we don't
23   have to get hung up on this.  But
24   the standard is that there is an
25   affirmative contractual basis.
```

Page 24

```
1        ORAL ARGUMENT - LIEBERMAN
2            And I agree with you that
3    you may be able to meet that
4    standard with implicit evidence.
5    You may be able to meet it, but
6    it would be easier to meet it
7    with explicit evidence.
8            But the point is the
9    standard is an affirmative
10   contractual basis.  You're just
11   saying that Juxt Plus (phonetic)
12   has that line in it that you can
13   do with it by implication.
14           And so maybe we agree.  I
15   don't know.  But that's not the
16   standard.
17           MR. LIEBERMAN:  Well, yeah,
18   I think that you're -- what you're
19   saying is consent and consent is
20   the standard and that you don't
21   view implicit consent as part of
22   the standard.  I think we're
23   getting into semantics.
24           What is clear -- what I'm
25   referring to is what Jock II says,
```

Page 25

```
1        ORAL ARGUMENT - LIEBERMAN
2    which is Lamps Plus leaves
3    undisturbed the proposition
4    affirmed in Stolt-Nielsen that an
5    arbitration agreement may be
6    interpreted to include implicit
7    consent to class procedures.
8            And it is Black-letter law
9    in New York that expressio unius
10   can be used to interpret the
11   plain meaning of contractual text.
12           I mean, that's -- Justice
13   Scalia's entire textualist
14   approach is that instead of
15   looking to statutory legislative
16   intent, you can use the ordinary
17   contractual canons to address that.
18           As to points about whether
19   there would be a default --
20           THE STENOGRAPHER:  You froze.
21   You froze, sir.
22           ARBITRATOR LEVI:  We missed
23   a few words.
24           MR. LIEBERMAN:  Okay.  Well,
25   expressio unius is a standard
```

7 (Pages 22 - 25)

Page 26

ORAL ARGUMENT - LIEBERMAN

1  
2  bedrock principle of law that
3  applies to contract interpretation
4  and is used to interpret the plain
5  meaning of agreements. We have
6  rules. We looked at dictionaries.
7  We looked to canons of     construction.
8       And I would note that in
9  arbitration there is no --
10      ARBITRATOR LEVI: I think
11  you froze again. I'm sorry.
12      THE STENOGRAPHER: "And I
13  would note that in arbitration
14  there is no"?
15      MR. LIEBERMAN: Yes, can
16  you hear me now?
17      THE STENOGRAPHER: Yes.
18      MR. LIEBERMAN: In
19  arbitration, there is no default
20  rule of a jury trial. So that
21  would be point one.
22      But I would go, specifically,
23  to the language Judge Moxley just
24  talked about, which, I think, is
25  very significant in 23.

Page 27

ORAL ARGUMENT - LIEBERMAN

1  
2       There is an express reference
3  to controversies or causes of
4  action involving more than two
5  parties. So multiparty arbitrations
6  is expressly covered here in 23.
7       And then when you get to
8  the next paragraph, what's stated
9  underneath it is, "The Arbitration
10  Tribunal shall have no authority
11  to award any consequential
12  special or punitive damages or
13  other damages not measured by the
14  prevailing parties' actual
15  damages and may not in any event
16  make any ruling, finding or award
17  that does not conform to the
18  terms and conditions of this
19  depositor."
20      So, in reading those together,
21  you can see there's an expressed
22  authorization for multiparty
23  arbitration.
24      Then there's exclusion of
25  certain things. And what's not

Page 28

ORAL ARGUMENT - LIEBERMAN

1  
2  mentioned as an exclusion is
3  class procedures. And I think
4  that is important evidence there.
5       Because right there, when
6  they're talking about arbitration,
7  they say multiparty, yes. And
8  there are some things that are
9  limited.
10      But there's no limitation of
11  multiparty arbitration, of which
12  is class.
13      THE CHAIR: But is it the
14  question, Mr. Lieberman, whether
15  it's an affirmative contractual
16  basis?
17      Does the application of
18  expressio unius -- you know, if
19  the Panel applies that and
20  interprets it your way -- we
21  understand your argument that you
22  exclude some things, so you don't
23  exclude the others.
24      But does what you get when
25  you apply expressio unius, does

Page 29

ORAL ARGUMENT - LIEBERMAN

1  
2  that give you an affirmative
3  contractual basis?
4       MR. LIEBERMAN: Yes, it does.
5       You know, Jock makes it
6  clear because implicit consent is
7  an affirmative basis. It is not,
8  as they argue, in a clear statement.
9  There's no state requirement of
10  expressed language.
11      In fact, the Supreme Court
12  has declined to say, specifically,
13  what that basis is what you have
14  to say.
15      So Lamps Plus did not say
16  and Stolt-Nielsen do not say you
17  have to have an expressed statement.
18  But it is a traditional contractual
19  analysis, which is you look at
20  the entirety of the contract and
21  you look at the full scope of it
22  and you determine is it indicated
23  that class procedures would be
24  applied.
25      And here we have five

8 (Pages 26 - 29)

Page 30

ORAL ARGUMENT - LIEBERMAN

1 different factors that we believe
2 provides that text. We have the
3 incorporation of AAA rules
4 providing for class arbitration.
5 So it's not the existence of the
6 rules. It's the literal
7 referring to the rules.
8       They didn't have to put the
9 rules in there. They actually
10 chose rules that actually have
11 class arbitration.
12       THE CHAIR: Mr. Lieberman, I
13 have to push back on that one. I
14 saw your brief and PowerPoint.
15       Maybe I need to go back and
16 re-read the cases and I will in
17 that regard.
18       But I thought what that was
19 all about is, as the Second
20 Circuit has put it together, if a
21 party -- the issue is always
22 there, who decides an issue as to
23 arbitrability.
24       And the Second Circuit unlike

Page 31

ORAL ARGUMENT - LIEBERMAN

1 some other circuits has said, okay,
2 you know, if you adopt the AAA
3 rules, you're adopting its rules
4 that the Arbitrator decides these
5 things.
6       So I don't see how the fact
7 that the parties agreed to the
8 class arbitration rules does
9 anything for you.
10      Because when you go to
11 them, what do they say?
12      They say the Arbitrator's
13 first job is to decide dispute
14 resolution. It's to decide
15 clause construction.
16      So I don't know. I don't
17 know how that issue helps you.
18      MR. LIEBERMAN: Well, you
19 know, I think it's an important
20 factor and we've had several
21 Arbitration Tribunals point on
22 that. And I'll tell you why.
23      Because Jock II applied the
24 same standard. It's applying the

Page 32

ORAL ARGUMENT - LIEBERMAN

1 standard from Lamps Plus and
2 applying the standards from
3 Stolt-Nielsen. And the point is
4 Lamps Plus and Stolt-Nielsen were
5 cases deciding class arbitrability.
6       So the fact that the same
7 standard of implicit consent is
8 derived from those cases indicates
9 that that's a factor here.
10      And we've had incorporation
11 of the rules we identified as
12 factors by Arbitration Panels in
13 several context.
14      We had it in the affirmance
15 of the Arbitrator's decision in
16 Wells Fargo versus Tucker 373 F.
17 Supp. 3d. 418, 425, to 426. So
18 that's the Southern District of
19 New York in 2019.
20      We have the Dish Network
21 versus Ray arbitration award with
22 the same point we're actually
23 referencing agreements.
24      We have the Finfrock case

Page 33

ORAL ARGUMENT - LIEBERMAN

1 versus Dish Network where the
2 incorporation of AAA rules was
3 used, as well as, you know, Amerix
4 and JPay and Pilgrim's Pride.
5       So we think that is a
6 factor, because they simply could
7 have left it -- they could have
8 left it blank. They could have
9 also just said, this shall be
10 decided by the AAA. But they
11 actually incorporated the rules
12 themselves. That's a step beyond
13 it.
14      But then there's factors in
15 addition to that. We have the
16 waiver of immunity and consent.
17      ARBITRATOR LEVI: Wait,
18 before you leave that topic,
19 since you put a great deal of
20 emphasis on it in your briefing.
21      I'm wondering do you see a
22 difference between consenting to
23 a particular process and consenting
24 to a particular outcome of that

9 (Pages 30 - 33)

ORAL ARGUMENT - LIEBERMAN
1
2  process?
3      MR. LIEBERMAN:  I see a
4  distinction between saying --
5  between picking the AAA and
6  picking its rules.
7      ARBITRATOR LEVI:  But if I
8  pick its rules and its rules say
9  the Arbitrators shall decide this
10  issue, isn't it a leap to say and
11  they shall decide it in a certain
12  way?
13      It's already been consented
14  to by the very fact that there
15  was consent to the arbitration
16  process, to the Arbitrators under
17  these rules and if the rules
18  itself provide for a considered
19  opinion on this topic.
20      MR. LIEBERMAN:  Yes, yes,
21  the rules provide for considered.
22      ARBITRATOR LEVI:  Yeah.
23      MR. LIEBERMAN:  -- on the
24  topic.  That's true.
25      ARBITRATOR LEVI:  Right, I --

ORAL ARGUMENT - LIEBERMAN
1
2      Otherwise, I think, it takes
3  you maybe even into considering
4  that the Respondents have consented
5  to commonality, typicality,
6  predominance, (INAUDIBLE), you
7  know.  And I don't think you want
8  to go that far.
9      So I think what we have
10  here and what the District Court
11  did was to say, look, by referring
12  to those rules, there's affirmative
13  consent to this topic being
14  decided by the Arbitrators.  I
15  get that.  That makes sense to me.
16      But to say that by virtue
17  of that that the Arbitrators
18  should have then -- it follows
19  the Arbitrators should find this
20  class arbitration.  That doesn't
21  -- I don't see how that logic
22  follows.
23      MR. LIEBERMAN:  Well, I mean,
24  this has been a factor.  I mean,
25  it's the same standard of implicit

ORAL ARGUMENT - LIEBERMAN
1
2      MR. LIEBERMAN:  And the rules
3  also provide for class procedures.
4      So that indicates that
5  there's consent to it.
6      Now, the Arbitrators can
7  decide on the clause and the
8  Arbitrator can decide how it
9  applies and searched for that
10  consent.
11      ARBITRATOR LEVI:  Doesn't
12  it seem like -- it seems like
13  you're conflating, like, the
14  argument.  The argument conflates
15  these two things.
16      We've got who is going to
17  decide and what they are going to
18  decide.  And the rules say these
19  folks are going to make the
20  decision.
21      But it doesn't say, and the
22  decision is going to be this by
23  virtue of the very fact that it's
24  those folks who are making the
25  decision.

ORAL ARGUMENT - LIEBERMAN
1
2  consent for the two and it's been
3  a factor in several arbitration
4  decisions.
5      Now, there is also rules on
6  class certification.  Well, to
7  have class certification, you
8  have to have a class.  And to
9  have that determination, you
10  would get there.
11      I don't think that the mere
12  fact that the Arbitrators get to
13  decide the decision is somehow a
14  negation of the fact that it's
15  contemplated that there could be
16  classes -- you know, a class
17  decision.
18      I think the point is that
19  the class should be decided by
20  the Arbitrators and the Arbitrators
21  then have discretion as to what
22  to factors to apply in that process.
23      And here going further and
24  adopting rules which authorize
25  class action, I think, is a factor

ORAL ARGUMENT - LIEBERMAN

1    ORAL ARGUMENT - LIEBERMAN
2    that weighs in favor of it. I think
3    it follows.
4        But, you know, we understand
5    the Panel's --
6        MR. HUTMAN: Sam, is it okay?
7    I think there's somewhat of a
8    disconnect of something that's
9    being missed.
10       Could I jump in for a
11   second; is that okay?
12       MR. LIEBERMAN: If you want.
13       MR. HUTMAN: The standard
14   for having who decides that the
15   Supreme Court implemented in
16   Lamps Plus was based on -- sorry.
17       The standard that the
18   Supreme Court implemented for
19   deciding class arbitration, you
20   know, no ambiguity, no silence
21   but affirmative factors, that was
22   taken from an earlier Supreme
23   Court opinion that was deciding
24   -- first option of deciding the
25   question of who gets to decide,

1    ORAL ARGUMENT - LIEBERMAN
2    because you need affirmative
3    consent, the exact same level of
4    affirmative consent for that as
5    well. So the standard is the
6    same standard.
7        The point about the
8    incorporation of the rules is
9    that the rules say that if there
10   are no factors going against you.
11   So if it's silent with respect to
12   anything against class arbitration,
13   then you get class arbitration.
14       But it doesn't take away the
15   rule of the Arbitrators to look
16   to see if there are factors going
17   against them. So, if you had a
18   case where there's language, you
19   know, for example, bilateral
20   language that may weigh against
21   the class arbitration, that would
22   be the role of the class
23   Arbitrator.
24       What the rules do say is
25   there is nothing against -- if it

1    ORAL ARGUMENT - LIEBERMAN
2    is silent against class
3    arbitration, then you get class
4    arbitration.
5        So the incorporation of the
6    rules where there's nothing on
7    the other side is itself sufficient.
8        THE CHAIR: Where does that
9    happen, Mr. Hutman?
10       ARBITRATOR LEVI: Which rule
11   are you referring to?
12       You're saying there's --
13   I'll be frank to say that I
14   missed that.
15       There's a AAA rule that says
16   if the contract is silent, you
17   get class arbitration?
18       MR. HUTMAN: Yes. It's the
19   AAA procedures. We attached it
20   as an exhibit to our brief. I
21   think it was Exhibit 2.
22       ARBITRATOR LEVI: Exhibit 2.
23       Just read me the language
24   that you're referring to.
25       MR. HUTMAN: Give me a

1    ORAL ARGUMENT - LIEBERMAN
2    second.
3        THE CHAIR: You're talking
4    about the supplementary class
5    action rules or a communication
6    you had with the AAA?
7        MR. HUTMAN: No, I'm talking
8    about the AAA's procedures for
9    class arbitration.
10       MR. LIEBERMAN: He's talking
11   about Exhibit 2 to our brief.
12       MR. HUTMAN: It's Exhibit 2
13   to our brief.
14       MR. LIEBERMAN: It's on the
15   website where they link to the
16   rules. It says, the AAA
17   administers class arbitration.
18       THE CHAIR: Give us a second
19   to pull that up, would you?
20       I see your Exhibit 2.
21       So you're referring to a
22   statement on the website about
23   class arbitrations.
24       MR. LIEBERMAN: It's the
25   cover page related to the rules.

11 (Pages 38 - 41)

Page 42

```
1       ORAL ARGUMENT - LIEBERMAN
2           MR. HUTMAN:  And the
3    Director of the ICDR affirmed
4    that this policy was still a
5    current policy.
6           It was also the policy in
7    place at the time the agreements
8    were drafted.
9           MR. LIEBERMAN:  It says,
10   "effective 2010."
11          THE CHAIR:  It says, "The
12   AAA administers class arbitrations
13   for cases where the underlying
14   agreement specifies the disputes
15   arising out of the parties'
16   agreement should be resolved by
17   arbitration," and the agreement
18   is silent with respect to the
19   class claims, consolidation or
20   joinder.
21          But all that's -- I mean,
22   frankly, Mr. Hutman, I don't see
23   how that does anything for you.
24          That just says the AAA
25   administers arbitrations, you
```

Page 43

```
1       ORAL ARGUMENT - LIEBERMAN
2    know, and now they have the rules
3    and what do the rules say?
4           The rules say that the
5    first step in a class arbitration
6    or a putative class arbitration
7    is for the Arbitrators to decide
8    clause construction.
9           So I don't think that does
10   it.  I mean, I.
11          MR. HUTMAN:  Well, we're
12   not saying --
13          MR. LIEBERMAN:  Ben, let me
14   take it from here.
15          I think what we're saying,
16   Arbitrator Moxley -- we don't
17   want this to detain the rest of
18   the discussion -- is when you're
19   looking at consent and you have a
20   set of arbitration procedures
21   that their on publically available
22   website say that they administer
23   class actions where the agreement
24   is silent, that is some evidence
25   of what the parties are agreeing
```

Page 44

```
1       ORAL ARGUMENT - LIEBERMAN
2    to.
3           This is sophisticated entity
4    that planned an IPO for ADR shares.
5    It drafted this detailed agreement
6    to say how these issues would be
7    resolved.
8           And the idea that they didn't
9    know, that the AAA goes and
10   resolves class arbitrations -- I
11   mean, that's a little bit of a
12   stretch, right.
13          The AAA has policies and they
14   carefully selected what rules and
15   procedures would be involved.
16          And the idea that a corporate
17   entity that goes through the
18   process of actually having an IPO
19   isn't cognizant of that, I mean I
20   think that's a more uphill
21   battle.
22          I mean --
23          THE CHAIRMAN:  (INAUDIBLE.)
24          MR. LIEBERMAN:  -- spent a
25   lot of time on this agreement.  You
```

Page 45

```
1       ORAL ARGUMENT - LIEBERMAN
2    know, it's very detailed, right.
3    You've got carveouts for securities
4    laws, carveouts, you know, that
5    are not there.
6           And I think that's another
7    point on the securities law point,
8    right.  So they expressly carved
9    out security law claims.
10          THE CHAIR:  Let me suggest
11   really just to get this on track,
12   at least, from how, I think, I,
13   at least, look at the issue.
14          I mean, it's certainly not
15   my understanding that Respondents
16   are saying class arbitration
17   isn't something to be considered
18   here.
19          But the rules are the rules.
20   And we're supposed to decide
21   clause construction and the
22   Supreme Court has told us that
23   certain areas -- while this is,
24   as you say, a matter of state
25   law, how you can construe contracts,
```

12 (Pages 42 - 45)

Page 46

```
1        ORAL ARGUMENT - LIEBERMAN
2    the Supreme Court has preempted
3    certain aspects of it.  We talked
4    about it.  I addressed it in my
5    opening comments.  And so, you
6    know, you can proceed as you like.
7        But my understanding is that
8    the issue here is, you know,
9    whether you frame it as sufficiency
10   or not of implicit consent or
11   application under that affirmative
12   contractual basis, what does
13   affirmative contractual basis
14   mean?
15       So, I mean, I suggest you,
16   you know, focus on that.  Give us
17   whatever, you know, you have on
18   that, that why there is from your
19   perspective -- and we'll, certainly,
20   hear Respondents', you know, sense
21   of -- is or isn't, you know,
22   affirmative contractual basis
23   here.
24       MR. LIEBERMAN:  Okay.  And
25   so let's talk about the agreement,
```

Page 47

```
1        ORAL ARGUMENT - LIEBERMAN
2    right.  And so we have that
3    Section 24, as we noted, as well
4    as Section 7.07.
5        You know, there is a waiver
6    of any immunity, any right of
7    immunity.  And it says, "from any
8    legal action, suit or proceeding
9    for the giving of any relief."
10   Again, any proceeding, any
11   process and any relief.
12       And it's just not for
13   sovereign immunity.  It's sovereign
14   immunity or otherwise.
15       And there's a statement that
16   there's a consent to this relief
17   and enforcement, a consent to any
18   relieve and any enforcement brings
19   within its ambit class procedures,
20   because it's a well-known form of
21   process.  It's a well-known legal
22   process.  It's a well-known type
23   of relief.
24       They use the word "any,"
25   "any," "any," so many times.  This
```

Page 48

```
1        ORAL ARGUMENT - LIEBERMAN
2    is very broad.
3        And one thing we noted is
4    -- in the sovereign immunity
5    context -- they actually have a
6    harder standard to waive for
7    class procedures.  There it
8    requires an implicit waiver of
9    immunity from a class action, as
10   we noted in this Sokaogon Gaming
11   case.
12       The courts found that broad
13   language saying "any" controversy,
14   that would be an explicit waiver
15   of immunity.
16       So the question is if that's
17   an explicit waiver, it's certainly
18   implicit consent we would say.
19       And this is broad language
20   covering a class arbitration.
21       Respondents come back and
22   say, well, this is boilerplate.
23       No, it's not boilerplate.
24   "Any" is very -- "any" is
25   everything, right.  That's what
```

Page 49

```
1        ORAL ARGUMENT - LIEBERMAN
2    "any" means.
3        They say it so many times,
4    "any legal action, suit or
5    proceeding," right?
6        That's not "any" except for
7    class action and "any" relief
8    except for class action.
9        So we think that's a very
10   significant waiver here.
11       And we don't see a
12   significant pushback.  We don't
13   see any legal authority coming in
14   response from Respondents.
15       We also have the "any's"
16   showing up in the broad scope of
17   the agreement, right?
18       It says, "any controversy,
19   claim or cause of action brought
20   by any party hereto."
21       And one point we really wanted
22   to focus on is that it doesn't
23   say relating to this agreement.
24   It says, relating to the
25   shares -- to the shares.  So
```

13 (Pages 46 - 49)

Page 50

ORAL ARGUMENT - LIEBERMAN

1    ORAL ARGUMENT - LIEBERMAN
2    anything that relates to the
3    shares, right, is covered.
4        And, by the way, that's
5    except for cases involving the
6    federal securities laws.
7        And I want to note that the
8    federal securities laws are
9    routinely arbitrated in FINRA
10   arbitrations.  So it's not the
11   default rule that you can't
12   arbitrate securities law cases.
13       So it's not going to
14   (INAUDIBLE) and that was carved
15   out.  So there is an expression
16   of a limitation to securities rules.
17       But "any" is otherwise
18   covered.  And that's an "any"
19   that should be interpreted here
20   to cover class actions.
21       And we've cited the
22   arbitrations where such language
23   was interpreted to be an inclusion
24   of class procedures; the Ray
25   versus Dish Network case, which

Page 51

1    ORAL ARGUMENT - LIEBERMAN
2    was affirmed on appeal.
3        And it's going to be expressed
4    inclusion of any controversy was
5    viewed as an inclusion of class
6    procedures there.
7        We also have Mohawk Gaming
8    where it says, "any and all
9    controversies, disputes or claims
10   of any nature was interpreted to
11   apply to consent to class
12   arbitration."
13       So we think, you know, that
14   broad scope is very significant
15   here because it's not saying, oh,
16   if you've got something coming
17   out of this agreement, that's one
18   thing.
19       It's saying, anything
20   related to the shares.  And this
21   class action absolutely relates
22   to the shares, because it was the
23   cashing out of those shares.  And
24   it's a type of relief.
25       And this "any" proceeding,

Page 52

1    ORAL ARGUMENT - LIEBERMAN
2    "any" process, we think this broad
3    language is what the Tribunal
4    should consider here to say, wait,
5    this is a very broad agreement here.
6        And this is also not
7    something involving bilateral
8    language, right.  You have cases
9    where it's like if you have a
10   case where it's just one party
11   against one other person.
12       It, also, brings into it
13   the owners and holders from time
14   to time in Section 7.04 of the
15   deposit agreement.
16       And one thing we pointed to
17   but maybe we didn't emphasize
18   enough in our PowerPoint is the
19   universal language where in
20   Section 21 it says, when you
21   terminate the deposit agreement,
22   you have to notify owners of all
23   American Depository shares that
24   are then outstanding.  That's
25   everyone.

Page 53

1    ORAL ARGUMENT - LIEBERMAN
2        Well, that's effectively the
3    class here.  So this agreement --
4        ARBITRATOR LEVI:  But could
5    I stop you there?
6        MR. LIEBERMAN:  Sure.
7        ARBITRATOR LEVI:  In the
8    arbitration clause, I would be
9    interested to know of what you
10   make of the fact where it uses
11   singular language.  What do you
12   think the significance of that is?
13       So it says, "controversy,
14   claim or cause of action brought
15   by a party hereto."
16       And then at the end, it
17   says that they'll be -- that the
18   federal securities claims "shall
19   be submitted to arbitration if
20   but only if solely selected by
21   the Claimant."
22       And, you know, we might have
23   a different view of this.  But I,
24   also, think that "any party" is
25   actually referring to the single

14 (Pages 50 - 53)

Page 54

ORAL ARGUMENT - LIEBERMAN

1  ORAL ARGUMENT - LIEBERMAN
2  party, not to multiple parties.
3      You know, the verb tense
4  that you use for "any party," it's
5  singular.
6      Do you have some thoughts
7  on that?
8      MR. LIEBERMAN: Okay. So,
9  yeah. So let's look at 23A and
10 it starts with, "any controversy,
11 claim or cause of action brought
12 by any party hereto."
13     Well so that's the "any" as
14 opposed to the "a."
15     So --
16     ARBITRATOR LEVI: Keep going.
17 I mean --
18     MR. LIEBERMAN: I guess,
19 "the company arising out of or
20 relating to the shares or other
21 deposited securities," "the
22 American depositary shares," "the
23 receipts or the deposit agreement
24 or the breach thereof."
25     I mean, again, that's the

Page 55

1  ORAL ARGUMENT - LIEBERMAN
2  broad language.
3      "Shall be settled by
4  arbitration in accordance with
5  the international arbitration
6  rules of the American Arbitration
7  Association and judgment upon the
8  award rendered by the Arbitrators
9  may be entered into any court
10 having jurisdiction thereof."
11     And it's provided however
12 that "in the event of any
13 third-party litigation to which
14 the depository is a party and to
15 which the company may properly be
16 joined, the company may be so
17 joined."
18     And I'll go to the next
19 clause, "and then provided further
20 that any such controversy, claim
21 or cause of action brought by a
22 party hereto against the company
23 relating to or based upon the
24 provision of the federal securities
25 laws of the United States or the

Page 56

1  ORAL ARGUMENT - LIEBERMAN
2  rules and regulations promulgated
3  thereunder shall be submitted to
4  arbitration as provided in
5  Section 7.06 of the deposit
6  agreement if but only if so
7  elected by the Claimant."
8      So I think -- what I'd say
9  is the "any" at the top refers to
10 arbitrations and, therefore, brings
11 in any -- you know, all depository
12 share owners and holders.
13     And then I would interpret
14 the carveout on the federal
15 securities law claim saying, the
16 Claimant -- that just refers to
17 the fact that that's the one
18 place -- that's the place where
19 you have a party. So it just to
20 create parallels, but that's the
21 carveout. Whereas the rule is
22 "any" party.
23     ARBITRATOR LEVI: Okay. I'm
24 not quite sure I follow that, but
25 I'll try.

Page 57

1  ORAL ARGUMENT - LIEBERMAN
2      You're thinking that if
3  there were -- that if an individual
4  party wanted to pursue federal
5  securities claims against the
6  company, that would be done on an
7  individual basis.
8      That seems almost backwards
9  to what I understand the situation
10 is, because you don't need consent
11 to ask for a class action on a
12 federal securities claim. So...
13     MR. LIEBERMAN: Well, my
14 point is to say -- actually, I'm
15 not adopting your analysis, Judge
16 Levi.
17     What I'm saying is to the
18 extent your analysis has any force,
19 it only applies with respect to
20 the securities law point, that the
21 reference to "a" party is cabined
22 into the carveout for the Claimant
23 and that's only used with respect
24 to the federal securities laws.
25     I think with respect to our

15 (Pages 54 - 57)

1    ORAL ARGUMENT - LIEBERMAN
2    case, we have to use "any," which
3    is that is what applies to
4    arbitrations, you know, arbitrations
5    under the international arbitration
6    rules.
7        ARBITRATOR LEVI:  Could I
8    ask you about something else you
9    said?  It's potentially significant
10   to me.
11       MR. LIEBERMAN:  Okay.
12       ARBITRATOR LEVI:  You said
13   that the class arbitrations are
14   common in the securities area in
15   FINRA arbitrations.
16       And are they equally common
17   -- do we have evidence before us
18   that class arbitrations are
19   common in dealing with common law
20   claims of this sort?
21       MR. LIEBERMAN:  What I said
22   is -- sorry, I meant FINRA
23   arbitration has federal security
24   law issues.  I wasn't talking
25   about --

1    ORAL ARGUMENT - LIEBERMAN
2        ARBITRATOR LEVI:  Oh, sure.
3    I get that.
4        But I misunderstood you then.
5        One of the questions that
6    comes up in the Supreme Court
7    cases is whether there's an
8    empirical backdrop that suggests
9    that, of course, the parties
10   understood that a class arbitration
11   would be on the table, because it
12   is the norm in the industry or
13   the sector of the world in which
14   they operate.
15       And I'm asking you whether
16   that's true here, because there
17   was some contrary evidence provided
18   by Respondents.
19       MR. LIEBERMAN:  Well, what
20   Respondents submitted was a 2018
21   treatise from Mr. Gusy, which says
22   -- in our international arbitration
23   to that point, they hadn't -- he
24   hadn't noticed it, but he
25   acknowledges that the international

1    ORAL ARGUMENT - LIEBERMAN
2    rules do provide for class
3    arbitration.
4        What I want to say is that
5    I can quote from Jock v. Sterling,
6    which says, "class actions that
7    bind absent class members is part
8    of mandatory or opt out classes
9    are routinely adjudicated by
10   Arbitrators and in our courts."
11   And they cite the supplementary
12   rules of the AAA for that.  I
13   mean, this is 942 F. 3d. at 625.
14       So we think that's -- you
15   know, we think that's evidence
16   there about class actions, you
17   know, being decided by Arbitrators
18   here.
19       So --
20       ARBITRATOR LEVI:  Thank you.
21       MR. LIEBERMAN:  There was a
22   time, I think, in the Bacco
23   (phonetic) decision back in 2003
24   where arbitration was less common.
25       But I think that's something

1    ORAL ARGUMENT - LIEBERMAN
2    that's changed.  And, you know,
3    that's the point, you know.  It's
4    a developing area and this is why
5    this proceeding is so important.
6    And it has become more common.
7        THE CHAIR:  Let me just
8    follow up on the area of Judge
9    Levi's questioning.
10       Look, my sense -- and,
11   Mr. Lieberman, correct me if I'm
12   mistaken.
13       But my sense is that really
14   going back a long time in the
15   context of securities claims
16   shareholders litigation that
17   class actions in court have long
18   been a norm and regularly
19   expected and that they regularly
20   include parallel common law
21   claims, that it's not unusual to
22   have your securities law claims
23   whether it's 10B5 or its initial
24   offering or whatever the theory
25   of it is, that there will be an

16 (Pages 58 - 61)

```
1        ORAL ARGUMENT - LIEBERMAN
2    effort to have common law claims.
3        So, I mean, I guess my first
4    question is -- you know, because
5    it's kind of the basis of how I
6    understand this area.  But that's
7    kind of the norm.
8        I mean, is that right or is
9    that overstated or understated?
10        MR. LIEBERMAN:  What, that
11    there will be?
12        THE CHAIR:  That for a long
13    time there have been securities
14    class actions and they have
15    common law claims as a parallel.
16        MR. LIEBERMAN:  There are
17    some.  There are some.
18        THE CHAIR:  You know, but
19    here we have what?
20        We have what to me is a, you
21    know -- and, again, I'm perfectly
22    prepared to be told I have a
23    wrong impression here.
24        But an unusual provision,
25    right?
```

```
1        ORAL ARGUMENT - LIEBERMAN
2        Because here it says, we're
3    going to separate out those
4    common law claims that would
5    ordinarily -- if they're going to
6    be brought, be brought with the
7    federal securities class action
8    of these shareholders, if
9    something leads to that.
10        We're going to separate
11    them out and we're going to give
12    the shareholders an option under
13    the exclusion that they don't
14    have to arbitrate their federal
15    actions, right?
16        I mean, that seems to be
17    that this clause is avoiding
18    mandatory federal securities law
19    class actions and in effect make
20    it an option.
21        MR. LIEBERMAN:  Well --
22        THE CHAIR:  I mean, isn't
23    that what's happening here?
24        MR. LIEBERMAN:  I'm not sure
25    -- I'm trying to make sure I
```

```
1        ORAL ARGUMENT - LIEBERMAN
2    follow your question.
3        Because as I read it -- so
4    I'm not necessarily disagreeing
5    with you, Tribunal Chair Moxley.
6        But, as I read it, there is
7    a mandate that all but securities
8    law claims have to be arbitrated.
9    I think this is what the Second
10    Circuit held.
11        And there's a carveout for
12    securities law claims, if the
13    Claimant opts for it.
14        THE CHAIR:  Yeah, it's not
15    mandatory.  It's not mandatory.
16        MR. LIEBERMAN:  Yeah, the
17    securities claim -- yeah, correct.
18    The securities claim is not mandated
19    to be brought in arbitration, yes.
20        THE CHAIR:  Yeah.  And I've
21    had a general sense -- and, again,
22    you know, this is not in the
23    papers and if it's incorrect, you
24    all, you know, will hopefully
25    correct it.
```

```
1        ORAL ARGUMENT - LIEBERMAN
2        But I've heard it said and
3    I have had an understanding that
4    the SEC, generally, didn't like
5    to approve and doesn't approve
6    registration statements that
7    require mandatory arbitration of
8    securities law claims or waiver
9    of the claims.  That SEC didn't
10    like that, doesn't like it and
11    might not approve or would not
12    approve a provision in a
13    registration statement or as to
14    securities that are being
15    registered that would require
16    mandatory arbitration of securities
17    claims.
18        So, I mean -- and maybe it's
19    unfair to ask you if that's right,
20    because I'm introducing it.
21        But if that's the case,
22    doesn't the question become is
23    what the exclusion as to, you
24    know, federal-based securities
25    claims in the arbitration
```

17 (Pages 62 - 65)

Page 66

ORAL ARGUMENT - LIEBERMAN

1    ORAL ARGUMENT - LIEBERMAN
2    agreement here is or does, isn't
3    it in effect kind of a way to get
4    around that prohibition of
5    mandatory class actions by saying,
6    you know, it's not mandatory here?
7        The common law ancillary
8    claims are mandatory, but the
9    federal-based statutorily-based
10   rules are not mandatory.
11       I mean, isn't that what the
12   exclusion is here?  I mean, I
13   don't know --
14       MR. LIEBERMAN:  I don't have
15   evidence to that.  I mean, I
16   don't have evidence to that.
17       What I can tell you is the
18   SEC has jurisdiction, is the
19   ultimate authority and supervises
20   FINRA.  And in every broker/dealer
21   agreement, there is FINRA
22   arbitration.
23       So, I think, it may be
24   speculative to say if this was
25   done -- I mean, if there is some

Page 67

1    ORAL ARGUMENT - LIEBERMAN
2    evidence in the record saying
3    that that this was brought to the
4    SEC and the prospectus, the SEC
5    provided comments and said, no,
6    you have to include that, I think,
7    at that point there could be
8    something to entertain.
9        But I don't think it follows
10   that that's the reason for this
11   because we just don't have it on
12   this record.
13       And we do have the existence
14   of FINRA arbitrations where every
15   broker/dealer has securities law
16   claims addressed in FINRA
17   arbitration.
18       So, you know, we don't have
19   -- we don't have the backup to
20   support that point is what I'd say.
21       And, you know, I would love
22   to know exactly what they were
23   thinking with respect to this
24   provision.  I mean, we've litigated
25   it a lot and the Second Circuit

Page 68

1    ORAL ARGUMENT - LIEBERMAN
2    took a position that was not
3    necessarily our interpretation of
4    the provision.
5        And they said non-securities
6    laws claims have to go to
7    arbitration.  And this provides
8    that securities law claims go to
9    federal court and only go to
10   arbitration, if elected by the
11   Claimant.  And that was the
12   interpretation we got and that
13   was it.
14       So I think it's just a
15   short way of saying -- there's
16   nothing in the record on that
17   supposition.
18       And I'm not aware of case
19   law that says that that is the
20   situation on federal securities
21   law claims.
22       THE CHAIR:  Thank you.
23       ARBITRATOR LEVI:  So it's
24   likely that there would be a
25   class action in federal court on

Page 69

1    ORAL ARGUMENT - LIEBERMAN
2    the securities law claims?
3    That's a question.
4        MR. LIEBERMAN:  You mean in
5    this case?
6        ARBITRATOR LEVI:  Yeah.
7        Well, in a case like this.
8    I'll tell you what I'm leading up
9    to.
10       I'm wondering whether it's
11   significant.  And I think under
12   your interpretation here, the
13   company is consenting to class
14   arbitration and will be subject
15   to another class action in
16   federal court on the securities
17   law claim.  So, in effect, there
18   will be two class actions.
19       And I'm wondering if that's
20   a reasonable way to think that
21   the drafter of this document
22   would have intended, you know,
23   two class actions.  That's a lot.
24       MR. LIEBERMAN:  That's what
25   the plain language provides.

18 (Pages 66 - 69)

Page 70

1  ORAL ARGUMENT - LIEBERMAN
2    ARBITRATOR LEVI:  Okay.
3    MR. LIEBERMAN:  So, I mean, I
4  actually think that the contract
5  rule you're saying -- you're
6  trying to bring in, which is that,
7  well, that sounds unreasonable to
8  me, that actually is like contra
9  preferendum where you've got an
10  ambiguous agreement and you start
11  making suppositions.
12    In contrast, expressio
13  unius is used for plain meaning
14  agreements.
15    ARBITRATOR LEVI:  Well, I've
16  just been puzzled by the fact
17  that we have -- you know, it's
18  what Arbitrator Moxley was
19  referring to.  We have this -- it's
20  a bifurcated case and you've got
21  one forum in which a class action
22  is absolutely available -- and, I
23  mean, the judge may decide it one
24  way or the other I suppose.
25    But it's certainly not

Page 71

1  ORAL ARGUMENT - LIEBERMAN
2  unusual to have a securities
3  class action in federal court.
4    But then we have this other
5  thing.  And then it's just trying
6  to understand how these two things
7  work together.
8    I think it is actually trying
9  to understand the agreement, as
10  opposed to imposing some kind of,
11  you know, a priori view as to
12  what best policy is.  But I take
13  your point.
14    MR. LIEBERMAN:  Look, one
15  thing is that we have the decision
16  of what the agreement means from
17  the Second Circuit.  And so that
18  tells us where it is and then the
19  District Court, based on that,
20  compelled arbitration, as that's
21  -- you know, that's the reading.
22    Now, then, yes, there's the
23  Arbitration Panel now has to make
24  a decision, well, what does this
25  mean in the context of whether it

Page 72

1  ORAL ARGUMENT - LIEBERMAN
2  contemplates class actions?
3    And I think the textual
4  clues of any controversy claim or
5  cause of action is the most
6  significant, that a common law
7  class action would be brought,
8  you know, under the international
9  arbitration rules here.
10    And I do think that the
11  language of "if a dispute,
12  controversy or cause of action
13  shall involve more than two
14  parties, the parties shall
15  attempt to align themselves to
16  two sides" -- and why this
17  language is important, I think,
18  it goes back to your earlier
19  point, Judge Levi, which is one
20  person -- it says, "i.e. Claimants
21  and Respondents."  So that's
22  multi-Claimants and
23  multi-Respondents are addressed
24  there.
25    So I think that actually

Page 73

1  ORAL ARGUMENT - LIEBERMAN
2  eviscerates the point.
3    ARBITRATOR NARWOLD:  Mr.
4  Lieberman, let me stop you there
5  because I had a question on that,
6  which is the third paragraph of
7  23A, and I was going to ask you,
8  specifically, about that.
9    It's second sentence that
10  says, "if the controversy or
11  cause of action shall involve
12  more than two parties, the
13  parties shall attempt to align
14  themselves in sides," and then it
15  refers to "Claimants" and
16  "Respondents."
17    I notice that wasn't one of
18  the five factors that you
19  identified in your briefing and
20  PowerPoint and so on.
21    I'm just wondering was
22  there -- I wasn't wondering why
23  you didn't leave it out, because
24  it seem a reading of that --
25  going back to Judge Levi's

19 (Pages 70 - 73)

Page 74

```
1         ORAL ARGUMENT - LIEBERMAN
2    questions -- is that it would
3    potentially contemplate that you
4    could have aggregate litigation
5    of some type.
6         THE STENOGRAPHER: I'm
7    sorry. Judge Levi dropped off.
8         JUDGE LEVI: No, I'm here.
9         THE STENOGRAPHER: Because
10   his panel is gone.
11        Oh, there you go.
12        Okay. Sorry, sir. Go ahead.
13        ARBITRATOR NARWOLD: So I
14   was curious why that argument
15   wasn't made because it does seem
16   to suggest that you could have
17   multiple plaintiffs. Whether
18   that mean a class is a different
19   issue. But it does suggest the
20   idea of aggregate litigation.
21        MR. LIEBERMAN: Yeah, I
22   think the point is -- we actually
23   did point to it in our brief, in
24   our opening brief. It wasn't
25   emphasized in the PowerPoint.
```

Page 75

```
1         ORAL ARGUMENT - LIEBERMAN
2    And that's why I wanted to bring
3    back more attention to it in oral
4    argument.
5         And so we did point to it
6    in our opening brief and I wanted
7    to make sure it didn't get lost
8    in the following items that were
9    put before the Panel.
10        It's just that I think that
11   is very significant because it's,
12   specifically, within the description
13   of what the arbitration will cover
14   and it's contemplating both
15   multiple Claimants and multiple
16   Respondents.
17        And it's saying there's no
18   limitation on what sort of
19   multiparty Claimants' and
20   Respondents' cases would be there.
21        And I think having opened
22   that door, that's an indication
23   of consent to such a class action,
24   because it's, specifically, talking
25   about multiparty litigation.
```

Page 76

```
1         ORAL ARGUMENT - LIEBERMAN
2         And I think it would have
3    -- after stating that, you would
4    need to now come back and now put
5    the rabbit -- you know, close it
6    off from class actions, because
7    now you've opened the door to
8    multiparty litigation on both
9    sides.
10        ARBITRATOR NARWOLD: Let me
11   go to one other point we were
12   just discussing.
13        On this question of
14   bifurcation, we call it
15   bifurcation, but the fact that
16   the securities litigation --
17   federal securities law litigation
18   is exempted from the arbitration
19   clause, unless elected by the
20   Claimant.
21        So what you've done in this
22   case and what would happen,
23   generally, under this clause is
24   that if there was a 10B case or a
25   33 AD case, you would have a
```

Page 77

```
1         ORAL ARGUMENT - LIEBERMAN
2    class action in federal court.
3    But I don't think there's much
4    question about that, right?
5         MR. LIEBERMAN: If there was a
6    federal securities law -- yeah,
7    yeah.
8         ARBITRATOR NARWOLD: Right.
9         As I understand the way this
10   would work is if the Claimant
11   elected the federal securities
12   law claim in arbitration, that is
13   you here in this case said, you
14   know, we're going to elect to have
15   all our claims heard in arbitration,
16   at least, under the Respondent's
17   view, you would be giving up the
18   right to have your federal
19   securities law claim heard on an
20   aggregate or class basis, at
21   least, under their view if you
22   had elected arbitration.
23        MR. LIEBERMAN: That's right.
24   That's what the implication of
25   what they're saying it is, yes.
```

20 (Pages 74 - 77)

Page 78

ORAL ARGUMENT - LIEBERMAN

1 ORAL ARGUMENT - LIEBERMAN
2 ARBITRATOR NARWOLD: So I
3 go to Judge Levi's point, which
4 is he's making the point that it
5 seems curious you could have two
6 classes.
7 I guess I'm just kind of
8 curious. And I'll ask the
9 Respondents about this, whether
10 it makes sense that you would
11 have a class only if you did not
12 been [sic] to arbitration, but
13 you wouldn't give the class if
14 you did end up in arbitration,
15 whether that's a logical reading.
16 But let me kind of try to
17 crystalize this a little bit
18 because we've been spending a lot
19 of time on this.
20 As I read Lamps Plus, the
21 sentence that seems to me to
22 capsulize what they are saying in
23 Lamps Plus is -- I'll give you a
24 cite here.
25 I'm reading off of a printout

Page 79

1 ORAL ARGUMENT - LIEBERMAN
2 here and I'm having a hard time
3 giving you a cite here.
4 Well, let me read it. If
5 we need to get the cite, we can.
6 But I think it's undisputed.
7 And this is the language.
8 "We held that courts may not
9 infer consent to participating
10 class arbitration absent an
11 affirmative contractual basis for
12 concluding that the party agreed
13 to do so."
14 And so that was the language
15 that Chair Moxley wrote at the
16 beginning or, at least, summarized
17 in the beginning, which is this
18 affirmative contractual basis for
19 doing so. That is, you must look
20 at the four corners of the
21 arbitration provision and, quote,
22 "find an affirmative contractual
23 basis."
24 You then go to Jock II and
25 it says Lamps Plus -- and I'm

Page 80

1 ORAL ARGUMENT - LIEBERMAN
2 reading from Page 626 -- "leaves
3 undisturbed the proposition
4 affirmed in Stolt-Nielsen that an
5 arbitration agreement may be
6 interpreted to include implicit
7 consent to class procedures."
8 Now, I don't know whether
9 there's tension between Lamps
10 Plus and Jock II or whether this
11 is a way of demonstrating an
12 affirmative statement.
13 But can you help me understand
14 how to read those two together
15 and what it means to say "implicit
16 consent"?
17 What does that mean,
18 "implicit consent," knowing that
19 under Lamps Plus there's got to
20 be an affirmative contractual basis?
21 MR. LIEBERMAN: Yes. So
22 what "implicit consent" means is
23 that you use other textual cues
24 that show you want it to be
25 comprehensive and include the class.

Page 81

1 ORAL ARGUMENT - LIEBERMAN
2 So language from which you
3 may infer consent to class
4 arbitration, so from the text and
5 the structure of the agreement
6 using contractual rules.
7 And, in fact, contractual
8 rules are referenced in Lamps
9 Plus as appropriate. Except for
10 ones that do not interpret the
11 intent of the parties.
12 So contra preferendum is
13 one where it's only in place
14 where there's ambiguity and it's
15 public policy canon and that's
16 why they carve that out in Lamps
17 Plus.
18 But what Jock is saying is
19 that -- and that part of Jock I
20 don't think it can be disputed is
21 talking about implicit consent to
22 class procedures. It means that
23 you can imply that you consent by
24 using broad language and a
25 comprehensive agreement that

21 (Pages 78 - 81)

ORAL ARGUMENT - LIEBERMAN

1    ORAL ARGUMENT - LIEBERMAN
2    addresses, you know, all
3    controversies, for example, or by
4    indicating in other ways that
5    well they carved out some things
6    and not others.
7        So your canons of construction
8    that are aimed at interpreting the
9    intent of the parties, I think, is
10   another example of something there.
11       So broad language, canons
12   of construction, the overall
13   scope of the agreement, those are
14   things from which you would imply
15   that the parties consented.  So
16   that's why I touch on the "any,"
17   you know, "any proceeding," "any
18   relief."
19       "Any relief" is telling --
20   you know, "any relief" includes
21   class actions.  It must because
22   it's saying "any."
23       It didn't say, oh, any except
24   and it didn't say some.
25       It says, anything related to

1    ORAL ARGUMENT - LIEBERMAN
2    the shares.
3        And the parties to the
4    agreement are the entire
5    outstanding American Depository
6    receipt.
7        So, I think, that's exactly
8    what Jock is referring to, that
9    it's implied from the context and
10   the structure of the agreement
11   that there is such consent.
12       And that's why we've pointed
13   to, you know, five different
14   factors here, which, essentially,
15   are incorporation of the agreement,
16   very broad consent to "any
17   process," "any procedure," "any
18   relief" and extraordinarily
19   broad, you know, scope provision
20   that says, "any controversy,
21   claim or cause of action brought
22   by any party relating to the
23   shares."
24       We've pointed to universal
25   language referring to all

1    ORAL ARGUMENT - LIEBERMAN
2    American Depository shareholders.
3        And then here we have the
4    specific addressing of
5    multi-Claimant/multi-Respondent
6    proceedings in the specific
7    paragraph addressing the scope of
8    the Arbitrator's authority.
9        So those things -- I think,
10   it's a natural inference for that.
11   It's natural implication in
12   covering any multiple party
13   dispute including multiparties.
14   It includes the class procedure
15   as well because that is a form.
16   It's a species of a multiparty
17   dispute.
18       And then when you get to
19   the next paragraph, when they get
20   back to addressing carveouts --
21   so the paragraph -- you get a
22   carveout for federal securities
23   laws two paragraphs on top of
24   that and then you have carveout
25   from damages just beneath it.

1    ORAL ARGUMENT - LIEBERMAN
2        I think, that's saying what
3    it means, that they're carving out
4    and what they're not carving out.
5    You know, they're expressly limiting
6    certain things, but they're not
7    carving out class actions despite
8    saying "any" multiple times for
9    relief and despite mentioning
10   multiparty disputes.
11       So I think when you weigh
12   the preponderance of the factors
13   here, they show -- they wanted this
14   deposit agreement to cover every
15   controversy including class actions.
16       ARBITRATOR NARWOLD:  Do you
17   have any comment on the exhibit
18   that Chair Moxley -- I say
19   exhibit -- but the document that
20   Chair Moxley circulated last night?
21       MR. LIEBERMAN:  Yes, I do.
22   I'm glad you brought that up,
23   because we wanted to address that
24   and some of the other questions.
25   So, you know, a couple of points

22 (Pages 82 - 85)

Page 86

1    ORAL ARGUMENT - LIEBERMAN
2    about that.
3        You know, one, that was a
4    document that was from the initial
5    prospectus from December 8th, 2010.
6    The language used is, are
7    "constituent documents," right?
8    "Constituent documents" is a term
9    of art for our constitutional
10   documents.
11       So the Articles of
12   Association, which form the company,
13   do not provide for arbitration is
14   what they're saying at that point.
15   And the Articles of Association
16   don't.
17       It's the depository agreement
18   that provides for arbitration.
19       And the best proof of that
20   is that language from that
21   prospectus.  The last time that
22   language was ever used in any
23   filing from Dangdang is December 8,
24   2010.  So it's a description of
25   where they were at the time of

Page 87

1    ORAL ARGUMENT - LIEBERMAN
2    the offering.
3        But in making the offering --
4    the arbitration agreement is for
5    the offering and for the depository
6    shares.  So that's a statement of
7    what their formation document
8    said prior to the listing on the
9    New York Stock Exchange.
10       So that document is not
11   relevant and has no impact here,
12   because it's just a statement
13   about what the Articles of
14   Association say --
15       ARBITRATOR NARWOLD:  Fair
16   enough.
17       MR. LIEBERMAN:  -- prior to
18   this action.
19       There was also a question
20   about the legal landscape in
21   Stolt-Nielsen and Stolt-Nielsen
22   was decided April 2, 3010.
23       The deposit agreement is
24   drafted November 2010 or it's
25   included at the end of November

Page 88

1    ORAL ARGUMENT - LIEBERMAN
2    2010.  And I think the point
3    about that is that gave notice
4    that class procedures can result
5    from arbitration.
6        I think that's telling.  That
7    means that people knew that this
8    was a possibility and that their
9    words could be implied to have
10   consent.
11       I don't think it's a situation
12   where the drafters of this agreement
13   could have been walking around
14   thinking, wait, there is no way we
15   would agree to class procedures
16   at that point.
17       This was an issue that was
18   going to the Supreme Court so
19   people had knowledge that they
20   could end up consenting to class
21   procedures.
22       So I think that landscape
23   just means that it's a factor
24   against there being a lack of
25   consent here.

Page 89

1    ORAL ARGUMENT - LIEBERMAN
2        And, as we noted, there was
3    also the question of expressio
4    unius.  I think we've addressed
5    that, that New York law is clear
6    on that point.
7        And this gets us to -- now
8    you have the various factors.  And
9    given that, I think, our point is --
10   think about the various factors
11   involved here.  And you have to
12   weigh that against other factors.
13       And given the number of
14   cases that we've pointed to that
15   have had similar number of factors,
16   we think that shows that there is
17   a pretty long body of arbitration
18   decisions that find with similar
19   factors that there's an implicit
20   consent to class procedures here.
21       And, you know, we've cited
22   those cases to you.  And here we
23   have not just a few of those
24   factors, we have five of them,
25   which we think creates this

23 (Pages 86 - 89)

Page 90

|   |   |
|---|---|
| 1 | ORAL ARGUMENT - LIEBERMAN |
| 2 | significant weight of authority |
| 3 | that weighs in favor of class |
| 4 | arbitration. |
| 5 | I mean, we've cited to you |
| 6 | the Dish Network versus Ray, the |
| 7 | Sappington case from the Second |
| 8 | Circuit, which involved the Tucker |
| 9 | ruling where they affirmed that |
| 10 | arbitration ruling; Finfrock, |
| 11 | Mohawk Gaming, Amerix Corp versus |
| 12 | Jones, the JPay case, Pilgrim's |
| 13 | Pride. |
| 14 | So the Court ruling that |
| 15 | there's a clause construction |
| 16 | award, that there was implicit |
| 17 | consent to class arbitration |
| 18 | would fall comfortably in line |
| 19 | with the weight of authority of |
| 20 | other Arbitration Panel members |
| 21 | and other arbitration decisions |
| 22 | by the AAA. |
| 23 | And given here where you |
| 24 | have expressed reference to |
| 25 | multiparty disputes and you have |

Page 91

|   |   |
|---|---|
| 1 | ORAL ARGUMENT - LIEBERMAN |
| 2 | these large discussions of broad |
| 3 | scope and of broad parties that |
| 4 | can be addressed by the provision, |
| 5 | I think, this is the case that |
| 6 | weighs in favor of the class |
| 7 | action clause construction ruling. |
| 8 | ARBITRATOR NARWOLD: Are |
| 9 | there any cases cited by either |
| 10 | you or the Respondents involving |
| 11 | either statutory or common law |
| 12 | securities claims? |
| 13 | MR. LIEBERMAN: I'd have to |
| 14 | go back and look for that. |
| 15 | ARBITRATOR NARWOLD: I didn't |
| 16 | see it quickly looking through -- |
| 17 | well, I say, "quickly." It |
| 18 | wasn't so "quickly," but looking |
| 19 | through it. |
| 20 | I'm not sure there's any |
| 21 | significance to that. I just |
| 22 | didn't see another -- off the top |
| 23 | of my head, I didn't see another |
| 24 | securities case either, you know, |
| 25 | 10B type case or a common law |

Page 92

|   |   |
|---|---|
| 1 | ORAL ARGUMENT - LIEBERMAN |
| 2 | fraud misrepresentation case. |
| 3 | MR. LIEBERMAN: You know, |
| 4 | given that -- I mean, those are |
| 5 | the main arguments here. |
| 6 | I'm trying to think of any |
| 7 | other questions that the Panel |
| 8 | had or brought up last night that |
| 9 | I haven't answered that you would |
| 10 | like me to address. |
| 11 | THE CHAIR: Do you have |
| 12 | anything else, Bill? |
| 13 | ARBITRATOR NARWOLD: I do not. |
| 14 | THE CHAIR: Okay. There was |
| 15 | reference to multiple parties and |
| 16 | language in the agreement, the |
| 17 | arbitration agreement on multiple |
| 18 | parties. |
| 19 | We should go back and look. |
| 20 | I mean, it's my recollection that |
| 21 | the consolidation rules in the -- |
| 22 | the consolidation rules and the |
| 23 | ICDR rules came in after 2010 and |
| 24 | that as of 2010 the class action |
| 25 | rules were out there, the |

Page 93

|   |   |
|---|---|
| 1 | ORAL ARGUMENT - LIEBERMAN |
| 2 | supplementary rules, but you |
| 3 | didn't have a consolidation rule, |
| 4 | what that means is a question. |
| 5 | And, in a sense, we have |
| 6 | multiple parties here now, don't |
| 7 | we. We have multiple Claimants |
| 8 | and multiple Respondents. |
| 9 | So I don't know if you have |
| 10 | any comments on that before you |
| 11 | wrap up. |
| 12 | And another -- just a |
| 13 | second question, Mr. Lieberman. |
| 14 | If Respondents are right here and |
| 15 | Claimants here are limited to |
| 16 | individual actions, is my |
| 17 | assumption right that that's the |
| 18 | end of any class action on common |
| 19 | law claims, that you can't go |
| 20 | back to the Southern District and |
| 21 | say, okay, we're doing individual |
| 22 | actions in arbitration on common |
| 23 | law claims, but we somehow want |
| 24 | to do class claims in court on |
| 25 | common law claims? |

24 (Pages 90 - 93)

Page 94

```
1         ORAL ARGUMENT - LIEBERMAN
2         I mean, that's not really
3    in play here, right?
4         MR. LIEBERMAN:  I don't --
5    I don't think -- that would have
6    to be an issue litigated.  I'm
7    not aware that that would be the
8    consequence.
9         THE CHAIR:  So, I mean, in a
10   way what we're talking about is
11   whether the arbitration agreement
12   here in effect should be read as
13   a class action waiver as to
14   common law claims in effect.
15        MR. LIEBERMAN:  And I think
16   that would be another reason why
17   that would not -- that's not a
18   reasonable reading of that, you
19   know, reading here.
20        There's nothing indicating
21   that there is a class action
22   waiver in here.
23        But, you know, I think,
24   that that argument, that there
25   can't be a class action or common
```

Page 95

```
1         ORAL ARGUMENT - LIEBERMAN
2    law claims, I don't think that's
3    at issue in this case.
4         And I think that would
5    raise some profound issues of the
6    enforceability of the provision.
7         I did want to go back to --
8    if you have anything more on
9    that, I can go back into it.
10        But I want to go to your
11   point about the multiparty point,
12   Chair Moxley.
13        THE CHAIR:  Go ahead.
14        MR. LIEBERMAN:  Yeah.  You
15   said, well, there's an example of
16   a nonclass action multiparty
17   dispute, but the point is that
18   they talk about multiple party
19   disputes without restriction,
20   right.
21        They don't say, well, if it's
22   just a few people.  It talks about
23   more than two parties, right.  So
24   there is no restriction that, well,
25   it only involves, you know, more
```

Page 96

```
1         ORAL ARGUMENT - LIEBERMAN
2    than two but not a hundred, right?
3         THE CHAIR:  Right.
4         MR. LIEBERMAN:  So I think
5    that statement has significance
6    and it talks about Claimants and
7    Respondents.  And then the point is
8    to align themselves to two sides.
9         So I think that has
10   significance given the various
11   carveouts in other places.
12        And I think, also, that it's
13   in a prominent place where they
14   were addressing other carveout on
15   the same page.
16        So I think the lack of
17   carveout there under the expressio
18   unius canon is particularly
19   significant on that point.
20        THE CHAIR:  Alright.  This
21   has been a helpful discussion.
22        Are you ready to just -- I
23   mean, are you, essentially, done?
24        I think you've kind of summed
25   up, so we can move on,
```

Page 97

```
1         ORAL ARGUMENT - LIEBERMAN
2    Mr. Lieberman, Mr. Hutman?
3         MR. LIEBERMAN:  Those are
4    our points in the main.
5         We'd reserve the opportunity
6    to rebut anything.
7         THE CHAIR:  Okay.  We ought
8    to take a break now.
9         Let me ask Mr. Klein, Mr.
10   Nelson, do you want 15 minutes?
11   I mean, what would you like as a
12   break here?
13        MR. KLEIN:  At the Panel's
14   pleasure, 10, 15, you know,
15   whatever the Panel would like.
16        THE CHAIR:  Alright.  Let's
17   just take ten, if that's good
18   enough for you, if that works for
19   my colleagues.
20        ARBITRATOR LEVI:  Good here.
21        ARBITRATOR NARWOLD:  Good
22   here.
23        THE CHAIR:  So shall we say
24   11:40?
25        MR. KLEIN:  11:40, that's
```

25 (Pages 94 - 97)

Page 98

1      ORAL ARGUMENT - LIEBERMAN
2   fine.
3        THE CHAIR:  Okay.  So people
4   can turn their cameras off.
5        Let me caution you, you
6   know, to put mute on as well so
7   you're not heard.
8        (Recess taken 11:28 to
9   a.m.)
10       THE CHAIR:  Are we good to
11  go as far as Claimants are
12  concerned?
13       MR. LIEBERMAN:  Claimants are
14  ready.
15       But I did have one point,
16  which I could save for rebuttal.
17       THE CHAIR:  Alright.  Why
18  don't you just say it now so the
19  Respondents can comment on it
20  rather than -- but make it brief
21  please.
22       Excuse me, before we start...
23       I had meant to put in the
24  record earlier that also present
25  with us although off camera is

Page 99

1      ORAL ARGUMENT - LIEBERMAN
2   AAA's Case Manager Monica Shepard,
3   who is in attendance off record.
4        MR. LIEBERMAN:  Yeah.  So I
5   wanted to just briefly respond to
6   a point about -- there was a
7   reference that the things that
8   have been excluded are things
9   that would otherwise be the default.
10       And in Garrity v. Lyle
11  Stewart, New York Court of
12  Appeals held that an Arbitrator
13  has now power to award punitive
14  damages.  So, you know, that's
15  the sort of thing where it's not
16  like the default was there.  So
17  it's not like they spoke to
18  excluding something that was not
19  the default that you were going
20  to get it there.
21       So the carveout of punitive
22  damages is something that therefore
23  is something that was addressed.
24       THE CHAIR:  Okay.  Thank you,
25  Counsel.

Page 100

1      ORAL ARGUMENT - KLEIN
2        For Respondents.
3        MR. KLEIN:  Yes, Chair Moxley.
4   I'll primarily be addressing this
5   issue.  And I'm ready to start if
6   the Panel is ready.
7        THE CHAIR:  Yes, please do.
8   Thank you, sir.
9     ORAL ARGUMENT BY MR. KLEIN
10       MR. KLEIN:  Okay.  And we
11  actually would like to refer to
12  the slides.  We don't need to
13  share them on the screen.  I know
14  that it sounds like the Panel
15  Members have them.
16       We're happy to put them on
17  the screen.  But I think it may
18  just help in distilling some of
19  the issues and helping folks on
20  some of the points we would like
21  to make and the language in the
22  different agreements that are at
23  issue.
24       THE CHAIR:  That's fine.
25  We have them separately.

Page 101

1      ORAL ARGUMENT - KLEIN
2        MR. KLEIN:  Okay, perfect,
3   perfect.  So I'll just call out
4   the slide numbers sort of as we go.
5        So we'll start at Slide 3,
6   which is sort of the first
7   substantive slide.
8        And, just to note, I think
9   exactly as Chair Moxley and other
10  members of the Panel has observed,
11  there really two parts to the
12  arbitration agreement, the
13  mandatory arbitration provision
14  that covers claims, generally,
15  and then a carveout for federal
16  securities claims and that is the
17  basic structure.
18       And we think it's very
19  significant that the specific types
20  of claims that were carved out of
21  the arbitration provision are
22  precisely claims, as members of
23  the Panel have observed, that
24  traditionally or often are
25  class-wide claims.

26 (Pages 98 - 101)

Page 102

ORAL ARGUMENT - KLEIN
1
2     But nowhere in any part of
3  the arbitration clause is there
4  any mention of class arbitration
5  or class arbitrability.  So the
6  clause is -- just objectively --
7  it's silent on the issue.  Class
8  arbitrability is not mentioned
9  anywhere.
10      And we'll get to the other
11  textual points that the Panel
12  raised and the references to, you
13  know, the multiple parties and
14  things like that.
15      But just on a fundamental
16  facial level, there is no reference
17  to class arbitration one way or
18  the other.  So, just as a
19  threshold matter, that puts us
20  squarely within Stolt-Nielsen.
21      THE CHAIR:  But let me ask.
22  What do you mean by the point
23  that the specific types that are
24  carved out are traditionally
25  class-wide claims?

Page 103

ORAL ARGUMENT - KLEIN
1
2      MR. KLEIN:  Well, securities
3  claims, right.  The securities
4  claims are often brought on a
5  class-wide basis.  So you have
6  this, you know, basic framework
7  where it mandates arbitrations of
8  all claims.  And the only types
9  of claims that are not mandatorily,
10  you know, arbitrated are claims
11  that are typical, you know,
12  class-wide claims.
13      So right off the bat you
14  have sort of a structure that
15  would suggest that the claims
16  that are, typically, class claims
17  are not within the ambit of the
18  arbitration that's contemplated
19  by the agreement.
20      THE CHAIR:  But isn't --
21      (INAUDIBLE DUE TO CROSS-TALK.)
22      THE STENOGRAPHER:  I'm sorry?
23      THE CHAIR:  But is it the way
24  that the securities claims are,
25  typically, brought is that the

Page 104

ORAL ARGUMENT - KLEIN
1
2  common law claims are brought
3  with them in the class action
4  that is, as you say, typical,
5  right?
6      You would have ancillary,
7  you know, state law.  Maybe you
8  would have fiduciary duty.  You'd
9  have intentional and negligent
10  misrepresentation, if they could
11  make it out and so forth.
12      MR. KLEIN:  You could.  That
13  can happen, yes.
14      ARBITRATOR NARWOLD:  Let me
15  ask the same question I asked the
16  Claimants.
17      I agree with your point,
18  right, that they're separated and
19  that the class action claims, the
20  traditional class action claim,
21  but (INAUDIBLE) claims may go to
22  federal court but don't have to.
23      MR. KLEIN:  Right.
24      ARBITRATOR NARWOLD:  And
25  that's where I get confused.

Page 105

ORAL ARGUMENT - KLEIN
1
2  Because if the Claimant elects to
3  hear the 10B claim or securities
4  law claim in arbitration, the
5  normal view would be that's an
6  aggregate claim, a classable
7  claim.
8      And, as I understand your
9  view, if you go to federal court
10  while the class action procedures
11  are available for the federal
12  securities claim, if the Claimant
13  elects to have the securities
14  claim heard in arbitration, they're
15  giving up that right.
16      Am I correct, in your view?
17      MR. KLEIN:  Yes, that's
18  correct.
19      And any claims that are
20  arbitrated under this agreement
21  cannot be arbitrated on a
22  class-wide basis.
23      And so the Claimants have
24  the option, right, just as they
25  had the option here, you know, to

27 (Pages 102 - 105)

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    bring their claim -- you know,
3    federal securities claims either
4    in arbitration -- and there are
5    some -- you know, securities law
6    claims are not always class claims,
7    right. They can, certainly, be
8    brought on behalf of individual
9    investors. And so, you know, that's
10    just their choice.
11    If they want a federal court
12    outlet and class procedures,
13    they're free to do that for their
14    securities claims, but the claims
15    to be arbitrated cannot be
16    arbitrated on a class-wide basis.
17    ARBITRATOR NARWOLD: Let me
18    ask a mechanical question. This
19    is more curiosity than anything
20    else.
21    In an actual arbitration,
22    we're given a copy of the actual
23    contract entered into between the
24    parties and we look at the
25    arbitration clause and the parties

1    ORAL ARGUMENT - KLEIN
2    are going to be A and B.
3    Here what we've been given
4    is the exhibits to the prospectus
5    or the registration statement
6    that was filed on December 2010.
7    Were there actually depository
8    agreements or receipts that were
9    signed by Mr. Fasano or the two
10    Altimeo funds?
11    In other words, how did
12    that mechanically work that they
13    became subject to this?
14    MR. KLEIN: So, I mean, the
15    short answer to your question is,
16    I don't know if they're somewhere
17    out there there are signed versions.
18    There's never been a contention
19    in this case that these terms do
20    not govern, right. So no one is
21    arguing that these are not the
22    governing terms or that this
23    isn't the governing agreement.
24    So I think we can be very
25    comfortable with that.

1    ORAL ARGUMENT - KLEIN
2    But the deposit agreement
3    and the receipt, basically, set up
4    a structure where if you acquire
5    an ADS, you are agreeing to be
6    bound by these terms. And anyone
7    who chooses to purchase an ADS
8    is on notice of that. Those are
9    just the terms subject to which
10    you're purchasing the security.
11    ARBITRATOR NARWOLD: Right.
12    I agree with your point that no
13    one is contesting that.
14    Really my point here was
15    that, you know, is there some
16    argument that it's not subject to
17    arbitration? I get that.
18    But, I guess, what it does is
19    it raises for me the question of --
20    essentially, what they're doing
21    when they're issuing the shares
22    and the IPO in December of 2010
23    is saying if you buy the IPO or
24    you subsequently become a holder
25    through transactions in the open

1    ORAL ARGUMENT - KLEIN
2    market, these are the terms and
3    conditions by which all of you,
4    every single holder will be
5    subject to ownership of these
6    shares. That's kind of how I
7    look at this; is that fair?
8    MR. KLEIN: I think that's
9    probably fair. And I think that's
10    probably how, you know, most
11    securities work, right.
12    Most publically issued
13    securities are not sort of tailored
14    to, you know, this buyer or that
15    buyer. There are a set of terms
16    that you accept, you know, that
17    apply to everyone.
18    ARBITRATOR NARWOLD: And I
19    don't want to monopolize. This
20    is my last question.
21    It appeared to me looking at
22    the registration statement that
23    some of your colleagues were
24    involved in that.
25    And Chair Moxley asked you

28 (Pages 106 - 109)

Page 110

ORAL ARGUMENT - KLEIN

1  ORAL ARGUMENT - KLEIN
2  a question, which I thought was
3  my understanding as well, which
4  is that the SEC has taken a pretty
5  hardline on registration statements
6  and I think still does to this
7  day, that they will not approve
8  an F1 registration statement or
9  any kind of registration statement
10  where the issuer is seeking to
11  restrict the right of an issuer
12  -- or restrict the right of a
13  shareholder either to bring
14  securities law claims in court or
15  also class action waivers.
16      And it looked to me like
17  this was drawn in this bifurcated
18  fashion to try to get as close to
19  the line as you could, which was
20  to put the common law claims in
21  arbitration, but recognize that
22  SEC would not bless an agreement
23  that had securities law claims
24  being mandatorily arbitrated or
25  where there was a class action

Page 111

1  ORAL ARGUMENT - KLEIN
2  waiver.
3      Do you have any sense of
4  that or just no idea?
5      MR. KLEIN:  You know, I don't.
6  I share your intuition that my
7  understanding as well, generally,
8  is that the SEC may take positions
9  like that.  Whether that's what
10  motivated this exact structure,
11  just in truth, I don't know.
12      But I will say that you
13  wouldn't alter, you know, just
14  the black and white terms of what
15  the parties agreed to through the
16  purchase of the shares.
17      So whatever the motivation
18  was, the terms of the agreement,
19  you know, are what they are.
20      ARBITRATOR NARWOLD:  Okay.
21      ARBITRATOR LEVI:  Can I ask
22  you about the backdrop here,
23  since I think that you're sort of
24  touching on it?  I asked this of
25  Claimants.

Page 112

1  ORAL ARGUMENT - KLEIN
2      So you put into the record
3  this treatise that says that as
4  of 2018 the ICDR class action
5  rulings have not been employed.
6      The cases might have been
7  settled I suppose that had been
8  determined to be appropriate for
9  the class arbitration.  So I'm
10  not exactly sure how to interpret
11  the statement.
12      But is it or do we have
13  information that it is what one
14  might say is commonplace or not
15  commonplace, it's the expectation
16  or not the expectation that
17  common law claims of this sort
18  would or would not be subject to
19  class arbitration?
20      MR. KLEIN:  Yeah.  So, you
21  know, our understanding is that
22  there are very few, if any,
23  international class arbitrations
24  under the ICDR rules, just as the
25  treatise says.

Page 113

1  ORAL ARGUMENT - KLEIN
2      I think just in the nature
3  of these things it would be hard
4  to get sort of exact global data
5  on it, you know.  But that is,
6  certainly, our understanding.
7      And, I think, it's consistent
8  with the fact that, you know, as
9  the Supreme Court has ruled
10  multiple times, the default rule
11  is bilateral arbitration, not
12  class arbitration.
13      The Court said it in the
14  Viking River Cruises case and
15  other cases.  In the Viking River
16  Cruises cases, it says bilateral
17  arbitration, as opposed to class
18  or collected arbitration is,
19  quote, "prototype of the
20  individualized and informal form
21  of arbitration contemplated in
22  and protected by the FAA."
23      It is our understanding that
24  it is actually very rare, if there
25  have been any.  I mean, we're not

29 (Pages 110 - 113)

Page 114

ORAL ARGUMENT - KLEIN
1  ORAL ARGUMENT - KLEIN
2  aware of any such actions under
3  the ICDR rules but, certainly, very
4  rare and that's what you would
5  expect given the default sort of
6  background fact that bilateral
7  arbitration is the assumed form
8  that it takes.
9      ARBITRATOR LEVI:  What about
10  the language that Mr. Lieberman
11  quoted to me from one of the Jock
12  opinions?
13      There have been so many.
14  I'm not sure whether it was Jock
15  II or exactly.  I didn't note that.
16      MR. KLEIN:  Yeah.  So there
17  are class arbitrations in other
18  context; for example, a lot of
19  the cases that Claimants cite are
20  in the employment law context
21  where if it's not technically
22  considered a class, it's sort of,
23  at least, a group or collective
24  sort of pleading where the right
25  to do that is literally baked

Page 115

1  ORAL ARGUMENT - KLEIN
2  into the cause of action itself
3  under the Fair Labor Standards
4  Act.  So there may be things like
5  that.
6      But, you know, claims of this
7  kind, securities claims or common
8  law claims on sort of analogous
9  or related issues are very rare,
10  if they occur at all is our
11  understanding.
12      ARBITRATOR LEVI:  Thank you.
13      THE CHAIR:  As a followup
14  on that, I mean, if as appears to
15  generally be the case, the SEC is
16  not going to bless a securities
17  or registration that would set up
18  mandatory arbitration in the
19  waiver of the chance to go to
20  court before the federal securities
21  claims, doesn't that explain the
22  situation?
23      Because wouldn't it in
24  almost a hundred percent of the
25  cases be the case that if there

Page 116

1  ORAL ARGUMENT - KLEIN
2  are going to be parallel or
3  ancillary common law claims along
4  with federal claims in the
5  Southern District or in another
6  federal district, that they'd be
7  together and it's only because of
8  the highly unusual circumstances
9  of this case that there's a
10  separation of those ancillary
11  claims from the securities claims?
12      MR. KLEIN:  I think that could
13  explain the structure of the
14  agreement and why those two things
15  are separated.
16      But it, certainly, doesn't
17  alter the terms of that agreement,
18  right.  And the fact that the
19  claims are subject to arbitration
20  under the agreement that the
21  parties entered into, you know,
22  just do not provide for class-wide
23  arbitration.
24      But you're right, Chair
25  Moxley, that could explain why

Page 117

1  ORAL ARGUMENT - KLEIN
2  there is this sort of bifurcated
3  structure.
4      THE CHAIR:  Right.  And why
5  we don't have you know a record
6  -- I mean, first of all, I think,
7  we all know there is not a lot of
8  class arbitrations and they're
9  not as regulated and arbitration
10  is less regulated.
11      And it maybe makes -- you
12  know, it's less predictable what
13  an Arbitrator or a Panel will do
14  I take it.  And there's very
15  little substantive review.
16      So, in a way, it's not
17  surprising that the numbers are
18  low.  I mean, right?
19      MR. KLEIN:  I don't think
20  -- yeah, we're not presenting
21  this as a surprising fact.  I
22  think it's just a background fact
23  about the world.
24      And, as a practical matter,
25  you know, most of these class

30 (Pages 114 - 117)

Page 118

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    action claims are brought in
3    federal court and, you know,
4    that's, typically, where
5    plaintiffs prefer to bring them,
6    you know.
7        So, yeah, I don't think
8    it's necessarily surprising.
9        But I think in all these
10   ways really what this sort of
11   highlights is that the terms of
12   the arbitration clause is
13   actually quite standard.
14       And if you look at Slide 4,
15   we actually have a side-by-side
16   comparison to literally the AAA
17   standard arbitration clause, the
18   one that is out in the public
19   domain as just the boilerplate
20   arbitration clause.
21       And you see the operative
22   language, you know, in that
23   clause and the clause here are
24   substitutively identical.  The
25   standard clause reads, "Any

Page 119

1    ORAL ARGUMENT - KLEIN
2    controversy or claim arising out
3    or relating to the contract," you
4    know, the subject matter.
5        Likewise, our clause says,
6    "any controversy, claim or cause
7    of action brought by any party
8    hereto against the company arising
9    out of or relating to."  Again,
10   this sort of operative --
11       ARBITRATOR NARWOLD:  You
12   left out the next couple of words
13   and that seems to me to be
14   significant, right.
15       So the first one says,
16   "arising out or relating to this
17   contract," meaning, the contract
18   in which it's embedded.
19       MR. KLEIN:  Yes, sir.
20       ARBITRATOR NARWOLD:  The
21   second one says, "claim,
22   controversy, cause of action
23   arising or reading to the shares
24   or securities."
25       And as an odd -- in my

Page 120

1    ORAL ARGUMENT - KLEIN
2    experience in arbitration, that's
3    an odd expression.  You almost
4    always see "relating to the
5    contract or the breach thereof."
6        And I don't know what to
7    read into that, but I will tell
8    you that, again, in my experience,
9    seeing -- using the word "share"
10   or "deposit" is an atypical
11   expression.
12       So I'm not sure what you
13   do, but I think it has to be read
14   together.
15       MR. KLEIN:  Yeah.  Oh, I
16   agree it has to read together.
17       I think my point was just
18   that the claim -- I mean, you
19   heard Mr. Lieberman stress the
20   fact that, you know, the word
21   "any," any controversy or claim
22   arising out or relating to
23   whatever the subject matter is,
24   right, whether it's the contract,
25   whether it's the securities, you

Page 121

1    ORAL ARGUMENT - KLEIN
2    know, whatever it is.
3        And then, you know, the
4    clauses continue, "shall be
5    settled by arbitration," and
6    there's an incorporation of a set
7    of rules; "and administered by
8    the AAA rules, in accordance with
9    its international" -- sorry,
10   "administered by the AAA in
11   accordance with its international
12   rules," and then, similarly, in
13   our clause, "shall be settled by
14   arbitration in accordance with
15   the international rules of the
16   American Arbitration Association."
17       The next slide, Slide 5, shows
18   the JAMS standard arbitration
19   clause.  The operative language
20   is the same, similarly broad.
21   The word "any," "any dispute,
22   controversy or claim arising out
23   or relating to this contract,"
24   you know, which would include
25   securities or anything else;

31 (Pages 118 - 121)

Page 122

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    extremely broad language.
3        And then, again, the
4    incorporation of rules will be
5    referred to and, finally,
6    "determined by arbitration in
7    accordance with the JAMS
8    international arbitration rules."
9        And so our clause literally
10   in much of the operative language
11   literally tracks these standard
12   clauses.
13       And so, if Claimants are
14   right, that these are indicia of
15   an agreement to arbitrate on a
16   class-wide basis, you know,
17   presumably, any contract that
18   incorporates the standard AAA
19   language or the standard JAMS
20   language would contemplate
21   class-wide arbitration.
22       And that's exactly the
23   opposite of the presumption and
24   the default that the Supreme
25   Court case law and, frankly, all

Page 123

1    ORAL ARGUMENT - KLEIN
2    the case law set up.
3        I mean, it just can't be the
4    case that a general agreement to
5    arbitrate any dispute or the
6    incorporation of a certain set of
7    rules, you know, suggests class
8    arbitration, even if those rules
9    allow for class arbitration in
10   certain context.
11       And we cite a bunch of
12   cases in our brief on this point.
13       And I would just say that
14   Stolt-Nielsen -- folks may recall
15   Stolt-Nielsen itself dealt with
16   an arbitration clause that
17   incorporated expressly not just
18   the AAA rules but the AAA class
19   rules and that was held not to be
20   enough.
21       So the idea that just by
22   agreeing to arbitrate any dispute
23   or, you know, define the scope of
24   the agreement broadly and the
25   incorporation of rules that allow

Page 124

1    ORAL ARGUMENT - KLEIN
2    for class-wide arbitration, you
3    know, does not move the needle at
4    all.
5        There was a question about
6    the Exhibit 2 or there is some
7    discussion about Exhibit 2 to
8    Claimants.
9        THE CHAIR:  Before we go on
10   to that...
11       MR. KLEIN:  Yes.
12       THE CHAIR:  Part of my
13   thinking is still focused back on
14   your opening point, which I have
15   struggled with, frankly, in
16   reading.
17       You know, once I pass the
18   case law and I realize that it
19   may be that our job is to
20   construe this language, the
21   totality of it, I take it and
22   figure out what it means subject
23   to, obviously, figuring out what
24   you know, affirmative contractual
25   basis means.

Page 125

1    ORAL ARGUMENT - KLEIN
2    MR. KLEIN:  Uh-huh.
3        THE CHAIR:  But once we
4    have to do that, I struggle with
5    the point that it -- you know
6    it's recognized.  It appears by
7    everybody that the carveout for
8    federal securities actions is a
9    carveout for class actions as
10   well as any ancillary claims,
11   right?
12       I mean, that's including in
13   the carveout language.
14       But reading the language I
15   don't see how you get around the
16   fact that the language of that
17   carveout is, essentially, to my
18   reading, also, the language of
19   recovery, right?
20       You're talking about "any
21   controversy, claim or cause of
22   action."  So you're including
23   "any controversy, claim or cause
24   of action," but then you're saying,
25   wait a minute, we're going to

32 (Pages 122 - 125)

Page 126

```
1        ORAL ARGUMENT - KLEIN
2    exclude some of it.  We're going
3    to exclude, you know, securities,
4    you know, federal, statutorily or
5    rules based regulation based
6    class action.  So --
7        MR. KLEIN:  Or any claim.
8    It wouldn't have to be a class
9    action, just claims arising out
10   of the federal securities law.
11       THE CHAIR:  Right.
12       Why isn't it -- if it's a
13   controversy under the exclusion,
14   why isn't it a controversy under
15   the inclusory language?
16       MR. KLEIN:  Well, so I
17   don't think there's any problem
18   with carving out a specific type
19   of claim from an agreement to
20   arbitrate.
21       I mean, you could imagine
22   agreement to arbitrate any
23   controversy or claim, but we're
24   going to carve out labor claims.
25       THE CHAIR:  Agreed
```

Page 127

```
1        ORAL ARGUMENT - KLEIN
2    entirely, no question about it.
3        What I'm asking is, you
4    know, in each case you're talking
5    about "any controversy."  So, you
6    know, you don't need to exclude
7    something unless you've included
8    it.
9        I mean, you can argue that
10   point, I guess, and say you could
11   do it anyhow.
12       MR. KLEIN:  Right.
13       THE CHAIR:  But the
14   structure seems to be, you know,
15   we have this broad inclusion.
16       MR. KLEIN:  Yup.
17       THE CHAIR:  We're going to
18   take out the individual and class
19   actions under the securities
20   actions.  But if a controversy
21   includes a class action when you
22   exclude it, I mean -- but that's
23   the question.
24       You know, why doesn't it
25   include a class action when you
```

Page 128

```
1        ORAL ARGUMENT - KLEIN
2    include the controversy?
3        MR. KLEIN:  Okay, got the
4    question.  I understand what
5    you're getting at Chair Moxley.
6        So the fact is that any
7    claim or controversy language in
8    both clauses is silent as to
9    class actions.  So they're not
10   talking about we're going to have
11   any claim or controversy, but
12   then we're going to carve out
13   class actions.  You know, it's
14   just we're carving out securities
15   claims, right.
16       So the clause is silent as
17   to whether it's agreeing to
18   arbitrate class actions.
19       And I think the other
20   language in the clause, actually,
21   the reasonable reading of that,
22   the most coherent reading of that
23   is that it does not include class
24   claims.
25       And under Stolt-Nielsen and
```

Page 129

```
1        ORAL ARGUMENT - KLEIN
2    Lamps Plus, I mean, they've just
3    compelled the conclusion that a
4    clause like this that makes no
5    mention of class arbitration,
6    whatever other claims it may
7    carve out and there's nothing
8    even implicitly gesturing for --
9    you know, there is no mention of
10   class proceedings anywhere.  It
11   just carves out one category of
12   claims, federal securities claims,
13   whether class or otherwise.
14       I just -- under the
15   controlling authority, that cannot
16   be interpreted as a consent to
17   class arbitration.
18       Because remember the issue
19   is whether the clause can be read
20   as affirmative consent to class
21   proceedings.  And there's just
22   nothing in there that could be,
23   you know, even arguably, you
24   know, consent, something
25   affirmative showing consent to
```

33 (Pages 126 - 129)

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    class arbitrations.
3        THE CHAIR:  That in a way
4    becomes the issue, right?
5        I mean, Judge Levi asked
6    some questions around this to
7    Claimants and I asked some as
8    well and then I think Arbitrator
9    Narwold did, you know.
10       But perhaps the formulation
11   of the issue, if it's going to --
12   you know, is whether a Panel's
13   construction of the natural
14   meaning of an agreement using all
15   the normal rules that we're
16   supposed to read the whole
17   agreement, read it as a whole, we
18   can use expressio unius.  We
19   don't give absurd interpretations
20   to anything.
21       If we go and interpret an
22   agreement on a point like class
23   arbitration where clearly you
24   have silence here, is that
25   interpretation -- if we go that

1    ORAL ARGUMENT - KLEIN
2    way -- and I'm not saying we go
3    that way on the interpretation.
4    I'm not saying that at all.
5        But if we go that way on
6    the interpretation, doesn't the
7    issue become -- you know, does
8    that interpretation using normal
9    modes of state law construction
10   to ascertain intent, is that
11   legally sufficient for
12   affirmative contractual basis?
13       Isn't that the issue?
14       MR. KLEIN:  It is in part
15   the issue, Chair Moxley, and I
16   would say, certainly, not in this
17   case.
18       So two sort of layers to
19   the answer.  One is once you've
20   acknowledged that the clause is
21   silent on the issue of class
22   arbitrability, that's the end of
23   it.  Under Stolt-Nielsen, that's
24   the end of the issue.  You're done.
25       If you start getting into

1    ORAL ARGUMENT - KLEIN
2    -- you know, if there's nothing
3    about class arbitration and you're
4    starting to get into these, you
5    know, canons of construction and
6    inferences and things like that,
7    then the contract is at the very
8    best ambiguous.  And under Lamps
9    Plus, that's not enough, right.
10       So there may be -- I mean,
11   there were questions about the
12   concept of implicit consent.  I
13   do think there is some tension
14   between Lamps Plus and Jock II
15   and that one statement -- it's
16   really just one line in Jock II
17   that references that.
18       Its analysis does not turn
19   on that line about implicit
20   consent.  And, in fact, Jock II
21   really just re-affirms the liberal
22   and forgiving standard of review
23   that applies when courts look at
24   arbitral panel decisions on this.
25       So Jock II did not even

1    ORAL ARGUMENT - KLEIN
2    purport to actually construe the
3    clause before it.  It was just
4    reviewing and reciting the Veeck
5    first standard, you know, that
6    applies to Panel rulings on these
7    issues.
8        So I think there is some
9    tension between Lamps Plus and
10   Jock II.  Regardless, even if
11   there is such a thing as implicit
12   consent, there's nothing remotely
13   like that here.
14       I mean, you know, the
15   Catamaran case from the Eighth
16   Circuit that we cite -- and
17   that's at 946 F. 3d.1020 at 1024.
18   The Eighth Circuit, actually,
19   addressed this issue and said, at
20   a minimum, intent for class
21   arbitration must be, quote, "so
22   evident from the terms of the
23   written agreement, that it's
24   unnecessary to express that
25   intent within the agreements

Page 134

ORAL ARGUMENT - KLEIN

1    themselves," end quote.
2    So, even the Courts that
3    have sort of kind grappled with
4    this concept of implicit consent
5    -- there's nothing in this
6    agreement that even comes close
7    to meeting that threshold.
8    ARBITRATOR NARWOLD: Let me --
9    MR. KLEIN: I'm sorry.
10    ARBITRATOR NARWOLD: You
11    said, I think, that unless it
12    actually expressly references
13    class arbitration, in your view,
14    under Stolt-Nielsen and Lamps
15    Plus, that's the end of the
16    inquiry, because it's silent at
17    that point, right?
18    But it seems to me there is
19    kind of a middle ground here. So
20    let's suppose the arbitration
21    agreement said a claimant may
22    bring, you know, a claim on
23    itself or on an aggregate basis.
24    Now, it doesn't say a class action.

Page 135

ORAL ARGUMENT - KLEIN

1    MR. KLEIN: Yup.
2    ARBITRATOR NARWOLD: But it
3    suggests that, you know, more than
4    one person can participate.
5    Are we saying that because
6    it doesn't use the words "class
7    arbitration" -- I mean, is there
8    any give in your line, or is it a
9    clear line that it has to say
10    "class arbitration"?
11    MR. KLEIN: Yeah, well, so
12    I agree, Mr. Narwold, that
13    hypothetical that you proposed
14    would be a lot closer, a lot
15    closer question, right. But
16    happily we're not dealing with
17    any language like that here so...
18    ARBITRATOR NARWOLD: But
19    that's the question.
20    MR. KLEIN: But it is a
21    hypothetical. I mean, you know,
22    I think ideally, right,
23    Stolt-Nielsen and Lamps Plus are
24    envisioning cases where the

Page 136

ORAL ARGUMENT - KLEIN

1    arbitration clause either says,
2    you know, we agree to class
3    arbitration, right, or if they
4    don't say that, it's silent or at
5    best ambiguous.
6    You could imagine a case
7    where somewhere else in the
8    clause it references, if the
9    claim is subject to arbitration
10    under this clause are class-wide
11    claims, then we do X, Y and Z.
12    That's not an expressed
13    consent, but it's a statement
14    that could be taken as implicit
15    consent maybe.
16    But, you know, I think, our
17    point is that there's nothing
18    sort of remotely comparable in
19    this agreement.
20    ARBITRATOR NARWOLD: I get
21    that. I totally get your point,
22    which is that the little
23    breadcrumbs that the Claimants
24    are relying here are enough. I

Page 137

ORAL ARGUMENT - KLEIN

1    get that.
2    But I'm actually trying to
3    figure out in my own mind that if
4    there is a line, where it is.
5    So, for example, if you had
6    an arbitration provision exactly
7    like this one and it required
8    that the Arbitrators be off the
9    international Panel, knowledgeable
10    in securities matters and, also,
11    on the class action panel, but it
12    doesn't say anything about class
13    action. It just says that's the
14    attributes of the Arbitrators.
15    Can I, in that circumstance
16    under Jock II, infer that the
17    parties intended class action
18    arbitration?
19    MR. KLEIN: I don't think
20    so, because that goes to the
21    qualifications for an Arbitrator,
22    not how the arbitration is actually
23    supposed to proceed and what
24    procedures are available.

35 (Pages 134 - 137)

Page 138

1    ORAL ARGUMENT - KLEIN
2        ARBITRATOR NARWOLD: Why
3    wouldn't -- I mean, if I'm
4    reading textually and I see that
5    the Arbitrator needs to be on the
6    class action panel, why would
7    that matter if I wasn't thinking
8    about class actions?
9        MR. KLEIN: There are any
10   number of reasons I suppose why.
11       I mean, you know, again,
12   we're not dealing with such a
13   provision here. But there could
14   be any number of reasons why they
15   would want Arbitrators with
16   certain qualifications.
17       Maybe it would be precisely
18   so that when this issue comes up,
19   they would properly construe
20   right the language. I mean, but
21   truly --
22       ARBITRATOR NARWOLD: I
23   understand, fair point.
24       MR. KLEIN: But happily --
25   but happily, right, the Panel

Page 139

1    ORAL ARGUMENT - KLEIN
2    here does not need to reach out
3    to draw some abstract line like
4    that, because, you know, on the
5    language of this contract, there's
6    literally nothing.
7        ARBITRATOR NARWOLD: Okay.
8        ARBITRATOR LEVI: Could you
9    address the multiple party
10   provision that other Arbitrators
11   have raised?
12       MR. KLEIN: Sure, sure.
13       So a couple of things. So,
14   first, you know, in our view, this
15   is bilateral. This is bilateral
16   language. It refers to "any
17   claim by any party," not any
18   parties or any groups of parties.
19   It refers to "claims by any
20   party." There's a reference to
21   each party, right. So it clearly
22   contemplates bilateral claims.
23       The group language it's
24   very clear what it's doing. It's
25   saying if you have more than two

Page 140

1    ORAL ARGUMENT - KLEIN
2    parties, as we do in this case,
3    even if you know this is not a
4    class arbitration. But even
5    without a class arbitration,
6    there are two claimants and a
7    bunch of respondents.
8        So they're saying if you
9    have a case like that, they
10   should try to sort themselves
11   into two sides precisely so you
12   can keep the dispute bilateral, as
13   contemplated by the language.
14       And, actually, the way it's
15   framed, it actually presumes
16   identifiable discrete parties.
17   It does not -- that provision
18   does not make sense in a world in
19   which you're dealing with thousands
20   of -- you know, potentially
21   thousands of absent unknown
22   unnamed class members.
23       They wouldn't be practical
24   to ask them, right, to sort
25   themselves into multiple sides.

Page 141

1    ORAL ARGUMENT - KLEIN
2    Like, that's just not how it
3    works.
4        Like, this presumes a world
5    and a situation in which you have
6    discrete identifiable parties and
7    they need to pick an Arbitrator.
8    And if there are too many of
9    them, more than two, they have to
10   sort themselves into two sides.
11       I think it makes perfect
12   sense and reinforces the notion
13   that this is bilateral.
14       ARBITRATOR LEVI: Could
15   there be like a third-party who
16   might be sort of a claimant and
17   sort of a respondent, that there
18   might be ambiguity and would have
19   to decide which side to go on for
20   this limited purpose of deciding
21   --
22       MR. KLEIN: Yes. Yes.
23   Exactly right.
24       So there could be someone
25   with some sort of third-party

36 (Pages 138 - 141)

Page 142

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    claim. There could be an
3    insurer, right. There could be
4    an auditor, right, to sort of --
5    not the issuer of the securities
6    but has an interest into somehow
7    -- right.
8        So it just -- you could
9    imagine -- cause, again, we're
10   dealing with any claim that could
11   include securities claims but
12   include other claims. It's, you
13   know, whatever kind of claim it is.
14       So I think the drafter is
15   sort of -- we're mindful of the
16   fact that it's not always going
17   to be neat one party on one side,
18   one party on the other side kind
19   of issue.
20       ARBITRATOR NARWOLD: Well,
21   that's not really true because an
22   auditor is not a signatory to
23   this agreement.
24       I mean, the only people who
25   can be on arbitration on other

Page 143

1    ORAL ARGUMENT - KLEIN
2    side have to be a party to the
3    arbitration.
4        And you wouldn't have third
5    parties as parties because
6    they're not signatories.
7        I mean, I get your basic
8    point. But I don't think
9    non-signatories would be what's
10   addressed here.
11       MR. KLEIN: Maybe. But, I
12   mean, you know, choose your
13   example, right. I mean, everyone
14   can think of examples where there
15   might be parties that have -- you
16   know, that don't line up exactly
17   or may have interests that are
18   countervailing, even with the
19   universe of those that have
20   signed the agreement.
21       So I take your point, Mr.
22   Narwold, that there may be a
23   limitation to that universe.
24       But the fact that the
25   agreement contemplates the very

Page 144

1    ORAL ARGUMENT - KLEIN
2    sort of real world possibility
3    that there are going to be more
4    than two parties, you know,
5    that's exactly what we have here,
6    for example.
7        And, by the way, here, you
8    know, some of the entities that
9    have been named, you know, we'll
10   see if the case gets that far.
11   But I don't know if the entities
12   have signed the agreement or
13   issued securities, right.
14       So this is a good example
15   where, you know, if Claimants had
16   named an auditor or if Claimants
17   had named an insurer in the case,
18   they would have to sort of appear
19   and say something for themselves,
20   right, but it wouldn't, you know.
21   And maybe they would be dismissed
22   in the end because they hadn't
23   signed the agreement.
24       But it wouldn't be the case
25   that the fact that multiple

Page 145

1    ORAL ARGUMENT - KLEIN
2    parties would lead to you to
3    assume that there is class
4    arbitration.
5        ARBITRATOR LEVI: Well, we
6    can imagine that there would be
7    disputes within the Respondent
8    group as to who, you know, who
9    did what and who had primary
10   responsibility and that sort of
11   thing.
12       And I suppose we can
13   imagine subclasses within the
14   Claimant's group.
15       But this section -- I would
16   like to make this a question.
17       This section is addressed
18   to the appointment of the
19   Arbitrators before there can have
20   been any determination of a class
21   action.
22       So we don't -- I guess we
23   have an inchoate class, but we
24   don't have a determination yet
25   that there will even be a class

37 (Pages 142 - 145)

Page 146

```
1        ORAL ARGUMENT - KLEIN
2    action.
3        So I'm not certain it
4    addresses the rights of the class
5    or of a class to select an
6    Arbitrator.
7        MR. KLEIN:  Well, no, and I
8    think that's exactly right.  It's
9    consistent with everything we're
10   saying, right.
11       There is no reference to
12   class procedures of any kind in
13   here.  And the mere fact that
14   there's an allowance for multiple
15   parties doesn't change that fact,
16   you know, for the reason you just
17   said, Judge Levi, and, you know,
18   for all the reasons that we've
19   been discussing.
20       ARBITRATOR NARWOLD:  This
21   is an interesting question.  I
22   hadn't looked at this before.
23       It says, "any claim against
24   the company."  And "the company"
25   is defined as the listed company
```

Page 147

```
1        ORAL ARGUMENT - KLEIN
2    Dangdang and its successors.
3        But, as I understand it,
4    the Respondents -- maybe there is
5    no issue.  Everybody has agreed
6    to this.
7        But the Respondents are a
8    series of individuals, a holding
9    company, something called First
10   Profit Management.
11       MR. KLEIN:  Yeah.
12       ARBITRATOR NARWOLD:  How
13   are they parties -- and maybe
14   there's another section there.
15       But how are they parties to
16   the arbitration?
17       MR. KLEIN:  They may not be.
18   And they at some point may, you
19   know, move to be excluded.  You
20   know, we'll see.
21       But I don't -- look, I mean,
22   they're here because Claimants
23   have named them.  And they're
24   here because, you know, we haven't
25   through all of the sort of, you
```

Page 148

```
1        ORAL ARGUMENT - KLEIN
2    know, back and forth about this,
3    we still haven't gotten to air
4    the merits of our motions to
5    dismiss.
6        So, at this stage, we're
7    trying to figure out what claims
8    belong where and whether class
9    procedures apply.
10       But you may be right, Mr.
11   Narwold, they may not be valid
12   Respondents in this arbitration
13   and may need to be dismissed.
14       THE CHAIR:  I don't remember
15   the history on that.  But I seem
16   to remember that there is history
17   and this was addressed somewhat
18   in the courts about whether they're
19   here and whether they were in the
20   Court and whether they should come
21   here.
22       And I thought, at least,
23   for now, this was kind of, you
24   know, in place.  I don't know if
25   that's, you know, less than
```

Page 149

```
1        ORAL ARGUMENT - KLEIN
2    definitive.
3        MR. KLEIN:  I think for now
4    they are.  And I think that it is
5    fair to say that, you know, the
6    Respondents overall up to now
7    have been focused on, you know,
8    getting rid of the entire action,
9    right.
10       And so, you know, whether
11   something will come out later in
12   the case that will change the mix
13   of Respondents or change the
14   arguments and position, it could
15   be.  I don't want to speculate on
16   that.
17       THE CHAIR:  Yeah, I mean,
18   for now, you know.  And the point
19   has passed us, unless I'm missing
20   something and I would like to
21   know it.
22       There's no -- and I think
23   we talked about this in the
24   initial preliminary hearing.
25       There is no dispute at this
```

38 (Pages 146 - 149)

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    point by any of the Respondents
3    as to arbitrability in this
4    arbitration?
5        MR. KLEIN:  I think that's
6    right.  I mean, I would say we
7    argued against arbitrability in
8    the Court and we lost.  So, you
9    know, it was not the case, you
10   know.
11       And, actually, it's a
12   relevant point for these purposes
13   too.  A lot of the courts in
14   these class arbitrability
15   decisions where they're reviewing
16   an Arbitral Panel's decision will
17   say, here the parties agreed that
18   the Arbitrator decides
19   arbitrability, so we give maximum
20   deference.
21       We, actually, argued that
22   these claims wouldn't go to
23   arbitration and we argued that
24   the Court should hear them.
25       So, you know, we don't think

1    ORAL ARGUMENT - KLEIN
2    that sort of maximum deference
3    would apply, if the matter gets
4    appealed.
5        But it's just to say, Chair
6    Moxley, that, you know, there's no
7    dispute for the moment, certainly,
8    that, you know, the parties here
9    are now before the Tribunal.
10       But all I'm saying is I
11   don't want to speculate as to,
12   you know, what might happen later
13   if the case, you know, continues.
14       THE CHAIR:  Right.  But
15   this is -- I mean, this is a side
16   point, but it has come up, that
17   there is in the ICDR rules, as
18   I'm remembering it -- I mean, I'm
19   not looking at them expressly.
20       But there is a deadline for
21   raising arbitrability.  I believe
22   that's passed and this case didn't
23   come to us to decide arbitrability
24   in general.  It came to us, at
25   least, as I -- and I think you've

1    ORAL ARGUMENT - KLEIN
2    said this, that the Court
3    determined arbitrability and the
4    issue it comes to us on is class
5    arbitration or not.
6        (Stenographer clarification.)
7        MR. KLEIN:  That's right,
8    Chair Moxley.  I mean, I was
9    merely responding to Mr. Narwold's
10   question about the status of
11   these other entities.  And, you
12   know, it's not been something
13   that's been raised to this point.
14   You are correct about that.
15       THE CHAIR:  Right.  And I
16   don't think you can come in later
17   -- I mean, I'm not making any
18   rulings.
19       (INAUDIBLE DUE TO CROSS-TALK.)
20       THE CHAIR:  -- but my
21   understanding -- you have to object,
22   if you're going to object.  And if
23   you don't -- you know, you're
24   under arbitrability whatever the
25   merits are, right, and whatever

1    ORAL ARGUMENT - KLEIN
2    the form of the case.
3        MR. KLEIN:  Right.  And the
4    various Respondents, if they want
5    to take a different position,
6    would have to look at that.  And
7    I'm not saying we're going to do
8    that.
9        I'm just saying that Mr.
10   Narwold raised a question about
11   sort of how they're in the case
12   and, you know, the fact is they
13   are.  They've been named and they
14   are.
15       And so, you know -- but I
16   just -- I wouldn't want to take
17   any absolute positions that might
18   prejudice something down the road.
19   I just don't know what's going to
20   happen.
21       THE CHAIR:  Right.
22       I mean, there is the curious
23   point -- and I know your answer
24   and I think I agree with it, you
25   know.  But, to me, it could be an

Page 154

ORAL ARGUMENT - KLEIN
1    ORAL ARGUMENT - KLEIN
2  issue.
3      The Second Circuit in its
4  language, in its decision, as I
5  read it, said that your common
6  law claims ought to be in
7  arbitration.
8      MR. KLEIN:  Yeah.
9      THE CHAIR:  And it knew your
10  claims are class action claims,
11  as the common law as well.
12      But, you know, was that
13  intended as a ruling on the
14  clause construction issue?
15      I mean, I don't think so.
16      MR. KLEIN:  No.
17      THE CHAIR:  But there was
18  this broad language, but then the
19  District Judge narrowed in
20  effect, as I understood it, what
21  the Second Circuit did and just
22  gave us, you know, the -- gave us
23  the clause construction issue
24  rather than interpreting the
25  Second Circuit's language more

Page 155

1    ORAL ARGUMENT - KLEIN
2  literally and broadly.
3      MR. KLEIN:  Yeah.  No,
4  that's right.  And nothing the
5  Second Circuit said has any, you
6  know, bearing on class
7  arbitrability.  It didn't address
8  class arbitrability or the class
9  nature of the claims at all and
10  it had no occasion to.  That was
11  never briefed.  That was never
12  raised.
13      When it came back to the
14  District Court, then the question
15  was live.  Then the question was
16  raised, what claims go to
17  arbitration and what would be
18  subject to class arbitration.
19      And the District Court,
20  specifically, ruled that, you
21  know, the class arbitrability
22  question was a question for the
23  Arbitrators.  And so here we are.
24      And I would say that the
25  District Court, also, concluded --

Page 156

1    ORAL ARGUMENT - KLEIN
2  and this is in the West Law, you
3  know, recording or printout of
4  the decision at Page 12.
5      The District Court, also,
6  noted that the clause is silent
7  and it used the word "silent" on
8  the class arbitrability issue.
9      So, you know, to the extent
10  that there are clues in the case
11  law that would implicate the
12  Stolt-Nielsen or Lamps Plus
13  matters, you know, they all sort
14  of point in the same direction.
15      So, you know, just returning
16  to the slides maybe, if I could
17  speak to Slide 7.
18      Just some of the basics --
19  some of these we covered, but just
20  some of the basic principles that
21  emerge from Stolt-Nielsen that I
22  think are undisputed, but that
23  arbitration is a matter of consent,
24  not coercion.  But the Arbitrators
25  must give effect to the contractual

Page 157

1    ORAL ARGUMENT - KLEIN
2  rights and expectations of the
3  parties and that a class arbitration
4  fundamentally changes the nature
5  of the arbitration.  It removes
6  the possibility of lower cost,
7  great efficiency and speed.
8      Instead of a single dispute
9  between parties to a single
10  agreement, you have many disputes
11  between hundreds or perhaps
12  thousands of parties.
13      There's not the same
14  presumption of privacy and
15  confidentiality, according to the
16  Supreme Court.
17      There's, you know,
18  adjudication of absent party
19  rights and they're exponentially
20  higher stakes.
21      And so, for all those
22  reasons, right, the Court has
23  ruled a couple of times that you
24  can't just presume based on, you
25  know, presumptuous canons of

40 (Pages 154 - 157)

ORAL ARGUMENT - KLEIN

1  ORAL ARGUMENT - KLEIN
2  construction or implications that
3  a party would have agreed to
4  fundamentally change the nature
5  of the arbitration they were
6  signing up for without some
7  expressed and affirmative consent.
8      And I would say, again, the
9  arbitration clause in Stolt-Nielsen
10  contained a supplemental agreement
11  that expressly incorporated the
12  class rules of the American
13  Arbitration Association.  That
14  was not enough to infer agreement
15  to class arbitrability.
16      And the Court even said to,
17  you know, infer agreement to class
18  arbitrability from an agreement
19  like that that is silent on the
20  issue was fundamentally at war
21  with the principle of consent.
22      And so, you know, the same
23  is true here.  You have a general
24  arbitration clause.  There is no
25  mention of class arbitration at all.

1  ORAL ARGUMENT - KLEIN
2  Nor could we with potentially
3  thousands of class members buying
4  and selling at different times.
5      The cases, as you read them,
6  never do that, right.  The Courts
7  never go back and say, well, what
8  was the time -- you know, the
9  understanding at the time.
10      They just say, you know, these
11  are the universal principles by
12  which we interpret arbitration
13  clause or arbitration contracts.
14      THE CHAIR:  But really a
15  question on that.  I mean, two
16  things.
17      I mean, I think, Respondents
18  argued in their papers that
19  Claimants gave us that big corpus
20  of arbitration, of partial final
21  awards on clause construction,
22  Respondents said, well, you know,
23  you can't look at the ones that
24  are after the relevant time
25  period, after late 2010, I think.

1  ORAL ARGUMENT - KLEIN
2  And there's an incorporation of
3  general arbitral rules, not even
4  the class rules, just the general
5  international arbitral rules that
6  is common to all sort of standard
7  arbitration clauses.
8      Of course, those -- and we
9  should say that, Chair Moxley, one
10  of your questions yesterday was
11  what about the expectations of
12  the parties, when they bought
13  their shares, would that -- you
14  know, is that relevant.
15      And I would say, you know,
16  two things -- or I think your
17  question got to, do we need to
18  consider the law as it existed at
19  the time the parties bought their
20  shares.
21      And I would say two things.
22  No. 1, I don't think we need to
23  do some sort of originalist
24  analysis and place ourselves back
25  at the time of the share purchase.

1  ORAL ARGUMENT - KLEIN
2      But if you look at
3  Stolt-Nielsen -- I mean, I pulled
4  it out, you know, and we were --
5  when I was thinking about this
6  issue.
7      I mean, it goes through in
8  -- it's at note forum 673.  It
9  goes through and it says that the
10  Panel's reliance on certain awards,
11  you know, wasn't good, because
12  they were after the time period.
13      And it's kind of suggesting,
14  you know, if you look at the
15  state of the law before and then,
16  it quoted the lawyers' briefs
17  that talked about Bazzle, which,
18  obviously, was the Supreme Court
19  decision before Stolt-Nielsen,
20  right?
21      MR. KLEIN:  Right.
22      THE CHAIR:  And they quoted
23  the lawyers as saying, look, the
24  class action world pre-Bazzle was
25  no class arbitration and after

41 (Pages 158 - 161)

ORAL ARGUMENT - KLEIN

1  Bazzle, it's class arbitration.
2  So, I mean, that led to the
3  question of, you know, don't we
4  have to look at -- well, you
5  know, you had Bazzle, you
6  apparently had Stolt-Nielsen,
7  whatever they mean, right?
8  I mean, Bazzle doesn't tell
9  you how to interpret a document.
10 It's just the North Carolina law
11 said, if I remember right, you
12 know, it's for the Arbitrator,
13 right.
14 But don't you have to kind
15 of look at and say the class
16 action rules were there in late
17 2010 and Bazzle was there and
18 apparently, you know, Stolt-Nielsen
19 was earlier in the year?  And
20 these are sophisticated lawyers.
21 So that's part of the world.
22 What that means I don't know.
23 But that's the question we posed.
24 MR. KLEIN:  Yes.  So two

ORAL ARGUMENT - KLEIN

1  things on that, Chair Moxley.
2  One is that critically
3  Stolt-Nielsen was there, right.
4  And that applies to both parties.
5  It's not Respondents and
6  Claimants, you know, potential
7  purchasers.  Both would have been
8  aware, you know, aware of that.
9  And the individual Claimants
10 here purchased at multiple times
11 throughout the period.  All the
12 purchases happened sort of post
13 Stolt-Nielsen.
14 And so, you know, it's just
15 -- none of the cases sort of go
16 and say, okay, well, when were
17 the particular purchases, right,
18 and what was the state of this
19 law?  For this purchase, it was
20 this.  For that purchase, it was
21 that.
22 They're articulating general
23 principles that have sort of,
24 presumptively, always been there.

ORAL ARGUMENT - KLEIN

1  I mean, I think Lamps Plus
2  even says that it's, basically,
3  that -- you know, its reasoning
4  flows directly from Stolt-Nielsen.
5  So I don't think that it
6  makes sense to try to say, well,
7  there would have been one rule in
8  2010 and that's radically
9  different from the rule in 2020.
10 I think Stolt-Nielsen -- in
11 fact, the clause that it dealt
12 with that incorporated the AAA
13 class rules, I think, was from
14 the '50s.  And the case didn't go
15 back and say, alright, what were
16 the assumptions in the '50s, right?
17 I mean, these are general
18 rules of how you interpret
19 arbitration agreements.  And I
20 think that's just how we have to
21 deal with them.  That's, certainly,
22 how the cases have dealt with them.
23 THE CHAIR:  Right.  I mean,
24 you make a good point.  That is

ORAL ARGUMENT - KLEIN

1  kind of mind boggling, as to how
2  one could deal with it.
3  On the one hand, one can say,
4  okay, in, you know, the fall --
5  in late 2010 when these documents
6  were apparently -- you know, when
7  the receipt -- when the deposit
8  agreement and receipt were written,
9  what was the intent, right.  And
10 other parties come in.
11 I don't know whether you
12 have to look at when the individual
13 shareholder who comes in later.
14 I just -- it would be interesting
15 if there's an issue there.
16 But if to the extent you're
17 saying, how does the landscape
18 affect the intent of the document,
19 then you'd look at it then,
20 right, and you'd say -- I mean, I
21 don't know if that's the right
22 question.  But that could be the
23 right question.
24 What was the intent when

Page 166

ORAL ARGUMENT - KLEIN
1
2 the document is written and what
3 is the relevance of this landscape,
4 whether it's, you know, Bazzle,
5 Stolt-Nielsen, you know, any
6 prior arbitration awards, if the
7 Court's, you know, footnote is
8 kind of a clue, you know, as of
9 that time in 2010, right?
10      I mean, what do they tell
11 us as to what the smart lawyers
12 on both sides of these -- of
13 these agreements would have
14 intended?
15      I mean, isn't that the
16 question?
17      MR. KLEIN:  Yeah, I think
18 that could be a question.
19      But, I mean, again, the
20 principles that we're dealing
21 with here have been dealt with
22 the courts as kind of, you know,
23 universal and ever, you know,
24 ever applicable.
25      I mean, you know, even under

Page 167

ORAL ARGUMENT - KLEIN
1
2 Stolt-Nielsen, you need an
3 expressed affirmative, you know,
4 consent to arbitrate.  I mean,
5 that's the whole point of that.
6      THE CHAIR:  But that's your
7 question, right?
8      MR. KLEIN:  Well but --
9      THE CHAIR:  You know, I
10 think, because there -- and even
11 Stolt-Nielsen, I mean, it's
12 almost a very limited decision,
13 because there the parties as to
14 later cases reflected that the
15 lawyers had -- in effect, the
16 parties had stipulated that there
17 was no intent.
18      Indeed, the Court went out
19 of its way to say, we're not
20 construing -- I mean, I have to
21 pull out the party language.
22      He says, we have no occasion
23 to decide what contractual basis
24 may support a finding, you know,
25 that the parties agree to authorize

Page 168

ORAL ARGUMENT - KLEIN
1
2 -- because, you know, we're not
3 even considering the intent here
4 because it's stipulated that
5 there was no intent.
6      MR. KLEIN:  Yeah.  And that
7 would simplify the Court's task
8 in that case, certainly.
9      But it doesn't change kind
10 of the underlying principle.  I
11 mean, if a clause is silent on
12 class arbitration, that's silent.
13 And that was the principle
14 articulated.
15      And the later cases all
16 interpret Stolt-Nielsen that way,
17 you know.  It doesn't depend on
18 there being a stipulation.  The
19 question is just whether a clause
20 is silent or whether it's
21 ambiguous.
22      And, you know, these are --
23 the rules are very clear on that
24 and the principles are, you know,
25 very basic.

Page 169

ORAL ARGUMENT - KLEIN
1
2      But, luckily, again,
3 happily here we don't have a
4 clause that puts us close to any
5 of these lines.
6      So, in Lamps Plus -- I don't
7 want to belabor it because I know
8 it's come up in the discussion
9 already.
10      A couple points I want to
11 point out.
12      Obviously, Lamps Plus
13 clarified that -- just silence is
14 not sufficient to infer consent.
15 Ambiguity is not sufficient to
16 infer consent.
17      And it, actually, rejected
18 the application of, you know, a
19 canon of construction contra
20 preferendum.
21      It rejected the waiver of a
22 jury trial, which is one of the
23 things that, you know, Claimants
24 identify here rejected that.
25      That was not enough to create a

43 (Pages 166 - 169)

Page 170

ORAL ARGUMENT - KLEIN

1      ORAL ARGUMENT - KLEIN
2  presumption of agreement to class
3  arbitrability.
4      And it also had a provision
5  stating -- and this I found
6  really striking -- that the
7  arbitration clause in that case
8  had a provision stating that the,
9  quote, "arbitration shall be in
10 lieu of any and all lawsuits or
11 other civil legal proceedings."
12     And so, even that broad
13 language, you know, much broader
14 and, you know, more expansive
15 than the standard clauses from
16 the AAA or JAMS or, certainly, in
17 our clause, you know, that also
18 wasn't enough.
19     So I don't think there's any
20 way to square Claimant's position
21 on the language here with the
22 actual language that Stolt-Nielsen
23 and Lamps Plus were dealing with,
24 not to mention all the other cases.
25     I mean, if you accept

Page 171

1      ORAL ARGUMENT - KLEIN
2  Claimant's position, these two --
3  Lamps Plus and Stolt-Nielsen would
4  have had to come out the other way.
5      ARBITRATOR NARWOLD:  Let me
6  just add -- I want to make sure I
7  see where you're referring to.
8      I'm looking at Pages 11 and
9  12 -- Slides 12 and 13.  I'm
10 sorry, Slide 12 and 13 on Lamps
11 Plus.
12     I see the language about
13 the jury trial waiver.
14     You made another point about
15 the breadth of the -- I thought
16 you did about the breadth of the
17 arbitration clause.  I thought
18 that's what was in the box on
19 Slide 12.  Maybe I'm misreading it.
20     MR. KLEIN:  Let me just see.
21 I was, actually, on Slide 10.
22     And I apologize if I didn't
23 call it out.  And I can make it
24 implicit.
25     So, yes, it's on 12, but it's

Page 172

1      ORAL ARGUMENT - KLEIN
2  also on 10 and that's exactly
3  from the Ninth Circuit decision.
4  So that lays out the various
5  provisions.  And so that would be
6  from 701 Federal Appendix 670 at
7  672.
8      ARBITRATOR NARWOLD:  But I
9  guess what I'm trying to do is
10 make sure the language -- so the
11 language that says, "arbitration
12 shall be in lieu of any and all
13 lawsuits or other civil legal
14 proceedings" -- I guess, there is
15 a close quote there.
16     But that's significant why?
17 I am just trying to understand.
18     MR. KLEIN:  Well, just
19 because it's incredibly, you know,
20 broad.  It doesn't just say, "any
21 and all claims."  It talks about
22 any and all lawsuits or other
23 civil legal proceedings.
24     I mean, to us, I think, you
25 know, that language is broader

Page 173

1      ORAL ARGUMENT - KLEIN
2  and could more readily -- its
3  reference to other legal
4  proceedings could be read to
5  encompass class claims perhaps as
6  a type of proceeding or a version
7  of a proceeding, broader than our
8  language here, and that was not
9  enough in Lamps Plus.
10     ARBITRATOR NARWOLD:  That
11 seems to be more kind of going in
12 the other direction.
13     What that is really saying
14 is there no -- everything has to
15 be arbitrated.  No matter what it
16 is, you got to arbitrate it.  But
17 that really doesn't help us
18 understand the other question,
19 which is whether a class
20 proceeding is appropriate, right?
21     MR. KLEIN:  No, I don't
22 read it this way.  I mean, we
23 have, you know, "any claim," you
24 know, "cause of action or
25 controversy" has to go to

44 (Pages 170 - 173)

Page 174

ORAL ARGUMENT - KLEIN

1   ORAL ARGUMENT - KLEIN
2   arbitration. Same import,
3   everything should be arbitrated
4   and the question is what comes
5   in, you know, without any claim
6   or controversy -- or controversy
7   claim or cause of action.
8       And it's just that, you know,
9   the Lamps Plus language went
10  beyond that. So the Lamps Plus
11  language, if you look at Slide 12,
12  had "any and all disputes, claims
13  or controversies arising out or
14  relating to this agreement."
15      And then there was an
16  additional provision that said
17  it's going to be in lieu of any
18  and all lawsuits and other civil
19  legal proceedings.
20      ARBITRATOR NARWOLD: I see
21  what you're saying.
22      MR. KLEIN: Yeah. So the
23  breadth of the civil legal
24  proceedings idea and any and all
25  lawsuits idea, right, is -- you

Page 175

1   ORAL ARGUMENT - KLEIN
2   know, if anything, that would give
3   you a stronger basis to argue,
4   well, it replaces those types of
5   legal proceedings.
6       So, you know, maybe they
7   envision the same types of legal
8   proceedings applying in arbitration
9   and the Court said, no, you can't
10  assume based on that language
11  that the --
12      MR. LIEBERMAN: What's the
13  cite for that?
14      What's the cite where the
15  Court said you can't rely on that
16  language, please?
17      You're absolutely
18  misconstruing. It said they
19  deferred to the state law and
20  they did not actually address the
21  language in the case. So please
22  give the cite.
23      THE CHAIR: Mr. Lieberman,
24  hold it and you will have a
25  chance for rebuttal.

Page 176

1   ORAL ARGUMENT - KLEIN
2       MR. KLEIN: Yeah. So the
3   point is that was the underlying
4   language at issue.
5       You're right. They deferred
6   to the Ninth Circuit's
7   interpretation of that language
8   as ambiguous, but that was the
9   language before the Court. That's
10  the point.
11      And the cite is, as I said
12  before, the cite for the language
13  is in the Ninth Circuit decision
14  that the Supreme Court reversed.
15  It's 701 Federal Appendix 670 at
16  672.
17      ARBITRATOR NARWOLD: Let me
18  try to sharpen the pencil on
19  something you said earlier, just
20  to make sure I understand your
21  point.
22      You had said, I think, and
23  I agree with you that Lamps Plus
24  talks about you can't -- you
25  know, ambiguity is not enough,

Page 177

1   ORAL ARGUMENT - KLEIN
2   right. In fact, it rejects that.
3       And then you said after
4   that that rules of construction
5   don't apply.
6       And, I guess, I get the fact
7   that the contra preferendum or
8   I'll call it a rule or construction,
9   but to me it's more of a default
10  rule. However you look at that,
11  you can't use that, right. I get
12  that. You can't look at an
13  ambiguous contract and apply it
14  against the drafter.
15      But does that mean all rules
16  of construction -- so, if you
17  have a rule that says words are
18  going to be used in their
19  ordinary sense, specialized words
20  are to be used as used in the
21  trade -- I mean, are we not allowed
22  to any use any rules of construction
23  when we look at -- if we do a
24  textual analysis here?
25      MR. KLEIN: Yeah. So, Mr.

45 (Pages 174 - 177)

ORAL ARGUMENT - KLEIN

1    ORAL ARGUMENT - KLEIN
2    Narwold, I would never say "never."
3        And so I'm not saying, you
4    know, they're absolutely off
5    limits.  But I think in a legal
6    realm where the standard is there
7    has to be affirmative agreement
8    to arbitrate, we should be very
9    suspicious of canons of
10   construction, because, basically,
11   it's like a tacit admission that
12   there is an ambiguity that you
13   have to resolve.
14       Does it include this
15   category or does it not?
16       It doesn't say, so we have to
17   resort to a canon of construction.
18   So I don't think we're
19   saying it could never apply or,
20   you know, there's no canon that
21   could ever be, you know, applied
22   in any situation.  But I think we
23   would have to be very very
24   careful with it and, I think, it's
25   very clear that the expressio

1    ORAL ARGUMENT - KLEIN
2    unius canon here doesn't get you
3    there.
4        And, actually, you know,
5    I'm mindful of the time.  But,
6    you know, I did want to, you
7    know, shift to sort of addressing
8    Claimant's positions and arguments.
9        The slide sort of spelled
10   them out, but I did want to be
11   able to get to the piece of it.
12   It starts at Slide 15.
13       So Claimants, obviously,
14   rely on Jock II.  That's sort of,
15   I think, fair to say the name
16   authority that they invoke as a
17   basis for the implicit consent
18   idea and a lot of the other
19   points that they make.
20       You know, it just -- they
21   are not framing the Jock II
22   analysis accurately.  In the
23   reply brief, you can see on the
24   left-handed side of the slide,
25   you know, Claimants contend that

1    ORAL ARGUMENT - KLEIN
2    Jock II holds that an arbitration
3    agreement may be interpreted to
4    include an implicit consent to
5    class procedures based on an
6    incorporation of the AA rules as
7    clear and unmistakable evidence
8    of intent.
9        If you go back and look at
10   Jock II, that's actually a sort
11   of amalgam of two different quotes
12   on two different principles, you
13   know, from different parts of the
14   opinion pages apart.
15       So what the Jock II on the
16   right of the slide clarifies what
17   the Court actually said is that
18   the issue is whether the
19   incorporation of the AA rules
20   reflects an intent that an
21   Arbitrator should decide the
22   question of class arbitrability.
23   That's the clear and unmistaken
24   evidence of intent.
25       The intent to delegate this

1    ORAL ARGUMENT - KLEIN
2    issue to the Arbitrator, not the
3    intent to agree to class
4    arbitration by incorporation of
5    those rules.
6        And then the, you know, the
7    arbitration agreement interpreted
8    to include implicit consent.
9    That's a completely -- that's a
10   separate discussion, you know,
11   two to three pages later.  Those
12   are two different points that
13   Claimants are sort of trying to
14   allied.
15       And Jock II, actually,
16   clearly cabined its holding.  So,
17   if you look, there's some excerpts
18   on Slide 16.  Jock II says, in
19   Jock I, we had no occasion to
20   decide whether the Arbitrator got
21   it right in allowing class
22   arbitrability.
23       And the focus of the inquiry
24   is whether the Arbitrator had the
25   power based on the parties'

46 (Pages 178 - 181)

Page 182

ORAL ARGUMENT - KLEIN
1
2  submission to reach that issue,
3  quote, "not whether the
4  Arbitrator correctly decided that
5  issue."
6      So there's nothing in Jock
7  II that speaks to how the clause
8  should be interpreted or the
9  rules or, you know, canons or
10  principles by which you interpret
11  the clause.
12      It was another one of these
13  like Sappington, like Oxford
14  Health.  It's another one of these
15  classic cases that just addresses
16  the standard for vacatur of a
17  Tribunal ruling on this issue.
18      And there you can see also,
19  you know, further limiting
20  language on the scope of Jock II
21  that the Court -- that another
22  court -- the District of
23  Massachusetts case, which we
24  submitted with the slides, you
25  know, recognized at the bottom

Page 183

ORAL ARGUMENT - KLEIN
1
2  there of Slide 16.
3      The same is true of Oxford
4  Health.  So, on the next slide,
5  Slide 17, you know, in Oxford
6  Health, the parties agreed that
7  the Arbitrator should decide
8  whether their contract authorized
9  class arbitration.  Here that was
10  a contested issue.
11      And, you know, still the
12  issue in Oxford Health was really
13  whether the Arbitrator -- you know,
14  the standard of review for an
15  Arbitrator's decision on this
16  issue.  It did not substantively
17  review the clause at issue.
18      And, in fact, there are
19  multiple references in the opinion
20  and, certainly, in Justice Alito's
21  concurring position that if they
22  were to actually look at the
23  merits of the clause, there's --
24  you know, it seems pretty clear
25  that the Court would have come out

Page 184

ORAL ARGUMENT - KLEIN
1
2  differently.
3      And, in any event, you know,
4  certainly, Jock II establishes
5  that the Tribunal has a lot of
6  leeway in this regard.
7      But even under the cases
8  that have been cited, an award on
9  class arbitrability can still be
10  vacated, if it's manifest
11  disregard of the law.
12      And I think that, you know,
13  is heightened in a situation
14  where the parties did not agree
15  that it would be a matter for the
16  Arbitrators to decide.
17      Moving on to Slide 18,
18  Claimants make arguments about
19  the District Court saying that
20  the District Court found implicit
21  consent to class arbitration.
22      Again, we take issue with
23  that.  We think properly read the
24  District Court concluded that the
25  clause is silent on class

Page 185

ORAL ARGUMENT - KLEIN
1
2  arbitrability and the only thing
3  the District Court decided was
4  that that is an issue for this
5  Tribunal to decide.  It didn't
6  make a ruling or intimation one
7  way or the other.
8      ARBITRATOR NARWOLD:  This
9  is saying your Jock II argument,
10  the same as --
11      MR. KLEIN:  Yes, and same --
12      THE STENOGRAPHER:  I'm
13  sorry.  You're talking over each
14  other.  I didn't get what the
15  Judge said.  I'm sorry.
16      MR. KLEIN:  I'm sorry, Mr.
17  Narwold, please.
18      ARBITRATOR NARWOLD:  We
19  spoke over each other.
20      The argument that's here
21  being made on Page 18 is the same
22  Jock argument that you made on
23  Slide 15 and the same in Sappington,
24  that they're conflating authority
25  to, you know, the question of

47 (Pages 182 - 185)

Page 186

1    ORAL ARGUMENT - KLEIN
2  arbitrability versus the question
3  of class action.
4    And your view is that they're
5  just conflating those two
6  consequences and they're doing so
7  improperly is how I read those
8  slides.
9    MR. KLEIN:  Yes, I think,
10  they're improperly conflating
11  those two issues and they're --
12  but the way that the quotes and
13  the principles are presented in
14  the brief, it just -- we wanted
15  to present the slides just to
16  unpack them so that the Panel
17  would have clarity on where the
18  text --
19    ARBITRATOR NARWOLD:  Let me
20  get to sort of my fundamental
21  question, the same thing I asked
22  the other side.
23    What do I do with the sentence
24  in Jock II where an arbitration
25  agreement may be interpreted to

Page 187

1    ORAL ARGUMENT - KLEIN
2  include implicit consent?
3    How do I square that with
4  Lamps Plus, you know, which talks
5  about, you know, for lack of a
6  better word expressed agreement
7  and how do I make those two work?
8    MR. KLEIN:  Yeah.  So I do
9  think -- just to be frank, it's a
10  great question, but I do think
11  there is some tension there.
12    You know, Lamps Plus is the
13  Supreme Court and Jock II is the
14  Second Circuit.  So whatever the
15  Second Circuit meant, it's got to
16  be interpreted and applied
17  consistent with Lamps Plus and
18  Stolt-Nielsen and the other
19  Supreme Court cases.
20    So you know -- and, again,
21  the Eighth Circuit case, the
22  Catamaran case that we cite kind
23  of addresses it.
24    But, again, it's one line
25  in indict that's in an opinion

Page 188

1    ORAL ARGUMENT - KLEIN
2  where it's reviewing a Tribunal's
3  decision.
4    So one way to understand it,
5  you know, could be that they're
6  talking about -- you know, in
7  reviewing the Tribunal's decision,
8  they're sort of not at liability
9  -- you know, there's sort of not
10  -- you know, there's a very
11  deferential standard of review
12  and it should be understood in
13  that context.
14    I'll go back to what I said
15  before, which is, you know, if
16  implicit consent is a valid
17  concept, it would have to be
18  applied only in situations where
19  there's no silence and no ambiguity.
20  And so I would think it would be
21  a very very high bar to sort of,
22  you know -- you would have to
23  already conclude that there's no
24  ambiguity on the issue before you
25  say, well, they didn't expressly

Page 189

1    ORAL ARGUMENT - KLEIN
2  consent, but they implicitly
3  consented.
4    And so, to me, that would
5  be something like a clause that
6  does not say, we consent to class
7  arbitration, but then later refers
8  to if the arbitration is under
9  this section, you know, proceed
10  on a class-wide basis.  They
11  would have to proceed in the
12  following manner or something
13  hike that.
14    ARBITRATOR NARWOLD:  Okay.
15  Fair enough.
16    MR. KLEIN:  Okay.  And then
17  the last sort of you, you know, topic
18  with respect to Claimant's
19  position we just want to address
20  is this five factor test.  So
21  they present it as kind of a five
22  factor test.
23    You know, no court, to our
24  knowledge, has ever articulated
25  that test, much less applied it.

48 (Pages 186 - 189)

ORAL ARGUMENT - KLEIN

1
2  It's not clear where that test is
3  coming from.
4       There's no citation to a
5  single court decision where the
6  factors were applied in this way
7  and resulted in an arbitration
8  award.
9       And, ultimately, they are,
10  you know, contrary to Supreme
11  Court precedent and create all
12  kinds of problems, you know, as
13  some of which we've explained and
14  some of which I'll get to in a
15  minute.
16       But, I think, if you look
17  at each one of the factors, they
18  can't do the work that Claimants
19  are asking them to do.
20       So the first factor, as we
21  lay out in Slide 21, is
22  incorporation of AAA or ICDR
23  rules.  And I think we've sort of
24  been over this.
25       You know, the Supreme Court

ORAL ARGUMENT - KLEIN

1
2  has already said that you can't
3  infer, you know, agreement to
4  class arbitrability or class
5  arbitration from the mere agreement
6  to arbitrate.
7       And in Stolt-Nielsen, there
8  was an actual incorporation of
9  not only rules but class rules
10  and that didn't carry the day.
11       And then in the middle
12  bullet on the right-hand side of
13  the slide, I would just say the
14  AAA class rules actually say
15  this.  It's not just us saying
16  this.  It's the AAA saying this.
17  Quote, "In construing the
18  applicable arbitration clause,
19  the Arbitrator shall not consider
20  the existence of these supplementary
21  rules or any other rules to be a
22  factor either in favor or against
23  permitting the arbitration to
24  proceed on a class basis."
25       You know, Claimants will

ORAL ARGUMENT - KLEIN

1
2  say it's not the existence of the
3  rules.  It's the incorporation of
4  the rules.
5       But in this context, that's
6  a distinction without a difference.
7  You know, any arbitration clause,
8  if it incorporates -- commonly
9  incorporates rules, the standard
10  JAMS clause incorporates its
11  rules.  The standard AAA clause
12  incorporates its rules.
13       If this were right, that
14  would literally flip the
15  presumptions that underlie all
16  these arbitration cases including
17  the Supreme Court cases on their
18  head.  Suddenly the presumption
19  would not be bilateral arbitration.
20  It would be class arbitration in
21  every case, because every
22  arbitration has to be governed by
23  some rules and, you know, virtually
24  all of them, to our understanding,
25  provide for some sort of class

ORAL ARGUMENT - KLEIN

1
2  mechanism in appropriate
3  circumstances.
4       So that just can't be the
5  correct presumption.
6       ARBITRATOR NARWOLD:  There
7  are some cases that seem to support
8  this point of view.  I won't say
9  they're -- well, there seem to be
10  some cases.
11       I take it your view is that
12  they're just outliers, they're
13  wrong and they're not consistent
14  with Lamps or Stolt.
15       MR. KLEIN:  That's correct.
16  That's correct.
17       I think, you know, some of
18  those cases -- you know, I don't
19  know exactly.  I can't tick and
20  tie every last one of them.  But
21  I think a lot of them are also
22  dealing with other issues, right.
23  They might have been cited for
24  this proposition, but some of
25  them -- I think, we're reviewing

49 (Pages 190 - 193)

ORAL ARGUMENT - KLEIN
1
2  Tribunal decisions.  Some we're
3  dealing with other types of cases
4  that, you know, were like labor
5  cases where the class or collective
6  mechanism is sort of baked into
7  the cause of action, you know, by
8  necessity.
9       THE CHAIR:  Let me just jump
10 in for a minute and forgive me,
11 Counsel.
12      MR. KLEIN:  Yes.
13      THE CHAIR:  I've been remiss
14 in not remembering that while our
15 human ability as lawyers is extended
16 by being amidst processes like this
17 and interesting discussions,
18 Court Reporters are different.
19 They're subject to more human
20 limitations.
21      And I am going to ask you,
22 Mr. Klein -- let's go off the
23 record.
24      (There is a discussion off
25 the record.)

1       ORAL ARGUMENT - KLEIN
2       (Recess taken 12:58 to
3  p.m.)
4       MR. KLEIN:  Let's go back on
5  the record.
6       THE CHAIR:  Thank you.
7       MR. KLEIN:  Thank you, Chair
8  Moxley.  Just a handful of
9  additional points and I'll try to
10 be brief, as we discussed.
11      So, you know, the second
12 factor in Claimant's proposed
13 five factor test is the expressed
14 waiver of immunity from any legal
15 process for the giving of any
16 relief.
17      So that by its terms -- and
18 it's in Section 24 of the
19 arbitration agreement.  It's also
20 Section 7.07.  It also appears
21 there in the ADS agreement.
22      But if you look at it by
23 its terms, you know, all that's
24 doing is, basically, saying that
25 it relates to waiver of immunity

1       ORAL ARGUMENT - KLEIN
2  for relief and enforcement.
3       It's basically assuring
4  investors that if they bring an
5  action in arbitration or in
6  federal court, you know, that
7  they will be -- certainly, if
8  they bring an arbitration, that
9  they will be able to collect on a
10 judgment.
11      You see the waiver of
12 immunity language and then the
13 clause ends that, "hereby
14 irrevocably and unconditionally
15 waives and agrees not to plead or
16 claim such immunity and consents
17 to such relief and enforcement."
18      So, I mean, by its terms,
19 it's an enforcement provision,
20 basically, ensuring investors
21 that we're not -- you know, the
22 company is not going to claim
23 sovereign immunity or some other
24 immunity from relief that may be
25 validly obtained by shareholders.

1       ORAL ARGUMENT - KLEIN
2       It doesn't even mention class
3  arbitration, obviously.  And so
4  there's just no way to infer an
5  agreement to class arbitrability,
6  based on that provision alone.
7       And just in that connection --
8  you know, the question here is
9  not whether the company has some
10 immunity to class arbitration
11 that it's waiving.
12      The question is whether,
13 you know, Respondents agreed to
14 it and, you know, affirmatively
15 agreed to it.  And, clearly, they
16 did not.
17      The next slide is Slide 24
18 addresses Factor 3 in Claimant's,
19 you know, proposed five factor
20 test.  That goes to the broad
21 language, the broad scope, any
22 controversy claim or causative
23 action.
24      I think we've already
25 addressed that.  So I won't belabor

ORAL ARGUMENT - KLEIN

1    it. That's standard language that
2    tracks any standard arbitration
3    clause including those by the
4    AAA, you know, put out by the AAA
5    and JAMS.
6        In the briefing there was
7    focus on the use of the word
8    "controversy" as a term of art
9    somehow referring to class actions.
10    That's just not true.
11        "Controversy" is used as a
12    synonym for case or claim or
13    cause of action throughout the
14    law and throughout the federal
15    rules.
16        You know, a class action is
17    not a, you know, a controversy.
18    It's a way of adjudicating a
19    controversy, as Federal Rule of
20    Civil Procedure 23 itself makes
21    clear, in its use of that term.
22        There are, also, other
23    absurdities that would result if
24    you conclude that "controversy"

ORAL ARGUMENT - KLEIN

1    refers to class actions.
2        We have one on the bottom of
3    Slide 24 that, you know, the Federal
4    Rule Procedure 26 provides for
5    discovery relating to amounts in
6    controversy.
7        It wouldn't make sense to
8    construe that that only applies
9    to class actions.
10        The next slide, just moving
11    quickly here, Slide 25, Factor is
12    the expressio unius principle. I
13    think we've discussed that. So I
14    won't belabor it.
15        But it refers to the expressed
16    inclusion of consequential damages
17    in jury trials.
18        Again, these exclusional
19    consequential damages and jury
20    trials in no way mention class
21    actions or class arbitrations.
22    They're exclusions of, you know,
23    certain very specific things.
24    But it would nonsensical to assume

ORAL ARGUMENT - KLEIN

1    that based on those exclusions
2    Respondents have thereby agreed
3    to everything else that would be
4    incident to federal litigation.
5        We've already determined, I
6    think, in this case that sort of
7    federal-style discovery depositions,
8    a lot of other things that occurred,
9    federal litigation are not
10    appropriate in arbitration.
11        And so it proves way too
12    much to, basically, say, well,
13    you've, you know, excluded these
14    things, so, therefore, you must
15    have agreed to everything else
16    including class actions. You
17    know, that can't be the case and
18    it can't be the rule.
19        The other thing, some of
20    this -- the exclusion of the jury
21    trial and the waiver of immunity
22    are also just necessary enabling
23    positions to enable arbitration.
24    Arbitrations, obviously, don't have

ORAL ARGUMENT - KLEIN

1    juries and, you know, you would
2    have to waive sovereign immunity
3    to go to arbitration, you know,
4    likely.
5        And so, you know, some of
6    these are just natural incidence
7    to the fact of agreeing to
8    arbitration. They don't say
9    anything about class arbitrability.
10        And the last factor is the,
11    you know, universal versus
12    bilateral language, you know. I
13    think we've addressed that, you
14    know.
15        The language is bilateral
16    including in the provision
17    regarding litigation -- you know,
18    arbitration involving more than
19    two parties. That's a standard
20    provision in any arbitration
21    agreement precisely because you
22    can never predict in advance how
23    many parties might be involved in
24    such a proceeding or what their

51 (Pages 198 - 201)

Page 202

ORAL ARGUMENT - KLEIN

1   positioning might be relative to
2   each other and, therefore, whether
3   they'd be able to align themselves
4   up in two groups or, you know,
5   whether they would be able to
6   agree on an Arbitrator.
7        So that's a standard clause.
8   That's in every arbitration
9   agreement.  And it is totally
10  consistent and, in fact, reinforces
11  this idea that this clause
12  contemplates bilateral
13  arbitration.
14       THE CHAIR:  Let me just ask
15  a quick question here and I do
16  intend to be quick.
17       MR. KLEIN:  Yes.
18       THE CHAIR:  What that
19  provision means is a different
20  question, right?
21       And we fully talked about
22  different views and what it means
23  or doesn't view.
24       But I'm not aware of a

Page 203

ORAL ARGUMENT - KLEIN

1   basis for saying that that's a
2   standard provision.
3        MR. KLEIN:  Oh, I mean, in
4   our experience, it's quite common,
5   you know.  I'm not representing
6   this in every single agreement.
7   But I do think it's relatively
8   common to have a provision like
9   that or to make some allowance
10  for the fact that -- you know,
11  the classic bilateral arbitration
12  agreement, you know, has each
13  party appointing an Arbitrator,
14  but then you always have to
15  account for the fact, well, what
16  if there's more than two, and
17  that's all that's doing and it's
18  not unusual.
19       THE CHAIR:  Thank you.
20       MR. KLEIN:  Okay.  I think,
21  you know, I'll end here.  I mean,
22  that brings us to the end of the
23  slide.
24       Hopefully, I've addressed

Page 204

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1   the Panel's questions, you know.
2        Again, just to sum up, the
3   standard is affirmative consent
4   to class arbitrability and there's
5   nothing in the clause here or the
6   law that supports such a finding
7   here.
8        So I thank the Panel for the
9   time and attention and the
10  questions.
11       I reserve the right to
12  respond to Mr. Lieberman's
13  rebuttal, if needed.  But I'll
14  wrap up here.
15       Thank you.
16       THE CHAIR:  Okay.  Thank you,
17  Mr. Klein.
18       Mr. Lieberman.
19  REBUTTAL ORAL ARGUMENT BY MR. LIEBERMAN
20       MR. LIEBERMAN:  Yes, thank
21  you, Tribunal Chair Moxley.
22       There was a very telling
23  exchange during Mr. Klein's
24  presentation where he walked

Page 205

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1   right into the question.
2        ARBITRATOR NARWOLD:  Speak
3   up just a little.
4        MR. LIEBERMAN:  Yes.  There
5   was a very telling exchange in
6   Mr. Klein's presentation.  He
7   argued -- these are his words --
8   that the carveout for federal
9   securities law claims is a
10  reference to typical class action
11  claims.
12       And that is a carveout in
13  23A, "for any such controversy,
14  claim or cause of action brought
15  by a party hereto against the
16  company relating to or based on
17  the provisions of the federal
18  securities laws."  That is the
19  "any such controversy claim or
20  cause of action."  He said that's
21  typical class action types of cases.
22       Well, that same language is
23  in 23A, "any controversy, claim
24  or cause of action brought by any

52 (Pages 202 - 205)

Page 206

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1 party to against the company
2 arising out or relating to the
3 shares."
4      That is typical class
5 action language.  It came right
6 from his mouth and then it's
7 right in 23A and then when
8 Tribunal Chair Moxley pointed
9 that out to him, he tried to walk
10 it back.  But, no, that is
11 exactly the case.
12      And, in fact, we know that
13 that kind of language refers to
14 it.  Because in Wells Fargo
15 Advisors versus Sappington, the
16 Court applied the expressio unius
17 principles in a case where they
18 quote, "the Tucker clause expressly
19 excludes from arbitration those
20 disputes that relate to
21 unemployment, insurance and
22 employee benefits.  These
23 exclusions reinforce our view
24 that the parties intended to let

Page 207

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1 an Arbitrator decide whether
2 class claims are arbitral."  And
3 that's a quote.
4      Here is how they apply the
5 expressio unius canon.  By
6 expressly foreclosing certain
7 proceedings from arbitration, the
8 parties in these cases strongly
9 imply that every other, quote,
10 "controversy or dispute remains
11 subject to arbitral resolution."
12 That is at 84 F 3d. 392, 396.
13 It's at 396.
14      Thereto the Second Circuit
15 said, "references to carving out
16 certain controversies or disputes
17 but leaving in others is a
18 reference to class action.
19      Now, yes, it was in a decision
20 of who decides arbitrability, but
21 it's a reference to class action.
22 That's what was said by Mr. Klein
23 when he talked about the carveout
24 for securities claims.  That's

Page 208

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1 what the Second Circuit on the
2 controversy or dispute says when
3 you carve out certain ones and
4 leaves the other controversy or
5 dispute, these are referenced to
6 class action claims.
7      And this brings me to my
8 second point on Lamps Plus.
9 Lamps Plus, specifically,
10 distinguished contra preferendum
11 from -- it said unlike, quote,
12 "contract rules that help to
13 interpret the meaning of a term
14 and thereby uncover the intent of
15 the parties."
16      Right there Lamps Plus is
17 distinguishing its holding on
18 contra preferendum from other
19 contract rules and that other
20 contract rule is expressio unius.
21 And we can see how it works from
22 Sappington and that is how it
23 works.
24      They carved out securities

Page 209

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1 claims and such securities claims
2 are typical class actions or
3 within that language and the same
4 language refers to other claims.
5      So that "any controversy,
6 claim or cause of action" relating
7 to the shares is huge here and it
8 is a reference to class claims.
9      Now, contract rules are in.
10 And any suggestion that contract
11 rules are out is -- has to address
12 that quote from Lamps Plus.
13      And we've heard a lot of
14 things about Lamps Plus in that
15 presentation.
16      And I have to say and I did
17 -- I admit at some point I got to
18 the point that I spoke up.  And I
19 apologize that I spoke up a little
20 quick.
21      But what I was hearing was
22 insane.  I was hearing an argument
23 that Lamps Plus adjudicated the
24 language.

25 (Pages 206 - 209)

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2        The majority of Lamps Plus
3    did not adjudicate the language
4    and you know it.
5        587 US at 182, the Court
6    said they were deferring to the
7    Ninth Circuit's conclusion of
8    ambiguity. The majority did not
9    address the language.
10       So, when Mr. Klein reads from
11   the language, he is misstating the
12   holding. He is misstating Lamps
13   Plus' ruling.
14       In fact, in Footnote 3, the
15   Court -- at 182/Footnote 3, the
16   Court expressly states that it
17   was not addressing the language
18   and instead it was Justice Kagan
19   in her dissent addressed the
20   interpretation of the contract.
21       Unlike them, the Court was
22   following its usual practice of
23   deferring to the ambiguity claim.
24       So Lamps Plus is not an
25   adjudication of the language

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    here. You know it. And I will
3    challenge -- I challenge anyone
4    to come back with me and say
5    anything different than at 182
6    and Note 3 all the Court did in
7    Lamps Plus was say, ambiguity is
8    the ruling, and that's it.
9        Similarly, there was an
10   argument made that Stolt-Nielsen
11   had decided the merits and the
12   meaning of what it means to
13   incorporate AAA rules. No, it
14   didn't.
15       The Panel -- literally the
16   quote -- and Tribunal Chair
17   Moxley took the language, quoted,
18   "the Panel had no occasion to
19   ascertain the parties' intention
20   in the present case, because the
21   parties were in complete agreement
22   regarding their intent," right.
23       So there was a stipulation
24   of silence and no agreement in
25   Stolt-Nielsen, a stipulation. And

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    the Court ruled on a stipulation.
3        So these PowerPoint slides
4    that try to compare the language,
5    you can just tear them up. Cause
6    that's not what the Court ruled.
7    It's just not. It's not even
8    close.
9        The Court said stipulation
10   over and over again. It said it
11   had no occasion to ascertain the
12   parties' intention.
13       So actually. Getting up
14   and there saying that's what the
15   Court rules, that's a misstatement
16   of law. It's a misstatement of
17   the law.
18       In fact, we had that telling
19   footnote in Stolt-Nielsen where
20   the Court was distinguishing
21   prior arbitration cases that were
22   pre-Bazzle -- pre-Bazzle, where
23   it was not common to have class
24   arbitration but post-Bazzle,
25   which is 2003, class arbitrations

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    are common.
3        Now, again, the Court did
4    not rule on what incorporation of
5    what the rules would mean, but
6    that footnote is an indication
7    that a reference to the
8    supplemental rules after Bazzle
9    from 2003 would be viewed
10   differently than the result in
11   Stolt-Nielsen. And that is such
12   indication.
13       But at the very least,
14   Stolt-Nielsen did not make a
15   ruling as to what incorporation
16   means.
17       I think the key point,
18   though, is that expressio unius
19   under Sappington is very much
20   alive.
21       Lamps Plus, it's a basic
22   contract rule and it's very much
23   alive.
24       And we have clauses here
25   that expressly carved out

54 (Pages 210 - 213)

Page 214

REBUTTAL ORAL ARGUMENT - LIEBERMAN
1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2  securities claims including
3  admittedly securities class
4  actions.
5      In fact, it was the securities
6  class action here that the Second
7  Circuit carved out.
8      So I think fair readings of
9  words that say "any controversy"
10  and "controversy" or "dispute,"
11  that Sappington speaks to just
12  that point.
13      Now, there was a --
14      ARBITRATOR NARWOLD:  Help
15  me -- if you go back to Slide 2
16  from Mr. Klein's presentation, he
17  has quoted on the left side of
18  that page the standard arbitration
19  clause from the international
20  rules.  And although there's not
21  a citation, I can tell you that
22  it is an accurate recitation on
23  what's on Page 8 of the
24  international rules and it says,
25  this is standard form clause.

Page 216

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2      ARBITRATOR NARWOLD:  That's
3  not really my question.
4      My question is not whether
5  they're common.  I agree in
6  certain context they're common.
7      But what he is saying is --
8  you know, if you are correct in
9  your view that the word
10  "controversy" and the incorporation
11  of the rules is all one needs,
12  then there really is no need to
13  have all this inquiry because
14  it's right in the standard clause.
15  And anytime you have a standard
16  clause, the Arbitrators don't
17  have to go through this exercise
18  that we're going through today.
19      MR. LIEBERMAN:  Well, there's
20  nothing on the AAA website that
21  says that this standard
22  arbitration clause would not
23  incorporate a class action.  But
24  it would be based on the scope of
25  what is pled, which is relating

Page 215

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2      And it uses the both the
3  worth "controversy" and uses --
4  or it references or incorporates
5  the International Arbitration
6  Rules, which in turn incorporate
7  the supplemental rules related to
8  class actions.
9      How do we deal with the
10  argument that he makes, which is,
11  if you're correct, that any
12  arbitration under that standard
13  clause is necessarily, you know,
14  de facto a class arbitration, if
15  it wants to be?
16      Why isn't that clause -- why
17  isn't the standard clause,
18  essentially, saying it's class
19  action under your view?
20      MR. LIEBERMAN:  Well, I'm
21  actually on the web page of the
22  AAA standard arbitration clause
23  point.  And it think it goes to
24  this point that class actions are
25  common in the post --

Page 217

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2  to this contract.  Also, there's
3  not a carveout in that language.
4      So but I think saying a
5  standard arbitration clause that
6  is used in a context for how to
7  draft your contracts, which
8  doesn't address class actions and
9  the issue at all would somehow
10  create an unforeseen consequence,
11  I don't think speaks to the issue
12  one way or the other.
13      ARBITRATOR NARWOLD:  Okay.
14      MR. LIEBERMAN:  But, look,
15  I think it also suffices to note
16  -- I mean, the question is what
17  does "controversy" usually mean.
18      And "controversy" usually,
19  you know, doesn't have a limit on
20  it.  And then you look at the
21  rest of the language we have,
22  which is, "arising out of or
23  relating to the shares," the
24  deposit securities, the American
25  depository shares.  That's also

55 (Pages 214 - 217)

Page 218

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    further brought.
3        But I think that the
4    parties say, hey, you can use
5    this to draft your clause is not
6    a way of addressing one way or
7    the other that class claims would
8    be excluded.
9        ARBITRATOR NARWOLD: Fair
10   enough.
11       MR. LIEBERMAN: So,
12   similarly, the JAMS point doesn't
13   say it either.
14       But what does speak directly
15   to the issue is Sappington, which
16   is where you carve out certain
17   claims. The "controversy" or
18   "dispute" implies class claims
19   are covered within. That's an
20   actual case addressing the issue
21   of class or not.
22       Sure, it's about whether
23   the Arbitrators can decide on
24   class procedures, but the Court
25   applied the expressio unius there.

Page 219

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2        I think that's much more
3    relevant than the AAA website
4    that doesn't speak to the issue
5    at all.
6        THE CHAIR: Let me ask one
7    question and I will ask Mr. Klein
8    to just bear it in mind and when
9    you make any final comments, you
10   have to answer the same question,
11   you know, if you will.
12       I mean, I'll state it as my
13   understanding. My understanding
14   is that putting aside the legal
15   standard, to the extent the legal
16   standard ends up with this Panel
17   having the obligation to go and
18   interpret the subject contract
19   language, my understanding is
20   that our job then is to interpret
21   that language.
22       And its kind of what the
23   language tells us, because it's
24   never going to be the same or
25   rarely from case to case and that

Page 220

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    these other court decisions are
3    interesting. They can provide us
4    guidance and so forth.
5        But that how we interpret
6    the totality of the agreement
7    here, all these provisions is how
8    we do it. I mean, it's not like
9    we're bound by one case or another.
10   But that's my understanding.
11       And I'm asking each side
12   to, you know, comment on it and
13   correct it if, I don't have that
14   right.
15       MR. LIEBERMAN: In terms
16   of?
17       THE CHAIR: Yeah I'm saying
18   it's a question of fact in a
19   sense. I'm not sure if that's
20   the right term.
21       But we have to interpret
22   the contract here, if that's what
23   we come to, you know, and these
24   other cases are interesting, but
25   how we interpret the contract

Page 221

1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    before us is how we interpret the
3    contract before us.
4        MR. LIEBERMAN: Well, I
5    think the contract sets forth --
6    you know, it's a mix question of
7    facts and law. The contract's
8    terms are their own terms and each
9    contract has different terms. So
10   that issue is a factually unique
11   situation, right. So you do have
12   this unique agreement.
13       And so, in that respect, I
14   think there's a factual
15   determination for you to make.
16       I think there are some
17   factual principles like what is
18   the standard and implicit consent.
19   I mean, legal principles like
20   what is the standard of implicit
21   consent and otherwise, but looking
22   at the contract provision, you
23   know, that's a matter of applying
24   the facts.
25       THE CHAIR: Thank you.

56 (Pages 218 - 221)

Page 222

REBUTTAL ORAL ARGUMENT - LIEBERMAN

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2       MR. LIEBERMAN:  Now, I
3  would say -- oh, I had one other
4  point with respect to the
5  question of the AAA standard
6  arbitration clause, where they
7  say, any controversy or claim
8  arising out of or relating to
9  this contract, you say, it's a
10  standard clause.
11       Well, that's from the AAA
12  website.  And we, also, pointed
13  to our Exhibit 2, which is from
14  the AAA website, which says that
15  the AAA will administer class
16  actions where the agreement is
17  silent.
18       So, if we're going to parse
19  the website silence the -- the
20  argument that their standard
21  clause would cover a class action
22  is consistent with their other
23  website page saying that the
24  agreement is silent, AAA will
25  administer class action.  So I

Page 223

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2  don't think that creates any issues.
3       Yeah, again, Lamps Plus and
4  Stolt-Nielsen do not address
5  specific language at issue.
6       And I think I would go back,
7  also, on the point about the
8  carveout for the securities
9  claims.
10       You know, there was also
11  the point made by Tribunal Chair
12  Moxley with respect to, yes, you
13  often have securities claims that
14  have common law claims relating
15  to them.  So you'll have a
16  securities derivative in ERISA
17  class actions.
18       You'll have a securities
19  claim with supplemental state law
20  claims.
21       And we have language here,
22  "any such controversy, claim or
23  cause or action," which if it
24  would refer to securities claims,
25  again, that would also imply that

Page 224

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2  you'd separately have state law
3  claims under 23A.
4       I wanted to quickly, also,
5  note there was a statement made
6  that the language, "if a dispute,
7  controversy or cause of action
8  shall involve more than two
9  parties, the parties shall" align
10  themselves -- attempt to align
11  themselves on two sides, i.e.,
12  Claimants and Respondents."
13       There was a statement that
14  it was usual.  I'll note Mr. Klein
15  was pressed.  He has no source
16  for that it's common language.
17       And this is something that
18  speaks to multiparty language.
19  And it shows the parties had
20  considered multiparty disputes.
21       Having done so, there is no
22  carveout of class actions from
23  that.  I think that really stands
24  out here.
25       And as to the point about

Page 225

1  REBUTTAL ORAL ARGUMENT - LIEBERMAN
2  the immunity clause, this is 24
3  Section 24.  I think it really is
4  important to look at the language
5  here because they try to point it
6  out as a sovereign immunity
7  right.
8       But it says, "any right of
9  immunity on the grounds of
10  sovereignty or otherwise from any
11  legal action, suit or proceeding
12  from the giving of any relief in
13  respect thereof."  They try to
14  argue this is an enforcement
15  provision only, but it's not.
16       Because if you go to the
17  end, it says, "The company consents
18  to such relief and enforcement."
19  So it's not just enforcement.
20  It's saying, such relief.  And
21  what relief?  Any relief.
22       So just like -- and to
23  paraphrase Justice Kagan's
24  dissent -- just like any chair
25  includes a sofa that can sit a

57 (Pages 222 - 225)

Page 226

REBUTTAL ORAL ARGUMENT - LIEBERMAN
1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    dozen people, so too any relief
3    can include a class action relief
4    which can include multiparty
5    suits. It's the nature of it.
6        The "any relief" language
7    shows this goes far beyond just
8    enforcement. The immunity or
9    otherwise shows that this goes
10   beyond just mere immunity.
11       And the consenting to any
12   such relief is a consent to class
13   relief here as well we submit,
14   Judge.
15       So we think that those
16   factors at the end of the day are
17   important here.
18       And there was a statement
19   about they're not being a five
20   factor test. The point is that
21   the courts have applied. The
22   arbitrations have applied these
23   factors. And these are standard
24   factors that are used to conclude
25   that there is a textual basis for

Page 227

REBUTTAL ORAL ARGUMENT - LIEBERMAN
1    REBUTTAL ORAL ARGUMENT - LIEBERMAN
2    consent to class relief.
3        And you see it in case after
4    case that expressio unius is used
5    to look and find that there is
6    consent, implicit consent. You
7    see the broad language is used.
8        Here every ADS holder and
9    owner is covered by this agreement.
10   That's an indication of a broad
11   scope.
12       Here multiparty disputes
13   are covered. That's an indication.
14   So the point is to say these are
15   familiar factors applied over and
16   over again by arbitration Panels.
17       You have our thick compendium
18   of arbitration cases that have
19   done it under and after Lamps
20   Plus. And Lamps Plus says you
21   can look to the contract rules.
22   You know the contract rules. The
23   they're used all the time to
24   interpret the plain meaning of
25   agreements.

Page 228

REBUTTAL ORAL ARGUMENT - KLEIN
1    REBUTTAL ORAL ARGUMENT - KLEIN
2        Those contract rules here
3    given the very broad scope of the
4    agreement justify we think
5    overwhelmingly a finding that
6    class actions are covered by the
7    arbitration agreement.
8        THE CHAIR: Thank you, Mr.
9    Lieberman.
10       Mr. Klein.
11   REBUTTAL ORAL ARGUMENT BY MR. KLEIN
12       MR. KLEIN: Yes, very very
13   briefly, if I may, cause I know
14   we want to move on.
15       Just for Mr. Lieberman's first
16   point, I know it's said that "any
17   claim, controversy or cause of
18   action" means class actions.
19       As the Panel will recall, we
20   had a whole exchange about this.
21   The point is they're often brought
22   as class actions and so that's
23   relevant. I think there is also
24   discussion about how they don't
25   necessarily have to be brought as

Page 229

REBUTTAL ORAL ARGUMENT - KLEIN
1    REBUTTAL ORAL ARGUMENT - KLEIN
2    class actions but that the
3    carving out of that specific type
4    of claim, you know, does not
5    somehow create a consent to class
6    action. And I think we had an
7    exhaustive discussion about that.
8        Regarding, you know, Mr.
9    Lieberman's comments about Lamps
10   Plus and when he spoke up during
11   my presentation, I think, I
12   clarified where the language came
13   and agreed that the Court can
14   defer to the Ninth Circuit's
15   interpretation. But nonetheless
16   that was an element in the
17   language of the arbitration
18   clause before the Ninth Circuit
19   and before the Supreme Court.
20       Obviously, the Panel can
21   consult the transcript and the
22   case itself, if there's any doubt
23   about that.
24       With respect to Stolt-Nielsen,
25   what we quoted was the idea that

58 (Pages 226 - 229)

Page 230

REBUTTAL ORAL ARGUMENT - KLEIN
1  the agreement to arbitrate itself
2
3  does not create a presumption to
4  arbitrate on a class-wide basis.
5  That is directly from Stolt-Nielsen.
6        The additional point that
7  we made is the Stolt-Nielsen
8  agreement, also, contained an
9  incorporation of the AAA class
10 rules and that was not enough.
11       So we did not misrepresent
12 any of the cases or any of the
13 holdings.
14       But, again, the Panel can,
15 certainly, go to the relevant
16 decisions to confirm for themselves.
17       Lastly -- well, two more
18 points. Mr. Lieberman mentioned
19 the AAA website. Again, that
20 says, class relief is available
21 if the agreement is silent.
22       First, as I think Chair
23 Moxley pointed out, I'm not sure
24 that that is actually the import
25 of that statement, but regardless

Page 231

REBUTTAL ORAL ARGUMENT - KLEIN
1
2  it was dated 2010. That's the
3  year Stolt-Nielsen came out.
4  Stolt-Nielsen expressly ruled
5  that silence is not enough.
6        So whatever the AAA thought
7  it meant by posting that, it
8  can't be squared with Stolt-Nielsen.
9        And Stolt-Nielsen was in place
10 when the company went public and
11 issued its ADR. So that's just
12 simply -- that website reference
13 is just simply irrelevant and,
14 certainly, doesn't bind the Panel
15 here as Stolt-Nielsen does.
16       And then, Chair Moxley,
17 I'll just end with your question
18 about whether -- you're correct
19 in understanding that the job is
20 to interpret the language before
21 you and that you're not necessarily
22 bound by all these other cases.
23       I would say this. I think
24 it's true that the Panel's primary
25 task is to construe the specific

Page 232

REBUTTAL ORAL ARGUMENT - KLEIN
1
2  language in front of it. The other
3  cases are, certainly, instructive
4  and should guide the Panel in terms
5  of how the courts work through
6  these issues the implications of
7  applying certain factors or
8  certain rules and where the clear
9  center of gravity of the case law
10 is.
11       But I think the Panel is
12 bound by the principles that are
13 articulated in the binding case
14 law, particularly, the Supreme
15 Court case law.
16       So with that I will conclude.
17       THE CHAIR: Okay.
18       ARBITRATOR NARWOLD: Mr. Klein,
19 I have a very technical question.
20       MR. KLEIN: Yes.
21       ARBITRATOR NARWOLD: And I
22 have the same question for Mr.
23 Lieberman.
24       At the end of 23A and the
25 receipt in the exhibit, there's a

Page 233

REBUTTAL ORAL ARGUMENT - KLEIN
1
2  cross-reference to Section 7.06
3  of the deposit agreement and it
4  appears to me to be an error,
5  because it doesn't make any sense,
6  the cross-reference.
7        I don't know whether the
8  parties have looked at that. But
9  it says that -- this is the issue
10 of whether federal securities
11 cases can be arbitrated. It says,
12 "shall be submitted to arbitration
13 as provided in Section 7.06 of
14 the deposit agreement."
15       If you go to 7.06, that
16 really relates to litigation. So
17 I don't know whether -- I don't
18 think it means anything for our
19 purposes, but I would just like
20 clarification, if people believe
21 that cross-reference is an error.
22       MR. KLEIN: Hold on, Mr.
23 Narwold. I'm just looking at the
24 text here.
25       THE CHAIR: I'm sorry, Bill.

59 (Pages 230 - 233)

Page 234

REBUTTAL ORAL ARGUMENT - KLEIN
1   REBUTTAL ORAL ARGUMENT - KLEIN
2   Which section is that in?
3       ARBITRATOR NARWOLD:  Well,
4   it's in A.  It's, also, in B, but
5   either one.  There is a
6   cross-reference -- if you look at
7   A, the very last two lines,
8   you'll see a cross-reference to
9   7.06 of --
10      THE CHAIR:  I see it, yeah.
11      ARBITRATOR NARWOLD:  --
12  agreement.  And then it refers --
13      THE CHAIR:  Got it.
14      ARBITRATOR NARWOLD:  -- to
15  arbitration submitted to -- or in
16  Section B, it refers to arbitration
17  under 7.06 of the deposit agreement.
18  But I don't --
19      MR. KLEIN:  Yeah, so I --
20      ARBITRATOR NARWOLD:  7.06 of
21  the deposit agreement, I don't see
22  anything about arbitration.
23      MR. KLEIN:  Yeah.  So, Mr.
24  Narwold, my reading of that is
25  just that those two, you know,

Page 235

1   REBUTTAL ORAL ARGUMENT - KLEIN
2   those two provisions, you know,
3   are sort of to be -- it may be a
4   scrivener's error.  But it also,
5   you know, could be that those two
6   provisions are meant to be read
7   in tandem, because 7.06 is just
8   submission to the jurisdiction
9   and appointment of an agent of
10  process.
11      And so the submission and
12  jurisdiction is to New York,
13  which is the same cite for the
14  arbitration agreement.
15      So it may be a mistake or
16  it may just be an inartfully way
17  to say that the two are consistent.
18      ARBITRATOR NARWOLD:  Okay.
19      (INAUDIBLE DUE TO CROSS-TALK.)
20      MR. KLEIN:  -- on the issues
21  of jurisdiction and process.
22      ARBITRATOR NARWOLD:  I mean,   as
23  I said, I don't think it matters
24  for our purpose.  I don't know.
25      Mr. Lieberman, do you have

Page 236

1   REBUTTAL ORAL ARGUMENT - KLEIN
2   any view on that?
3   REBUTTAL ORAL ARGUMENT BY MR. LIEBERMAN
4       MR. LIEBERMAN:  Yeah, I
5   think we've struggled with that
6   too.  And I think that what it
7   just may mean is that you should
8   read it -- you read those
9   provisions 23A and 23B in the
10  context of Section 7.06.
11      But I don't think it has
12  any impact on, specifically,
13  arbitration.  I think you just
14  have to read the two together,
15  which could impact some other
16  points.
17      But I didn't see something
18  in Section 7.06 that addresses
19  arbitration, specifically.  There's
20  some reference to proceedings.
21      I would see how it plays out.
22  I think there's some intent to
23  incorporate Section 7.06, but it's
24  hard to express exactly what that
25  means.

Page 237

1       PROCEEDINGS
2       ARBITRATOR NARWOLD:  Are
3   the parties in agreement that New
4   York law -- I'm looking at
5   Section 7.08 of the deposit
6   agreement -- would apply to any
7   -- if there's any state law
8   analysis that needs to be done,
9   that New York would be the local
10  law we should look to?
11      MR. LIEBERMAN:  That's
12  Claimant's position.
13      MR. KLEIN:  Yes, so that
14  may be a segue to the next section,
15  actually, because some of the
16  claims are governed by Cayman law.
17      THE CHAIR:  Well, I think,
18  there may be a difference and I
19  was focusing on the interpretation
20  of the deposit agreement receipts,
21  in terms of its interpretation,
22  which may be different than choice
23  of law for a cause of action and
24  that's -- so I'm focusing on the
25  former.

60 (Pages 234 - 237)

Page 238

PROCEEDINGS

1
2    MR. KLEIN:  Yes.  So for that,
3    you know, we can look at it in
4    more detail.  I think it may or
5    may not be New York law.  It may,
6    also, be Cayman law or Cayman law
7    instead.
8    ARBITRATOR NARWOLD:  As to
9    how we read the agreement?
10    MR. KLEIN:  Potentially in
11    terms of which -- you know, for what
12    purposes, you know, we're reading
13    it and then also, obviously, for
14    purposes of this discussion, a
15    Federal Arbitration Act applies
16    and a lot of the provisions would
17    also need to be read in light of
18    that.
19    So I don't -- that's just the
20    only reason I'm hesitant to give
21    you just a straight up, it's all
22    New York law, because I'm not sure
23    that that's true.
24    ARBITRATOR NARWOLD:  Right.
25    My caveat was to the extent one

Page 239

PROCEEDINGS

1
2    looks at state law.  Cause I
3    understand the overlay of the FAA
4    and federal law.  I just didn't
5    see any other choice of law
6    provisions in here.
7    So, alright, that answers
8    my question.
9    ARBITRATOR LEVI:  Well, I
10    think the question is if we're
11    doing contract interpretation,
12    do we look to the law of New York.
13    The Court in the Jock
14    decision, they looked to the law
15    of Ohio, I think it is.
16    So I didn't see anything in
17    your brief that said we should
18    look to the law of the Cayman
19    Islands to interpret this contract
20    that -- the arbitration provision
21    in this contract.
22    MR. KLEIN:  Yeah.  No,
23    Judge Levi, I agree with that.
24    And maybe I was just
25    misunderstanding the breadth of

Page 240

PROCEEDINGS

1
2    Mr. Narwold's question.
3    But just that for contract
4    interpretation, I think, you know,
5    New York presumptively would apply.
6    Also, the federal law under
7    the FAA and the federal case
8    interpreting that would apply.
9    For some of the substantive
10    aspects of the claims and anything
11    relating to the internal functions
12    of the company or its relationships
13    with the shareholders, you'd look
14    to Cayman law.  I think at a high
15    level that's our understanding.
16    THE CHAIR:  To be clear on
17    this, because I had thought it
18    was clear and I still think it's
19    clear.
20    But, certainly, as you say,
21    Mr. Klein, the FAA preempts state
22    law insofar as those points that
23    we've been talking about all day
24    where the Supreme Court and other
25    courts have told us that certain

Page 241

PROCEEDINGS

1
2    things aren't adequate on consent,
3    right?
4    The FAA is all about consent.
5    You need consent.  Consent is the
6    guiding item.
7    But then the FAA tells us
8    beyond the rules that they give
9    us, that the Supreme Court gives
10    us, it's a question of state law.
11    So, I think, there's no
12    question in this case -- and if
13    there is, you all will have to
14    tell us and brief us.
15    But there's no question that
16    we should -- when it comes to --
17    when we get passed the FAA mandated
18    provision that are applicable
19    here and we're going to apply --
20    you know, we're going to construe
21    the contract, we need to do that
22    under New York law, because
23    that's the designated law for
24    construing the agreement.
25    I mean, is there any

61 (Pages 238 - 241)

ORAL ARGUMENT - NELSON

1    ORAL ARGUMENT - NELSON
2    controversy by either side?
3        MR. KLEIN:  Not from us,
4    Chair Moxley.  I do agree with that.
5        MR. LIEBERMAN:  Yeah,
6    Claimants believe New York laws
7    applies when interpreting the
8    agreement.
9        THE CHAIR:  Okay.  Anything
10    else about this phase of the thing?
11        Alright.  Let's go off the
12    record for a minute?
13        (There is a discussion off
14    the record.)
15        THE CHAIR:  Let's proceed.
16    ORAL ARGUMENT BY MR. NELSON
17        MR. NELSON:  Thank you,
18    Mr. Presiding Arbitrator.
19        I'll make a brief presentation
20    on the reasons it would be in our
21    submission appropriate to be
22    permitted to bring an application
23    for early disposition under
24    Article 23 of the ICDR arbitration
25    rules.

1    ORAL ARGUMENT - NELSON
2        I just wanted to say a few
3    things at the outset, mainly, in
4    reaction to the very prescient
5    comments of this Tribunal in last
6    night's communications to the
7    parties.
8        The first thing is I'm not
9    arguing the substantive motion
10    today.  I'm addressing you in
11    terms of whether you should in
12    the exercise of your case
13    management powers go forward and
14    permit us to present a motion at
15    a future point.
16        And therein lies the real
17    reminder for Counsel that we
18    don't control this.  The three of
19    you are the Tribunal and you can
20    manage the case as you see fit.
21        And one of the things I
22    wanted to mention before I get
23    onto the criteria for Article 23,
24    governing early disposition, is
25    that you have the inherent power

1    ORAL ARGUMENT - NELSON
2    under Article 22/Paragraph 4 to
3    decide preliminary issues and
4    bifurcate the proceedings and do
5    any number of other things in the
6    exercise of prudent case management.
7        So unlike the Claimant's
8    briefing, which tended to speak in
9    terms of strict prohibitions and
10    threats of vacatur, if they didn't
11    get a full hearing and evidentiary
12    hearing with all the bells and
13    whistles.
14        The rules clearly speak to
15    the broad case management
16    discretion that this Tribunal has
17    and however it manages this
18    proceeding is, ultimately, a
19    matter for its sound discretion.
20        And so I speak in the hope
21    that you will favor us on these
22    issues, but in the knowledge
23    that, ultimately, this is a matter
24    that you take into account
25    everything to do the case,

1    ORAL ARGUMENT - NELSON
2    including some of the stuff that
3    went on this morning.
4        Because, of course, the clause
5    construction issue is covered by
6    mandatory AAA supplemental rules
7    that dictate certain issues at the
8    time.
9        What I'm going to address
10    is regardless of how the Tribunal
11    comes out on clause construction,
12    what will be the shape of the rest
13    of this case.
14        Now, the reason we brought
15    Article 23 application is we
16    believe in looking at those
17    criteria, that they are met here.
18        And I'm conscious that there
19    are some limbs of Article 23.1
20    that need to be addressed.
21        The Tribunal, it says, "shall
22    allow a party to submit an
23    application for early disposition
24    if it determines that the
25    application, A, has a reasonable

62 (Pages 242 - 245)

1    REBUTTAL ORAL ARGUMENT - NELSON
2    know, they do what they're
3    supposed to do, they provide us
4    with books or they provide us SEC
5    filings and we rely on them, then
6    that's a violation of our right.
7         I would draw your attention
8    to Section 11 of the receipt.
9    And it says that, "the company is
10   subject to periodic reporting
11   requirements, according to the
12   Securities and Exchange Act" and
13   "it quarterly files reports with
14   the Commission and those will be
15   available on the SEC website in
16   New York or the SEC itself in
17   Washington D.C.," I apologize.
18        That's a right that's
19   created by this provision and we
20   have a right to rely on it.
21        And so we relied on those
22   statements that were made in the
23   SEC filings that were made pursuant
24   to this Section 11.
25        And so if there's something

1    PROCEEDINGS
2         I would only say if there
3    is anything from the questions
4    the Panel raised today or last
5    night that it feels it wants
6    further information on, that
7    would be the only reservation,
8    but that's something for the
9    Panel to tell us.
10        But we feel we've had an
11   opportunity to address the issues
12   and your questions.
13        So unless there's something
14   you want us to address further,
15   Claimants are prepared to have it
16   submitted.
17        THE CHAIR:  I understood.
18   Thank you, Mr. Lieberman.
19        MR. KLEIN:  And the same
20   for Respondents.  Happy to have
21   it submitted subject to anything
22   additional that the Panel would
23   like.
24        THE CHAIR:  Okay.  I think
25   we'll adjourn now and we'll,

1    REBUTTAL ORAL ARGUMENT - NELSON
2    that's a lie, a misrepresentation
3    in those filings and we rely on
4    them to our detriment, that's a
5    right created right here in these
6    receipts.  It's "rights hereunder
7    and thereunder."
8         ARBITRATOR NARWOLD:  I
9    understand your position.
10        THE CHAIR:  Okay.  Unless
11   anybody has any further points to
12   make or questions to raise, I
13   think the application has been
14   submitted.
15        As far as the parties are
16   concerned, have you all had a
17   chance to brief what you wanted
18   to brief and say what you want to
19   brief and are you content to have
20   the pending application submitted
21   to the Tribunal as submitted at
22   this point and as argued today?
23        MR. LIEBERMAN:  Claimants
24   are okay to do that.  Claimants
25   believe they have.

1    PROCEEDINGS
2    obviously, look forward to getting
3    the transcript when it's ready
4    and we'll dive into this as soon
5    as we can and come back to you as
6    promptly as we can.
7         And as you all have said,
8    if we have -- you know, if as we
9    put it altogether we have any
10   questions that trouble us, we
11   will certainly come back to you.
12        MR. LIEBERMAN:  Great.
13        We want to thank the Panel
14   for it's time and attention to
15   the matters.
16        MR. KLEIN:  You know, thank
17   you.  Many thanks to the entire
18   Panel.  It was a lot of material.
19   So we really appreciate it.
20        MR. HUTMAN:  And we also
21   want to thank the Court Reporter
22   for putting up with us.
23        (There is a discussion off
24   the record.)
25        THE CHAIR:  Okay, Counsel,

90 (Pages 354 - 357)

Page 358

```
1              PROCEEDINGS
2        thank you.  We are adjourned.
3              Maybe the Panel will stay
4        on for a moment.
5              (Time noted:  3:53 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 359

```
1              PROCEEDINGS
2        C E R T I F I C A T E
3
4
5        I, SILVIA P. WAGE, CSR, CRR, RPR, a
6    Notary Public for the State of New York,
7    do hereby that the foregoing is a true
8    and accurate transcript of the testimony
9    as taken stenographically by and before
10   me at the time, place and on the date
11   hereinbefore set forth.
12        I DO FURTHER CERTIFY that I am
13   neither a relative nor employee nor
14   attorney of any of the parties to this
15   action, and that I am neither a relative
16   nor employee of such attorney or counsel,
17   and that I am not financially interested
18   in the action.
19
20
21
22
23
24   Notary Public of the State of New York
     My Commission expires November 29, 2026
25   Dated:  July 27, 2024
```

91 (Pages 358 - 359)