UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOE FASANO, ALTIMEO OPTIMUM FUND, and
ALTIMEO ASSET MANAGEMENT, *individually
and on behalf of all others similarly situated*,

Plaintiffs,

-v.-

GUOQING LI; PEGGY YU YU; DANGDANG
HOLDING COMPANY, LTD.; E-COMMERCE
CHINA DANGDANG INC.; KEWEN HOLDING CO.
LTD.; SCIENCE & CULTURE LTD.; FIRST
PROFIT MANAGEMENT, LTD.; DANQIAN YAO;
LIJUN CHEN; MIN KAN; RUBY RONG LU; KE
ZHANG; and XIAOLONG LI,

Defendants.

16 Civ. 8759 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

After granting the motion of Co-Lead Plaintiffs Joe Fasano, Altimeo

Optimum Fund, and Altimeo Asset Management (collectively, "Plaintiffs") to

compel arbitration of their common-law claims and staying the case pending

arbitration in *Fasano* v. *Li*, No. 16 Civ. 8759 (KPF), 2023 WL 6292579 (S.D.N.Y.

Sept. 27, 2023) ("*Fasano V*"), the Court now considers the motion of

Defendants E-Commerce China Dangdang Inc., Dangdang Holding Company,

Limited, Kewen Holding Company Limited, Science & Culture International

Limited, First Profit Management, Limited, Guoqing Li, Peggy Yu Yu, Danqian

Yao, Lijun Chen, and Min Kan (collectively, "Defendants") to vacate the

subsequently issued arbitration award (the "Clause Construction Award"),

which permitted class arbitration of Plaintiffs' common-law claims.  For the

reasons set forth in the remainder of this Opinion, the Court denies

Defendants' motion and instead confirms the Clause Construction Award.

## BACKGROUND[1]

### A.    Factual Background

The Court assumes familiarity with the factual and procedural histories

of this case, and incorporates by reference its two prior opinions on

Defendants' motions to dismiss, *Fasano* v. *Li*, No. 16 Civ. 8759 (KPF), 2017 WL

6764692 (S.D.N.Y. Dec. 29, 2017) ("*Fasano I*"), and *Fasano* v. *Li*, 482 F. Supp.

3d 158 (S.D.N.Y. 2020) ("*Fasano III*"); the two correlative Second Circuit

opinions, *Fasano* v. *Yu Yu*, 921 F.3d 333 (2d Cir. 2019) ("*Fasano II*"), and

*Fasano* v. *Li*, 47 F.4th 91 (2d Cir. 2022) ("*Fasano IV*"); and *Fasano V*, 2023 WL

---

[1]    Courts treat motions to confirm or vacate arbitration awards as summary judgment motions.  *See D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006). The facts set forth in this Opinion are drawn from the parties' submissions in connection with Defendants' motion to vacate the Clause Construction Award.  The Court primarily sources facts from the parties' Joint Local Civil Rule 56.1 Statement of Facts (Dkt. #137 ("Joint 56.1")); the Declaration of Timothy G. Nelson (Dkt. #138 ("Nelson Decl.")), and the exhibits attached thereto, including the Deposit Agreement (the "Deposit Agreement" (Nelson Decl., Ex. 4)), the October 22, 2024 Partial Final Award (the "Clause Construction Award" or the "CCA" (*id.*, Ex. 1)), and the October 22, 2024 Dissenting Opinion (the "Dissent" (*id.*, Ex. 2)).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in the Rule 56.1 Statement is supported by evidence, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to vacate the Clause Construction Award as "Def. Br." (Dkt. #136); to Plaintiffs' memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #141); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #142).

6292579.  The Court summarizes those facts necessary to resolve the instant motion to vacate the Clause Construction Award.

### 1.    Plaintiffs' Claims and Related Litigation

Defendant E-Commerce China Dangdang Inc. ("Dangdang") is a business-to-consumer e-commerce company in China.  (Joint 56.1 ¶ 1).  On December 8, 2010, Dangdang conducted an initial public offering of American Depositary Shares ("ADSs").  (*Id.* ¶ 2).  Ownership of ADSs was governed by a Deposit Agreement and evidenced by American Depositary Receipts ("ADRs"), which were issued pursuant to the Deposit Agreement.  (*Id.* ¶ 3).  A form ADR is attached as Exhibit A to the Deposit Agreement.  (*Id.*).  All owners and holders of ADSs are parties to the Deposit Agreement.  (*Id.* ¶ 4).

On September 20, 2016, a buyer group comprised of Defendants Guoqing Li, Peggy Yu Yu, Danqian Yao, Lijun Chen, Min Kan, Kewen Holding Co. Limited, Science & Culture International Ltd., and First Profit Management, Ltd., acquired all of Dangdang's issued and outstanding ADSs for $6.70 per share (the "Merger Price") through a going-private transaction (the "Merger"), after which Dangdang ceased to be a publicly traded company. (Joint 56.1 ¶ 8).  Plaintiffs were owners of Dangdang ADSs before the Merger, and their shares were cashed out through the Merger for the Merger Price regardless of whether they voted for the Merger.  (*Id.* ¶ 12).  On November 10, 2016, Plaintiffs filed the initial complaint in this action, bringing claims for violations of Section 13(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 13e-3 promulgated thereunder, as well as common-

3

law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and "quasi-appraisal," on behalf of themselves and a putative class of former ADS holders that were also cashed out in the Merger.  (*Id.* ¶ 13; *see* Dkt. #1).

After the Court granted Defendants' motion to dismiss the original complaint on *forum non conveniens* grounds on December 29, 2017, *Fasano I*, 2017 WL 6764692, the Second Circuit reversed and remanded on April 12, 2019, so that the Court could consider the impact of a forum-selection clause, *Fasano II*, 921 F.3d 333.  Thereafter, on September 12, 2019, Plaintiffs filed the operative complaint (the "Amended Complaint"), bringing claims for violations of Sections 10(b), 13(e), and 20(a) of the Exchange Act and Rules 10b-5 and 13e-3 promulgated thereunder, as well as common-law claims for negligent misrepresentation, breach of "heightened fiduciary duties," and aiding and abetting breach of fiduciary duties, on behalf of themselves and the same putative class of former ADS holders.  (Joint 56.1 ¶ 17; *see* Dkt. #79).

On October 7, 2019, Defendants renewed their motion to dismiss on *forum non conveniens* grounds and moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Joint 56.1 ¶ 18; Dkt. #81).  On August 28, 2020, the Court granted Defendants' motion to dismiss on *forum non conveniens* grounds and denied their alternative Rule 12(b)(6) motion as moot.  *Fasano III*, 482 F. Supp. 3d 158.  On August 26, 2022, the Second Circuit reversed and remanded for the Court to consider Defendants' Rule 12(b)(6) motion, while at

the same time stating that Plaintiffs' common-law claims were "required to be submitted to arbitration" and "can be pursued only in a New York arbitration." *Fasano IV*, 47 F.4th at 104-05.

On September 9, 2022, Plaintiffs initiated an arbitration with the International Centre for Dispute Resolution (the "ICDR") — the international division of the American Arbitration Association (the "AAA") — to arbitrate common-law claims for fraudulent misrepresentation, negligent misrepresentation, breach of heightened fiduciary duties, and breach of the duty of sufficient information. (Joint 56.1 ¶ 22). Defendants then moved this Court to stay the arbitration and dismiss the Complaint for failure to state a claim upon which relief can be granted on October 24, 2022. (*Id.* ¶ 24). Plaintiffs cross-moved to compel arbitration of their common-law claims. (*Id.* ¶ 25).

On September 27, 2023, in its *Fasano V* decision, the Court granted Plaintiffs' motion to compel arbitration of their common-law claims, stayed the remaining claims pending completion of the arbitration, and denied Defendants' motion to dismiss without prejudice to its renewal after the arbitration. 2023 WL 6292579, at *13-14. In so doing, the Court decided that the parties' arbitration agreement permitted the arbitrator to decide the threshold question of whether the agreement permits class arbitration. *Id.* at *12-13.

### 2.    Relevant Contractual Provisions

The "Arbitration Clause" is contained in Section 23 of the form ADRs attached to the Deposit Agreement.  (Joint 56.1 ¶ 5).  It provides in relevant part that:

> Any controversy, claim or cause of action brought by any party hereto against [Dangdang] arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts or the Deposit Agreement, or the breach thereof, shall be settled by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association … provided … that any such controversy, claim or cause of action brought by a party hereto against [Dangdang] relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder shall be submitted to arbitration as provided in Section 7.06 of the Deposit Agreement if, but only if, so elected by the claimant.

> The place of the arbitration shall be The City of New York, State of New York, United States of America, and the language of the arbitration shall be English.

> * * *

> If a dispute, controversy, or cause of action shall involve more than two parties, the parties shall attempt to align themselves in two sides (i.e., claimant(s) and respondent(s)), each of which shall appoint one arbitrator as if there were only two parties to such dispute, controversy or cause of action.

> * * *

> (b) Any controversy, claim or cause of action … not subject to arbitration under Section 7.06 of the Deposit Agreement shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York and [Dangdang] hereby submits to the personal jurisdiction of the court in which such action or proceeding is brought.

(Deposit Agreement § 23 (the "Arbitration Clause") (emphasis omitted)).  Section

7.06 of the Agreement, in turn, provides in relevant part that:

> EACH PARTY TO THIS DEPOSIT AGREEMENT (INCLUDING, FOR AVOIDANCE OF DOUBT, EACH OWNER AND HOLDER) HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING AGAINST [DANGDANG] AND/OR THE DEPOSITARY DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE SHARES OR OTHER DEPOSITED SECURITIES, THE AMERICAN DEPOSITARY SHARES OR THE RECEIPTS, THIS DEPOSIT AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREIN OR THEREIN, OR THE BREACH HEREOF OR THEREOF, INCLUDING, WITHOUT LIMITATION, ANY QUESTION REGARDING EXISTENCE, VALIDITY OR TERMINATION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(*Id.* § 7.06).  Section 7.07 provides in relevant part that:

> To the extent that [Dangdang] or any of its properties, assets or revenues may have or may hereafter become entitled to, or have attributed to it, any right of immunity … from any legal action, suit or proceeding … with respect to its obligations, liabilities or any other matter under or arising out of or in connection with the Shares or Deposited Shares, the American Depositary Shares, the Receipts or this Agreement, [Dangdang], to the fullest extent permitted by law, hereby irrevocably and unconditionally waives, and agrees not to plead or claim, any such immunity and consents to such relief and enforcement.

(*Id.* § 7.07).  Relatedly, Section 24 of the ADRs attached to the Deposit

Agreement provides in relevant part that:

> To the extent that [Dangdang] or any of its properties, assets or revenues may have or hereafter become entitled to, or have attributed to it, any right of immunity, on the grounds of sovereignty or otherwise,

> from any legal action, suit or proceeding, ... with respect
> to its obligations, liabilities or any other matter under
> or arising out of or in connection with the Shares or
> Deposited Securities, the American Depositary Shares,
> the Receipts or [the Deposit] Agreement, [Dangdang], to
> the fullest extent permitted by law, hereby irrevocably
> and unconditionally waives, and agrees not to plead or
> claim, any such immunity and consents to such relief
> and enforcement.

(*Id.* § 24).  The Deposit Agreement recites that it shall be governed by New York law.  (*Id.* § 7.08).

### 3.    The Clause Construction Award

The parties submitted the issue of whether the Arbitration Clause permits class arbitration to a tribunal of three arbitrators before the ICDR, including Judge David Levi (Ret.), William H. Narworld, Esq., and Charles J. Moxley, Jr., Esq. (the "Tribunal").  (Joint 56.1 ¶¶ 27-28).  The Tribunal was confirmed on March 26, 2024, and on April 17, 2024, it set a schedule for the parties to brief the clause construction issue.  (CCA ¶ 7).  The Tribunal heard oral argument on July 18, 2024.  (Joint 56.1 ¶ 29).  On October 22, 2024, the Tribunal issued the Clause Construction Award as a partial final award; in it, a two-to-one majority concluded that the Deposit Agreement (including the Arbitration Clause and other provisions of the ADRs) permits class arbitration proceedings.  (*Id.* ¶ 30).  Like the Tribunal, the Court in this Opinion refers collectively to the Deposit Agreement, Arbitration Clause, and other relevant provisions of the ADRs as the "Arbitration Agreement."  (*See* CCA ¶¶ 2, 20-21).

In the Clause Construction Award, discussed in greater detail *infra*, the Tribunal determined that the "plain meaning" and "unambiguous language of

the Arbitration Agreement" indicated that the parties consented to class arbitration.  (CCA ¶ 38).  Judge Levi (Ret.) issued a dissenting opinion.  (*See* Dissent).

## B.    Procedural Background

After the Tribunal issued the Clause Construction Award on October 22, 2024, it stayed the arbitration for 30 days to permit any party to move to confirm or vacate the Clause Construction Award in this Court.  (Joint 56.1 ¶ 32).  On November 20, 2024, Defendants timely moved to vacate the Clause Construction Award.  (Dkt. #135).  They filed a memorandum of law in support of their motion (Dkt. #136); a Joint Local Civil Rule 56.1 Statement of Facts (Dkt. #137); and the Declaration of Timothy G. Nelson, including several exhibits attached thereto (Dkt. #138).  On December 3, 2024, the parties submitted a proposed stipulation and order setting a briefing schedule for Defendants' motion to vacate the Clause Construction Award.  (Dkt. #139). The Court so-ordered this stipulation on December 4, 2024.  (Dkt. #140).  On January 9, 2025, Plaintiffs filed their memorandum of law in opposition to Defendants' motion (Dkt. #141), and on January 30, 2025, Defendants filed their reply memorandum of law (Dkt. #142).

On September 2, 2025, Defendants filed a notice of supplemental authority regarding two cases.  (Dkt. #143).  On September 26, 2025, Plaintiffs filed a response to Defendants' notice of supplemental authority.  (Dkt. #144).

## DISCUSSION

**A.    Applicable Law**

### 1.    Judicial Review of Arbitration Awards

Federal law provides for vacatur of arbitration awards "only in very unusual circumstances." *First Options of Chi., Inc.* v. *Kaplan,* 514 U.S. 938, 942 (1995).  "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC* v. *Sutter,* 569 U.S. 564, 569 (2013) (quoting *E. Assoc. Coal Corp.* v. *Mine Workers,* 531 U.S. 57, 62 (2000)).  The Second Circuit has underscored this point, holding that courts should exercise an "extremely deferential standard" when reviewing arbitration awards.  *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 139 (2d Cir. 2007).  The "general rule [is] that '[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"  *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (second alteration in original) (quoting *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)).

Because the Clause Construction Award was entered in the United States, the standard, domestic provisions of the FAA, which are codified in Chapter One of the FAA, apply to the extent they do not conflict with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(also known as the "New York Convention") or its enabling legislation, both of which are codified in Chapter Two of the FAA. *See Phoenix Aktiengesellschaft* v. *Ecoplas, Inc.*, 391 F.3d 433, 435 (2d Cir. 2004); *see generally Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale de L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974); 9 U.S.C. §§ 1-16, 201-208.

The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.,* 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11).  A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified, or corrected" under § 10 or § 11 of the FAA.  *Id.*  There are four statutory grounds for vacatur:

> (1)    where the award was procured by corruption, fraud, or undue means;
>
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Recognizing that mischief can inhere in an overly broad interpretation of the FAA's vacatur provision, the Supreme Court has made clear that the only

question under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. The Second Circuit has likewise "'consistently accorded the narrowest of readings' to section 10(a)(4)." *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) ("*Jock I*") (quoting *ReliaStar Life Ins. Co. of N.Y.* v. *EMC Nat'l Life Co.,* 564 F.3d 81, 85 (2d Cir. 2009)).

The Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig*, 497 F.3d at 139, or "where the arbitrator's award is in manifest disregard of the terms of the terms of the [parties'] agreement," *Yusuf Ahmed Alghanim & Sons* v. *Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997). Indeed, an arbitrator may not "stray[ ] from interpretation and application of the agreement and effectively dispense[ ] his own brand of industrial justice." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal quotation marks omitted) (quoting *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) (per curiam)). However, a court may vacate on these bases only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[ ] is apparent, but where none of the provisions of the FAA apply." *Duferco Int'l Steel Trading* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Thus, in order "[t]o succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the

12

governing law by refusing to apply it." *Seneca Nation of Indians* v. *New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 52 (2d Cir. 2011)).

"An award should be enforced, 'despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached.'" *Smarter Tools Inc.* v. *Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023) (quoting *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)).  "A 'barely colorable justification' exists so long as the arbitrators had reasoning on which they 'could have justifiably rested their decision.'" *Id.* (quoting *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13-14); *accord Weiss* v. *Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019).

### 2.    Summary Judgment Under Federal Rule of Procedure 56

Courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment.  *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citing *D.H. Blair & Co.*, 462 F.3d at 109).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Thus, "'[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law.'" *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor* v. *Elec. Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)).  "[A] fact is

13

material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) (quoting *Liberty Lobby*, 477 U.S. at 248), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (summary order).

## B.    Analysis

### 1.    The Tribunal Was Empowered to Decide the Class Arbitration Issue

To begin with, the Court must distinguish between (i) whether the Tribunal was empowered to decide if the agreement permits class arbitration and (ii) whether the Tribunal erred in deciding that it does.  The Court answered the former question affirmatively in *Fasano V*, 2023 WL 6292579, at *12-13.  The latter question is now before the Court.  Defendants sow analytical confusion by implicitly conflating the two questions.  It aids the Court's analysis under § 10(a)(4) to elucidate this distinction and to explain how Supreme Court and Second Circuit case law permitted the Tribunal to decide the class arbitration issue.

In *Fasano V*, this Court found that the Arbitration Clause disclosed an intent to let the arbitrator decide whether it permitted class arbitrability.  2023 WL 6292579, at *12-13.  That is because the Arbitration Clause incorporated the International Arbitration Rules of the American Arbitration Association (the "AAA Rules"), which provide that arbitrators shall determine as a threshold

14

matter whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.  *Id.*  The Court's determination followed from the Second Circuit's finding that "incorporation of the AAA Rules evinces agreement to have the arbitrator decide the question of class arbitrability." *Jock* v. *Sterling Jewelers Inc.*, 942 F.3d 617, 623-24 (2d Cir. 2019) ("*Jock II*") (citing *Wells Fargo Advisors, LLC* v. *Sappington*, 884 F.3d 392, 396 (2d Cir. 2018)).  In *Jock II*, the Second Circuit noted more broadly that, "when parties to an agreement explicitly incorporate rules that empower an arbitrator to decide an issue, 'the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'"  942 F.3d at 624 (quoting *Sappington*, 884 F.3d at 396).

   *Jock II* followed the Supreme Court's decision in *Lamps Plus, Inc.* v. *Varela*, 587 U.S. 176 (2019), which in turn built on its decision in *Stolt-Nielsen*, 559 U.S. 662, both of which are central to Defendants' instant motion to vacate the Clause Construction Award.  In *Lamps Plus*, the Supreme Court held that an ambiguous agreement cannot provide the necessary contractual basis to compel class arbitration consistent with the FAA.  587 U.S. at 183.  This holding "follow[ed] directly from [the Supreme Court's] decision in *Stolt-Nielsen*."  *Id.*  *Lamps Plus* and *Stolt-Nielsen* both extolled the "'fundamental' difference between class arbitration and the individualized form of arbitration envisioned by the FAA," *id.* at 184 (quoting *Epic Sys. Corp.* v. *Lewis*, 584 U.S. 497, 507 (2018)) (citing *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 349 (2011); *Stolt-Nielsen*, 559 U.S. at 686-87), and both explained how this

fundamental difference must color a court's interpretation of an arbitration agreement.

In *Stolt-Nielsen*, the Supreme Court held that "[a]n *implicit agreement* to authorize class-action arbitration … is not a term that the arbitrator may infer *solely* from the fact of the parties' agreement to arbitrate." 559 U.S. at 685 (emphases added). In other words, parties "cannot be presumed … [to have] consented to [class-action arbitration] by simply agreeing to submit their disputes to an arbitrator." *Id.* Because the differences between individual and class-action arbitration are so great, under the FAA, arbitrators cannot presume "that the parties' *mere silence* on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687 (emphasis added). At the same time, the Supreme Court noted that it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Id.* at 687 n.10. That is because the parties in *Stolt-Nielsen* had "stipulated that there was 'no agreement' on the issue of class-action arbitration." *Id.* The *Lamps Plus* decision characterized *Stolt-Nielsen* as standing for the proposition that "silence" is an insufficient basis to conclude that the parties agreed to class arbitration. 587 U.S. at 185-86.

In *Lamps Plus*, the Supreme Court held that, "[l]ike silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration.'" 587 U.S. at 185 (quoting *Concepcion*, 563 U.S. at 348). "This conclusion aligns with

[the Supreme Court's] refusal to infer consent when it comes to … fundamental [or gateway] arbitration questions," such as whether the parties have a valid arbitration agreement or whether it applies to a certain type of controversy.  *Id.* at 185-86 (citing *Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)).  But the Court noted that it had "no occasion to address" whether "the availability of class arbitration is a so-called 'question of arbitrability,'" or gateway question, because "the parties agreed that a court, not an arbitrator, should resolve the question about class arbitration."  *Id.* at 186 n.4 (quoting *Oxford Health Plans*, 569 U.S. at 569 n.2).

Against this background, the Second Circuit in *Jock II* distinguished *Lamps Plus* on two grounds.  *First*, "the parties in *Lamps Plus* 'agreed that a court, not an arbitrator, should resolve the question about class arbitration.'" *Jock II*, 942 F.3d at 626 (quoting *Lamps Plus*, 587 U.S. at 186 n.4).  As such, the "class arbitrability decision in *Lamps Plus* was … subject to *de novo* scrutiny rather than the deferential standard of review that circumscribes courts' review of arbitrators' decisions."  *Id.*  Because the parties in *Jock II* had consented to let the arbitrator decide the threshold question of whether the arbitration agreement permitted class arbitration, *id.* at 623-24, the narrow § 10(a)(4) standard must be applied to review her decision, *id.* at 626.  *Second*, *Jock II* determined that "*Lamps Plus* leaves undisturbed the proposition, affirmed in *Stolt-Nielsen*, that an arbitration agreement may be interpreted to

include implicit consent to class procedures." *Id.* at 626.[2]  That is not to say that an implicit agreement may be inferred *solely* from the fact that the parties agreed to arbitrate; that is, of course, foreclosed by *Stolt-Nielsen*.  *Cf.* 559 U.S. at 685-86.

Before the Court is a situation contemplated by *Jock II*.  In *Fasano V*, the Court determined that the parties agreed to let the arbitrator decide the threshold question of whether the agreement permits class arbitration.  *Fasano V*, 2023 WL 6292579, at *12-13.[3]  The class arbitration issue was then submitted to the Tribunal.  (Joint 56.1 ¶¶ 27-28).  The Tribunal issued the Clause Construction Award, in which it decided that the parties consented to class arbitration.  (*Id.* ¶ 30; *see generally* CCA).  To the extent Defendants' gripe is with the very fact that the Tribunal, and not the Court, decided the class arbitration issue, "that ship has sailed."  *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).  Indeed, it sailed two years ago in *Fasano V*.

---

[2]    Defendants characterize this portion of *Jock* v. *Sterling Jewelers Inc.*, 942 F.3d 617 (2d Cir. 2019) ("*Jock II*"), as "dicta." (Def. Br. 12).  The Court does not agree, and did not treat it as such in *Fasano V*.  *See Fasano* v. *Li*, No. 16 Civ. 8759 (KPF), 2023 WL 6292579, at *13 (S.D.N.Y. Sept. 27, 2023) ("*Fasano V*").

[3]    Defendants note that the Court "already concluded" in *Fasano V* that the Arbitration Clause "is silent on the issue of class arbitrability."  (Def. Br. 13 (quoting *Fasano V*, 2023 WL 6292579, at *12)).  A word of clarification is necessary because Defendants mischaracterize the Court's conclusion.  The Court concluded that "[t]he arbitration clause at issue here is silent on the issue of class arbitration, *but recites that it was drafted in accordance with the International Arbitration Rules of the American Arbitration Association (the 'AAA Rules')*."  *Fasano V*, 2023 WL 6292579, at *12 (emphasis added) (internal quotation marks omitted) (quoting Deposit Agreement § 23(a)).  That is, the Court did not conclude that the Arbitration Clause was silent on the issue; it concluded that the Arbitration Clause did not *expressly mention* class arbitrability, but did incorporate the AAA Rules, and thereby evinced agreement to have the arbitrator decide the threshold question of class arbitrability.  *Id.* at *12-13 (citing *Jock II*, 942 F.3d at 623-24; *Borozny* v. *Raytheon Techs. Corp.*, No. 21 Civ. 1657 (SVN), 2023 WL 334378, at *3 (D. Conn. Jan. 20, 2023) (quoting *Contec Corp.* v. *Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005))).

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc.*, 586 U.S. at 69 (quoting *First Options*, 514 U.S. at 944 (alterations omitted)) (citing *Rent-A-Center, W., Inc.* v. *Jackson*, 561 U.S. 63, 69 n.1 (2010)).  That is what happened here.

### 2. Vacatur Is Unwarranted Because the Tribunal Did Not Exceed Its Powers

The Court next proceeds to perform a circumscribed § 10(a)(4) review of the Clause Construction Award, in order to determine if the Tribunal exceeded its powers.  *See Jock II*, 942 F.3d at 626.  Defendants argue that the Tribunal exceeded its powers by misapplying *Stolt-Nielsen*, *Lamps Plus*, and related case law in the process of interpreting the Arbitration Agreement.  The Court disagrees.  The Tribunal did not exceed its powers by interpreting the Arbitration Agreement to unambiguously allow for class arbitration.  In fact, the Tribunal performed a careful textual analysis of the terms of the Agreement, sufficiently justifying its conclusion.  Nor did the Tribunal manifestly disregard the law.  Rather, it carefully considered *Stolt-Nielsen*, *Lamps Plus*, and related cases, and interpreted the Arbitration Agreement within the bounds of its authority.  For these reasons, vacatur of the Clause Construction Award is unwarranted; the Court instead confirms it.

### a. The Tribunal Did Not Exceed Its Powers by Determining That the Agreement Unambiguously Permits Class Arbitration

Defendants argue that, because the Arbitration Clause does not expressly mention class arbitration, it is silent on the matter, and, further, that

the Tribunal improperly substituted its own view of sound policy in place of a default rule against class arbitrability under Supreme Court and New York law. (Def. Br. 12-21).  Not so.  The Tribunal did not find that the Arbitration Agreement was "silent" or "ambiguous" on the issue of class arbitration; if it had, then *Stolt-Nielsen* and *Lamps Plus* would have required the Tribunal to find that the Agreement did not evince consent to class arbitration.  Nor did the Tribunal infer consent "from a mere agreement to arbitrate or an ambiguous contract." (Def. Br. 8).  Rather, the Tribunal determined that the "plain meaning" and "unambiguous language of the Arbitration Agreement" reflected that the parties "agreed to class arbitration." (CCA ¶ 38; *see also id.* ¶¶ 168-169).

To review, the focus of the Court's "inquiry under Section 10(a)(4) is whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrator correctly decided that issue.*" *Jock II*, 942 F.3d at 622 (alterations adopted and internal quotation marks omitted) (quoting *Jock I*, 646 F.3d at 122); *accord Smarter Tools*, 57 F.4th at 382.  Thus, the "sole question" on a motion to vacate an arbitral award under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, *not whether he got its meaning right or wrong.*" *Oxford Health Plans*, 569 U.S. at 569 (emphasis added).  Even an arbitrator's "grave error … is not enough.  So long as the arbitrator was 'arguably construing' the contract … a court may not correct his mistakes under § 10(a)(4)." *Id.* at 572 (quoting *E. Associated Coal Corp.* v. *United Mine Workers*

*of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).  "Indeed, only where an arbitrator 'act[s] outside the scope of his contractually delegated authority' — issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract' — may a court overturn his determination.'"  *Beijing Shougang Mining Inv. Co.* v. *Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (alterations in original) (quoting *Oxford Health Plans*, 569 U.S. at 549).  Parties seeking to vacate an arbitral award "must clear a high hurdle."  *Id.* at 160 (quoting *Stolt-Nielsen*, 559 U.S. at 671).

Having determined that the Tribunal was empowered to decide the class arbitration question, the question before the Court is not whether the Tribunal's decision was correct, but whether the Tribunal acted within its authority.  It did.  Defendants fail to clear the high hurdle to show that the Tribunal was acting outside its delegated authority.  Rather, the Tribunal's determination that the Arbitration Agreement permits class arbitration "fell well within its interpretive authority."  *Beijing Shougang*, 11 F.4th at 161.

The Tribunal interpreted the Arbitration Agreement to include an unambiguous, affirmative contractual basis for the parties' consent to arbitrate class claims.  The Tribunal first determined that, "[u]nder *Stolt-Nielsen* and *Lamps Plus*, parties' affirmative contractual basis" to the effect that they agreed to class arbitration "may be implicit.  Express language agreeing to class arbitration is not required by the FAA."  (CCA ¶ 36).  As previously discussed, this accords with *Jock II*, 942 F.3d at 626.  The Tribunal reasoned that *Stolt-Nielsen* and *Lamps Plus* allow for the application of canons of construction like

21

*expressio unius est exclusio alterius* "to discern parties' intent" regarding whether they affirmatively contracted to arbitrate class claims.  (*Id.* ¶ 37). Moreover, the Tribunal determined that, according to the "plain meaning" and "unambiguous language of the Arbitration Agreement," the parties agreed to class arbitration.  (*Id.* ¶ 38).

After considering "post[-]*Lamps Plus* lower court decisions that have required an explicit (or essentially explicit) reference to class arbitration … for there to be an affirmative contractual basis for class arbitration" (CCA ¶ 77), the Tribunal found that none involved provisions as "extensive" as those in the Arbitration Agreement, and that none examined in depth the applicability of *Stolt-Nielsen* or *Lamps Plus* to implicit agreements to class arbitration (*id.* ¶¶ 78-79).  The Tribunal then determined that the "rules of the road" for its decision were that, although consent to class arbitration could not be inferred from silence, ambiguity, the use of the canon *contra proferentem*, or the arbitrators' policy views, it could be found "based on the plain meaning of [the parties'] arbitration agreement" and "based on the application of the *expressio unius* canon of construction, since it is designed to discern parties' intent."  (*Id.* ¶ 118).

Applying these rules of the road, the Tribunal closely analyzed the text of the Arbitration Agreement and found that the parties consented to class arbitration.  (CCA ¶¶ 119-175).  It first found that the phrase "[a]ny controversy, claim or cause of action" in the Arbitration Clause was "broad." (*Id.* ¶ 122).  But the Tribunal did not reach whether this broad phrase,

standing alone, was sufficient to constitute consent to class arbitration because it determined that "the totality of the language making up the [p]arties' Arbitration Agreement reflects [their] agreement to class arbitration[.]"  (*Id.*).

Looking again to the plain text of the Arbitration Agreement, the Tribunal determined that the phrase "by any party hereto" in the Arbitration Clause included any holders of the ADSs, and, thus, that the Deposit Agreement is "of a more encompassing nature" than a bilateral contract between an individual ADS holder and Dangdang.  (CCA ¶¶ 123-127).  The Tribunal found support for this conclusion in a related provision that states that a dispute, controversy, or cause of action may involve "more than two parties," and in the "practical" notion that "[a]ll holders of the ADSs would appear to have essentially the same relationship to Dangdang."  (*Id.* ¶¶ 150-151).  Likewise, the Tribunal broadly interpreted the phrase "arising out of or relating to" in the Arbitration Clause to mean that, subject to the exclusionary provisions of the contract, any dispute concerning the ADSs — including those of a "'universal' basis extending to all holders of ADSs" — must be arbitrated.  (*Id.* ¶¶ 128-130).

Defendants take issue with the Tribunal's broad interpretation of the phrases "[a]ny controversy, claim or cause of action," "any party," and "arising out of or relating to."  (*See* Def. Br. 19-20; Def. Reply 7-8).  They protest that because the Arbitration Clause tracks the language recommended by the AAA and JAMS, if the Tribunal is correct, then every contract incorporating this standard language would authorize class arbitration, contrary to a default presumption against class arbitration.  (Def. Br. 19-20).  Such prudential

concerns are not before the Court.  The Tribunal was acting within its delegated authority when it interpreted the plain language of the Arbitration Agreement broadly, regardless of whether the language it interpreted was standard.  An arbitrator may find that an arbitration clause unambiguously evinces intent to arbitrate class-wide claims, as the Tribunal did.  Whether Defendants (or the Court, for that matter) agree with the Tribunal's broad interpretation is beside the point.  *See, e.g.*, *Eletson Holdings, Inc.* v. *Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 580-82 (S.D.N.Y. 2024) (finding, where arbitrator had interpreted similar phrases in an arbitration agreement broadly to allow arbitration of certain claims, that "[t]he arbitrator based his conclusion that he had authority to make these determinations on the language of the arbitration provision … , and did not dispense his own brand of industrial justice," and thus "[t]he Court need not conclude that it would have reached the same decision as the arbitrator to conclude that he acted within the authority granted him by the parties to determine his own jurisdiction" (citing *Beijing Shougang*, 11 F.4th at 158, 161)).

The Tribunal also interpreted a provision excluding claims based on federal securities laws as an exception to a broad rule in favor of arbitrating claims.  (CCA ¶¶ 133-140).  This provision "exclud[ed] the kind of federal securities claims that are typically brought on a class-action basis[.]"  (*Id.* ¶ 146).  From this, the Tribunal reasoned that

> [t]here is thus no contractual or logical basis … for concluding that the term "[a]ny controversy, claim or cause of action," when used in inclusionary language as to what must be arbitrated, referred only to claims

> asserted on an individual basis, but, that that same language, when used in the exclusionary language as to what is only optionally arbitrable, included claims asserted on a class basis.  If the exclusionary provision excluded class actions, the inclusionary provision included class arbitration.

(*Id.* ¶ 143).  The Tribunal also interpreted the Deposit Agreement's Waiver of Immunities provision (both in Section 24 of the form ADRs and Section 7.07 of the Deposit Agreement), which refers to "any legal action, suit or proceeding," to address the vehicles through which "[a]ny controversy, claim or cause of action" might be asserted.  (*Id.* ¶ 164).

Defendants object to these interpretations as well.  They argue that the Tribunal's reliance on this language "assumes its own improper conclusion" because, when "[v]iewed from the required individual-arbitration 'default,' the federal-securities carveout is entirely consistent with individual arbitration." (Def. Br. 20-21; *see also* Def. Reply 9).  But, once again, the Tribunal acted within its authority when it interpreted the language of the federal-securities carveout — and the Waiver of Immunities provision — broadly and in connection with other provisions of the Arbitration Agreement.  It characterized the Arbitration Agreement as a "bespoke arrangement" and a "comprehensive dispute resolution regime" when the Agreement is "read as a whole, giving its words their natural meaning."  (CCA ¶¶ 145, 159).  It reasoned that the "contrary interpretation … that the [p]arties *reached no agreement as to where class actions among themselves concerning the ADSs would be brought*, or as to limitations on such actions — does not seem plausible."  (*Id.* ¶ 158).

25

Ultimately, the Tribunal concluded, based on the plain language of the Arbitration Agreement, that it was not ambiguous, and that in it the parties affirmatively agreed to class arbitration. (*Id.* ¶¶ 168-169). This is not "linguistic gymnastics" (Def. Reply 10 (quoting *Dewan* v. *Walia*, 544 F. App'x 240, 248 (4th Cir. 2013) (unpublished per curiam decision))), but merely an interpretative outcome with which Defendants disagree.

Nor did the Tribunal exceed its authority through its use of the *expressio unius* canon of construction. On this point, Defendants argue that the Tribunal exceeded its authority by interpreting the Arbitration Agreement in defiance of a default presumption against class arbitration. (Def. Br. 12-18; Def. Reply 5-7). In particular, Defendants take issue with the Tribunal's "application of *expressio unius*," which they claim "gets the default presumption prescribed by the Supreme Court exactly backwards." (Def. Br. 16). Defendants argue that, because under New York law *expressio unius* can only be invoked if a contract is ambiguous as to the parties' intent, the Tribunal's resort to that canon shows that it violated *Lamps Plus*. (Def. Reply 6).

At the outset, the Court observes that the Tribunal's conclusion that the Arbitration Agreement permits class arbitration based on its application of *expressio unius* was independent of its identical conclusion based on the plain text of the Agreement. The Tribunal wrote that it "reach[ed] *the same conclusion* based on [an] application of the [*expressio unius*] mode of construction to the [p]arties' Arbitration Agreement." (CCA ¶ 170 (emphasis

26

added)).  The Tribunal understood this canon of construction to provide that, because the "[p]arties knew how to express themselves and expressed themselves when they wanted to exclude or limit certain types of disputes or issues [based on] the broad language used to describe the scope of matters to be arbitrated," they must have intended to include what they did not exclude: class-wide claims.  (*Id.*).  In so concluding, the Tribunal noted that, because the parties had agreed to class arbitration under the FAA, the "remaining aspects of the issue of consent [were relegated] to state contract law designed to determine consent, such as the rule of *expressio unius* and other canons of construction, like considering [the] parties' entire agreement."  (*Id.* ¶ 178).

In arguing that the Tribunal created and used a default presumption in favor of class arbitration, Defendants conflate the Supreme Court's admonition that canons of construction cannot *substitute* for the requisite affirmative contractual basis for finding consent to class arbitration, *Lamps Plus*, 587 U.S. at 189, with the mistaken notion that canons of construction cannot be used to determine *whether* there is the requisite affirmative contractual basis.  The Tribunal found that *Lamps Plus* only rejected *contra proferentem* as a legally sufficient mode of inferring consent to class arbitration, and by extension allowed the application of other canons of construction, including *expressio unius.*  (CCA ¶¶ 66-67, 70, 74-76, 99, 118).  That accords with the Supreme Court's rejection of the Ninth Circuit's application of *contra proferentem* — an interpretive method that construes ambiguous contractual provisions against the drafter — because "by definition [the canon is] triggered only after a court

determines that it *cannot* discern the intent of the parties." *Lamps Plus*, 587 U.S. at 187.  *Contra proferentem* is applied as a last resort after finding that a term is ambiguous.  *Id.* at 186.  Of note, *Lamps Plus* contrasted *contra proferentem* with "contract rules that help to interpret the meaning of a term, and thereby *uncover the intent of the parties*." *Id.* at 187 (emphasis added).  It follows that other canons of textual analysis, including *expressio unius*, may be applied to uncover the parties' intent, provided the canon is not — like *contra proferentem* — standing in for the parties' intent when it cannot be ascertained.

Defendants relatedly argue that the Tribunal's analysis violates New York law, which only permits rules of construction to interpret language of ambiguous or doubtful meaning.  (Def. Br. 16-17).  According to Defendants, the Tribunal thereby created and applied its own rule of decision.  (*Id.* at 18).  If Defendants were right, then the Tribunal would have (i) applied a canon of construction that can only be used for ambiguous contract terms, despite the fact that courts cannot infer consent to arbitration from ambiguous terms under the FAA; and (ii) applied a canon of construction that cannot be applied to unambiguous terms under New York law.

Defendants are wrong on both fronts.  As previously discussed, the Supreme Court in *Lamps Plus* indicated that arbitrators may use canons of construction to uncover the intent of the parties.  587 U.S. at 187.  The Tribunal specifically noted that it was using *expressio unius* to uncover the intent of the parties, not to create ambiguity.  (CCA ¶ 178).  As for the New York law issue, Defendants are incorrect to suggest that *expressio unius* may

only be used to interpret an ambiguous contract term. *Cf. Quadrant Structured Prods. Co.* v. *Vertin*, 23 N.Y.3d 549, 560 (2014) (discussing the use of *expressio unius* to interpret ambiguous contract terms). That there is a "general principle that interpretive tools *need not* be deployed when the contract is unambiguous" does not mean that courts *cannot* use such tools to interpret unambiguous terms. *N.Y. Univ.* v. *Factory Mut. Ins. Co.*, 374 F. Supp. 3d 315, 323-24 (S.D.N.Y. 2019) (emphasis added) (quoting *N.Y. Univ.* v. *Factory Mut. Ins. Co.*, No. 15 Civ. 8505 (NRB), 2018 WL 1737745, at *11 (S.D.N.Y. Mar. 27, 2018)), *aff'd*, No. 20-1093-cv, 2021 WL 3136078 (2d Cir. 2021) (summary order). Nor does the fact that "*expressio unius should not* be applied to create ambiguity where none would otherwise exist," *id.* at 324, mean that it *cannot* be applied to ascertain the meaning of an unambiguous term. There is nothing to suggest that *expressio unius*, employed as a mode of textual analysis and not as a default presumption, cannot be used to draw connections between unambiguous terms in a contract. Indeed, as just noted, New York courts have used *expressio unius* to discern the meaning of unambiguous agreements. *See, e.g.*, *Hasselback* v. *2055 Walden Ave., Inc.*, 32 N.Y.S.3d 403, 406 (4th Dep't 2016) (interpreting an "unambiguous" deed through the *expressio unius* canon to find it did not preclude the erection of structures not specifically prohibited). In short, the Tribunal did not improperly apply *expressio unius* to "create ambiguity where none would otherwise exist." *Cf. N.Y. Univ.*, 2018 WL 1737745, at *11 (collecting cases). Rather, it applied *expressio unius* to interpret the unambiguous terms of the Arbitration Agreement as a whole. *See*

*L. Debenture Tr. Co. of N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." (quoting *Readco, Inc.* v. *Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir. 1996) (citing *Hudson-Port Ewan Associates, L.P.* v. *Kuo*, 78 N.Y.2d 944, 945 (1991)))).

In any event, and as noted earlier, even if the Tribunal had erred by applying *expressio unius* to interpret unambiguous contract terms, its conclusion that the Arbitration Agreement permitted class arbitration based on *expressio unius* was independent of its identical conclusion based on an analysis of the plain text of the Agreement. The Tribunal presented these as alternative grounds for the same conclusion: the Arbitration Agreement permits class arbitration. (*See* CCA ¶ 170). And if it were an error, this alternative finding would be far from a "grave error," which itself "is not enough" to find that an arbitrator exceeded its authority under § 10(a)(4). *Oxford Health Plans*, 569 U.S. at 572.[4]

### b.    The Tribunal Did Not Exceed Its Powers by Reaching Issues Prohibited by the Terms of the Agreement

Defendants further argue that the Clause Construction Award must be vacated because it is prohibited by the terms of the Arbitration Clause itself. In

---

[4]    The Court notes that Defendants raise two inapposite out-of-Circuit cases in their September 2, 2025 Notice of Supplemental Authority: *Zeidman* v. *Lindell Management LLC*, 145 F.4th 820 (8th Cir. 2025), and *Island Palm Communities LLC* v. *Amuro*, No. 24 Civ. 458 (LEK) (RT), 2025 WL 904404 (D. Haw. Mar. 25, 2025). (Dkt. #143). In both cases, the arbitrator improperly relied on extrinsic evidence to interpret the arbitration agreement at issue. *Zeidman*, 145 F.4th at 822-23, 827-28; *Island Palm*, 2025 WL 904404, at *17. By contrast, and as the Court has discussed in depth, the Tribunal interpreted the terms of the Arbitration Agreement itself, rather than provisions beyond it, and found that the Agreement unambiguously permits class arbitration.

particular, they argue that the Clause Construction Award improperly

(i) authorizes damages that are "not measured by the prevailing party's actual

damages" and (ii) "does not conform to the terms and conditions of the Deposit

Agreement," which provide that there must only be two parties  (Def. Br. 21-

22).  *See Jock I*, 646 F.3d at 122 ("[A]n arbitrator may exceed her authority

by … reaching issues clearly prohibited … by the terms of the parties'

agreement.").  In point of fact, the Tribunal considered and rejected a version of

this argument.

> The Arbitration Clause provides that:

>> The arbitral tribunal shall have no authority to award
>> any consequential, special or punitive damages or other
>> damages not measured by the prevailing party's actual
>> damages and may not, in any event, make any ruling,
>> finding or award that does not conform to the terms and
>> conditions of this Deposit Agreement.

(Arbitration Clause).  Defendants argue that, by authorizing class proceedings,

the Tribunal authorized damages that are "not measured by the prevailing

party's actual damages," because the only "prevailing part[ies]" are Plaintiffs,

and class proceedings may award damages measured by absent class

members, who are not prevailing parties.  (Def. Br. 21-22 (quoting Arbitration

Clause)).  Likewise, Defendants argue the Clause Construction Award does not

conform to the Arbitration Clause's provision that "[i]f a dispute, controversy or

cause of action shall involve more than two parties," the parties "must attempt

to align themselves in two sides," after which "each [side] shall appoint one

arbitrator as if there were only two parties to [the] dispute, controversy or

cause of action."  (*Id.* at 22 (quoting Arbitration Clause)).  According to

Defendants, "[i]f absent class members are brought in as parties *after* the arbitrators have been appointed … , those absent class members will have been deprived of their contractual participation right and will be stuck with arbitrators that they did not select."  (*Id.*).

The Tribunal, however, reconciled the existence of absent class members with the language of the Arbitration Clause.  (*See* CCA ¶¶ 149-152).  It interpreted the very fact that the Arbitration Clause provides for disputes that "involve more than two parties" to mean that "[t]he potential claimants in an arbitration are not limited to an individual claimant.  Claimants may consist of any party to the Deposit Agreement and its Exhibit A."  (*Id.* ¶ 149).  The Tribunal in turn interpreted "any party" in the opening lines of the Arbitration Clause to include "any holder of the ADSs," who all "have essentially the same relationship to Dangdang," such that "all holders are entering into in effect the same contractual relationship with Dangdang."  (*Id.* ¶¶ 150-151).  From these provisions, the Tribunal concluded that "the fact that any given party that is a holder of an ADS may make its own election as to arbitration or litigation, including, potentially, being part of a class arbitration … , does not seem inconsistent with the provision of the Arbitration Clause permitting parties to an arbitration to be 'more than two parties.'"  (*Id.* ¶ 152).  In so doing, the Tribunal considered how absent class members fit into the contractual scheme and provided more than a "barely colorable justification for the outcome [it] reached."  *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.),* 579 F.2d 691, 704 (2d Cir. 1978).

32

### c. The Tribunal Did Not Manifestly Disregard Controlling Precedent

Defendants further maintain that the Tribunal manifestly disregarded controlling Supreme Court precedent, in particular, *Lamps Plus.* (Def. Br. 23-24). It did not.

The Second Circuit has held that, "'as judicial gloss on the[ ] specific grounds for vacatur of arbitration awards' in the FAA, an arbitrator's 'manifest disregard' of the law or of the terms of the arbitration agreement 'remains a valid ground for vacating arbitration awards.'" *Seneca Nation of Indians*, 988 F.3d at 625 (quoting *Schwartz*, 665 F.3d at 451-52). Vacatur on these grounds is reserved, however, for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Id.* at 625-26 (quoting *T.Co Metals, LLC*, 592 F.3d at 339 (alteration adopted and internal quotation marks omitted)). "A reviewing court may only vacate an award for manifest disregard of the law if it finds both that [i] the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and [ii] the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *AKF Inc.* v. *Skybell Techs. Inc.*, 772 F. Supp. 3d 473, 484 (S.D.N.Y. 2025) (internal quotation marks omitted) (quoting *Banco de Seguros del Estado* v. *Mut. Marine Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)).

The Tribunal did not manifestly disregard *Lamps Plus*, or, for that matter, other controlling precedent. Rather, the Tribunal carefully analyzed, *inter alia*, *Stolt-Nielsen*, *Lamps Plus*, *Green Tree Financial Corp.*, *Jock II*, and *Sappington*, and distinguished cases concerning who may decide the class

arbitration issue from those concerning whether parties have in fact agreed to class arbitration. (*See* CCA ¶¶ 41-118). In so doing, the Tribunal closely examined *Stolt-Nielsen* and *Lamps Plus*, which it styled "[t]he determinative line of authority for present purposes." (*Id.* ¶ 116). Indeed, the Tribunal scrutinized the holding and reasoning of *Stolt-Nielsen*. (*Id.* ¶¶ 46-56). It reasoned that, although the Supreme Court in *Stolt-Nielsen* held that an implicit agreement to class arbitration may not be inferred solely from the fact that the parties agreed to arbitrate, implicit consent is adequate as a matter of law. (*Id.* ¶¶ 51, 56 (citing *Stolt-Nielsen*, 559 U.S. at 685)).

The Tribunal also analyzed the *Lamps Plus* decision (CCA ¶¶ 57-70), how the Second Circuit interpreted *Lamps Plus* in *Jock II* (*id.* ¶ 71), and how this Court interpreted *Lamps Plus* and *Jock II* in *Fasano V* (*id.* ¶ 72). The Tribunal characterized *Lamps Plus* as holding that ambiguity, like silence, is an insufficient basis for finding that the parties consented to class arbitration. (*Id.* ¶ 60 (citing *Lamps Plus*, 587 U.S. at 183)). Likewise, the Tribunal interpreted *Jock II* to mean that the "parties' agreement to class arbitration may be found based on implicit consent." (*Id.* ¶ 71). It further described *Lamps Plus* as holding that *contra proferentem* is not designed to discern the parties' intent, and so cannot be used to subject parties to class arbitration. (*Id.* ¶ 61 (citing *Lamps Plus*, 587 U.S. at 187)). Thus, the Tribunal reasoned that "*Lamps Plus* in no way invalidates *expressio unius*, since that mode of construction *is* designed to discern party intent." (*Id.* ¶ 67; *see also id.* ¶ 70). According to the Tribunal, it follows from *Lamps Plus* that "a mode of interpretation like

*expressio unius* that *is* designed to determine intent does pass muster under the FAA." (*Id.* ¶ 74 (citing *Lamps Plus*, 587 U.S. at 187)).

Given the Tribunal's assiduous examination of *Stolt-Nielsen*, *Lamps Plus*, and other related cases, it can hardly be said that the Tribunal refused to apply or ignored well-defined, explicit, and clearly applicable legal principles. *Cf. AKF Inc.*, 772 F. Supp. 3d at 484. Rather, the Tribunal grappled with the relevant case law and situated its interpretation of the Arbitration Agreement within that case law.

Defendants separately argue that Plaintiffs concede that the Tribunal manifestly disregarded Supreme Court precedent by failing to counter this argument in their opposition brief. (Def. Reply 10). But Plaintiffs make no such concession. Quite to the contrary, Plaintiffs argue that the Tribunal did not manifestly disregard controlling Supreme Court precedent — even though they do not use this precise wording — by arguing that the Tribunal acted in accordance with *Stolt-Nielsen*, *Lamps Plus*, and related Supreme Court and Second Circuit precedent. (*See* Pl. Opp. 10-15).

### d. Defendants' New York Convention Argument Lacks Merit

Defendants argue that the Clause Construction Award should be vacated under the New York Convention, under which "recognition and enforcement of an award may be refused" if "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration." (Def. Br. 24 (alterations adopted) (quoting *Drip Cap., Inc.* v. *M/S. Goodwill Apparels*, 665 F. Supp. 3d 511, 518 (S.D.N.Y. 2023))). This provision

35

"tracks in more detailed form" the standard for vacating an award under the FAA "where the arbitrators exceeded their powers." *Parsons & Whittemore Overseas Co.*, 508 F.2d at 976 (quoting 9 U.S.C. § 10(a)(4)).  Indeed, Defendants treat it as an "independent basis for vacatur" for the very same reasons they argue the Tribunal exceeded its powers under the FAA.  (Def. Br. 24).  In a similar vein, the Court rejects Defendants' New York Convention argument for the same reasons it rejects their arguments for vacatur under § 10(a)(4) of the FAA.

Defendants argue that Plaintiffs concede that the Clause Construction Award violates the New York Convention because Plaintiffs do not specifically address the New York Convention in their opposition brief.  (Def. Reply 10). But by arguing that the Tribunal did not exceed its authority, Plaintiffs effectively opposed Defendants' New York Convention argument, which, once again, merely "tracks in more detailed form" the standard for vacating an award under the FAA.  *Parsons & Whittemore Overseas Co.*, 508 F.2d at 976.

### 3.    The Court Confirms the Clause Construction Award

"Unless the party seeking vacatur establishes the applicability of any of the limited exceptions listed in section 10(a) of the FAA or demonstrates that vacatur is otherwise warranted under applicable case law, … the district court must confirm the arbitration award." *AFK Inc.*, 772 F. Supp. 3d at 482-83 (citing *Seneca Nation of Indians*, 988 F.3d at 625); *see also D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court must grant the award unless the award is

vacated, modified, or corrected." (internal quotation marks omitted) (quoting 9 U.S.C. § 9)). Accordingly, the Court confirms the Clause Construction Award.[5]

## CONCLUSION

For the above reasons, Defendants' motion to vacate the Clause Construction Award is DENIED. The Court confirms the Clause Construction Award. The Clerk of Court is directed to terminate the pending motion at docket entry 135.

The case remains STAYED pending the outcome of arbitration, and pending further order of the Court. The parties shall submit a status letter to the Court within fourteen days of the final judgment of the arbitrator or a similarly significant development in the arbitration.

SO ORDERED.

Dated:    October 24, 2025
          New York, New York

*Katherine Polk Failla*
_____
KATHERINE POLK FAILLA
United States District Judge

---

[5]    In considering whether to vacate the Clause Construction Award, the Court analyzed the Clause Construction Award, and not the Dissent, which was authored by Judge David F. Levi (Ret.). (*See* Dissent). Nevertheless, the Court briefly notes that the Dissent recognizes that "consent to class arbitration may be implicit," even if it must also be "'affirmative' and unambiguous." (*Id.* at 3). The Dissent derides the Tribunal's opinion as being "based on bits of contractual language drawn from here and there in the contract and which are as consistent with consent to a broadly stated non-class arbitration agreement as they are to consent to class arbitration procedures." (*Id.* at 3-4). And the Dissent believes that stronger language is needed to satisfy the requirement of "affirmative" contractual language. (*Id.* at 4). But, once again, the Tribunal interpreted the Arbitration Agreement as a whole, and it concluded that it contained affirmative, unambiguous consent to class arbitration. The Dissent raises no issues that Defendants have not themselves raised; the Court has rejected Defendants' arguments for vacatur, and it rejects the arguments they raise by reference to the Dissent.