**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Joe Fasano; Altimeo Optimum Fund; Altimeo Asset Management; Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**Guoqing Li; Peggy Yu Yu; Dangdang Holding Company, Ltd.; E-Commerce China Dangdang Inc.; Kewen Holding Co. Ltd.; Science & Culture Ltd.; First Profit Management, Ltd.; Danqian Yao; Lijun Chen; Min Kan; Ruby Rong Lu; Ke Zhang; and Xiaolong Li,**<br><br>**Defendants.** | Civil Action No. 1:16-08759-KPF |

**JOINT PETITION TO CONFIRM FINAL APPROVAL AWARD**

Lead Plaintiffs Joe Fasano ("Fasano"), Altimeo Optimum Fund, and Altimeo Asset Management (together with Altimeo Optimum Fund, "Altimeo," and collectively with Fasano, "Lead Claimants"), on behalf of themselves and all other members of the Settlement Class (together with Lead Claimants, the "Settlement Class Members") and Defendants Guoqing Li, Peggy Yu Yu, Dangdang Holding Company, Ltd., E-Commerce China Dangdang Inc. ("Dangdang"), Kewen Holding Co. Ltd., Science & Culture International Ltd., First Profit Management, Ltd., Danqian Yao, Lijun Chen, and Min Kan (collectively "Respondents," and together with Lead Claimants, the "Parties"), in the American Arbitration Association ("AAA") arbitration, Case No. 01-22-0003-8285, arising out of the above-captioned civil action , hereby respectfully petition this Court for an order confirming the Final Award Approving Class Settlement, dated August 11, 2026 (the "Final Approval Award").

In support of the Petition, the Parties state as follows:

## I. STATEMENT OF FACTS

1. On November 10, 2016, Lead Claimants, as Plaintiffs, filed a putative Class Action Complaint in this Court against Respondents and three other individuals who were never served: Ruby Rong Lu, Ke Zhang, and Xiaolong Li (collectively with Respondents, "Defendants"). Dkt. No. 1. Claimants' original complaint asserted claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, negligent misrepresentation, violation of Section 13(e) of the U.S. Securities Exchange Act of 1934 (the "Exchange Act") and Rule 13e-3 thereunder, and quasi-appraisal. *Id.* ¶¶ 97-127. Claimants asserted such claims on behalf of themselves and all former minority stockholders and holders of Dangdang's American Depositary Shares ("ADSs") (except the Defendants and any person, firm trust, corporation, or other entity related to or affiliated with any of the Defendants) who were cashed out in Dangdang's going-private merger on September 20, 2016 (the "Merger"), and their successors in interest. *Id.* ¶ 1.

2. By an Order dated March 8, 2017, the Court appointed Lead Claimants as Co-Lead Plaintiffs and appointed Sadis & Goldberg LLP ("Sadis") as Lead Counsel. Dkt. No. 32.

3. On March 15, 2017, Respondents moved to dismiss the original complaint on *forum non conveniens* grounds, and this Court granted that motion on December 29, 2017. Dkt. Nos. 38-45, 48-53, 61. On appeal, the Second Circuit vacated the Court's dismissal order and remanded for the Court to consider the "scope and enforceability" of the arbitration clause in the deposit agreement governing Dangdang's ADSs (the "Arbitration Clause"). *Fasano v. Yu Yu*, 921 F.3d 333, 337 (2d Cir. 2019).

4. On remand, Lead Claimants filed an Amended Class Action Complaint (the "Amended Complaint"), which remains the operative complaint in this action. Dkt. No. 79. The Amended Complaint contains similar factual allegations to the original complaint but includes an additional 67 paragraphs of allegations and different causes of action. Lead Claimants now assert

claims for violations of Sections 10(b), 13(e), and 20(a) of the Exchange Act and Rules 10b-5 and 13e-3 promulgated thereunder, as well as for negligent misrepresentation under New York law, breach of "heightened fiduciary duties" under the "Sarbanes-Oxley Act Code of Conduct and NYSE Listing Standards," and aiding and abetting breach of fiduciary duties. *See id.*

5. Defendants renewed their motion to dismiss on *forum non conveniens* grounds and also moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6). Dkt. Nos. 81-84. The Court again dismissed the action for *forum non conveniens* and concluded that the alternative Rule 12(b)(6) motion had been rendered moot. Dkt. No. 104.

6. On August 26, 2022, the Second Circuit issued an opinion vacating this Court's dismissal for *forum non conveniens*, observing that, based on the Arbitration Clause, Lead Claimants' "common law claims can be pursued only in a New York arbitration." *Fasano v. Li*, 47 F.4th 91, 94, 105 (2d Cir. 2022). Two weeks later, on September 9, 2022, Lead Claimants filed a Demand for Arbitration with the AAA's International Centre for Dispute Resolution ("ICDR") setting forth their common law claims to be resolved in arbitration (the "Arbitration Demand"). In their Arbitration Demand, Lead Claimants asserted claims for fraudulent misrepresentation under New York law, negligent misrepresentation under New York law, breach of heightened fiduciary duties under Dangdang's Sarbanes-Oxley Act Code of Conduct and NYSE Listing Standards, and, in the alternative, breach of the sufficient information duty under Cayman Islands law. Ex. A ¶ H.[1]

[1] All Exhibits cited are attached to the Declaration of Samuel J. Lieberman in Support of Confirmation of the Final Approval Award ("Lieberman Decl.") filed together with this Petition. Exhibit B includes a declaration from Mr. Lieberman that was filed in support of the Motion for Final Approval before the Tribunal, which is cited as "Lieberman Approval Decl."

7. On remand to this Court, Respondents renewed their Rule 12(b)(6) motion and also moved to stay the arbitration. Dkt. Nos. 116-118. Lead Claimants cross-moved to compel arbitration of their common-law claims. Dkt. Nos. 119-121.

8. On September 27, 2023, this Court granted Lead Claimants' motion to compel arbitration, denied Respondents' motion to dismiss without prejudice to its renewal after arbitration, and stayed this case pending the outcome of the arbitration proceeding. Dkt. No. 130. The Court explained that the federal securities claims and common law claims "arise out of the same set of facts" such that "a stay" of this action pending the arbitration was "appropriate because the arbitration may decide the same facts at issue in the litigation." *Id.* at 31.

9. On October 22, 2024, the Tribunal issued a clause-construction award, ruling that the Arbitration Clause authorized class arbitration and that the parties consented to class arbitration, and it permitted the Lead Claimants to proceed as putative class representatives and to seek class certification of Lead Claimants' common law claims before the ICDR. Dkt. No. 138-1; Ex. A ¶ L. Respondents moved to vacate the clause-construction award (Dkt. No. 135), and this Court denied Respondents' motion to vacate and confirmed the clause-construction award (Dkt. No. 145).[2]

10. On September 11, 2025, Lead Claimants filed a Motion for Class Certification. The arbitration Tribunal scheduled a hearing on Lead Claimants' Motion for Class Certification for December 2-4, 2025. Ex. A ¶ P.

11. All in, the Parties engaged in extensive arbitration before the AAA and ICDR for years. *Id.* ¶¶ N-O. This included:

---

[2] Respondents appealed the Court's confirmation order, and that appeal remains pending (albeit stayed). *See Fasano v. Li*, No. 25-2766 (2d Cir., appeal filed Oct. 31, 2025); *see also id.*, Dkt. No. 27 (granting motion to hold appeal in abeyance pending final settlement approval).

- selecting an arbitration Tribunal consisting of William H. Narwold; the Honorable David Levi, former Chief Judge of the United States District Court for the Eastern District of California; and Tribunal Chair Charles J. Moxley Jr. (Ex. B1 (Lieberman Approval Decl.) ¶¶ 35, 37).) All members of the Tribunal have significant experience in arbitration, securities litigation, and claims alleging breaches of fiduciary and similar duties.

- exchanging, and responding to, written discovery requests; and engaging in extensive meet-and-confer correspondence concerning the scope of class certification and merits discovery. (*Id.* ¶¶ 38-40, 49-54.)

- reviewing tens of thousands of pages of discovery and producing documents. (*Id.*)

- litigating motions to compel production of documents for core and class certification discovery, and obtaining production of over 80,000 pages of documents, including key documents regarding Dangdang's valuation and the alleged misconduct. (*Id.*)

- obtaining and reviewing third-party discovery from the New York Stock Exchange, the Depositary Trust Company, Kroll Securities, LLC (a.k.a. Duff & Phelps), and Dangdang's ADS depositary, the Bank of New York Mellon. (*Id.*)

- briefing and argument on whether the Arbitration Clause authorizes class arbitration and related briefing in connection with Respondents' motion to vacate the clause construction award. (Dkt. Nos. 135-138, 145; Ex. A ¶ L.)

- briefing and argument on Respondents' dispositive motion seeking to dismiss the Arbitration on statute of limitations grounds, including supplemental briefing. The Tribunal denied Respondents' dispositive motion. (Ex. B1 (Lieberman Approval Decl.) ¶¶ 48, 50, 55.)

- briefing Claimants' Motion for Class Certification, including submitting opening and reply expert reports on issues of market efficiency and Cayman Islands law and submitting witness statements for the class-certification hearing. (*Id.* ¶¶ 56, 59, 61-64.)

- preparing for the Class Certification Hearing, including preparing witnesses, exhibit lists and preparing to cross-examine Respondents' witnesses. (*Id.*)

12. On September 17, 2025, approximately nine years after this action was filed and after almost two years of extensive arbitration proceedings, including discovery and motion practice, the Parties engaged in a full-day mediation session at the offices of Judicial Arbitration and Mediation Services. The mediation was conducted and led by Jed Melnick (the "Mediator"), a very experienced and well-known mediator who has successfully mediated many class action

settlements. The Parties mediated for an entire day but did not reach a settlement at that time. Ex. A ¶ Q.

13. While preparing for the hearing on Lead Claimants' Motion for Class Certification, the Parties continued their efforts to reach a negotiated resolution. On November 21, 2025, after extensive negotiations, the Mediator made a formal mediator's proposal recommending that the Parties agree to settle the both the arbitration proceedings and this action (the "Entire Action") for $21,000,000 (the "Settlement"). *Id.* ¶ S. That same day, the Parties accepted the Mediator's proposal and, through their counsel, executed a settlement memorandum of understanding setting forth the material terms associated with the resolution of the Entire Action, subject to the execution of a customary agreement of settlement and related papers, approval by the Tribunal, and confirmation by the Court. *Id.* This Settlement resolved this highly adversarial dispute that was negotiated at arm's-length after more than nine years of hard-fought litigation.

14. As of February 13, 2026, the Parties entered into a final Stipulation and Agreement of Settlement (the "Stipulation"). Ex. A.

15. On February 19, 2026, Claimants filed a Motion for Preliminary Approval of the Class Action Settlement in the arbitration proceeding, including: (i) a memorandum of law; (ii) proposed notice to the Class; (iii) proposed summary notice; (iv) proposed proof of claim; (v) a proposed order of preliminary approval; and (vi) a proposed order of final approval.

16. On April 10, 2026, the Tribunal issued a Partial Final Award granting Preliminary Approval of the Settlement (the "Preliminary Approval Award"). Ex. B3. In the Preliminary Approval Award, the Tribunal ordered that the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses (the "Notice") and a Proof of Claim and Release form ("Claim Form") (together the "Notice Packet"), substantially in the forms attached

to the Preliminary Approval Award as Exhibits A-1 and A-2 thereto, respectively, be sent to all potential Settlement Class Members who could be identified through reasonable effort, and that the Summary Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Summary Notice"), substantially in the form attached to the Preliminary Approval Award as Exhibit A-3, be published in *The Wall Street Journal* and transmitted over *PR Newswire* within fourteen (14) calendar days of the Notice Date. Ex. B3 ¶¶ 8-11.

17. The Tribunal also preliminarily certified Lead Claimants as the Class Representatives, and Sadis as Class Counsel for the Settlement Class, and appointed Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator. *Id.* ¶ 4.

18. In compliance with the Preliminary Approval Award, the Claims Administrator sent out over 7,100 Notice Packets to potential Settlement Class Members. Ex. B2 ¶ 9.

19. The Notice Packet[3] provided potential Settlement Class Members with information about the terms of the Settlement and contains, among other things: (i) a summary of the Settlement, including the $21 million settlement amount; (ii) the proposed Plan of Allocation; (iii) that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 33.33% of the Settlement Fund (*i.e.*, $7,000,000, plus interest), as well as Litigation Expenses, which may include an application for compensation to Lead Claimants for their costs and expenses related to their representation of the Settlement Class; (iv) that any Settlement Class Member could object to the Settlement, Plan of Allocation, or requested attorneys' fees and Litigation Expenses; (v) an explanation of the reasons for the Settlement; (vi) that requests for exclusion from the

[3] The Notice Packet is attached to the Declaration of the Claims Administrator that was submitted together with Claimants' Motion for Final Approval. Ex. B2, Exs. A-C.

Settlement must be submitted to the Claims Administrator no later than July 21, 2026; (vii) that objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application must be sent no later than July 21, 2026; and (viii) that the deadline for submitting a Claim Form is August 6, 2026. Ex. B1 (Lieberman Approval Decl.) ¶ 107.

20. Settlement Class Members were provided over three months (*i.e.*, 102 days) from the Preliminary Approval Award to object to the Settlement or opt-out of the Settlement. Ex. B3 ¶15; Ex. B2 ¶¶ 20-21.

21. The Claims Administrator also implemented a robust notice program, including (i) publication of summary notice in the *Wall Street Journal* and via *PRNewswire*, mailing approximately 2,667 notices to brokers and nominees (including those identified through discovery), (ii) setting up a call center to provide information about the Settlement, (iii) sending specific notice via email and mail to individuals who contacted Lead Counsel throughout the nine years of litigation, and (iv) setting up a website https://www.dangdangsecuritiessettlement.com/ providing information about the proposed settlement and instructions for submitting claims. *See* Ex. B2. Lead Counsel also separately published a press release regarding the settlement and the claims administration process.

22. There were no objections to the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses. Ex. E ¶ 6. Further, only one Settlement Class Member sought to be excluded from the Settlement.

23. As provided in the Notice Packet, on August 11, 2026, at 9:00 a.m., the Tribunal held a Final Fairness Hearing via remote videoconferencing in New York. Ex. D (transcript).

24. At the Final Fairness Hearing on August 11, 2026, the Tribunal, composed of a retired federal district judge, a securities class action practitioner, and an experienced securities

arbitrator, granted final approval of the Settlement, the Plan of Allocation, the requested attorneys' fees and expenses, and the Lead Claimant service awards. Ex. D at 3:17-4:2. The Tribunal acknowledged that the Final Fairness Hearing was the third occasion on which it had examined the fairness and appropriateness of the Settlement, that the parties had submitted at least two iterations of the approval papers, and that the Tribunal had propounded several sets of questions to which the Lead Claimants provided written responses. *Id.* at 3:10-16; *id.* 4:3-5:12. Having conducted that review, the Tribunal found the Settlement to be "fair, reasonable, and adequate" under the AAA Supplementary Rules for Class Arbitrations (*id.* at 40:21-41:6), and further observed that the standard it applied under those Rules is "closely parallel" to the standard governing approval of a class settlement under Rule 23 of the Federal Rules of Civil Procedure (*id.*; *id.* at 3:10-16).

25. In reaching that conclusion, the Tribunal had before it an unopposed record: no member of the Settlement Class objected to the Settlement, the Plan of Allocation, or the fee and expense request, and only a single shareholder holding 200 shares requested exclusion from the Settlement Class. *Id.* at 18:16-20:8; *see also* Exs. B-C. The Tribunal awarded attorneys' fees of 33.33% of the Settlement Fund for the nine years of litigation, awarded expenses as requested subject to adjustment for amounts still to be finalized with the AAA, approved the Plan of Allocation as submitted, and approved the Lead Claimants' compensatory awards as submitted. Ex. D at 44:7-18; Ex. E1. Respondents did not oppose approval of the Settlement or Plan of Allocation. *Id.* at 25:23-27:22; *see also* Exs. B-C.

## II. JURISDICTION AND VENUE

26. This Court has original subject matter jurisdiction over this action under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, because the Amended Complaint asserts claims arising under Sections 10(b), 13(e), and 20(a) of the Exchange

Act and Rules 10b-5 and 13e-3 promulgated thereunder, and supplemental jurisdiction over the related common law claims under 28 U.S.C. § 1367(a). This Court also has subject matter jurisdiction of this Joint Petition under the Federal Arbitration Act (the "FAA"). *See* 9 U.S.C. § 203; *see also id.* § 207.

27. Venue is proper in this District, pursuant to Section 9 of the FAA, in that the Final Approval Award was made in this District, and thus this District has jurisdiction to enter an order confirming the Final Approval Award. Indeed, the arbitration clause provides that "[t]he place of the arbitration shall be The City of New York, State of New York, United States of America," and the Final Approval Award was accordingly made within this District. 9 U.S.C. § 9. Venue is in any event already fixed in this pending action, and the FAA's venue provisions are permissive rather than restrictive. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195, 204 (2000).

28. This Petition is filed in an action that has been pending before this Court since November 10, 2016, and that this Court stayed pursuant to Section 3 of the FAA, 9 U.S.C. § 3, pending completion of the arbitration. Dkt. No. 130. This Court thereafter confirmed the Tribunal's Clause Construction Award and directed that "[t]he case remains STAYED pending the outcome of arbitration, and pending further order of the Court." Dkt. No. 145 at 37. The Tribunal, in turn, while approving the Settlement, expressly reserved the dismissal of the federal claims asserted in the Amended Complaint (which were not submitted to arbitration) to this Court. Ex. E ¶ 2.

29. Because this Joint Petition is a motion made in a pending action over which this Court has original jurisdiction, and not a freestanding application, no independent basis of jurisdiction need appear on the face of the Petition itself. *Jules v. Andre Balazs Props.*, No. 25-

83, 608 U.S. ___ (2026) (slip op., at 16) ("A federal court with jurisdiction to stay claims pending arbitration under §3 of the FAA has the same jurisdiction to resolve motions to confirm or vacate a resulting arbitral award."); *id.* (slip op., at 8) (on the parties' return to court after arbitration, "the court had the same 'jurisdiction to decide the case,' and thus 'jurisdiction to decide th[ose] motion[s],' that it possessed from the start" (quoting *Badgerow v. Walters*, 596 U.S. 1, 15 (2022))); *see also Cortez Byrd Chips*, 529 U.S. at 202 ("the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award").

30. The Parties have also agreed that judgment may be entered upon the awards rendered in the arbitration, as Section 9 requires. The Arbitration Clause provides for arbitration "in accordance with the International Arbitration Rules of the American Arbitration Association," and because Lead Claimants submitted the dispute to arbitration on behalf of a class, the AAA Supplementary Rules for Class Arbitrations supplemented the otherwise applicable AAA rules. Rule 12(c) of those Supplementary Rules provides that "[p]arties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof." Consent under Section 9 need not be express, and the incorporation of arbitral rules so providing supplies it. *Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 617 F.3d 177, 181-82 (2d Cir. 2010); *I/S Stavborg v. Nat'l Metal Converters, Inc.*, 500 F.2d 424, 426-27 (2d Cir. 1974). In all events, the Parties' conduct establishes consent: every Party participated fully in the arbitration, every Party invoked this Court's authority under Sections 9 and 10 as to the Clause Construction Award, and every Party joins in this Petition.

31. To that end, the Final Approval Award incorporates the Parties' agreement in the Stipulation that the Parties are jointly asking this Court to confirm the Final Approval Award. Ex.

E ¶ 8. The Stipulation of Settlement provides that the Parties shall seek confirmation of the Final Approval Award from the Court. After the Court confirms the Final Approval Award, the parties shall file with the Court a stipulated dismissal with prejudice to dismiss all claims in this action with prejudice. The Parties thus jointly seek confirmation of the Final Approval Award.

## III. THE COURT SHOULD CONFIRM THE FINAL APPROVAL AWARD PURSUANT TO THE FAA

32. The Parties timely seek confirmation of the Final Approval Award. Section 9 requires that an application to confirm be made "within one year after the award is made," 9 U.S.C. § 9, and the Second Circuit has held that this period operates as a statute of limitations, *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003). The Final Approval Award was made on August 11, 2026, and this Petition is filed well within one year of that date.

33. There is a presumption under the FAA that arbitration awards will be confirmed, and confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

34. The Final Approval Award is also "mutual, final, and definite" within the meaning of 9 U.S.C. § 10(a)(4). An award is final when it "resolve[s] all the issues submitted to arbitration, and . . . resolve[s] them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (per curiam). Finality does not require that an award "resolve every outstanding issue that might arise in later litigation between the parties." *Id.* at 177. Here the Tribunal finally certified the Settlement Class, found the Settlement fair, reasonable, and adequate, approved the Settlement in all respects over which it had authority, and gave effect to the releases. Ex. E ¶¶ 3-5, 7, 9-11.

35. "Under section 9 of the FAA, 'a court 'must' confirm an arbitration award 'unless' it is vacated, modified or corrected 'as prescribed' in §§ 10 and 11.'" *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78 (2d Cir. 2012) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)); *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023) ("[T]he FAA establishes a strong presumption in favor of enforcing an arbitration award, and an award is presumed valid unless proved otherwise."); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (acknowledging "a party moving to vacate an arbitration award has the burden of proof … the showing required to avoid confirmation is very high"). Here, there is no basis for vacatur or modification of the Final Approval Award under Section 10 or 11 of the FAA.

36. Indeed, Section 10 of the FAA states that, "upon the application of a party to the arbitration," a court may only vacate an arbitration award in four narrow circumstances:

i. Where the award was procured by corruption, fraud or undue means;

ii. Where there was evident partiality or corruption in the arbitrators, or either of them;

iii. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

iv. Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject was not made.

9 U.S.C. § 10(a); *see also Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (describing the narrow circumstances under which an arbitration award may be vacated upon application from a party to the arbitration).

37. As the Second Circuit explained: "the focus of our inquiry under Section 10(a)(4) is whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrator correctly decided that issue*." *Jock*

*v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019) ("*Jock II*") (emphasis in the original and internal quotations removed). This Court already held on September 27, 2023 that "Plaintiffs' common-law claims [are] to be submitted to arbitration." *Fasano v. Li*, No. 16 CIV. 8759 (KPF), 2023 WL 6292579, at *6 (S.D.N.Y. Sept. 27, 2023). Further, this Court subsequently confirmed the Tribunal's Clause Construction Award, holding that "The Tribunal Was Empowered to Decide the Class Arbitration Issue." *Fasano v. Li*, No. 16 CIV. 8759 (KPF), 2025 WL 3002971, at **6, 15 (S.D.N.Y. Oct. 24, 2025).

38. Similarly, Section 11 of the FAA allows for modification of arbitration awards only "upon the application of any party to the arbitration" and:

i. Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

ii. Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

iii. Where the award is imperfect in matter of form not affecting the merits of the controversy.

*Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 257 F. Supp. 2d 681, 685 n.3 (S.D.N.Y. 2003) (citing 9 U.S.C. § 11).

39. None of the circumstances presented under Section 10 or Section 11 of the FAA apply here. Indeed, no party or person has petitioned to vacate or modify the Final Approval Award. Instead, all Parties from the Arbitration join in this Petition to confirm the Final Approval Award. Moreover, the Tribunal thoroughly examined the Parties' Stipulation, the Motion for Preliminary Approval, the Motion for Final Approval, and all the supporting exhibits and declarations, and issued the Final Approval Award after finding that the Settlement and Settlement notice was fair, reasonable, and adequate as required under Rule 8 of the AAA Supplementary

Rules for Class Arbitration and consistent with Rule 23 of the Federal Rules of Civil Procedure. Ex. D (transcript) at 3:10-5:12, 40:21-41:6; Ex. E ¶ 7.

40. The Tribunal found that "in light of the benefits to the Settlement Class, the complexity and expense of further litigation, the risks of establishing liability and damages, and the costs of continued litigation," the "Settlement is, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class." Ex. E ¶ 7.

41. After its extensive examination of Claimants' submissions, the Tribunal specifically found that:

- Lead Claimants and Lead Counsel adequately represented the Settlement Class;
- The Settlement was negotiated at arm's length between experienced counsel and with the aid of an experienced mediator;
- The relief provided to the Settlement Class was adequate, given (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the Settlement Class and processing Settlement Claims; (iii) the terms of the proposed award of attorneys' fees and litigation expenses; and (iv) any agreement required to be identified under Rule 8(b) of the AAA Supplementary Rules; and
- The Plan of Allocation treats all Settlement Class Members equitably relative to each other. (*Id.*)

42. The Tribunal also determined that the Settlement Class Members had been provided proper and adequate notice of the terms of the Settlement Agreement as well as the applicable dates and procedure by which to submit any objections or elect to opt out of the Settlement. *Id.* ¶¶ C-E, 5. The Final Approval Award confirms that "the dissemination of the Notice, Summary Notice, and Proof of Claim: (i) complied with the Preliminary Approval Award; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated to apprise Settlement Class Members of the effect of the Settlement, of the proposed Plan of Allocation for the proceeds of the Settlement, of Lead Counsel's request for payment of Attorneys' Fees and Litigation Expenses incurred in connection with the prosecution of the Entire

Action, of Settlement Class Members' rights to object thereto or seek exclusion from the Settlement Class, and of their right to appear at the Settlement Hearing." *Id.* ¶ 5. The Tribunal further found that notice provided by Lead Counsel "constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement" and "satisfied the notice requirements of Rules 6 and 8 of AAA Supplementary Rules, the Due Process Clause of the United States Constitution, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), and Section 3 of the Class Action Fairness Act, [28] U.S.C. § 1715(b)." *Id.*

43. The Tribunal's findings satisfy the requirements of due process. Before an absent class member may be bound as to a claim for money damages, he must receive notice that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" together with an opportunity to be heard and to participate, and "an opportunity to remove himself from the class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The record before the Tribunal established each element: the Claims Administrator mailed more than 7,140 Notice Packets, published the Summary Notice in *The Wall Street Journal* and transmitted it over *PR Newswire*, and Settlement Class Members were afforded more than three months in which to object or to request exclusion.

44. The Final Approval Award also incorporated the Partial Final Award of the Plan of Allocations, attorneys' fees, reimbursement of litigation expenses, and compensatory awards to Lead Claimants. *Id.* ¶ 17; *see* Ex. E1.

45. Thus, there is substantially more than a mere "colorable justification for the outcome reached" by the Tribunal to approve the Parties' Settlement and for this Court to confirm

the Final Approval Award. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (internal quotation marks omitted).

## CONCLUSION

WHEREFORE, the Parties respectfully request that this Court enter an Order, pursuant to 9 U.S.C. § 9, (i) granting the Joint Petition to Confirm the Final Approval Award; and (ii) confirming the Final Approval Award. A Proposed Order is attached as Exhibit F.

**SADIS & GOLDBERG LLP**

*/s/ Samuel J. Lieberman*

Samuel J. Lieberman
Ben Hutman
Claiborne R. Hane
Lily Cron
SADIS & GOLDBERG, LLP
552 Fifth Ave, FL. 21
New York, NY 10176
(212) 573-6675
slieberman@sadis.com
bhutman@sadis.com
chane@sadis.com
lcron@sadis.com

*Attorneys for Plaintiffs Joe Fasano, Altimeo Optimum Fund, and Altimeo Asset Management, and on behalf of all others similarly situated*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Bradley A. Klein*

Bradley A. Klein (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000
bradley.klein@skadden.com

Scott D. Musoff
Timothy G. Nelson
Robert A. Fumerton
Christopher R. Fredmonski
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, N.Y. 10001
(212) 735-3000
scott.musoff@skadden.com
timothy.g.nelson@skadden.com
robert.fumerton@skadden.com
christopher.fredmonski@skadden.com

*Attorneys for Defendants Guoqing Li, Peggy Yu Yu, Danqian Yao, Lijun Chen, Min Kan, Dangdang Holding Company, Ltd., E-Commerce China Dangdang Inc., Kewen Holding Co. Ltd., Science & Culture International Ltd., and First Profit Management, Ltd.*